

1  KELLIE M. MURPHY (SBN 189500)
   JOHNSON SCHACHTER & LEWIS
2  A Professional Law Corporation
   California Plaza
3  2180 Harvard Street, Suite 560
   Sacramento, CA 95815
4  Telephone: (916) 921-5800
   Facsimile: (916) 921-0247
5
   Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
6  UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

7

8           **IN THE UNITED STATES DISTRICT COURT**

9         **IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                    **(Oakland Division)**

11  GENE FAURIE, JR.,                          )  Case No.
                                               )
12           Plaintiff                         )  **NOTICE OF REMOVAL OF ACTION**
                                               )  **UNDER 28 U.S.C. §1441(b) [Federal**
13  v.                                         )  **Question]**
                                               )
14  The BERKELEY UNIFIED SCHOOL                )
    DISTRICT; MICHELLE LAWRENCE,               )         BY FAX
15  individually and in her official capacity as )
    BUSD Superintendent; LISA UDELL,           )
16  individually and in her official capacity as )
    BUSD Assistant Superintendent, Human       )
17  Resources; CRISTINA OBIETA, individually   )
    and in her official capacity as BUSD Director, )
18  Classified Personnel; RICHARD DODSON, in   )
    his official capacity as BUSD Director, Labor )
19  Relations; TINA BRIER, individually and in )
    her official capacity as BUSD Director,     )
20  Classified Personnel,                       )
                                               )
21           Defendants.                        )
                                               )
22  _____)

23  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

24          PLEASE TAKE NOTICE that Defendants Berkeley Unified School District, Michele

25  Lawrence, Lisa Udell, Cristina Obieta, Richard Dodson, and Tina Brier (hereinafter collectively

26  referred to as "Defendants") hereby remove to this Court the state court action described below.

27          1.     On July 9, 2007, Plaintiff Gene Faurie, Jr. filed his unverified Complaint for

28  Damages against Defendants alleging the following causes of action:  Wrongful Discharge in

                                    1
        **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) [Federal Question]**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

FILED E-filing
JAN - 4 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

1  Violation of Fundamental Public Policy; Termination of Employment Without Just Cause/Breach

2  of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Discrimination on

3  the Basis of Sex [Fair Employment and Housing Act, Government Code Section 12900 et seq.];

4  and Intentional Infliction of Emotional Distress. The action was commenced in the Superior

5  Court of the State of California in and for the County of Alameda and was entitled *Gene Faurie,*

6  *Jr. v. The Berkeley Unified School District, et al.*, Case No. RG 07334590. A true and correct

7  copy of all papers served on Defendants in connection with the original complaint is attached

8  hereto as Exhibit A.

9    2.    On or about December 12, 2007, Plaintiff filed his First Amended Complaint for

10  Damages against Defendants alleging the following causes of action: Retaliatory Discharge for

11  Whistleblowing and Refusing to Comply with Unlawful Directives [Labor Code §1102.5];

12  Violation of Federal Right to Equal Protection of the Laws [42 U.S. Code §1983; U.S.

13  Constitution Amendments V and XIV]; Deprivation of Benefits and Privileges of Public

14  Employment and Termination of Public Employment Without Due Process of Law [42 U.S.

15  Code §1983; U.S. Constitution Amendments V and XIV]; Discrimination on the Basis of Sex

16  [Fair Employment and Housing Act, Gov. Code §12900(a) et seq.]; Unlawful Harassment on the

17  Basis of Sex/Gender [Gov. Code §12900(j)]; Unlawful Retaliation for Opposing Violation of

18  Rights Protected by the FEHA [Gov. Code §12900(h)]; and Intentional Infliction of Emotional

19  Distress. A true and correct copy of Plaintiff's First Amended Complaint is attached hereto as

20  Exhibit B.

21    3.    Based on the allegations set forth in Plaintiff's First Amended Complaint, this

22  action is a civil action of which this Court has jurisdiction under 28 U.S.C. §1331. This action

23  may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §1441(b) in

24  that Plaintiff's Second and Third Causes of Action are brought under 42 U.S.C. §1983 and allege

25  violations of the 5th and 14th Amendments of the United States Constitution. (See Exhibit B,

26  pages 25-30.)

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

2

1    4.    Defendants first received a copy of Plaintiff's First Amended Complaint, which

2    was served by mail on December 12, 2007, on December 13, 2007. (See Exhibit B, Proof of

3    Service dated December 12, 2007.)

4    5.    All of the defendants named in this action are represented by the law firm of

5    Johnson Schachter & Lewis, a P.L.C. and each defendant has consented to this removal.

6

7    Date:    January 4, 2008                    JOHNSON SCHACHTER & LEWIS
                                                 A Professional Law Corporation
8

9

10                                               KELLIE M. MURPHY
                                                 Attorneys for Defendants BERKELEY UNIFIED
11                                               SCHOOL DISTRICT, MICHELE LAWRENCE,
                                                 LISA UDELL, CRISTINA OBIETA, RICHARD
12                                               DODSON, and TINA BRIER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

3
**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) [Federal Question]**

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Additional Parties Attachment form is attached.

<div style="border:1px solid">

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

JUL 1 0 2007

CLERK OF THE SUPERIOR COURT
By **KMEL DHILLON**, Deputy

</div>

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Gene Faurie, Jr.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.  Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* | RG 07334590 |
| --- | --- | --- |

René C. Davidson Alameda County Courthouse
1225 Fallon St., Oakland, CA, 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric Borgerson, SBN 177943
2625 School Street, Oakland, CA 94602, (510) 866-3738.

| DATE: *(Fecha)* | JUL 1 0 2007 | **KMEL DHILLON** | | | |
| --- | --- | --- | --- | --- | --- |
| | | PAT S. SWEETEN Clerk, by *(Secretario)* | | | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20,
American LegalNet, Inc. | www.USCourtForms.c

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Gene Faurie, Jr. v. Berkeley Unified School District, et al. | RG07334590 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*.

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

The BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE LAWRENCE, individually and in her official capacity as BUSD Superintendent; LISA UDELL, individually and in her official capacity as BUSD Assistant Superintendent, Human Resources; CRISTINA OBIETA, individually and in her official capacity as BUSD Director, Classified Personnel; RICHARD DODSON, in his official capacity as BUSD Director, Labor Relations; TINA BRIER, individually and in her official capacity as BUSD Director, Classified Personnel

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

1    Eric Borgerson, SBN 177943
     Law Office Of Eric Borgerson
2    2625 School Street
     Oakland, CA 94602
3    Telephone: 510-866-3738
     Facsimile: 510-535-9448
4
     Attorney for Plaintiff Gene Faurie, Jr.
5

6              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                       FOR THE COUNTY OF ALAMEDA

8

9    GENE FAURIE, JR.,                        ) Case No. RG 0 7 3 3 4 5 9 0
                                              )
10           Plaintiff,                        )
                                              )
11           vs.                               )
                                              )
12   The BERKELEY UNIFIED SCHOOL              ) COMPLAINT FOR DAMAGES
     DISTRICT; MICHELLE LAWRENCE,             )
13   individually and in her official capacity as ) (Wrongful Discharge In Violation of
     BUSD Superintendent; LISA UDELL,         ) Fundamental Public Policy; Termination
14   individually and in her official capacity as ) Of Employment Without Just
     BUSD Assistant Superintendent, Human     ) Cause/Breach Of Contract; Breach Of the
15   Resources; CRISTINA OBIETA,              ) Implied Covenant Of Good Faith and Fair
     individually and in her official capacity as ) Dealing; Discrimination On the Basis Of
16   BUSD Director, Classified Personnel;      ) Sex [Fair Employment and Housing Act,
     RICHARD DODSON, in his official          ) Government Code Section 12900 et seq.];
17   capacity as BUSD Director, Labor          ) Intentional Infliction of Emotional
     Relations; TINA BRIER, individually and  ) Distress)
18   in her official capacity as BUSD Director, )
     Classified Personnel,                     )
19                                            )
                                              )
20           Defendants.                       )
                                              )
21                                            )
                                              )
22                                            )
                                              )
23                                            )
                                              )
24                                            )
                                              )
25   ///
26   ///
27   ///
28   ///

                                        72707 dy
                                        8/16 Resp due

                 *Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 1

**INTRODUCTION**

1.      This is a Complaint by Gene Faurie, Jr., formerly employed by the Berkeley Unified School District ("BUSD") in the position of Administrative Coordinator – Confidential, against BUSD and several of its current and former managerial employees in their individual and official capacities.

2.      Mr. Faurie sets forth herein claims of tortious wrongful discharge in violation of fundamental public policy, termination without just cause/breach of contract, breach of the implied covenant of good faith and fair dealing, discrimination based on sex, and intentional infliction of emotional distress, arising from a continuing course of unlawful conduct creating intolerable working conditions that became so severe on and after July 11, 2006, that Mr. Faurie was unlawfully constructively discharged on July 17. 2006.

**PARTIES**

3.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 2, above.

4.      Plaintiff Gene Faurie Jr. ("Plaintiff" or "Mr. Faurie") is and at all material times was, a resident of Alameda County. At all times mentioned in this Complaint until the date of his constructive discharge on July 17, 2007, Plaintiff was employed by the Berkeley Unified School District Human Resources Department in the position of Administrative Coordinator – Confidential.

5.      Defendant Berkeley Unified School District ("BUSD" or "District") is and was at all material times a public school district and a political subdivision of the State of California and County of Alameda, whose principal place of business is and was at all material times located in Alameda County.

6.      Defendant Michele Lawrence ("Lawrence") is and at all material times was a resident of Alameda County. Lawrence is and at all material times was employed by BUSD in the position of Superintendent. Lawrence is sued in her individual capacity and in her official capacity as BUSD Superintendent.

*Gene Faurie, Jr v. BUSD et al.* – Complaint for Damages – p. 2

1    7.    Defendant Lisa Udell ("Udell") is and at all material times was a resident of
2    Alameda County. Udell is and at all material times was employed by BUSD in its
3    Human Resources Department in the position of Assistant Superintendent, Human
4    Resources. Udell is sued in her individual capacity and in her official capacity as BUSD
5    Assistant Superintendent, Human Resources.

6    8.    Defendant Cristina Obieta ("Obieta") is and at all material times was a resident of
7    Alameda County. Obieta was at all material times employed by BUSD in its Human
8    Resources Department in the position of Director, Classified Personnel. Obieta is sued in
9    her individual capacity and in her official capacity as Director, Classified Personnel.

10   9.    Defendant Richard Dodson ("Dodson") is and at all material times was a resident
11   of Alameda County. Dodson is and at all material times was employed by BUSD in its
12   Human Resources Department in the position of Director, Labor Relations. Dodson is
13   sued in his individual capacity and in his official capacity as Director, Labor Relations.

14   10.   Defendant Tina Brier ("Brier") is and at all material times was a resident of
15   Contra Costa County. Brier at all material times was employed by BUSD in the position
16   of Director, Classified Personnel. Brier is sued in her individual capacity and in her
17   official capacity as BUSD Director, Classified Personnel.

18   11.   Unless otherwise alleged in this complaint, Plaintiff is informed and believes and
19   based thereon alleges that at all times mentioned in this Complaint, Defendants were the
20   agents and employees of their codefendants, and in doing the things alleged in this
21   Complaint, were acting with in the course and scope of that agency and employment.

22                                    **JURISDICTION**

23   12.   Plaintiff incorporates herein by reference as though fully set forth at length the
24   allegations of paragraphs 1 through and including 11, above.

25   13.   At all material times BUSD regularly employed five or more persons, bringing
26   Defendant BUSD within the provisions of Government Code §§12900 et seq. prohibiting
27   employers or their agents from discriminating on the basis of, *inter alia*, sex.

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 3

1  14.    This Court has jurisdiction over the subject matter of this dispute pursuant to

2  Government Code §§ 12900 et seq. as this is a claim of employment discrimination

3  against a public employer that regularly employs 5 or more persons and whose principal

4  place of business is located in the County of Alameda, State of California.

5                                              **FACTS**

6  **Overview**

7  15.    Plaintiff incorporates herein by reference as though fully set forth at length the

8  allegations of paragraphs 1 through and including 14, above.

9  16.    Mr. Faurie was subjected to a continuing course of unlawful conduct during his

10  tenure at BUSD which reached intolerable proportions on July 11, 2006. At a Human

11  Resources staff meeting on July 11, 2006, over Mr. Faurie's objections, Udell orally

12  confirmed that she knowingly was ordering Mr. Faurie to engage in unlawful and

13  unethical acts in his capacity as Administrative Coordinator – Confidential, which she

14  explicitly confirmed to constitute implementation of BUSD policy approved by

15  Superintendent Lawrence. When Mr. Faurie questioned the advisability and legality of

16  the ordered course of action (discussed in detail below), he was subjected to a hostile and

17  offensive environment by Udell, causing him to become ill, thereby forcing him to leave

18  the meeting due to emotional and physical injuries. This treatment by Udell also was part

19  of a pattern and practice of discrimination against male employees based on sex, which

20  was continuing in nature, occurring through July 17, 2006, as detailed below.

21  17.    The incident on July 11, 2006, was the culminating event in a continuing course

22  of such unlawful treatment of Mr. Faurie, stretching back in time to the beginning of his

23  employment with BUSD in or about October 2002. Throughout the course of Mr.

24  Faurie's employment, he was regularly and repeatedly ordered by Lawrence, Brier, and,

25  upon their appointment, Dodson, Udell, and Obieta to engage in unlawful acts and was

26  subjected to a hostile environment when he questioned, objected to, or refused to

27  implement, such unlawful directives.

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 4

1    18.    BUSD administration also engaged in a pattern and practice of discrimination
2    within the Human Resources Department on the basis of sex by applying different
3    standards to women than to men with regard to working out of classification, granting of
4    differential pay, responses to filing of workers' compensation claims, granting of requests
5    for vacation leave, and quantity of work assigned. This pattern and practice of
6    discrimination occurred on a continuing basis through July 17, 2006.   Mr. Faurie also
7    was subjected to a hostile working environment because of his sex, on a continuing basis
8    through July 17, 2006.

9    19.    In addition to his claims of discrimination based on sex, Mr. Faurie also was
10    regularly required to work out of his job classification by performing the duties of the
11    Director of Classified Personnel without appropriate differential pay. Multiple requests
12    by Mr. Faurie to reclassify his position appropriately to realistically encompass the duties
13    he was required to perform were summarily and unjustifiably denied.

14    20.    Further, Mr. Faurie was subjected to a hostile and offensive work environment in
15    retaliation for exercising his lawful right to file a claim for workers' compensation due to
16    physical injuries that were proximately caused by the performance of his duties as an
17    employee of BUSD.

18    21.    Mr. Faurie was informed on at least one occasion by California Department of
19    Justice personnel that an employee hired by Lawrence should not be working for the
20    District due to her criminal record of a prohibited offense.  When Mr. Faurie drew this
21    information to the attention of Brier, he was informed that the Superintendent was aware
22    of the situation and that he was ordered to "drop the subject." Upon raising the subject
23    again, Mr. Faurie was again ordered to be silent and was subjected to a hostile
24    environment in retaliation for his discussion of the unlawful actions of the
25    Superintendent.  Such retaliation was routine in the H.R. Department and was the
26    reaction of administrative personnel throughout Mr. Faurie's tenure when he identified
27    unlawful BUSD policies, practices, and actions.

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 5

1    22.    Mr. Faurie submitted complaints to the California Department of Justice, the
2    Alameda County Superintendent of Schools, and the California Public Employee
3    Retirement System regarding unlawful policies and practices ordered and implemented
4    by BUSD administrative staff over his objections.

5    23.    Mr. Faurie was subjected to unreasonable retaliatory offensive and hostile
6    conduct in reaction to the above-summarized and other attempts to identify and resist
7    unlawful directives, as detailed below.

8    24.    A reasonable person in Mr. Faurie's position would have believed he had no
9    choice but to resign his position with BUSD due to the hostile environment and
10   discriminatory conduct to which he was subjected. Consequently, his resignation of
11   employment on July 16, 2006, constitutes a constructive discharge of employment. This
12   fact has been confirmed by an agent of the Employment Development Department who
13   approved his claim for unemployment insurance, and has been affirmed on appeal due to
14   the District's failure to controvert it before an EDD administrative law judge.

15   25.    As a result of his unlawful constructive discharge and the continuing course of
16   unlawful conduct which culminated in it, Mr. Faurie suffered and continues to suffer
17   physical injuries and severe emotional distress, loss of wages, benefits, retirement
18   contributions, proper professional classification, expenses incurred in securing new
19   employment, and reputation, and suffered interruption of his professional and economic
20   advancement.

21   **Chronology of Events**

22   26.    Plaintiff incorporates herein by reference as though fully set forth at length the
23   allegations of paragraphs 1 through and including 25, above.

24   27.    At all material times until the date of his constructive discharge on July 16, 2006,
25   Mr. Faurie was employed by BUSD in the position of Administrative Coordinator –
26   Confidential. He reported directly to Brier from his date of hire until Brier's resignation
27   in or about May 2006. It was unclear from the date of Brier's resignation to whom Mr.
28   Faurie was to report, other than to the Superintendent.

28.    Throughout Mr. Faurie's employment with BUSD, Brier frequently was absent from the H.R. Department offices, during which absences Mr. Faurie was required to perform the duties of her position. Brier also took vacation leave from her position as Director, Classified Personnel for approximately three business weeks per year while supervising Mr. Faurie. During those periods of leave, Mr. Faurie was directed to perform the duties of Brier's position and did perform those duties. It is standard procedure throughout the District to officially appoint another employee to assume responsibility for the duties of an absent manager, but Mr. Faurie was required to perform those duties without official appointment and without appropriate differential compensation.

