1  ERIC BORGERSON (CA State Bar No. 177943)
   LAW OFFICE OF ERIC BORGERSON
2  2625 School Street
   Oakland, CA  94602
3  Telephone:    (510) 866-3738
   Facsimile:    (510) 535-9898
4
   Attorney for Plaintiff
5  GENE FAURIE, JR.

6

7

8              IN THE UNITED STATED DISTRICT COURT

9            FOR THE NORTHERN DISTIRCT OF CALIFORNIA

10

11 GENE FAURIE, JR.,                      CASE NO.  CV 08-00060 TEH

12         Plaintiff,

13      vs.

14 The BERKELEY UNIFIED SCHOOL           **MEMORANDUM OF POINTS AND**
   DISTRICT; MICHELLE LAWRENCE,          **AUTHORITIES IN OPPOSITION TO**
15 individually and in her official capacity as   **DEFENDANTS' MOTION TO DISMISS**
   BUSD Superintendent; LISA UDELL,      **AND MOTION TO STRIKE**
16 individually and in her official capacity as
   BUSD Assistant Superintendent, Human  Date:  March 10, 2008
17 Resources; CRISTINA OBIETA,           Time:  10:00  a.m.
   individually and in her official capacity as   Courtroom: 12
18 BUSD Director, Classified Personnel;
   RICHARD DODSON, in his official       Judge: The Honorable Thelton E. Henderson
19 capacity as BUSD Director, Labor
   Relations; TINA BRIER, individually and
20 in her official capacity as BUSD Director,
   Classified Personnel,
21
           Defendants.
22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

3

I.    INTRODUCTION ................................................................................................ 1

4

II.   PROCEDURAL HISTORY ................................................................................. 1

5

III.   STANDARDS OF REVIEW ............................................................................... 5

6

IV.  FACTS ................................................................................................................. 6

7

V.  ARGUMENT ........................................................................................................ 9

8

    A.    The Individual Defendants' Arguments Regarding Plaintiff's Whistleblower Claim Are Irrelevant To This Proceeding Because Plaintiff Has Only Alleged a Violation of California Labor Code § 1102.5 Against BUSD. ................................................................. 9

9

10

    C.    The Superior Court Correctly Rejected Defendants' Argument That Plaintiff Failed To Allege He Was Subjected To Adverse Employment Action. ........................................... 12

11

    D.    Defendants Have Not Challenged Plaintiff's Equal Protection Claim. ........................... 13

12

    E.    Plaintiff's Due Process Claim Is Viable Because He Has Adequately Pled His Employment Was Terminable Only For Cause, Entitling Him To Pre-Termination Due Process. ........................................................................................................ 14

13

14

    F.    The Superior Court Correctly Ruled That Plaintiff Has Stated a Prima Facie FEHA Discrimination Claim Against BUSD and Defendants in Their Official Capacities. ........ 15

15

16

     1.  Plaintiff Has Not Asserted a Disparate Treatment Claim Against the Individual Defendants In Their Individual Capacities. .................................................. 16

17

     2. Plaintiff Has Adequately Alleged a *Prima Facie* FEHA Sex Discrimination Claim Against BUSD and Defendants in Their Official Capacities ........................... 16

18

19

     3.  The Superior Court Correctly Found Plaintiff Had Alleged He Was Subjected To Adverse Employment Action. .................................................................... 18

20

    G.    Defendants Can Be Held Individually Liable For Harassment and Retaliation. ............ 19

21

    H.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted By Statute and Is Not Preempted by the Workers Compensation Act. ............................. 19

22

23

    I.    The Individual Defendants' Unlawful Conduct Does Not Fall Within Their Official Discretion and Is Not Subject to a Defense of Immunity .................................................. 22

24

    J.    Plaintiff Has Adequately Stated a Claim For Punitive Damages Against the Individual Defendants. .............................................................................................. 23

25

VI. CONCLUSION ......................................................................................................... 25

26

27

28

i

1

# <u>TABLE OF AUTHORITIES</u>

2

## CONSTITUTIONAL PROVISIONS

3

U.S. Constitution Amendment V ...................................................................................... 10, 12

U.S. Constitution Amendment XIV ................................................................................... 10, 12

California Constitution Article I, § 1 ...................................................................................... 10

California Constitution Article I, § 7 ................................................................................ 10, 12

## FEDERAL CASES

*Allison v. California Adult Authority*, 419 F.2d 822 (9th Cir. 1969) ............................................ 6

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) ................................. 5

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) ......................................... 15

*Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978) .................................................. 17

*Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246 (9th Cir. 1997) .................................................. 5

*International Audio-Text Network, Inc. v. AT&T Co.*, 62 F.3d 69 (2d Cir. 1995) ...................... 5

*Johnson v. State of California*,  207 F.3d 650 (9th Cir. 2000) .................................................... 5

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993) ............................................................................................................ 5

*Love v. Motion Industries*, 309 F.Supp.2d 1128 (N.D. Cal. 2004) ........................................... 12

*Martinez v. California,* 444 U.S. 277 (1980) ........................................................................ 22

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................................... 15

*Neveu v. City of Fresno*, 392 F.Supp.2d 1159 (E.D. Cal. 2005) ............................................ 24

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ......................................................................... 5

*Peloza v. Capistrano Unified School District*, 37 F.3d 517 (9th Cir. 1994) ............................... 5

*Preaseau v. Prudential Ins. Co. of America*,  591 F.2d 74 (9th Cir. 1979) ................................ 20

*Schneider v. TRW, Inc.*, 938 F.2d 986 (9th Cir. 1991) ............................................................ 21

*Scott v. Solano County Health and Social Services Dept.*,
    459 F.Supp.2d 959 (E.D. Cal. 2006) ............................................................................... 2, 20

*Smith v. Wade* (1983) 461 US 30 ........................................................................................... 24

*Soo v. United Parcel Service, Inc.*, 73 F.Supp.2d 1126 (N.D. Cal. 1999) ............................... 13

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ..................................................... 5

*Winarto v. Toshiba*, 274 F.3d 1276 (9th Cir. 2001) .................................................................. 19

## FEDERAL STATUTES

20 U.S.C. § 6301 et seq. ........................................................................................................ 12

28 U.S.C. § 1446(a) ................................................................................................................. 4

42 U.S.C. § 1983 ........................................................................................................ 20, 22, 24

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ........................................... 10

28

ii

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................5

**STATE CASES**

*Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493 (1970)........................................21

*Blom v. N.G.D. Spark Plugs*,  3 Cal.App.4th 382 (1992) ................................19, 22

*Boeken v. Philip Morris Inc.*, 127 Cal.App.4th 1640 (2005), reh'g denied, review
     denied, cert. denied, 126 S.Ct 1567 ..............................................................24

*Caldwell v. Montoya*, 10 Cal.4th 972 (1995)...................................................6, 22

*Caldwell v. Paramount Unified School Dist.*, 41 Cal.App.4th 189 (1995)............17, 18

*Cloud v. Casey*, 76 Cal.App.4th 895 (1999) ........................................................24

*Crisci v. Security Ins. Co.,* 66 Cal.2d 425 ...........................................................21

*Cyrus v. Haverson*, 65 Cal.App.3d 306 (1976)...................................................25

*Ebaugh v. Rabkin*, 22 Cal.App.3d 891 (1972).....................................................24

*G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22 (1975)...........................25

*Green v. Ralee Engineering Co.*, 19 Cal.4th 66 (1998) ........................................13

*Green v. Ralee Engineering*, 19 Cal.4th 66 (1998)..............................................12

*James v. Herbert*, 149 Cal.App.2d 741 (1957) ....................................................25

*Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal.App.4th 32 (2000)............2

*Livitsanos v. Superior Court*, 2 Cal.4th 744 (1992)..............................................22

*Monge v. Superior Court*, 176 Cal.App.3d 503 (1986) ....................................24, 25

*Page v. The Superior Court of Sacramento County*, 31 Cal. App. 4th 1206 (1995) .................19

*Patten v. Grant Joint Union High School Dist.* 234 Cal.App.4th 1378 (2005) ...........13

*Perkins v. Superior Court*, 117 Cal.App.3d 1 (1981) ...........................................25

*Reno v. Baird*, 18 Cal.4th 640 (1998) ..........................................................19, 22

*Smith v. Superior Court*, 10 Cal.App.4th 1033 (1992) ..........................................24

*Smithson v. Sparber*, 123 Cal.App. 225 (1932) ..................................................25

*Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260 (2006)..............................13

*Taylor v. Superior Court*, 24 Cal.3d 890 (1979)..................................................25

*The Nippon Credit Bank v. 1333 North Cal. Boulevard*,
     86 Cal.App.4th 486 (2001), review denied. ...................................................24

*Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616 (1972) ....................................25

*Walrath v. Sprinkel*, 99 Cal.App.4th 1237 (2002) ...............................................19

**STATE STATUTES**

Civil Code §§ 56-56.37 ....................................................................................10

Civil Code §§ 1799-1799.3 ...............................................................................10

Civil Code § 3294 .............................................................................................23

iii

Education Code § 45122.1 ................................................................................................ 10

Education Code § 45125 ................................................................................................... 10

Education Code § 45125(k)(1) ......................................................................................... 11

Education Code §35035 ...................................................................................................... 6