29.    After Mr. Faurie performed the duties of Director of Classified Personnel during the first of Brier's extended vacation leaves and multiple instances of performing her professional responsibilities during her frequent and periodic short-term leaves from the office, Mr. Faurie began requesting differential pay for his performance of Brier's duties. Payment of such differential compensation is mandated by BUSD merit system rules. On each occasion, Brier refused to grant appropriate differential compensation. At the end of her second extended vacation leave during the Summer of 2005, Mr. Faurie submitted to Brier a timesheet recording his performance of her duties and requesting differential pay for the documented coverage he provided. Brier again refused to grant Mr. Faurie appropriate differential pay.

30.    Mr. Faurie regularly covered Brier's duties in the H.R. Department to an extent well above his professional classification during Brier's absence from the H.R. offices every week of Faurie's employment. The demand that Mr. Faurie perform the duties of the position occupied by Brier became even more burdensome upon her resignation, because no one was appointed to replace her and Mr. Faurie was expected to fill in the gap until a successor was hired.

31.    Lawrence hired a part-time, temporary consultant to help keep the H.R. Department running when Brier resigned. However, that individual was untrained, was

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 7

1    present at most three days per week, and relied on and consulted with Mr. Faurie to learn
2    the Department's procedures and daily administrative needs, thereby leaving Mr. Faurie
3    in the *de facto* position of decision making, information dissemination, and H.R.
4    Department management after Brier's resignation.

5    32.    Although Brier refused during her tenure to grant Mr. Faurie appropriate
6    differential pay for his performance of her professional duties, when Mr. Faurie was
7    absent due to workers compensation leave, another (female) employee was granted
8    differential pay to perform his responsibilities. Notwithstanding that payment of
9    differential compensation, the individual so compensated was not properly relieved of her
10   ordinary duties and, consequently, did not perform the preponderance of work properly
11   within Mr. Faurie's job duties, leaving tasks unfinished for him to bring current upon his
12   return. Mr. Faurie does not dispute the propriety of granting differential pay to an
13   individual called upon to cover his duties in his absence, but contends that the refusal to
14   compensate him for performing the duties of the Director of Classified Personnel was
15   unjustified and violated merit system rules and practices. Moreover, whether or not Brier
16   was present and regardless of whether he performed all of her duties in her absence or
17   presence, he was required throughout his tenure to perform duties well above his
18   professional classification without appropriate differential compensation.

19   33.    In or about May 2006, Mr. Faurie complained to Dodson about being forced to
20   work above his professional classification without appropriate differential compensation.
21   Dodson stated to Mr. Faurie, "you should do any job asked of you because you are smart
22   regardless of whether or not it is in your job classification."

23   34.    The requirement that Mr. Faurie perform duties above his professional
24   classification without appropriate differential pay persisted throughout his entire tenure
25   with BUSD, through the date he was forced to leave his employment due to the
26   unreasonable level of hostility and unlawful treatment he received.

27   35.    In addition to violating Mr. Faurie's rights under Merit System rules, the refusal
28   to grant him differential pay for work performed was part of a pattern or practice of

1  discrimination based on sex in the BUSD H.R. Department. During all times material to
2  Mr. Faurie's claim, women were treated differently and more favorably to similarly
3  situated men with regard to assignment of work, payment of differential compensation,
4  granting of vacation leave, and subjection to a hostile work environment in retaliation for
5  requesting that their rights be honored or that legal duties applicable to BUSD be
6  fulfilled.

7  36.    During Mr. Faurie's tenure, four men (including Mr. Faurie) resigned their
8  employment without notice (in one case with a single day of notice) due to intolerable
9  and unlawful working conditions in the BUSD H.R. Department. Mr. Faurie is informed
10  and believes and based thereon alleges that Jason Hunter resigned his position as
11  Supervisor, Risk Management, Workers' Compensation and Benefits on or about
12  September 9, 2005, because he was regularly required to perform duties out of his
13  professional classification without appropriate differential pay and was subjected to an
14  excessive workload while similarly situated female employees were spared such
15  treatment. Mr. Hunter informed Mr. Faurie that, when Mr. Hunter resigned, Lawrence
16  threatened to contact his new employer and inform it that he was "unprofessional",
17  despite the fact that Mr. Hunter had received positive performance evaluations.

18  37.    Mr. Faurie is informed and believes and based thereon alleges that Robert
19  Valentine resigned from his position of Senior Personnel Assistant on December 9, 2005,
20  without any notice because he was denied overtime, differential pay, and vacation and
21  was unfairly and disproportionately disciplined on an ongoing basis while similarly
22  situated female employees were not subjected to such denials and discipline.
23  Specifically, with regards to the CBEDS report, Mr. Valentine presented documentation
24  in support of his request for differential pay, but was denied it every year. Mr. Faurie is
25  further informed and believes and based thereon alleges that two individuals were utilized
26  to perform Mr. Valentine's job duties, both of whom were at a higher classification, one
27  of whom was in a certificated position (which is in violation of applicable of collectively
28  bargained terms), and one of which was paid at a rate more than double Mr. Valentine's

1   pay. Neither individual was an expert, and in fact were completely uninformed regarding
2   the relevant procedures and requirements.

3   38.    Mr. Hunter and Mr. Valentine, along with Mr. Faurie, were made physically ill
4   due to a retaliatory hostile work environment to which they were subjected because of
5   their persistence in securing equal treatment as men and because of their requests for
6   appropriate differential pay for work they were directed to perform out of professional
7   classification.

8   39.    Provisional employee Gene Boucher was subjected to such a hostile work
9   environment based on his sex that he resigned from the District without notice on August
10   7, 2006. Mr. Faurie is informed and believes and based thereon alleges that this hostile
11   environment consisted of unduly rude and offensive hostile behavior by Udell against
12   Boucher due to his sex, as only males and no females were subjected to such treatment by
13   Udell.

14   40.    All four males hired during Mr. Faurie's nearly four years of employment with
15   the District within the Human Resources Department left without notice; no female
16   employee submitted such abrupt resignations due to hostile and unlawful working
17   conditions.

18   41.    In or about May 2004, Mr. Faurie orally complained to Brier about a pattern of
19   the Superintendent hiring employees without statutorily required fingerprint clearances
20   and with criminal records of prohibited offenses. His concern stemmed from his
21   knowledge regarding the improper hiring of two individuals and was voiced upon the
22   improper hiring of the second of those individuals. Jane Doe 1[1] was hired without DOJ
23   clearance and was later terminated upon the District's receipt of notification of a
24   prohibited offense. Jane Doe 2 was similarly hired in or about May 2004 without DOJ
25   clearance. When asked to obtain fingerprint clearance, Jane Doe 2 temporarily resigned
26

27   _____
[1] The individuals who were improperly hired are identified herein as "Jane Doe" or "John
28   Doe" to preserve their privacy until such time as disclosure of their identities becomes
necessary to resolve disputed factual issues.

1   her position. During a subsequent discussion with Brier, Jane Doe 2 orally represented
2   that she had only been convicted of minor offenses that did not preclude her employment.
3   Based upon that uncorroborated representation, Brier reappointed Doe 2 to her position
4   upon the understanding the results of her DOJ report must coincide with her statement or
5   that she would be immediately terminated. The subsequent report was received by the
6   District approximately one year later, chronicling an extensive criminal history replete
7   with prohibited offenses that precluded her employment by the District. Yet, Jane Doe 2
8   remained and, on information and belief, remains employed by BUSD.

9   42.   In or about May 2004, Mr. Faurie complained about the impermissible
10   appointment of Jane Doe 2 to Brier. noting that Doe 2 had lied on her job application,
11   orally lied about her criminal history in order to obtain reappointment, and that she had a
12   criminal record of offenses that precluded her lawful employment by BUSD. Brier told
13   Mr. Faurie that she had notified Lawrence regarding the legal issues related to Jane Doe
14   2's appointment and told Mr. Faurie that there was nothing Brier could do and that the
15   matter was in the Superintendent's hands. Subsequent to these events, the Superintendent
16   hired John Doe 1 on September 12. 2005, who also started work without fingerprint or
17   tuberculosis clearance, contrary to law. Clearance was later received, but the hiring of
18   employees without such clearance was repeated with John Doe 1's employment. Brier
19   directed Mr. Faurie to ignore the situation.

20   43.   During the period between May 2004 and October 2005 (when Mr. Faurie went
21   on Workers Compensation leave), and during the period between February 2006 (when
22   he returned from Workers Compensation leave) and May 2006, Mr. Faurie also orally
23   complained to Brier regarding a repeated and ongoing practice by BUSD administrative
24   staff, including Brier, of failing to preserve the privacy of employee personnel files.
25   Confidential file contents were routinely left on copy machines and facsimile machines
26   where they were subject to perusal by unauthorized individuals. Mr. Faurie also
27   expressed concerns regarding the H.R. Department's failure to notify the Department of
28   Justice upon the termination of employment of various individuals, which failure resulted

1   in the District continuing to receive subsequent arrest reports to which it was not legally
2   authorized access. Brier dismissed Mr. Faurie's concerns as trivial and undeserving of
3   administrative response or elimination. Brier also subjected Mr. Faurie to hostility
4   because of his continued efforts to draw her attention to unlawful practices in the
5   Department under her direction.

6   44.   In early July 2006, a BUSD administrator, who Mr. Faurie reasonable believed to
7   be under investigation for illegal and immoral practices, requested to review an employee
8   file. Mr. Faurie referred the individual to Dodson who, Mr. Faurie was instructed at an
9   H.R. staff meeting, was authorized to accompany employees during such requests.
10  Dodson was visibly irritated by the referral of the employee to him, and he rolled his eyes
11  and looked away from Mr. Faurie as he accompanied the individual to the file room.
12  Dodson then left the individual alone with the confidential files for several minutes, in
13  direct violation of law. Attempts by Mr. Faurie to address this problem with Dodson
14  were met with hostility and condescension, and Mr. Faurie was treated as though his
15  comments on the subject were detrimental to his employment status.

16  45.   On July 11, 2006, Mr. Faurie referred another personnel file review request by a
17  different individual to Dodson. Shortly thereafter, Obieta appeared in Mr. Faurie's office
18  with the requested personnel file. She had been in her position for two days and not
19  spoken to Mr. Faurie despite the fact that she was his newly appointed supervisor. Obieta
20  confronted Mr. Faurie and informed him that he must accompany the employee during
21  review of the file, although the H.R. staff had been informed that only H.R. management
22  were allowed to do so. When Mr. Faurie attempted to inform Obieta of this policy and
23  the statutory privacy-based reasons for it, Obieta's tone was hostile and unprofessional
24  towards Mr. Faurie immediately prior to the H.R. Staff meeting on July 11, 2006 that
25  resulted in his constructive discharge.\

26  46.   During the period between May 2004 and July 2006, Mr. Faurie also voiced to
27  administrative personnel, including Brier and Dodson a concern regarding failure by the
28  District to obtain "livescan" digital fingerprint records of current employees as required

*Gene Faurie, Jr. v. BUSD et al.* - Complaint for Damages -- p. 12

1  by law. He was informed that the cost of securing those records was too great and that he
2  was to ignore the situation.

3  47.    Beginning in June 2004, after multiple attempts to address these unlawful
4  practices in the H.R. Department were met with hostility and lack of receptiveness or
5  response, Mr. Faurie submitted telephonic complaints to the State of California
6  Department of Justice regarding employees being hired without fingerprint clearance,
7  employees being hired despite having a criminal record of statutorily prohibited offenses,
8  employees being retained without livescan digital fingerprint records, and of failure by
9  BUSD H.R. officials to submit "no longer interested" forms to the Department of Justice
10  upon termination of individuals' employment (which is statutorily required in order to
11  prevent invasion of those employees' privacy). Mr. Faurie also regularly inquired
12  regarding the status of the criminal background records of Doe 2 throughout this period.
13  48.    In or about May 2005, a DOJ representative informed Mr. Faurie that Jane Doe 2
14  should not be working for the District due to her record of prohibited criminal offenses.
15  Mr. Faurie was referred by the DOJ official to the Alameda County Office of Education.
16  Mr. Faurie informed Brier; Brier told Mr. Faurie that Lawrence knew of the situation and
17  that Mr. Faurie was directed to "drop the issue." Mr. Faurie again raised the issue with
18  Brier and again was told to "drop the issue." During the period between May 2005 and
19  July 2006, all attempts to address this issue and the larger unlawful BUSD practice it
20  represented were rebuffed with hostility and intractable refusal to respond or take action.
21  This precipitated an increasingly hostile response from Brier which Mr. Faurie is
22  informed and believes and based thereon alleges was based on directives from Lawrence
23  to ignore the legal violations, which directives continued to be implemented by the other
24  individual defendants.

25  49.    During the period from May 2004 to July 2006, Mr. Faurie regularly drew to the
26  attention of Brier and Dodson the fact that BUSD routinely failed to follow proper
27  procedures for newly appointed employees for enrollment in the California Public
28  Employee Retirement System (hereinafter "CalPERS"). Mr. Faurie's concerns, as with

1   all of his efforts to assist the District in complying with its legal responsibilities and
2   avoiding liability for legal violations, were rebuffed and met with hostility from
3   administrative staff to whom he reported. In addition, Brier unlawfully distributed
4   confidential CalPERS passwords to unauthorized individuals to avoid the inconvenience
5   of obtaining proper authorization for individuals to whom she wished to delegate
6   information-retrieval duties. Mr. Faurie reported this legal violation to CalPERS on or
7   about November 2005, which resulted in the suspension of the passwords until proper
8   authorization was obtained by CalPERS. Brier knew of this report because she was
9   required to obtain a valid password for the individuals to whom she had unlawfully given
10  confidential passwords.

11  50.     In addition to the foregoing, in or about January 2005, Mr. Faurie notified Brier
12  that he was suffering from a repetitive stress injury to his right hand and arm due to a
13  work-related repetitive stress injury. Mr. Faurie continued with his assigned duties until
14  he was prevented from performing them due to extreme pain he suffered as a result of his
15  injury. He subsequently filed a workers' compensation claim in July 2005 in order to
16  seek appropriate medical treatment. Upon learning of Mr. Faurie's workers
17  compensation claim, Brier immediately became hostile, yelled at Mr. Faurie "if this is
18  what you want to do...fine!" and threw the signed claim form at him. She then loudly
19  ordered him to stop typing and quickly left his office.

20  51.     Despite orders from the District-appointed physician that Mr. Faurie take ten-
21  minute breaks per hour, Brier repeatedly ignored this directive and issued work for Mr.
22  Faurie to perform, and routinely interrupted his breaks in order to address work issues,
23  which generally involved use of Mr. Faurie's hand, in direct violation of his doctor's
24  orders. Due to the lack of rest required for improvement of his condition, the doctor
25  increased Mr. Faurie's rest period to twenty minutes per hour, which Brier also ignored
26  as she continued to interrupt his rest periods. Brier informed Mr. Faurie that his doctor
27  was "crazy" and "didn't know what he was doing." She also claimed that the directed
28  rest period only inferred that Mr. Faurie should not type, and that his doctor was "crazy"

1   and "incompetent." Mr. Faurie confirmed with his doctor that he was directed not to
2   perform any work of any type during his rest period, and the doctor was infuriated by
3   Brier's lack of cooperation needed in order for Mr. Faurie to recover in a timely manner.
4   Mr. Faurie attempted to lock his office door to prevent interruptions of his breaks by
5   Brier, but Brier became enraged and informed Mr. Faurie that he "must be available at all
6   times" regardless of the doctor's direction. In or about October 2005, the worker's
7   compensation physician placed Mr. Faurie on medical leave to stop Brier's refusal to
8   accommodate his medical limitations.

9   52.     Upon his return from leave, Mr. Faurie requested to Inez Reed, Supervisor of
10  Workers' Compensation, that his new work location be evaluated to prevent a
11  reoccurrence of his injury, but his requests were ignored. Brier was aware of his requests
12  yet refused to take action to ensure that the evaluation was performed.

13  53.     At the time of Mr. Faurie's departure from BUSD, all female employees within
14  the H.R. Department had filed workers' compensation claims for varying reasons; none
15  were treated with hostility for doing so in the manner in which Brier behaved with Mr.
16  Faurie.

17  54.     On three separate occasions in July 2006, immediately prior to Mr. Faurie's
18  constructive discharge, Mr. Faurie had asserted both orally and in writing the need for
19  extension of a deadline and/or a request for overtime compensation to adequately execute
20  duties for processing classified employee step increases, but he was unjustifiably denied
21  and/or ignored on all three occasions. However, Udell granted Paula Phillips, a female
22  employee within the H.R. Department, extension of the deadline and authorized overtime
23  to perform step increase determinations. Claimant does not dispute that extension given
24  to Ms. Phillips by Udell was proper and necessary, but contends that the denial of his
25  request was retaliatory and discriminatory, creating a hostile and unlawful work
26  environment, and preventing him from being able to perform his contractual duties and
27  enjoy the benefits of his contractual relationship with BUSD.