Gov. Code § 12900 et seq. .............................................................................................. 16

Government Code §12940 et seq. ....................................................................................... 1

Government Code § 12940(a) ........................................................................................... 10

Government Code §820(a) ........................................................................................ passim

Gov. Code § 12940 subd. (h) ........................................................................................... 19

Gov. Code § 12940 subd. (h)(1) ...................................................................................... 19

Gov. Code § 12940 subd. (h)(3)(A) ................................................................................ 19

Government Code §§ 20635 .............................................................................................. 11

Government Code § 20635.1 ............................................................................................. 11

Government Code § 20065 ................................................................................................ 11

Government Code § 20283 ................................................................................................ 11

Labor Code § 432.7(g)(2)-(3) .......................................................................................... 11

Labor Code § 433 ............................................................................................................. 11

Labor Code § 1102.5 ............................................................................................... passim

Labor Code § 1198.5 ........................................................................................................ 10

Penal Code § 11102.5(d) and (e) ..................................................................................... 11

Penal Code §§ 11077.1 through 11081 ............................................................................ 11

## TREATISES

3 Witkin Cal. Procedure (2d ed. Pleading § 766) ........................................................... 25

*California Practice Guide: Federal Civil Procedure Before Trial* (2007) p. 9-63 ...................... 5

Rest.2d Torts Sec. 46, com. j ........................................................................................... 21

## STATE REGULATIONS

5 California Code of Regulations §§ 6100 to 6126 .......................................................... 12

## I.    INTRODUCTION

Plaintiff Gene Faurie, Jr. ("Plaintiff" or "Mr. Faurie") respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss and Motion to Strike filed by Defendants Michele Lawrence ("Lawrence"), Cristina Obieta ("Obieta"), Lisa Udell ("Udell"), Richard Dodson ("Dodson"), Tina Brier ("Brier") (collectively "individual Defendants"), and Berkeley Unified School District ("BUSD") (collectively "Defendants").

## II.    PROCEDURAL HISTORY

Plaintiff filed his Complaint for Damages in Alameda County Superior Court on July 9, 2007, alleging causes of action against all Defendants for tortious wrongful discharge in violation of fundamental public policy, unlawful discrimination based on sex in violation of the Fair Employment and Housing Act, California Government Code §12940 et seq., breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.  See Declaration of Eric Borgerson, filed concurrently herewith ("Borgerson Dec.") ¶ 6, Ex. A.

On or about August 27, 2007, Defendants, and each of them, filed general Demurrers and Motions to Strike Plaintiff's punitive damages claims.  Borgerson Dec., ¶¶ 7, 22; Exs. B, C, N, O. On or about November 2, 2007, Plaintiff filed Oppositions to Defendants Demurrers and Motions to Strike.  Borgerson Dec., ¶¶ 9, 10, 25; Exs. D, E, P. On or about November 8, 2007, Defendants filed Reply Memoranda in support of their Demurrers and Motions to Strike.  Borgerson Dec., ¶¶ 11, 12, 26; Exs. F, G, Q.

On or about November 15, 2007, the Superior Court of California for the County of Alameda, the Honorable Cecilia P. Castellanos presiding, issued a tentative ruling sustaining in part and denying in part Defendants' Demurrers, granting BUSD's Motion to Strike without leave to amend and granting the individual Defendants Motions to Strike with leave to amend. Borgerson Dec., ¶ 13.  On or about November 15, 2007, Plaintiff contested the Superior Court's tentative ruling in part.  In support of his objection to the tentative ruling, Plaintiff submitted to the Court via facsimile and hard copy, and served on counsel for Defendants via facsimile, the judicial decision in *Scott v. Solano County Health and Social Services Dept.*, 459 F.Supp.2d 959,

1   966-970 (E.D. Cal. 2006).  Borgerson Dec., ¶ 14.

2          On November 16, 2007, oral argument was held before Judge Castellanos regarding

3   Plaintiff's objections to the tentative ruling.  *Id*. ¶ 15 The argument focused on Judge Castellanos'

4   acceptance of Defendants' argument that *Khajavi v. Feather River Anesthesia Med. Group*, 84

5   Cal.App.4th 32 (2000) barred Plaintiff's claim against the individual Defendants for wrongful

6   discharge in violation of fundamental public policy because they were not his "employers."

7   Plaintiff argued that *Khajavi* was inapplicable because it did not involve a situation where, as

8   here, the Defendants were supervisors who possessed authority and control over the Plaintiff's

9   employment.  Plaintiff cited *Scott*, *supra*, which noted that *Khajavi* provided "no support" for the

10  very proposition adopted by the Superior Court in the instant case because, in *Khajavi*, the

11  "plaintiff was never employed by the defendant and had no employment relationship whatsoever

12  with defendant."  459 F.Supp.2d at 969.  *Scott* observed that "the [*Khajavi*] court never addressed

13  whether individual supervisors of an employer may be liable for wrongful discharge claims.

14  Defendants fail to direct the court to any authority which supports its argument that a wrongful

15  discharge claim cannot be asserted against individual employees or supervisors." (*Ibid*.)  Plaintiff

16  also argued that precluding a tortious wrongful discharge action against public employee

17  supervisors immunized those most entrusted with enforcement of public policy from liability for

18  violation of it, which doubly flouts the reason for the existence of the tort cause of action.

19         Over those arguments, the Superior Court granted the individual Defendants' Demurrers

20  to Plaintiff's First Cause of Action for wrongful discharge in violation of fundamental public

21  policy without leave to amend.  Borgerson Dec., Exs. I - M.  The court also granted BUSD's

22  Demurrer as to Plaintiff's First Cause of Action on grounds that the District cannot be held liable

23  for common law tort claims and, as the court found the individual Defendants could not be held

24  liable for wrongful discharge because they were not Plaintiff's employers, BUSD could not be

25  held vicariously liable under Government Code § 815.2(a).  *Id*. at Ex. H. The court also granted

26  all Defendants' Demurrers to Plaintiff's causes of action for breach of contract and breach of the

27  implied covenant of good faith and fair dealing without leave to amend.  *Id*., Exs. H - M.

28         The court *overruled* BUSD's Demurrer with regard to Plaintiff's claim of sex

1    discrimination under the FEHA.  The court found that Plaintiff had adequately alleged a

2    constructive discharge, and that the alleged acts were not protected by Defendants' claims for

3    immunity for discretionary acts.  Borgerson Dec. Ex. H.  Thus, Plaintiff's cause of action for

4    intentional discrimination based on his sex against BUSD *remains in tact*.

5          The court granted the individual Defendants' Demurrers to Plaintiff's claim of sex

6    discrimination under the FEHA *with leave to amend* on grounds that individual supervisors

7    cannot be held individually liable for intentionally discriminatory personnel decisions.  Borgerson

8    Dec., Exs. I - M.  Plaintiff had thoroughly alleged acts of harassment based on sex and retaliation

9    for his attempts to enforce rights under the FEHA in the factual portions of the Complaint, which

10   are actionable against individual supervisors, but had pled the cause of action as one for

11   intentional discrimination.  The court left Plaintiff the opportunity to plead causes of action for

12   harassment and retaliation, which he did in his FAC.

13         The court sustained the individual Defendants' Demurrers to Plaintiff's IIED claims *with*

14   *leave to amend* on grounds that it had dismissed the tortious wrongful discharge and intentional

15   discrimination predicates to those claims.  However, the court gave Plaintiff leave to amend to

16   allege a viable basis for liability against the individual Defendants upon which to predicate his

17   emotional distress claims, which he did in his FAC.  The court *rejected* Defendants' position that

18   the California Tort Claims Act provided no statutory basis for supervisor liability, stating, "The

19   Court notes that Government Code §820(a) provides a statutory basis for liability of public entity

20   employees for common law torts."  Borgerson Dec., Exs. I - M.

21         Similarly, the court granted the individual Defendants' Motions to Strike the punitive

22   damages claims *with leave to amend* because the court had dismissed the predicates to those

23   damages claims and the court left it open for Plaintiff to allege a viable basis for his claims

24   against the individual Defendants and thereby provide a foundation for his punitive damages

25   claims.  Borgerson Dec., Exs. S - W. The court granted BUSD's Motion to Strike without leave to

26   amend on grounds that Government Code § 818 precluded an award of punitive damages against

27   a public entity in California.  *Id*. at Ex. R.