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 15

1    55.    In February 2006, Mr. Faurie was threatened by Brier with disciplinary action if
2    he did not comply with a "stacked" discipline process. The process for following
3    disciplinary procedures is clearly outlined in collective bargaining agreements as well as
4    in the merit system rules. Brier routinely ignored these rules through creation of a
5    predetermined outcome for disciplined employees. Brier regularly handled multiple
6    levels of the disciplinary process on behalf of other individuals who were assigned to
7    address employee discipline matters, thereby violating disciplined employees' rights to
8    procedural due process and compliance with established District policies. The process
9    lacked the neutrality required of Brier's position as both Director. Classified Personnel
10   and liaison to the Merit Commission, and garnered repeated complaints by employees'
11   union representatives.

12   56.    At least two attorneys employed by or affiliated with the law firm that represented
13   the District in disciplinary matters were directly involved in disregarding procedural due
14   process constraints on the disciplinary process. Mr. Faurie heard one attorney state to
15   Brier and Payroll Supervisor Lori Lewis that, despite a particular employee's progress,
16   they were "going to get her anyway." Discipline procedures against the employee
17   continued because, as the attorney stated, she "did not care" about improvements in work
18   performance made by the employee. A second attorney, was hired from the same firm by
19   Lawrence as an interim Assistant Superintendent of Human Resources/Consultant, yet
20   the position is required to be neutral in nature due to Constitutional procedural constraints
21   on disciplinary and merit system matters. Mr. Faurie objected to these violations of
22   employees due process rights, but was rebuffed by Brier, who informed him that if he did
23   not participate in implementation of the disciplinary process he would be considered
24   insubordinate.

25   57.    Mr. Faurie was ranked in the highest category of each of his performance
26   evaluations. His evaluations by Brier stated that she was comfortable leaving the office
27   knowing that Mr. Faurie was available to handle issues in her absence. They also
28   demonstrated that he worked above his assigned classification. Mr. Faurie is informed

1 and believes and based thereon alleges that a classification study performed by Reward
2 Strategy Group during and after Mr. Faurie's employment with BUSD confirmed that
3 Mr. Faurie was working at a higher level on a regular basis and concluded that his
4 position should be reclassified as an Analyst.

5 58.    On or about July 5, 2006, Udell was hired by BUSD. Udell possessed apparent
6 supervisory authority over employees in the BUSD Human Resources Department,
7 pending appointment of a replacement for Brier. However, as with the consultant hired
8 on a temporary basis upon Brier's resignation, Udell was untrained and relied on Mr.
9 Faurie to advise her and perform duties of her position while she learned it. He did not
10 receive appropriate differential pay for working out of his classification during this
11 period. On or about July10, 2006, Obieta was hired into the position of Director,
12 Classified Personnel. Similarly, Obieta lacked appropriate training and experience.
13 59.    Udell called a meeting of the BUSD H.R. Department staff on July 11, 2006. At
14 that meeting, Udell directed BUSD staff, including Mr. Faurie, to ignore legal violations
15 by the District in regards to adherence to the No Child Left Behind Act testing
16 requirements. as well as forced early retirement of several employees based on improper
17 District actions. Mr. Faurie stated to Udell that the course of conduct she was ordering
18 was contrary to law. She reacted to Mr. Faurie's questioning of her directive with open
19 hostility and told him that she "knows we are breaking the law" but that her directive was
20 consistent with BUSD policy as communicated and authorized by Superintendent
21 Lawrence. When Mr. Faurie persisted in voicing his understanding that the directed
22 course of conduct was unlawful and that it would put the District and potentially its
23 individual employees in legal jeopardy, he was accused, rudely and openly in front of his
24 co-workers, of having an "attitude problem" and was admonished to drop the subject.
25 This incident demonstrated in unavoidable terms that Lawrence had ignored all
26 complaints regarding unlawful directives by BUSD administrative staff, unlawful
27 treatment of employees. as well as legally perilous and intractable administrative
28 incompetence at the Director level.

1   60.   Mr. Faurie, having diligently endeavored for years to patiently request that some

2   modicum of integrity and law-abiding behavior be instilled into the policies and practices

3   of the BUSD administration, and having persistently attempted to secure equal treatment

4   as a male, was subjected to a threshold of intolerability that no reasonable person would

5   be able to endure without injury. He was rendered physically ill and extremely

6   emotionally distressed by Udell's offensive and hostile rebuke to his final attempt to raise

7   the issue of BUSD's unlawful policies and practices. Consequently, he left the meeting

8   due to emotional and physical injury. Mr. Faurie left a voice mail message later that

9   same day for Obieta, his direct supervisor, informing her that he was ill and would be out

10   on sick leave for the remainder of the week and that he would notify her on Monday, July

11   17, 2006, whether he intended to tender his resignation.

12   61.   Later the same day, Obieta left a voice mail message on Mr. Faurie's home

13   telephone answering machine in which she (1) demanded that Mr. Faurie provide a

14   doctor's note by June 12, 2006, for his absence due to illness; (2) said "You've also told a

15   number of people that you are resigning, um, so, you can also go ahead and bring in your

16   letter of resignation tomorrow"; and (3) told him he could call her if he had any questions

17   but that she could not remember her phone number.

18   62.   Through his attorney, Mr. Faurie sent a letter to Obieta on July 12, 2006 via

19   facsimile and certified U.S. mail, informing her that, given that Mr. Faurie had no history

20   of abusing his sick leave and in light of District policies and practices, she had no lawful

21   basis to demand that he produce a doctor's note on July 12, 2006. The letter also noted

22   that Mr. Faurie's illness, both physical and emotional, had been caused by ongoing

23   managerial inadequacies in her department and a hostile work environment to which he

24   was subjected because of drawing attention to illegal courses of action directed by BUSD

25   H.R. administrative personnel. The letter also set forth Mr. Faurie's claims that there was

26   a pattern and practice of discrimination in the department on the basis of sex, that

27   employees are required to work out of job classification without appropriate differential

28   compensation, and that Mr. Faurie had lodged several complaints with CalPERS, the

1  Alameda County Superintendent of Schools, and the State Department of Justice
2  regarding legal violations in the BUSD H.R. Department. The letter further set forth that
3  Mr. Faurie had not resigned his employment, and that any attempt to terminate his
4  employment would constitute tortious wrongful discharge in violation of fundamental
5  public policy, termination without just cause, a whistleblower violation, and
6  discrimination based on sex. Obieta was admonished not to contact Mr. Faurie directly
7  and to preserve all documents and electronic records regarding him.

8  63.    Lawrence responded to Mr. Faurie's counsel's letter via telephone call on July 13,
9  2006. During that conversation, Lawrence inaccurately stated that Mr. Faurie had six
10  days of sick leave accrued (he actually had 18, which Lawrence later acknowledged),
11  granted Mr. Faurie's request for sick leave, refused to acknowledge that Mr. Faurie had
12  been subjected to a hostile environment in retaliation for identifying illegal directives
13  from his superiors or had been subjected to disparate treatment based on his sex, and
14  informed Mr. Faurie's counsel that Mr. Faurie had "burned his bridges" with BUSD
15  administrative staff. That conversation was memorialized in a letter from Mr. Faurie's
16  counsel to Lawrence dated July 14, 2006.

17  64.    Mr. Faurie's attorney sent another letter to Lawrence via facsimile and U.S. Mail
18  on July 17, 2006. The letter further memorialized the telephonic conversation with Ms.
19  Lawrence of July 13, 2006, and observed that Lawrence's representations regarding her
20  understanding of the issues presented, the attitude of the BUSD H.R. administrative staff
21  regarding Mr. Faurie, and her statement that he had "burned his bridges" when in fact he
22  had been forced to leave due to illness caused by an unlawful hostile work environment,
23  indicated the toxic work environment could not be considered reasonably likely to
24  improve. Consequently, via his attorney, Mr. Faurie conveyed his intent to resign his
25  position under duress.

26  65.    Lawrence sent two letters to Mr. Faurie's counsel on July 17, 2006, one
27  erroneously dated July 14, 2006, and one correctly dated July 17, 2006. With those
28  letters, Lawrence requested that Mr. Faurie tender his resignation using an approved

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 19

1    BUSD form and that he provide written authorization for his attorney to speak on his
2    behalf.

3    66.    Mr. Faurie's attorney replied with a letter dated July 19, 2006, confirming Mr.
4    Faurie's resignation and addressing other matters raised by Lawrence. Attached to that
5    letter was a signed BUSD resignation form, completed and signed by Mr. Faurie, in
6    which he struck out standard form language indicating that his resignation was voluntary,
7    and on which he stated that he had been constructively discharged due to a hostile and
8    illegal working environment. Also attached to that letter was a signed authorization for
9    Mr. Faurie's attorney to represent him with the District.

10    67.    In order to mitigate his damages, on or about July 20, 2006, Mr. Faurie submitted
11    to the Employment Development Department (hereinafter "EDD") an application for
12    unemployment insurance, asserting as the basis for his claim that he was constructively
13    discharged due to an unlawful hostile work environment to which he had been subjected
14    in retaliation for having identified, resisted, or refused to implement unlawful directives
15    by BUSD administrative staff. An EDD investigator investigated Mr. Faurie's
16    application, heard the position of BUSD staff, and determined that Mr. Faurie was
17    entitled to unemployment insurance compensation because he had been constructively
18    discharged through a hostile work environment in retaliation for resisting and reporting
19    unlawful directives by his supervisors.

20    68.    BUSD did not file a timely appeal of the EDD determination. On or about August
21    14, 2006, BUSD, through its representative, Talx UCeXpress, submitted to the
22    Unemployment Insurance Appeals Board (hereinafter "UIAB") an untimely appeal of the
23    EDD determination with a frivolous motion to excuse its late filing. Mr. Faurie and his
24    counsel appeared at the scheduled UIAB hearing, but BUSD did not appear before the
25    administrative law judge to prosecute its appeal. Consequently, the appeal was denied
26    and BUSD did not seek relief from its default or reopening of the appeal to challenge the
27    determination in Mr. Faurie's favor. Through its frivolous and unprosecuted appeal,
28    BUSD attempted to thwart Mr. Faurie's efforts to mitigate his damages, and wasted his

*Gene Faurie, Jr. v. BUSD et al.* -- Complaint for Damages – p. 20

1 | time and resources expended in preparing and appearing for an appeal the District
2 | apparently decided to abandon.

3 | 69.    Also in order to mitigate his damages, Mr. Faurie engaged in an intensive and
4 | persistent job search throughout the greater San Francisco Bay Area from July 17, 2006,
5 | through December 2006, when he was offered and accepted a new position. However,
6 | the position to which he was hired is lower in rank than the professional classification for
7 | which he is qualified, as evidenced by his placement on the eligibility list for a higher
8 | classification equivalent to a Senior Personnel Analyst. He accepted this lower position
9 | to mitigate damages and bring in desperately needed income. But, his unlawful
10 | constructive discharge from BUSD employment continues to result in diminished
11 | compensation and delayed professional advancement.

12 | 70.    Mr. Faurie immediately consulted with a psychiatrist upon his unlawful
13 | constructive discharge and has remained under the care of that psychiatrist continually to
14 | the present. He has been treated for severe anxiety, panic attacks, and emotional distress
15 | resulting from the unlawful treatment he received from BUSD administrative staff.

16 | 71.    Plaintiff at all times duly performed all the conditions of the employment
17 | agreement until Defendants prevented him from doing so. At all times relevant to this
18 | Complaint, Plaintiff was ready, willing, and able to perform his job until he was
19 | constructively discharged by Defendants.

20 | **B. Satisfaction of Tort Claims Act Claim Presentation Requirement**

21 | 72.    Plaintiff incorporates herein by reference as though fully set forth at length the
22 | allegations of paragraphs 1 through and including 71, above.

23 | 73.    On January 10, 2007, Mr. Faurie, by and through his counsel, filed with the duly
24 | designated agent and the President of the governing Board of BUSD a detailed Notice of
25 | Tort Claims, pursuant to Government Code § 900 et seq., with a 21 – page attachment, in
26 | which he set forth in detail the foregoing factual allegations and the claims for relief
27 | alleged herein, and in which he requested to be made whole for the losses he suffered as
28 | detailed herein.

1    74.    Plaintiff is informed and believes and based thereon alleges that, on or about

2    February 21, 2007, the BUSD governing Board met in closed session to discuss Mr.

3    Faurie's Tort Claims, consulted with the Board's counsel, and on that date either took no

4    action on his claims or rejected his claims, but in any case took action adverse to his

5    claims in their entirety.

6    75.    Plaintiff is informed and believes and based thereon alleges that on or between

7    February 21, 2007 and February 23, 2007, the BUSD Board, apparently acting pursuant

8    to advice of counsel, promulgated false and misleading meeting minutes which falsely

9    represent that, on February 7, 2007, the Board had rejected portions of Mr. Faurie's claim

10    that accrued after July 10, 2006.

11    76.    Repeated attempts by Plaintiff's counsel to obtain a clarification from counsel for

12    the BUSD Board regarding what action the Board took on Mr. Faurie's claims and when

13    such action was taken were rejected by counsel for the BUSD Board, who confined her

14    answers to referring to the fraudulent meeting minutes, which do not reflect what actually

15    took place or when the Board took action on Mr. Faurie's claim.

16    77.    Notwithstanding the fraudulent meeting minutes and the refusal of counsel for the

17    Board to accurately and clearly state when her client took action on Mr. Faurie's claims

18    and what action it took, it is clear that the Board ultimately rejected Mr. Faurie's tort

19    claim in its entirety.  Mr. Faurie has, therefore, satisfied his tort claim presentation

20    requirement and is now permitted to file this action against Defendants, and each of them.

21    78.    Subsequent to the BUSD Board's rejection of Mr. Faurie's Tort claims, counsel

22    for BUSD's Board commenced an investigation into the merits of his claims.

23    **C.  DFEH Complaints and Right-To-Sue Letters**

24    79.    Plaintiff incorporates herein by reference as though fully set forth at length the

25    allegations of paragraphs 1 through and including 78, above.

26    80.    On March 26, 2007, Plaintiff, by and through his counsel, filed a complaint with

27    the Department of Fair Employment and Housing against Defendants, and each of them,

28    and requested immediate right-to-sue letters. In his complaints, Plaintiff alleged the facts

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 22

1   set forth herein and asserted against each and every Defendant a claim of unlawful

2   discrimination on the basis of sex in violation of Government Code §12900 et seq.

3   81.    The Department of Fair Employment issued Right-To-Sue Notices dated March

4   28, 2007, regarding each and every Defendant.

5   82.    On May 15, 2007, Plaintiff, by and through his counsel, timely served each and

6   every Defendant with the DFEH complaint filed against him/her/it and with a copy of the

7   corresponding Right-To-Sue Notice for each and every Defendant.

8   83.    Therefore, Plaintiff has exhausted his administrative remedies prerequisite to

9   bringing a civil action pursuant to Government Code §12900 et seq. and is free to pursue

10  the instant action.

11                           **FIRST CAUSE OF ACTION**

12           **(Tortious Wrongful Discharge in Violation of Fundamental Public Policy)**

13  84.    Plaintiff incorporates herein by reference as though fully set forth at length the

14  allegations of paragraphs 1 through and including 83, above.

15  85.    Mr. Faurie asserts that he was constructively discharged because a reasonable

16  person in his circumstances, facing the hostile and offensive retaliatory environment to

17  which he was subjected, would feel no choice but to resign. As noted above, this fact has

18  been confirmed by the Employment Development Department, which finding was

19  uncontroverted by BUSD on its late-filed and abandoned appeal to the Unemployment

20  Insurance Appeals Board.

21  86.    Mr. Faurie's constructive discharge was wrongful because it was in violation of

22  the fundamental policy of the State of California in that his termination was in retaliation

23  for his complaints regarding unlawful practices and policies of the BUSD knowingly

24  approved and authorized by the Superintendent, his refusal to perform unlawful acts, and

25  his refusal to remain silent regarding ongoing violations of law and public policy, as

26  detailed in the statement of facts above.

27  87.    As a direct, foreseeable, and proximate result of BUSD's and the individual

28  Defendants' wrongful termination of Mr. Faurie in violation of fundamental public policy

1   of the State of California, Mr. Faurie has suffered, and continues to suffer, lost income,

2   loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing

3   new employment, including but not limited to loss of appropriate differential pay from

4   April 2003 through July 2006, proper job classification and associated rate of pay from

5   April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to

6   January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to

7   January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1,

8   2007, and front pay constituting the difference between his current rate of pay and the

9   pay he would receive as a Senior Administrative Analyst, all to his damage in an amount

10  in excess of $200,000.00, the precise amount of which is subject to proof.

11  88.    As a further direct, foreseeable, and proximate result of BUSD's and the

12  individual Defendants' wrongful termination of Mr. Faurie in violation of fundamental

13  public policy of the State of California, Mr. Faurie has suffered gastrointestinal

14  disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in

15  excess of $100,000.00, the precise amount of which is subject to proof.

16  89.    Also as a direct and proximate result of the unlawful actions described above, Mr.

17  Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

18  including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

19  humiliation, fear, embarrassment, depression and discomfort all to his damage in an

20  amount in excess of $400,000.00, the precise amount of which is subject to proof.

21  90.    The actions of Defendants, and each of them, were carried out in a deliberate,

22  malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie,

23  entitling him to an award of punitive damages.

24      WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

25  them, as set forth in the prayer for relief, *infra*.

26  ///

27  ///

28  ///

1

## SECOND CAUSE OF ACTION

2

### (Breach of Contract)

3  91.    Plaintiff incorporates herein by reference as though fully set forth at length the
4  allegations of paragraphs 1 through and including 90, above.