28         Plaintiff filed his FAC on December 12, 2007.  On December 18, 2007, Plaintiff

- 3 -

1    stipulated to an extension of time for Defendants to file their responsive pleading in state court to

2    January 4, 2008.  On January 4, 2008, Defendants filed and served their Notice of Removal.

3         On January 5, 2008, Plaintiff advised counsel for Defendants that the Notice of Removal

4    was procedurally defective in that 28 U.S.C. § 1446(a) required Defendants to file with this Court

5    all documents served on Defendants in state court.[1]  Counsel for Plaintiff told counsel for

6    Defendants that, since this was a procedural defect and not a jurisdictional defect, he believed it

7    should be unnecessary to file a Motion to Remand, and counsel for Defendants assured counsel

8    for Plaintiff she would cure the defect by promptly filing an amended Notice of Removal, to

9    which she would attach all the documents served upon her clients in state court, along with the

10   documents her clients had served on Plaintiff.  Borgerson Dec. ¶ 3.   On or about January 23,

11   2008, counsel for Plaintiff again spoke with counsel for Defendant regarding her failure to file the

12   documents served upon Defendants in the state court proceedings.  Counsel for Defendants again

13   assured counsel for Plaintiff that she intended to promptly file an amended Notice of Removal

14   with the documents attached, obviating any need for proceedings before this court to address the

15   deficiency.  Based on that assurance, Plaintiff allowed the deadline for filing a Motion to Remand

16   to pass, preferring not to burden this Court with the procedural issue and believing it would be

17   remedied through cooperation between counsel.  *Id.*, ¶ 4. To date, however, Defendants have not

18   filed an amended Notice of Removal.  Consequently, counsel for Plaintiff has filed a Declaration

19   concurrently herewith, attaching several documents that should have been attached to the Notice

20   of Removal pursuant to 28 U.S.C. § 1446(a) and several related documents filed by Defendants in

21   state court which are relevant to this proceeding because, together with the Orders Defendants

22   neglected to file, they show that Defendants are merely repeating verbatim in this forum

23   arguments that were soundly addressed and rejected by the Superior Court.

24        On January 8, 2008, Plaintiff stipulated to an additional extension of time for Defendants

25

26   _____
     [1] 28 U.S.C. § 1446(a) states,

27        A defendant or defendants desiring to remove any civil action … shall file … a notice of
          removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure … ***together
          with a copy of all process, pleadings, and orders served upon such defendant or***

28        ***defendants in such action.*** (emphasis added.)

- 4 -

1   to file their responsive pleadings in this Court.  Defendants filed their Motion to Dismiss and

2   Motion to Strike, as well as a Declination to Proceed before a Magistrate Judge on or about

3   January 23, 2008.   After graciously conferring with Plaintiff's counsel regarding scheduling,

4   Defendants set the matter for hearing before this Court and Plaintiff respectfully submits this

5   Memorandum in Opposition to their Motions.

6                               **III.    STANDARDS OF REVIEW**

7           A motion to dismiss under Fed. R. Civ. P. 12 is disfavored and rarely granted.  *Gilligan v.*

8   *Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A dismissal for failure to state a claim

9   upon which relief can be granted under Fed. R. Civ. R. 12(b)(6) is appropriate only in

10  "extraordinary" cases.  *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  "A

11  complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

12  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

13  *Conley v. Gibson*, 355 US 41, 45-46 (1957); *Parks School of Business, Inc. v. Symington*, 51 F.3d

14  1480, 1484 (9th Cir. 1995).

15          As a Motion to Dismiss under Fed. R. Civ. P. 12 tests the sufficiency of the Complaint, all

16  material factual allegations in the Complaint must be assumed to be true.  *Pareto v. FDIC*, 139

17  F.3d 696, 699 (9th Cir. 1998); *Leatherman v. Tarrant County Narcotics Intelligence &*

18  *Coordination Unit*, 507 U.S. 163, 164 (1993).  This is required no matter how unlikely an

19  allegation may seem.  *Neitzke v. Williams*, 490 U.S. 319, 328-329 (1989).  Any ambiguity in the

20  documents is to be resolved in the Plaintiff's favor.  *International Audio-Text Network, Inc. v.*

21  *AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *California Practice Guide: Federal Civil Procedure*

22  *Before Trial* (2007) p. 9-63.  Any alleged defect must appear on the face of the Complaint.  *Arpin*

23  *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  Moreover, the Court

24  must assume that all general allegations "embrace whatever specific facts might be necessary to

25  support them."  *Peloza v. Capistrano Unified School District*, 37 F.3d 517, 521 (9th Cir. 1994).

26          This liberal construction rule is particularly stringent in civil rights cases, such as is

27  presented here.  *Johnson v. State of California* (9th Cir. 2000) 207 F.3d 650, 653.  Issues of proof

28  are irrelevant (because, *inter alia*, they are premature) and cannot be considered when ruling on a

- 5 -

1   Motion to Dismiss.  *Allison v. California Adult Authority*, 419 F.2d 822, 823 (9th Cir. 1969).

2                                    **IV.  FACTS[2]**

3          At all material times all parties were employed by the BUSD Human Resources ("H.R.")

4   Department.  Plaintiff was employed in the position of Administrative Coordinator – Confidential

5   until the date of his constructive discharge on or about July 17, 2006.  FAC ¶¶ 4, 17.  Lawrence

6   was in the position of Superintendent. *Id.* ¶ 6.[3]  Udell was employed in the position of Assistant

7   Superintendent, Human Resources.  *Id*. ¶ 7.  Obieta was employed in the position of Director,

8   Classified Personnel.  *Id.* ¶ 8.  Dodson was employed in the position of Director, Labor Relations.

9   *Id*. ¶ 9.  Brier was employed in the position of Director, Classified Personnel. *Id*. ¶ 10.  Each of

10  the Defendants acted as the agents of Lawrence and each other at all material times.  *Id*. ¶ 11.[4]

11  Plaintiff was subordinate in rank to each and every Defendant and, at all material times, reported

12  to each of them (whether directly or through (an) intermediate Defendant(s)).  *Id*. ¶¶ 18, 28, 43,

13  45, 46, 47, 49, 56, 59, 60, 62.  At all times, as with each of the Defendants, Plaintiff ultimately

14  reported to Lawrence.  *Id*. ¶ 28.

15         Throughout his tenure at BUSD, Mr. Faurie was ranked in the highest category of each of

16  his performance evaluations.  Plaintiff's performance evaluations also demonstrated that he

17  worked above his assigned classification, which Plaintiff is informed and believes has been

18  confirmed by a classification study performed during and after his employment.  *Id*. ¶ 58.

19         Throughout the course of Plaintiff's employment, Lawrence, Brier, and, upon their

20  appointments, Dodson, Udell , and Obieta, regularly ordered Plaintiff to engage in or ignore

21  unlawful acts and practices within the H.R. Department, subjected Plaintiff to a retaliatory, hostile

22  environment, with Lawrence's knowledge and approval, when he questioned, objected to, or

23  refused to implement, such unlawful directives and/or policies and practices.  FAC ¶¶ 17, 18. The

24

25  [2] Detailed factual allegations are set forth in the FAC, incorporated herein by reference.

26  [3] By reasonable (in fact, unavoidable) inference, this means that Lawrence was "the district's foremost appointed official, with primary responsibility for representing, guiding, and administering [the district]" pursuant to policy established by the BUSD Board of Directors.

27  *Caldwell v. Montoya*, 10 Cal.4[th] 972, 983 ("*Montoya*") (1995), citing Education Code §35035.

28  [4] By reasonable inference from the plain meaning of their official titles, Brier, Dodson, Udell, and Obieta reported to Lawrence and were required to implement her administrative directives.

unlawful activities that Mr. Faurie reported and resisted included:

(1) Discrimination based on employees' sex;  FAC ¶¶ 19, 20, 29-41, 55, 59, 63;

(2) Lawrence's pattern and practice of hiring employees without statutorily required fingerprint clearances and of hiring and retaining employees with criminal records of prohibited offenses who lied about their records of convictions for fraud-related offenses during and after the hiring process;  *Id*. ¶¶ 42, 43, 48, 49;

(3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the (statutorily and Constitutionally protected) privacy of employee personnel files; *Id*. ¶ 44;

(4) The H.R. Department's failure to notify the Department of Justice upon the termination of employment of various individuals, which failure resulted in the District continuing to receive subsequent arrest reports it was statutorily prohibited from obtaining; *Id*. ¶ 44;

(5) Condescension and hostility by Defendants Dodson and Obieta, under Lawrence's direction, when Plaintiff confronted them regarding an unlawful practice of allowing an individual under criminal investigation to view an employee's personnel file without supervision; *Id*. ¶ 45;

(6) Failure by the District to obtain "Livescan" digital fingerprint records of current employees as required by law;  *Id*. ¶ 47;

(7) Failure by Defendants to follow procedures mandated by statute and regulation for enrolling newly appointed employees in the California Public Employee Retirement System ("CalPERS") (*Id*. ¶ 50) and unlawful transfer of passwords to individuals who were not authorized to access the CalPERS system through the Internet. *Ibid*.¶

(8) The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with predetermined outcomes, and Defendants' improper performance of multiple roles within the disciplinary process, in violation of employees' rights to procedural due process and orderly application of the Merit System Rules;  *Id*. ¶ 56, 57;

(9) The District's failure to accurately apply the federal No Child Left Behind Act testing requirements; *Id*. ¶ 60;

(10) Unlawful forced early retirement of several employees based on improper District actions, including misrepresentation to employees regarding their eligibility for continued employment with respect to the federal No Child Left Behind Testing requirements. (*Ibid*.)

Plaintiff repeatedly attempted to address these unlawful practices in the H.R. Department but Defendants, with Lawrence's knowledge and approval, reacted with hostility and admonishments to be silent.  Plaintiff therefore submitted telephonic complaints and inquiries to the State of California Department of Justice ("DOJ"), County Office of Education, and CalPERS regarding the ignored and uncorrected violations.  FAC ¶¶ 22, 48.  A DOJ representative informed Mr. Faurie that an individual hired by Lawrence should not be working for the District due to her record of prohibited criminal offenses.  Twice when Plaintiff informed Brier of this legal violation he was told the Superintendent was aware of it and to "drop the issue."  During the period between May 2005 and July 2006, pursuant to directives by Lawrence to ignore the legal

- 7 -

1  violations, Defendants rebuffed with increasing hostility all Plaintiff's attempts to address this

2  issue and the larger unlawful BUSD practice it represented.  FAC ¶¶ 22, 23, 49, 56, 57.