5  92.    Mr. Faurie was employed by BUSD under contractual terms established by the
6  Merit System Rules, Board Policies, oral representations, and consistently stellar
7  performance evaluations. Under those terms, Mr. Faurie's was required to be treated
8  fairly and in conformity with the laws of the State of California, and his employment was
9  for an indefinite term not to expire as long as he successfully performed the duties of his
10  position, subject to termination only for just cause, and only in conformity with BUSD
11  written disciplinary policies and procedures.

12  93.    Mr. Faurie was ready, willing, and able to perform, and did perform, the terms of
13  his employment contract with Defendants competently and in a manner that exceeded the
14  expectations of his supervisors throughout his employment with BUSD through and
15  including the day he was constructively discharged as alleged herein.

16  94.    BUSD breached its contract with Mr. Faurie by refusing to give him the
17  opportunity to succeed at his job; blaming him for intolerable working conditions created
18  by BUSD administrative staff; failing to treat him in accordance with stated BUSD
19  policies; requiring him to perform work above his professional classification without
20  appropriate differential pay; constructively terminating his employment by subjecting
21  him to a hostile work environment in retaliation for his reporting of and refusal to
22  implement violations of law directed by BUSD administrative staff, in violation of the
23  promises made to him; constructively terminating his employment without following
24  BUSD policies and practices; and contaminating the Merit System appeals procedures by
25  ignoring Constitutionally required separation of roles as advocate for the District and
26  advisor to the commission.

27  95.    BUSD has refused and continues to refuse to allow Mr. Faurie the benefits of his
28  employment contract and to perform under this contract in the agreed upon manner.

1    96.    Resort to the Merit System appeal procedure would have been futile because Brier

2    and Lawrence were the gatekeepers to such appeals and routinely engaged in improper

3    ex-parte communications with Merit Commission members.

4    97.    As a direct, foreseeable, and proximate result of BUSD's and the individual

5    Defendants' breach of Mr. Faurie's employment contract, Mr. Faurie has suffered, and

6    continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as

7    expenses incurred in securing new employment, including but not limited to loss of

8    appropriate differential pay from April 2003 through July 2006, proper job classification

9    and associated rate of pay from April 2003 through January 1, 2007, the value of his

10   health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would

11   have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the

12   period from July 17, 2006 to January 1, 2007, and front pay constituting the difference

13   between his current rate of pay and the pay he would receive as a Senior Administrative

14   Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of

15   which is subject to proof.

16       WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

17   them, as set forth in the prayer for relief, *infra*.

18                          **THIRD CAUSE OF ACTION**

19           **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

20   98.    Plaintiff incorporates herein by reference as though fully set forth at length the

21   allegations of paragraphs 1 through and including 97, above.

22   99.    As a result of the employment relationship which existed between Mr. Faurie and

23   BUSD, the expressed and implied promises made in connection with that relationship,

24   and the acts, conduct, and communications resulting in these implied promises, BUSD

25   promised to act in good faith toward and deal fairly with Mr. Faurie which requires,

26   among other things, that:

27       (a) Each party in the relationship must act with good faith toward the other

28           concerning all matters related to the employment;

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 26

1    (b) Each party in the relationship must act with fairness toward the other concerning

2        all matters related to the employment;

3    (c) Neither party would take any action to unfairly prevent the other from obtaining

4·       the benefits of the employment relationship;

5    (d) BUSD would similarly treat employees who are similarly situated;

6    (e) BUSD would comply with its own representations, rules, policies, and procedures

7        in dealing with Mr. Faurie;

8    (f) BUSD would not terminate Mr. Faurie without a fair and honest cause, regulated

9        by good faith on BUSD's part;

10   (g) BUSD would not terminate Mr. Faurie in an unfair manner; and

11   (h) BUSD would give Mr. Faurie's interests as much consideration as it gave its own

12       interests.

13   100.   BUSD's constructive discharge of Mr. Faurie was wrongful, in bad faith, and

14   unfair, and therefore was a violation of BUSD's legal duties. Mr. Faurie further alleges

15   that BUSD breached the covenant of good faith and fair dealing when it:

16   (a) Repeatedly refused to abide by its own policies when dealing with Mr. Faurie;

17   (b) Repeatedly denied the existence of the agreements that applied to Mr. Faurie;

18   (c) Unfairly prevented Mr. Faurie from obtaining the benefits of his employment

19       relationship;

20   (d) Treated similarly situated employees differently by imposing different

21       responsibilities on similarly situated employees and granting different

22       compensation, differential pay, and employment benefits to similarly situated

23       employees;

24   (e) Constructively terminated Mr. Faurie's employment for expressing legitimate

25       concerns regarding unlawful directives, practices, and policies issued by BUSD

26       administrative staff;

27   (f) Constructively terminated Mr. Faurie's employment for false reasons and in a

28       manner that was inconsistent with BUSD's stated policies and practices.

1    101.    BUSD's breach of the covenant of good faith and fair dealing was a substantial

2    factor in causing damage and injury to Mr. Faurie.

3    102.    As a direct, foreseeable, and proximate result of BUSD's and the individual

4    Defendants' breach of the covenant of good faith and fair dealing, Mr. Faurie has

5    suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe

6    benefits, as well as expenses incurred in securing new employment, including but not

7    limited to loss of appropriate differential pay from April 2003 through July 2006, proper

8    job classification and associated rate of pay from April 2003 through January 1, 2007, the

9    value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days

10    he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for

11    the period from July 17, 2006 to January 1, 2007, and front pay constituting the

12    difference between his current rate of pay and the pay he would receive as a Senior

13    Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the

14    precise amount of which is subject to proof.

15        WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

16    them, as set forth in the prayer for relief, *infra*.

17                                    **FOURTH CAUSE OF ACTION**

18    **(Unlawful Discrimination On the Basis Of Sex [Gov. Code § 12900 et seq.])**

19    103.    Plaintiff incorporates herein by reference as though fully set forth at length the

20    allegations of paragraphs 1 through and including 102, above.

21    104.    Mr. Faurie is a male.

22    105.    This claim is brought pursuant to the California Fair Employment and Housing

23    Act, section 12940(a) of the Government Code. prohibiting termination of an employee

24    from employment on the basis of the sex of any person. and the corresponding

25    regulations of the California Department of Fair Employment and Housing.

26    106.    At all times mentioned herein. Mr. Faurie was fully qualified for the position of

27    Administrative Coordinator – Confidential.  His performance evaluations were

28

1  consistently and uninterruptedly very positive, indicating that his performance, in

2  substance and quality, exceeded the duties of his position.

3  107.    BUSD and the individual defendants conferred differential pay, granted vacation,

4· and allocated work disparately according to sex, as detailed in the statement of facts,

5  above.

6  108.    BUSD and the individual defendants also constructively discharged Mr. Faurie

7  based on his sex, as part of a pattern and practice of subjecting male employees to a '

8  hostile and offensive work environment and disparately allocating employment benefits

9  and privileges based on their sex, as detailed above.

10  109.    Mr. Faurie believes and alleges that his sex was a substantial and determining

11  factor in BUSD's constructive termination of his employment.

12  110.    BUSD's and the individual Defendants' discrimination against Mr. Faurie based

13  on his sex and constructive termination of Mr. Faurie's employment as alleged herein

14  constitute unlawful employment practices in violation of section 12940(a) of the

15  Government Code.

16  111.    BUSD's and the individual defendants' unlawful discrimination against Mr.

17  Faurie also breached their employment contract with him in that their actions were in

18  violation of relevant Merit System rules, oral representations, and reasonable

19  expectations based on positive performance evaluations.

20  112.    The unlawful discrimination against Mr. Faurie was continuing in nature and

21  commenced when Mr. Faurie was hired in or about October 2002 and continued

22  throughout Mr. Faurie's employment by BUSD.

23  113.    As a direct, foreseeable, and proximate result of BUSD's and the individual

24  Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie

25  has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe

26  benefits, as well as expenses incurred in securing new employment, including but not

27  limited to loss of appropriate differential pay from April 2003 through July 2006, proper

28  job classification and associated rate of pay from April 2003 through January 1, 2007, the

1    value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days

2    he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for

3    the period from July 17, 2006 to January 1, 2007, and front pay constituting the

4    difference between his current rate of pay and the pay he would receive as a Senior

5    Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the

6    precise amount of which is subject to proof.

7    114.    As a further direct, foreseeable, and proximate result of BUSD's and the

8    individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex,

9    Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and

10   exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount

11   of which is subject to proof.

12   115.    Also as a direct and proximate result of Defendants' unlawful discrimination

13   against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer,

14   from severe mental and emotional distress, including panic attacks, sleep disturbances,

15   anxiety attacks. persistent anxiety, humiliation, fear, embarrassment, depression and

16   discomfort all to his damage in an amount in excess of $400,000.00, the precise amount

17   of which is subject to proof.

18   116.    The actions of Defendants, and each of them, were carried out in a deliberate,

19   malicious. willful, and oppressive manner in order to injure and damage Mr. Faurie,

20   entitling him to an award of punitive damages.

21          WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

22   them, as set forth in the prayer for relief, *infra*.

23                          **FIFTH CAUSE OF ACTION**

24                   **(Intentional Infliction of Emotional Distress)**

25   117.    Plaintiff incorporates herein by reference as though fully set forth at length the

26   allegations of paragraphs 1 through and including 116, above.

27

28

1    118.    The actions of BUSD and the individual defendants alleged herein were extreme
2    and outrageous, and were inflicted with intent to cause, or with reckless disregard of the
3    probability of causing, emotional distress.

4·   119.    As a direct, foreseeable, and proximate result of BUSD's and individual
5    defendants' unlawful conduct, Mr. Faurie has suffered extreme and severe anguish,
6    humiliation, emotional distress, nervousness, tension, anxiety and depression.

7    120.    The emotional distress intentionally caused was not a normal risk or incident of
8    employment because it was incident to Mr. Faurie's wrongful termination in violation of
9    fundamental public policy, as alleged above; and was also incident to discrimination
10   against Mr. Faurie based on his sex, as alleged above.  Thus, Mr. Faurie's claim for
11   intentional infliction of emotional distress is not preempted by the exclusive remedial
12   scheme for work-related injuries under the Workers Compensation Act.  (See *Cabusuela*
13   *v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101; *Phillips v.*
14   *Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, as modified.)

15   121.    The extent of the injuries directly and proximately resulting from BUSD's and the
16   individual defendants' intentional infliction of emotional distress is not fully known at
17   this time, and the amount of damages is not yet fully ascertained but in an amount in
18   excess of $400,000.00, the precise amount of which is subject to proof.  Mr. Faurie
19   claims this amount together with prejudgment interest pursuant to Civil Code section
20   3287 and pursuant to any other provision of law providing for prejudgment interest.

21       WHEREFORE, Plaintiff demands judgment against the Defendants, and each of
22   them, as follows:

23           1.   For compensatory damages, including lost wages and benefits, loss of
24               reputation, and damages for physical and emotional injuries, in excess of
25               $700,000.00 and according to proof;

26           2.   For punitive damages;

27           3.   For prejudgment interest on all amounts claimed;

28   *///*

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 31

1        4.  For attorneys' fees and costs of suit;

2        5.  For such other relief as the court deems just and proper.

3  Dated this 9th day of July, 2007

4                 By:

5                      Eric Borgerson, SBN 177943
                      Law Office Of Eric Borgerson

6                      2625 School Street
                      Oakland, CA 94602

7                      (510) 866-3738
                      Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 32

7/12

## Superior Court of California, County of Alameda





## Notice of Judicial Assignment for All Purposes

Case Number: RG07334590
Case Title:    Faurie VS The Berkeley Unified School District
Date of Filing: 07/09/2007

9-11-07
per
8-7
File of
Ans

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

| | |
|---|---|
| **Judge:** | **Cecilia P. Castellanos** |
| **Department:** | **18** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland  CA  94612** |
| **Phone Number:** | **(510) 272-6128** |
| **Fax Number:** | **(510) 267-1506** |
| **Email Address:** | **Dept.18@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

### General Procedures

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Cecilia P. Castellanos
DEPARTMENT 18

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at:
http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

## Schedule for Department 18

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Mondays, Wednesdays and Thursdays from 9:30 a.m. to 4:30 p.m.
- Case Management Conferences are held: Initial Case Management Conferences: Tuesdays through Fridays at 8:45 a.m.
- Case Management Conference Continuances: Mondays, Wednesdays, Thursdays and Fridays at 9:00 a.m.
- Law and Motion matters are heard: Tuesdays at 2:00 p.m. and Fridays at 1:30 p.m.
- Settlement Conferences are heard: Fridays at 9:30 a.m.
- Ex Parte matters are heard: Tuesdays and Thursdays at 9:00 a.m.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email:        Dept.18@alameda.courts.ca.gov

  For all Law & Motion reservations, email Department 18 at the email address provided or fax the request to (510) 893-5830.

- Ex Parte Matters
  Email:        Dept.18@alameda.courts.ca.gov

  FAX:        (510) 893-5830

## Tentative Rulings

The court will issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: http://www.alameda.courts.ca.gov/courts/DomainWeb, Calendar Information for

Dept. 18

- Cases Assigned to Judge Burr, Tentative Ruling Line before July 1, 2007: (510) 208-4931
- Cases Assigned to Judge Miller, Tentative Ruling Line before July 1, 2007: (510) 690-2709
- All cases, Tentative Ruling Line after July 1, 2007: 1-866-223-2244

Dated: 07/12/2007                     Executive Officer / Clerk of the Superior Court

                              By

                                          Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 07/13/2007

                              By

                                          Deputy Clerk

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602



## Superior Court of California, County of Alameda

Faurie

**Plaintiff/Petitioner(s)**

VS.

The Berkeley Unified School District

**Defendant/Respondent(s)**

(Abbreviated Title)

No. RG07334590

**NOTICE OF CASE MANAGEMENT
CONFERENCE AND ORDER**
Unlimited Jurisdiction

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.

Notice is given that a Case Management Conference has been scheduled as follows:

| | | |
|---|---|---|
| Date: **11/21/2007**<br>Time: **08:45 AM** | Department: **18**<br>Location: **Administration Building**<br>**Third Floor**<br>**1221 Oak Street, Oakland CA 94612**<br>Internet: **http://www.alameda.courts.ca.gov** | Judge: **Cecilia P. Castellanos**<br>Clerk: **May Choo**<br>Clerk telephone: **(510) 272-6128**<br>E-mail:<br>**Dept.18@alameda.courts.ca.gov**<br>Fax: **(510) 267-1506** |

### ORDERS

1.  You must:
    a.  **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
    b.  **Give** notice of this conference to any party not included in this notice and file proof of service;
    c.  **Meet and confer,** in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than **30** calendar days before the date set for the Case Management Conference;
    d.  **File and serve** a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is mandatory) at least **15** days before the Case Management Conference (CRC 3.725)

2.  If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3.  You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4.  The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
    a.  Referring to ADR and setting an ADR completion date
    b.  Dismissing or severing claims or parties
    c.  Setting a trial date.

    *Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 07/13/2007.

By

Deputy Clerk

# EXHIBIT B

1 Eric Borgerson, SBN 177943
Law Office of Eric Borgerson
2 2625 School Street
Oakland, CA 94602
3 Telephone: 510-866-3738
Facsimile: 510-535-9898
4
Attorney for Plaintiff Gene Faurie, Jr.
5

6           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                     FOR THE COUNTY OF ALAMEDA

8

| | |
|---|---|
| 9  GENE FAURIE, JR., | CASE NO. RG 07334590 |
| 10          Plaintiff, | ASSIGNED For All Purposes To |
| | Judge Cecilia P. Castellanos, |
| 11          vs. | DEPARTMENT 18 |
| 12  The BERKELEY UNIFIED SCHOOL | **FIRST AMENDED** |
| DISTRICT; MICHELLE LAWRENCE, | **COMPLAINT FOR DAMAGES** |
| 13  individually and in her official capacity as | |
| BUSD Superintendent; LISA UDELL, | (Retaliatory Discharge For Whistleblowing |
| 14  individually and in her official capacity as | and Refusing to Comply With Unlawful |
| BUSD Assistant Superintendent, Human | Directives [Labor Code § 1102.5]; |
| 15  Resources; CRISTINA OBIETA, | Violation of Federal Right To Equal |
| individually and in her official capacity as | Protection of the Laws [42 U.S Code § |
| 16  BUSD Director, Classified Personnel; | 1983; U.S. Constitution Amendments V |
| RICHARD DODSON, in his official | and XIV]; Deprivation Of Benefits and |
| 17  capacity as BUSD Director, Labor | Privileges of Public Employment and |
| Relations; TINA BRIER, individually and | Termination of Public Employment |
| 18  in her official capacity as BUSD Director, | Without Due Process Of Law [42 U.S. |
| Classified Personnel, | Code § 1983; U.S. Constitution |
| 19 | Amendments V and XIV]; Discrimination |
| | On the Basis Of Sex [Fair Employment |
| 20          Defendants. | and Housing Act, Gov. Code § 12900(a) et |
| | seq.]; Unlawful Harassment On the Basis |
| 21 | Of Sex/Gender [Gov. Code § 12900(j)]; |
| | Unlawful Retaliation For Opposing |
| 22 | Violation of Rights Protected By the |
| | FEHA [Gov. Code § 12900(h)]; Intentional |
| 23 | Infliction of Emotional Distress) |
| 24 | |
| 25 _____ | |

25 ///

26 ///

27 ///

28

1

**INTRODUCTION**

2   1.      This is a Complaint by Gene Faurie, Jr., formerly employed by the Berkeley

3   Unified School District ("BUSD") in the position of Administrative Coordinator –

4   Confidential, against BUSD and several of its current and former managerial employees

5   in their individual and official capacities.