3       Defendants, and each of them, engaged in a pattern and practice of discrimination within

4  the H.R. Department on the basis of sex by applying different standards to women than to men,

5  including Plaintiff, with regard to working out of classification, granting of differential pay,

6  responses to filing of workers' compensation claims, granting of requests for vacation leave, and

7  quantity of work assigned.  This pattern and practice of discrimination occurred on a continuing

8  basis through July 17, 2006.   Mr. Faurie also was subjected to a hostile working environment

9  because of his sex, on a continuing basis through July 17, 2006, and to retaliation for his

10  identification of unlawful discrimination based on sex in the H.R. Department.  FAC ¶¶ 19, 20,

11  29-41, 54, 55, 59, 63.  Each and every of four males hired during Mr. Faurie's nearly four years

12  of employment with BUSD left the H.R. Department due to a hostile environment based on sex,

13  without notice; no female employee submitted such abrupt resignations.  FAC ¶¶ 37-41.

14       As part of that pattern and practice, Brier, Dodson, Udell, and Obieta, with Lawrence's

15  knowledge and approval, regularly required Plaintiff to work out of his job classification by

16  performing the duties of the Director of Classified Personnel without appropriate differential pay.

17  Defendants summarily and unjustifiably denied multiple requests by Mr. Faurie to reclassify his

18  position appropriately to realistically encompass the duties he was required to perform and

19  admonished him to refrain from asserting his rights and remain silent.  FAC ¶¶ 20, 29-35, 59.

20       At a BUSD H.R. staff meeting on July 11, 2006, Udell, stated she knowingly was ordering

21  Mr. Faurie and other staff to misapply No Child Left Behind Act testing requirements and to

22  implement unlawful forced retirement of BUSD employees who were legally eligible to continue

23  in employment, pursuant to Lawrence's directives.  Udell retaliated against Plaintiff for objecting

24  to the unlawful directives by openly insulting and humiliating him in the staff meeting and

25  accusing him of having attitude problems because he objected to the unlawful directives and

26  silencing him. FAC ¶ 60.

27       Plaintiff was rendered physically ill and severely emotionally distressed by Udell's

28  offensive and hostile rebuke to his final attempt to raise the issue of BUSD's unlawful policies

- 8 -

1    and practices.  FAC ¶¶ 25, 61, 71-72.  Consequently, he left the meeting due to emotional and

2    physical injury. FAC ¶ 61.  A reasonable person in Mr. Faurie's position would have believed he

3    had no choice left but to resign his position with BUSD due to the hostile environment and

4    continuing course of discriminatory and retaliatory conduct to which he was subjected. *Id*. ¶¶ 64,

5    65. Consequently, his resignation of employment on July 17, 2006, constituted a constructive

6    discharge. The Employment Development Department confirmed this fact (FAC ¶¶ 25, 69), and

7    the Superior Court found Plaintiff adequately alleged it. Borgerson Dec., Exs. H - M.

8                                    **V.  ARGUMENT**

9        **A.  The Individual Defendants' Arguments Regarding Plaintiff's Whistleblower Claim
            Are Irrelevant To This Proceeding Because Plaintiff Has Only Alleged a Violation of**
10          **California Labor Code § 1102.5 Against BUSD.**

11       The individual Defendants correctly, but irrelevantly, argue that a plaintiff may only

12   allege a violation of Labor Code § 1102.5 against an "employer."  The individual Defendants

13   further argue that they were not Plaintiff's "employers" for purposes of a Labor Code § 1102.5

14   claim.  Even assuming, *arguendo*, that Defendants are correct that they were not Plaintiff's

15   "employers" for purposes of a § 1102.5 claim, the point is irrelevant to this case.  Plaintiff's First

16   Cause of Action in his FAC, entitled "Retaliatory Discharge For Whistleblowing and Refusing to

17   Comply With Unlawful Directives [Labor Code § 1102.5]" clearly states that it is brought

18   "Against BUSD and Defendants in their Official Capacities."  FAC p. 23, lines 24-26, emphasis

19   added.  It is axiomatic that a suit against public officials in their official capacities is tantamount

20   to a suit against the public entity that employed them.  Defendants have not been sued

21   individually under Labor Code § 1102.5, so their arguments are immaterial.

22       **B.  Plaintiff Resisted and Reported Multiple Legal Violations Regarding Readily
            Identifiable Statutory, Regulatory, and Constitutional Authorities.**
23
         As summarized in the statement of facts above and detailed in the FAC, Plaintiff resisted
24
     and reported no less than ten categories of legal violations within the BUSD H.R. Department.  A
25
     public employee's report to his or her employer is a disclosure of information to a government or
26
     law enforcement agency pursuant to Labor Code §1102.5(a), (b).  Labor Code § 1102.5(e).
27
         Defendants now assert that Plaintiff has failed to identify "any state or federal statute, rule
28

                                          - 9 -

or regulation that he reasonably believed Defendants violated." Defendants either are or should be aware of the provisions of law that are at issue. Their pretense to the contrary is disingenuous at best. The laws at issue impose not only civil, but criminal liability. Plaintiff respectfully submits the following non-exhaustive list of authorities that were implicated by the unlawful conduct he reported and resisted, as detailed in the FAC, which included:

(1) Discrimination based on employees' sex. FAC ¶¶ 19, 20, 29-41, 55, 59, 63. The prohibition against discrimination based on sex is contained, *inter alia*, in California Government Code § 12940(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); the Equal Protection Clause set forth at Article I, § 7(a) of the California Constitution; and the Equal Protection Clauses set forth in Amendments V and XIV of the U.S. Constitution.

(2) Lawrence's pattern and practice of hiring employees without statutorily required fingerprint clearances and of hiring and retaining employees with criminal records of prohibited offenses who lied about their records of convictions for fraud-related offenses during and after the hiring process. FAC ¶¶ 42, 43, 48, 49. Lawrence's conduct violated statutory prohibitions set forth, *inter alia*, at Education Code §§ 45122.1 and 45125, governing employment of classified employees and requiring fingerprint clearances from the Department of Justice prior to hiring and retaining employees in the classified service.

(3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the (statutorily and Constitutionally protected) privacy of employee personnel files. FAC ¶ 44. Multiple statutory and Constitutional sources are implicated. They include California Constitution Article I, § 1 (setting forth citizens' right to privacy, which extends to personnel records); Civil Code §§ 1799-1799.3 (prohibiting disclosure of book keeping information, broadly defined to include that performed by employers, to third parties without an employee's permission); Labor Code § 1198.5 (specifically authorizing employees, and only employees, subject to certain exceptions that do not apply to the FAC allegations, to inspect personnel files); Civil Code §§ 56-56.37 (prohibiting disclosure of employee medical information).

(4) The H.R. Department's failure to notify the Department of Justice upon the termination of employment of various individuals, which failure resulted in the District continuing to receive

- 10 -

1   and retain subsequent arrest reports it was statutorily prohibited from obtaining or retaining.  FAC

2   ¶ 44.  These actions violated, *inter alia*, Education Code § 45125(k)(1) (prohibiting disclosure of

3   criminal background information); Labor Code § 432.7(g)(2)-(3) (prohibiting unauthorized

4   receipt and disclosure of criminal history) (violation is a misdemeanor [Labor Code § 433]);

5   California Penal Code § 11102.5(d) and (e) (requiring employer to notify Department of Justice

6   when employment is terminated so District no longer receives subsequent criminal history

7   information and requiring District to return any improperly received information).

8       (5)  Condescension and hostility by Defendants Dodson and Obieta, under Lawrence's

9   direction, when Plaintiff confronted them regarding an unlawful practice of allowing an

10  individual under criminal investigation to view an employee's personnel file without supervision

11  FAC ¶ 45.  See authorities listed under item (3), *supra*.

12      (6)  Failure by the District to obtain "Livescan" digital fingerprint records of current

13  employees as required by law.  FAC ¶ 47.  The statutory requirement for such electronic

14  fingerprints is set forth, *inter alia*, at California Penal Code §§ 11077.1 through 11081.

15      (7)  Failure by Defendants to follow procedures mandated by statute and regulation for

16  enrolling newly appointed employees in CalPERS (FAC ¶ 50) and unlawful transfer of user IDs

17  to individuals who were not authorized to access the CalPERS system through the Internet. (FAC

18  ¶ 50) Provisions Plaintiff reasonably believed were violated included, *inter alia*, Government

19  Code § 20283 (requiring employer to enroll eligible employees within 90 days of eligibility or

20  pay $500 fine from employer's CalPERS reserve account); Government Code § 20065 (defining

21  less than full-time employment); and Government Code §§ 20635 and 20635.1 (governing

22  computation of eligibility for enrollment).  As alleged in the FAC, Plaintiff was advised by

23  CalPERS staff that CalPERS IDs were not transferable and that allowing use by an unauthorized

24  individual violated the security agreement under which they were granted.  The online CalPERS

25  system user security agreement states, in relevant part, "Passwords must be kept confidential."