6   2.      Mr. Faurie sets forth herein claims of unlawful discharge in retaliation for

7   whistleblowing and resisting unlawful directives; violation of his federal Constitutional

8   rights to equal protection and due process of law; harassment and discrimination based on

9   sex; retaliation for opposing unlawful harassment and discrimination based on sex; and

10  intentional infliction of emotional distress, arising from a continuing course of unlawful

11  conduct creating intolerable working conditions that became so severe and pervasive on

12  and after July 11, 2006, that Mr. Faurie was unlawfully constructively discharged on July

13  17, 2006.

14

**PARTIES**

15  3.      Plaintiff incorporates herein by reference as though fully set forth at length the

16  allegations of paragraphs 1 through and including 2, above.

17  4.      Plaintiff Gene Faurie Jr. ("Plaintiff" or "Mr. Faurie") is and at all material times

18  was, a resident of Alameda County. At all times mentioned in this Complaint until the

19  date of his constructive discharge on July 17, 2007, Plaintiff was employed by the

20  Berkeley Unified School District Human Resources Department in the position of

21  Administrative Coordinator – Confidential.

22  5.      Defendant Berkeley Unified School District ("BUSD" or "District") is and was at

23  all material times a public school district and a political subdivision of the State of

24  California and County of Alameda, whose principal place of business is and was at all

25  material times located in Alameda County.

26  6.      Defendant Michele Lawrence ("Lawrence") is and at all material times was a

27  resident of Alameda County. Lawrence is and at all material times was employed by

28

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 2

1  BUSD in the position of Superintendent.  Lawrence is sued in her individual capacity and
2  in her official capacity as BUSD Superintendent.

3  7.       Defendant Lisa Udell ("Udell") is and at all material times was a resident of
4  Alameda County.  Udell is and at all material times was employed by BUSD in its
5  Human Resources Department in the position of Assistant Superintendent, Human
6  Resources.  Udell is sued in her individual capacity and in her official capacity as BUSD
7  Assistant Superintendent, Human Resources.

8  8.       Defendant Cristina Obieta ("Obieta") is and at all material times was a resident of
9  Alameda County.  Obieta was at all material times employed by BUSD in its Human
10  Resources Department in the position of Director, Classified Personnel.  Obieta is sued in
11  her individual capacity and in her official capacity as Director, Classified Personnel.

12  9.       Defendant Richard Dodson ("Dodson") is and at all material times was a resident
13  of Alameda County.  Dodson is and at all material times was employed by BUSD in its
14  Human Resources Department in the position of Director, Labor Relations.  Dodson is
15  sued in his individual capacity and in his official capacity as Director, Labor Relations.

16  10.     Defendant Tina Brier ("Brier") is and at all material times was a resident of
17  Contra Costa County.  Brier at all material times was employed by BUSD in the position
18  of Director, Classified Personnel.  Brier is sued in her individual capacity and in her
19  official capacity as BUSD Director, Classified Personnel.

20  11.     Unless otherwise alleged in this complaint, Plaintiff is informed and believes and
21  based thereon alleges that at all times mentioned in this Complaint, Defendants were the
22  agents and employees of their codefendants, and in doing the things alleged in this
23  Complaint, were acting with in the course and scope of that agency and employment.

24                                         **JURISDICTION**

25  12.     Plaintiff incorporates herein by reference as though fully set forth at length the
26  allegations of paragraphs 1 through and including 11, above.

27

28

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 3

1  13.     At all material times BUSD regularly employed five or more persons, bringing
2  Defendant BUSD within the provisions of Government Code §§12900 et seq. prohibiting
3  employers or their agents from discriminating on the basis of, *inter alia*, sex.

4  14.     This Court has jurisdiction over the subject matter of this dispute pursuant to
5  Government Code §§ 12900 et seq. as this is a claim of employment discrimination
6  against a public employer that regularly employs 5 or more persons and whose principal
7  place of business is located in the County of Alameda, State of California.

8  15.     The amount in controversy in this matter exceeds $10,000. All Defendants are
9  "persons" who acted under color of law, regulation, ordinance, custom and usage of the
10  State of California under actual or apparent authority conferred by the governing board of
11  the Berkeley Unified School District, bringing them within the purview of 42 U.S. Code
12  § 1983. This Court has concurrent jurisdiction over the federal claims asserted herein
13  under 42 U.S.C. § 1983.

14                                   **FACTS**

15  **Overview**

16  16.     Plaintiff incorporates herein by reference as though fully set forth at length the
17  allegations of paragraphs 1 through and including 15, above.

18  17.     Mr. Faurie was subjected to a continuing course of unlawful conduct during his
19  tenure at BUSD which reached intolerable proportions on July 11, 2006. At a Human
20  Resources staff meeting on July 11, 2006, over Mr. Faurie's objections, Udell orally
21  confirmed that she knowingly was ordering Mr. Faurie to engage in unlawful and
22  unethical acts in his capacity as Administrative Coordinator – Confidential, which she
23  explicitly confirmed to constitute implementation of BUSD policy approved by
24  Superintendent Lawrence. When Mr. Faurie questioned the advisability and legality of
25  the ordered course of action (discussed in detail below), he was subjected to a hostile and
26  offensive environment by Udell, causing him to become ill, thereby forcing him to leave
27  the meeting due to emotional and physical injuries. This treatment by Udell also was part
28

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 4

1    of a pattern and practice of discrimination against male employees based on sex, which
2    was continuing in nature, occurring through July 17, 2006, as detailed below.
3    18.    The incident on July 11, 2006, was the culminating event in a continuing course
4    of such unlawful treatment of Mr. Faurie, stretching back in time to the beginning of his
5    employment with BUSD in or about October 2002. Throughout the course of Mr.
6    Faurie's employment, he was regularly and repeatedly ordered by Lawrence, Brier, and,
7    upon their appointment, Dodson, Udell, and Obieta to engage in unlawful acts and was
8    subjected to a hostile environment when he questioned, objected to, or refused to
9    implement, such unlawful directives.

10    19.    BUSD administration also engaged in a pattern and practice of discrimination
11    within the Human Resources Department on the basis of sex by applying different
12    standards to women than to men with regard to working out of classification, granting of
13    differential pay, responses to filing of workers' compensation claims, granting of requests
14    for vacation leave, and quantity of work assigned. This pattern and practice of
15    discrimination occurred on a continuing basis through July 17, 2006. Mr. Faurie also
16    was subjected to a hostile working environment because of his sex, on a continuing basis
17    through July 17, 2006. Further, Mr. Faurie was subjected to a retaliatory and hostile
18    environment when he attempted to rectify the policy, pattern, and practice of unlawful
19    harassment and discrimination based on sex in the H.R. Department.

20    20.    In addition to his claims of discrimination based on sex, Mr. Faurie also was
21    regularly required to work out of his job classification by performing the duties of the
22    Director of Classified Personnel without appropriate differential pay. Multiple requests
23    by Mr. Faurie to reclassify his position appropriately to realistically encompass the duties
24    he was required to perform were summarily and unjustifiably denied.

25    21.    Further, Mr. Faurie was subjected to a hostile and offensive work environment in
26    retaliation for exercising his lawful right to file a claim for workers' compensation due to
27    physical injuries that were proximately caused by the performance of his duties as an
28    employee of BUSD.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 5

1    22.    Mr. Faurie was informed on at least one occasion by California Department of

2    Justice personnel that an employee hired by Lawrence should not be working for the

3    District due to her criminal record of a prohibited offense.  When Mr. Faurie drew this

4    information to the attention of Brier, he was informed that the Superintendent was aware

5    of the situation and that he was ordered to "drop the subject."  Upon raising the subject

6    again, Mr. Faurie was again ordered to be silent and was subjected to a hostile

7    environment in retaliation for his discussion of the unlawful actions of the

8    Superintendent.  Such retaliation was routine in the H.R. Department and was the

9    reaction of administrative personnel throughout Mr. Faurie's tenure when he identified

10    unlawful BUSD policies, practices, and actions.

11    23.    Mr. Faurie submitted complaints to the California Department of Justice, the

12    Alameda County Superintendent of Schools, and the California Public Employee

13    Retirement System regarding unlawful policies and practices ordered and implemented

14    by BUSD administrative staff over his objections.

15    24.    Mr. Faurie was subjected to unreasonable retaliatory offensive and hostile

16    conduct in reaction to the above-summarized and other attempts to identify and resist

17    unlawful directives, as detailed below.

18    25.    A reasonable person in Mr. Faurie's position would have believed he had no

19    choice but to resign his position with BUSD due to the hostile environment and

20    discriminatory conduct to which he was subjected.  Consequently, his resignation of

21    employment on July 16, 2006, constitutes a constructive discharge of employment.  This

22    fact has been confirmed by an agent of the Employment Development Department who

23    approved his claim for unemployment insurance, and has been affirmed on appeal due to

24    the District's failure to controvert it before an EDD administrative law judge.

25    26.    As a result of his unlawful constructive discharge and the continuing course of

26    unlawful conduct which culminated in it, Mr. Faurie suffered and continues to suffer

27    physical injuries and severe emotional distress, loss of wages, benefits, retirement

28    contributions, proper professional classification, expenses incurred in securing new

1 · employment, and reputation, and suffered interruption of his professional and economic

2 advancement.

3 **Chronology of Events**

4 27.    Plaintiff incorporates herein by reference as though fully set forth at length the

5 allegations of paragraphs 1 through and including 26, above.

6 28.    At all material times until the date of his constructive discharge on July 17, 2006,

7 Mr. Faurie was employed by BUSD in the position of Administrative Coordinator –

8 Confidential. He reported directly to Brier from his date of hire until Brier's resignation

9 in or about May 2006. It was unclear from the date of Brier's resignation to whom Mr.

10 Faurie was to report, other than to the Superintendent

11 29.    Throughout Mr. Faurie's employment with BUSD, Brier frequently was absent

12 from the H.R. Department offices, during which absences Mr. Faurie was required to

13 perform the duties of her position. Brier also took vacation leave from her position as

14 Director, Classified Personnel for approximately three business weeks per year while

15 supervising Mr. Faurie. During those periods of leave, Mr. Faurie was directed to

16 perform the duties of Brier's position and did perform those duties. It is standard

17 procedure throughout the District to officially appoint another employee to assume

18 responsibility for the duties of an absent manager, but Mr. Faurie was required to perform

19 those duties without official appointment and without appropriate differential

20 compensation.

21 30.    After Mr. Faurie performed the duties of Director of Classified Personnel during

22 the first of Brier's extended vacation leaves and multiple instances of performing her

23 professional responsibilities during her frequent and periodic short-term leaves from the

24 office, Mr. Faurie began requesting differential pay for his performance of Brier's duties.

25 Payment of such differential compensation is mandated by BUSD merit system rules. On

26 each occasion, Brier refused to grant appropriate differential compensation. At the end of

27 her second extended vacation leave during the Summer of 2005, Mr. Faurie submitted to

28 Brier a timesheet recording his performance of her duties and requesting differential pay

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 7

1 | for the documented coverage he provided. Brier again refused to grant Mr. Faurie
2 | appropriate differential pay.

3 | 31.    Mr. Faurie regularly covered Brier's duties in the H.R. Department to an extent
4 | well above his professional classification during Brier's absence from the H.R. offices
5 | every week of Faurie's employment. The demand that Mr. Faurie perform the duties of
6 | the position occupied by Brier became even more burdensome upon her resignation,
7 | because no one was appointed to replace her and Mr. Faurie was expected to fill in the
8 | gap until a successor was hired.

9 | 32.    Lawrence hired a part-time, temporary consultant to help keep the H.R.
10 | Department running when Brier resigned. However, that individual was untrained, was
11 | present at most three days per week, and relied on and consulted with Mr. Faurie to learn
12 | the Department's procedures and daily administrative needs, thereby leaving Mr. Faurie
13 | in the *de facto* position of decision making, information dissemination, and H.R.
14 | Department management after Brier's resignation.

15 | 33.    Although Brier refused during her tenure to grant Mr. Faurie appropriate
16 | differential pay for his performance of her professional duties, when Mr. Faurie was
17 | absent due to workers compensation leave, another (female) employee was granted
18 | differential pay to perform his responsibilities. Notwithstanding that payment of
19 | differential compensation, the individual so compensated was not properly relieved of her
20 | ordinary duties and, consequently, did not perform the preponderance of work properly
21 | within Mr. Faurie's job duties, leaving tasks unfinished for him to bring current upon his
22 | return. Mr. Faurie does not dispute the propriety of granting differential pay to an
23 | individual called upon to cover his duties in his absence, but contends that the refusal to
24 | compensate him for performing the duties of the Director of Classified Personnel was
25 | unjustified and violated merit system rules and practices. Moreover, whether or not Brier
26 | was present and regardless of whether he performed all of her duties in her absence or
27 | presence, he was required throughout his tenure to perform duties well above his
28 | professional classification without appropriate differential compensation.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 8

1 | 34.     In or about May 2006, Mr. Faurie complained to Dodson about being forced to
2 | work above his professional classification without appropriate differential compensation.
3 | Dodson stated to Mr. Faurie, "you should do any job asked of you because you are smart
4 | regardless of whether or not it is in your job classification."

5 | 35      The requirement that Mr. Faurie perform duties above his professional
6 | classification without appropriate differential pay persisted throughout his entire tenure
7 | with BUSD, through the date he was forced to leave his employment due to the
8 | unreasonable level of hostility and unlawful treatment he received.

9 | 36.     In addition to violating Mr. Faurie's rights under Merit System rules and his
10 | Constitutional rights to equal protection of the laws and due process, the refusal to grant
11 | him differential pay for work performed was part of a pattern or practice of
12 | discrimination based on sex in the BUSD H.R. Department. During all times material to
13 | Mr. Faurie's claim, women were treated differently and more favorably to similarly
14 | situated men with regard to assignment of work, payment of differential compensation,
15 | granting of vacation leave, and subjection to a hostile work environment in retaliation for
16 | requesting that their rights be honored or that legal duties applicable to BUSD be
17 | fulfilled.

18 | 37.     During Mr. Faurie's tenure, four men (including Mr. Faurie) resigned their
19 | employment without notice (in one case with a single day of notice) due to intolerable
20 | and unlawful working conditions in the BUSD H.R. Department. Mr. Faurie is informed
21 | and believes and based thereon alleges that Jason Hunter resigned his position as
22 | Supervisor, Risk Management, Workers' Compensation and Benefits on or about
23 | September 9, 2005, because he was regularly required to perform duties out of his
24 | professional classification without appropriate differential pay and was subjected to an
25 | excessive workload while similarly situated female employees were spared such
26 | treatment. Mr. Hunter informed Mr. Faurie that, when Mr. Hunter resigned, Lawrence
27 | threatened to contact his new employer and inform it that he was "unprofessional",
28 | despite the fact that Mr. Hunter had received positive performance evaluations.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 9

1    38.    Mr. Faurie is informed and believes and based thereon alleges that Robert
2    Valentine resigned from his position of Senior Personnel Assistant on December 9, 2005,
3    without any notice because he was denied overtime, differential pay, and vacation and
4    was unfairly and disproportionately disciplined on an ongoing basis while similarly
5    situated female employees were not subjected to such denials and discipline.
6    Specifically, with regards to the CBEDS report, Mr. Valentine presented documentation
7    in support of his request for differential pay, but was denied it every year. Mr. Faurie is
8    further informed and believes and based thereon alleges that two individuals were utilized
9    to perform Mr. Valentine's job duties, both of whom were at a higher classification, one
10   of whom was in a certificated position (which is in violation of applicable of collectively
11   bargained terms), and one of which was paid at a rate more than double Mr. Valentine's
12   pay. Neither individual was an expert, and in fact were completely uninformed regarding
13   the relevant procedures and requirements.

14   39.    Mr. Hunter and Mr. Valentine, along with Mr. Faurie, were made physically ill
15   due to a retaliatory hostile work environment to which they were subjected because of
16   their persistence in securing equal treatment as men and because of their requests for
17   appropriate differential pay for work they were directed to perform out of professional
18   classification.

19   40.    Provisional employee Gene Boucher was subjected to such a hostile work
20   environment based on his sex that he resigned from the District without notice on August
21   7, 2006. Mr. Faurie is informed and believes and based thereon alleges that this hostile
22   environment consisted of unduly rude and offensive hostile behavior by Udell against
23   Boucher due to his sex, as only males and no females were subjected to such treatment by
24   Udell.

25   41.    All four males hired during Mr. Faurie's nearly four years of employment with
26   the District within the Human Resources Department left without notice; no female
27   employee submitted such abrupt resignations due to hostile and unlawful working
28   conditions.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 10

1    42.    In or about May 2004, Mr. Faurie orally complained to Brier about a pattern of
2    the Superintendent hiring employees without statutorily required fingerprint clearances
3    and with criminal records of prohibited offenses. His concern stemmed from his
4    knowledge regarding the improper hiring of two individuals and was voiced upon the
5    improper hiring of the second of those individuals. Jane Doe 1[1] was hired without DOJ
6    clearance and was later terminated upon the District's receipt of notification of a
7    prohibited offense. Jane Doe 2 was similarly hired in or about May 2004 without DOJ
8    clearance. When asked to obtain fingerprint clearance, Jane Doe 2 temporarily resigned
9    her position. During a subsequent discussion with Brier, Jane Doe 2 orally represented
10   that she had only been convicted of minor offenses that did not preclude her employment.
11   Based upon that uncorroborated representation, Brier reappointed Doe 2 to her position
12   upon the understanding the results of her DOJ report must coincide with her statement or
13   that she would be immediately terminated. The subsequent report was received by the
14   District approximately one year later, chronicling an extensive criminal history replete
15   with prohibited offenses that precluded her employment by the District. Yet, Jane Doe 2
16   remained and, on information and belief, remains employed by BUSD.