26  The document also expressly prohibits "sharing or allowing others access to your password for

27  any reason."  (See Request for Judicial Notice, Ex. A, filed concurrently herewith.)

28

(8)  The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with predetermined outcomes, and Defendants' improper performance of multiple roles within the disciplinary process, in violation of employees' rights to procedural due process and orderly application of the Merit System Rules.  FAC ¶¶ 56, 57.  The right to a fair and impartial disciplinary process is guaranteed by the Due Process Clauses of Article I, § 7 of the California Constitution as well as Amendments V and XIV of the U.S. Constitution.

(9)  and (10) The District's failure to adhere to the federal No Child Left Behind Act testing requirements and deliberate misrepresentations to affected employees, resulting in unlawful, forced early retirement of several employees.  FAC ¶ 60.  Authorities Plaintiff reasonably believed were violated included, *inter alia*, 20 U.S.C. § 6301 et seq.; 5 California Code of Regulations §§ 6100 to 6126.  The right to a fairly administered retirement procedure and lawful application of criteria for continued employment is guaranteed, *inter alia*, by the Due Process Clauses of Cal. Const. Article I, § 7, and Amendments V and XIV of the U.S. Constitution.

Thus, Plaintiff's suspicions that his supervisors' directives, as mandated and approved by Lawrence, were unlawful, were reasonably based.  Accordingly, *Love v. Motion Industries*, 309 F.Supp.2d 1128 (N.D. Cal. 2004) and *Morgan v. Regents of the University of California*, 88 Cal.App.4th 52 (2000), are inapposite.  As Defendants concede, Plaintiff is not required to prove that Defendants violated the law in order to establish a claim under Labor Code § 1102.5.  Rather, Plaintiff must show that he reasonably believed the directives he resisted and reported were unlawful.  See *Green v. Ralee Engineering*, 19 Cal.4th 66 (1998).  The extensive list of authorities cited *supra* demonstrates that Plaintiff's belief was more than reasonable.

Plaintiff respectfully submits that this showing is sufficient to validate his claim under Labor Code § 1102.5. Should the Court conclude that the authorities must be listed in the Complaint, Plaintiff respectfully requests leave to amend to add the above citations.

**C.  The Superior Court Correctly Rejected Defendants' Argument That Plaintiff Failed To Allege He Was Subjected To Adverse Employment Action.**

Defendants attempt to replay in this Court their specious argument that that Plaintiff has not satisfactorily alleged he was subjected to "adverse action" for purposes of his various claims.

- 12 -

1    The Superior Court flatly rejected that argument in its Order, stating: "Plaintiff has adequately

2    alleged adverse employment action, including constructive termination."  Borgerson Dec., Ex. F.

3          Plaintiff has alleged that he was subjected to a continuing course of harassment,

4    retaliation, hostility, and insulting behavior, culminating in his constructive discharge, in

5    retaliation for his reporting and resisting unlawful directives.  The standard for an "adverse

6    employment action" applicable in employment retaliation lawsuits under the FEHA also applies

7    to employment retaliation lawsuits under Labor Code §1102.5(b).  *Patten v. Grant Joint Union*

8    *High School Dist.* 234 Cal.App.4[th] 1378, 1384-1390. (2005).  To be "adverse" under that

9    standard, an employment action need not even be "ultimate," as it was here.  Any employer

10   misconduct that "materially affects the terms, conditions, or privileges of employment" is

11   sufficiently "adverse" to state an FEHA claim.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4[th] 1028,

12   1051-1052 (2005); *Akers v. County of San Diego*, 95 Cal.App.4[th] 1441, 1455 (2002); See also *Soo*

13   *v. United Parcel Service, Inc.*, 73 F.Supp.2d 1126, 1130 (N.D. Cal. 1999) ("*Soo*"), and cases cited

14   therein; *Thomas v. Dept. of Corrections*, 77 Cal.App.4[th] 507, 512 (2000) (adverse action must be

15   employment related).)  Plaintiff has more than satisfied that test.

16         Labor Code § 1102.5 "is a whistleblower statute, the purpose of which is to 'encourage

17   workplace whistle-blowers to report unlawful acts without fearing retaliation.'"  *Soukup v. Law*

18   *Offices of Herbert Hafif*, 39 Cal.4[th] 260, 287 (2006), citing *Green v. Ralee Engineering Co.*, 19

19   Cal.4[th] 66, 77 (1998).  Defendants wish to be able to retaliate against Plaintiff for identifying their

20   unlawful acts, then trivialize the impact of their retaliatory conduct to the point of divesting him

21   of the protections of this statute.

22        **D.  Defendants Have Not Challenged Plaintiff's Equal Protection Claim.**

23         Although Defendants entitle their moving papers "Motion To Dismiss Plaintiff's First

24   Amended Complaint Or, Alternatively, Each and Every Claim Therein", Plaintiff respectfully

25   notes that Defendants have presented no argument regarding Plaintiff's Second Cause Of Action

26   for Violation of Federal Right to Equal Protection of the Laws.  Plaintiff respectfully submits that,

27   if Defendants attempt to present such argument on Reply to this Memorandum, Plaintiff should

28   be allowed an opportunity for Surreply to respond to such argument.

- 13 -

1

2

**E. Plaintiff's Due Process Claim Is Viable Because He Has Adequately Pled His Employment Was Terminable Only For Cause, Entitling Him To Pre-Termination Due Process.**

3

4

5

6

7

8

9

Defendants are well aware that Plaintiff's employment was terminable only for just cause and they cannot in good faith claim the contrary. Plaintiff has adequately pled that he had a reasonable expectation of continued employment based on the Merit System Rules, consistently stellar performance evaluations, oral representations of his supervisors, and internal memoranda. Those items of evidence are not publicly posted and must be obtained through discovery. This is not a summary judgment proceeding and issues of proof are irrelevant at this stage. Plaintiff has adequately alleged the source of his Constitutionally cognizable property interest.

10

11

12

13

14

15

Defendants disingenuously attempt to avoid Plaintiff's Due Process claim by characterizing it as "nothing more than a back door attempt to plead a claim for some type of breach of contract or breach of implied contract." Defendants' Memo, p. 10. Defendants continue, "Both claims were dismissed by the court because Plaintiff has no contractual basis of continued employment. The court granted leave to amend to allow Plaintiff an opportunity 'to allege a statutory basis for Plaintiff's claims to continued employment and increased pay." *Ibid*.

16

17

18

19

20

21

22

23

24

As is plain from the FAC, Plaintiff has accepted for purposes of this litigation the Superior Court's opinion that he cannot state his claim against Defendants in contract. That fact does not preclude him from pursuing a Constitutional claim based on the same set of facts and related reasonable expectations. Defendants complain that Plaintiff did not materially alter his Complaint. The facts of this case and Plaintiff's reasonable expectations based on them remain the same. Plaintiff reasonably believed his employment was terminable only for just cause based on the factual items cited *supra*. Those facts and reasonable expectations are now being examined from a Constitutional perspective, implicated because of the public employment context within which they occurred.

25

26

27

The Superior Court merely ruled that, because the employment relationship between Plaintiff and Defendants as public employers was by statute and ordinance rather than contract, he could not base his claims in contract as a matter of law. The court made no comment on whether

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE - CASE NO. CV 08-00060 TEH

1    Plaintiff reasonably believed his employment was terminable only for cause, which is the issue

2    critical to his due process claim. Thus, the Superior Court's ruling did nothing to diminish the

3    principle, well settled in longstanding U.S. Supreme Court jurisprudence, that, where a public

4    employee has a reasonable expectation of continued employment, he has a property interest in

5    such employment that cannot be divested absent Constitutionally adequate procedural safeguards.

6    *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

7         Defendants add insult to injury when they belittle Plaintiff's claim by stating "Plaintiff,

8    however, was *not* terminated by the District.  Plaintiff submitted his own resignation and now

9    claims constructive discharge."  Defendants' Memo, pp. 10-11.  Defendants marshal this fact as

10   purported support for their claim that Plaintiff has shown no right to pre-termination due process.

11   As found by the Superior Court, "Plaintiff has adequately alleged adverse employment action,

12   including constructive termination."  Borgerson Dec., Ex. F.  Constructive discharge *is*

13   termination for purposes of assessing an employer's liability.  Defendants miss the point entirely.

14   Plaintiff was discharged without just cause for unlawful reasons without being afforded *any* pre-

15   termination procedures whatsoever.

16        As for the procedures to which Plaintiff was due, again, Defendants fail to appreciate the

17   Constitutional scale of the issues presented by the public employment context of their own

18   employment.  As the Court in *Loudermill*, *supra*, 470 U.S. at 547 clearly stated,

19        The right to due process is conferred, not by legislative grace, but by constitutional
          guarantee.  While the legislature may elect not confer a property interest in public
20        employment, it may not constitutionally authorize the deprivation of such an interest,
          once conferred, without appropriate procedural safeguards.

21        The precise contours of the procedures to which Plaintiff would have been entitled will be

22   determined through reference to the Merit System Rules once they are obtained through discovery

23   and Constitutional balancing of interests according to the time honored formula set forth in the

24   seminal case of *Mathews v. Eldridge*, 424 U.S. 319 (1976) and its progeny.