17   43.    In or about May 2004, Mr. Faurie complained about the impermissible
18   appointment of Jane Doe 2 to Brier, noting that Doe 2 had lied on her job application,
19   orally lied about her criminal history in order to obtain reappointment, and that she had a
20   criminal record of offenses that precluded her lawful employment by BUSD. Brier told
21   Mr. Faurie that she had notified Lawrence regarding the legal issues related to Jane Doe
22   2's appointment and told Mr. Faurie that there was nothing Brier could do and that the
23   matter was in the Superintendent's hands. Subsequent to these events, the Superintendent
24   hired John Doe 1 on September 12, 2005, who also started work without fingerprint or
25   tuberculosis clearance, contrary to law. Clearance was later received, but the hiring of

26

27   _____
     [1] The individuals who were improperly hired are identified herein as "Jane Doe" or "John
28   Doe" to preserve their privacy until such time as disclosure of their identities becomes
     necessary to resolve disputed factual issues.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 11

1  employees without such clearance was repeated with John Doe 1's employment. Brier
2  directed Mr. Faurie to ignore the situation.

3  44.    During the period between May 2004 and October 2005 (when Mr. Faurie went
4  on Workers Compensation leave), and during the period between February 2006 (when
5  he returned from Workers Compensation leave) and May 2006, Mr. Faurie also orally
6  complained to Brier regarding a repeated and ongoing practice by BUSD administrative
7  staff, including Brier, of failing to preserve the privacy of employee personnel files.
8  Confidential file contents were routinely left on copy machines and facsimile machines
9  where they were subject to perusal by unauthorized individuals. Mr. Faurie also
10 expressed concerns regarding the H.R. Department's failure to notify the Department of
11 Justice upon the termination of employment of various individuals, which failure resulted
12 in the District continuing to receive subsequent arrest reports to which it was not legally
13 authorized access. Brier dismissed Mr. Faurie's concerns as trivial and undeserving of
14 administrative response or elimination. Brier also subjected Mr. Faurie to hostility
15 because of his continued efforts to draw her attention to unlawful practices in the
16 Department under her direction.

17 45.    In early July 2006, a BUSD administrator, who Mr. Faurie reasonable believed to
18 be under investigation for illegal and immoral practices, requested to review an employee
19 file. Mr. Faurie referred the individual to Dodson who, Mr. Faurie was instructed at an
20 H.R. staff meeting, was authorized to accompany employees during such requests.
21 Dodson was visibly irritated by the referral of the employee to him, and he rolled his eyes
22 and looked away from Mr. Faurie as he accompanied the individual to the file room.
23 Dodson then left the individual alone with the confidential files for several minutes, in
24 direct violation of law. Attempts by Mr. Faurie to address this problem with Dodson
25 were met with hostility and condescension, and Mr. Faurie was treated as though his
26 comments on the subject were detrimental to his employment status.

27 46.    On July 11, 2006, Mr. Faurie referred another personnel file review request by a
28 different individual to Dodson. Shortly thereafter, Obieta appeared in Mr. Faurie's office

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 12

1  with the requested personnel file. She had been in her position for two days and not
2  spoken to Mr. Faurie despite the fact that she was his newly appointed supervisor. Obieta
3  confronted Mr. Faurie and informed him that he must accompany the employee during
4  review of the file, although the H.R. staff had been informed that only H.R. management
5  were allowed to do so. When Mr. Faurie attempted to inform Obieta of this policy and
6  the statutory privacy-based reasons for it, Obieta's tone was hostile and unprofessional
7  towards Mr. Faurie immediately prior to the H.R. Staff meeting on July 11, 2006 that
8  resulted in his constructive discharge.

9  47.    During the period between May 2004 and July 2006, Mr. Faurie also voiced to
10  administrative personnel, including Brier and Dodson a concern regarding failure by the
11  District to obtain "livescan" digital fingerprint records of current employees as required
12  by law. He was informed that the cost of securing those records was too great and that he
13  was to ignore the situation.

14  48.    Beginning in June 2004, after multiple attempts to address these unlawful
15  practices in the H.R. Department were met with hostility and lack of receptiveness or
16  response, Mr. Faurie submitted telephonic complaints to the State of California
17  Department of Justice regarding employees being hired without fingerprint clearance,
18  employees being hired despite having a criminal record of statutorily prohibited offenses,
19  employees being retained without livescan digital fingerprint records, and of failure by
20  BUSD H.R. officials to submit "no longer interested" forms to the Department of Justice
21  upon termination of individuals' employment (which is statutorily required in order to
22  prevent invasion of those employees' privacy). Mr. Faurie also regularly inquired
23  regarding the status of the criminal background records of Doe 2 throughout this period.
24  49.    In or about May 2005, a DOJ representative informed Mr. Faurie that Jane Doe 2
25  should not be working for the District due to her record of prohibited criminal offenses.
26  Mr. Faurie was referred by the DOJ official to the Alameda County Office of Education.
27  Mr. Faurie informed Brier; Brier told Mr. Faurie that Lawrence knew of the situation and
28  that Mr. Faurie was directed to "drop the issue." Mr. Faurie again raised the issue with

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 13

1  Brier and again was told to "drop the issue." During the period between May 2005 and
2  July 2006, all attempts to address this issue and the larger unlawful BUSD practice it
3  represented were rebuffed with hostility and intractable refusal to respond or take action.
4  This precipitated an increasingly hostile response from Brier which Mr. Faurie is
5  informed and believes and based thereon alleges was based on directives from Lawrence
6  to ignore the legal violations, which directives continued to be implemented by the other
7  individual defendants.

8  50.    During the period from May 2004 to July 2006, Mr. Faurie regularly drew to the
9  attention of Brier and Dodson the fact that BUSD routinely failed to follow proper
10  procedures for newly appointed employees for enrollment in the California Public
11  Employee Retirement System (hereinafter "CalPERS"). Mr. Faurie's concerns, as with
12  all of his efforts to assist the District in complying with its legal responsibilities and
13  avoiding liability for legal violations, were rebuffed and met with hostility from
14  administrative staff to whom he reported. In addition, Brier unlawfully distributed
15  confidential CalPERS passwords to unauthorized individuals to avoid the inconvenience
16  of obtaining proper authorization for individuals to whom she wished to delegate
17  information-retrieval duties. Mr. Faurie reported this legal violation to CalPERS on or
18  about November 2005, which resulted in the suspension of the passwords until proper
19  authorization was obtained by CalPERS. Brier knew of this report because she was
20  required to obtain a valid password for the individuals to whom she had unlawfully given
21  confidential passwords.

22  51.    In addition to the foregoing, in or about January 2005, Mr. Faurie notified Brier
23  that he was suffering from a repetitive stress injury to his right hand and arm due to a
24  work-related repetitive stress injury. Mr. Faurie continued with his assigned duties until
25  he was prevented from performing them due to extreme pain he suffered as a result of his
26  injury. He subsequently filed a workers' compensation claim in July 2005 in order to
27  seek appropriate medical treatment. Upon learning of Mr. Faurie's workers
28  compensation claim, Brier immediately became hostile, yelled at Mr. Faurie "if this is

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 14

1   what you want to do fine!" and threw the signed claim form at him. She then loudly
2   ordered him to stop typing and quickly left his office.

3   52.    Despite orders from the District-appointed physician that Mr. Faurie take ten-
4   minute breaks per hour, Brier repeatedly ignored this directive and issued work for Mr.
5   Faurie to perform, and routinely interrupted his breaks in order to address work issues,
6   which generally involved use of Mr. Faurie's hand, in direct violation of his doctor's
7   orders. Due to the lack of rest required for improvement of his condition, the doctor
8   increased Mr. Faurie's rest period to twenty minutes per hour, which Brier also ignored
9   as she continued to interrupt his rest periods. Brier informed Mr. Faurie that his doctor
10  was "crazy" and "didn't know what he was doing." She also claimed that the directed
11  rest period only inferred that Mr. Faurie should not type, and that his doctor was "crazy"
12  and "incompetent." Mr. Faurie confirmed with his doctor that he was directed not to
13  perform any work of any type during his rest period, and the doctor was infuriated by
14  Brier's lack of cooperation needed in order for Mr. Faurie to recover in a timely manner.
15  Mr. Faurie attempted to lock his office door to prevent interruptions of his breaks by
16  Brier, but Brier became enraged and informed Mr. Faurie that he "must be available at all
17  times" regardless of the doctor's direction. In or about October 2005, the worker's
18  compensation physician placed Mr. Faurie on medical leave to stop Brier's refusal to
19  accommodate his medical limitations.

20  53.    Upon his return from leave, Mr. Faurie requested to Inez Reed, Supervisor of
21  Workers' Compensation, that his new work location be evaluated to prevent a
22  reoccurrence of his injury, but his requests were ignored. Brier was aware of his requests
23  yet refused to take action to ensure that the evaluation was performed.

24  54.    At the time of Mr. Faurie's departure from BUSD, all female employees within
25  the H.R. Department had filed workers' compensation claims for varying reasons; none
26  were treated with hostility for doing so in the manner in which Brier behaved with Mr.
27  Faurie.

28

1    55.    On three separate occasions in July 2006, immediately prior to Mr. Faurie's
2    constructive discharge, Mr. Faurie had asserted both orally and in writing the need for
3    extension of a deadline and/or a request for overtime compensation to adequately execute
4    duties for processing classified employee step increases, but he was unjustifiably denied
5    and/or ignored on all three occasions. However, Udell granted Paula Phillips, a female
6    employee within the H.R. Department, extension of the deadline and authorized overtime
7    to perform step increase determinations. Claimant does not dispute that extension given
8    to Ms. Phillips by Udell was proper and necessary, but contends that the denial of his
9    request was retaliatory and discriminatory, creating a hostile and unlawful work
10    environment, and preventing him from being able to perform his assisgned duties and
11    enjoy the benefits of his employment relationship with BUSD.

12    56.    In February 2006, Mr. Faurie was threatened by Brier with disciplinary action if
13    he did not comply with a "stacked" discipline process. The process for following
14    disciplinary procedures is clearly outlined in collective bargaining agreements as well as
15    in the merit system rules. Brier routinely ignored these rules through creation of a
16    predetermined outcome for disciplined employees. Brier regularly handled multiple
17    levels of the disciplinary process on behalf of other individuals who were assigned to
18    address employee discipline matters, thereby violating disciplined employees' rights to
19    procedural due process and compliance with established District policies. The process
20    lacked the neutrality required of Brier's position as both Director, Classified Personnel
21    and liaison to the Merit Commission, and garnered repeated complaints by employees'
22    union representatives.

23    57.    At least two attorneys employed by or affiliated with the law firm that represented
24    the District in disciplinary matters were directly involved in disregarding procedural due
25    process constraints on the disciplinary process. Mr. Faurie heard one attorney state to
26    Brier and Payroll Supervisor Lori Lewis that, despite a particular employee's progress,
27    they were "going to get her anyway." Discipline procedures against the employee
28    continued because, as the attorney stated, she "did not care" about improvements in work

1 | performance made by the employee. A second attorney, was hired from the same firm by
2 | Lawrence as an interim Assistant Superintendent of Human Resources/Consultant, yet
3 | the position is required to be neutral in nature due to Constitutional procedural constraints
4 | on disciplinary and merit system matters. Mr. Faurie objected to these violations of
5 | employees due process rights, but was rebuffed by Brier, who informed him that if he did
6 | not participate in implementation of the disciplinary process he would be considered
7 | insubordinate.

8 | 58.    Mr. Faurie was ranked in the highest category of each of his performance
9 | evaluations. His evaluations by Brier stated that she was comfortable leaving the office
10 | knowing that Mr. Faurie was available to handle issues in her absence. They also
11 | demonstrated that he worked above his assigned classification. Mr. Faurie is informed
12 | and believes and based thereon alleges that a classification study performed by Reward
13 | Strategy Group during and after Mr. Faurie's employment with BUSD confirmed that
14 | Mr. Faurie was working at a higher level on a regular basis and concluded that his
15 | position should be reclassified as an Analyst.

16 | 59.    On or about July 5, 2006, Udell was hired by BUSD. Udell possessed apparent
17 | supervisory authority over employees in the BUSD Human Resources Department,
18 | pending appointment of a replacement for Brier. However, as with the consultant hired
19 | on a temporary basis upon Brier's resignation, Udell was untrained and relied on Mr.
20 | Faurie to advise her and perform duties of her position while she learned it. He did not
21 | receive appropriate differential pay for working out of his classification during this
22 | period. On or about July10, 2006, Obieta was hired into the position of Director,
23 | Classified Personnel. Similarly, Obieta lacked appropriate training and experience.
24 | 60.    Udell called a meeting of the BUSD H.R. Department staff on July 11, 2006. At
25 | that meeting, Udell directed BUSD staff, including Mr. Faurie, to ignore the fact that
26 | BUSD employees were being unlawfully forced into early retirement because the H.R.
27 | staff were providing incorrect information regarding No Child Left Behind Act testing
28 | requirements. Mr. Faurie stated to Udell that the course of conduct she was ordering was

1    contrary to law. She reacted to Mr. Faurie's questioning of her directive with open

2    hostility and told him that she "knows we are breaking the law" but that her directive was

3    consistent with BUSD policy as communicated and authorized by Superintendent

4    Lawrence. When Mr. Faurie persisted in voicing his understanding that the directed

5    course of conduct was unlawful and that it would put the District and potentially its

6    individual employees in legal jeopardy, he was accused, rudely and openly in front of his

7    co-workers, of having an "attitude problem" and was admonished to drop the subject.

8    This incident demonstrated in unavoidable terms that Lawrence had ignored all

9    complaints regarding unlawful directives by BUSD administrative staff, unlawful

10    treatment of employees, as well as legally perilous and intractable administrative

11    incompetence at the Director level.

12    61.    Mr. Faurie, having diligently endeavored for years to patiently request that some

13    modicum of integrity and law-abiding behavior be instilled into the policies and practices

14    of the BUSD administration, and having persistently attempted to secure equal treatment

15    as a male, was subjected to a threshold of intolerability that no reasonable person would

16    be able to endure without injury. He was rendered physically ill and extremely

17    emotionally distressed by Udell's offensive and hostile rebuke to his final attempt to raise

18    the issue of BUSD's unlawful policies and practices. Consequently, he left the meeting

19    due to emotional and physical injury. Mr. Faurie left a voice mail message later that

20    same day for Obieta, his direct supervisor, informing her that he was ill and would be out

21    on sick leave for the remainder of the week and that he would notify her on Monday, July

22    17, 2006, whether he intended to tender his resignation.

23    62.    Later the same day, Obieta left a voice mail message on Mr. Faurie's home

24    telephone answering machine in which she (1) demanded that Mr. Faurie provide a

25    doctor's note by June 12, 2006, for his absence due to illness; (2) said "You've also told a

26    number of people that you are resigning, um, so, you can also go ahead and bring in your

27    letter of resignation tomorrow"; and (3) told him he could call her if he had any questions

28    but that she could not remember her phone number.

1    63.    Through his attorney, Mr. Faurie sent a letter to Obieta on July 12, 2006 via
2    facsimile and certified U.S. mail, informing her that, given that Mr. Faurie had no history
3    of abusing his sick leave and in light of District policies and practices, she had no lawful
4    basis to demand that he produce a doctor's note on July 12, 2006. The letter also noted
5    that Mr. Faurie's illness, both physical and emotional, had been caused by ongoing
6    managerial inadequacies in her department and a hostile work environment to which he
7    was subjected because of drawing attention to illegal courses of action directed by BUSD
8    H.R. administrative personnel. The letter also set forth Mr. Faurie's claims that there was
9    a pattern and practice of discrimination in the department on the basis of sex, that
10   employees are required to work out of job classification without appropriate differential
11   compensation, and that Mr. Faurie had lodged several complaints with CalPERS, the
12   Alameda County Superintendent of Schools, and the State Department of Justice
13   regarding legal violations in the BUSD H.R. Department. The letter further set forth that
14   Mr. Faurie had not resigned his employment, and that any attempt to terminate his
15   employment would constitute tortious wrongful discharge in violation of fundamental
16   public policy, termination without just cause, a whistleblower violation, and
17   discrimination based on sex. Obieta was admonished not to contact Mr. Faurie directly
18   and to preserve all documents and electronic records regarding him.

19   64.    Lawrence responded to Mr. Faurie's counsel's letter via telephone call on July 13,
20   2006. During that conversation, Lawrence inaccurately stated that Mr. Faurie had six
21   days of sick leave accrued (he actually had 18, which Lawrence later acknowledged),
22   granted Mr. Faurie's request for sick leave, refused to acknowledge that Mr. Faurie had
23   been subjected to a hostile environment in retaliation for identifying illegal directives
24   from his superiors or had been subjected to disparate treatment based on his sex, and
25   informed Mr. Faurie's counsel that Mr. Faurie had "burned his bridges" with BUSD
26   administrative staff. That conversation was memorialized in a letter from Mr. Faurie's
27   counsel to Lawrence dated July 14, 2006.