25   **F.    The Superior Court Correctly Ruled That Plaintiff Has Stated a *Prima Facie* FEHA
             Discrimination Claim Against BUSD and Defendants in Their Official Capacities.**

26        Without acknowledging it, BUSD is in effect asking this Court to overturn the Superior

27   Court's rejection of Defendant's unmeritorious Demurrer to Plaintiff's cause of action for

28

- 15 -

discrimination based on sex under the FEHA.  The arguments presented at pages 11 to 15 of

Defendants' Memorandum in support of their Motion to Dismiss in this Court were presented,

verbatim, to the Superior Court at pages 7 to 9 of the Memorandum of Points and Authorities in

Support of BUSD's Demurrer.  (Borgerson Dec., Ex. C, pp. 7-9.)  Those arguments were soundly

rejected by the Superior Court.  In its Order, which Defendants neglected to file with this Court,

the Superior Court held:

> The demurrer to the Fourth Cause of Action is OVERRULED.  Plaintiff has
> adequately alleged adverse employment action, including constructive
> termination.  Plaintiff alleges that the conduct directed at him was based on his
> male gender.  The face of the complaint does not show that the immunity for
> discretionary acts is applicable.

(Borgerson Dec., Ex. H.)  The court's Order was correct, as discussed *infra*.

**1.  Plaintiff Has Not Asserted a Disparate Treatment Claim Against the Individual Defendants In Their Individual Capacities.**

As with their superfluous arguments regarding Plaintiff's Labor Code § 1102.5 claim,

Defendants irrelevantly argue that Plaintiff cannot sue them individually for intentional

discrimination because they were "not his employer."  Defendants' Memo, p. 15.  As clearly

stated in the FAC, the Fourth Cause of Action, entitled "Unlawful Discrimination On the Basis of

Sex [Gov. Code § 12900 et seq.]" is brought "Against BUSD and Defendants in their Official

Capacities." FAC p. 30, lines 8-10.  It is axiomatic that a lawsuit against public officials in their

official capacities is tantamount to a lawsuit against the public entity that employs them.

Defendants' arguments regarding their purported lack of individual liability are immaterial.

**2. Plaintiff Has Adequately Alleged a *Prima Facie* FEHA Sex Discrimination Claim Against BUSD and Defendants in Their Official Capacities**

Defendant has confused Plaintiff's initial burden of production to plead a *prima facie*

case, which Plaintiff has clearly satisfied and which defeats Defendant's Motion to Dismiss, with

Plaintiff's ultimate burden of persuasion at trial, which does not come into play until after

Defendant has answered and is not at issue at the Motion to Dismiss stage.  BUSD can be held

liable for discriminatory personnel actions that adversely affected Plaintiff's employment, by the

individual Defendants in their official capacities.

It is well settled that, to state a *prima facie* case of discrimination under the FEHA, one

- 16 -

1    must allege facts establishing that (1) the plaintiff is a member of a protected class; (2) the

2    plaintiff was competently performing in the position he occupied; (3) the plaintiff suffered an

3    adverse employment action, such as termination, demotion, or denial of an available job; and (4)

4    some other circumstance s suggesting a discriminatory motive. *Guz v. Bechtel Nat'l, Inc.*, 24

5    Cal.4th 317, 355 (2000); *Slatkin v. University of Redlands,* 88 Cal.App.4th 1147 (2001); *McDonnel*

6    *Douglas Corp. v. Green*, 411 U.S. 792 (1973).

7          The Plaintiff's burden of production at the *prima facie* case stage is "designed to eliminate

8    at the outset the most patently meritless claims, as where the plaintiff is not a member of the

9    protected class or was clearly unqualified, or where the job he sought was withdrawn and never

10    filled." *Guz*, *supra*, 24 Cal.4th at p. 354, citing *Texas Dept. of Community Affairs v. Burdine*, 450

11    U.S. 248, 253-254 (1981); *Caldwell v. Paramount Unified School Dist.*, 41 Cal.App.4th 189, 202

12    (1995).  This requirement is "not onerous."  *Guz*, *supra*, 24 Cal.4th at p. 355.  To meet it, the

13    Plaintiff must "show actions taken by the employer from which one can infer, if such actions

14    remain unexplained, that it is more likely than not that such actions were based on a prohibited

15    discriminatory criterion."  *Id.*, citing *Ibarria v. Regents of the University of California*, 191

16    Cal.App.3d 1318, 1327-1328 (1987) and *Furnco Construction Corp. v. Waters*, 438 U.S. 567,

17    576 (1978), internal quotation marks and ellipses omitted.

18          Once the Plaintiff alleges facts supporting the four *prima facie* elements, a rebuttable

19    presumption of unlawful discrimination is created.  *Burdine*, *supra*.  The burden then shifts to the

20    Defendant to attempt to rebut that presumption by articulating some legitimate, non-

21    discriminatory reason for the employer's action.  *McDonnel Douglas*, *supra*; *Burdine*, *supra*; *St.*

22    *Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  The Defendant's opportunity to attempt

23    such a rebuttal is in his, her, or its Answer to the Complaint.  If the Defendant's proffered reason

24    successfully rebuts the presumption, Plaintiff then bears the ultimate burden of persuasion at trial

25    to show that the Defendant's proffered explanation for its actions is pretextual.  (*Burdine*, *supra*.)

26          Here, Defendants have not yet answered the Complaint.  Instead, they have challenged the

27    sufficiency of the Complaint with a Motion to Dismiss.  To defeat a Motion to Dismiss, Plaintiff

28    need only have pled facts supporting a *prima facie* case.  He is not required to anticipate

1  Defendant's attempted rebuttal.  Nor is he required to articulate facts that will support his ultimate

2  burden of persuasion at trial and he is not required at this stage to identify any evidence.  See

3  *Caldwell*, *supra*, 41 Cal.App.4[th] at 202 (it is for court to determine as a matter of law whether

4  plaintiff has stated *prima facie* case and, when answering the Complaint, whether defendant has

5  rebutted it.  It is for fact finder to determine whether Plaintiff has met ultimate burden of

6  persuasion); *Furnco*, *supra*, 438 U.S. at p. 576 (same).[5]

7  Plaintiff has adequately pled that (1)  he is male; (2) he was competently performing the

8  duties of his position; (3) he was subjected to disparate treatment and harassment because of his

9  sex and to retaliation for attempting to protect his rights against such unlawful treatment, so

10  severely and pervasively as to constitute a constructive discharge; and (4) such unlawful disparate

11  treatment and harassment because of sex, as well as retaliation for voicing opposition to it, were

12  part of a pattern and practice within the BUSD H.R. Department, affecting at least three men

13  other than Plaintiff, which gives rise to a reasonable inference that it is more likely than not that a

14  discriminatory intent motivated Defendants.[6]

15  **3.  The Superior Court Correctly Found Plaintiff Had Alleged He Was Subjected To
Adverse Employment Action.**

16

17  As discussed in Section C, supra, the Superior Court soundly rejected the same argument

18  Defendants attempt to revive here, that Plaintiff has failed to show he was subjected to adverse

19  employment action.  Again, discharge from employment, including constructive discharge, more

20  than qualifies as an "adverse action" for *prima facie* case purposes.[7]  Plaintiff has also stated that

21  he was subjected to a continuing course of harassing and retaliatory conduct, hostility, disparate

22

23  [5] As this is a Motion to Dismiss proceeding, Defendants' citation to cases addressing whether the plaintiff had met its ultimate burden of persuasion at trial or on appeal from summary judgment adjudications do nothing to advance Defendants' Motion to Dismiss.  Thus, each of the following

24  cases has no bearing on determination of the Motion to Dismiss:  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (addressing ultimate burden of persuasion, not *prima facie* case);

25  *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (same); *Watson v. Southeastern PA Transportation Authority*, 207 F.3d 207, 211 (3d Cir. 2000) (same, and from remote jurisdiction);

26  *Slatkin v. University of Redlands*, 88 Cal.App.4[th] 1147 (2001) (appeal from summary judgment on ultimate issue, not *prima facie* case.)

27  [6] Plaintiff is not bringing a "pattern and practice" claim, which is generally pursued on behalf of a class.  However, the pattern and practice are circumstantial evidence of intent.

28  [7] See Section C, *supra*.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE - CASE NO. CV 08-00060 TEH

1  treatment, and insulting behavior because of his sex and because of his attempts to protect

2  statutory and Constitutional rights, including rights against sex discrimination protected by the

3  FEHA.  Thus, Plaintiff has amply met his burden of production.  Defendant's proper response is

4  an Answer, not a Motion to Dismiss.

5       Plaintiff has stated claims that he was subjected to discriminatory personnel actions

6  because of sex implemented by the individual Defendants in their official capacities.  The party

7  effectively sued by such allegations is BUSD and it can be held liable for Defendants' unlawful

8  discriminatory conduct.  See generally, *Hoff v. Vacaville Unified School Dist.*, 19 Cal.4th 925

9  (1998) ("*Hoff*"), *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996).