28

1    65.    Mr. Faurie's attorney sent another letter to Lawrence via facsimile and U.S. Mail
2    on July 17, 2006. The letter further memorialized the telephonic conversation with Ms.
3    Lawrence of July 13, 2006, and observed that Lawrence's representations regarding her
4    understanding of the issues presented, the attitude of the BUSD H.R. administrative staff
5    regarding Mr. Faurie, and her statement that he had "burned his bridges" when in fact he
6    had been forced to leave due to illness caused by an unlawful hostile work environment,
7    indicated the toxic work environment could not be considered reasonably likely to
8    improve. Consequently, via his attorney, Mr. Faurie conveyed his intent to resign his
9    position under duress.

10   66.    Lawrence sent two letters to Mr. Faurie's counsel on July 17, 2006, one
11   erroneously dated July 14, 2006, and one correctly dated July 17, 2006. With those
12   letters, Lawrence requested that Mr. Faurie tender his resignation using an approved
13   BUSD form and that he provide written authorization for his attorney to speak on his
14   behalf.

15   67.    Mr. Faurie's attorney replied with a letter dated July 19, 2006, confirming Mr.
16   Faurie's resignation and addressing other matters raised by Lawrence. Attached to that
17   letter was a signed BUSD resignation form, completed and signed by Mr. Faurie, in
18   which he struck out standard form language indicating that his resignation was voluntary,
19   and on which he stated that he had been constructively discharged due to a hostile and
20   illegal working environment. Also attached to that letter was a signed authorization for
21   Mr. Faurie's attorney to represent him with the District.

22   68.    In order to mitigate his damages, on or about July 20, 2006, Mr. Faurie submitted
23   to the Employment Development Department (hereinafter "EDD") an application for
24   unemployment insurance, asserting as the basis for his claim that he was constructively
25   discharged due to an unlawful hostile work environment to which he had been subjected
26   in retaliation for having identified, resisted, or refused to implement unlawful directives
27   by BUSD administrative staff. An EDD investigator investigated Mr. Faurie's
28   application, heard the position of BUSD staff, and determined that Mr. Faurie was

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 20

1  entitled to unemployment insurance compensation because he had been constructively
2  discharged through a hostile work environment in retaliation for resisting and reporting
3  unlawful directives by his supervisors.

4  69.     BUSD did not file a timely appeal of the EDD determination.  On or about August
5  14, 2006, BUSD, through its representative, Talx UCeXpress, submitted to the
6  Unemployment Insurance Appeals Board (hereinafter "UIAB") an untimely appeal of the
7  EDD determination with a frivolous motion to excuse its late filing.  Mr. Faurie and his
8  counsel appeared at the scheduled UIAB hearing, but BUSD did not appear before the
9  administrative law judge to prosecute its appeal.  Consequently, the appeal was denied
10  and BUSD did not seek relief from its default or reopening of the appeal to challenge the
11  determination in Mr. Faurie's favor.  Through its frivolous and unprosecuted appeal,
12  BUSD attempted to thwart Mr. Faurie's efforts to mitigate his damages, and wasted his
13  time and resources expended in preparing and appearing for an appeal the District
14  apparently decided to abandon.

15  70.     Also in order to mitigate his damages, Mr. Faurie engaged in an intensive and
16  persistent job search throughout the greater San Francisco Bay Area from July 17, 2006,
17  through December 2006, when he was offered and accepted a new position.  However,
18  the position to which he was hired is lower in rank than the professional classification for
19  which he is qualified, as evidenced by his placement on the eligibility list for a higher
20  classification equivalent to a Senior Personnel Analyst.  He accepted this lower position
21  to mitigate damages and bring in desperately needed income.  But, his unlawful
22  constructive discharge from BUSD employment continues to result in diminished
23  compensation and delayed professional advancement.

24  71.     Mr. Faurie immediately consulted with a psychiatrist upon his unlawful
25  constructive discharge and has remained under the care of that psychiatrist continually to
26  the present.  He has been treated for severe anxiety, panic attacks, and emotional distress
27  resulting from the unlawful treatment he received from BUSD administrative staff.

28

1    72.    Plaintiff at all times duly performed all the conditions of his employment until

2    Defendants prevented him from doing so. At all times relevant to this Complaint,

3    Plaintiff was ready, willing, and able to perform his job until he was constructively

4    discharged by Defendants.

5    **B. Satisfaction of Tort Claims Act Claim Presentation Requirement**

6    73.    Plaintiff incorporates herein by reference as though fully set forth at length the

7    allegations of paragraphs 1 through and including 72, above.

8    74.    On January 10, 2007, Mr. Faurie, by and through his counsel, filed with the duly

9    designated agent and the President of the governing Board of BUSD a detailed Notice of

10   Tort Claims, pursuant to Government Code § 900 et seq., with a 21 – page attachment, in

11   which he set forth in detail the foregoing factual allegations and the claims for relief

12   alleged herein, and in which he requested to be made whole for the losses he suffered as

13   detailed herein.

14   75.    Plaintiff is informed and believes and based thereon alleges that, on or about

15   February 21, 2007, the BUSD governing Board met in closed session to discuss Mr.

16   Faurie's Tort Claims, consulted with the Board's counsel, and on that date either took no

17   action on his claims or rejected his claims, but in any case took action adverse to his

18   claims in their entirety.

19   76.    Plaintiff is informed and believes and based thereon alleges that on or between

20   February 21, 2007 and February 23, 2007, the BUSD Board, apparently acting pursuant

21   to advice of counsel, promulgated false and misleading meeting minutes which

22   erroneously represent that, on February 7, 2007, the Board had rejected portions of Mr.

23   Faurie's claim that accrued after July 10, 2006.

24   77.    Repeated attempts by Plaintiff's counsel to obtain a clarification from counsel for

25   the BUSD Board regarding what action the Board took on Mr. Faurie's claims and when

26   such action was taken were rejected by counsel for the BUSD Board, who confined her

27   answers to referring to the fraudulent meeting minutes, which do not reflect what actually

28   took place or when the Board took action on Mr. Faurie's claim.

1    78.    Notwithstanding the fraudulent meeting minutes and the refusal of counsel for the

2    Board to accurately and clearly state when her client took action on Mr. Faurie's claims

3    and what action it took, it is clear that the Board ultimately rejected Mr. Faurie's tort

4    claim in its entirety. Mr. Faurie has, therefore, satisfied his tort claim presentation

5    requirement and is now permitted to file this action against Defendants, and each of them.

6    79.    Subsequent to the BUSD Board's rejection of Mr. Faurie's Tort claims, counsel

7    for BUSD's Board commenced an investigation into the merits of his claims.

8    **C. DFEH Complaints and Right-To-Sue Letters**

9    80.    Plaintiff incorporates herein by reference as though fully set forth at length the

10    allegations of paragraphs 1 through and including 79, above.

11    81.    On March 26, 2007, Plaintiff, by and through his counsel, filed a complaint with

12    the Department of Fair Employment and Housing against Defendants, and each of them,

13    and requested immediate right-to-sue letters. In his complaints, Plaintiff alleged the facts

14    set forth herein and asserted against each and every Defendant claims under Government

15    Code §12900 et seq.

16    82.    The Department of Fair Employment issued Right-To-Sue Notices dated March

17    28, 2007, regarding each and every Defendant.

18    83.    On May 15, 2007, Plaintiff, by and through his counsel, timely served each and

19    every Defendant with the DFEH complaint filed against him/her/it and with a copy of the

20    corresponding Right-To-Sue Notice for each and every Defendant.

21    84.    Therefore, Plaintiff has exhausted his administrative remedies prerequisite to

22    bringing a civil action pursuant to Government Code §12900 et seq. and is free to pursue

23    the instant action.

24                               **FIRST CAUSE OF ACTION**

25    **(Retaliatory Discharge For Whistleblowing and
Refusing to Comply With Unlawful Directives [Labor Code § 1102.5]**

26    **[Against BUSD and Defendants in their Official Capacities])**

27    85.    Plaintiff incorporates herein by reference as though fully set forth at length the

28    allegations of paragraphs 1 through and including 84, above.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 23

1    86.    Mr. Faurie asserts that he was constructively discharged because a reasonable
2    person in his circumstances, facing the hostile and offensive retaliatory environment to
3    which he was subjected, would feel no choice but to resign. As noted above, this fact has
4    been confirmed by the Employment Development Department, which finding was
5    uncontroverted by BUSD on its late-filed and abandoned appeal to the Unemployment
6    Insurance Appeals Board.

7    87.    Mr. Faurie engaged in conduct protected by Labor Code § 1102.5 when, as
8    detailed throughout this Complaint, he reported policies, practices, and directives within
9    the BUSD H.R. Department which he reasonably believed violated state and/or federal
10   laws, rules or regulations to supervisors within the BUSD H.R. Department and to other
11   state and local government administrative agencies.

12   88.    Mr. Faurie also engaged in conduct protected by Labor Code § 1102.5 when he
13   resisted implementing directives he reasonably believed violated state and/or federal
14   laws, rules, or regulations.

15   89.    Lawrence, Udell, Obieta, Dodson, and Brier, acting in their official capacities,
16   subjected Plaintiff to a hostile and offensive working environment, culminating in his
17   constructive discharge, in retaliation for such protected activity.

18   90.    Mr. Faurie's constructive discharge violated Labor Code § 1102.5(b) and (c) in
19   that his termination was in retaliation for his complaints regarding unlawful practices and
20   policies of the BUSD knowingly approved and authorized by the Superintendent, his
21   refusal to perform unlawful acts, and his refusal to remain silent regarding ongoing
22   violations of law and public policy, as detailed in the statement of facts above.

23   91.    As a direct, foreseeable, and proximate result of BUSD's and the individual
24   Defendants' wrongful termination of Mr. Faurie in violation of Labor Code § 1102.5(b)
25   and (c), Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation,
26   and loss of fringe benefits, as well as expenses incurred in securing new employment,
27   including but not limited to loss of appropriate differential pay from April 2003 through
28   July 2006, proper job classification and associated rate of pay from April 2003 through

1  January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007,

2  vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007,

3  CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front

4  pay constituting the difference between his current rate of pay and the pay he would

5  receive as a Senior Administrative Analyst, all to his damage in an amount in excess of

6  $200,000.00, the precise amount of which is subject to proof.

7  92.    As a further direct, foreseeable, and proximate result of BUSD's and the

8  individual Defendants' wrongful termination of Mr. Faurie in violation of Labor Code §

9  1102.5(b) and (c), Mr. Faurie has suffered gastrointestinal disturbances, headaches,

10  vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the

11  precise amount of which is subject to proof.

12  93.    Also as a direct and proximate result of the unlawful actions described above, Mr.

13  Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

14  including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

15  humiliation, fear, embarrassment, depression and discomfort all to his damage in an

16  amount in excess of $400,000.00, the precise amount of which is subject to proof.

17         WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

18  them, as set forth in the prayer for relief, *infra*.

19                          **SECOND CAUSE OF ACTION**
                **(Violation of Federal Right To Equal Protection of the Laws**
20         **[42 U.S. Code § 1983; U.S. Constitution Amendments V and XIV] [Against**
21    **Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual Capacities])**

22  94.    Plaintiff incorporates herein by reference as though fully set forth at length the

23  allegations of paragraphs 1 through and including 93, above.

24  95.    Plaintiff alleges that each and every act alleged herein was performed by

25  Defendants not only as individuals, but under the color and pretenses of the statutes,

26  ordinances, regulations, customs and usages of the State of California, and the rules,

27  policies, and direction of the Berkeley Unified School District, having been clothed with

28  both actual and apparent authority by the BUSD governing board.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 25

1  96.    As alleged in detail herein, the individual Defendants, and each of them, treated
2  Plaintiff, who is male, unequally based on his sex, with respect to requiring him to work
3  out of his job classification, granting of differential pay, responses to filing of workers'
4  compensation claims, granting of requests for vacation leave, quantity of work assigned,
5  and responses to attempts to have his statutory rights honored. Defendants' actions
6  thereby impeded and hindered the course of justice with the intent to deny Plaintiff the
7  equal protection of the laws.

8  97.    As a direct, foreseeable, and proximate result of the individual Defendants'
9  violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has suffered, and
10 continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as
11 expenses incurred in securing new employment, including but not limited to loss of
12 appropriate differential pay from April 2003 through July 2006, proper job classification
13 and associated rate of pay from April 2003 through January 1, 2007, the value of his
14 health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would
15 have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the
16 period from July 17, 2006 to January 1, 2007, and front pay constituting the difference
17 between his current rate of pay and the pay he would receive as a Senior Administrative
18 Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of
19 which is subject to proof.

20 98.    As a further direct, foreseeable, and proximate result of the individual
21 Defendants' violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has
22 suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his
23 damage in an amount in excess of $100,000.00, the precise amount of which is subject to
24 proof.

25 99.    Also as a direct and proximate result of the unlawful actions described above, Mr.
26 Faurie has suffered, and continues to suffer, from severe mental and emotional distress,
27 including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

28

1  humiliation, fear, embarrassment, depression and discomfort all to his damage in an

2  amount in excess of $400,000.00, the precise amount of which is subject to proof.

3  100.    Defendants' violations of Plaintiff's right to equal protection of the laws were, as

4  alleged in this Complaint, part of a pattern and practice of sex discrimination in the

5  BUSD H.R. Department.  Plaintiff and three other male employees repeatedly

6  complained about the pattern and practice of discrimination in the BUSD H.R.

7  Department based on sex and Plaintiff and all three of those individuals were

8  constructively discharged in retaliation for their attempts to vindicate their rights to equal

9  treatment.  Defendants' actions were therefore willful, deliberate, and undertaken in

10  reckless disregard of the rights of Plaintiff and similarly situated males.  Therefore,

11  Defendants' actions, jointly and severally, entitle Plaintiff to an award of punitive

12  damages.

13     WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

14  them, as set forth in the prayer for relief, *infra*.

15                            **THIRD CAUSE OF ACTION**

16  **(Deprivation Of Benefits and Privileges of Public Employment and Termination of
    Public Employment Without Due Process Of Law [42 U.S. Code § 1983; U.S.**

17  **Constitution Amendments V and XIV] [Against Lawrence, Udell, Obieta, Dodson,
    and Brier, in their Individual Capacities))**

18

19  101.    Plaintiff incorporates herein by reference as though fully set forth at length the

20  allegations of paragraphs 1 through and including 100, above.

21  102.    Plaintiff alleges that each and every act alleged herein was performed by

22  Defendants not only as individuals, but under the color and pretenses of the statutes,

23  ordinances, regulations, customs and usages of the State of California, and the rules,

24  policies, and direction of the Berkeley Unified School District, having been clothed with

25  both actual and apparent authority by the BUSD governing board.

26  103.    Mr. Faurie was employed by BUSD under terms established by the Merit System

27  Rules, Board Policies, oral representations, and consistently stellar performance

28  evaluations.  Under those terms, Mr. Faurie's was required to be treated fairly and in


RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 27

1  conformity with the laws of the State of California, and his employment was for an
2  indefinite term not to expire as long as he successfully performed the duties of his
3  position, subject to termination only for just cause, and only in conformity with BUSD
4  written disciplinary policies and procedures.

5  104.  As a public employee, by operation of the Due Process Clauses of the Fifth and
6  Fourteenth Amendments to the U.S. Constitution, Mr. Faurie was entitled to have the
7  granting of the benefits and privileges of employment, deprivation of such benefits and
8  privileges of employment, and termination of his employment, to be administered
9  consistent with due process of law, including a fair, impartial, evenly administered,
10  rationally based, and orderly administrative and adjudicatory process prior to termination
11  of his employment.

12  105.  Mr. Faurie was ready, willing, and able to perform, and did perform, the terms of
13  his employment contract with Defendants competently and in a manner that exceeded the
14  expectations of his supervisors throughout his employment with BUSD through and
15  including the day he was constructively discharged as alleged herein.

16  106.  Defendants, and each of them, violated Mr. Faurie's right to due process by
17  requiring him to perform work above his professional classification without appropriate
18  differential pay despite his entitlement to, and repeated requests for, such fair pay;
19  constructively terminating his employment by subjecting him to a hostile work
20  environment in retaliation for his reporting of, and refusal to implement, violations of law
21  directed by BUSD administrative staff, which constituted an irrational and unlawful basis
22  for discipline or termination; constructively terminating his employment without utilizing
23  any administrative process, much less a fair, rationally based, impartial, and evenly
24  administered process; retaliating against him for attempting to vindicate statutory rights
25  to fair and equal treatment; and by contaminating the Merit System appeals procedures
26  by ignoring Constitutionally required separation of roles as advocate for the District and
27  advisor to the commission.

28

1  107.    Resort to the Merit System appeal procedure would have been futile because Brier
2  and Lawrence were the gatekeepers to such appeals and routinely engaged in improper
3  ex-parte communications with Merit Commission members.

4  108.    As a direct, foreseeable, and proximate result of the individual Defendants'
5  violation of Mr. Faurie's right to due process, Mr. Faurie has suffered, and continues to
6  suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses
7  incurred in securing new employment, including but not limited to loss of appropriate
8  differential pay from April 2003 through July 2006, proper job classification and
9  associated rate of pay from April 2003 through January 1, 2007, the value of his health
10  benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have
11  accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period
12  from July 17, 2006 to January 1, 2007, and front pay constituting the difference between
13  his current rate of pay and the pay he would receive as a Senior Administrative Analyst,
14  all to his damage in an amount in excess of $200,000.00, the precise amount of which is
15  subject to proof.