10 **G.    Defendants Can Be Held Individually Liable For Harassment and Retaliation.**

11      It is settled that, the FEHA unambiguously imposes individual liability on supervisors for

12 *harassment* or *retaliation*, both of which were alleged in the facts of Plaintiff's original

13 Complaint and both of which have been expressly set forth as the Fifth and Sixth Causes of

14 Action in the First Amended Complaint.  *Soo*, *supra*, 73 F.Supp.2d at p. 1129, citing *Page v. The*

15 *Superior Court of Sacramento County*, 31 Cal. App. 4th 1206, 1212 (1995); *Walrath v. Sprinkel*,

16 99 Cal.App.4th 1237, 1242 (2002) (*Reno v. Baird*, 18 Cal.4th 640 (1998) ("*Reno*") does not control

17 retaliation cases).[8]

18 **H.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted By Statute and Is Not Preempted by the Workers Compensation Act.**

19      Defendant's contentions regarding Plaintiff's claims for Intentional Infliction of

20 Emotional Distress ("IIED") lack merit because, as the Superior Court confirmed, the Tort Claims

21 Act provides a statutory basis for bringing the claim against Defendants; Plaintiff has set forth

22

23 ────────────────────

24 [8] The FEHA prohibits an employer "or any other person" from harassing an employee on a basis prohibited by the act, including sex.  Gov. Code § 12940, subd. (h)(1).  Consistently, with regard

25 to harassment, the FEHA defines an "employer" as "any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly...."  (Gov. Code §

26 12940, subd. (h)(3)(A).)  Thus, individuals, including supervisors, can be held liable for harassment of their subordinates. *Reno*, *supra*, 18 Cal.4th at p. 646.  Similarly, it is unlawful for

27 "any employer… *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by the FEHA]"  Gov. Code § 12940

28 subd. (h) (emphasis added); *Winarto v. Toshiba*, 274 F.3d 1276, 1283-1284, fn. 2 (9th Cir. 2001); See also *Blom v. N.G.D. Spark Plugs*, 3 Cal.App.4th 382 (1992) (also violates public policy).

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE - CASE NO. CV 08-00060 TEH

1  Constitutional claims based on 42 U.S.C. § 1983; severe emotional distress can be found where a

2  defendant abuses a relationship of authority with the Plaintiff; and severe emotional distress

3  resulting from conduct that violates public policy, as is alleged in the FAC, is not subject to

4  Worker's Compensation exclusivity.

5      In California, an employee of a public entity is liable for his or her torts to the same extent

6  as a private person (Gov. Code Sec. 820, subd. (a); *Hoff*, *supra*, 19 Cal.4th at p. 932).[9]  The

7  Superior Court confirmed the accuracy of this point.  Borgerson Dec., Exs. I – M: "The Court

8  notes that Government Code § 820(a) provides a statutory basis for liability of public entity

9  employees for common law torts." The employing public entity is vicariously liable for any injury

10  that its employee causes to the same extent as a private employer. [Gov. Code] Sec. 815.2, subd.

11  (a); *Hoff*, *supra*, 19 Cal.4th at p. 932.[10]

12      "A prima facie case [of IIED] requires (1) outrageous conduct by the defendant, (2)

13  intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe

14  emotional suffering and (4) actual and proximate causation of the emotional distress."  *Cole v.*

15  *Fair Oaks Fire Protection Dist, 43* Cal.3d 148, 155 fn. 7 (1987); see also *Nally v. Grace*

16  *Community Church*, 47 Cal.3d 278, 300 (1988).  Liability is to be based upon "conduct exceeding

17  all bounds usually tolerated by a decent society, of a nature which is especially calculated to

18  cause, and does cause, mental distress."  (43 Cal.3d at p. 155, internal quotations and citations

19  omitted.)

20      Defendant's attempt to trivialize the unlawful, humiliating, hostile and retaliatory

21  treatment to which Plaintiff was subjected ignores the nature of the individual Defendant's

22  authoritative relationship with him.  As the California Supreme Court has explained, the

---

23  [9] Such liability can be avoided only through defenses available to private individuals or through assertion of immunity which, as discussed infra, is not available to the Defendants to this action.

24  [10] For this reason, because an employee may sue in tort for a wrongful discharge that violates a fundamental policy enshrined in the state's Constitution or statutes (*Foley* v. *Interactive Data*

25  *Corp.*, 47 Cal.3d 654 (1988); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172 (1980)) and based on the arguments submitted to the Superior Court and the decision in *Scott, supra*,

26  summarized *supra*, and at Borgerson Dec., ¶ 15, Plaintiff respectfully requests that this Court grant Plaintiff leave to amend the Complaint to reinstate his cause of action for tortious wrongful

27  termination in violation of fundamental public policy which the Superior Court erroneously dismissed. This Court has authority to revisit and change law and motion rulings of the Superior

28  Court.  *Preaseau v. Prudential Ins. Co. of America*,  591 F.2d 74, 79 (9th Cir. 1979).

- 20 -

1  outrageousness of alleged conduct depends on its context and the relationship and knowledge of

2  the persons involved:

3          Behavior may be considered outrageous if a defendant (1) abuses a relation or position
        which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is
        susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably
4          with the recognition that the acts are likely to result in illness through mental distress.

5  (*Id.*)  Plaintiff has alleged that he was subjected to a continuing course of hostile, abusive, and

6  humiliating conduct by Defendants, with Lawrence's knowledge and approval, in retaliation for

7  his identifying and resisting unlawful directives.  Defendants' (including Lawrence's) abuse of

8  their supervisorial relationships with Plaintiff was outrageous by any rational sense of decency, as

9  reflected in settled case law.  See *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 496 (1970)

10 (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff was

11 outrageous and supported IIED claim).[11]

12         Plaintiff was so disturbed by Defendants' actions, that he was rendered physically ill, was

13 forced to resign his position, and suffered continuing, severe, emotional distress.[12]

14         Worker's compensation exclusivity extends to intentional infliction of emotional distress

15 by an employer's work-related conduct <u>only if the conduct does not contravene public policy</u>.

16 *Gibbs v. American Airlines, Inc.*, 74 Cal.App.4th 1, 10 (1999).  Where, as here, a managerial

17 employee's conduct steps outside her legitimate role as employer, the conduct can give rise to

18 liability. See generally *Kiseskey v. Carpenters' Trust for Southern California*, 144 Cal.App.3d

19

20 [11] Unlike in *Schneider v. TRW, Inc.*, 938 F.2d 986, 992-993 (9th Cir. 1991), relied on by
   Defendant, the retaliatory and abusive conduct to which Plaintiff was subjected did not occur in
21 the course of criticizing his job performance.  To the contrary, Plaintiff's job performance was
   consistently exemplary.  Rather, Defendants, with Lawrence's knowledge and approval, inflicted
22 hostile and abusive conduct on Plaintiff in retaliation for his reporting and resistance to unlawful
   directives, in violation of fundamental public policy.  *Schneider* is inapposite.
23 [12] "Severe" means substantial or enduring as distinguished from trivial or transitory.  *Fletcher v.
   Western Life Insurance Co.* 10 Cal.App.3d 376, 397 (1970).  The degree of emotional distress
24 requisite for recovery need not consist of evidence that Plaintiff "suffered any traumatic
   emotional distress of the character of shock, horror or nausea" but may consist of any "highly
25 unpleasant mental reaction, such as fright, grief, shame, humiliation, embarrassment, anger,
   chagrin, disappointment, or worry."  (*Id.* at p. 397, citing *Crisci v. Security Ins. Co.*, 66 Cal.2d
26 425, 433; Rest.2d Torts Sec. 46, com. j.)  The duration of emotional distress is one factor to be
   considered in determining its severity. (10 Cal.App.3d at p. 398.) (persistence for several months,
27 as in the instant case, militated in favor of finding of severity.)  In California, recovery may be
   had for emotional distress without accompanying physical injury.  (10 Cal.App.3d at p. 396.)
28 Here, Plaintiff suffered both physical and emotional symptoms.

222, 229 (1983), and cases cited therein. It is settled that certain wrongs lie wholly outside the

contemplation of the workers' compensation scheme, such as discharge in contravention of

fundamental public policy (*Livitsanos v. Superior Court*, 2 Cal.4th 744, 752 (1992), citing *Gannt*,

*supra*, and *Tameny*, *supra*; accord, *Charles Vacanti, M.D. Inc. v. State Compensation Insurance*

*Fund*, 24 Cal.4th 800 (2001)) and conduct that violates the FEHA. (*Livitsanos*, *supra*, 2 Cal.4th at

p. 817; *City of Moorpark v. Superior Court*, 18 Cal.4th 1143 (1998).) "[A]n injury resulting from

a wrongful termination in violation of a whistleblower statute 'lies well outside the compensation

bargain,' and the exclusive remedy provisions do not apply." (*Moorpark*, *supra*, 18 Cal.4th at p.

1152, citing *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23; See also *Blom v. N.G.D. Spark Plugs*

(1992) 3 Cal.App.4th 382 (retaliatory discharge for efforts to obtain compliance with FEHA

violates public policy).)

Plaintiff has pled causes of action for wrongful termination in violation of Labor Code §

1102.5, violation of his right to Equal Protection and Due Process under 42 U.S.C. § 1983, and

violation of his rights under the FEHA. Workers Compensation exclusivity does not apply to

injuries, including emotional distress, arising from such conduct. See *Calero v. Unisys Corp.*,

271 F.Supp.2d 1172, 1181 (2003), and cases cited therein; See also *Reno, supra,* 18 Cal.4th at

646, favorably quoting *Janken, supra* (the law is settled that "harassment is not a type of conduct

necessary to personnel management.").