16  109.    As a further direct, foreseeable, and proximate result of the individual
17  Defendants' violations of Plaintiff's right to due process, Mr. Faurie has suffered
18  gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an
19  amount in excess of $100,000.00, the precise amount of which is subject to proof.

20  110.    Also as a direct and proximate result of the unlawful actions described above, Mr.
21  Faurie has suffered, and continues to suffer, from severe mental and emotional distress,
22  including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,
23  humiliation, fear, embarrassment, depression and discomfort all to his damage in an
24  amount in excess of $400,000.00, the precise amount of which is subject to proof.

25  111.    Defendants' violations of Plaintiff's right to due process were, as alleged in this
26  Complaint, part of a pattern and practice of retaliatory, discriminatory, and arbitrary
27  treatment of employees in the BUSD H.R. Department. Defendants were repeatedly
28  advised by Plaintiff and other similarly situated employees that Defendants' actions

1  violated constituted violations of law and public policy and violated Plaintiff's and the

2  other individual's rights to fair treatment. Defendants' actions were therefore willful,

3  deliberate, and undertaken in reckless disregard of the rights of Plaintiff and similarly

4  situated employees  Therefore, Defendants' actions, jointly and severally, entitle Plaintiff

5  to an award of punitive damages.

6       WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

7  them, as set forth in the prayer for relief, *infra*.

8  **FOURTH CAUSE OF ACTION**

9  **(Unlawful Discrimination On the Basis Of Sex [Gov. Code § 12900 et seq.] [Against**

10  **BUSD and Defendants in their Official Capacities])**

11  112.    Plaintiff incorporates herein by reference as though fully set forth at length the

12  allegations of paragraphs 1 through and including 111, above.

13  113.    Mr. Faurie is a male.

14  114.    This claim is brought pursuant to the California Fair Employment and Housing

15  Act, section 12940(a) of the Government Code, prohibiting termination of an employee

16  from employment on the basis of the sex of any person, and the corresponding

17  regulations of the California Department of Fair Employment and Housing.

18  115.    At all times mentioned herein, Mr. Faurie was fully qualified for the position of

19  Administrative Coordinator – Confidential. His performance evaluations were

20  consistently and uninterruptedly very positive, indicating that his performance, in

21  substance and quality, exceeded the duties of his position.

22  116.    BUSD and the individual Defendants conferred differential pay, granted vacation,

23  and allocated work disparately according to sex, as detailed in the statement of facts,

24  above.

25  117.    BUSD and the individual defendants also constructively discharged Mr. Faurie

26  based on his sex, as part of a pattern and practice of subjecting male employees to a

27  hostile and offensive work environment and disparately allocating employment benefits

28  and privileges based on their sex, as detailed above.

1  118.    Mr. Faurie believes and alleges that his sex was a substantial and determining

2  factor in BUSD's constructive termination of his employment.

3  119.    BUSD's and the individual Defendants' discrimination against Mr. Faurie based

4  on his sex and constructive termination of Mr. Faurie's employment as alleged herein

5  constitute unlawful employment practices in violation of section 12940(a) of the

6  Government Code.

7  120.    BUSD's and the individual Defendants' unlawful discrimination against Mr.

8  Faurie also breached the terms of Mr. Faurie's employment in that their actions were in

9  violation of relevant Merit System rules, oral representations, and reasonable

10  expectations based on positive performance evaluations.

11  121.    The unlawful discrimination against Mr. Faurie was continuing in nature and

12  commenced when Mr. Faurie was hired in or about October 2002 and continued

13  throughout Mr. Faurie's employment by BUSD.

14  122.    As a direct, foreseeable, and proximate result of BUSD's and the individual

15  Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie

16  has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe

17  benefits, as well as expenses incurred in securing new employment, including but not

18  limited to loss of appropriate differential pay from April 2003 through July 2006, proper

19  job classification and associated rate of pay from April 2003 through January 1, 2007, the

20  value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days

21  he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for

22  the period from July 17, 2006 to January 1, 2007, and front pay constituting the

23  difference between his current rate of pay and the pay he would receive as a Senior

24  Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the

25  precise amount of which is subject to proof.

26  123.    As a further direct, foreseeable, and proximate result of BUSD's and the

27  individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex,

28  Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and

1    exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount
2    of which is subject to proof.

3    124.    Also as a direct and proximate result of Defendants' unlawful discrimination
4    against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer,
5    from severe mental and emotional distress, including panic attacks, sleep disturbances,
6    anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and
7    discomfort all to his damage in an amount in excess of $400,000.00, the precise amount
8    of which is subject to proof.

9        WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth
10    in the prayer for relief, *infra.*

11                         **FIFTH CAUSE OF ACTION**

12    **(Unlawful Harassment On the Basis Of Sex/Gender [Gov. Code § 12900(j)] [Against**
13    **BUSD and against Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual**
14                               **Capacities])**

15    125.    Plaintiff incorporates herein by reference as though fully set forth at length the
16    allegations of paragraphs 1 through and including 125, above.

17    126.    The individual Defendants, and each of them, as detailed throughout this
18    Complaint, subjected Plaintiff to a hostile and offensive work environment because of his
19    sex/gender (male) by treating him with open hostility, rebuking him in front of other
20    employees, trivializing his requests for equal treatment, and insulting him, while
21    refraining from subjecting similarly situated female employees to such hostile and
22    offensive working conditions.

23    127.    Defendants imposition of hostile and offensive working conditions on Plaintiff
24    because of his sex/gender (male) fell outside their legitimate official functions, but
25    occurred within the actual or constructive knowledge of Defendant Lawrence.

26    128.    Defendants' imposition of hostile and offensive working conditions on Plaintiff
27    because of his sex/gender (male) was part of a pattern and practice of creating such an
28    unlawful, hostile working environment to which three other, similarly situated men were

1   subjected during Mr. Faurie's tenure, resulting in the constructive discharge of each and
2   all of them.

3   129.    The hostile and offensive environment to which Defendants subjected Plaintiff
4   was so severe and pervasive that any reasonable person in his position would be injured
5   by it and would find it intolerable.

6   130.    Each Defendant was aware of, or should have been aware of, the unlawful actions
7   of the other and should have taken corrective action to remediate the unlawful
8   harassment, but did not. Lawrence was aware of, or should have been aware of, the
9   unlawful harassment because of sex, and took no action to correct it.

10  131.    Defendants' unlawful harassment of Mr. Faurie was continuing in nature and
11  commenced when Mr. Faurie was hired in or about October 2002 and continued
12  throughout Mr. Faurie's employment by BUSD.

13  132.    As a direct, foreseeable, and proximate result of Defendants' unlawful
14  harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered, and
15  continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as
16  expenses incurred in securing new employment, including but not limited to loss of
17  appropriate differential pay from April 2003 through July 2006, proper job classification
18  and associated rate of pay from April 2003 through January 1, 2007, the value of his
19  health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would
20  have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the
21  period from July 17, 2006 to January 1, 2007, and front pay constituting the difference
22  between his current rate of pay and the pay he would receive as a Senior Administrative
23  Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of
24  which is subject to proof.

25  133.    As a further direct, foreseeable, and proximate result of Defendants' unlawful
26  harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered
27  gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an
28  amount in excess of $100,000.00, the precise amount of which is subject to proof.

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 33

1   134.    Also as a direct and proximate result of Defendants' unlawful harassment of Mr.

2   Faurie on the basis of sex/gender, Mr. Faurie has suffered, and continues to suffer, from

3   severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety

4   attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort

5   all to his damage in an amount in excess of $400,000.00, the precise amount of which is

6   subject to proof.

7   135.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each

8   of them, were part of a pattern and practice of creating a hostile and offensive

9   environment based on sex that disadvantaged men in the BUSD H.R. Department.

10  Defendants were repeatedly advised of the unlawful conditions and rebuked Plaintiff's

11  attempts to secure correction of the unlawful treatment with further hostility, ridicule, and

12  threats of discipline. Defendants' actions, therefore, were carried out in a deliberate,

13  malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie,

14  entitling him to an award of punitive damages.

15      WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

16  them, as set forth in the prayer for relief, *infra*.

17                          **SIXTH CAUSE OF ACTION**

18  **(Unlawful Retaliation For Opposing Violation of Rights Protected By the FEHA
    [Gov. Code § 12900(h)] [Against BUSD and Lawrence, Udell, Obieta,**

19  **Dodson, and Brier, in their Individual Capacities])**

20  136.    Plaintiff incorporates herein by reference as though fully set forth at length the

21  allegations of paragraphs 1 through and including 135, above.

22  137.    The individual Defendants, as detailed in this Complaint, subjected Plaintiff and

23  similarly situated males to threats of discipline, admonishments to be silent, hostility, and

24  ultimately, constructive discharge, in retaliation for Plaintiff's and similarly situated

25  males' attempts to oppose discrimination on the basis of sex in the BUSD H.R.

26  Department.

27

28

RG07334590 – *Faurie v. BUSD et al.* - FIRST AMENDED COMPLAINT – p. 34

1    138.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA fell

2    outside their legitimate official functions, but occurred within the actual or constructive

3    knowledge of Defendant Lawrence.

4    139.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA was

5    part of a pattern and practice of such an unlawful retaliation to which three other,

6    similarly situated men were subjected during Mr. Faurie's tenure, resulting in the

7    constructive discharge of each and all of them.

8    140.    Each Defendant was aware of, or should have been aware of, the unlawful actions

9    of the other and should have taken corrective action to remediate the unlawful retaliation,

10    but did not. Lawrence specifically was aware of, or should have been aware of, the

11    unlawful retaliation, but took no action to correct it.

12    141.    Defendants' unlawful retaliation against Mr. Faurie was continuing in nature and

13    commenced when Mr. Faurie was hired in or about October 2002 and continued

14    throughout Mr. Faurie's employment by BUSD.

15    142.    As a direct, foreseeable, and proximate result of Defendants' unlawful retaliation

16    against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department,

17    Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss

18    of fringe benefits, as well as expenses incurred in securing new employment, including

19    but not limited to loss of appropriate differential pay from April 2003 through July 2006,

20    proper job classification and associated rate of pay from April 2003 through January 1,

21    2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of

22    13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS

23    contributions for the period from July 17, 2006 to January 1, 2007, and front pay

24    constituting the difference between his current rate of pay and the pay he would receive

25    as a Senior Administrative Analyst, all to his damage in an amount in excess of

26    $200,000.00, the precise amount of which is subject to proof.

27    143.    As a further direct, foreseeable, and proximate result of Defendants' unlawful

28    retaliation against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R.

1 | Department, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting,

2 | and exhaustion all to his damage in an amount in excess of $100,000.00, the precise

3 | amount of which is subject to proof.

4 | 144.    Also as a direct and proximate result of Defendants' unlawful retaliation against

5 | Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department, Mr.

6 | Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

7 | including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

8 | humiliation, fear, embarrassment, depression and discomfort all to his damage in an

9 | amount in excess of $400,000.00, the precise amount of which is subject to proof.

10 | 145.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each

11 | of them, were part of a pattern and practice of retaliating against Mr. Faurie and similarly

12 | situated employees for opposing violations of the FEHA in the BUSD H.R. Department.

13 | Defendants were repeatedly advised of the unlawful conduct, but they rebuked attempts

14 | to secure correction of the unlawful treatment with further hostility, public ridicule, and

15 | threats of discipline. Defendants' actions, therefore, were carried out in a deliberate,

16 | malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie,

17 | entitling him to an award of punitive damages.

18 |     WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

19 | them, as set forth in the prayer for relief, *infra*.

20 |                              **SEVENTH CAUSE OF ACTION**

21 |                         **(Intentional Infliction of Emotional Distress)**

22 | 146.    Plaintiff incorporates herein by reference as though fully set forth at length the

23 | allegations of paragraphs 1 through and including 145, above.

24 | 147.    The actions of BUSD and the individual defendants alleged herein were extreme

25 | and outrageous, and were inflicted with intent to cause, or with reckless disregard of the

26 | probability of causing, emotional distress.

27

28

RG07334590 – *Faurie v. BUSD et al.* – FIRST AMENDED COMPLAINT – p. 36

1    148.    As a direct, foreseeable, and proximate result of BUSD's and individual

2    defendants' unlawful conduct, Mr. Faurie has suffered extreme and severe anguish,

3    humiliation, emotional distress, nervousness, tension, anxiety and depression.

4    149.    The emotional distress intentionally caused was not a normal risk or incident of

5    employment because it was incident to Mr. Faurie's wrongful termination in violation of

6    Labor Code §1102.5; discrimination against, and harassment of, Mr. Faurie based on his

7    sex/gender, as alleged above; retaliation against Mr. Faurie for opposing violations of the

8    FEHA in the BUSD H.R. Department; and violations of Mr. Faurie's federal

9    Constitutional rights to equal protection of the laws and due process of law. Thus, Mr.

10   Faurie's claim for intentional infliction of emotional distress is not preempted by the

11   exclusive remedial scheme for work-related injuries under the Workers Compensation

12   Act. (See *Cabusuela v. Browning-Ferris Industries of California, Inc.* (1998) 68

13   Cal.App.4th 101; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, as

14   modified.)

15   150.    The extent of the injuries directly and proximately resulting from BUSD's and the

16   individual defendants' intentional infliction of emotional distress is not fully known at

17   this time, and the amount of damages is not yet fully ascertained but in an amount in

18   excess of $400,000.00, the precise amount of which is subject to proof. Mr. Faurie

19   claims this amount together with prejudgment interest pursuant to Civil Code section

20   3287 and pursuant to any other provision of law providing for prejudgment interest.

21       WHEREFORE, Plaintiff demands judgment against the Defendants, as follows:

22       Against all Defendants:

23       1.    For compensatory damages, including lost wages and benefits, loss of

24             reputation, and damages for physical and emotional injuries, in excess of

25             $700,000.00 and according to proof;

26       2.    For prejudgment interest on all amounts claimed;

27       3.    For attorneys' fees and costs of suit;

28       4.    For such other relief as the court deems just and proper.

1        Against Defendants Lawrence, Udell, Obieta, Dodson, and Brier:

2        5.  For punitive damages.

3  Dated this 12th day of December, 2007

4                   By:

5                       Eric Borgerson, SBN 177943
                         Law Office Of Eric Borgerson

6                       2625 School Street
                       Oakland, CA 94602

7                       (510) 866-3738
                       Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

3      I, Eric Borgerson, declare that I am over the age of 18 years, and am not a party to this

4   matter, that my business address is 2625 School Street, Oakland, CA 94602, located within the

5   County of Alameda. On December 12, 2007, I served the attached: **FIRST AMENDED**

6   **COMPLAINT FOR DAMAGES**, by placing it in an addressed envelope, with postage duly

7   prepaid, and depositing it into a United States Post Office mail receptacle, via U.S. mail,

8   addressed as follows:

9   Kellie M. Murphy, Esq.
    JOHNSON SCHACHTER & LEWIS
10  2180 Harvard Street, Suite 560
    Sacramento, CA 95815
11

12      I declare the foregoing to be true and correct based on personal knowledge under penalty

13  of perjury under the laws of the State of California. Executed in Oakland California on December

14  12, 2007.

15

16

17  Eric Borgerson

18

19

20

21

22

23

24

25

26

27

28

RG07334590 – *FAURIE V. BUSD ET AL.* – FIRST AMENDED COMPLAINT

1    **PROOF OF SERVICE**

2

3    **CASE NAME:**    **Faurie v. Berkeley Unified School District, et al.**
     **CASE NO.:**    **RG 07334590**

4         I am employed in the County of Sacramento. I am over the age of eighteen years and not
     a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5    560, Sacramento, CA 95815.

6         I am familiar with this office's practice whereby the mail is sealed, given the appropriate
     postage and placed in a designated mail collection area. Each day's mail is collected and
7    deposited in a United States mailbox after the close of each day's business.

8         On January 4, 2008, I served the following: **NOTICE OF REMOVAL OF ACTION
     UNDER 28 U.S.C. §1441(b) [Federal Question]**
9

10   _X_    United States Mail - on all parties in said action by placing a true copy of the above-
            described document(s) enclosed in a sealed envelope in the designated area for outgoing
11          mail addressed as set forth below.

12   __    By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
            a true copy of the above-described document(s).
13

       __    Federal Express - on all parties in said action by placing a true copy of the above-
14          described document(s) in an authorized area for pick-up by an authorized express service
            courier the same day it is collected and processed in the ordinary course of business as set
15          forth below.

16   __    Personal Service - By personally delivering or causing to be delivered a true copy of the
            above-described document to the person(s) and at the address(es) set forth as shown
17          below.

18   _X_    **ELECTRONIC SERVICE** - by causing such document to be served electronically
            pursuant to court rule to the individual listed below:
19

     Eric Borgerson, Esq.
20   LAW OFFICE OF ERIC BORGERSON
     2625 School Street
21   Oakland, CA 94602

22
     _X_    FEDERAL: I declare that I am employed in the office of a member of the bar of this
23          Court at whose direction service was made.

24        I declare under penalty of perjury that the foregoing is true and correct and that this
     declaration was executed on January 4, 2008, at Sacramento, California.
25

26                                               _____
                                                 Mike Quinn
27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247