**I.     The Individual Defendants' Unlawful Conduct Does Not Fall Within Their Official
Discretion and Is Not Subject to a Defense of Immunity**

Defendants' claim of immunity is specious. "Conduct by persons acting under color of

state law which is wrongful under 42 U.S.C. § 1983 or § 1985 (3) *cannot be immunized by state*

*law*. *Martinez v. California,* 444 U.S. 277, 284 fn. 8 (1980) (emphasis added). The law is settled

that neither violations of public policy nor retaliation or harassment under the FEHA fall within a

public employee's immunity for discretionary acts. *Montoya*, supra, 10 Cal.4th at 986-987, fn. 7

(Statutory prohibitions against a government employee using official power against the efforts of

another employee to resist and report job-related violations of law evince a legislative intent to

withhold immunity for such actions); *Taylor v. City of Los Angeles*, 144 Cal.App4th 1216, 1238-

- 22 -

1239 (2006) (imposition of individual supervisor liability for harassment and retaliation under the FEHA similarly reflects a legislative withholding of immunity for such *ultra vires* actions); *Tietz v. LAUSD*, 238 Cal.App.2d 905, 909 (1965) (public employees vested with policy making authority are immune from suit only for "discretionary acts *within the scope of their authority*.")

**J.    Plaintiff Has Adequately Stated a Claim For Punitive Damages Against the Individual Defendants.**

The foregoing demonstrates that the conduct at issue in the FAC falls outside Defendants' legitimate official functions.  Consequently, the individual Defendants' arguments that they cannot be held liable for punitive damages on grounds that they are only alleged to have committed unlawful acts in their official capacities lack merit.

Defendants' further assertion that Plaintiff has failed to allege facts sufficient to support a punitive damages claim simply ignores the allegations set forth in the Complaint.  The only reason Plaintiff's punitive damages claims were dismissed *with leave to amend* by the Superior Court was that the court had rejected the specific legal predicate to those damages, namely, the tortious wrongful discharge claim and intentional discrimination causes of action against the individual defendants. The court did *not* find that the Defendants' conduct was insufficiently egregious to support a claim of punitive damages.

Plaintiff has alleged that Brier, Obieta, Dodson, and Udell, with Lawrence's knowledge and prior and/or subsequent approval and ratification, subjected plaintiff to unlawful harassment because of his sex, retaliation for his attempts to protect rights conferred by the FEHA, retaliation for his reporting and refusal to implement unlawful directives, a hostile and retaliatory environment so severe and pervasive as to result in his constructive discharge, and deprivation of his Constitutional rights to Equal Protection and Due Process.

Punitive damages are available under Civil Code § 3294 "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, . . ." Malice is defined in § 3294 as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Subd. (c)(1).) Oppression is defined as "despicable

1    conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's

2    rights." (Subd. (c)(2).)  Punitive damages also are available against the individuals under § 1983.

3    *Smith v. Wade* (1983) 461 US 30.

4        Intentional violation of an employee's rights coupled with an attempt to cover up the

5    violation supports a punitive damages claim.  *Cloud v. Casey*, 76 Cal.App.4th 895, 911-912

6    (1999).  Plaintiff's rights were violated and he was repeatedly ordered to be silent when he

7    attempted to protest such violations.  Allegations of retaliation for whistleblowing activity are

8    sufficient to infer intent to injure the Plaintiff to support a punitive damages claim.  *Neveu v. City*

9    *of Fresno*, 392 F.Supp.2d 1159, 1183 (E.D. Cal. 2005).  Repeated violations of law constitutes

10   reprehensible conduct supporting a punitive damages claim.  *Boeken v. Philip Morris Inc.*, 127

11   Cal.App.4th 1640 (2005), reh'g denied, review denied, cert. denied, 126 S.Ct 1567.  Entitlement

12   to punitive damages is generally a matter for the finder of fact.  *The Nippon Credit Bank v. 1333*

13   *North Cal. Boulevard*, 86 Cal.App.4th 486 (2001), review denied.

14       In *Monge v. Superior Court*, 176 Cal.App.3d 503 (1986), the court explained that

15   "Malice" means "a wrongful intent to vex or annoy"; "Oppression" means "subjecting a person to

16   cruel and unjust hardship in conscious disregard of his rights" and both "may be inferred from the

17   circumstances of a defendant's conduct."  *Id*. at p. 511.  Here, Plaintiff has alleged that his

18   repeated attempts to resist and oppose violations of fundamental public policies set forth in the

19   state Penal statutes, the state and federal Constitutions, and the FEHA, were met with repeated

20   acts of retaliation, harassment, and actions by Defendants designed to silence Plaintiff.  Plaintiff

21   has also alleged that the disparate treatment he received due to his sex was part of a *pattern and*

22   *practice of such misconduct* affecting at least three other men during his tenure.  Such conduct

23   surely reflects malice and oppression within the meanings the courts have ascribed those terms.[13]

---

[13] None of the cases Defendants cite involve the egregious allegations of intentional harassment,
retaliation against Plaintiff for reporting and resisting illegal directives and practices, and
violations of fundamental public policies and Constitutional rights at issue herein.  See, e.g.,
*Smith v. Superior Court*, 10 Cal.App.4th 1033, 1041-1042 (1992) (sole allegation supporting
punitive damage claim was that "petitioners failed to adequately represent her and her property
interests in the dissolution proceeding thereby resulting in economic injury"); *Ebaugh v. Rabkin*,
22 Cal.App.3d 891, 894-895 (1972) (did not involve sufficiency of pleading, but was appeal from
summary judgment and addressed sufficiency of proof; record evidence contained *no* facts
supporting finding of malice, express or implied;  indicated defendant had displayed mere

1    The court's words in *Monge* (176 Cal.App.3d at 511) apply equally to the instant case and

2    Defendants' frivolous Motions to Strike:

3        Other than a more detailed description of the manner by which defendants transformed
         plaintiffs' working environment into an oppressive and hostile situation or of the precise
4        job demotions and privilege changes effected by defendants in their retaliatory effort, it is
         difficult to conceive how the complaint could more graphically plead the requisite element
5        of an evil and mischievous motive on the defendants' part both to vex and annoy plaintiffs
         and to subject them to cruel and unjust hardship in conscious disregard of their rights.
6
         Facts alleged in the FAC amply support a prayer for punitive damages.  The individual
7
     Defendants' Motion to Strike is without merit and should be summarily denied.
8
                                    **VI. CONCLUSION**
9
10       For the foregoing reasons, it is respectfully submitted that Defendants Motions to Dismiss

11   and Strike should be Denied and Plaintiff should be granted leave to amend his Complaint to

12   reinstate his tortious wrongful discharge cause of action against Defendants.

13   Dated this 18th day of February, 2008         By: _____
                                                        Eric Borgerson, SBN 177943
14                                                      Law Office Of Eric Borgerson
                                                        2625 School Street
15                                                      Oakland, CA 94602

16
_____
17   "inadvertence"); *Smithson v. Sparber*, 123 Cal.App. 225, 232 (1932) "A reading of the complaint
     from beginning to end indicates…a claimed case of negligence and nothing more.")
18       Other cases cited by Defendants support Plaintiff's claim.  See, e.g., *Cyrus v. Haverson*, 65
     Cal.App.3d 306, 316-317 (1976) ("Malice is properly pleaded by alleging the wrongful motive,
19   intent or purpose"; citing 3 Witkin Cal. Procedure (2d ed. Pleading § 766); and "A general
     allegation of that intent is sufficient"; citing *Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616,
20   632 (1972), internal brackets and ellipses omitted; Plaintiff in *Cyrus* failed to allege a wrongful
     motive, intent, or purpose); *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29 (1975)
21   ("When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be
     supported by pleading that the wrong was committed willfully or with a design to injure").   Here,
22   Plaintiff has amply pled multiple intentional, willful violations of his rights and willful retaliatory
     conduct that violated fundamental public policy.
23       Equally unavailing to Defendants is *Perkins v. Superior Court*, 117 Cal.App.3d 1 (1981),
     where the court said, "Taken in context, the words 'wrongfully and intentionally … describe a
24   knowing and deliberate state of mind from which a conscious, disregard of petitioners rights
     might be inferred—a state of mind which would sustain an award of punitive damages." *Id.* at 6,
25   citing *Taylor v. Superior Court*, 24 Cal.3d 890 (1979), and *G.D. Searle*, *supra*. The *Perkins* court
     also held a finding of retaliatory motive "would sustain a finding of malice." *Ibid.  James v.*
26   *Herbert*, 149 Cal.App.2d 741 (1957), similarly, conclusively held that allegations such as those
     pled by Plaintiff herein are sufficient to support a punitive damages claim.  The Court in *James*
27   said, "A general allegation that a defendant acted willfully and knowingly in defiance of
     plaintiff's repeated protests and that the defendant's conduct was oppressive and malicious and
28   for the purpose of damaging the plaintiff's lawful business has been held sufficient for the
     recovery of exemplary damages." *Id.* 750, citations omitted.

                                        - 25 -
_____