1  ERIC BORGERSON (CA State Bar No. 177943)
   LAW OFFICE OF ERIC BORGERSON
2  2625 School Street
   Oakland, CA 94602
3  Telephone:      (510) 866-3738
   Facsimile:      (510) 535-9898
4
   Attorney for Plaintiff
5  GENE FAURIE, JR.

6

7

8                    IN THE UNITED STATED DISTRICT COURT

9                  FOR THE NORTHERN DISTIRCT OF CALIFORNIA

10

11  GENE FAURIE, JR.,                          CASE NO.  CV 08-00060 TEH

12              Plaintiff,

13       vs.

14  The BERKELEY UNIFIED SCHOOL              **DECLARATION OF ERIC BORGERSON**
    DISTRICT; MICHELLE LAWRENCE,            **IN OPPOSITION TO**
15  individually and in her official capacity as   **DEFENDANTS' MOTION TO DISMISS**
    BUSD Superintendent; LISA UDELL,        **AND MOTION TO STRIKE**
16  individually and in her official capacity as
    BUSD Assistant Superintendent, Human     Date:  March 10, 2008
17  Resources; CRISTINA OBIETA,             Time:  10:00  a.m.
    individually and in her official capacity as   Courtroom: 12
18  BUSD Director, Classified Personnel;
    RICHARD DODSON, in his official          Judge: The Honorable Thelton E. Henderson
19  capacity as BUSD Director, Labor
    Relations; TINA BRIER, individually and
20  in her official capacity as BUSD Director,
    Classified Personnel,
21
                Defendants.
22

23

24       I, Eric Borgerson, declare the following based on personal knowledge, except where my

25  statements are specifically identified as based on information and belief:

26       1.  I am over the age of 18 years, am not a party to the above captioned case, and am the

27  attorney of record for the Plaintiff, Gene Faurie, Jr. ("Plaintiff" or "Mr. Faurie") in this matter.

28

2.  I respectfully submit this Declaration to authenticate and make available to the Court documents relevant to Plaintiff's Opposition to Defendants' Motion to Dismiss and Motion to Strike, including Orders of the Superior Court of the State of California, County of Alameda, and other papers which should have been attached to Defendants' Notice of Removal, and related documents.

3.  Defendants filed their Notice of Removal on January 4, 2008.  On January 5, 2008, I spoke with counsel for Defendants, Kellie Murphy, Esq., and advised her that 28 U.S.C. § 1446(a) required that she file with this Court all documents served on Defendants in the state court proceeding she had removed to this Court.  I told her that, since this was a procedural defect and not a jurisdictional defect, I believed it should be unnecessary to file a Motion to Remand, and she assured me she would cure the defect by promptly filing an amended Notice of Removal, to which she would attach all the documents served upon her clients in state court, along with the documents her clients had served on Plaintiff.

4.  On or about January 23, 2008, I again spoke by telephone with counsel for Defendant regarding her failure to file the documents served upon Defendants in the state court proceedings, including the Orders of the Superior Court on the Demurrers and Motions to Strike filed by Defendants.  Counsel for Defendants again assured me that she intended to file an amended Notice of Removal promptly, with the documents attached, obviating any need for proceedings before this Court to address the deficiency.  Based on that assurance, I allowed the deadline for filing a Motion to Remand to pass, preferring not to burden this Court with the procedural issue and believing it would be remedied through cooperation between counsel.

5.  To date, however, Defendants have not filed an amended Notice of Removal. Consequently, I respectfully submit this Declaration with the following documents that should have been attached to the Notice of Removal pursuant to 28 U.S.C. § 1446(a) and several related documents filed by Defendants in state court which are relevant to this proceeding because they show that Defendants are merely repeating verbatim in this forum arguments that were soundly addressed and rejected by the Superior Court.

6.  Plaintiff filed his initial Complaint for Damages on July 9, 2007, alleging causes of action for tortious wrongful discharge in violation of fundamental public policy, unlawful discrimination

- 2 -

1  based on sex in violation of the California Fair Employment and Housing Act, Government Code

2  §12940 et seq., breach of contract, breach of the implied covenant of good faith and fair dealing,

3  and intentional infliction of emotional distress.  A true and correct copy of that Complaint is

4  attached hereto as Exhibit A.

5      7.  On or about August 27, 2007, Defendants, and each of them, filed general Demurrers to

6  Plaintiff's Complaint and supporting memoranda of points and authorities.  A true and correct

7  copy of the Memorandum of Points and Authorities in support of the Demurrer filed on behalf of

8  Defendant Michele Lawrence ("Lawrence") is attached hereto as Exhibit B.  The arguments set

9  forth in Exhibit B are representative of the arguments set forth in the memoranda of points and

10  authorities submitted in support of the Demurrers filed on behalf of the other individual

11  Defendants to this case.

12      8.  A true and correct copy of the Memorandum of Points and Authorities in support of the

13  Demurrer filed on behalf of the Berkeley Unified School District ("BUSD") is attached hereto as

14  Exhibit C.

15      9.  On or about November 2, 2007, I filed on behalf of Plaintiff Oppositions to Defendants'

16  Demurrers.  A Memorandum of Points and Authorities In Opposition to the Demurrer of Michele

17  Lawrence is representative of the Memoranda filed in Opposition to the Demurrers filed by the

18  individual Defendants to this action.  A true and correct copy of the Memorandum in Opposition

19  to the Demurrer of Michele Lawrence is attached hereto as Exhibit D.

20      10. A true and correct copy of the Memorandum of Points and Authorities filed in Opposition

21  to the Demurrer of BUSD is attached hereto as Exhibit E.

22      11.  On or about November 8, 2007, Defendants, and each of them, filed reply memoranda in

23  support of their Demurrers.  A true and correct copy of the Reply Memorandum of Points and

24  Authorities filed in support of the Demurrer of Michele Lawrence is attached hereto as Exhibit F.

25  The arguments set forth in Exhibit F are representative of the arguments set forth in the reply

26  memoranda submitted on behalf of the other individual Defendants.

27      12. A true and correct copy of the Reply Memorandum of Points and Authorities, filed in

28  support of the Demurrer of BUSD, is attached hereto as Exhibit G.

1    13. On or about November 15, 2007, the Superior Court of California for the County of

2    Alameda, the Honorable Cecilia P. Castellanos presiding, issued a tentative ruling sustaining in

3    part and denying in part Defendants' Demurrers, granting BUSD's Motion to Strike without leave

4    to amend and granting the individual Defendants' Motions to Strike with leave to amend.

5    14. On or about November 15, 2007, Plaintiff contested the Superior Court's tentative ruling.

6    In support of his objection to the tentative ruling, Plaintiff submitted to the court via facsimile and

7    hard copy, and served on counsel for Defendants via facsimile, the judicial decision in *Scott v.*

8    *Solano County Health and Social Services Dept.*, 459 F.Supp.2d 959, 966-970 (E.D. Cal. 2006).

9    15. On November 16, 2007, oral argument was held before Judge Castellanos regarding

10   Plaintiff's objections to the tentative ruling.  The argument focused on Judge Castellanos'

11   acceptance of Defendants' argument that *Khajavi v. Feather River Anesthesia Med. Group* (2000)

12   84 Cal.App.4th 32 barred Plaintiff's claim against the individual Defendants for wrongful

13   discharge in violation of fundamental public policy because they were not his "employers."

14   Plaintiff argued that *Khajavi* was inapplicable because it did not involve a situation where, as

15   here, the Defendants were supervisors who possessed authority and control over the Plaintiff's

16   employment.  Plaintiff cited *Scott*, *supra*, which noted that *Khajavi* provided "no support" for the

17   very proposition adopted by the Superior Court in the instant case because, in *Khajavi*, the

18   "plaintiff was never employed by the defendant and had no employment relationship whatsoever

19   with defendant."  459 F.Supp.2d at 969.   The *Scott* court observed that "the [*Khajavi*] court never

20   addressed whether individual supervisors of an employer may be liable for wrongful discharge

21   claims.  Defendants fail to direct the court to any authority which supports its argument that a

22   wrongful discharge claim cannot be asserted against individual employees or supervisors."

23   (*Ibid.*)  Plaintiff also argued that precluding a tortious wrongful discharge action against public

24   employee supervisors immunized those most entrusted with enforcement of public policy from

25   liability for violation of it, which doubly flouts the reason for the existence of the tort cause of

26   action.

27   16. A true and correct copy of the Superior Court's Order regarding the Demurrer of

28   Defendant BUSD is attached hereto as Exhibit H.

- 4 -

1     17. A true and correct copy of the Superior Court's Order regarding the Demurrer of

2 Defendant Michele Lawrence is attached hereto as Exhibit I.

3     18. A true and correct copy of the Superior Court's Order regarding the Demurrer of

4 Defendant Lisa Udell is attached hereto as Exhibit J.

5     19. A true and correct copy of the Superior Court's Order regarding the Demurrer of

6 Defendant Cristina Obieta is attached hereto as Exhibit K.

7     20. A true and correct copy of the Superior Court's Order regarding the Demurrer of

8 Defendant Richard Dodson is attached hereto as Exhibit L.

9     21. A true and correct copy of the Superior Court's Order regarding the Demurrer of

10 Defendant Tina Brier is attached hereto as Exhibit M.

11     22. On or about August 27, 2007, Defendants, and each of them, also filed Motions to Strike

12 the prayers for punitive damages in Plaintiff's Complaint.

13     23. A true and correct copy of the Memorandum of Points and Authorities in Support of the

14 Motion to Strike filed by BUSD is attached hereto as Exhibit N.

15     24. A true and correct copy of the Memorandum of Points and Authorities in Support of the

16 Motion to Strike filed by Defendant Michele Lawrence is attached hereto as Exhibit O.  The

17 arguments set forth in Exhibit M are representative of those set forth in the memoranda of points

18 and authorities filed in support of the Motions to Strike filed by the other individual Defendants.

19     25.  On or about November 2, 2007, Plaintiff filed a Memorandum of Points and Authorities

20 in Opposition to Defendants' Motions to Strike.  A true and correct copy of Plaintiff's

21 Memorandum in Opposition is attached hereto as Exhibit P.

22     26. On or about November 8, 2007, Defendants filed a Reply Memorandum of Points and

23 Authorities in Support of their Motions to Strike.  A true and correct copy of Defendants' Reply

24 is attached hereto as Exhibit Q.

25     27. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

26 Defendant BUSD without leave to amend is attached hereto as Exhibit R.

27     28. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

28 Defendant Michele Lawrence *with leave to amend* is attached hereto as Exhibit S.

1    29. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

2    Defendant Lisa Udell *with leave to amend* is attached hereto as Exhibit T.

3    30. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

4    Defendant Cristina Obieta *with leave to amend* is attached hereto as Exhibit U.

5    31. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

6    Defendant Richard Dodson *with leave to amend* is attached hereto as Exhibit V.

7    32. A true and correct copy of the Superior Court's Order granting the Motion to Strike of

8    Defendant Tina Brier *with leave to amend* is attached hereto as Exhibit W.

9    I declare that the foregoing is true under penalty of perjury under the laws of the United

10   States. Executed at Oakland, California, on February 18, 2008.

11

12   Eric Borgerson

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
- 6 -

# Exhibit A

Endorsed
F I L E D

1  Eric Borgerson, SBN 177943
   Law Office Of Eric Borgerson
2  2625 School Street
   Oakland, CA 94602
3  Telephone: 510-866-3738
   Facsimile: 510-535-9448
4
   Attorney for Plaintiff Gene Faurie, Jr.
5

6          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                    FOR THE COUNTY OF ALAMEDA

8

9  GENE FAURIE, JR.,                          )  Case No.:  RG 07 3 3 4 5 9 0
                                              )
10          Plaintiff,                         )
                                              )
11          vs.                                )
                                              )
12  The BERKELEY UNIFIED SCHOOL                )  COMPLAINT FOR DAMAGES
    DISTRICT; MICHELLE LAWRENCE,               )
13  individually and in her official capacity as )  (Wrongful Discharge In Violation of
    BUSD Superintendent; LISA UDELL,           )  Fundamental Public Policy; Termination
14  individually and in her official capacity as )  Of Employment Without Just
    BUSD Assistant Superintendent, Human       )  Cause/Breach Of Contract; Breach Of the
15  Resources; CRISTINA OBIETA,                 )  Implied Covenant Of Good Faith and Fair
    individually and in her official capacity as )  Dealing; Discrimination On the Basis Of
16  BUSD Director, Classified Personnel;        )  Sex [Fair Employment and Housing Act,
    RICHARD DODSON, in his official            )  Government Code Section 12900 et seq.];
17  capacity as BUSD Director, Labor           )  Intentional Infliction of Emotional
    Relations; TINA BRIER, individually and    )  Distress)
18  in her official capacity as BUSD Director,   )
    Classified Personnel,                       )
19                                              )
                                              )
20          Defendants.                        )
                                              )
21                                              )
                                              )
22                                              )
                                              )
23                                              )
                                              )
24                                              )
                                              )
25  _____
    ///
26  ///
27  ///
28

           *Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 1

**INTRODUCTION**

1.      This is a Complaint by Gene Faurie, Jr., formerly employed by the Berkeley Unified School District ("BUSD") in the position of Administrative Coordinator – Confidential, against BUSD and several of its current and former managerial employees in their individual and official capacities.

2.      Mr. Faurie sets forth herein claims of tortious wrongful discharge in violation of fundamental public policy, termination without just cause/breach of contract, breach of the implied covenant of good faith and fair dealing, discrimination based on sex, and intentional infliction of emotional distress, arising from a continuing course of unlawful conduct creating intolerable working conditions that became so severe on and after July 11, 2006, that Mr. Faurie was unlawfully constructively discharged on July 17, 2006.

**PARTIES**

3.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 2, above.

4.      Plaintiff Gene Faurie Jr. ("Plaintiff" or "Mr. Faurie") is and at all material times was, a resident of Alameda County.  At all times mentioned in this Complaint until the date of his constructive discharge on July 17, 2007, Plaintiff was employed by the Berkeley Unified School District Human Resources Department in the position of Administrative Coordinator – Confidential.

5.       Defendant Berkeley Unified School District ("BUSD" or "District") is and was at all material times a public school district and a political subdivision of the State of California and County of Alameda, whose principal place of business is and was at all material times located in Alameda County.

6.      Defendant Michele Lawrence ("Lawrence") is and at all material times was a resident of Alameda County.  Lawrence is and at all material times was employed by BUSD in the position of Superintendent.  Lawrence is sued in her individual capacity and in her official capacity as BUSD Superintendent.

7.      Defendant Lisa Udell ("Udell") is and at all material times was a resident of Alameda County.  Udell is and at all material times was employed by BUSD in its Human Resources Department in the position of Assistant Superintendent, Human Resources.  Udell is sued in her individual capacity and in her official capacity as BUSD Assistant Superintendent, Human Resources.

8.      Defendant Cristina Obieta ("Obieta") is and at all material times was a resident of Alameda County.  Obieta was at all material times employed by BUSD in its Human Resources Department in the position of Director, Classified Personnel.  Obieta is sued in her individual capacity and in her official capacity as Director, Classified Personnel.

9.      Defendant Richard Dodson ("Dodson") is and at all material times was a resident of Alameda County.  Dodson is and at all material times was employed by BUSD in its Human Resources Department in the position of Director, Labor Relations.  Dodson is sued in his individual capacity and in his official capacity as Director, Labor Relations.

10.     Defendant Tina Brier ("Brier") is and at all material times was a resident of Contra Costa County.  Brier at all material times was employed by BUSD in the position of Director, Classified Personnel.  Brier is sued in her individual capacity and in her official capacity as BUSD Director, Classified Personnel.

11.     Unless otherwise alleged in this complaint, Plaintiff is informed and believes and based thereon alleges that at all times mentioned in this Complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint, were acting with in the course and scope of that agency and employment.

## JURISDICTION

12.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 11, above.

13.     At all material times BUSD regularly employed five or more persons, bringing Defendant BUSD within the provisions of Government Code §§12900 et seq. prohibiting employers or their agents from discriminating on the basis of, *inter alia*, sex.

1   14.     This Court has jurisdiction over the subject matter of this dispute pursuant to

2   Government Code §§ 12900 et seq. as this is a claim of employment discrimination

3   against a public employer that regularly employs 5 or more persons and whose principal

4   place of business is located in the County of Alameda, State of California.

5                                              **FACTS**

6   **Overview**

7   15.     Plaintiff incorporates herein by reference as though fully set forth at length the

8   allegations of paragraphs 1 through and including 14, above.

9   16.     Mr. Faurie was subjected to a continuing course of unlawful conduct during his

10  tenure at BUSD which reached intolerable proportions on July 11, 2006.  At a Human

11  Resources staff meeting on July 11, 2006, over Mr. Faurie's objections, Udell orally

12  confirmed that she knowingly was ordering Mr. Faurie to engage in unlawful and

13  unethical acts in his capacity as Administrative Coordinator – Confidential, which she

14  explicitly confirmed to constitute implementation of BUSD policy approved by

15  Superintendent Lawrence.  When Mr. Faurie questioned the advisability and legality of

16  the ordered course of action (discussed in detail below), he was subjected to a hostile and

17  offensive environment by Udell, causing him to become ill, thereby forcing him to leave

18  the meeting due to emotional and physical injuries. This treatment by Udell also was part

19  of a pattern and practice of discrimination against male employees based on sex, which

20  was continuing in nature, occurring through July 17, 2006, as detailed below.

21  17.     The incident on July 11, 2006, was the culminating event in a continuing course

22  of such unlawful treatment of Mr. Faurie, stretching back in time to the beginning of his

23  employment with BUSD in or about October 2002.  Throughout the course of Mr.

24  Faurie's employment, he was regularly and repeatedly ordered by Lawrence, Brier, and,

25  upon their appointment, Dodson, Udell, and Obieta to engage in unlawful acts and was

26  subjected to a hostile environment when he questioned, objected to, or refused to

27  implement, such unlawful directives.

28

18.     BUSD administration also engaged in a pattern and practice of discrimination within the Human Resources Department on the basis of sex by applying different standards to women than to men with regard to working out of classification, granting of differential pay, responses to filing of workers' compensation claims, granting of requests for vacation leave, and quantity of work assigned.  This pattern and practice of discrimination occurred on a continuing basis through July 17, 2006.   Mr. Faurie also was subjected to a hostile working environment because of his sex, on a continuing basis through July 17, 2006.

19.     In addition to his claims of discrimination based on sex, Mr. Faurie also was regularly required to work out of his job classification by performing the duties of the Director of Classified Personnel without appropriate differential pay.  Multiple requests by Mr. Faurie to reclassify his position appropriately to realistically encompass the duties he was required to perform were summarily and unjustifiably denied.

20.     Further, Mr. Faurie was subjected to a hostile and offensive work environment in retaliation for exercising his lawful right to file a claim for workers' compensation due to physical injuries that were proximately caused by the performance of his duties as an employee of BUSD.

21.     Mr. Faurie was informed on at least one occasion by California Department of Justice personnel that an employee hired by Lawrence should not be working for the District due to her criminal record of a prohibited offense.  When Mr. Faurie drew this information to the attention of Brier, he was informed that the Superintendent was aware of the situation and that he was ordered to "drop the subject."  Upon raising the subject again, Mr. Faurie was again ordered to be silent and was subjected to a hostile environment in retaliation for his discussion of the unlawful actions of the Superintendent.  Such retaliation was routine in the H.R. Department and was the reaction of administrative personnel throughout Mr. Faurie's tenure when he identified unlawful BUSD policies, practices, and actions.

22.     Mr. Faurie submitted complaints to the California Department of Justice, the Alameda County Superintendent of Schools, and the California Public Employee Retirement System regarding unlawful policies and practices ordered and implemented by BUSD administrative staff over his objections.

23.     Mr. Faurie was subjected to unreasonable retaliatory offensive and hostile conduct in reaction to the above-summarized and other attempts to identify and resist unlawful directives, as detailed below.

24.     A reasonable person in Mr. Faurie's position would have believed he had no choice but to resign his position with BUSD due to the hostile environment and discriminatory conduct to which he was subjected.  Consequently, his resignation of employment on July 16, 2006, constitutes a constructive discharge of employment.  This fact has been confirmed by an agent of the Employment Development Department who approved his claim for unemployment insurance, and has been affirmed on appeal due to the District's failure to controvert it before an EDD administrative law judge.

25.     As a result of his unlawful constructive discharge and the continuing course of unlawful conduct which culminated in it, Mr. Faurie suffered and continues to suffer physical injuries and severe emotional distress, loss of wages, benefits, retirement contributions, proper professional classification, expenses incurred in securing new employment, and reputation, and suffered interruption of his professional and economic advancement.

**Chronology of Events**

26.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 25, above.

27.     At all material times until the date of his constructive discharge on July 16, 2006, Mr. Faurie was employed by BUSD in the position of Administrative Coordinator – Confidential. He reported directly to Brier from his date of hire until Brier's resignation in or about May 2006.  It was unclear from the date of Brier's resignation to whom Mr. Faurie was to report, other than to the Superintendent.

1    28.      Throughout Mr. Faurie's employment with BUSD, Brier frequently was absent

2  from the H.R. Department offices, during which absences Mr. Faurie was required to

3  perform the duties of her position.  Brier also took vacation leave from her position as

4  Director, Classified Personnel for approximately three business weeks per year while

5  supervising Mr. Faurie.  During those periods of leave, Mr. Faurie was directed to

6  perform the duties of Brier's position and did perform those duties.  It is standard

7  procedure throughout the District to officially appoint another employee to assume

8  responsibility for the duties of an absent manager, but Mr. Faurie was required to perform

9  those duties without official appointment and without appropriate differential

10  compensation.

11  29.      After Mr. Faurie performed the duties of Director of Classified Personnel during

12  the first of Brier's extended vacation leaves and multiple instances of performing her

13  professional responsibilities during her frequent and periodic short-term leaves from the

14  office, Mr. Faurie began requesting differential pay for his performance of Brier's duties.

15  Payment of such differential compensation is mandated by BUSD merit system rules.  On

16  each occasion, Brier refused to grant appropriate differential compensation.  At the end of

17  her second extended vacation leave during the Summer of 2005, Mr. Faurie submitted to

18  Brier a timesheet recording his performance of her duties and requesting differential pay

19  for the documented coverage he provided.  Brier again refused to grant Mr. Faurie

20  appropriate differential pay.

21  30.      Mr. Faurie regularly covered Brier's duties in the H.R. Department to an extent

22  well above his professional classification during Brier's absence from the H.R. offices

23  every week of Faurie's employment.   The demand that Mr. Faurie perform the duties of

24  the position occupied by Brier became even more burdensome upon her resignation,

25  because no one was appointed to replace her and Mr. Faurie was expected to fill in the

26  gap until a successor was hired.

27  31.      Lawrence hired a part-time, temporary consultant to help keep the H.R.

28  Department running when Brier resigned.  However, that individual was untrained, was

1    present at most three days per week, and relied on and consulted with Mr. Faurie to learn

2    the Department's procedures and daily administrative needs, thereby leaving Mr. Faurie

3    in the *de facto* position of decision making, information dissemination, and H.R.

4    Department management after Brier's resignation.

5    32.    Although Brier refused during her tenure to grant Mr. Faurie appropriate

6    differential pay for his performance of her professional duties, when Mr. Faurie was

7    absent due to workers compensation leave, another (female) employee was granted

8    differential pay to perform his responsibilities.  Notwithstanding that payment of

9    differential compensation, the individual so compensated was not properly relieved of her

10    ordinary duties and, consequently, did not perform the preponderance of work properly

11    within Mr. Faurie's job duties, leaving tasks unfinished for him to bring current upon his

12    return.  Mr. Faurie does not dispute the propriety of granting differential pay to an

13    individual called upon to cover his duties in his absence, but contends that the refusal to

14    compensate him for performing the duties of the Director of Classified Personnel was

15    unjustified and violated merit system rules and practices.  Moreover, whether or not Brier

16    was present and regardless of whether he performed all of her duties in her absence or

17    presence, he was required throughout his tenure to perform duties well above his

18    professional classification without appropriate differential compensation.

19    33.    In or about May 2006, Mr. Faurie complained to Dodson about being forced to

20    work above his professional classification without appropriate differential compensation.

21    Dodson stated to Mr. Faurie, "you should do any job asked of you because you are smart

22    regardless of whether or not it is in your job classification."

23    34.    The requirement that Mr. Faurie perform duties above his professional

24    classification without appropriate differential pay persisted throughout his entire tenure

25    with BUSD, through the date he was forced to leave his employment due to the

26    unreasonable level of hostility and unlawful treatment he received.

27    35.    In addition to violating Mr. Faurie's rights under Merit System rules, the refusal

28    to grant him differential pay for work performed was part of a pattern or practice of

discrimination based on sex in the BUSD H.R. Department.  During all times material to Mr. Faurie's claim, women were treated differently and more favorably to similarly situated men with regard to assignment of work, payment of differential compensation, granting of vacation leave, and subjection to a hostile work environment in retaliation for requesting that their rights be honored or that legal duties applicable to BUSD be fulfilled.

36.      During Mr. Faurie's tenure, four men (including Mr. Faurie) resigned their employment without notice (in one case with a single day of notice) due to intolerable and unlawful working conditions in the BUSD H.R. Department.  Mr. Faurie is informed and believes and based thereon alleges that Jason Hunter resigned his position as Supervisor, Risk Management, Workers' Compensation and Benefits on or about September 9, 2005, because he was regularly required to perform duties out of his professional classification without appropriate differential pay and was subjected to an excessive workload while similarly situated female employees were spared such treatment.  Mr. Hunter informed Mr. Faurie that, when Mr. Hunter resigned, Lawrence threatened to contact his new employer and inform it that he was "unprofessional", despite the fact that Mr. Hunter had received positive performance evaluations.

37.      Mr. Faurie is informed and believes and based thereon alleges that Robert Valentine resigned from his position of Senior Personnel Assistant on December 9, 2005, without any notice because he was denied overtime, differential pay, and vacation and was unfairly and disproportionately disciplined on an ongoing basis while similarly situated female employees were not subjected to such denials and discipline. Specifically, with regards to the CBEDS report, Mr. Valentine presented documentation in support of his request for differential pay, but was denied it every year. Mr. Faurie is further informed and believes and based thereon alleges that two individuals were utilized to perform Mr. Valentine's job duties, both of whom were at a higher classification, one of whom was in a certificated position (which is in violation of applicable of collectively bargained terms), and one of which was paid at a rate more than double Mr. Valentine's

1  pay.  Neither individual was an expert, and in fact were completely uninformed regarding

2  the relevant procedures and requirements.

3  38.    Mr. Hunter and Mr. Valentine, along with Mr. Faurie, were made physically ill

4  due to a retaliatory hostile work environment to which they were subjected because of

5  their persistence in securing equal treatment as men and because of their requests for

6  appropriate differential pay for work they were directed to perform out of professional

7  classification.

8  39.    Provisional employee Gene Boucher was subjected to such a hostile work

9  environment based on his sex that he resigned from the District without notice on August

10  7, 2006. Mr. Faurie is informed and believes and based thereon alleges that this hostile

11  environment consisted of unduly rude and offensive hostile behavior by Udell against

12  Boucher due to his sex, as only males and no females were subjected to such treatment by

13  Udell.

14  40.    All four males hired during Mr. Faurie's nearly four years of employment with

15  the District within the Human Resources Department left without notice; no female

16  employee submitted such abrupt resignations due to hostile and unlawful working

17  conditions.

18  41.    In or about May 2004, Mr. Faurie orally complained to Brier about a pattern of

19  the Superintendent hiring employees without statutorily required fingerprint clearances

20  and with criminal records of prohibited offenses. His concern stemmed from his

21  knowledge regarding the improper hiring of two individuals and was voiced upon the

22  improper hiring of the second of those individuals.  Jane Doe 1[1] was hired without DOJ

23  clearance and was later terminated upon the District's receipt of notification of a

24  prohibited offense. Jane Doe 2 was similarly hired in or about May 2004 without DOJ

25  clearance.  When asked to obtain fingerprint clearance, Jane Doe 2 temporarily resigned

26

27  _____

[1] The individuals who were improperly hired are identified herein as "Jane Doe" or "John

28  Doe" to preserve their privacy until such time as disclosure of their identities becomes
   necessary to resolve disputed factual issues.

her position.  During a subsequent discussion with Brier, Jane Doe 2 orally represented that she had only been convicted of minor offenses that did not preclude her employment. Based upon that uncorroborated representation, Brier reappointed Doe 2 to her position upon the understanding the results of her DOJ report must coincide with her statement or that she would be immediately terminated.  The subsequent report was received by the District approximately one year later, chronicling an extensive criminal history replete with prohibited offenses that precluded her employment by the District. Yet, Jane Doe 2 remained and, on information and belief, remains employed by BUSD.

42.     In or about May 2004, Mr. Faurie complained about the impermissible appointment of Jane Doe 2 to Brier, noting that Doe 2 had lied on her job application, orally lied about her criminal history in order to obtain reappointment, and that she had a criminal record of offenses that precluded her lawful employment by BUSD.  Brier told Mr. Faurie that she had notified Lawrence regarding the legal issues related to Jane Doe 2's appointment and told Mr. Faurie that there was nothing Brier could do and that the matter was in the Superintendent's hands.  Subsequent to these events, the Superintendent hired John Doe 1 on September 12, 2005, who also started work without fingerprint or tuberculosis clearance, contrary to law.  Clearance was later received, but the hiring of employees without such clearance was repeated with John Doe 1's employment.  Brier directed Mr. Faurie to ignore the situation.

43.     During the period between May 2004 and October 2005 (when Mr. Faurie went on Workers Compensation leave), and during the period between February 2006 (when he returned from Workers Compensation leave) and May 2006, Mr. Faurie also orally complained to Brier regarding a repeated and ongoing practice by BUSD administrative staff, including Brier, of failing to preserve the privacy of employee personnel files. Confidential file contents were routinely left on copy machines and facsimile machines where they were subject to perusal by unauthorized individuals.  Mr. Faurie also expressed concerns regarding the H.R. Department's failure to notify the Department of Justice upon the termination of employment of various individuals, which failure resulted

1    in the District continuing to receive subsequent arrest reports to which it was not legally

2    authorized access.  Brier dismissed Mr. Faurie's concerns as trivial and undeserving of

3    administrative response or elimination.  Brier also subjected Mr. Faurie to hostility

4    because of his continued efforts to draw her attention to unlawful practices in the

5    Department under her direction.

6    44.      In early July 2006, a BUSD administrator, who Mr. Faurie reasonable believed to

7    be under investigation for illegal and immoral practices, requested to review an employee

8    file.  Mr. Faurie referred the individual to Dodson who, Mr. Faurie was instructed at an

9    H.R. staff meeting, was authorized to accompany employees during such requests.

10   Dodson was visibly irritated by the referral of the employee to him, and he rolled his eyes

11   and looked away from Mr. Faurie as he accompanied the individual to the file room.

12   Dodson then left the individual alone with the confidential files for several minutes, in

13   direct violation of law.  Attempts by Mr. Faurie to address this problem with Dodson

14   were met with hostility and condescension, and Mr. Faurie was treated as though his

15   comments on the subject were detrimental to his employment status.

16   45.      On July 11, 2006, Mr. Faurie referred another personnel file review request by a

17   different individual to Dodson.  Shortly thereafter, Obieta appeared in Mr. Faurie's office

18   with the requested personnel file.  She had been in her position for two days and not

19   spoken to Mr. Faurie despite the fact that she was his newly appointed supervisor.  Obieta

20   confronted Mr. Faurie and informed him that he must accompany the employee during

21   review of the file, although the H.R. staff had been informed that only H.R. management

22   were allowed to do so.  When Mr. Faurie attempted to inform Obieta of this policy and

23   the statutory privacy-based reasons for it, Obieta's tone was hostile and unprofessional

24   towards Mr. Faurie immediately prior to the H.R. Staff meeting on July 11, 2006 that

25   resulted in his constructive discharge.\

26   46.      During the period between May 2004 and July 2006, Mr. Faurie also voiced to

27   administrative personnel, including Brier and Dodson a concern regarding failure by the

28   District to obtain "livescan" digital fingerprint records of current employees as required

1    by law.  He was informed that the cost of securing those records was too great and that he

2    was to ignore the situation.

3    47.     Beginning in June 2004, after multiple attempts to address these unlawful

4    practices in the H.R. Department were met with hostility and lack of receptiveness or

5    response, Mr. Faurie submitted telephonic complaints to the State of California

6    Department of Justice regarding employees being hired without fingerprint clearance,

7    employees being hired despite having a criminal record of statutorily prohibited offenses,

8    employees being retained without livescan digital fingerprint records, and of failure by

9    BUSD H.R. officials to submit "no longer interested" forms to the Department of Justice

10   upon termination of individuals' employment (which is statutorily required in order to

11   prevent invasion of those employees' privacy).  Mr. Faurie also regularly inquired

12   regarding the status of the criminal background records of Doe 2 throughout this period.

13   48.     In or about May 2005, a DOJ representative informed Mr. Faurie that Jane Doe 2

14   should not be working for the District due to her record of prohibited criminal offenses.

15   Mr. Faurie was referred by the DOJ official to the Alameda County Office of Education.

16   Mr. Faurie informed Brier; Brier told Mr. Faurie that Lawrence knew of the situation and

17   that Mr. Faurie was directed to "drop the issue."  Mr. Faurie again raised the issue with

18   Brier and again was told to "drop the issue."  During the period between May 2005 and

19   July 2006, all attempts to address this issue and the larger unlawful BUSD practice it

20   represented were rebuffed with hostility and intractable refusal to respond or take action.

21   This precipitated an increasingly hostile response from Brier which Mr. Faurie is

22   informed and believes and based thereon alleges was based on directives from Lawrence

23   to ignore the legal violations, which directives continued to be implemented by the other

24   individual defendants.

25   49.     During the period from May 2004 to July 2006, Mr. Faurie regularly drew to the

26   attention of Brier and Dodson the fact that BUSD routinely failed to follow proper

27   procedures for newly appointed employees for enrollment in the California Public

28   Employee Retirement System (hereinafter "CalPERS").  Mr. Faurie's concerns, as with

all of his efforts to assist the District in complying with its legal responsibilities and avoiding liability for legal violations, were rebuffed and met with hostility from administrative staff to whom he reported.  In addition, Brier unlawfully distributed confidential CalPERS passwords to unauthorized individuals to avoid the inconvenience of obtaining proper authorization for individuals to whom she wished to delegate information-retrieval duties.  Mr. Faurie reported this legal violation to CalPERS on or about November 2005, which resulted in the suspension of the passwords until proper authorization was obtained by CalPERS.  Brier knew of this report because she was required to obtain a valid password for the individuals to whom she had unlawfully given confidential passwords.

50.     In addition to the foregoing, in or about January 2005, Mr. Faurie notified Brier that he was suffering from a repetitive stress injury to his right hand and arm due to a work-related repetitive stress injury.   Mr. Faurie continued with his assigned duties until he was prevented from performing them due to extreme pain he suffered as a result of his injury.  He subsequently filed a workers' compensation claim in July 2005 in order to seek appropriate medical treatment.  Upon learning of Mr. Faurie's workers compensation claim, Brier immediately became hostile, yelled at Mr. Faurie "if this is what you want to do…fine!" and threw the signed claim form at him.  She then loudly ordered him to stop typing and quickly left his office.

51.     Despite orders from the District-appointed physician that Mr. Faurie take ten-minute breaks per hour, Brier repeatedly ignored this directive and issued work for Mr. Faurie to perform, and routinely interrupted his breaks in order to address work issues, which generally involved use of Mr. Faurie's hand, in direct violation of his doctor's orders.  Due to the lack of rest required for improvement of his condition, the doctor increased Mr. Faurie's rest period to twenty minutes per hour, which Brier also ignored as she continued to interrupt his rest periods.  Brier informed Mr. Faurie that his doctor was "crazy" and "didn't know what he was doing."  She also claimed that the directed rest period only inferred that Mr. Faurie should not type, and that his doctor was "crazy"

1    and "incompetent."  Mr. Faurie confirmed with his doctor that he was directed not to

2    perform any work of any type during his rest period, and the doctor was infuriated by

3    Brier's lack of cooperation needed in order for Mr. Faurie to recover in a timely manner.

4    Mr. Faurie attempted to lock his office door to prevent interruptions of his breaks by

5    Brier, but Brier became enraged and informed Mr. Faurie that he "must be available at all

6    times" regardless of the doctor's direction.  In or about October 2005, the worker's

7    compensation physician placed Mr. Faurie on medical leave to stop Brier's refusal to

8    accommodate his medical limitations.

9    52.    Upon his return from leave, Mr. Faurie requested to Inez Reed, Supervisor of

10    Workers' Compensation, that his new work location be evaluated to prevent a

11    reoccurrence of his injury, but his requests were ignored.  Brier was aware of his requests

12    yet refused to take action to ensure that the evaluation was performed.

13    53.    At the time of Mr. Faurie's departure from BUSD, all female employees within

14    the H.R. Department had filed workers' compensation claims for varying reasons; none

15    were treated with hostility for doing so in the manner in which Brier behaved with Mr.

16    Faurie.

17    54.    On three separate occasions in July 2006, immediately prior to Mr. Faurie's

18    constructive discharge, Mr. Faurie had asserted both orally and in writing the need for

19    extension of a deadline and/or a request for overtime compensation to adequately execute

20    duties for processing classified employee step increases, but he was unjustifiably denied

21    and/or ignored on all three occasions.  However, Udell granted Paula Phillips, a female

22    employee within the H.R. Department, extension of the deadline and authorized overtime

23    to perform step increase determinations.  Claimant does not dispute that extension given

24    to Ms. Phillips by Udell was proper and necessary, but contends that the denial of his

25    request was retaliatory and discriminatory, creating a hostile and unlawful work

26    environment, and preventing him from being able to perform his contractual duties and

27    enjoy the benefits of his contractual relationship with BUSD.

28

55.    In February 2006, Mr. Faurie was threatened by Brier with disciplinary action if he did not comply with a "stacked" discipline process. The process for following disciplinary procedures is clearly outlined in collective bargaining agreements as well as in the merit system rules. Brier routinely ignored these rules through creation of a predetermined outcome for disciplined employees. Brier regularly handled multiple levels of the disciplinary process on behalf of other individuals who were assigned to address employee discipline matters, thereby violating disciplined employees' rights to procedural due process and compliance with established District policies. The process lacked the neutrality required of Brier's position as both Director, Classified Personnel and liaison to the Merit Commission, and garnered repeated complaints by employees' union representatives.

56.    At least two attorneys employed by or affiliated with the law firm that represented the District in disciplinary matters were directly involved in disregarding procedural due process constraints on the disciplinary process. Mr. Faurie heard one attorney state to Brier and Payroll Supervisor Lori Lewis that, despite a particular employee's progress, they were "going to get her anyway." Discipline procedures against the employee continued because, as the attorney stated, she "did not care" about improvements in work performance made by the employee. A second attorney, was hired from the same firm by Lawrence as an interim Assistant Superintendent of Human Resources/Consultant, yet the position is required to be neutral in nature due to Constitutional procedural constraints on disciplinary and merit system matters. Mr. Faurie objected to these violations of employees due process rights, but was rebuffed by Brier, who informed him that if he did not participate in implementation of the disciplinary process he would be considered insubordinate.

57.    Mr. Faurie was ranked in the highest category of each of his performance evaluations. His evaluations by Brier stated that she was comfortable leaving the office knowing that Mr. Faurie was available to handle issues in her absence. They also demonstrated that he worked above his assigned classification. Mr. Faurie is informed

1    and believes and based thereon alleges that a classification study performed by Reward

2    Strategy Group during and after Mr. Faurie's employment with BUSD confirmed that

3    Mr. Faurie was working at a higher level on a regular basis and concluded that his

4    position should be reclassified as an Analyst.

5    58.     On or about July 5, 2006, Udell was hired by BUSD.  Udell possessed apparent

6    supervisory authority over employees in the BUSD Human Resources Department,

7    pending appointment of a replacement for Brier.  However, as with the consultant hired

8    on a temporary basis upon Brier's resignation, Udell was untrained and relied on Mr.

9    Faurie to advise her and perform duties of her position while she learned it.  He did not

10   receive appropriate differential pay for working out of his classification during this

11   period.  On or about July10, 2006, Obieta was hired into the position of Director,

12   Classified Personnel.  Similarly, Obieta lacked appropriate training and experience.

13   59.     Udell called a meeting of the BUSD H.R. Department staff on July 11, 2006.  At

14   that meeting, Udell directed BUSD staff, including Mr. Faurie, to ignore legal violations

15   by the District in regards to adherence to the No Child Left Behind Act testing

16   requirements, as well as forced early retirement of several employees based on improper

17   District actions.  Mr. Faurie stated to Udell that the course of conduct she was ordering

18   was contrary to law.  She reacted to Mr. Faurie's questioning of her directive with open

19   hostility and told him that she "knows we are breaking the law" but that her directive was

20   consistent with BUSD policy as communicated and authorized by Superintendent

21   Lawrence.  When Mr. Faurie persisted in voicing his understanding that the directed

22   course of conduct was unlawful and that it would put the District and potentially its

23   individual employees in legal jeopardy, he was accused, rudely and openly in front of his

24   co-workers, of having an "attitude problem" and was admonished to drop the subject.

25   This incident demonstrated in unavoidable terms that Lawrence had ignored all

26   complaints regarding unlawful directives by BUSD administrative staff, unlawful

27   treatment of employees, as well as legally perilous and intractable administrative

28   incompetence at the Director level.

60.    Mr. Faurie, having diligently endeavored for years to patiently request that some modicum of integrity and law-abiding behavior be instilled into the policies and practices of the BUSD administration, and having persistently attempted to secure equal treatment as a male, was subjected to a threshold of intolerability that no reasonable person would be able to endure without injury.  He was rendered physically ill and extremely emotionally distressed by Udell's offensive and hostile rebuke to his final attempt to raise the issue of BUSD's unlawful policies and practices.  Consequently, he left the meeting due to emotional and physical injury.  Mr. Faurie left a voice mail message later that same day for Obieta, his direct supervisor, informing her that he was ill and would be out on sick leave for the remainder of the week and that he would notify her on Monday, July 17, 2006, whether he intended to tender his resignation.

61.    Later the same day, Obieta left a voice mail message on Mr. Faurie's home telephone answering machine in which she (1) demanded that Mr. Faurie provide a doctor's note by June 12, 2006, for his absence due to illness; (2) said "You've also told a number of people that you are resigning, um, so, you can also go ahead and bring in your letter of resignation tomorrow"; and (3) told him he could call her if he had any questions but that she could not remember her  phone number.

62.    Through his attorney, Mr. Faurie sent a letter to Obieta on July 12, 2006 via facsimile and certified U.S. mail, informing her that, given that Mr. Faurie had no history of abusing his sick leave and in light of District policies and practices, she had no lawful basis to demand that he produce a doctor's note on July 12, 2006.  The letter also noted that Mr. Faurie's illness, both physical and emotional, had been caused by ongoing managerial inadequacies in her department and a hostile work environment to which he was subjected because of drawing attention to illegal courses of action directed by BUSD H.R. administrative personnel.  The letter also set forth Mr. Faurie's claims that there was a pattern and practice of discrimination in the department on the basis of sex, that employees are required to work out of job classification without appropriate differential compensation, and that Mr. Faurie had lodged several complaints with CalPERS, the

1    Alameda County Superintendent of Schools, and the State Department of Justice

2    regarding legal violations in the BUSD H.R. Department.   The letter further set forth that

3    Mr. Faurie had not resigned his employment, and that any attempt to terminate his

4    employment would constitute tortious wrongful discharge in violation of fundamental

5    public policy, termination without just cause, a whistleblower violation, and

6    discrimination based on sex.  Obieta was admonished not to contact Mr. Faurie directly

7    and to preserve all documents and electronic records regarding him.

8    63.    Lawrence responded to Mr. Faurie's counsel's letter via telephone call on July 13,

9    2006.  During that conversation, Lawrence inaccurately stated that Mr. Faurie had six

10   days of sick leave accrued (he actually had 18, which Lawrence later acknowledged),

11   granted Mr. Faurie's request for sick leave, refused to acknowledge that Mr. Faurie had

12   been subjected to a hostile environment in retaliation for identifying illegal directives

13   from his superiors or had been subjected to disparate treatment based on his sex, and

14   informed Mr. Faurie's counsel that Mr. Faurie had "burned his bridges" with BUSD

15   administrative staff.  That conversation was memorialized in a letter from Mr. Faurie's

16   counsel to Lawrence dated July 14, 2006.

17   64.    Mr. Faurie's attorney sent another letter to Lawrence via facsimile and U.S. Mail

18   on July 17, 2006.  The letter further memorialized the telephonic conversation with Ms.

19   Lawrence of July 13, 2006, and observed that Lawrence's representations regarding her

20   understanding of the issues presented, the attitude of the BUSD H.R. administrative staff

21   regarding Mr. Faurie, and her statement that he had "burned his bridges" when in fact he

22   had been forced to leave due to illness caused by an unlawful hostile work environment,

23   indicated the toxic work environment could not be considered reasonably likely to

24   improve. Consequently, via his attorney, Mr. Faurie conveyed his intent to resign his

25   position under duress.

26   65.    Lawrence sent two letters to Mr. Faurie's counsel on July 17, 2006, one

27   erroneously dated July 14, 2006, and one correctly dated July 17, 2006.  With those

28   letters, Lawrence requested that Mr. Faurie tender his resignation using an approved

1    BUSD form and that he provide written authorization for his attorney to speak on his

2    behalf.

3    66.    Mr. Faurie's attorney replied with a letter dated July 19, 2006, confirming Mr.

4    Faurie's resignation and addressing other matters raised by Lawrence.  Attached to that

5    letter was a signed BUSD resignation form, completed and signed by Mr. Faurie, in

6    which he struck out standard form language indicating that his resignation was voluntary,

7    and on which he stated that he had been constructively discharged due to a hostile and

8    illegal working environment.  Also attached to that letter was a signed authorization for

9    Mr. Faurie's attorney to represent him with the District.

10    67.    In order to mitigate his damages, on or about July 20, 2006, Mr. Faurie submitted

11    to the Employment Development Department (hereinafter "EDD") an application for

12    unemployment insurance, asserting as the basis for his claim that he was constructively

13    discharged due to an unlawful hostile work environment to which he had been subjected

14    in retaliation for having identified, resisted, or refused to implement unlawful directives

15    by BUSD administrative staff.  An EDD investigator investigated Mr. Faurie's

16    application, heard the position of BUSD staff, and determined that Mr. Faurie was

17    entitled to unemployment insurance compensation because he had been constructively

18    discharged through a hostile work environment in retaliation for resisting and reporting

19    unlawful directives by his supervisors.

20    68.    BUSD did not file a timely appeal of the EDD determination.  On or about August

21    14, 2006, BUSD, through its representative, Talx UCeXpress, submitted to the

22    Unemployment Insurance Appeals Board (hereinafter "UIAB") an untimely appeal of the

23    EDD determination with a frivolous motion to excuse its late filing.  Mr. Faurie and his

24    counsel appeared at the scheduled UIAB hearing, but BUSD did not appear before the

25    administrative law judge to prosecute its appeal.  Consequently, the appeal was denied

26    and BUSD did not seek relief from its default or reopening of the appeal to challenge the

27    determination in Mr. Faurie's favor.  Through its frivolous and unprosecuted appeal,

28    BUSD attempted to thwart Mr. Faurie's efforts to mitigate his damages, and wasted his

1    time and resources expended in preparing and appearing for an appeal the District

2    apparently decided to abandon.

3    69.      Also in order to mitigate his damages, Mr. Faurie engaged in an intensive and

4    persistent job search throughout the greater San Francisco Bay Area from July 17, 2006,

5    through December 2006, when he was offered and accepted a new position.  However,

6    the position to which he was hired is lower in rank than the professional classification for

7    which he is qualified, as evidenced by his placement on the eligibility list for a higher

8    classification equivalent to a Senior Personnel Analyst.  He accepted this lower position

9    to mitigate damages and bring in desperately needed income.  But, his unlawful

10   constructive discharge from BUSD employment continues to result in diminished

11   compensation and delayed professional advancement.

12   70.      Mr. Faurie immediately consulted with a psychiatrist upon his unlawful

13   constructive discharge and has remained under the care of that psychiatrist continually to

14   the present.  He has been treated for severe anxiety, panic attacks, and emotional distress

15   resulting from the unlawful treatment he received from BUSD administrative staff.

16   71.      Plaintiff at all times duly performed all the conditions of the employment

17   agreement until Defendants prevented him from doing so.  At all times relevant to this

18   Complaint, Plaintiff was ready, willing, and able to perform his job until he was

19   constructively discharged by Defendants.

20   **B. Satisfaction of Tort Claims Act Claim Presentation Requirement**

21   72.      Plaintiff incorporates herein by reference as though fully set forth at length the

22   allegations of paragraphs 1 through and including 71, above.

23   73.      On January 10, 2007, Mr. Faurie, by and through his counsel, filed with the duly

24   designated agent and the President of the governing Board of BUSD a detailed Notice of

25   Tort Claims, pursuant to Government Code § 900 et seq., with a 21 – page attachment, in

26   which he set forth in detail the foregoing factual allegations and the claims for relief

27   alleged herein, and in which he requested to be made whole for the losses he suffered as

28   detailed herein.

74.     Plaintiff is informed and believes and based thereon alleges that, on or about February 21, 2007, the BUSD governing Board met in closed session to discuss Mr. Faurie's Tort Claims, consulted with the Board's counsel, and on that date either took no action on his claims or rejected his claims, but in any case took action adverse to his claims in their entirety.

75.     Plaintiff is informed and believes and based thereon alleges that on or between February 21, 2007 and February 23, 2007, the BUSD Board, apparently acting pursuant to advice of counsel, promulgated false and misleading meeting minutes which falsely represent that, on February 7, 2007, the Board had rejected portions of Mr. Faurie's claim that accrued after July 10, 2006.

76.     Repeated attempts by Plaintiff's counsel to obtain a clarification from counsel for the BUSD Board regarding what action the Board took on Mr. Faurie's claims and when such action was taken were rejected by counsel for the BUSD Board, who confined her answers to referring to the fraudulent meeting minutes, which do not reflect what actually took place or when the Board took action on Mr. Faurie's claim.

77.     Notwithstanding the fraudulent meeting minutes and the refusal of counsel for the Board to accurately and clearly state when her client took action on Mr. Faurie's claims and what action it took, it is clear that the Board ultimately rejected Mr. Faurie's tort claim in its entirety.  Mr. Faurie has, therefore, satisfied his tort claim presentation requirement and is now permitted to file this action against Defendants, and each of them.

78.     Subsequent to the BUSD Board's rejection of Mr. Faurie's Tort claims, counsel for BUSD's Board commenced an investigation into the merits of his claims.

**C.  DFEH Complaints and Right-To-Sue Letters**

79.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 78, above.

80.     On March 26, 2007, Plaintiff, by and through his counsel, filed a complaint with the Department of Fair Employment and Housing against Defendants, and each of them, and requested immediate right-to-sue letters.  In his complaints, Plaintiff alleged the facts

1    set forth herein and asserted against each and every Defendant a claim of unlawful

2    discrimination on the basis of sex in violation of Government Code §12900 et seq.

3    81.    The Department of Fair Employment issued Right-To-Sue Notices dated March

4    28, 2007, regarding each and every Defendant.

5    82.    On May 15, 2007, Plaintiff, by and through his counsel, timely served each and

6    every Defendant with the DFEH complaint filed against him/her/it and with a copy of the

7    corresponding Right-To-Sue Notice for each and every Defendant.

8    83.    Therefore, Plaintiff has exhausted his administrative remedies prerequisite to

9    bringing a civil action pursuant to Government Code §12900 et seq. and is free to pursue

10   the instant action.

### FIRST CAUSE OF ACTION
### (Tortious Wrongful Discharge in Violation of Fundamental Public Policy)

13   84.    Plaintiff incorporates herein by reference as though fully set forth at length the

14   allegations of paragraphs 1 through and including 83, above.

15   85.    Mr. Faurie asserts that he was constructively discharged because a reasonable

16   person in his circumstances, facing the hostile and offensive retaliatory environment to

17   which he was subjected, would feel no choice but to resign.  As noted above, this fact has

18   been confirmed by the Employment Development Department, which finding was

19   uncontroverted by BUSD on its late-filed and abandoned appeal to the Unemployment

20   Insurance Appeals Board.

21   86.    Mr. Faurie's constructive discharge was wrongful because it was in violation of

22   the fundamental policy of the State of California in that his termination was in retaliation

23   for his complaints regarding unlawful practices and policies of the BUSD knowingly

24   approved and authorized by the Superintendent, his refusal to perform unlawful acts, and

25   his refusal to remain silent regarding ongoing violations of law and public policy, as

26   detailed in the statement of facts above.

27   87.    As a direct, foreseeable, and proximate result of  BUSD's and the individual

28   Defendants' wrongful termination of Mr. Faurie in violation of fundamental public policy

of the State of California, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

88.     As a further direct, foreseeable, and proximate result of  BUSD's and the individual Defendants' wrongful termination of Mr. Faurie in violation of fundamental public policy of the State of California, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

89.     Also as a direct and proximate result of the unlawful actions described above, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort all to his damage in an amount in excess of $400,000.00, the precise amount of which is subject to proof.

90.     The actions of Defendants, and each of them, were carried out in a deliberate, malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie, entitling him to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, as set forth in the prayer for relief, *infra*.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND CAUSE OF ACTION**

**(Breach of Contract)**

91.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 90, above.

92.     Mr. Faurie was employed by BUSD under contractual terms established by the Merit System Rules, Board Policies, oral representations, and consistently stellar performance evaluations.  Under those terms, Mr. Faurie's was required to be treated fairly and in conformity with the laws of the State of California, and his employment was for an indefinite term not to expire as long as he successfully performed the duties of his position, subject to termination only for just cause, and only in conformity with BUSD written disciplinary policies and procedures.

93.     Mr. Faurie was ready, willing, and able to perform, and did perform, the terms of his employment contract with Defendants competently and in a manner that exceeded the expectations of his supervisors throughout his employment with BUSD through and including the day he was constructively discharged as alleged herein.

94.     BUSD breached its contract with Mr. Faurie by refusing to give him the opportunity to succeed at his job; blaming him for intolerable working conditions created by BUSD administrative staff; failing to treat him in accordance with stated BUSD policies; requiring him to perform work above his professional classification without appropriate differential pay; constructively terminating his employment by subjecting him to a hostile work environment in retaliation for his reporting of and refusal to implement violations of law directed by BUSD administrative staff, in violation of the promises made to him; constructively terminating his employment without following BUSD policies and practices; and contaminating the Merit System appeals procedures by ignoring Constitutionally required separation of roles as advocate for the District and advisor to the commission.

95.     BUSD has refused and continues to refuse to allow Mr. Faurie the benefits of his employment contract and to perform under this contract in the agreed upon manner.

96.    Resort to the Merit System appeal procedure would have been futile because Brien and Lawrence were the gatekeepers to such appeals and routinely engaged in improper ex-parte communications with Merit Commission members.

97.    As a direct, foreseeable, and proximate result of BUSD's and the individual Defendants' breach of Mr. Faurie's employment contract, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, as set forth in the prayer for relief, *infra*.

### THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

98.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 97, above.

99.    As a result of the employment relationship which existed between Mr. Faurie and BUSD, the expressed and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in these implied promises, BUSD promised to act in good faith toward and deal fairly with Mr. Faurie which requires, among other things, that:

(a) Each party in the relationship must act with good faith toward the other concerning all matters related to the employment;

(b) Each party in the relationship must act with fairness toward the other concerning all matters related to the employment;

(c) Neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

(d) BUSD would similarly treat employees who are similarly situated;

(e) BUSD would comply with its own representations, rules, policies, and procedures in dealing with Mr. Faurie;

(f) BUSD would not terminate Mr. Faurie without a fair and honest cause, regulated by good faith on BUSD's part;

(g) BUSD would not terminate Mr. Faurie in an unfair manner; and

(h) BUSD would give Mr. Faurie's interests as much consideration as it gave its own interests.

100.    BUSD's constructive discharge of Mr. Faurie was wrongful, in bad faith, and unfair, and therefore was a violation of BUSD's legal duties.  Mr. Faurie further alleges that BUSD breached the covenant of good faith and fair dealing when it:

(a) Repeatedly refused to abide by its own policies when dealing with Mr. Faurie;

(b) Repeatedly denied the existence of the agreements that applied to Mr. Faurie;

(c) Unfairly prevented Mr. Faurie from obtaining the benefits of his employment relationship;

(d) Treated similarly situated employees differently by imposing different responsibilities on similarly situated employees and granting different compensation, differential pay, and employment benefits to similarly situated employees;

(e) Constructively terminated Mr. Faurie's employment for expressing legitimate concerns regarding unlawful directives, practices, and policies issued by BUSD administrative staff;

(f) Constructively terminated Mr. Faurie's employment for false reasons and in a manner that was inconsistent with BUSD's stated policies and practices.

101.    BUSD's breach of the covenant of good faith and fair dealing was a substantial

factor in causing damage and injury to Mr. Faurie.

102.    As a direct, foreseeable, and proximate result of  BUSD's and the individual

Defendants' breach of the covenant of good faith and fair dealing, Mr. Faurie has

suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe

benefits, as well as expenses incurred in securing new employment, including but not

limited to loss of appropriate differential pay from April 2003 through July 2006, proper

job classification and associated rate of pay from April 2003 through January 1, 2007, the

value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days

he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for

the period from July 17, 2006 to January 1, 2007, and front pay constituting the

difference between his current rate of pay and the pay he would receive as a Senior

Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the

precise amount of which is subject to proof.

        WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

them, as set forth in the prayer for relief, *infra*.

**FOURTH CAUSE OF ACTION**

**(Unlawful Discrimination On the Basis Of Sex [Gov. Code § 12900 et seq.])**

103.    Plaintiff incorporates herein by reference as though fully set forth at length the

allegations of paragraphs 1 through and including 102, above.

104.    Mr. Faurie is a male.

105.    This claim is brought pursuant to the California Fair Employment and Housing

Act, section 12940(a) of the Government Code, prohibiting termination of an employee

from employment on the basis of the sex of any person, and the corresponding

regulations of the California Department of Fair Employment and Housing.

106.    At all times mentioned herein, Mr. Faurie was fully qualified for the position of

Administrative Coordinator – Confidential.  His performance evaluations were

1    consistently and uninterruptedly very positive, indicating that his performance, in

2    substance and quality, exceeded the duties of his position.

3    107.    BUSD and the individual defendants conferred differential pay, granted vacation,

4    and allocated work disparately according to sex, as detailed in the statement of facts,

5    above.

6    108.    BUSD and the individual defendants also constructively discharged Mr. Faurie

7    based on his sex, as part of a pattern and practice of subjecting male employees to a

8    hostile and offensive work environment and disparately allocating employment benefits

9    and privileges based on their sex, as detailed above.

10    109.    Mr. Faurie believes and alleges that his sex was a substantial and determining

11    factor in BUSD's constructive termination of his employment.

12    110.    BUSD's and the individual Defendants' discrimination against Mr. Faurie based

13    on his sex and constructive termination of Mr. Faurie's employment as alleged herein

14    constitute unlawful employment practices in violation of section 12940(a) of the

15    Government Code.

16    111.    BUSD's and the individual defendants' unlawful discrimination against Mr.

17    Faurie also breached their employment contract with him in that their actions were in

18    violation of relevant Merit System rules, oral representations, and reasonable

19    expectations based on positive performance evaluations.

20    112.    The unlawful discrimination against Mr. Faurie was continuing in nature and

21    commenced when Mr. Faurie was hired in or about October 2002 and continued

22    throughout Mr. Faurie's employment by BUSD.

23    113.    As a direct, foreseeable, and proximate result of  BUSD's and the individual

24    Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie

25    has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe

26    benefits, as well as expenses incurred in securing new employment, including but not

27    limited to loss of appropriate differential pay from April 2003 through July 2006, proper

28    job classification and associated rate of pay from April 2003 through January 1, 2007, the

value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days
he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for
the period from July 17, 2006 to January 1, 2007, and front pay constituting the
difference between his current rate of pay and the pay he would receive as a Senior
Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the
precise amount of which is subject to proof.

114.    As a further direct, foreseeable, and proximate result of  BUSD's and the
individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex,
Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and
exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount
of which is subject to proof.

115.    Also as a direct and proximate result of Defendants' unlawful discrimination
against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer,
from severe mental and emotional distress, including panic attacks, sleep disturbances,
anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and
discomfort all to his damage in an amount in excess of $400,000.00, the precise amount
of which is subject to proof.

116.    The actions of Defendants, and each of them, were carried out in a deliberate,
malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie,
entitling him to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of
them, as set forth in the prayer for relief, *infra*.

### FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

117.    Plaintiff incorporates herein by reference as though fully set forth at length the
allegations of paragraphs 1 through and including 116, above.

118.    The actions of BUSD and the individual defendants alleged herein were extreme and outrageous, and were inflicted with intent to cause, or with reckless disregard of the probability of causing, emotional distress.

119.    As a direct, foreseeable, and proximate result of BUSD's and individual defendants' unlawful conduct, Mr. Faurie has suffered extreme and severe anguish, humiliation, emotional distress, nervousness, tension, anxiety and depression.

120.    The emotional distress intentionally caused was not a normal risk or incident of employment because it was incident to Mr. Faurie's wrongful termination in violation of fundamental public policy, as alleged above; and was also incident to discrimination against Mr. Faurie based on his sex, as alleged above.  Thus, Mr. Faurie's claim for intentional infliction of emotional distress is not preempted by the exclusive remedial scheme for work-related injuries under the Workers Compensation Act.  (See *Cabusuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, as modified.)

121.    The extent of the injuries directly and proximately resulting from BUSD's and the individual defendants' intentional infliction of emotional distress is not fully known at this time, and the amount of damages is not yet fully ascertained but in an amount in excess of $400,000.00, the precise amount of which is subject to proof.  Mr. Faurie claims this amount together with prejudgment interest pursuant to Civil Code section 3287 and pursuant to any other provision of law providing for prejudgment interest.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, as follows:

1.   For compensatory damages, including lost wages and benefits, loss of reputation, and damages for physical and emotional injuries, in excess of $700,000.00 and according to proof;

2.   For punitive damages;

3.   For prejudgment interest on all amounts claimed;

///

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 31

1      4.  For attorneys' fees and costs of suit;

2      5.  For such other relief as the court deems just and proper.

3   Dated this 9th day of July, 2007

4                                            By: _____

5                                                 Eric Borgerson, SBN 177943
                                                  Law Office Of Eric Borgerson
6                                                 2625 School Street
                                                  Oakland, CA 94602
7                                                 (510) 866-3738
                                                  Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Gene Faurie, Jr. v. BUSD et al.* – Complaint for Damages – p. 32

# Exhibit B

1  KELLIE M. MURPHY (SBN 189500)
   JOHNSON SCHACHTER & LEWIS
2  A Professional Law Corporation
   California Plaza
3  2180 Harvard Street, Suite 560
   Sacramento, CA 95815
4  Telephone: (916) 921-5800
   Facsimile: (916) 921-0247
5
   Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
6  UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                       **IN AND FOR THE COUNTY OF ALAMEDA**

10  GENE FAURIE, JR.,                          )   Case No. RG 07334590
                                               )
11          Plaintiff                          )   **MEMORANDUM OF POINTS &**
                                               )   **AUTHORITIES IN SUPPORT OF**
12  v.                                         )   **DEFENDANT MICHELE**
                                               )   **LAWRENCE'S DEMURRER TO**
13  The BERKELEY UNIFIED SCHOOL                )   **PLAINTIFF'S COMPLAINT FOR**
    DISTRICT; MICHELLE LAWRENCE,               )   **DAMAGES**
14  individually and in her official capacity as )
    BUSD Superintendent; LISA UDELL,           )   **[Filing Fee Exempt per Government Code**
15  individually and in her official capacity as )   **§6103]**
    BUSD Assistant Superintendent, Human       )
16  Resources; CRISTINA OBIETA, individually   )
    and in her official capacity as BUSD Director, )
17  Classified Personnel; RICHARD DODSON, in   )
    his official capacity as BUSD Director, Labor )  **Date:**  September 25, 2007
18  Relations; TINA BRIER, individually and in  )   **Time:**  2:00 p.m.
    her official capacity as BUSD Director,     )   **Dept:**  18
19  Classified Personnel,                       )
                                               )
20          Defendants.                         )
                                               )   **RESERVATION NO. 747071**
21  ─────────────────────────────────────     )

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────────
        **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE**
           **LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    (Gov't. Code §815.)  To this end, all "common law or judicially declared forms of liability for

2    public entities" have been "abolished"  and public entities may only be held liable "if a statute is

3    found declaring them to be liable."  (Legislative Committee Comment to Gov't. Code §815; see

4    also *Teter v. City of Newport Beach* (2003) 30 Cal. 4th 446 [under Tort Claims Act, immunity is

5    rule and liability is exception].)

6                            **III.  Statement of Facts**

7        The Complaint is replete with conclusory statements and unsupported allegations against

8    all of the defendants.  The following is alleged against Ms. Lawrence (apart from the hyperbole

9    and invective that permeates the Complaint):

10        Plaintiff began working at the District in about October 2002.[1]  Ms. Lawrence was

11    Superintendent of the District.[2]   Plaintiff indicated that he was considering resigning on July 11,

12    2006,[3] and he resigned on July 17, 2006.[4]

13        Plaintiff's sole allegations against Ms. Lawrence are as follows: (1) Ms. Lawrence

14    "approved" an unspecified "BUSD policy";[5] (2) Ms. Lawrence "hired" an unnamed employee

15    that Plaintiff contends should not have been hired;[6] (3) Ms. Lawrence "hired" an unnamed

16    individual that was "untrained, was present at most three days per week, and relied on and

17    consulted with [Plaintiff] to learn the Department's procedures and daily administrative needs";[7]

18    (4) another defendant, Tina Brier, told Plaintiff that she had notified Ms. Lawrence regarding

19    Plaintiff's concerns about the hiring of unnamed employees that Plaintiff felt should not have

20

21

22       [1]  Complaint for Damages (hereinafter "Complaint"), p. 4, ¶17.

23       [2]  Complaint, p. 2, ¶6.

24       [3]  Complaint, pp. 17-18, ¶¶59-60.

25       [4]  Complaint, p. 4, ¶16.

26       [5]  Complaint, p. 4, ¶17.

27       [6]  Complaint, p. 5, ¶21.

28       [7]  Complaint, pp. 7-8, ¶31.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  been hired;[8] (5) Ms. Lawrence "hired" an attorney Plaintiff does not feel was neutral;[9] (6) another

2  defendant, Lisa Udell, told Plaintiff that a directive she gave Plaintiff was "consistent with

3  BUSD policy as communicated and authorized by Superintendent Lawrence";[10] (7) Ms.

4  Lawrence inaccurately stated that Plaintiff had six days of sick leave accrued and later

5  acknowledged the error;[11] and (8) Ms. Lawrence responded to letters written by Plaintiff's

6  counsel regarding his resignation.[12]

## IV.  Argument

**A.  Plaintiff's first cause of action for Tortious Wrongful Discharge in Violation of Fundamental Public Policy must be dismissed because a public entity employee cannot be held liable for such a claim as a matter of law.**

As a matter of law, only an employer can be liable for the tort of wrongful termination in violation of public policy. (See *Khajavi v. Feather River Anesthesia Med. Group* (2000) 84 Cal.App.4th 32, 53; see also *Reno v. Baird* (1988) 18 Cal.4th 640, 663.)  "After all, 'the duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper discharge of an employee . . . .' [Citation.]" (*Khajavi, supra,* 84 Cal.App.4th at p. 53.)  Ms. Lawrence had no employment relationship with Plaintiff.  Such claim must thus be dismissed against Ms. Lawrence.

**B.  Plaintiff's Second and Third Causes of Action for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing must be dismissed because Plaintiff cannot state such a cause of action as a matter of law and because Plaintiff has not alleged that Ms. Lawrence was a party to any contract with Plaintiff.**

**1.  Plaintiff cannot state a cause of action for breach of contract as a matter of law.**

It is well-settled that public employment in California is held not *by statute*, rather than by contract. (See *Miller v. State of California* (1977) 18 Cal.3d 808, 813; see also *Kim v. The*

---

[8]  Complaint, p. 11, ¶42.

[9]  Complaint, p. 16, ¶56.

[10]  Complaint, p. 17, ¶59.

[11]  Complaint, p. 19, ¶63.

[12]  Complaint, pp. 19-20, ¶¶63-66.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

3

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1   *Regents of the University of California* (2000) 80 Cal.App.4th 160, 164.) The terms of a public

2   employee's employment are established by *law*, not by contract, and the employee's remedies, if

3   any, are confined to those provided by statute. (See *Hill v. City of Long Beach* (1995) 33

4   Cal.App.4th 1684, 1692.) A public employee may not state a claim for breach of contract *or* for

5   breach of the implied covenant of good faith and fair dealing against an employer. (See

6   *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23-24 [civil service public employees cannot state a

7   cause of action for breach of contract or breach of the implied covenant of good faith and fair

8   dealing]; *Hill, supra,* 33 Cal.App.4th at p. 1690 [applying the same principle to civil service and

9   noncivil service public employees alike].) This applies to an even greater extent where an

10  employee attempts to state such a claim against a co-employee who is not even the employer.

11      As an employee of the District, Plaintiff was a public employee. Because public

12  employment is held by statute, not by contract, Plaintiff is precluded as a matter of law from

13  stating a claim for breach of contract or for breach of the implied covenant of good faith and fair

14  dealing against any defendant, and particularly against Ms. Lawrence, a co-employee. Such

15  claims must thus be dismissed.

16  **2.    Plaintiff has not alleged that Ms. Lawrence was a party to any contract with**
        **Plaintiff.**

17

18      Plaintiff has not alleged, and cannot allege, that Ms. Lawrence was a party to any contract

    with him. In an action arising out of contract, the nature of the contract must be alleged in the

19
    complaint, and the terms must be set forth verbatim in the body of the complaint or a copy of the

20
    written instrument must be attached and incorporated by reference. (See *Wise v. Southern*

21
    *Pacific Co.* (1963) 223 Cal. App. 2d 50, 59 (overruled on other grounds); see also *Otworth v.*

22
    *Southern Pac. Transportation Co.* (1985) 212 Cal Rptr. 743.) **Where there is no contract,**

23
    **there is no cause of action for breach of contract**. (See *Fundin v. Chicago Pneumatic Tool*

24
    *Co.* (1984) 199 Cal Rptr. 789, 793 [court sustained a lower court's demurrer because there was

25
    no contract and four of the five causes of action turned on the existence of a contract].) Even

26
    where an employment contract exists, no claim for breach of contract can be stated against a

27
    supervisor because the supervisor is not a party to the contract. (See *Oppenheimer v. Robinson*

28

---

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE**
**LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

1  (1957) 150 Cal.App.2d 420, 424.)  Plaintiff's second and third causes of action must thus be

2  dismissed against Ms. Lawrence.

3  **C.    Plaintiff's Fourth Cause of Action for Unlawful Discrimination On the Basis
       of Sex [Gov. Code § 12900 et seq.] must be dismissed because Ms. Lawrence
4      cannot be liable for discrimination under FEHA as a matter of law.**

5  Individuals, including supervisory employees, cannot be liable for discrimination under

6  FEHA as a matter of law.  (See *Reno, supra,* 18 Cal.4th at pp. 645-646; see also *Janken v. GM*

7  *Hughes Electronics* (1996) 46 Cal.App.4th 55, 62.)  Quoting with approval from the opinion in

8  *Janken*, the Supreme Court in *Reno* held that discrimination claims "arise out of the performance

9  of necessary personnel management duties . . . [and] making decisions is a type of conduct

10  essential to personnel management."  Thus, according to the Supreme Court:

11      An individual supervisory employee cannot . . . refrain from engaging in the type
        of conduct which could later give rise to a discrimination claim.  Making
12      personnel decisions is an inherent and unavoidable part of the supervisory
        function.  Without making personnel decisions, a supervisory employee simply
13      cannot perform his or her job duties. (*Reno, supra,* 18 Cal.4th at p. 646.

14  Plaintiff cannot state a claim for discrimination against Ms. Lawrence as a matter of law

15  because Ms. Lawrence was simply Plaintiff's supervisor.  Plaintiff's fourth cause of action must

16  therefore be dismissed against Ms. Lawrence.

17  **D.    Plaintiff's Fifth Cause of Action for Intentional Infliction of Emotional
       Distress must be dismissed because Plaintiff has failed to plead a statutory
18     basis or allege sufficient facts to state a *prima facie* case and because such
       claim is preempted by the Worker's Compensation Act.**

19

20  **1.    Plaintiff has failed to plead a statutory basis for a claim of intentional infliction of
       emotional distress.**

21  Government Code §815 provides that "Except as otherwise provided by statute: . . . A

22  public entity is not liable for an injury, whether such injury arises out of an act or omission of the

23  public entity or a public employee or any other person."  This applies to employees of the public

24  entity as well.  (See *Ross v. San Francisco Bay Area Transit District* (2007) 146 Cal.App.4th

25  1507.) Plaintiff fails to plead any statutory violation as is required to establish liability against a

26  public entity and its employees, and his fifth cause of action must thus be dismissed.

27  / / /

28  / / /

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

2.    **Plaintiff has failed to allege sufficient facts to state a prima facie case of intentional infliction of emotional distress.**

Further, Plaintiff fails to allege sufficient facts to state a cause of action for intentional infliction of emotional distress. To state such a claim, Plaintiff must allege *facts* to support the following elements: (1) "outrageous" conduct by Ms. Lawrence; (2) that Ms. Lawrence intended to cause (or recklessly disregarded the probability of causing) Plaintiff emotional distress; (3) that Plaintiff suffered severe emotional distress; and (4) an actual and proximate causal link between Ms. Lawrence's "outrageous" conduct and the severe emotional distress. (See *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7; *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 300.

"Outrageous" conduct sufficient to state a claim for intentional infliction of emotional distress "' . . . must be so extreme that it exceeds all bounds of that usually tolerated in a civilized community.' [Citation.]" (*Nally, supra,* 47 Cal.3d at p. 300; see also *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1225-1226.) Allegations of personnel management decisions are insufficient to support a claim of intentional infliction of emotional distress, even where they are alleged to be improperly motivated. (See *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80.)

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination. (*Id.* at p. 80.)

"Ordinarily mere insulting language, without more, does not constitute outrageous conduct." (*Cole, supra,* 43 Cal.3d at p. 155, n. 7.) Even conduct such as screaming and yelling by a supervisor in the process of criticizing an employee's performance, threatening to throw an employee out of the department, and making threatening gestures toward an employee have been held insufficient to constitute outrageous conduct as a matter of law. (*Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 992-993.) "While such incidents may show rudeness and insensitivity, they do not amount to outrageous conduct." (*Id.* at p. 992.) Plaintiff fails to plead any facts or to properly allege any conduct that would constitute outrageous conduct by Ms. Lawrence.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

6

1    Plaintiff also fails to plead any facts to establish that Ms. Lawrence intended to cause him

2  emotional distress.  The *only* facts alleged against Ms. Lawrence are cited above, none of which

3  show that Ms. Lawrence intended to cause Plaintiff emotional distress.

4    Further, Plaintiff fails to allege facts to show that he suffered severe emotional distress

5  that rose to the level required to state a claim for intentional infliction of emotional distress.

6  Severe emotional distress is " . . . emotional distress of such substantial quantity or enduring

7  quality that no reasonable man in a civilized society should be expected to endure it." (*Fletcher*

8  *v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397.)  The Complaint fails to allege

9  that Plaintiff suffered any emotional distress as a result of any act or omission on the part of Ms.

10 Lawrence.

11   Because Plaintiff's complaint fails to state a statutory basis to establish liability against

12 Ms. Lawrence as a public employee and because the complaint fails to plead any facts or to

13 allege any conduct meeting the pleading requirements for such a claim, his fifth cause of action

14 for intentional infliction of emotional distress must be dismissed against Ms. Lawrence.

15
16 **2.    Plaintiff's cause of action for intentional infliction of emotional distress is
        preempted by the Worker's Compensation Act.**

17   The California Workers' Compensation Act provides the "sole and exclusive remedy" for

18 personal injuries "arising out of and in the course of employment." (See California Labor Code

19 §§3600-3602, 5300; see also *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 18; *Gibbs v. American*

20 *Airlines, Inc.* (1999) 74 Cal.App.4th 1 [exclusive remedy provision barred employee's cause of

21 action against employer for emotional distress where injury arose in course of her employment

22 and was caused by her employment].)  This includes injuries, including emotional distress,

23 allegedly caused by an employer's conduct in employment actions involving termination,

24 promotions, demotions, criticism of work, grievances, etc.  (See *Shoemaker, supra,* 52 Cal.3d at

25 p. 20; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 814-815;

26 *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.)  Allegations that an

27 employer's conduct was intentional, malicious, or outrageous are *insufficient* to permit a civil

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE
LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

1  action outside of the workers' compensation system.  (See *Cole, supra,* 43 Cal.3d at p. 160;

2  *Shoemaker, supra,* 52 Cal.3d at p. 25.)

3       Plaintiff's entire complaint is centered around alleged wrongful acts *in employment.*

4  Because Plaintiff's alleged emotional injuries arose in the course of Plaintiff's employment, his

5  fifth cause of action for intentional infliction of emotional distress is barred by the exclusive

6  remedy provision of the Worker's Compensation Law and must be dismissed against Ms.

7  Lawrence.

8

**E.    Ms. Lawrence is immune from liability for acts or omissions within her**
9        **discretion.**

10      Under Government Code Section 820.2, "[e]xcept as otherwise provided by statute, a

11  public employee is not liable for an injury resulting from his act or omission where the act or

12  omission was the result of the exercise of the discretion vested in him, whether or not such

13  discretion be abused."

14      Immunity under section 820.2 applies to actions taken by employees of school districts in

15  connection with the employment of personnel, including the discipline and termination of such

16  employees.  (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 979 [immunity applied to school

17  board members' decision not to renew a superintendent's employment contract]; see also *Tietz v.*

18  *Los Angeles Unified School District* (1965) 238 Cal.App.2d 905 [immunity applied to school

19  principal and vice principal for acts taken in connection with employment of tenured teacher and

20  librarian]; *Hardy v. Vial* (1957) 48 Cal.2d 577 [immunity applied to college employees and

21  employees of the Department of Education for acts taken in connection with termination of

22  professor's employment]; *Toney v. State* (1976) 54 Cal.App.3d 779 [immunity applied to college

23  administrator for acts taken in connection with disciplinary proceedings against a college

24  professor]; and *Jones v. Oxnard School District* (1969) 270 Cal.App.2d 587 [immunity applied

25  to employees of school district for acts taken in connection with refusal to hire applicant for

26  employment].)

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE
LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

8

1    The acts alleged against Ms. Lawrence in Plaintiff's complaint are discretionary in nature

2  under the authorities cited above.  Ms. Lawrence is therefore entitled to immunity under Section

3  820.2 and *all* causes of action must be dismissed against Ms. Lawrence.

4

**F.    Plaintiff should not be permitted leave to amend because he cannot correct**

5  **the deficiencies in his complaint as a matter of law.**

6    An order sustaining a demurrer *with* leave to amend is improper where the Plaintiff

7  cannot state a claim as a matter of law:

8    Leave to amend *should* be denied where the facts are not in dispute and the
      nature of the claim is clear but no liability exists under substantive law.
9    *Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436; *Schonfeldt
      v. State of California* (1998) 61 Cal.App.4th 1462, 1465 [if no liability as a
10    matter of law, leave to amend should not be granted].

11  "The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be

12  amended." (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)  Because, as discussed above, Plaintiff

13  cannot state any of the causes of action alleged against Ms. Lawrence as a matter of law, Ms.

14  Lawrence's demurrer should be sustained *without* leave to amend.

15                           **V.  Conclusion**

16    For the reasons set forth above, Ms. Lawrence respectfully requests that the Court sustain

17  her demurrer as to Plaintiff's entire Complaint and each cause of action stated therein without

18  leave to amend.

19

20

21  Date:    August 27, 2007              JOHNSON SCHACHTER & LEWIS
                                          A Professional Law Corporation
22

23

24                                        KELLIE M. MURPHY
25                                        Attorneys for Defendant MICHELE LAWRENCE

26

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE
LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

1

# PROOF OF SERVICE

2

**CASE NAME:**    **Faurie v. Berkeley Unified School District, et al.**
**CASE NO.:**      **RG 07334590**

3

4      I am employed in the County of Sacramento. I am over the age of eighteen years and not
a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5      560, Sacramento, CA 95815.

6      I am familiar with this office's practice whereby the mail is sealed, given the appropriate
postage and placed in a designated mail collection area. Each day's mail is collected and
7      deposited in a United States mailbox after the close of each day's business.

8      On August 27, 2007, I served the following: **MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S
9      DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

10

__X__    United States Mail - on all parties in said action by placing a true copy of the above-
11        described document(s) enclosed in a sealed envelope in the designated area for outgoing
mail addressed as set forth below.

12

___      By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
13        a true copy of the above-described document(s).

14      ___   Federal Express - on all parties in said action by placing a true copy of the above-
described document(s) in an authorized area for pick-up by an authorized express service
15        courier the same day it is collected and processed in the ordinary course of business as set
forth below.

16

___      Personal Service - By personally delivering or causing to be delivered a true copy of the
17        above-described document to the person(s) and at the address(es) set forth as shown
below.

18

Eric Borgerson, Esq.
19    LAW OFFICE OF ERIC BORGERSON
2625 School Street
20    Oakland, CA 94602

21

___      FEDERAL: I declare that I am employed in the office of a member of the bar of this
22        Court at whose direction service was made.

23      I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed on August 27, 2007, at Sacramento, California.

24

25

_____
26        Carolyn A. Apodaca

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# Exhibit C

1 | KELLIE M. MURPHY (SBN 189500)
JOHNSON SCHACHTER & LEWIS
2 | A Professional Law Corporation
California Plaza
3 | 2180 Harvard Street, Suite 560
Sacramento, CA 95815
4 | Telephone: (916) 921-5800
Facsimile: (916) 921-0247
5 |
Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
6 | UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

7 |

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **IN AND FOR THE COUNTY OF ALAMEDA**

10 | GENE FAURIE, JR.,                              ) Case No. RG 07334590
                                                   )
11 |           Plaintiff                           ) **MEMORANDUM OF POINTS &**
                                                   ) **AUTHORITIES IN SUPPORT OF**
12 | v.                                            ) **DEFENDANT BERKELEY UNIFIED**
                                                   ) **SCHOOL DISTRICT'S DEMURRER**
13 | The BERKELEY UNIFIED SCHOOL                    ) **TO PLAINTIFF'S COMPLAINT FOR**
     DISTRICT; MICHELLE LAWRENCE,                  ) **DAMAGES OR, ALTERNATIVELY,**
14 | individually and in her official capacity as   ) **MOTION TO STRIKE PORTIONS OF**
     BUSD Superintendent; LISA UDELL,              ) **PLAINTIFF'S COMPLAINT FOR**
15 | individually and in her official capacity as   ) **DAMAGES**
     BUSD Assistant Superintendent, Human          )
16 | Resources; CRISTINA OBIETA, individually       )
     and in her official capacity as BUSD Director, ) **[Filing Fee Exempt per Government Code**
17 | Classified Personnel; RICHARD DODSON, in        ) **§6103]**
     his official capacity as BUSD Director, Labor  )
18 | Relations; TINA BRIER, individually and in     ) **Date:** September 25, 2006
     her official capacity as BUSD Director,        ) **Time:** 2:00 p.m.
19 | Classified Personnel,                          ) **Dept:** 18
                                                   )
20 |           Defendants.                          )
                                                   ) **RESERVATION NO. R-747059**
21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

*Left margin vertical text:* JOHNSON SCHACHTER & LEWIS / A PROFESSIONAL LAW CORPORATION / 2180 HARVARD STREET, SUITE 560 / SACRAMENTO, CA 95815 / TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1               **TABLE OF AUTHORITIES**

2   **FEDERAL CASES**             PAGE

3   *Raytheon Co. v. Hernandez* (2003) 540 U.S. 44, 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4   *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 992-993 . . . . . . . . . . . . . . . . . . . . . . 10, 11

5   *Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73 F.Supp.2d 1126 . . . . . . . . . . . . . . . . 7

7   **STATE CASES**

8   *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455 . . . . . . . . . . . . . . . . . . . . . 8

9   *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1225-1226 . . . . . . . . . . . . . . . . . 10

10  *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11  *Careau & Co. v. Security Pac. Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390 . . . . 1

12  *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 814-815 . . . 11

13  *Cloud v. Casey* (1999) 76 Cal.App.4th 895 . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

14  *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7 . . . . . . . . . . . . . 10, 12

15  *County of Sacramento v. Superior Court* (1972) 8 Cal.3d 479, 481 . . . . . . . . . . . . . . . . . . 6

16  *Creason v. State Dep't of Health Services* (1998) 18 Cal.4th 623 . . . . . . . . . . . . . . . . . . . . . 1, 6

17  *Engel v. McCloskey* (1979) 92 Cal.App.3d 870 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18  *Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 . . . . . . . . . . . . . . . . 11

19  *Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452 . . . . . . . . . . . . . . . . . . . . 8

20  *Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21  *Guz v. Bechtel Nat'l, Inc.* (2000) Cal.4th 317, 355 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22  *Halvorsen v. Aramark Unif. Serv.* (1998) 65 Cal.App.4th 1383, 1391 . . . . . . . . . . . . . . . . . 1

23  *Hardy v. Vial* (1957) 48 Cal.2d 577 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24  *Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604, 610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25  *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 . . . . . . . . . . . . . . . . . . . . . 1

26  *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1692 . . . . . . . . . . . . . . . . . . . . . . . 6, 7

27  *Hoff v. Vacaville Unified School District* (1998) 19 Cal.4th 925 . . . . . . . . . . . . . . . . . . . . . . 6

28  *International Brotherhood of Teamsters v. United States* (1977) 431 U.S. 324, 335-336 . . . . . 9

*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80 . . . . . . . . . . . . . . . . . . . . .   10

*Jones v. Oxnard School District* (1969) 270 Cal.App.2d 587 . . . . . . . . . . . . . . . . . . . . . . . .   12

*Kim v. The Regents of the University of California* (2000) 80 Cal.App.4th 160, 164 . . . . . . . .   6

*Lopez v. Southern California Rapid Transit* (1985) 49 Cal.3d 780, 79. . . . . . . . . . . . . . . . .   1, 6

*Miller v. State of California* (1977) 18 Cal.3d 808, 813 . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 300 . . . . . . . . . . . . . . . . . . . . . . .   10

*Palmer v. Regents of the University of California* (2003) 107 Cal.App.4th 899,909 . . . . . . . .   6

*Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23-24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 11, 12

*Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147. . . . . . . . . . . . . . . . . . . . . . .   7

*Stevenson v. Superior Court* (1997) 16 Cal.4th at pp. 906-908 . . . . . . . . . . . . . . . . . . . . . . .   6

*Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803 . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167 at pp. 176-178 . . . . . . . . . . . . . . . . .   6

*Teter v. City of Newport Beach* (2003) 30 Cal. 4th 446 . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Thomas v. Department of Corrections* (2000) 77 Cal.App.4th 507, 512 . . . . . . . . . . . . . . . . .   8

*Tietz v. Los Angeles Unified School District* (1965) 238 Cal.App.2d 905 . . . . . . . . . . . . . . . .   12

*Toney v. State* (1976) 54 Cal.App.3d 779 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Turner v. Anheuser-Busch* (1994) 7 Cal.4t5h 1238, 1247 . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Watson v. Southeastern Pa. Transp. Auth.* (3rd Cir. 2000) 207 F.3d 207, 211 . . . . . . . . . . . . .   9

*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051-1052 . . . . . . . . . . . . . . . . . . . .   7

**FEDERAL STATUTES**

Government Code §815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 9

Government Code §815.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Government Code §820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Government Code §12900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

ii

1

## STATE STATUTES

2

C.C.P. §430.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

C.C.P. §430.10(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Labor Code §§3600-3602, 5300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

iii

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# I. Introduction

Plaintiff Gene Faurie, Jr. alleges numerous causes of action against his former employer, Berkeley Unified School District ("the District") and several employees of the District, related to his employment and his resignation from such employment. The following causes of action are alleged against the District: Tortious Wrongful Discharge in Violation of Fundamental Public Policy; Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; Unlawful Discrimination On the Basis of Sex [Gov. Code § 12900 et seq.]; and Intentional Infliction of Emotional Distress. None of those causes of action, however, can be stated against the District as a matter of law. The District's demurrer must therefore be sustained without leave to amend.

# II. Standard of Review

"A demurrer tests the legal sufficiency of the complaint." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) A party may demur to a complaint on the ground that "[t]he pleading does not state facts sufficient to constitute a cause of action" (C.C.P. §430.10(e)) or where the complaint affirmatively alleges facts amounting to an affirmative defense (see *Halvorsen v. Aramark Unif. Serv.* (1998) 65 Cal.App.4th 1383, 1391). A defense of statutory immunity may be asserted by demurrer. (See, e.g., *Creason v. State Dep't of Health Services* (1998) 18 Cal.4th 623; *Engel v. McCloskey* (1979) 92 Cal.App.3d 870.)

Failure to plead ultimate facts subjects a complaint to demurrer for "failure to state facts constituting the cause of action." (C.C.P. § 430.10.) "A complaint must allege the ultimate facts necessary to the statement of an actionable claim. It is both improper and insufficient for a plaintiff to simply plead the evidence by which he hopes to prove such ultimate facts." (*Careau & Co. v. Security Pac. Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390.)   In a suit filed against a public entity, each cause of action must also be plead with specificity. (*Lopez v. Southern California Rapid Transit* (1985) 49 Cal.3d 780, 795; see also *Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, "[e]very fact essential to the existence of statutory liability must be pleaded." (*Id.* at p. 809.) Public entity liability may only be established by statute. (Gov't. Code §815.) To this end, all "common law or judicially declared forms of liability for public entities" have been "abolished" and public entities may only be held liable "if a statute is found declaring them to be

1  liable." (Legislative Committee Comment to Gov't. Code §815; see also *Teter v. City of Newport*
2  *Beach* (2003) 30 Cal. 4th 446 [under Tort Claims Act, immunity is rule and liability is exception].)

### III. Statement of Facts

4        The Complaint is replete with conclusory statements and unsupported allegations against all
5  of the defendants. The allegations against the District (apart from the hyperbole and invective that
6  permeates the Complaint), are the sum total of the allegations against the individual defendants, as
7  follows:

8        Plaintiff began working at the District in about October 2002.[1] Plaintiff indicated that he was
9  considering resigning on July 11, 2006,[2] and he resigned on July 17, 2006.[3]

10       Plaintiff alleges that defendant Tina Brier, Director of Classified Personnel for the District,
11 failed to accept and implement Plaintiff's complaints about the District's alleged employment of a
12 person (who Plaintiff fails to even name in the Complaint) with a criminal record,[4] failed to respond
13 to his complaints about the privacy of employee personnel files,[5] failed to obtain "'livescan' digital
14 fingerprints" for employees,[6] and failed to follow "proper procedures" regarding CalPERS
15 passwords.[7] Plaintiff further alleges that when he told Ms. Brier he planned to claim workers
16 compensation for an alleged repetitive stress injury to his hands, Ms. Brier said "if this is what you
17 want to do ... fine", "threw" a signed claim form at him, and told him to stop typing.[8] After he filed
18 his worker's compensation claim, Plaintiff asserts that he was entitled to ten minute breaks every
19 hour, and then twenty minute breaks every hour, and that Ms. Brier allegedly "prevented" him from

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

---

22  [1] Complaint for Damages (hereinafter "Complaint"), p. 4, ¶17.

23  [2] Complaint, pp. 17-18, ¶¶59-60.

24  [3] Complaint, p. 4, ¶16.

25  [4] Complaint, p. 5, ¶21; pp. 10-11, ¶¶41-42.

26  [5] Complaint, p. 11, ¶43.

27  [6] Complaint, pp. 12-14, ¶46.

28  [7] Complaint, pp. 13-14, ¶49.

[8] Complaint, p. 14, ¶50.

---

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

2

1   taking those breaks by giving him work that did not require him to type.[9]  According to Plaintiff, the

2   worker's compensation physician placed him on medical leave "to stop Brier's refusal to

3   accommodate his medical limitations."[10]  Plaintiff also alleges that, in February 2006, after he

4   refused to perform assigned tasks, Ms. Brier threatened him with disciplinary action and told him

5   that failure to perform his job responsibilities would constitute insubordination.[11]  Finally, Plaintiff

6   claims he filled in for Ms. Brier and performed duties that were "above his professional

7   classification."[12]  He claims that Ms. Brier refused to give Plaintiff "differential pay" for his work,[13]

8   though there is no explanation of how or whether that was Ms. Brier's responsibility.  Plaintiff

9   admits that Ms. Brier consistently ranked his performance high.[14]

10      Plaintiff alleges that defendant Richard Dodson, Director of Labor Relations for the District,

11   stated Mr. Dodson stated "you should do any job asked of you because you are smart regardless of

12   whether or not it is in your job classification," when Plaintiff complained about working outside of

13   his classification.[15]  Plaintiff further alleges that, when Plaintiff referred an administrator to Mr.

14   Dodson regarding a request to review an employee file, he "was visibly irritated," "rolled his eyes

15   and looked away from [Plaintiff] as he accompanied the individual to the file room," left the

16   employee alone with the files for several minutes, and reacted "with hostility and condescension"

17   when Plaintiff attempted to address the problem with Mr. Dodson.[16]  Plaintiff also alleges that he

18   "voiced . . . a concern" to Mr. Dodson regarding failure by the District to obtain "livescan" digital

19   fingerprint records of employees.[17]  Finally, Plaintiff alleges that he "regularly drew to the attention

20

21      [9]  Complaint, pp. 14-15, ¶51.

22      [10]  *Id.*

23      [11]  Complaint, p. 16, ¶¶55-56.

24      [12]  Complaint, p. 7, ¶30.

25      [13]  Complaint, p. 7, ¶29; p. 8, ¶32.

26      [14]  Complaint, pp 16-17, ¶57.

27      [15]  Complaint, p. 8, ¶33.

28      [16]  Complaint, p. 12, ¶44.

[17]  Complaint, pp. 12-13, ¶46.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES

3

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    of . . . Dodson the fact that [the District] routinely failed to follow proper procedures for newly

2    appointed employees for enrollment in" CalPERS.[18]

3         Plaintiff alleges that defendant Michele Lawrence, Superintendent of the District, "approved"

4    an unspecified "BUSD policy."[19]  Plaintiff further alleges that Ms. Lawrence "hired" an unnamed

5    employee that Plaintiff contends should not have been hired,[20] and "hired" an unnamed individual

6    that was "untrained, was present at most three days per week, and relied on and consulted with

7    [Plaintiff] to learn the Department's procedures and daily administrative needs."[21]  Plaintiff also

8    alleges that another defendant, Tina Brier, told Plaintiff that she had notified Ms. Lawrence regarding

9    Plaintiff's concerns about the hiring of unnamed employees that Plaintiff felt should not have been

10   hired.[22]  Plaintiff alleges that Ms. Lawrence "hired" an attorney Plaintiff does not feel was neutral.[23]

11   Plaintiff alleges that another defendant, Lisa Udell, told Plaintiff that a directive she gave Plaintiff

12   was "consistent with BUSD policy as communicated and authorized by Superintendent Lawrence."[24]

13   Plaintiff further alleges that Ms. Lawrence inaccurately stated that Plaintiff had six days of sick leave

14   accrued and later acknowledged the error.[25]  Finally, Plaintiff alleges that Ms. Lawrence responded

15   to letters written by Plaintiff's counsel regarding his resignation.[26]

16        Plaintiff alleges that defendant Cristina Obieta, Director of Classified Personnel for the

17   District, "appeared" in his office with the requested personnel file, advised Plaintiff that he must

18   accompany the employee during review of the file, and used a "hostile and unprofessional tone"

19   when Plaintiff attempted to discuss the issue after Plaintiff had referred a personnel file review

20

21        [18]  Complaint, pp. 13-14, ¶49.

22        [19]  Complaint, p. 4, ¶17.

23        [20]  Complaint, p. 5, ¶21.

24        [21]  Complaint, pp. 7-8, ¶31.

25        [22]  Complaint, p. 11, ¶42.

26        [23]  Complaint, p. 16, ¶56.

27        [24]  Complaint, p. 17, ¶59.

28        [25]  Complaint, p. 19, ¶63.

          [26]  Complaint, pp. 19-20, ¶¶63-66.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1 request to defendant Richard Dodson.[27] Plaintiff further alleges that Ms. Obieta was hired as

2 Director of Classified Personnel, but "lacked appropriate training and experience."[28] Finally,

3 Plaintiff alleges that he left a voicemail message for Ms. Obieta, informing her that he was ill and

4 would notify her on Monday, July 17, 2007 whether he intended to tender his resignation, after

5 which Ms. Obieta left a voicemail message in response telling Plaintiff he needed a doctor's note and

6 telling him that "You've also told a number of people that you are resigning, um, so, you can also

7 go ahead and bring in your letter of resignation tomorrow."[29]

8    Plaintiff alleges that defendant Lisa Udell, Assistant Superintendent of Human Resources,

9 granted another employee an extension of a deadline and authorized overtime to perform step

10 increase determinations for that employee.[30] Plaintiff further alleges that Ms. Udell "possessed

11 apparent supervisory authority over employees in the BUSD Human Resources Department" but

12 "was untrained and relied on [Plaintiff] to advise her and perform duties of her position while she

13 learned it."[31] Finally, Plaintiff alleges that Ms. Udell called a meeting, at which she "directed staff

14 . . . to ignore legal violations by the District," and "reacted to [Plaintiff's] questioning of her

15 directive" with hostility, and told him "that she 'knows we are breaking the law' but that her

16 directive was consistent with BUSD policy . . . ."[32]

17                                  **IV.  Argument**

18 A.    **Plaintiff's first cause of action for Tortious Wrongful Discharge in Violation of**
          **Fundamental Public Policy must be dismissed because a public entity cannot be**
19        **held liable for such a claim as a matter of law.**

20    A public entity has *no* liability for any injury as a matter of law unless provided by statute.

21 (See Government Code §815; *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630-

22 631; *Hoff v. Vacaville Unified School District* (1998) 19 Cal.4th 925; *County of Sacramento v.*

23

24    [27] Complaint, p. 12, ¶45.

25    [28] Complaint, p. 17, ¶58.

26    [29] Complaint, p. 18, ¶¶60-61.

27    [30] Complaint, p. 15, ¶54.

28    [31] Complaint, p. 17, ¶58.

     [32] Complaint, p. 17, ¶59.

1   *Superior Court* (1972) 8 Cal.3d 479, 481 ["'In the absence of a constitutional requirement, public

2   entities may be held liable only if a statute . . . is found declaring them to be liable.'"].)  In

3   California, "all government tort liability must be based on statute [citation]." (*Lopez v. Southern*

4   *Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 785, fn. 2.)

5       A claim for tortious wrongful discharge in violation of public policy is a common law,

6   judicially-created tort and *cannot* be stated against a public entity:

7       Because the "classic Tameny cause of action" is a common law, judicially created
      tort (*Tameny v. Atlantic Richfield Co., supra,* 27 Cal.3d 167 at pp. 176-178 . . .; see
8       *Stevenson, supra,* 16 Cal.4th at pp. 906-908 . . .) and not authorized by statute, it is
      not properly asserted against the [public entity]. *Palmer v. Regents of the University*
9       *of California* (2003) 107 Cal.App.4th 899, 909; see also *Tameny v. Atlantic Richfield*
      *Co.* (1980) 27 Cal.3d 167, 176-178; *Stevenson v. Superior Court* (1997) 16 Cal.4th
10       880, 906-908.

11       Thus, Defendant's Demurrer to Plaintiff's first cause of action for Tortious Wrongful

12   Discharge in Violation of Public Policy must be sustained without leave to amend because this cause

13   of action cannot be rehabilitated.

14   **B.**   **Plaintiff's Second and Third Causes of Action for Breach of Contract and**
      **Breach of the Implied Covenant of Good Faith and Fair Dealing must be**
15       **dismissed because Plaintiff cannot state such a cause of action as a matter of law.**

16       It is well-settled that public employment in California is held not *by statute*, rather than by

17   contract. (See *Miller v. State of California* (1977) 18 Cal.3d 808, 813; see also *Kim v. The Regents*

18   *of the University of California* (2000) 80 Cal.App.4th 160, 164.) The terms of a public employee's

19   employment are established by *law*, not by contract, and the employee's remedies, if any, are

20   confined to those provided by statute. (See *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684,

21   1692.) A public employee may not state a claim for breach of contract *or* for breach of the implied

22   covenant of good faith and fair dealing against an employer. (See *Shoemaker v. Meyers* (1990) 52

23   Cal.3d 1, 23-24 [civil service public employees cannot state a cause of action for breach of contract

24   or breach of the implied covenant of good faith and fair dealing]; *Hill, supra,* 33 Cal.App.4th at p.

25   1690 [applying the same principle to civil service and noncivil service public employees alike].)

26       As an employee of the Berkeley Unified School District, Plaintiff was a public employee.

27   Because public employment is held by statute, not by contract, Plaintiff is precluded as a matter of

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

---

1  law from stating a claim for breach of contract or for breach of the implied covenant of good faith

2  and fair dealing against Defendant.  Such claims must thus be dismissed.

3  **C.**  **Plaintiff's Fourth Cause of Action for Unlawful Discrimination On the Basis of Sex [Gov. Code § 12900 et seq.] must be dismissed because Plaintiff has not stated a *prima facie* case of discrimination.**

5  To state a *prima facie* claim for discrimination under the FEHA, Plaintiff must show that (1)

6  he was a member of a protected class, (2) he was qualified for the position he sought or was

7  performing competently in the position he held, (3) he suffered an adverse employment action such

8  as termination, demotion, or denial of an available job, and (4) other circumstances that suggest

9  discriminatory motive. *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147.

10  Plaintiff has not plead *any* facts establishing that he suffered an adverse employment action,

11  as required to prove sex discrimination, and he has not alleged *any* facts to show that any of the

12  actions alleged in his Complaint were taken for discriminatory reasons.

13  **1.**  **Plaintiff has not alleged any facts that would show an adverse employment action.**

14  In California, an employee seeking recovery on a theory of unlawful discrimination must

15  plead and prove that he or she has been subjected to an adverse employment action that materially

16  affects the terms, conditions, or privileges of employment.  (See *Yanowitz v. L'Oreal USA, Inc.*

17  (2005) 36 Cal.4th 1028, 1051-1052; see also *Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73

18  F.Supp.2d 1126 [a plaintiff must demonstrate some adverse material effect upon terms or conditions

19  of employment stemming from employer's actions to satisfy adverse action requirement].)  "**A**

20  **change that is merely contrary to the employee's interests or not to the employee's liking is**

21  **insufficient.**" (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455, boldface added.)

22  Plaintiff alleges a litany of complaints against the District, *none* of which describe any actions

23  that materially affected the terms, conditions, or privileges of his employment.  Plaintiff cites

24  occasions when his requests were not granted (without any explanation of why they should have

25  been granted or why the failure to grant the requests was discriminatory) and when certain decisions

26  were made by administration regarding the department (with absolutely no evidence that those

27  decisions were discriminatory in nature).

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    None of the allegations in Plaintiff's Complaint constitute actionable adverse employment

2  action. (See *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1455[mere ostracism in the

3  workplace by supervisors and coworkers is not enough to show an adverse employment action, a

4  required element of a FEHA retaliation claim]; *Thomas v. Department of Corrections* (2000) 77

5  Cal.App.4th 507, 512 [adverse employment action not established by allegations unaccompanied by

6  facts showing substantial and detrimental effect on employment].)

7    Plaintiff cannot establish constructive discharge based on the allegations in his Complaint.
To be deemed a constructive discharge, an employer must create or permit working

8    conditions so intolerable or aggravated that a reasonable person in the employee's
position would feel compelled to resign. *Cloud v. Casey* (1999) 76 Cal.App.4th 895

9    (citing *Turner v. Anheuser-Busch* (1994) 7 Cal.4t5h 1238, 1247.

10    Criticism of job performance and inadequate compensation, even including demotion or

11  reduction of pay, are not grounds for constructive discharge. (See *Rochlis v. Walt Disney Co.* (1993)

12  19 Cal.App.4th 201; see also *Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452

13  [employees who claimed they were forced to resign after disclosing fraudulent business practices to

14  their superiors failed to present sufficient evidence of intolerable working conditions to establish

15  constructive discharge].)

16    An employee cannot simply quit and then sue. (See *Turner, supra,* 7 Cal.4th 1238 ["an

17  employee is not permitted to quit and sue simply because he or she does not like a new job

18  assignment."].)  It is *Plaintiff's* burden to show that he was subjected to an adverse employment

19  action. (*Guz v. Bechtel Nat'l, Inc.* (2000) Cal.4th 317, 355.)  Because Plaintiff has not done so, he

20  cannot state a cause of action for Sex Discrimination under the FEHA.

21  **2.    Plaintiff has not alleged any facts that show intentional discrimination.**

22    "Disparate Treatment" is intentional discrimination against one or more persons on

23  prohibited grounds. (*International Brotherhood of Teamsters v. United States* (1977) 431 U.S. 324,

24  335-336 [disparate treatment is treating similarly situated individuals differently in their employment

25  because of a protected characteristic].) In a disparate treatment case, the plaintiff must plead and

26  prove that ***intentional discrimination was the "determinative factor"*** in the adverse employment

27  action. (*Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604, 610 [Whatever the employer's decision

28

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED
SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

1  making process, a disparate treatment claim cannot succeed unless the employee's protected trait had

2  a determinative influence on the outcome].)

3      Plaintiff has failed to plead any facts establishing that her gender (male) was a determinative

4  factor in Defendants' actions toward her. The only allusion to Plaintiff's gender in the entire

5  complaint is the statement that he is male. That, without more, is not enough to establish a claim

6  of sex discrimination. (*Watson v. Southeastern Pa. Transp. Auth.* (3rd Cir. 2000) 207 F.3d 207, 211

7  [it is not enough for plaintiff to show merely that discrimination is a motivating factor in the adverse

8  employment action, it must be shown to be the determinative factor]; *Raytheon Co. v. Hernandez*

9  (2003) 540 U.S. 44, 52 [liability in disparate treatment case depends on whether protected trait

10  actually motivated employer's decision].)

11      The allegations throughout Plaintiff's complaint have no connection to Plaintiff's gender.

12  The District's demurrer must therefore be sustained.

**D.    Plaintiff's Fifth Cause of Action for Intentional Infliction of Emotional Distress must be dismissed because Plaintiff has failed to plead a statutory basis or allege sufficient facts to state a *prima facie* case and because such claim is preempted by the Worker's Compensation Act.**

**1.    Plaintiff has failed to plead a statutory basis for a claim of intentional infliction of emotional distress.**

17      Government Code §815 provides that "Except as otherwise provided by statute: . . . A public

18  entity is not liable for an injury, whether such injury arises out of an act or omission of the public

19  entity or a public employee or any other person." Plaintiff fails to plead any statutory violation as

20  is required to establish liability against a public entity, and his fifth cause of action must thus be

21  dismissed.

**2.    Plaintiff has failed to allege sufficient facts to state a prima facie case of intentional infliction of emotional distress.**

    Further, Plaintiff fails to allege sufficient facts to state a cause of action for intentional

infliction of emotional distress. To state such a claim, Plaintiff must allege *facts* to support the

following elements: (1) "outrageous" conduct; (2) that the District intended to cause (or recklessly

disregarded the probability of causing) Plaintiff emotional distress; (3) that Plaintiff suffered severe

emotional distress; and (4) an actual and proximate causal link between the "outrageous" conduct

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE (916) 921-5800 / FACSIMILE (916) 921-0247

1  and the severe emotional distress. (See *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d

2  148, 155, fn. 7; *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 300.

3  "Outrageous" conduct sufficient to state a claim for intentional infliction of emotional

4  distress "'. . . must be so extreme that it exceeds all bounds of that usually tolerated in a civilized

5  community.' [Citation.]" (*Nally, supra,* 47 Cal.3d at p. 300; see also *Angie M. v. Superior Court*

6  (1995) 37 Cal.App.4th 1217, 1225-1226.)  Allegations of personnel management decisions are

7  insufficient to support a claim of intentional infliction of emotional distress, even where they are

8  alleged to be improperly motivated. (See *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th

9  55, 80.)

> Managing personnel is not outrageous conduct beyond the bounds of human decency,
> but rather conduct essential to the welfare and prosperity of society.  A simple
> pleading of personnel management activity is insufficient to support a claim of
> intentional infliction of emotional distress, even if improper motivation is alleged.
> If personnel management decisions are improperly motivated, the remedy is a suit
> against the employer for discrimination. (*Id.* at p. 80.)

14  "Ordinarily mere insulting language, without more, does not constitute outrageous conduct."

15  (*Cole, supra,* 43 Cal.3d at p. 155, n. 7.)  Even conduct such as screaming and yelling by a supervisor

16  in the process of criticizing an employee's performance, threatening to throw an employee out of the

17  department, and making threatening gestures toward an employee have been held insufficient to

18  constitute outrageous conduct as a matter of law. (*Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d

19  986, 992-993.)  "While such incidents may show rudeness and insensitivity, they do not amount to

20  outrageous conduct." (*Id.* at p. 992.)  Plaintiff fails to plead any facts or to properly allege any

21  conduct that would constitute outrageous conduct by anyone.

22  Plaintiff also fails to plead any facts to establish that anyone intended to cause him emotional

23  distress.  The *only* facts alleged in the Complaint are set forth above and none show that anyone

24  intended to cause Plaintiff emotional distress.

25  Further, Plaintiff fails to allege facts to show that he suffered severe emotional distress that

26  rose to the level required to state a claim for intentional infliction of emotional distress.  Severe

27  emotional distress is "'. . . emotional distress of such substantial quantity or enduring quality that no

28  reasonable man in a civilized society should be expected to endure it." (*Fletcher v. Western Life*

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  *Insurance Co.* (1970) 10 Cal.App.3d 376, 397.) The Complaint fails to allege that Plaintiff suffered
2  any emotional distress as a result of any act or omission on the part of the District.

3  Because Plaintiff's complaint fails to state a statutory basis to establish liability against the
4  District and because the complaint fails to plead any facts or to allege any conduct meeting the
5  pleading requirements for such a claim, his fifth cause of action for intentional infliction of
6  emotional distress must be dismissed against the District.

7
8  **2.    Plaintiff's cause of action for intentional infliction of emotional distress is preempted by the Worker's Compensation Act.**

9  The California Workers' Compensation Act provides the "sole and exclusive remedy" for
10  personal injuries "arising out of and in the course of employment." (See California Labor Code
11  §§3600-3602, 5300; see also *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 18; *Gibbs v. American*
12  *Airlines, Inc.* (1999) 74 Cal.App.4th 1 [exclusive remedy provision barred employee's cause of
13  action against employer for emotional distress where injury arose in course of her employment and
14  was caused by her employment].)  This includes injuries, including emotional distress, allegedly
15  caused by an employer's conduct in employment actions involving termination, promotions,
16  demotions, criticism of work, grievances, etc.  (See *Shoemaker, supra,* 52 Cal.3d at p. 20; *Charles*
17  *J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 814-815; *Cole v. Fair Oaks*
18  *Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.)  Allegations that an employer's conduct was
19  intentional, malicious, or outrageous are *insufficient* to permit a civil action outside of the workers'
20  compensation system. (See *Cole, supra,* 43 Cal.3d at p. 160; *Shoemaker, supra,* 52 Cal.3d at p. 25.)

21  Plaintiff's entire complaint is centered around alleged wrongful acts *in employment*.  Because
22  Plaintiff's alleged emotional injuries arose in the course of Plaintiff's employment, his fifth cause
23  of action for intentional infliction of emotional distress is barred by the exclusive remedy provision
24  of the Worker's Compensation Law and must be dismissed against the District.

25
26  **E.    Defendant is immune from liability because the action arises out of discretionary acts and decisions of District employees.**

27  Under Government Code Section 820.2, "[e]xcept as otherwise provided by statute, a public
28  employee is not liable for an injury resulting from his act or omission where the act or omission was

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

1    the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

2    This immunity is extended to the public entity that employs the public employee (i.e., the District)

3    by Government Code section 815.2(b), which provides that " . . . a public entity is not liable for an

4    injury resulting from an act or omission of an employee of the public entity where the employee is

5    immune from liability."

6         Immunity under section 820.2 applies to actions taken by employees of school districts in

7    connection with the employment of academic or administrative personnel. See *Caldwell v. Montoya*

8    (1995) 10 Cal.4th 972, 979; see also *Tietz v. Los Angeles Unified School District* (1965) 238

9    Cal.App.2d 905 [immunity applied to school principal and vice principal for acts taken in connection

10   with employment of tenured teacher and librarian]; *Hardy v. Vial* (1957) 48 Cal.2d 577 [immunity

11   applied to college employees and employees of the Department of Education for acts taken in

12   connection with termination of professor's employment]; *Toney v. State* (1976) 54 Cal.App.3d 779

13   [immunity applied to college administrator for acts taken in connection with disciplinary proceedings

14   against a college professor]; and *Jones v. Oxnard School District* (1969) 270 Cal.App.2d 587

15   [immunity applied to employees of school district for acts taken in connection with refusal to hire

16   applicant for employment].

17        Because the individual employees would be entitled to immunity for their alleged actions

18   under Government Code §820.2, the District is entitled to immunity from liability for all such actions

19   pursuant to Government Code §815.2(b) and Petitioner's second, third, fourth, and fifth causes of

20   action must be dismissed.

21                          **V.  Conclusion**

22        For the foregoing reasons, the District respectfully requests that the Court sustain its demurrer

23   to Plaintiff's entire Complaint.

24   Date:    August 27, 2007                    JOHNSON SCHACHTER & LEWIS
                                                 A Professional Law Corporation

25

26

27                                              KELLIE M. MURPHY
                                                Attorneys  for  Defendant  BERKELEY  UNIFIED
28                                              SCHOOL DISTRICT

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# PROOF OF SERVICE

**CASE NAME:**     **Faurie v. Berkeley Unified School District, et al.**
**CASE NO.:**          **RG 07334590**

I am employed in the County of Sacramento. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite 560, Sacramento, CA 95815.

I am familiar with this office's practice whereby the mail is sealed, given the appropriate postage and placed in a designated mail collection area. Each day's mail is collected and deposited in a United States mailbox after the close of each day's business.

On August 27, 2007, I served the following: **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES OR, ALTERNATIVELY, MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES**

X        United States Mail - on all parties in said action by placing a true copy of the above-described document(s) enclosed in a sealed envelope in the designated area for outgoing mail addressed as set forth below.

___     By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number a true copy of the above-described document(s).

___     Federal Express - on all parties in said action by placing a true copy of the above-described document(s) in an authorized area for pick-up by an authorized express service courier the same day it is collected and processed in the ordinary course of business as set forth below.

___     Personal Service - By personally delivering or causing to be delivered a true copy of the above-described document to the person(s) and at the address(es) set forth as shown below.

Eric Borgerson, Esq.
LAW OFFICE OF ERIC BORGERSON
2625 School Street
Oakland, CA 94602

___     FEDERAL: I declare that I am employed in the office of a member of the bar of this Court at whose direction service was made.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 27, 2007, at Sacramento, California.

Carolyn A. Apodaca

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

13

# Exhibit D

1   ERIC BORGERSON (State Bar No. 177943)
    LAW OFFICE OF ERIC BORGERSON
2   2625 School Street
    Oakland, CA  94602
3   Telephone:      (510) 866-3738
    Facsimile:      (510) 535-9898
4
    Attorney for Plaintiff
5   GENE FAURIE, JR.

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10

11  GENE FAURIE, JR.,                        CASE NO.  RG 07334590

12              Plaintiff,

13       vs.                                 ASSIGNED For All Purposes To
                                             Judge Cecilia P. Castellanos,
14  The BERKELEY UNIFIED SCHOOL              DEPARTMENT 18
    DISTRICT; MICHELLE LAWRENCE,
15  individually and in her official capacity as   **PLAINTIFF'S OPPOSITION TO**
    BUSD Superintendent; LISA UDELL,         **DEFENDANT MICHELE LAWRENCE'S**
16  individually and in her official capacity as   **DEMURRER**
    BUSD Assistant Superintendent, Human
17  Resources; CRISTINA OBIETA,              Date:   November 16, 2007
    individually and in her official capacity as   Time:  1:30 p.m.
18  BUSD Director, Classified Personnel;     Dept:   18
    RICHARD DODSON, in his official
19  capacity as BUSD Director, Labor
    Relations; TINA BRIER, individually and   Reservation No. R-747071
20  in her official capacity as BUSD Director,
    Classified Personnel,
21
                Defendants.
22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

3

I. INTRODUCTION……………………………………………………………………..1

4

II.    STANDARDS OF REVIEW…………………………………………………………...1

5

III.  FACTS ………………………………………………………………………………...2

6

III.  ARGUMENT…………………………………………………………………………5

7

A.    Ms. Lawrence Can Be Held Liable For Tortious Wrongful Discharge In Violation of
        Fundamental Public Policy To The Same Extent As A Private Citizen and Because
        She Had Authority to Affect Plaintiff's Employment........................................................ 5

8

9

B.    The Complaint Adequately Alleges That Lawrence Was Contractually Prohibited
        From Discharging Plaintiff Except for Just Cause..……………………………………...6

10

C.    Plaintiff Has Stated a *Prima Facie* Case Under the FEHA Against Lawrence
        Individually For Harassment and Retaliation and In Her Official Capacity For
        Unlawful Disparate Treatment…………………………………………………………..9

11

12

        1.        Plaintiff Has Met His Burden of Production, Defeating the Demurrer…………...10

13

        2.        Lawrence Can Be Held Individually Liable For Harassment and Retaliation……12

14

D.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted
        By Statute and Is Not Preempted by the Workers Compensation Act…………………12

15

16

E.    Lawrence's Unlawful Conduct Does Not Fall Within Her Official
        Discretion and Is Not Subject to a Defense of Immunity……………………………...15

17

18

IV. CONCLUSION……………………………………………………………………15

19

20

21

22

23

24

25

26

27

28

i

1

**TABLE OF AUTHORITIES**

2

**STATE CASES**

3

*Alcorn v. Anbro* (1970) 2 Cal.3d 493 ...................................................................2, 13

4

*Astenius v. State* (2005) 126 Cal.App.4th 465 ............................................................ 1

5

*Blom v. N.G.D. Spark Plugs* (1992) 3 Cal.App.4th 382 ............................................ 12

*Boren v. State Personnel Board* (1951) 37 Cal.2d 634 ............................................... 7

6

*Branick v. Downey Sav. And Loan Ass'n* (2005) 24 Cal.Rptr.3d 406 .......................... 2

7

*Caldwell v. Montoya* (1995) 10 Cal.4th 972 .......................................................2, 7, 15

8

*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189 .................. 11

*Charles Vacanti, M.D. Inc. v. State Compensation Insurance Fund* (2001) 24
    Cal.4th 800 ........................................................................................................... 14

9

*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 ................................... 14

10

*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 ................................ 13

11

*Crisci v. Security Ins. Co.* (date) 66 Cal.2d 425 ...................................................... 14

12

*Cundiff v. GTE California, Inc.* (2002) 101 Cal.App.4th 1395 ................................... 1

13

*Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376 .......................7, 14

*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 ...............................5, 6, 7, 8, 9

14

*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 .....................................1, 2

15

*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951 .......................... 8

16

*Gannt v. Sentry Insurance* (1992) 1 Cal.4th 1083 ...............................................5, 14

*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218 ............................................ 1

17

*Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1 ...................................... 14

18

*Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317 .................................................... 10

19

*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684 ............................................ 8

*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925 ...............................5, 13

20

*Ibarbia v. Regents of the University of California* (1987) 191 Cal.App. 3d 1318 ...... 10

21

*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 .................................. 15

22

*Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225 ................................... 1

*Kern v. City of Long Beach* (1947) 29 Cal.2d 848 ..................................................6, 7

23

*Khajavi v. Feather River Anesthesia Med. Group* (2000) 84 Cal.App.4th 32 ............. 6

24

*Kim v. Regents of the University of California* (2000) 80 Cal.App.4th 160 .............6, 7

25

*Kiseskey v. Carpenters' Trust for Southern California* (1983) 144 Cal.App.3d 222 ... 14

*Lane v. IUOE Stationary Engineers* (1989) 212 Cal.App.3d 164, review denied
    (Sept. 28, 1989) ..................................................................................................... 1

26

*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494 ................................................... 1

27

*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744 ................................................ 14

28

-ii-

1  *Lord v. Garland* (1946) 27 Cal.2d 840 ................................................................. 1

2  *Miller v. State of California* (1977) 18 Cal.3d 808 ........................................ 6, 7, 8

3  *Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303 ............................ 7, 8

   *Nally v. Grace Community Church* (1988) 47 Cal.3d 278 .................................... 13

4  *Oppenheimer v. Robinson* (1957) 150 Cal.App.2d 420 ......................................... 8

5  *Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452 ...... 8, 9

   *Page v. The Superior Court of Sacramento County* (1995) 31 Cal. App. 4th 1206 ........ 12

6  *Reno v. Baird* (1998) 18 Cal.4th 640 ...................................................... 6, 12, 15

7  *Riechert v. General Ins. Co. of America* (1968) 68 Cal.2d 822 ............................. 1

8  *Rojo v. Kliger* (1990) 52 Cal.3d 65 .................................................................. 5, 6

   *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316 ............................... 1

9  *Shoemaker v. Meyers* (1990) 52 Cal.3d 1 ...................................................... 8, 14

10 *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147 ........................ 10, 11

11 *Societa per Azioni de Navigazione Italia v. City of Lost Angeles* (1982) 31 Cal.3d
       446 ............................................................................................................ 5

12 *State ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App4th 225 ................ 1

13 *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 ................................... 5, 14

   *Taylor v. City of Los Angeles* (2006) 144 Cal.App4th 1216 ................................ 15

14 *Thomas v. Dept. of Corrections* (2000) 77 Cal.App.4th 507 ............................... 12

15 *Tietz v. Los Angeles Unified School District* (1965) 238 Cal.App.2d 905 ............... 15

16 *Warren v. Atchison, Topeka & Santa Fe Ry. Co.* (1971) 19 Cal.App.3d 24 ............. 1

   *Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50 ............................... 1, 8, 9

17 *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 ..................................... 11

18                              **FEDERAL CASES**

19 *Calero v. Unisys Corp.* (2003) 271 F.Supp.2d 1172 ........................................ 14

   *Furnco Construction Corp. v. Waters* (1978) 438 U.S. 567 ............................ 10, 11

20 *Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604 ........................................... 11

21 *McDonnel Douglas Corp. v. Green* (1973) 411 U.S. 792 .................................... 10

22 *Raytheon Co. v. Hernandez* (2003) 540 U.S. 44 ............................................. 11

   *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986 ....................................... 13

23 *Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73 F.Supp.2d 1126 ............ 11, 12

24 *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502 ..................................... 10

25 *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248 ........................ 10

   *Watson v. Southeastern PA Transportation Authority* (3d Cir. 2000) 207 F.3d 207 ......... 11

26 *Winarto v. Toshiba* (9th Cir. 2001) 274 F.3d 1276 .......................................... 12

27                             **STATE STATUTES**

28 Ed. Code § 35035 .................................................................................... 2

-iii-

1

2

3

4

Gov. Code § 12940, subd. (h)(1) .............................................................. 12

Gov. Code § 12940, subd. (h)(3)(A) .......................................................... 12

Gov. Code § 815.2, subd. (a) ...................................................................... 5

Gov. Code § 820, subd. (a) ................................................................... 5, 13

**TREATISES**

Rest.2d Torts § 46, com. j ......................................................................... 14

Witkin Cal. Proc. (4th Ed.) Pleading § 907……………………………………….. 1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iv-

1

## I.    INTRODUCTION

2          Plaintiff Gene Faurie, Jr. ("Plaintiff" or "Mr. Faurie") respectfully submits this

3  memorandum of points and authorities in opposition to the demurrer filed by Defendant Michele

4  Lawrence ("Lawrence").

5

## II.    STANDARDS OF REVIEW

6          A demurrer is used to determine whether a complaint, standing alone, adequately alleges a

7  cause of action against the defendant.  (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218,

8  1223; *Lane v. IUOE Stationary Engineers* (1989) 212 Cal.App.3d 164, review denied (Sept. 28,

9  1989).)  It tests the sufficiency of the pleading as a matter of law.  (*Cundiff v. GTE California,*

10  *Inc.* (2002) 101 Cal.App.4th 1395, 1404.)  Where, as here, a defendant demurs to the *entire*

11  *pleading*[1], the demurrer must be overruled if *any* of the causes of action are valid, even if a

12  demurrer might properly have been sustained as to one or more of the causes of action.  (*Warren*

13  *v. Atchison, Topeka & Santa Fe Ry. Co.* (1971) 19 Cal.App.3d 24, 29, 36; *Riechert v. General*

14  *Ins. Co. of America* (1968) 68 Cal.2d 822, 839; *Lord v. Garland* (1946) 27 Cal.2d 840, 850; 5

15  Witkin Cal. Proc. (4th Ed.) Pleading § 907.)  Indeed, it is error for a trial court to sustain such a

16  general demurrer when the plaintiff has stated a cause of action under *any possible* legal theory.

17  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 ("*Fox*"); *State ex rel. Bowen v. Bank of*

18  *America Corp.* (2005) 126 Cal.App4th 225.)

19          In testing the sufficiency of the complaint, a demurrer admits all facts properly pleaded no

20  matter how unlikely or improbable. (*Astenius v. State* (2005) 126 Cal.App.4th 465 ("*Astenius*");

21  *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 321-322; *Kerivan v. Title Ins. &*

22  *Trust Co.* (1983) 147 Cal.App.3d 225.)  The demurrer also admits all facts that may be implied or

23  inferred from those expressly alleged.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501

24  ("*Lazar*".)  The factual allegations of the complaint are to be liberally construed with a view to

25  substantial justice between the parties.  (*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50,

26  59 ("*Wise*").)  Objections that a complaint is ambiguous or uncertain, or that essential facts appear

27  _____

[1] See Defendant's Notice of Demurrer, p. 1: "Defendant…hereby does move the Court for an
order sustaining her *demurrer to the entire Complaint for Damages*" (emphasis added); See also
28  Demurrer, pp. 1-3, demurring generally on immunity grounds.

1    only inferentially or as conclusions of law, or by way of recitals, cannot be reached on general

2    demurrer.  (*Branick v. Downey Sav. And Loan Ass'n* (2005) 24 cal.Rptr.3d 406.)  The demurrer is

3    not concerned with the likelihood the Plaintiff may prevail on the merits, nor whether the Plaintiff

4    has evidence to support his allegations.  (*Alcorn v. Anbro* (1970) 2 Cal.3d 493, 496.)

5        It is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff

6    demonstrates there is a reasonable possibility that a defect in the pleading can be cured by

7    amendment.  (*Fox*, *supra*.)

### III.  FACTS[2]

9        Plaintiff was employed by the Berkeley Unified School District ("BUSD") Human

10   Resources ("H.R.") Department in the position of Administrative Coordinator – Confidential until

11   the date of his constructive discharge on or about July 17, 2006.  (Cmplt. ¶¶ 4, 17.)  Lawrence

12   was employed by BUSD in the position of Superintendent. (*Id.* ¶ 6.)[3]  Each of the Defendants

13   acted as the agents of Lawrence and each other at all material times.  (Cmplt. ¶ 11.)[4]  Plaintiff was

14   subordinate in rank to each and every Defendant and, at all material times, reported to each of

15   them (whether directly or through an intermediate Defendant(s)).  (Cmplt. ¶ 58.)  At all times, as

16   with each of the Defendants, Plaintiff ultimately reported to Lawrence.  (Cmplt. ¶ 27.)

17       Throughout his tenure at BUSD, Mr. Faurie was ranked in the highest category of each of

18   his performance evaluations.  Plaintiff's performance evaluations also demonstrated that he

19   worked above his assigned classification, which Plaintiff is informed and believes has been

20   confirmed by a classification study performed during and after his employment.  (*Id.* ¶ 57.)

21       Throughout the course of Plaintiff's employment, Lawrence, Brier, and, upon their

22   appointments, Dodson, Udell , and Obieta, regularly ordered Plaintiff to engage in or ignore

23   _____

24   [2] Detailed factual allegations are set forth in Plaintiff's Complaint ("Cmplt"). The following is a
     brief map to those detailed allegations, which are incorporated herein by reference.

25   [3] By reasonable (in fact, unavoidable) inference, this means that Lawrence was "the district's
     foremost appointed official, with primary responsibility for representing, guiding, and
     administering [the district]" pursuant to policy established by the BUSD Board of Directors.

26   (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983, citing Ed. Code Sec. 35035.)

27   [4] By reasonable inference from the plain meaning of their official titles, Defendants Tina Brier
     (Director, Classified Personnel), Richard Dodson (Director, Labor Relations), Lisa Udell
     (Assistant Superintendent, Human Resources), and Cristina Obieta (Director, Classified

28   Personnel), reported to Lawrence and were required to implement her administrative directives.

1  unlawful acts and practices within the H.R. Department, subjected Plaintiff to a retaliatory, hostile

2  environment, with Lawrence's knowledge and approval, when he questioned, objected to, or

3  refused to implement, such unlawful directives and/or policies and practices. (Cmplt. ¶¶ 16, 17.)

4  The unlawful activities that Mr. Faurie reported and resisted included:

5      (1) Discrimination based on employees' sex. (Cmplt ¶¶ 18, 19, 28-40, 54, 58, 62.)

6      (2) Lawrence's pattern and practice of hiring employees without statutorily required
          fingerprint clearances and of hiring and retaining employees with criminal records of
7         prohibited offenses who lied about their records of convictions for fraud-related offenses
          during and after the hiring process (Cmplt ¶¶ 41, 42);

8      (3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the
          (statutorily and Constitutionally protected) privacy of employee personnel files (*Id*. ¶ 43);

9
10     (4) The H.R. Department's failure to notify the Department of Justice upon the termination of
          employment of various individuals, which failure resulted in the District continuing to
          receive subsequent arrest reports it was statutorily prohibited from obtaining (*Id*. ¶ 43);

11     (5) Condescension and hostility by Defendant Dodson, under Lawrence's direction, when
          Plaintiff confronted him regarding an unlawful practice of allowing an individual under
12        criminal investigation to view an employee's personnel file without supervision (*Id*. ¶ 44);

13     (6) Failure by the District to obtain "livescan" digital fingerprint records of current employees
          as required by law. (*Id*. ¶ 46.)

14     (7) Failure by Defendants to follow procedures mandated by statute and regulation for
          enrolling newly appointed employees in the California Public Employee Retirement
15        System ("CalPERS") (*Id*. ¶ 49) and unlawful transfer of passwords to individuals who
          were not authorized to access the CalPERS system through the Internet. (*Ibid*.)¶

16
17     (8) The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with
          predetermined outcomes, and Defendants' improper performance of multiple roles within
          the disciplinary process, in violation of employees' rights to procedural due process and
18        orderly application of the Merit System Rules. (*Id*. ¶ 55, 56.)

19     (9) The District's failure to adhere to the federal No Child Left Behind Act testing
          requirements (*Id*. ¶ 59);

20     (10) Unlawful forced early retirement of several employees based on improper District
          actions. (*Ibid*.)

21      Plaintiff repeatedly attempted to address these unlawful practices in the H.R. Department

22 but Defendants, with Lawrence's knowledge and approval, reacted with hostility and

23 admonishments to be silent. Plaintiff therefore submitted telephonic complaints and inquiries to

24 the State of California Department of Justice ("DOJ"), County Office of Education, and CalPERS

25 regarding the ignored and uncorrected violations. (Cmplt. ¶¶ 21, 47) A DOJ representative

26 informed Mr. Faurie that an individual hired by Lawrence should not be working for the District

27 due to her record of prohibited criminal offenses. Twice when Plaintiff informed Brier of this

28

- 3 -

1   legal violation he was told the Superintendent was aware of it and to "drop the issue."  During the

2   period between May 2005 and July 2006, pursuant to directives by Lawrence to ignore the legal

3   violations, Defendants rebuffed with increasing hostility all Plaintiff's attempts to address this

4   issue and the larger unlawful BUSD practice it represented.  (Cmplt. ¶¶ 21, 22, 48, 55, 56.)

5          Defendants, and each of them, including Lawrence, engaged in a pattern and practice of

6   discrimination within the H.R. Department on the basis of sex by applying different standards to

7   women than to men, including Plaintiff, with regard to working out of classification, granting of

8   differential pay, responses to filing of workers' compensation claims, granting of requests for

9   vacation leave, and quantity of work assigned.  This pattern and practice of discrimination

10  occurred on a continuing basis through July 17, 2006.   Mr. Faurie also was subjected to a hostile

11  working environment because of his sex, on a continuing basis through July 17, 2006, and to

12  retaliation for his identification of unlawful discrimination based on sex in the H.R. Department.

13  (Cmplt. ¶¶ 18, 19, 28-40, 53, 54, 58, 62)  Each and every of four males hired during Mr. Faurie's

14  nearly four years of employment with BUSD left the H.R. Department due to a hostile

15  environment based on sex, without notice; no female employee submitted such abrupt

16  resignations due to hostile and unlawful working conditions.  (Cmplt. ¶¶ 36-40.)

17         As part of that pattern and practice, Brier, Dodson, Udell, and Obieta, with Lawrence's

18  knowledge and approval, regularly required Plaintiff to work out of his job classification by

19  performing the duties of the Director of Classified Personnel without appropriate differential pay.

20  Defendants summarily and unjustifiably denied multiple requests by Mr. Faurie to reclassify his

21  position appropriately to realistically encompass the duties he was required to perform and

22  admonished him to refrain from asserting his rights and remain silent.  (Cmplt. ¶¶ 19, 28-34, 58.)

23         At a BUSD H.R. staff meeting on July 11, 2006, Udell, stated she knowingly was ordering

24  Mr. Faurie and other staff to engage in violations of the No Child Left Behind Act testing

25  requirements and to implement unlawful forced retirement of BUSD employees, pursuant to

26  Lawrence's directives.  Udell retaliated against Plaintiff for objecting to the unlawful directives

27  by openly insulting and humiliating him in the staff meeting and accusing him of having attitude

28  problems because he objected to the unlawful directives and silencing him. (Cmplt. ¶ 59.)

- 4 -

1   Plaintiff was rendered physically ill and severely emotionally distressed by Udell's

2   offensive and hostile rebuke to his final attempt to raise the issue of BUSD's unlawful policies

3   and practices. (Cmplt. ¶¶ 24, 69-70.)  Consequently, he left the meeting due to emotional and

4   physical injury. (Cmplt. ¶ 60.)  A reasonable person in Mr. Faurie's position would have believed

5   he had no choice left but to resign his position with BUSD due to the hostile environment and

6   continuing course of discriminatory and retaliatory conduct to which he was subjected. (*Id.* ¶¶ 63,

7   64) Consequently, his resignation of employment on July 17, 2006, constituted a constructive

8   discharge.[5]

9                                    **III.  ARGUMENT**

10  **A.    Ms. Lawrence Can Be Held Liable For Tortious Wrongful Discharge In Violation of
           Fundamental Public Policy To The Same Extent As A Private Citizen and Because
11         She Had Authority to Affect Plaintiff's Employment**

12         In California, "the general rule is that an employee of a public entity is liable for his or her

13  torts to the same extent as a private person ([Gov. Code] Sec. 820, subd. (a)), and the public entity

14  is vicariously liable for any injury that its employee causes ([Gov. Code] Sec. 815.2, subd. (a)) to

15  the same extent as a private employer."  (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th

16  925, 932, citing *Societa per Azioni de Navigazione Italia v. City of Lost Angeles* (1982) 31 Cal.3d

17  446, 463.)

18         A terminated employee may sue in tort for a wrongful discharge that violates a

19  fundamental policy enshrined in the state's Constitution or statutes.  (*Foley* v. *Interactive Data*

20  *Corp.* (1988) 47 Cal.3d 654; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172.) Here,

21  Plaintiff has asserted a tortious wrongful discharge cause of action based on violation of (1) the

22  fundamental public policy, embodied in the state's penal statutes, against punishing employees

23  for reporting, resisting, or refusing to implement unlawful directives (see *Gannt v. Sentry*

24  *Insurance* (1992) 1 Cal.4th 1083, 1097; *Tameny*), and (2) the fundamental public policy, set forth

25  in California Article I, § 8, against discrimination based on sex.  (See *Rojo v. Kliger* (1990) 52

26  Cal.3d 65, 90-91.)  Lawrence, as the highest ranking BUSD manager whose directives caused the

27  [5] This fact has been confirmed by an agent of the Employment Development Department who
    approved his claim for unemployment insurance, and has been affirmed on appeal due to the
28  District's failure to controvert it before an EDD administrative law judge. (Cmplt. ¶¶ 24, 68.)

3

1    public policy violation can, unequivocally, be sued on such grounds.[6]

2        *Reno v. Baird* (1998) 18 Cal.4th 640, 663, is inapposite.  The Court in *Reno* articulated the

3    settled rule that a plaintiff cannot predicate a tortious wrongful discharge suit *upon a  policy*

4    *contained in the Fair Employment and Housing Act* ("FEHA") because the FEHA sets forth the

5    exclusive means by which to vindicate the rights created by that statute.  (18 Cal.4th at pp. 663-

6    664.)  The public policies Plaintiff alleges were violated are not contained in the FEHA and,

7    under settled law, clearly support a wrongful discharge claim. (*Foley*, *supra*; *Rojo*, *supra*.) *Reno*

8    does not control and Defendant's demurrer must be overruled.

9    **B.    The Complaint Adequately Alleges That Lawrence Was Contractually Prohibited
         From Discharging Plaintiff Except for Just Cause.**

10       Defendant is partially correct that public employment is a creature of legislative

11   enactment, rather than common law contract.  (See, e.g., *Kim v. Regents of the University of*

12   *California* (2000) 80 Cal.App.4th 160, 164.)  However, that general point does not foreclose

13   Plaintiff's contract-based claims for two reasons.

14       First, it is settled that public employees may possess vested contractual rights additional to

15   those established by statute or ordinance, as long as they do not conflict with a legislative

16   mandate.  Thus, in *Miller v. State of California* (1977) 18 Cal.3d 808, which Defendant cites at

17   page 3 of the Demurrer P.&A., the Supreme Court observed:

18       Although the tenure of a public employee is not *ordinarily* based on contract, it is
19       well established that 'public employment gives rise to certain obligations which
         are protected by the contract clause of the Constitution, including the right to the
20       payment of salary which has been earned.

21   (18 Cal.3d at p. 815, citing *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853, emphasis

22   added.)

23       Defendant implies that the Court in *Miller* held that public employees can possess no

24   contractual rights arising from their employment relationships.  To the contrary, the Court in

25   *Miller* found that a particular public employee had no vested contractual right to continued

26   ───────────────
     [6] Defendant's reliance on *Khajavi v. Feather River Anesthesia Med. Group* (2000) 84 Cal.App.4th
27   32, is misplaced because, there, the defendant had no authority to affect the plaintiff's
     employment.  (*Id*. at p. 52.)  Here, in contrast, Lawrence is the BUSD Superintendent,  Defendant
28   cannot claim in good faith that she lacked the authority to affect Plaintiff's employment, up to and
     including terminating it.

                                    - 6 -

1  employment beyond the *mandatory retirement age established by the Legislature*.  However, the

2  Court further found that the Plaintiff had a *vested contractual right* to his pension benefits,

3  stating:

4      [T]his court has repeatedly held that '[s]ince a pension right is "an integral portion
       of contemplated compensation" [citation] it cannot be destroyed, once it has
5      vested, without impairing a *contractual obligation*.

6  (18 Cal.3d at p. 815, citing *Kern*, *supra*, 29 Cal.2d at p. 853, omission of internal citation in

7  original, emphasis added.)

8      The Court clearly recognized that contractual obligations could exist between the parties,

9  provided they did not *conflict with* a statutory mandate:  "the statutory provisions controlling the

10  terms and conditions of civil service employment cannot be circumvented by purported contracts

11  *in conflict therewith*."  (18 Cal.3d at p. 814, citing *Boren v. State Personnel Board* (1951) 37

12  Cal.2d 634, 641.)[7]

13      Second, one may assert a claim *in tort* based on breach of the implied covenant of good

14  faith and fair dealing, though in so doing a plaintiff's remedy is limited to contractual damages.

15  (*Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303, disapproved on other grounds in

16  *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 984, fn. 6; *Fletcher v. Western Life Insurance Co.*

17  (1970) 10 Cal.App.3d 376, 397.)  In *Mouchette*, the court observed that, while *Foley*, *supra*, 47

18  Cal.3d at p. 700, held that tort remedies are not available for breach of the implied covenant of

19  good faith and fair dealing in the employment context, the *Foley* court "did not eliminate the

20  cause of action but simply limited plaintiffs to contractual remedies for breaches of the implied

21  covenant."  (217 Cal.App.3d at p. 315, citing *Foley* at p. 696.)  The court in *Mouchette* expressly

22  rejected a school district's claim that the plaintiff could not assert a claim of tortious violation of

23  the implied covenant of good faith and fair dealing.

24  _____

25  [7]Indeed, most public employment in California is governed by terms set forth in collectively
    bargained contracts or memoranda of understanding.  Thus, contracts play a very substantial role
26  in defining the terms of employment in California's public sector.  It can hardly be claimed that a
    member of a collective bargaining unit is precluded from taking an alleged contract breach by his
27  or her employer to arbitration pursuant to the terms of a grievance procedure negotiated by the
    employer on grounds that the terms of public employment are set by statute, not contract.  Yet,
28  that is precisely the logical result of Defendant's exaggerated reading of cases like *Miller* and
    *Kim*.

- 7 -

1    Defendant cites *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23-24, for the proposition that

2    "civil service public employees cannot state a cause of action for breach of contract or breach of

3    the implied covenant of good faith and fair dealing." (Demurrer P.&A., p. 4.) That reading is

4    clearly an overstatement, given the Supreme Court's identification of vested contractual rights in

5    *Miller* and its discussion of remedies in *Foley*, as explained in *Mouchette*. Moreover, in

6    *Caldwell*, *supra*, which was decided five years after *Shoemaker*, the Supreme Court expressly

7    discussed *Mouchette* and, while taking issue with its discussion of the precise contours of

8    immunity for discretionary acts, the Court left in tact its discussion of *Foley* and its preservation

9    of tortious implied covenant claims in the employment context. Accordingly, as clearly stated by

10   the Supreme Court in *Miller*, public employees may possess contractual rights so long as they do

11   not conflict with a legislative mandate.[8]

12    The elements of a breach of contract claim are: (1) a contract; (2) plaintiff's performance

13   or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff.

14   *Wise*, *supra*, 223 Cal.App.2d at p. 59; *Otworth v. Southern Pacific Transportation Co.* (1985) 166

15   Cal.App.3d 452, 458-459 ("*Otworth*"). Plaintiff has alleged that his employment was subject to a

16   contractual restriction that it could only be terminated for just cause, that he satisfactorily

17   performed his end of the agreement, and he was constructively discharged without just cause,

18   causing him damages. (Cmplt. ¶¶ 92-97) This is a demurrer proceeding, not a summary judgment

19   hearing. The facts alleged in Plaintiff's Complaint and the facts reasonably inferable from them

20   make clear that Plaintiff was party to an employment agreement with a just cause provision and

21   Lawrence was in an official position charged with fairly implementing the terms of that contract.[9]

22   [8] Similarly, to the extent that Defendant construes *Hill v. City of Long Beach* (1995) 33
     Cal.App.4th 1684, 1691-1693, as precluding any and all contract-based claims or claims of breach
23   of the implied covenant of good faith and fair dealing, the argument lacks merit because *Hill*, so
     read, directly conflicts with the Supreme Court's discussion in *Miller*, *supra*, and with the
24   language in *Foley*, *supra*, discussed in *Mouchette*, *supra*, and left in tact by the Supreme Court in
     *Caldwell*, *supra*.
25   [9] *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955-956, cited by
     Defendant, is wholly inapposite to this case. *Fundin* did not involve an employment contract. It
26   involved an attempt to enforce a contract between the plaintiff and one corporate entity against
     another, non-signatory, corporate entity. Nowhere does *Fundin* discuss the extent to which a
27   supervisory official charged with implementing the terms of an employment contract covering her
     supervisee may be liable for breach of contract.
28    Nor does anything in *Oppenheimer v. Robinson* (1957) 150 Cal.App.2d 420, 424, absolve

1    For purposes of initial pleading burden, that is sufficient.[10]

2         For the foregoing reasons, Plaintiff has validly asserted claims that Defendant breached

3    his employment agreement and violated the implied covenant of good faith and fair dealing by

4    terminating his employment without just cause, harassing and abusing him in retaliation for his

5    reporting, resistance to, and refusal to implement, unlawful directives, and by subjecting him to a

6    hostile work environment based on sex, retaliation for asserting his rights, and because of his

7    identification of and resistance to unlawful directives.  Defendant's demurrer must be overruled.

8    **C.    Plaintiff Has Stated a *Prima Facie* Case Under the FEHA Against Lawrence**
     **Individually For Harassment and Retaliation and In Her Official Capacity For**
9    **Unlawful Disparate Treatment.**

10        Defendant's argument regarding Plaintiff's FEHA claim lacks merit for two reasons.

11   First, Defendant has confused Plaintiff's initial burden of <u>production</u> to plead a *prima facie* case,

12   which Plaintiff has clearly satisfied and which defeats Defendant's demurrer, with Plaintiff's

13   ultimate burden of <u>persuasion</u> at trial, which does not come into play until after Defendant has

14   answered and is not at issue at the demurrer stage.  Second, Defendant can be held individually

15   liable for harassment based on sex and retaliation for Plaintiff's attempt to protect rights under the

16   FEHA, both of which have been amply pled in Plaintiff's Complaint.  Moreover, Defendant can

17   be held liable in her official capacity for discriminatory personnel actions that adversely affected

18   _____

19   Lawrence of liability for her breach of the terms of Plaintiff's employment contract including its
     just cause provision.  Rather, *Oppenheimer* held, inappositely, that a "mere co-employee" who

20   had no duty to pay the plaintiff's wages could not be held liable for a breach of contract claim for
     unpaid wages.  Here, in contrast, it is clear that the terms of Plaintiff's employment include the

21   allocation of substantial authority over Plaintiff to Lawrence, including authority to discipline him
     up to and including discharge.  Lawrence was no "mere co-employee" to Mr. Faurie.  She was the

22   highest ranking supervisor in the administrative hierarchy governing his employment.

     [10] Contrary to Defendant's suggestion, *Wise*, *supra*, 223 Cal.App.2d at p. 59, did not hold that, in

23   order to survive a demurrer, a Plaintiff asserting a contractual cause of action must either quote a
     written contract verbatim or attach it an incorporate it by reference.  Rather, as acknowledged in

24   *Otworth*, *supra*, contracts may be oral and/or written.  (166 Cal.App.3d at pp. 458-459.)  A 'for
     cause' contractual agreement need not be express, but may be implied in fact, arising from the

25   parties' conduct evidencing their actual mutual intent to create such enforceable limitations.  (*Guz
     v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4[th] 317, 336, citing *Foley*, 47 Cal.3d at p. 680.)  Such an

26   implied agreement exists if the parties' conduct has a ""tendency in reason" to demonstrate the
     existence of an actual mutual understanding on particular terms and conditions of employment.

27   (*Ibid*.)  Defendant does not and cannot claim that Plaintiff was an at-will employee.
     The dispositive question is whether under the totality of the circumstances the p arties' conduct,

28   considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract
     limiting the employer's termination rights.  (*Id.* at p. 337, citing *Foley* at p. 681.)

Plaintiff.

### 1. Plaintiff Has Met His Burden of Production, Defeating the Demurrer

It is well settled that, to state a *prima facie* case of discrimination under the FEHA, one must allege facts establishing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was competently performing in the position he occupied; (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance s suggesting a discriminatory motive. (*Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 355; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147; *McDonnel Douglas Corp. v. Green* (1973) 411 U.S. 792.)

The Plaintiff's burden of production at the *prima facie* case stage is "designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled." (*Guz*, *supra*, 24 Cal.4th at p. 354, citing *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253-254; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202.) This requirement is "not onerous." (*Guz*, *supra*, 24 Cal.4th at p. 355.) To meet it, the Plaintiff must "show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." (*Id.*, citing *Ibarbia v. Regents of the University of California* (1987) 191 Cal.App. 3d 1318, 1327-1328 and *Furnco Construction Corp. v. Waters* (1978) 438 U.S. 567, 576, internal quotation marks and ellipses omitted.)

Once the Plaintiff alleges facts supporting the four *prima facie* elements, a rebuttable presumption of unlawful discrimination is created. (*Burdine*, *supra*.) The burden then shifts to the Defendant to attempt to rebut that presumption by articulating some legitimate, non-discriminatory reason for the employer's action. (*McDonnell Douglas*, *supra*; *Burdine*, *supra*; *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502.) The Defendant's opportunity to attempt such a rebuttal is in his, her, or its Answer to the Complaint. If the Defendant's proffered reason successfully rebuts the presumption, Plaintiff then bears the ultimate burden of persuasion at trial to show that the Defendant's proffered explanation for its actions is pretextual. (*Burdine*, *supra*.)

- 10 -

1    Here, Defendant has not yet answered the Complaint.  Instead, she has challenged the

2    sufficiency of the Complaint with a demurrer.  It is axiomatic that, to defeat the demurrer,

3    Plaintiff need only have pled facts supporting a *prima facie* case.  He is not required to anticipate

4    Defendant's attempted rebuttal.  Nor is he required to articulate facts that will support his ultimate

5    burden of persuasion at trial and he is not required at this stage to identify any evidence.  (See

6    *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202 (it is for court to

7    determine as a matter of law whether plaintiff has stated *prima facie* case and, when answering

8    the Complaint, whether defendant has rebutted it.  It is for fact finder to determine whether

9    Plaintiff has met ultimate burden of persuasion); *Furnco*, *supra*, 438 U.S. at p. 576 (same).)[11]

10    Plaintiff has adequately pled that (1)  he is male; (2) he was competently performing the

11    duties of his position; (3) he was subjected to disparate treatment and harassment because of his

12    sex and to retaliation for attempting to protect his rights against such unlawful treatment, so

13    severely and pervasively as to constitute a constructive discharge; and (4) such unlawful disparate

14    treatment and harassment because of sex, as well as retaliation for voicing opposition to it, were

15    part of a pattern and practice within the BUSD H.R. Department, affecting at least three men

16    other than Plaintiff, which gives rise to a reasonable inference that it is more likely than not that a

17    discriminatory intent motivated Defendants, including Lawrence.[12]

18    Discharge from employment, including constructive discharge, more than qualifies as an

19    "adverse action" for *prima facie* case purposes.[13]  Thus, Plaintiff has amply met his burden of

20

21    [11] As this is a demurrer proceeding, Defendant's citation to cases addressing whether the plaintiff
       had met its ultimate burden of persuasion at trial or on appeal from summary judgment
22    adjudications do nothing to advance Defendant's demurrer.  Thus, each of the following cases has
       no bearing on determination of the demurrer:  *Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604,
       610 (addressing ultimate burden of persuasion, not *prima facie* case); *Raytheon Co. v. Hernandez*
23    (2003) 540 U.S. 44, 52 (same); *Watson v. Southeastern PA Transportation Authority* (3d Cir.
       2000) 207 F.3d 207, 211 (same, and from remote jurisdiction); *Slatkin v. University of Redlands*
24    (2001) 88 Cal.App.4th 1147 (appeal from summary judgment on ultimate issue, not *prima facie*
       case.)
25    [12] Plaintiff is not bringing a "pattern and practice" claim, which is generally pursued on behalf of
       a class.  However, the pattern and practice are circumstantial evidence of intent.
26    [13] Indeed, to be "adverse," an employment action need not even be "ultimate," as it was here.
       Any employer misconduct that "materially affects the terms, conditions, or privileges of
27    employment" is sufficiently "adverse" to state an FEHA claim.  (*Yanowitz v. L'Oreal USA, Inc.*
       (2005) 36 Cal.4th 1028, 1051-1052; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441,
28    1455; See also *Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73 F.Supp.2d 1126, 1130

1  production.  Defendant's proper response is an Answer, not a demurrer.

2  **2.  Lawrence Can Be Held Individually Liable For Harassment and Retaliation**

3  It is settled that, the FEHA unambiguously imposing individual liability on supervisors for

4  *harassment* or *retaliation*.  (*Soo*, *supra*, 73 F.Supp.2d at p. 1129, citing *Page v. The Superior*

5  *Court of Sacramento County* (1995) 31 Cal. App. 4th 1206, 1212; *Walrath v. Sprinkel* (2002) 99

6  Cal.App.4th 1237, 1242 (*Reno* does not control retaliation cases).)[14]

7  Plaintiff has alleged at length that he was subjected to a hostile work environment based,

8  *inter alia*, on his sex, and that he was subjected to retaliation for opposing unlawful BUSD H.R.

9  policies and practices, including unlawful discrimination based on sex.  Lawrence was aware of,

10 and approved of or directed the unlawful harassment and/or retaliation.[15]

11 As to Plaintiff's claims that he was subjected to discriminatory personnel actions because

12 of sex implemented by Lawrence in her official capacity, the party effectively sued is BUSD and

13 it can be held liable for Lawrence's unlawful discriminatory conduct.  (See generally, *Reno*,

14 *supra*, *Janken*, *supra*, 46 Cal.App.4th at p. 80.)

15 **D.  Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted By Statute and Is Not Preempted by the Workers Compensation Act.**

16 Defendant's contentions regarding Plaintiff's claims for Intentional Infliction of

17 Emotional Distress ("IIED") lack merit because the Tort Claims Act provides the statutory basis

18 for bringing the claim against Defendant; severe emotional distress can be found where a

19

20 ("*Soo*"), and cases cited therein; *Thomas v. Dept. of Corrections* (2000) 77 Cal.App.4th 507, 512 (adverse action must be employment related).)  Plaintiff has more than satisfied that test.

21 [14] The FEHA prohibits an employer "or any other person" from harassing an employee on a basis prohibited by the act, including sex.  (Gov. Code § 12940, subd. (h)(1).)  Consistently, with

22 regard to harassment, the FEHA defines an "employer" as "any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly...."  (Gov.

23 Code § 12940, subd. (h)(3)(A).)  Thus, individuals, including supervisors, can be held liable for harassment of their subordinates. (*Reno*, *supra*, 18 Cal.4th at p. 646.)  Similarly, it is unlawful for

24 "any employer… *or person* to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by the FEHA]"  (Gov. Code § 12940

25 subd. (h) (emphasis added); *Winarto v. Toshiba* (9th Cir. 2001) 274 F.3d 1276, 1283-1284, fn. 2; See also *Blom v. N.G.D. Spark Plugs* (1992) 3 Cal.App.4th 382 (also violates public policy).)

26 [15] Plaintiff maintains that the foregoing facts are either expressly pleaded in his Complaint or reasonably inferable from facts so expressly pleaded.  Should the Court determine that Plaintiff

27 has failed to sufficiently allege that he was subjected to unlawful harassment based on sex or retaliation for opposing violation of his rights under the FEHA, Plaintiff respectfully requests

28 leave to amend his complaint to clarify those bases for relief.

-12-

1    defendant abuses a relationship of authority with the Plaintiff; and severe emotional distress

2    resulting from conduct that violates public policy, as is alleged in the Complaint, is not subject to

3    worker's compensation exclusivity.

4        In California, an employee of a public entity is liable for his or her torts to the same extent

5    as a private person (Gov. Code Sec. 820, subd. (a); *Hoff*, *supra*, 19 Cal.4[th] at p. 932).[16]  "A prima

6    facie case [of IIED] requires (1) outrageous conduct by the defendant, (2) intention to cause or

7    reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering

8    and (4) actual and proximate causation of the emotional distress." (*Cole v. Fair Oaks Fire*

9    *Protection Dist.* (1987) 43 Cal.3d 148, 155 fn. 7; see also *Nally v. Grace Community Church*

10   (1988) 47 Cal.3d 278, 300.)  Liability is to be based upon "conduct exceeding all bounds usually

11   tolerated by a decent society, of a nature which is especially calculated to cause, and does cause,

12   mental distress."  (43 Cal.3d at p. 155, internal quotations and citations omitted.)

13       Defendant's attempt to trivialize the unlawful, humiliating, hostile and retaliatory

14   treatment to which Plaintiff was subjected ignores the nature of her authoritative relationship with

15   him.  As the California Supreme Court has explained, the outrageousness of alleged conduct

16   depends on its context and the relationship and knowledge of the persons involved:

17           Behavior may be considered outrageous if a defendant (1) abuses a relation or position
             which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is
18           susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably
             with the recognition that the acts are likely to result in illness through mental distress.

19   (*Id.*)  Plaintiff has alleged that he was subjected to a continuing course of hostile, abusive, and

20   humiliating conduct by Defendants, with Lawrence's knowledge and approval, in retaliation for

21   his identifying and resisting unlawful directives.  Defendants' (including Lawrence's) abuse of

22   their supervisorial relationships with Plaintiff was outrageous by any rational sense of decency, as

23   reflected in settled case law.  (See *Alcorn v. Anbro Engineering, Inc.*(1970) 2 Cal.3d 493, 496

24   (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff was

25   outrageous and supported IIED claim).)[17]

26   _____

27   [16] Such liability can be avoided only through defenses available to private individuals or through
     assertion of immunity which, as discussed infra, is not available to the Defendants to this action.
     [17] Unlike in *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 992-993, relied on by

28   Defendant, the retaliatory and abusive conduct to which Plaintiff was subjected did not occur in

13

1    Plaintiff was so disturbed by Defendants' actions, that he was rendered physically ill, was

2    forced to resign his position, and suffered continuing, severe, emotional distress.[18]

3    Worker's compensation exclusivity extends to intentional infliction of emotional distress

4    by an employer's work-related conduct <u>only if the conduct does not contravene public policy</u>.

5    (*Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 10.)  Where, as here, a managerial

6    employee's conduct steps outside her legitimate role as employer, the conduct can give rise to

7    liability. (See generally *Kiseskey v. Carpenters' Trust for Southern California* (1983) 144

8    Cal.App.3d 222, 229, and cases cited therein.) It is settled that certain wrongs lie wholly outside

9    the contemplation of the workers' compensation scheme, such as discharge in contravention of

10    fundamental public policy (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 752, citing *Gannt*,

11    *supra*, and *Tameny*, *supra*;  accord, *Charles Vacanti, M.D. Inc. v. State Compensation Insurance*

12    *Fund* (2001) 24 Cal.4th 800) and conduct that violates the FEHA.  (*Livitsanos*, *supra*, 2 Cal.4th at

13    p. 817; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143.)  "[A]n injury resulting from

14    a wrongful termination in violation of a whistleblower statute 'lies well outside the compensation

15    bargain,' and the exclusive remedy provisions do not apply." (*Moorpark*, *supra*, 18 Cal.4th at p.

16    1152, citing *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23.)

17    Plaintiff has pled causes of action for wrongful termination in violation of fundamental

18    public policy and violation of his rights under the FEHA.  Workers Compensation exclusivity

19    does not apply to injuries, including emotional distress, arising from such conduct.  (See *Calero v.*

20

21    the course of criticizing his job performance.  To the contrary, Plaintiff's job performance was
       consistently exemplary.  Rather, Defendants, with Lawrence's knowledge and approval, inflicted

22    hostile and abusive conduct on Plaintiff in retaliation for his reporting and resistance to unlawful
       directives, in violation of fundamental public policy.  *Schneider* is inapposite.

23    [18] "Severe" means substantial or enduring as distinguished from trivial or transitory.  (*Fletcher v.*
       *Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 ("*Fletcher*".)  The degree of

24    emotional distress requisite for recovery need not consist of evidence that Plaintiff "suffered any
       traumatic emotional distress of the character of shock, horror or nausea" but may consist of any

25    "highly unpleasant mental reaction, such as fright, grief, shame, humiliation, embarrassment,
       anger, chagrin, disappointment, or worry."  (*Id.* at p. 397, citing *Crisci v. Security Ins. Co.* (date)

26    66 Cal.2d 425, 433; Rest.2d Torts Sec. 46, com. j.)  The duration of emotional distress is one
       factor to be considered in determining its severity. (10 Cal.App.3d at p. 398.) (persistence for

27    several months, as in the instant case, militated in favor of finding of severity.)  In California,
       recovery may be had for emotional distress without accompanying physical injury.  (10

28    Cal.App.3d at p. 396.)  Here, Plaintiff suffered both physical and emotional symptoms.

1  *Unisys Corp.* (2003) 271 F.Supp.2d 1172, 1181, and cases cited therein.)

2  **E.    Lawrence's Unlawful Conduct Does Not Fall Within Her Official Discretion and Is Not Subject to a Defense of Immunity.**

3

4        Defendant's claim of immunity is specious.  The law is settled that neither violations of

5  public policy nor retaliation or harassment under the FEHA fall within a public employee's

6  immunity for discretionary acts.  (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986-987, fn. 7

7  (Statutory prohibitions against a government employee using official power against the efforts of

8  another employee to resist and report job-related violations of law evince a legislative intent to

9  withhold immunity for such actions); *Taylor v. City of Los Angeles* (2006) 144 Cal.App4th 1216,

10  1238-1239 (imposition of individual supervisor liability for harassment and retaliation under the

11  FEHA similarly reflects a legislative withholding of immunity for such *ultra vires* actions); (*Tietz*

12  *v. Los Angeles Unified School District* (1965) 238 Cal.App.2d 905, 909 (public employees vested

13  with policy making authority are immune from suit only for "discretionary acts *within the scope*

14  *of their authority*.")

15        Lawrence is not immune from suit for formulating policies or approving practices that

16  contravene public policies set forth, *inter alia*, in the state penal statutes and whistleblower laws.

17  Nor is she immune for actions for which the legislature has expressly sanctioned individual

18  supervisor liability, such as harassment and retaliation in contravention of the FEHA.  Such

19  actions are not undertaken pursuant to any legitimate managerial function and do not fall within

20  any discretion vested in the Superintendent.  (*Reno*, *supra*, 18 Cal.4th at p. 646, favorably quoting

21  *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55.)

22                              **IV. CONCLUSION**

23        For the foregoing reasons, it is respectfully submitted that the demurrer must be overruled

24  in its entirety.

25  Dated this 2nd day of November, 2007      By: _____

26                                                Eric Borgerson, SBN 177943
                                                  Law Office Of Eric Borgerson
27                                                2625 School Street
                                                  Oakland, CA 94602

- 15 -

1

**PROOF OF SERVICE**

2

3          I, Eric Borgerson, declare that I am over the age of 18 years, and am not a party to this

4    matter, that my business address is 2625 School Street, Oakland, CA 94602, located within the

5    County of Alameda. On November 2, 2007, I served the attached: **PLAINTIFF'S**

6    **OPPOSITION TO DEFENDANT MICHELE LAWRENCE'S DEMURRER**, by placing it in

7    an addressed envelope, with postage duly prepaid, and depositing it into a United States Post

8    Office mail receptacle, via Express U.S. mail, addressed as follows:

9

10   Kellie M. Murphy, Esq.
     JOHNSON SCHACHTER & LEWIS
11   2180 Harvard Street, Suite 560
     Sacramento, CA 95815
12

13         I declare the foregoing to be true and correct based on personal knowledge under penalty

14   of perjury under the laws of the State of California.  Executed in Oakland California on

15   November 2, 2007.

16

17   _____
     Eric Borgerson
18

19

20

21

22

23

24

25

26

27

28

# Exhibit E

1    ERIC BORGERSON (State Bar No. 177943)
     LAW OFFICE OF ERIC BORGERSON
2    2625 School Street
     Oakland, CA 94602
3    Telephone:    (510) 866-3738
     Facsimile:    (510) 535-9898
4
     Attorney for Plaintiff
5    GENE FAURIE, JR.

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF ALAMEDA

10

11   GENE FAURIE, JR.,                          CASE NO. RG 07334590

12                  Plaintiff,

13           vs.                                 ASSIGNED For All Purposes To
                                                 Judge Cecilia P. Castellanos,
14   The BERKELEY UNIFIED SCHOOL                 DEPARTMENT 18
     DISTRICT; MICHELLE LAWRENCE,
15   individually and in her official capacity as   **PLAINTIFF'S OPPOSITION TO**
     BUSD Superintendent; LISA UDELL,          **DEFENDANT BERKELEY UNIFIED**
16   individually and in her official capacity as   **SCHOOL DISTRICT'S DEMURRER**
     BUSD Assistant Superintendent, Human
17   Resources; CRISTINA OBIETA,                 Date:  November 16, 2007
     individually and in her official capacity as   Time:  1:30 p.m.
18   BUSD Director, Classified Personnel;        Dept:  18
     RICHARD DODSON, in his official
19   capacity as BUSD Director, Labor
     Relations; TINA BRIER, individually and    Reservation No. R-747059
20   in her official capacity as BUSD Director,
     Classified Personnel,
21
                   Defendants.
22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3   I. INTRODUCTION…….………………………………………………………..1

4   II.   STANDARDS OF REVIEW…………………………………………………...1

5   III.  FACTS ……………………………………………………………………….....2

6   III.  ARGUMENT……………………………………………………………………5

7   A.    BUSD Can Be Held Vicariously Liable For the Individual Defendants' Tortious
      Wrongful Discharge In Violation of Fundamental Public Policy To The Same Extent
8     As A Private Employer .................................................................................................. 5

9   B.    The Complaint Adequately Alleges That BUSD Was Contractually Prohibited From
      Discharging Plaintiff Except for Just Cause…………….…………………………….6

10  C.    Plaintiff Has Stated a *Prima Facie* Case Under the FEHA Against Defendants in Their
11    Official Capacities For Unlawful Disparate Treatment ……………………………..9

12  D.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted
      By Statute and Is Not Preempted by the Workers Compensation Act………………11

13  E.    The Individual Defendants' Unlawful Conduct Does Not Fall Within Their Official
14    Discretion and Is Not Subject to a Defense of Immunity …………………….......14

15  IV. CONCLUSION…………………………………………………………………15

16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO DEFENDANT BUSD'S DEMURRER - CASE NO. RG 07334590

1

## TABLE OF AUTHORITIES

2

## STATE CASES

3

*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441 ...................................... 11

4

*Alcorn v. Anbro* (1970) 2 Cal.3d 493 .................................................................... 2, 12

5

*Astenius v. State* (2005) 126 Cal.App.4th 465 .......................................................... 1

*Blom v. N.G.D. Spark Plugs* (1992) 3 Cal.App.4th 382 ............................................ 13

6

*Boren v. State Personnel Board* (1951) 37 Cal.2d 634 ............................................... 7

7

*Branick v. Downey Sav. And Loan Ass'n* (2005) 24 Cal.Rptr.3d 406 ......................... 2

8

*Caldwell v. Montoya* (1995) 10 Cal.4th 972 ...................................................... 2, 7, 14

*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189 ............... 9, 10

9

*Charles Vacanti, M.D. Inc. v. State Compensation Insurance Fund* (2001) 24
    Cal.4th 800 ...................................................................................................... 13

10

*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143 ................................... 13

11

*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 ................................. 12

12

*Crisci v. Security Ins. Co.* 66 Cal.2d 425 ................................................................. 13

13

*Cundiff v. GTE California, Inc.* (2002) 101 Cal.App.4th 1395 ................................... 1

*Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376 ........................ 7, 13

14

*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 .......................................... 5, 7, 8

15

*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 ..................................... 1, 2

*Gannt v. Sentry Insurance* (1992) 1 Cal.4th 1083 ................................................ 5, 13

16

*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218 ............................................ 1

17

*Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1 ...................................... 13

18

*Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317 ................................................... 8, 9

19

*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925 ........................ 5, 11, 12

*Ibarria v. Regents of the University of California* (1987) 191 Cal.App. 3d 1318 ..... 10

20

*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 .............................. 11, 14

21

*Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225 ................................... 1

22

*Kern v. City of Long Beach* (1947) 29 Cal.2d 848 ..................................................... 6

*Kim v. Regents of the University of California* (2000) 80 Cal.App.4th 160 ............. 6, 7

23

*Kiseskey v. Carpenters' Trust for Southern California* (1983) 144 Cal.App.3d 222 ..... 13

24

*Lane v. IUOE Stationary Engineers* (1989) 212 Cal.App.3d 164, review denied
    (Sept. 28, 1989) ................................................................................................. 1

25

*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494 ................................................... 1

26

*Lord v. Garland* (1946) 27 Cal.2d 840 ..................................................................... 1

*Miller v. State of California* (1977) 18 Cal.3d 808 ............................................. 6, 7, 8

27

*Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303 .............................. 7, 8

28

-ii-

*Nally v. Grace Community Church* (1988) 47 Cal.3d 278.................................................................. 12

*Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452 ........................... 8

*Riechert v. General Ins. Co. of America* (1968) 68 Cal.2d 822 ...................................................... 1

*Rojo v. Kliger* (1990) 52 Cal.3d 65 .............................................................................................. 6

*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316 ....................................................... 1

*Shoemaker v. Meyers* (1990) 52 Cal.3d 1 ............................................................................ 7, 13

*Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147 ............................................. 9, 10

*Societa per Azioni de Navigazione Italia v. City of Lost Angeles* (1982) 31 Cal.3d 446............................................................................................................................... 5

*State ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App4th 225................................ 1

*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 .................................................... 5, 13

*Taylor v. City of Los Angeles* (2006) 144 Cal.App4th 1216 ....................................................... 14

*Thomas v. Dept. of Corrections* (2000) 77 Cal.App.4th 507 .................................................... 11

*Tietz v. Los Angeles Unified School District* (1965) 238 Cal.App.2d 905................................ 14

*Warren v. Atchison, Topeka & Santa Fe Ry. Co.* (1971) 19 Cal.App.3d 24 ............................. 1

*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50................................................... 1, 8

*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028................................................... 11

**FEDERAL CASES**

*Calero v. Unisys Corp.* (2003) 271 F.Supp.2d 1172.................................................... 14

*Furnco Construction Corp. v. Waters* (1978) 438 U.S. 567 ...................................................... 10

*Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604 .................................................................. 10

*McDonnel Douglas Corp. v. Green* (1973) 411 U.S. 792............................................ 9, 10

*Raytheon Co. v. Hernandez* (2003) 540 U.S. 44 ................................................................... 10

*Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986 .................................................... 13

*Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73 F.Supp.2d 1126 .................................. 11

*St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502 .................................................. 10

*Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248.................................. 9, 10

*Watson v. Southeastern PA Transportation Authority* (3d Cir. 2000) 207 F.3d 207 ................ 10

**STATE STATUTES**

Ed. Code § 35035 ......................................................................................................... 2

Gov. Code § 815.2, subd. (a) ................................................................................ 5, 12

Gov. Code § 820, subd. (a) .................................................................................... 5, 12

**TREATISES**

Rest.2d Torts § 46, com. j ........................................................................................ 13

Witkin Cal. Proc. (4th Ed.) Pleading § 907………………………………………………….. 1

iii

## I.    INTRODUCTION

Plaintiff Gene Faurie, Jr. ("Plaintiff" or "Mr. Faurie") respectfully submits this memorandum of points and authorities in opposition to the demurrer filed by Defendant Berkeley Unified School District ("BUSD").

## II.    STANDARDS OF REVIEW

A demurrer is used to determine whether a complaint, standing alone, adequately alleges a cause of action against the defendant.  (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218, 1223; *Lane v. IUOE Stationary Engineers* (1989) 212 Cal.App.3d 164, review denied (Sept. 28, 1989).)  It tests the sufficiency of the pleading as a matter of law.  (*Cundiff v. GTE California, Inc.* (2002) 101 Cal.App.4th 1395, 1404.)  Where, as here, a defendant demurs to the *entire pleading*[1], the demurrer must be overruled if *any* of the causes of action are valid, even if a demurrer might properly have been sustained as to one or more of the causes of action.  (*Warren v. Atchison, Topeka & Santa Fe Ry. Co.* (1971) 19 Cal.App.3d 24, 29, 36; *Riechert v. General Ins. Co. of America* (1968) 68 Cal.2d 822, 839; *Lord v. Garland* (1946) 27 Cal.2d 840, 850; 5 Witkin Cal. Proc. (4th Ed.) Pleading § 907.)  Indeed, it is error for a trial court to sustain such a general demurrer when the plaintiff has stated a cause of action under *any possible* legal theory.  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 ("*Fox*"); *State ex rel. Bowen v. Bank of America Corp.* (2005) 126 Cal.App4th 225.)

In testing the sufficiency of the complaint, a demurrer admits all facts properly pleaded no matter how unlikely or improbable. (*Astenius v. State* (2005) 126 Cal.App.4th 465 ("*Astenius*"); *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 321-322; *Kerivan v. Title Ins. & Trust Co.* (1983) 147 Cal.App.3d 225.)  The demurrer also admits all facts that may be implied or inferred from those expressly alleged.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 ("*Lazar*".)  The factual allegations of the complaint are to be liberally construed with a view to substantial justice between the parties.  (*Wise v. Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59 ("*Wise*").)  Objections that a complaint is ambiguous or uncertain, or that essential facts appear

---

[1] See Defendant's Notice of Demurrer, p. 1: "Defendant…hereby does move the Court for an order sustaining her *demurrer to the entire Complaint for Damages*" (emphasis added); See also Demurrer, p. 1, demurring generally on immunity grounds.

- 1 -

1  only inferentially or as conclusions of law, or by way of recitals, cannot be reached on general

2  demurrer.  (*Branick v. Downey Sav. And Loan Ass'n* (2005) 24 Cal.Rptr.3d 406.)  The demurrer is

3  not concerned with the likelihood the Plaintiff may prevail on the merits, nor whether the Plaintiff

4  has evidence to support his allegations.  (*Alcorn v. Anbro* (1970) 2 Cal.3d 493, 496.)

5      It is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff

6  demonstrates there is a reasonable possibility that a defect in the pleading can be cured by

7  amendment.  (*Fox*, *supra*.)

8                          **III.  FACTS[2]**

9      Plaintiff was employed by the BUSD Human Resources ("H.R.") Department in the

10  position of Administrative Coordinator – Confidential until the date of his constructive discharge

11  on or about July 17, 2006.  (Cmplt. ¶¶ 4, 17.)  Lawrence was employed by BUSD in the position

12  of Superintendent. (*Id.* ¶ 6.)[3]  Each of the Defendants acted as the agents of Lawrence and each

13  other at all material times.  (Cmplt. ¶ 11.)[4]  Plaintiff was subordinate in rank to each and every

14  Defendant and, at all material times, reported to each of them (whether directly or through an

15  intermediate Defendant(s)).  (Cmplt. ¶ 58.)  At all times, as with each of the Defendants, Plaintiff

16  ultimately reported to Lawrence.  (Cmplt. ¶ 27.)

17      Throughout his tenure at BUSD, Mr. Faurie was ranked in the highest category of each of

18  his performance evaluations.  Plaintiff's performance evaluations also demonstrated that he

19  worked above his assigned classification, which Plaintiff is informed and believes has been

20  confirmed by a classification study performed during and after his employment.  (*Id.* ¶ 57.)

21      Throughout the course of Plaintiff's employment, Lawrence, Brier, and, upon their

22

23  [2] Detailed factual allegations are set forth in Plaintiff's Complaint ("Cmplt"). The following is a
brief map to those detailed allegations, which are incorporated herein by reference.

24  [3] By reasonable (in fact, unavoidable) inference, this means that Lawrence was "the district's
foremost appointed official, with primary responsibility for representing, guiding, and

25  administering [the district]" pursuant to policy established by the BUSD Board of Directors.
(*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983, citing Ed. Code Sec. 35035.)

26  [4] By reasonable inference from the plain meaning of their official titles, (Cmplt ¶¶ 5-10).
Defendants Tina Brier (Director, Classified Personnel), Richard Dodson (Director, Labor

27  Relations), Lisa Udell (Assistant Superintendent, Human Resources), and Cristina Obieta
(Director, Classified Personnel), reported to Lawrence and were required to implement her

28  administrative directives.
                                    - 2 -

1  appointments, Dodson, Udell , and Obieta, regularly ordered Plaintiff to engage in or ignore

2  unlawful acts and practices within the H.R. Department, subjected Plaintiff to a retaliatory, hostile

3  environment, with Lawrence's knowledge and approval, when he questioned, objected to, or

4  refused to implement, such unlawful directives and/or policies and practices.  (Cmplt. ¶¶ 16, 17.)

5  The unlawful activities that Mr. Faurie reported and resisted included:

6      (1) Discrimination based on employees' sex.  (Cmplt ¶¶ 18, 19, 28-40, 54, 58, 62.)

7      (2) Lawrence's pattern and practice of hiring employees without statutorily required
        fingerprint clearances and of hiring and retaining employees with criminal records of
8          prohibited offenses who lied about their records of convictions for fraud-related offenses
        during and after the hiring process  (Cmplt ¶¶ 41, 42);

9      (3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the
        (statutorily and Constitutionally protected) privacy of employee personnel files (*Id*. ¶ 43);
10

    (4) The H.R. Department's failure to notify the Department of Justice upon the termination of
11         employment of various individuals, which failure resulted in the District continuing to
        receive subsequent arrest reports it was statutorily prohibited from obtaining (*Id*. ¶ 43);

12     (5) Condescension and hostility by Defendants Dodson and Obieta, under Lawrence's
        direction, when Plaintiff confronted him regarding an unlawful practice of allowing an
13         individual under criminal investigation to view an employee's personnel file without
        supervision (*Id*. ¶ 44);
14

    (6) Failure by the District to obtain "livescan" digital fingerprint records of current employees
15         as required by law.  (*Id*. ¶ 46.)

16     (7) Failure by Defendants to follow procedures mandated by statute and regulation for
        enrolling newly appointed employees in the California Public Employee Retirement
        System ("CalPERS") (*Id*. ¶ 49) and unlawful transfer of passwords to individuals who
17         were not authorized to access the CalPERS system through the Internet. (*Ibid*.)¶

18     (8) The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with
        predetermined outcomes, and Defendants' improper performance of multiple roles within
19         the disciplinary process, in violation of employees' rights to procedural due process and
        orderly application of the Merit System Rules.  (*Id*. ¶ 55, 56.)

20     (9) The District's failure to adhere to the federal No Child Left Behind Act testing
        requirements (*Id*. ¶ 59);
21

    (10)  Unlawful forced early retirement of several employees based on improper District
22         actions. (*Ibid*.)

23       Plaintiff repeatedly attempted to address these unlawful practices in the H.R. Department

24 but Defendants, with Lawrence's knowledge and approval, reacted with hostility and

25 admonishments to be silent.  Plaintiff therefore submitted telephonic complaints and inquiries to

26 the State of California Department of Justice ("DOJ"), County Office of Education, and CalPERS

27 regarding the ignored and uncorrected violations.  (Cmplt. ¶¶ 21, 47)  A DOJ representative

28 informed Mr. Faurie that an individual hired by Lawrence should not be working for the District

- 3 -

1    due to her record of prohibited criminal offenses.  Twice when Plaintiff informed Brier of this

2    legal violation he was told the Superintendent was aware of it and to "drop the issue."  During the

3    period between May 2005 and July 2006, pursuant to directives by Lawrence to ignore the legal

4    violations, Defendants rebuffed with increasing hostility all Plaintiff's attempts to address this

5    issue and the larger unlawful BUSD practice it represented.  (Cmplt. ¶¶ 21, 22, 48, 55, 56.)

6         Defendants, and each of them, engaged in a pattern and practice of discrimination within

7    the H.R. Department on the basis of sex by applying different standards to women than to men,

8    including Plaintiff, with regard to working out of classification, granting of differential pay,

9    responses to filing of workers' compensation claims, granting of requests for vacation leave, and

10   quantity of work assigned.  This pattern and practice of discrimination occurred on a continuing

11   basis through July 17, 2006.  Mr. Faurie also was subjected to a hostile working environment

12   because of his sex, on a continuing basis through July 17, 2006, and to retaliation for his

13   identification of unlawful discrimination based on sex in the H.R. Department.  (Cmplt. ¶¶ 18, 19,

14   28-40, 53, 54, 58, 62)  Each and every of four males hired during Mr. Faurie's nearly four years

15   of employment with BUSD left the H.R. Department due to a hostile environment based on sex,

16   without notice; no female employee submitted such abrupt resignations due to hostile and

17   unlawful working conditions.  (Cmplt. ¶¶ 36-40.)

18        As part of that pattern and practice, Brier, Dodson, Udell, and Obieta, with Lawrence's

19   knowledge and approval, regularly required Plaintiff to work out of his job classification by

20   performing the duties of the Director of Classified Personnel without appropriate differential pay.

21   Defendants summarily and unjustifiably denied multiple requests by Mr. Faurie to reclassify his

22   position appropriately to realistically encompass the duties he was required to perform and

23   admonished him to refrain from asserting his rights and remain silent.  (Cmplt. ¶¶ 19, 28-34, 58.)

24        At a BUSD H.R. staff meeting on July 11, 2006, Udell, stated she knowingly was ordering

25   Mr. Faurie and other staff to engage in violations of the No Child Left Behind Act testing

26   requirements and to implement unlawful forced retirement of BUSD employees, pursuant to

27   Lawrence's directives.  Udell retaliated against Plaintiff for objecting to the unlawful directives

28   by openly insulting and humiliating him in the staff meeting and accusing him of having attitude

- 4 -

1    problems because he objected to the unlawful directives and silencing him. (Cmplt. ¶ 59.)

2         Plaintiff was rendered physically ill and severely emotionally distressed by Udell's

3    offensive and hostile rebuke to his final attempt to raise the issue of BUSD's unlawful policies

4    and practices.  (Cmplt. ¶¶ 24, 69-70.)  Consequently, he left the meeting due to emotional and

5    physical injury. (Cmplt. ¶ 60.)  A reasonable person in Mr. Faurie's position would have believed

6    he had no choice left but to resign his position with BUSD due to the hostile environment and

7    continuing course of discriminatory and retaliatory conduct to which he was subjected. (*Id.* ¶¶ 63,

8    64) Consequently, his resignation of employment on July 17, 2006, constituted a constructive

9    discharge.[5]

10                           **III.  ARGUMENT**

11    **A.    BUSD Can Be Held Vicariously Liable For the Individual Defendants' Tortious**
           **Wrongful Discharge In Violation of Fundamental Public Policy To The Same Extent**
12         **As A Private Employer**

13         In California, "the general rule is that an employee of a public entity is liable for his or her

14    torts to the same extent as a private person ([Gov. Code] Sec. 820, subd. (a)), and the public entity

15    is vicariously liable for any injury that its employee causes ([Gov. Code] Sec. 815.2, subd. (a)) to

16    the same extent as a private employer."  (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th

17    925, 932, citing *Societa per Azioni de Navigazione Italia v. City of Lost Angeles* (1982) 31 Cal.3d

18    446, 463.)  The statutory basis for Plaintiff's claim is the *Tort Claims Act* itself.

19         A terminated employee may sue in tort for a wrongful discharge that violates a

20    fundamental policy enshrined in the state's Constitution or statutes.  (*Foley* v. *Interactive Data*

21    *Corp.* (1988) 47 Cal.3d 654; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172.)  Here,

22    Plaintiff has asserted a tortious wrongful discharge cause of action based on violation of (1) the

23    fundamental public policy, embodied in the state's penal statutes, against punishing employees

24    for reporting, resisting, or refusing to implement unlawful directives (see *Gannt v. Sentry*

25    *Insurance* (1992) 1 Cal.4th 1083, 1097; *Tameny*), and (2) the fundamental public policy, set forth

26    in California Article I, § 8, against discrimination based on sex.  (See *Rojo v. Kliger* (1990) 52

27    _____
      [5] This fact has been confirmed by an agent of the Employment Development Department who
28    approved his claim for unemployment insurance, and has been affirmed on appeal due to the
      District's failure to controvert it before an EDD administrative law judge. (Cmplt. ¶¶ 24, 68.)

- 5 -

1    Cal.3d 65, 90-91.)  Lawrence, as the highest ranking BUSD manager whose directives caused the

2    public policy violation, and each of the other individual Defendants, who possessed authority to

3    materially affect Plaintiff's employment and who caused public policy violations, can,

4    unequivocally, be sued on such grounds.  BUSD is vicariously liable for their culpable actions.

5    **B.    The Complaint Adequately Alleges That BUSD Was Contractually Prohibited From Discharging Plaintiff Except for Just Cause**

6          Defendant is partially correct that public employment is a creature of legislative

7    enactment, rather than common law contract.  (See, e.g., *Kim v. Regents of the University of*

8    *California* (2000) 80 Cal.App.4th 160, 164.)  However, that general point does not foreclose

9    Plaintiff's contract-based claims for two reasons.

10          First, it is settled that public employees may possess vested contractual rights additional to

11    those established by statute or ordinance, as long as they do not conflict with a legislative

12    mandate.  Thus, in *Miller v. State of California* (1977) 18 Cal.3d 808, which Defendant cites at

13    page 3 of the Demurrer P.&A., the Supreme Court observed:

14          Although the tenure of a public employee is not *ordinarily* based on contract, it is
15          well established that 'public employment gives rise to certain obligations which
              are protected by the contract clause of the Constitution, including the right to the
16          payment of salary which has been earned.

17    (18 Cal.3d at p. 815, citing *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853, emphasis

18    added.)

19          Defendant implies that the Court in *Miller* held that public employees can possess no

20    contractual rights arising from their employment relationships.  To the contrary, the Court in

21    *Miller* found that a particular public employee had no vested contractual right to continued

22    employment beyond the *mandatory retirement age established by the Legislature*.  However, the

23    Court further found that the Plaintiff had a *vested contractual right* to his pension benefits,

24    stating:

25          [T]his court has repeatedly held that '[s]ince a pension right is "an integral portion
              of contemplated compensation" [citation] it cannot be destroyed, once it has
26          vested, without impairing a *contractual obligation*.

27    (18 Cal.3d at p. 815, citing *Kern*, *supra*, 29 Cal.2d at p. 853, omission of internal citation in

28    original, emphasis added.)

- 6 -

1    The Court clearly recognized that contractual obligations could exist between the parties,

2   provided they did not *conflict with* a statutory mandate:  "the statutory provisions controlling the

3   terms and conditions of civil service employment cannot be circumvented by purported contracts

4   *in conflict therewith*."  (18 Cal.3d at p. 814, citing *Boren v. State Personnel Board* (1951) 37

5   Cal.2d 634, 641.)[6]

6    Second, one may assert a claim *in tort* based on breach of the implied covenant of good

7   faith and fair dealing, though in so doing a plaintiff's remedy is limited to contractual damages.

8   (*Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303, disapproved on other grounds in

9   *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 984, fn. 6; *Fletcher v. Western Life Insurance Co.*

10  (1970) 10 Cal.App.3d 376, 397.)  In *Mouchette*, the court observed that, while *Foley*, *supra*, 47

11  Cal.3d at p. 700, held that tort remedies are not available for breach of the implied covenant of

12  good faith and fair dealing in the employment context, the *Foley* court "did not eliminate the

13  cause of action but simply limited plaintiffs to contractual remedies for breaches of the implied

14  covenant."  (217 Cal.App.3d at p. 315, citing *Foley* at p. 696.)  The court in *Mouchette* expressly

15  rejected a school district's claim that the plaintiff could not assert a claim of tortious violation of

16  the implied covenant of good faith and fair dealing.

17    Defendant cites *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23-24, for the proposition that

18  "civil service public employees cannot state a cause of action for breach of contract or breach of

19  the implied covenant of good faith and fair dealing."  (Demurrer P.&A., p. 4.)  That reading is

20  clearly an overstatement, given the Supreme Court's identification of vested contractual rights in

21  *Miller* and its discussion of remedies in *Foley*, as explained in *Mouchette*.  Moreover, in

22  *Caldwell*, *supra*, which was decided five years after *Shoemaker*, the Supreme Court expressly

23  discussed *Mouchette* and, while taking issue with its discussion of the precise contours of

24  _____

25  [6]Indeed, most public employment in California is governed by terms set forth in collectively
    bargained contracts or memoranda of understanding.  Thus, contracts play a very substantial role

26  in defining the terms of employment in California's public sector.  It can hardly be claimed that a
    member of a collective bargaining unit is precluded from taking an alleged contract breach by his

27  or her employer to arbitration pursuant to the terms of a grievance procedure negotiated by the
    employer on grounds that the terms of public employment are set by statute, not contract.  Yet,

28  that is precisely the logical result of Defendant's exaggerated reading of cases like *Miller* and
    *Kim*.

- 7 -

1   immunity for discretionary acts, the Court left in tact its discussion of *Foley* and its preservation

2   of tortious implied covenant claims in the employment context.  Accordingly, as clearly stated by

3   the Supreme Court in *Miller*, public employees may possess contractual rights so long as they do

4   not conflict with a legislative mandate.[7]

5        The elements of a breach of contract claim are: (1) a contract; (2) plaintiff's performance

6   or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff.

7   *Wise*, *supra*, 223 Cal.App.2d at p. 59; *Otworth v. Southern Pacific Transportation Co.* (1985) 166

8   Cal.App.3d 452, 458-459 ("*Otworth*").  Plaintiff has alleged that his employment was subject to a

9   contractual restriction that it could only be terminated for just cause, that he satisfactorily

10  performed his end of the agreement, and he was constructively discharged without just cause,

11  causing him damages.  (Cmplt. ¶¶ 92-97) This is a demurrer proceeding, not a summary judgment

12  hearing.  The facts alleged in Plaintiff's Complaint and the facts reasonably inferable from them

13  make clear that Plaintiff was party to an employment agreement with BUSD containing a just

14  cause provision and that the individual Defendants were in official positions charged with fairly

15  implementing the terms of that contract. For purposes of initial pleading burden, that is

16  sufficient.[8]

17       For the foregoing reasons, Plaintiff has validly asserted claims that Defendant breached

18

---

19  [7] Similarly, to the extent that Defendant construes *Hill v. City of Long Beach* (1995) 33

20  Cal.App.4th 1684, 1691-1693, as precluding any and all contract-based claims or claims of breach of the implied covenant of good faith and fair dealing, the argument lacks merit because *Hill*, so read, directly conflicts with the Supreme Court's discussion in *Miller*, *supra*, and with the

21  language in *Foley*, *supra*, discussed in *Mouchette*, *supra*, and left in tact by the Supreme Court in *Caldwell*, *supra*.

22  [8] Contrary to Defendant's suggestion, *Wise*, *supra*, 223 Cal.App.2d at p. 59, did not hold that, in

23  order to survive a demurrer, a Plaintiff asserting a contractual cause of action must either quote a written contract verbatim or attach it an incorporate it by reference.  Rather, as acknowledged in

24  *Otworth*, *supra*, contracts may be oral and/or written.  (166 Cal.App.3d at pp. 458-459.)  A 'for cause' contractual agreement need not be express, but may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations. (*Guz*

25  *v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 336, citing *Foley*, 47 Cal.3d at p. 680.)  Such an implied agreement exists if the parties' conduct has a ""tendency in reason" to demonstrate the

26  existence of an actual mutual understanding on particular terms and conditions of employment. (*Ibid.*)  Defendant does not and cannot claim that Plaintiff was an at-will employee.

27  The dispositive question is whether under the totality of the circumstances the p arties' conduct, considered in the context of surrounding circumstances, gave rise to an implied-in-fact contract

28  limiting the employer's termination rights.  (*Id.* at p. 337, citing *Foley* at p. 681.)

- 8 -

his employment agreement and violated the implied covenant of good faith and fair dealing by terminating his employment without just cause, harassing and abusing him in retaliation for his reporting, resistance to, and refusal to implement, unlawful directives, and by subjecting him to a hostile work environment based on sex, retaliation for asserting his rights, and because of his identification of and resistance to unlawful directives.  Defendant's demurrer must be overruled.

**C.    Plaintiff Has Stated a *Prima Facie* Case Under the FEHA Against Defendants in Their Official Capacities For Unlawful Disparate Treatment**

Defendant's argument regarding Plaintiff's FEHA claim lacks merit for two reasons. First, Defendant has confused Plaintiff's initial burden of <u>production</u> to plead a *prima facie* case, which Plaintiff has clearly satisfied and which defeats Defendant's demurrer, with Plaintiff's ultimate burden of <u>persuasion</u> at trial, which does not come into play until after Defendant has answered and is not at issue at the demurrer stage.  BUSD can be held liable for discriminatory personnel actions that adversely affected Plaintiff's employment, by the individual Defendants in their official capacities.

It is well settled that, to state a *prima facie* case of discrimination under the FEHA, one must allege facts establishing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was competently performing in the position he occupied; (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance s suggesting a discriminatory motive. (*Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 355; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147; *McDonnel Douglas Corp. v. Green* (1973) 411 U.S. 792.)

The Plaintiff's burden of production at the *prima facie* case stage is "designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled."  (*Guz*, *supra*, 24 Cal.4th at p. 354, citing *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253-254; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202.)  This requirement is "not onerous."  (*Guz*, *supra*, 24 Cal.4th at p. 355.)  To meet it, the Plaintiff must "show actions taken by the employer from which one can infer, if such actions

- 9 -

1    remain unexplained, that it is more likely than not that such actions were based on a prohibited

2    discriminatory criterion."  (*Id.*, citing *Ibarria v. Regents of the University of California* (1987)

3    191 Cal.App. 3d 1318, 1327-1328 and *Furnco Construction Corp. v. Waters* (1978) 438 U.S.

4    567, 576, internal quotation marks and ellipses omitted.)

5         Once the Plaintiff alleges facts supporting the four *prima facie* elements, a rebuttable

6    presumption of unlawful discrimination is created.  (*Burdine*, *supra*.)  The burden then shifts to

7    the Defendant to attempt to rebut that presumption by articulating some legitimate, non-

8    discriminatory reason for the employer's action.  (*McDonnel Douglas*, *supra*; *Burdine*, *supra*; *St.*

9    *Mary's Honor Center v. Hicks* (1993) 509 U.S. 502.)  The Defendant's opportunity to attempt

10   such a rebuttal is in his, her, or its Answer to the Complaint.  If the Defendant's proffered reason

11   successfully rebuts the presumption, Plaintiff then bears the ultimate burden of persuasion at trial

12   to show that the Defendant's proffered explanation for its actions is pretextual.  (*Burdine*, *supra*.)

13        Here, Defendant has not yet answered the Complaint.  Instead, she has challenged the

14   sufficiency of the Complaint with a demurrer.  It is axiomatic that, to defeat the demurrer,

15   Plaintiff need only have pled facts supporting a *prima facie* case.  He is not required to anticipate

16   Defendant's attempted rebuttal.  Nor is he required to articulate facts that will support his ultimate

17   burden of persuasion at trial and he is not required at this stage to identify any evidence.  (See

18   *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202 (it is for court to

19   determine as a matter of law whether plaintiff has stated *prima facie* case and, when answering

20   the Complaint, whether defendant has rebutted it.  It is for fact finder to determine whether

21   Plaintiff has met ultimate burden of persuasion); *Furnco*, *supra*, 438 U.S. at p. 576 (same).)[9]

22        Plaintiff has adequately pled that (1)  he is male; (2) he was competently performing the

23

---

24   [9] As this is a demurrer proceeding, Defendant's citation to cases addressing whether the plaintiff
     had met its ultimate burden of persuasion at trial or on appeal from summary judgment
25   adjudications do nothing to advance Defendant's demurrer.  Thus, each of the following cases has
     no bearing on determination of the demurrer:  *Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604,
26   610 (addressing ultimate burden of persuasion, not *prima facie* case); *Raytheon Co. v. Hernandez*
     (2003) 540 U.S. 44, 52 (same); *Watson v. Southeastern PA Transportation Authority* (3d Cir.
27   2000) 207 F.3d 207, 211 (same, and from remote jurisdiction); *Slatkin v. University of Redlands*
     (2001) 88 Cal.App.4th 1147 (appeal from summary judgment on ultimate issue, not *prima facie*
28   case.)

- 10 -

1   duties of his position; (3) he was subjected to disparate treatment and harassment because of his

2   sex and to retaliation for attempting to protect his rights against such unlawful treatment, so

3   severely and pervasively as to constitute a constructive discharge; and (4) such unlawful disparate

4   treatment and harassment because of sex, as well as retaliation for voicing opposition to it, were

5   part of a pattern and practice within the BUSD H.R. Department, affecting at least three men

6   other than Plaintiff, which gives rise to a reasonable inference that it is more likely than not that a

7   discriminatory intent motivated Defendants, including Lawrence.[10]

8           Discharge from employment, including constructive discharge, more than qualifies as an

9   "adverse action" for *prima facie* case purposes.[11] Thus, Plaintiff has amply met his burden of

10  production.  Defendant's proper response is an Answer, not a demurrer.

11          Plaintiff has stated claims that he was subjected to discriminatory personnel actions

12  because of sex implemented by the individual Defendants in their official capacities.  The party

13  effectively sued by such allegations is BUSD and it can be held liable for Defendants' unlawful

14  discriminatory conduct.  (See generally, *Hoff*, *supra*, *Janken v. GM Hughes Electronics* (1996) 46

15  Cal.App.4th 55, 80.)

16  **D.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Permitted By
        Statute and Is Not Preempted by the Workers Compensation Act.**

17          Defendant's contentions regarding Plaintiff's claims for Intentional Infliction of

18  Emotional Distress ("IIED") lack merit because the Tort Claims Act provides the statutory basis

19  for bringing the claim against Defendant; severe emotional distress can be found where a

20  defendant abuses a relationship of authority with the Plaintiff; and severe emotional distress

21  resulting from conduct that violates public policy, as is alleged in the Complaint, is not subject to

22  worker's compensation exclusivity.

23

24  [10] Plaintiff is not bringing a "pattern and practice" claim, which is generally pursued on behalf of a class.  However, the pattern and practice are circumstantial evidence of intent.

25  [11] Indeed, to be "adverse," an employment action need not even be "ultimate," as it was here.
Any employer misconduct that "materially affects the terms, conditions, or privileges of
26  employment" is sufficiently "adverse" to state an FEHA claim.  (*Yanowitz v. L'Oreal USA, Inc.*
(2005) 36 Cal.4th 1028, 1051-1052; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441,
27  1455; See also *Soo v. United Parcel Service, Inc.* (N.D. Cal. 1999) 73 F.Supp.2d 1126, 1130
("*Soo*"), and cases cited therein; *Thomas v. Dept. of Corrections* (2000) 77 Cal.App.4th 507, 512
28  (adverse action must be employment related).)  Plaintiff has more than satisfied that test.

- 11 -

1    In California, an employee of a public entity is liable for his or her torts to the same extent

2    as a private person (Gov. Code Sec. 820, subd. (a); *Hoff*, *supra*, 19 Cal.4th at p. 932).[12]  The

3    employing public entity is vicariously liable for any injury that its employee causes to the same

4    extent as a private employer. (([Gov. Code] Sec. 815.2, subd. (a); *Hoff*, *supra*, 19 Cal.4th at p.

5    932.)

6    "A prima facie case [of IIED] requires (1) outrageous conduct by the defendant, (2)

7    intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe

8    emotional suffering and (4) actual and proximate causation of the emotional distress." (*Cole v.

9    Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155 fn. 7; see also *Nally v. Grace

10   Community Church* (1988) 47 Cal.3d 278, 300.)  Liability is to be based upon "conduct exceeding

11   all bounds usually tolerated by a decent society, of a nature which is especially calculated to

12   cause, and does cause, mental distress."  (43 Cal.3d at p. 155, internal quotations and citations

13   omitted.)

14   Defendant's attempt to trivialize the unlawful, humiliating, hostile and retaliatory

15   treatment to which Plaintiff was subjected ignores the nature of the individual Defendant's

16   authoritative relationship with him.  As the California Supreme Court has explained, the

17   outrageousness of alleged conduct depends on its context and the relationship and knowledge of

18   the persons involved:

19       Behavior may be considered outrageous if a defendant (1) abuses a relation or position
         which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is
20       susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably
         with the recognition that the acts are likely to result in illness through mental distress.

21   (*Id.*)  Plaintiff has alleged that he was subjected to a continuing course of hostile, abusive, and

22   humiliating conduct by Defendants, with Lawrence's knowledge and approval, in retaliation for

23   his identifying and resisting unlawful directives.  Defendants' (including Lawrence's) abuse of

24   their supervisorial relationships with Plaintiff was outrageous by any rational sense of decency, as

25   reflected in settled case law.  (See *Alcorn v. Anbro Engineering, Inc.*(1970) 2 Cal.3d 493, 496

26   (supervisor shouting insulting epithets; terminating employment; humiliating plaintiff was

27   _____

28   [12] Such liability can be avoided only through defenses available to private individuals or through
     assertion of immunity which, as discussed infra, is not available to the Defendants to this action.

- 12 -

1   outrageous and supported IIED claim).)[13]

2        Plaintiff was so disturbed by Defendants' actions, that he was rendered physically ill, was

3   forced to resign his position, and suffered continuing, severe, emotional distress.[14]

4        Worker's compensation exclusivity extends to intentional infliction of emotional distress

5   by an employer's work-related conduct <u>only if the conduct does not contravene public policy</u>.

6   (*Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4[th] 1, 10.)  Where, as here, a managerial

7   employee's conduct steps outside her legitimate role as employer, the conduct can give rise to

8   liability. (See generally *Kiseskey v. Carpenters' Trust for Southern California* (1983) 144

9   Cal.App.3d 222, 229, and cases cited therein.) It is settled that certain wrongs lie wholly outside

10  the contemplation of the workers' compensation scheme, such as discharge in contravention of

11  fundamental public policy (*Livitsanos v. Superior Court* (1992) 2 Cal.4[th] 744, 752, citing *Gannt*,

12  *supra*, and *Tameny*, *supra*;  accord, *Charles Vacanti, M.D. Inc. v. State Compensation Insurance*

13  *Fund* (2001) 24 Cal.4[th] 800) and conduct that violates the FEHA.  (*Livitsanos*, *supra*, 2 Cal.4[th] at

14  p. 817; *City of Moorpark v. Superior Court* (1998) 18 Cal.4[th] 1143.)  "[A]n injury resulting from

15  a wrongful termination in violation of a whistleblower statute 'lies well outside the compensation

16  bargain,' and the exclusive remedy provisions do not apply." (*Moorpark*, *supra*, 18 Cal.4[th] at p.

17  1152, citing *Shoemaker v. Meyers* (1990) 52 Cal.3d 1, 23;  See also *Blom v. N.G.D. Spark Plugs*

18  (1992) 3 Cal.App.4[th] 382 (retaliatory discharge for efforts to obtain compliance with FEHA

19

20  [13] Unlike in *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 992-993, relied on by
    Defendant, the retaliatory and abusive conduct to which Plaintiff was subjected did not occur in
21  the course of criticizing his job performance.  To the contrary, Plaintiff's job performance was
    consistently exemplary.  Rather, Defendants, with Lawrence's knowledge and approval, inflicted
22  hostile and abusive conduct on Plaintiff in retaliation for his reporting and resistance to unlawful
    directives, in violation of fundamental public policy.  *Schneider* is inapposite.

23  [14] "Severe" means substantial or enduring as distinguished from trivial or transitory.  (*Fletcher v.
    Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 ("*Fletcher*".)  The degree of
24  emotional distress requisite for recovery need not consist of evidence that Plaintiff "suffered any
    traumatic emotional distress of the character of shock, horror or nausea" but may consist of any
25  "highly unpleasant mental reaction, such as fright, grief, shame, humiliation, embarrassment,
    anger, chagrin, disappointment, or worry."  (*Id.* at p. 397, citing *Crisci v. Security Ins. Co.* (date)
26  66 Cal.2d 425, 433; Rest.2d Torts Sec. 46, com. j.)  The duration of emotional distress is one
    factor to be considered in determining its severity. (10 Cal.App.3d at p. 398.) (persistence for
27  several months, as in the instant case, militated in favor of finding of severity.)  In California,
    recovery may be had for emotional distress without accompanying physical injury.  (10
28  Cal.App.3d at p. 396.)  Here, Plaintiff suffered both physical and emotional symptoms.

- 13 -

1    violates public policy).)

2        Plaintiff has pled causes of action for wrongful termination in violation of fundamental

3    public policy and violation of his rights under the FEHA.  Workers Compensation exclusivity

4    does not apply to injuries, including emotional distress, arising from such conduct.  (See *Calero v.*

5    *Unisys Corp.* (2003) 271 F.Supp.2d 1172, 1181, and cases cited therein;  See also *Reno v. Baird*

6    (1998) 18 Cal.4th 640, 646, favorably quoting *Janken v. GM Hughes Electronics* (1996) 46

7    Cal.App.4th 55 (the law is settled that "harassment is not a type of conduct necessary to personnel

8    management.").)

9    **E.    The Individual Defendants' Unlawful Conduct Does Not Fall Within Their Official**
     **Discretion and Is Not Subject to a Defense of Immunity**

10       Defendant's claim of immunity based on the individual Defendants' immunity is specious.

11   The law is settled that neither violations of public policy nor retaliation or harassment under the

12   FEHA fall within a public employee's immunity for discretionary acts.  (*Caldwell v. Montoya*

13   (1995) 10 Cal.4th 972, 986-987, fn. 7 (Statutory prohibitions against a government employee

14   using official power against the efforts of another employee to resist and report job-related

15   violations of law evince a legislative intent to withhold immunity for such actions); *Taylor v. City*

16   *of Los Angeles* (2006) 144 Cal.App4th 1216, 1238-1239 (imposition of individual supervisor

17   liability for harassment and retaliation under the FEHA similarly reflects a legislative withholding

18   of immunity for such *ultra vires* actions); (*Tietz v. Los Angeles Unified School District* (1965)

19   238 Cal.App.2d 905, 909 (public employees vested with policy making authority are immune

20   from suit only for "discretionary acts *within the scope of their authority*.")

21       Lawrence is not immune from suit for implementing policies or approving practices, and

22   the other individuals are not immune from actions, that contravene public policies set forth, *inter*

23   *alia*, in the state penal statutes and whistleblower laws.  Nor are they immune for actions for

24   which the legislature has expressly sanctioned individual supervisor liability, such as harassment

25   and retaliation in contravention of the FEHA.  Such actions are not undertaken pursuant to any

26   legitimate managerial function and do not fall within any discretion vested in Defendants.  (*Reno*,

27   *supra*, 18 Cal.4th at p. 646, favorably quoting *Janken v. GM Hughes Electronics* (1996) 46

28

- 14 -

1    Cal.App.4th 55.)

2                                   **IV. CONCLUSION**

3           For the foregoing reasons, it is respectfully submitted that the demurrer must be overruled

4    in its entirety.

5    Dated this 2nd day of November, 2007          By: _____

6                                                      Eric Borgerson, SBN 177943
                                                       Law Office Of Eric Borgerson
7                                                      2625 School Street
                                                       Oakland, CA 94602

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        - 15 -

1

**PROOF OF SERVICE**

2

3      I, Eric Borgerson, declare that I am over the age of 18 years, and am not a party to this

4  matter, that my business address is 2625 School Street, Oakland, CA 94602, located within the

5  County of Alameda. On November 2, 2007, I served the attached: **PLAINTIFF'S**

6  **OPPOSITION TO DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S**

7  **DEMURRER**, by placing it in an addressed envelope, with postage duly prepaid, and depositing

8  it into a United States Post Office mail receptacle, via Express U.S. mail, addressed as follows:

9

10  Kellie M. Murphy, Esq.
    JOHNSON SCHACHTER & LEWIS
11  2180 Harvard Street, Suite 560
    Sacramento, CA 95815
12

13      I declare the foregoing to be true and correct based on personal knowledge under penalty

14  of perjury under the laws of the State of California.  Executed in Oakland California on

15  November 2, 2007.

16

17  _____

18  Eric Borgerson

19

20

21

22

23

24

25

26

27

28

# Exhibit F

KELLIE M. MURPHY (SBN 189500)
JOHNSON SCHACHTER & LEWIS
A Professional Law Corporation
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA 95815
Telephone: (916) 921-5800
Facsimile: (916) 921-0247

Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| GENE FAURIE, JR., | Case No. RG 07334590 |
| Plaintiff | **REPLY IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES** |
| v. | |
| The BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE LAWRENCE, individually and in her official capacity as BUSD Superintendent; LISA UDELL, individually and in her official capacity as BUSD Assistant Superintendent, Human Resources; CRISTINA OBIETA, individually and in her official capacity as BUSD Director, Classified Personnel; RICHARD DODSON, in his official capacity as BUSD Director, Labor Relations; TINA BRIER, individually and in her official capacity as BUSD Director, Classified Personnel, | **[Filing Fee Exempt per Government Code §6103]** |
| | **Date:** November 16, 2007 |
| | **Time:** 1:30 p.m. |
| | **Dept:** 18 |
| Defendants. | **RESERVATION NO. R-747071** |

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# I. Introduction

As set forth in the moving papers, Plaintiff Gene Faurie, Jr. cannot state any of the alleged causes of action against defendant Michele Lawrence. Plaintiff has failed to point to any controlling authority to defeat Ms. Lawrence's demurrer and has failed to show how he can amend his complaint to correct the deficiencies. Ms. Lawrence's demurrer should therefore be sustained without leave to amend.

# II. Argument

**A.    Plaintiff ignores the well-settled law that only an employer can be liable for Tortious Wrongful Discharge in Violation of Fundamental Public Policy and provides absolutely no authority to the contrary.**

Plaintiff completely ignores the well-settled law holding that only an employer can be liable for Tortious Wrongful Discharge in Violation of Fundamental Public Policy. The statement by the court in *Khajavi v. Feather River Anesthesia Med. Group* (2000) 84 Cal.App.4th 32 could not be clearer:

> **As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy.** [Citations.] After all, "the duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper discharge of an employee . . . ." [Citation.] [¶] Because it is undisputed that Robert Del Pero had no employment relationship with Khajavi, he cannot be liable for the termination of Khajavi's employment. *Id.* at p. 53 (Boldface added).

Plaintiff attempts to distinguish this case by arguing that the employee therein had no authority to "affect" the plaintiff's employment and declaring that "[h]ere, in contrast, Lawrence is the BUSD Superintendent, Defendant cannot claim in good faith that she lacked the authority to affect Plaintiff's employment, up to and including terminating it."[1] The court in *Khajavi*, however, did not hold that only an employer *or an employee with authority to affect the plaintiff's employment* can be liable for the tort of wrongful discharge in violation of public. Rather, the court specifically and very clearly held that " . . . only an **employer** can be liable for the tort of wrongful discharge in violation of public policy." *Id.* (Boldface added.) The *Khajavi* court went further to discuss liability for the tort of conspiracy based on the termination of

---

[1] Plaintiff's Opposition to Defendant Michele Lawrence's Demurrer, p. 6, fn. 5.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  employment, *again* making it abundantly clear that *only* an employer can be liable for any cause

2  of action arising out of a termination of employment:

> 3  Once again, Robert Del Pero was **legally incapable** of taking any of these
> actions against Khajavi. . . . [¶] Thus, Khajavi's claim of conspiracy to terminate
> 4  his employment fails as to Robert Del Pero because **a nonemployer defendant –**
> **who cannot commit the tort of wrongful discharge in violation of public**
> 5  **policy – can have no liability for a conspiracy to wrongfully discharge the**
> **employee**: "[A] third party who is not and never has been the plaintiff's employer
> 6  cannot be bootstrapped by conspiracy into tort liability for a wrong he is legally
> incapable of committing." [Citations]

> 7
> . . . "Because tort liability arising from conspiracy presupposes that the
> 8  coconspirator is *legally capable of committing the tort* (because he owes a duty to
> the plaintiff recognized by law and is thus potentially subject to liability for a
> 9  breach of that duty), we hold that **a third party who is *not* (and never was) the**
> **plaintiff's employer cannot be liable for conspiracy to wrongfully terminate**
> 10  **the plaintiff's employment in violation of public policy**." [Citations.] *Id.* at pp.
> 54-55, boldface added, italics in original.

11

12  Plaintiff also ignores the cases cited by the court in *Khajavi*, which all support this well-

13  settled legal principle. See *Weinbaum v. Goldfarb, Whitman & Cohen* (1996) 46 Cal.App.4th

14  1310, 1315; *Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 704; *Phillips v.*

15  *Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 575.

> 16  There is nothing in *Foley* or in any other case we have found to suggest that this
> tort imposes a duty of any kind on anyone other than the employer.  Certainly,
> 17  **there is no law we know of to support the notion that anyone other than the**
> **employer can discharge an employee**. *Weinbaum*, *supra*, 46 Cal.App.4th at p.
> 18  1315, boldface added.

19  Significantly, the plaintiff in one of those cases, *Jacobs*, attempted to state a claim of

20  wrongful termination in violation of public policy *against his supervisors*.  The court in *Jacobs*

21  held that "[o]nly an employer can be liable for tortious discharge, and fellow employees cannot

22  be held accountable for tortious discharge on a conspiracy theory." *Jacobs*, *supra*, 53 Cal.App.

23  4th at p. 704.

24  Plaintiff does not and cannot credibly argue that Ms. Lawrence *was* his employer as she

25  legally could not have been.  By statute, only the governing board of the District has authority to

26  employ Plaintiff and to dictate the terms and conditions of his employment.  See California

27  Education Code §35020 ["The governing board of each school district shall fix and prescribe the

28  duties to be performed by all persons in public school service in the school district."]

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    It is axiomatic that only an employer can be liable for a wrongful termination claim and

2    that Ms. Lawrence, as the superintendent, was not and could not as a matter of law have been, his

3    employer.  Plaintiff cites absolutely no authority to the contrary, and Ms. Lawrence's demurrer

4    must therefore be sustained.  Because Plaintiff has not shown any way in which he can amend his

5    complaint to state such a cause of action against Ms. Lawrence, the demurrer to the first cause of

6    action should be sustained without leave to amend.

7

8    **B.    Plaintiff cannot state causes of action for Breach of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing as a matter of law against any defendant, particularly Ms. Lawrence, as he has not and cannot allege that any contract existed between the two.**

9

10    Plaintiff attempts to state a claim for Breach of Contract based on " . . . contractual terms

11    established by the Merit System Rules, Board Policies, oral representations, and consistently

12    stellar performance evaluations."  Plaintiff incorrectly argues that *Miller v. State of California*

13    (1977) 18 Cal.3d 808 holds that a public employee can bring a contract action against his or her

14    employer.  *Miller* in fact expressly holds the opposite:

15        On the contrary it is well settled in California that public employment is not held
         by contract but by statute and that, insofar as the duration of such employment is
16        concerned, no employee has a vested contractual right to continue in employment
         beyond the time or contrary to the terms and conditions fixed by law. [Citations.]
17        Nor is any vested contractual right conferred on the public employee because he
         occupies a civil service position since it is equally well settled that "[t]he terms
18        and conditions of civil service employment are fixed by statute and not by
         contract." [Citations.]  Indeed, "[t]he statutory provisions controlling the terms
19        and conditions of civil service employment cannot be circumvented by purported
         contracts in conflict therewith." [Citation.] *Id.* at pp. 813-814.

20

21    Plaintiff points to language in *Miller* discussing vested "contractual" rights to pension

22    benefits.  Plaintiff's breach of contract claim, however, is not based on such rights.  Rather,

23    Plaintiff alleges that the *terms and conditions* of his employment were governed by the Merit

24    System Rules, Board Policies, oral representations, and consistently stellar performance

25    evaluations.  The California Supreme Court has clearly held to the contrary: ". . . it is equally

26    well settled that "[t]he terms and conditions of civil service employment are fixed by statute and

27    not by contract." *Id.* at p. 814.  This legal principle applies to civil service and non-civil service

28    public employees alike.  See *Kim v. Regents of University of California* (2000) 80 Cal.App.4th

1  160, 164; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690-1691. The court in *Hill*,

2  *supra*, reiterates the well-settled law that Plaintiff asks this Court to disregard and also expressly

3  holds that a plaintiff is not entitled to contract remedies against a public employer defendant as a

4  matter of law:

> In California, the terms and conditions of public employment are determined by law, not contract. . . . **Thus, as a matter of law, Hill was not entitled to contract remedies against the City for his removal from the position of managing director**. *Hill*, *supra*, 33 Cal.App.4th at p. 1690, boldface added.

8  Plaintiff alleges that "[u]nder those terms, [he] was required to be treated fairly and in

9  conformity with the laws of the State of California, and his employment was for an indefinite

10  term not to expire as long as he successfully performed the duties of his position, subject to

11  termination only for just cause, and only in conformity with BUSD written disciplinary policies

12  and procedures."[2] Thus, Plaintiff alleges that he possesses the exact rights the California

13  Supreme Court in *Miller* held he *cannot* possess – vested contractual rights to continued

14  employment. See *id.* at pp. 813-814.

15  For the same reasons, Plaintiff cannot state a claim for breach of the implied covenant of

16  good faith and fair dealing, which is based on and dependent on the existence of a contract.

> The covenant of good faith and fair dealing arises out of the contract itself. It is read into contracts to protect the express contractual promises of the contract, rather than to protect a general public policy interest not directly tied to the contract's purposes. [Citation.] Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant. [Citation.] [¶] In California public employment is not held by contract, but by statute. [Citation.]

> *Miller* and *Hill* apply. Kim cannot state a cause of action . . . for breach of contract or breach of the implied covenant.

23  Further, Plaintiff admits that he "must establish that a contract existed between the parties

24  in order to state a breach of contract claim.[3] *Nowhere*, however, does Plaintiff allege that any

25  contract existed between himself and Ms. Lawrence. Rather, he states that "[t]he facts alleged in

[2] Plaintiff's Complaint for Damages, p. 25, ¶92.

[3] Opposition, p. 8, lines 12-15.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    Plaintiff's Complaint and the facts reasonably inferable from them make clear that Plaintiff was

2    party to an employment agreement with a just cause provision and Lawrence was in an official

3    position charged with fairly implementing the terms of that contract."[4]  Plaintiff ignores that Ms.

4    Lawrence could not legally have entered into an employment contract, or any other contract

5    affecting his employment, with him.  The District's power to enter into a contract is governed by

6    statute, and the Education Code vests the authority to contract *exclusively* in the governing board

7    absent a delegation of such authority by majority vote of the board.  *Even then*, no contract made

8    pursuant to such delegation is valid and enforceable unless approved by the board:

9        Wherever in this code the power to contract is invested in the governing board of
          the school district or any member thereof, the power may by a majority vote of the
10       board be delegated to its district superintendent, or to any persons that he or she
          may designate, or if there be no district superintendent then to any other officer or
11       employee of the district that the board may designate.  The delegation of power
          may be limited as to time, money or subject matter or may be a blanket
12       authorization in advance of its exercise, all as the governing board may direct.
          However, no contract made pursuant to the delegation and authorization shall be
13       valid or constitute an enforceable obligation unless and until the same shall have
          been approved or ratified by the governing board, the approval or ratification to be
14       evidenced by a motion of the board duly passed and adopted.  Educ. Code
          §17604.
15

16       Plaintiff fails to plead *any* board action making or ratifying an oral or written contract

17    between himself and Ms. Lawrence.  A contract made in contravention of statutory authority is

18    unenforceable.  See *South Bay Senior Housing Corp. v. City of Hawthorne* (1997) 56

19    Cal.App.4th 1231, 1235 [failure to comply with statutory authority renders contract with public

20    entity unenforceable].  Ms. Lawrence's demurrer     must therefore be sustained without leave to

21    amend with respect to the second and third causes of action based on contract.

22
      **C.    Plaintiff has attempted to state a cause of action for Unlawful *Discrimination***
23    **On the Basis of Sex [Gov. Code § 12900 et seq.], not retaliation or harassment.**

24       In his own complaint, Plaintiff expressly states that he is alleging a claim of "Unlawful

25    **Discrimination** On the Basis Of Sex" and further that "[t]his claim is brought pursuant to the

26    California Fair Employment and Housing Act, section 12940(a) of the Government Code,

27

28       [4]  Opposition, p. 8, lines 19-21.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    prohibiting termination of an employee from employment on the basis of the sex of any person,

2    and the corresponding regulations of the California Department of Fair Employment and

3    Housing."[5] Section 12940(a) prohibits *discrimination* and does not address harassment or

4    retaliation. Despite these express statements to the contrary, Plaintiff opposes the demurrer as if

5    he had stated claims for harassment and retaliation, arguing that Ms. Lawrence can be

6    individually liable for such claims.

7         Plaintiff has quite clearly *not* alleged claims of harassment and retaliation. Even if the

8    Court were to read the complaint as alleging such claims, Plaintiff has not stated a *prima facie*

9    case against Ms. Lawrence.

10         Plaintiff has the initial burden to provide evidence establishing a *prima facie* case for any

11    violation of the FEHA. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

12    To state a *prima facie* case for "hostile environment" harassment under the FEHA, which he

13    argues he *intended* to state, Plaintiff must allege facts supporting the following:

14         (1)    Plaintiff was subjected to unwelcome sexual advances, conduct or comments;
             (2)    the harassment complained of was *based on gender*; and
15         (3)    the harassment was *so severe or pervasive* as to *alter the conditions of the victim's*
                    *employment **and** create an abusive working environment.* (*Meritor Sav. Bank,*
16                  *FSB v. Vinson* (1986) 477 U.S. 57, 67; see also *Fisher v. San Pedro Peninsula*
                    *Hosp.* (1989) 214 Cal.App.3d 590, 608 [adopting federal case law for hostile
17                  environment sexual harassment claims under California law].)

18         Plaintiff has not stated facts to support any of the required elements and therefore has not

19    stated a claim for harassment under the FEHA.

20         Nor has Plaintiff stated facts to support a cause of action for retaliation. To do so,

21    Plaintiff must allege facts supporting the following:

22         (1) Plaintiff engaged in a protected activity;
             (2) Defendants subjected Plaintiff to an adverse employment action; and
23         (3) a causal link exists between the protected activity and the employer's action.
             See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1044.

24         As to the discrimination claim he did attempt to allege in his complaint, Plaintiff argues

25    that "the party effectively sued is BUSD and it can be held liable for Lawrence's unlawful

26

27

28
         [5] Complaint, p. 28, ¶105.

---

**REPLY IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S**
**DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  discriminatory conduct."[6]  Plaintiff provides absolutely no authority for the proposition that an

2  *individual* can be held liable for discrimination under the FEHA.  It is well-settled that

3  individuals, including supervisory employees, cannot be liable for discrimination under FEHA as

4  a matter of law.  (See *Reno, supra,* 18 Cal.4th at pp. 645-646; see also *Janken v. GM Hughes*

5  *Electronics* (1996) 46 Cal.App.4th 55, 62.)

6      Whether he intended to or not, Plaintiff has expressly not alleged causes of action for

7  harassment and retaliation against Ms. Lawrence.  For the reasons set forth above and in the

8  moving papers, Ms. Lawrence's demurrer to the cause of action alleged – discrimination under

9  the FEHA – must be sustained without leave to amend.

10

**D.   Plaintiff has not and cannot plead a statutory basis for his claim of intentional
11      infliction of emotional distress, nor has he alleged sufficient *facts* to state such
        a cause of action or to avoid worker's compensation preemption.**

12

**1.   Plaintiff has not and cannot point to any statutory basis for a claim of intentional
13      infliction of emotional distress.**

14      With absolutely *no* supporting authority, Plaintiff declares that " . . . the Tort Claims Act

15  provides the statutory basis for bringing the claim against Defendant . . . ."[7]  That is simply not

16  true.  The Tort Claims Act in fact provides exactly the opposite.  Government Code §815

17  provides that "Except as otherwise provided by statute: . . . A public entity is not liable for an

18  injury, whether such injury arises out of an act or omission of the public entity or a public

19  employee or any other person."  This applies to employees of the public entity as well.  (See *Ross*

20  *v. San Francisco Bay Area Transit District* (2007) 146 Cal.App.4th 1507.)

21      Plaintiff cannot plead any statutory violation as is required to establish liability against a

22  public entity and its employees, and Ms. Lawrence's demurrer to Plaintiff's fifth cause of action

23  must therefore be sustained without leave to amend.

24

25

26

27
      [6]  Opposition, p. 12, lines 10-13.
28
      [7]  Opposition, p. 12, lines 16-17.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1   **2.    Plaintiff has failed to allege sufficient *facts* to state a prima facie case of intentional**
2   **infliction of emotional distress or to avoid worker's compensation preemption.**

3       Plaintiff spends a great deal of time in his opposition arguing that certain conduct, under
4   certain circumstances, can form the basis for a claim of intentional infliction of emotional
5   distress.  Plaintiff completely ignores that he has failed to state *facts* sufficient to state such a
6   claim against Ms. Lawrence.  To state such a claim, Plaintiff must allege *facts* to support the
7   following elements: (1) "outrageous" conduct by Ms. Lawrence; (2) that Ms. Lawrence intended
8   to cause (or recklessly disregarded the probability of causing) Plaintiff emotional distress; (3) that
9   Plaintiff suffered severe emotional distress; and (4) an actual and proximate causal link between
10  Ms. Lawrence's "outrageous" conduct and the severe emotional distress.  (See *Cole v. Fair Oaks*
11  *Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7; *Nally v. Grace Community Church* (1988)
12  47 Cal.3d 278, 300.

13      **As a matter of law, allegations of personnel management decisions are insufficient to**
14  **support a claim of intentional infliction of emotional distress, even where they are alleged**
15  **to be improperly motivated.**  (See *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55,
16  80.)  That is precisely what Plaintiff attempts to allege here – personnel management decisions
17  relating to people other than Plaintiff, with which he disagreed.

18      Plaintiff also alleges, quite generally, that Ms. Lawrence was rude to him.  "Ordinarily
19  mere insulting language, without more, does not constitute outrageous conduct."  (*Cole, supra,*
20  43 Cal.3d at p. 155, n. 7.)  Even conduct such as screaming and yelling by a supervisor in the
21  process of criticizing an employee's performance, threatening to throw an employee out of the
22  department, and making threatening gestures toward an employee have been held insufficient to
23  constitute outrageous conduct as a matter of law.  (*Schneider v. TRW, Inc.* (9th Cir. 1991) 938
24  F.2d 986, 992-993.)  "While such incidents may show rudeness and insensitivity, they do not
25  amount to outrageous conduct."  (*Id.* at p. 992.)  Plaintiff's complaint also fails to allege that
26  Plaintiff suffered any emotional distress as a result of any act or omission on the part of Ms.
27  Lawrence.
28

1     For similar reasons, Plaintiff cannot overcome worker's compensation preemption, which

2     includes emotional distress injuries allegedly resulting from an employer's conduct in

3     employment actions involving termination, promotions, demotions, criticism of work,

4     grievances, and other such actions. (See *Shoemaker, supra,* 52 Cal.3d at p. 20; *Charles J.*

5     *Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 814-815; *Cole v. Fair Oaks*

6     *Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.) Allegations that an employer's conduct was

7     intentional, malicious, or outrageous are *insufficient* to permit a civil action outside of the

8     workers' compensation system. (See *Cole, supra,* 43 Cal.3d at p. 160; *Shoemaker, supra,* 52

9     Cal.3d at p. 25.)

10     Plaintiff argues that, because Ms. Lawrence's actions were "outside her legitimate role as

11     employer," his claim is not preempted. Plaintiff, however, has alleged no facts to support that

12     argument, and has in fact alleged to the contrary.[8]

13
**E.    Plaintiff cannot overcome the immunity afforded Ms. Lawrence for injury**
14     **arising out of acts or omissions within her discretion.**

15     Plaintiff miscites and mischaracterizes the Court's opinion and holding in *Caldwell v*

16     *Montoya* (1995) 10 Cal.4th 972. In *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 976, the

17     California Supreme Court unanimously held that Government Code § 820.2 immunized school

18     board members against a terminated school superintendent's claims *for violations of the FEHA.*

19     The Court found that the decision of the board to replace the district's superintendent was a

20     "basic" governmental policy decision and a "quintessential discretionary act" which was

21     entrusted to the board members' judgment and thus was protected under § 820.2. (*Ibid.*) The

22     Court also expressly rejected the argument that Plaintiff claims it advances – that FEHA actions

23     prevail over the discretionary immunity code – holding that the immunity "cannot be abrogated

24     by a statute which simply imposes a general duty or liability on persons, including public

25     employees." (*Ibid.* at 986.) The footnote incorrectly characterized by Plaintiff does not even

26

27

28
[8] Complaint, p. 3, ¶11.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1 address immunity for FEHA claims, but rather refers to whistleblower statutes, under which

2 Plaintiff has not attempted to state a claim.

3     All of the acts alleged against Ms. Lawrence constitute discretionary acts under *Caldwell*

4 and cases decided thereafter. This point was recognized and emphasized in the case of *Tinker v.*

5 *Des Moines School Dist.* (1969) 393 U.S. 503, 507, where the U.S. Supreme Court reiterated that

6 "the Court has repeatedly emphasized the need for affirming the comprehensive authority of the

7 States and of *school officials*, consistent with fundamental constitutional safeguards, to prescribe

8 and control conduct in the schools."

9     Because the acts that form the basis of Plaintiff's entire complaint were the result of the

10 exercise of discretion vested in a District official, Ms. Lawrence, she is immune from liability

11 and her demurrer must be sustained in its entirety without leave to amend.

### V. Conclusion

13     For the reasons set forth above, Ms. Lawrence respectfully requests that the Court sustain

14 her demurrer as to Plaintiff's entire Complaint and each cause of action stated therein without

15 leave to amend.

16 Date: November 8, 2007      JOHNSON SCHACHTER & LEWIS
         A Professional Law Corporation

18      KELLIE M. MURPHY
19      Attorneys for Defendant
     MICHELE LAWRENCE

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# PROOF OF SERVICE

| CASE NAME: | **Faurie v. Berkeley Unified School District, et al.** |
|---|---|
| CASE NO.: | **RG 07334590** |

I am employed in the County of Sacramento. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite 560, Sacramento, CA 95815.

I am familiar with this office's practice whereby the mail is sealed, given the appropriate postage and placed in a designated mail collection area. Each day's mail is collected and deposited in a United States mailbox after the close of each day's business.

On November 8, 2007, I served the following: **REPLY IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

__X__  United States Mail - on all parties in said action by placing a true copy of the above-described document(s) enclosed in a sealed envelope in the designated area for outgoing mail addressed as set forth below.

__ __  By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number a true copy of the above-described document(s).

__ __  Federal Express - on all parties in said action by placing a true copy of the above-described document(s) in an authorized area for pick-up by an authorized express service courier the same day it is collected and processed in the ordinary course of business as set forth below.

__ __  Personal Service - By personally delivering or causing to be delivered a true copy of the above-described document to the person(s) and at the address(es) set forth as shown below.

Eric Borgerson, Esq.
LAW OFFICE OF ERIC BORGERSON
2625 School Street
Oakland, CA 94602

__ __  FEDERAL: I declare that I am employed in the office of a member of the bar of this Court at whose direction service was made.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 8, 2007, at Sacramento, California.

MIKE QUINN

11

# Exhibit G

1  KELLIE M. MURPHY (SBN 189500)
   JOHNSON SCHACHTER & LEWIS
2  A Professional Law Corporation
   California Plaza
3  2180 Harvard Street, Suite 560
   Sacramento, CA 95815
4  Telephone: (916) 921-5800
   Facsimile: (916) 921-0247
5
   Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
6  UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **IN AND FOR THE COUNTY OF ALAMEDA**

10  GENE FAURIE, JR.,                          )    Case No. RG 07334590
                                               )
11         Plaintiff                           )    **REPLY IN SUPPORT OF**
                                               )    **DEFENDANT BERKELEY UNIFIED**
12  v.                                         )    **SCHOOL DISTRICT'S DEMURRER**
                                               )    **TO PLAINTIFF'S COMPLAINT FOR**
13  The BERKELEY UNIFIED SCHOOL                )    **DAMAGES**
    DISTRICT; MICHELLE LAWRENCE,               )
14  individually and in her official capacity as )   _____
    BUSD Superintendent; LISA UDELL,           )    **[Filing Fee Exempt per Government Code**
15  individually and in her official capacity as )   **§6103]**
    BUSD Assistant Superintendent, Human       )
16  Resources; CRISTINA OBIETA, individually   )
    and in her official capacity as BUSD Director, )
17  Classified Personnel; RICHARD DODSON, in   )
    his official capacity as BUSD Director, Labor )  **Date:**  November 16, 2007
18  Relations; TINA BRIER, individually and in )    **Time:**  1:30 p.m.
    her official capacity as BUSD Director,     )    **Dept:**  18
19  Classified Personnel,                      )
                                               )
20         Defendants.                          )
    _____   )    **RESERVATION NO. R-747059**
21                                             )

22

23

24

25

26

27

28

_____
         **REPLY IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S**
              **DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# I. Introduction

As set forth in the moving papers, Plaintiff Gene Faurie, Jr. cannot state any of the alleged causes of action against defendant Berkeley Unified School District. Plaintiff has failed to point to any controlling authority to defeat the District's demurrer and has failed to show how he can amend his complaint to correct the deficiencies. The District's demurrer should therefore be sustained without leave to amend.

# II. Argument

A. **Plaintiff ignores the well-settled law that a public entity cannot be liable for Tortious Wrongful Discharge in Violation of Fundamental Public Policy, and principles of vicarious liability do not apply as the individuals cannot be liable for such tort as they were not Plaintiff's employers.**

Plaintiff completely ignores the case law cited in the District's moving papers, which unequivocally holds that a public entity *cannot* be held liable under a cause of action for tortious wrongful termination in violation of public policy. See *Palmer v. Regents of the University of California* (2003) 107 Cal.App.4th 899, 909. Plaintiff therefore concedes this point.

Plaintiff instead argues that the District can be held vicariously liable for the torts of its employees. Plaintiff ignores, however, the well-settled law holding that only an *employer* can be liable for Tortious Wrongful Discharge in Violation of Fundamental Public Policy. The statement by the court in *Khajavi v. Feather River Anesthesia Med. Group* (2000) 84 Cal.App.4th 32 could not be clearer:

> As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy. [Citations.] After all, "the duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper discharge of an employee . . . ." [Citation.] [¶] Because it is undisputed that Robert Del Pero had no employment relationship with Khajavi, he cannot be liable for the termination of Khajavi's employment. *Id.* at p. 53 (Boldface added).

Plaintiff attempts to distinguish this case by arguing that the employee therein had no authority to "affect" the plaintiff's employment and declaring that the individuals sued herein were supervisors and/or employees with the authority to affect Plaintiff's employment. The court in *Khajavi*, however, did not hold that only an employer *or an employee with authority to affect the plaintiff's employment* can be liable for the tort of wrongful discharge in violation of public.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    Rather, the court specifically and very clearly held that " . . . only an **employer** can be liable for

2    the tort of wrongful discharge in violation of public policy." *Id.* (Boldface added.)  The *Khajavi*

3    court went further to discuss liability for the tort of conspiracy based on the termination of

4    employment, *again* making it abundantly clear that *only* an employer can be liable for any cause

5    of action arising out of a termination of employment:

6         Once again, Robert Del Pero was **legally incapable** of taking any of these
          actions against Khajavi. . . . [¶] Thus, Khajavi's claim of conspiracy to terminate

7         his employment fails as to Robert Del Pero because **a nonemployer defendant –
          who cannot commit the tort of wrongful discharge in violation of public

8         policy – can have no liability for a conspiracy to wrongfully discharge the
          employee**: "[A] third party who is not and never has been the plaintiff's employer

9         cannot be bootstrapped by conspiracy into tort liability for a wrong he is legally
          incapable of committing." [Citations]

10

11        . . . "Because tort liability arising from conspiracy presupposes that the
          coconspirator is *legally capable of committing the tort* (because he owes a duty to

12        the plaintiff recognized by law and is thus potentially subject to liability for a
          breach of that duty), we hold that **a third party who is *not* (and never was) the
          plaintiff's employer cannot be liable for conspiracy to wrongfully terminate

13        the plaintiff's employment in violation of public policy**." [Citations.] *Id.* at pp.
          54-55, boldface added, italics in original.

14

15    Plaintiff also ignores the cases cited by the court in *Khajavi*, which all support this well-

16    settled legal principle. See *Weinbaum v. Goldfarb, Whitman & Cohen* (1996) 46 Cal.App.4th

17    1310, 1315; *Jacobs v. Universal Development Corp.* (1997) 53 Cal.App.4th 692, 704; *Phillips v.*

18    *Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 575.

19        There is nothing in *Foley* or in any other case we have found to suggest that this
          tort imposes a duty of any kind on anyone other than the employer.  Certainly,

20        **there is no law we know of to support the notion that anyone other than the
          employer can discharge an employee**.  *Weinbaum, supra*, 46 Cal.App.4th at p.

21        1315, boldface added.

22    Significantly, the plaintiff in one of those cases, *Jacobs*, attempted to state a claim of

23    wrongful termination in violation of public policy *against his supervisors*.  The court in *Jacobs*

24    held that "[o]nly an employer can be liable for tortious discharge, and fellow employees cannot

25    be held accountable for tortious discharge on a conspiracy theory." *Jacobs, supra*, 53 Cal.App.

26    4th at p. 704.

27    Plaintiff does not and cannot credibly argue that any of the individuals sued were his

28    employer as they legally could not have been.  By statute, only the governing board of the

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  District has authority to employ Plaintiff and to dictate the terms and conditions of his

2  employment.  See California Education Code §35020 ["The governing board of each school

3  district shall fix and prescribe the duties to be performed by all persons in public school service

4  in the school district."]

5      It is axiomatic that only an employer can be liable for a wrongful termination claim and

6  that none of the individual defendants were, or could legally have been, his employer.  Because

7  none of the individual defendants can be liable for this tort, the District cannot, as a matter of

8  law, be vicariously liable, and the District's demurrer to the first cause of action should be

9  sustained without leave to amend.

10  **B.    Plaintiff cannot state causes of action for Breach of Contract or Breach of the
         Implied Covenant of Good Faith and Fair Dealing as a matter of law against
11        the District, and Plaintiff has cited no authority to the contrary.**

12      Plaintiff attempts to state a claim for Breach of Contract based on " . . . contractual terms

13  established by the Merit System Rules, Board Policies, oral representations, and consistently

14  stellar performance evaluations."  Plaintiff incorrectly argues that *Miller v. State of California*

15  (1977) 18 Cal.3d 808 holds that a public employee can bring a contract action against his or her

16  employer.  *Miller* in fact expressly holds the opposite:

17      On the contrary it is well settled in California that public employment is not held
        by contract but by statute and that, insofar as the duration of such employment is
18      concerned, no employee has a vested contractual right to continue in employment
        beyond the time or contrary to the terms and conditions fixed by law. [Citations.]
19      Nor is any vested contractual right conferred on the public employee because he
        occupies a civil service position since it is equally well settled that "[t]he terms
20      and conditions of civil service employment are fixed by statute and not by
        contract." [Citations.]  Indeed, "[t]he statutory provisions controlling the terms
21      and conditions of civil service employment cannot be circumvented by purported
        contracts in conflict therewith." [Citation.] *Id.* at pp. 813-814.
22

23      Plaintiff points to language in *Miller* discussing vested "contractual" rights to pension

24  benefits.  Plaintiff's breach of contract claim, however, is not based on such rights.  Rather,

25  Plaintiff alleges that the *terms and conditions* of his employment were governed by the Merit

26  System Rules, Board Policies, oral representations, and consistently stellar performance

27  evaluations.  The California Supreme Court has clearly held to the contrary: ". . . it is equally

28  well settled that "[t]he terms and conditions of civil service employment are fixed by statute and

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1   not by contract." *Id.* at p. 814. This legal principle applies to civil service and non-civil service

2   public employees alike. See *Kim v. Regents of University of California* (2000) 80 Cal.App.4th

3   160, 164; *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690-1691. The court in *Hill*,

4   *supra*, reiterates the well-settled law that Plaintiff asks this Court to disregard and also expressly

5   holds that a plaintiff is not entitled to contract remedies against a public employer defendant as a

6   matter of law:

7       In California, the terms and conditions of public employment are determined by
        law, not contract. . . . **Thus, as a matter of law, Hill was not entitled to**
8       **contract remedies against the City for his removal from the position of**
        **managing director**. *Hill*, *supra*, 33 Cal.App.4th at p. 1690, boldface added.
9

10      Plaintiff alleges that "[u]nder those terms, [he] was required to be treated fairly and in

11  conformity with the laws of the State of California, and his employment was for an indefinite

12  term not to expire as long as he successfully performed the duties of his position, subject to

13  termination only for just cause, and only in conformity with BUSD written disciplinary policies

14  and procedures."[1] Thus, Plaintiff alleges that he possesses the exact rights the California

15  Supreme Court in *Miller* held he *cannot* possess – vested contractual rights to continued

16  employment. See *id.* at pp. 813-814.

17      For the same reasons, Plaintiff cannot state a claim for breach of the implied covenant of

18  good faith and fair dealing, which is based on and dependent on the existence of a contract.

19      The covenant of good faith and fair dealing arises out of the contract itself. It is
        read into contracts to protect the express contractual promises of the contract,
20      rather than to protect a general public policy interest not directly tied to the
        contract's purposes. [Citation.] Since the good faith covenant is an implied term
21      of a contract, the existence of a contractual relationship is thus a prerequisite for
        any action for breach of the covenant. [Citation.] [¶] In California public
22      employment is not held by contract, but by statute. [Citation.]

23      *Miller* and *Hill* apply. Kim cannot state a cause of action . . . for breach of
        contract or breach of the implied covenant.
24

25  / / /

26  / / /

27

28
        [1] Plaintiff's Complaint for Damages, p. 25, ¶92.

**REPLY IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S**
**DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**
4

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  **C.    Plaintiff has not met his initial burden of stating a *prima facie* case of**
2  **Unlawful *Discrimination* On the Basis of Sex [Gov. Code § 12900 et seq.].**

3         Plaintiff discusses the "shifting burdens analysis" at length in his opposition. He does

4  not, however, address his failure to satisfy his initial burden – to allege facts sufficient to state a

5  *prima facie* case of discrimination. Plaintiff's self-serving, conclusory statements cannot satisfy

6  his burden.

7         As set forth in the moving papers, Plaintiff has not shown that he was subjected to

8  adverse employment action. In his opposition, Plaintiff cites only to his allegation of

9  "constructive discharge." The facts alleged in his complaint, however, are insufficient to

10  establish a constructive discharge. Criticism of job performance and inadequate compensation,

11  even including demotion or reduction of pay, are not grounds for constructive discharge. (See

12  *Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201; see also *Garamendi v. Golden Eagle Ins.*

13  *Co.* (2005) 128 Cal.App.4th 452 [employees who claimed they were forced to resign after

14  disclosing fraudulent business practices to their superiors failed to present sufficient evidence of

15  intolerable working conditions to establish constructive discharge].) An employee cannot simply

16  quit and then sue. (See *Turner v. Anheuser-Busch* (1994) 7 Cal.4th at p. 1238 ["an employee is

17  not permitted to quit and sue simply because he or she does not like a new job assignment."].)

18         Further, Plaintiff has not alleged *any* facts that show intentional discrimination, an

19  element he completely ignores in his opposition, thus conceding that he has not and cannot allege

20  such facts.

21         Because Plaintiff has not satisfied his initial burden of alleging facts sufficient to state a

22  *prima facie* case and has not shown how he can amend his complaint to do so, the District's

23  demurrer should be sustained without leave to amend as to this cause of action.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  **D.    Plaintiff has not and cannot plead a statutory basis for his claim of intentional infliction of emotional distress, nor has he alleged sufficient *facts* to state such a cause of action or to avoid worker's compensation preemption.**

2

3

4  **1.    Plaintiff has not and cannot point to any statutory basis for a claim of intentional infliction of emotional distress.**

5  With absolutely *no* supporting authority, Plaintiff declares that " . . . the Tort Claims Act

6  provides the statutory basis for bringing the claim against Defendant . . . ."[2] That is simply not

7  true. The Tort Claims Act in fact provides exactly the opposite. Government Code §815

8  provides that "Except as otherwise provided by statute: . . . A public entity is not liable for an

9  injury, whether such injury arises out of an act or omission of the public entity or a public

10  employee or any other person."

11  Plaintiff cannot plead any statutory violation as is required to establish liability against a

12  public entity, and the District's demurrer to Plaintiff's fifth cause of action must therefore be

13  sustained without leave to amend.

14  **2.    Plaintiff has failed to allege sufficient *facts* to state a prima facie case of intentional infliction of emotional distress or to avoid worker's compensation preemption.**

15

16  Plaintiff spends a great deal of time in his opposition arguing that certain conduct, under

17  certain circumstances, can form the basis for a claim of intentional infliction of emotional

18  distress. Plaintiff completely ignores that he has failed to state *facts* sufficient to state such a

19  claim against any of the defendants, including the District. To state such a claim, Plaintiff must

20  allege *facts* to support the following elements: (1) "outrageous" conduct; (2) that the District

21  intended to cause (or recklessly disregarded the probability of causing) Plaintiff emotional

22  distress; (3) that Plaintiff suffered severe emotional distress; and (4) an actual and proximate

23  causal link between the District's "outrageous" conduct and the severe emotional distress. (See

24  *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155, fn. 7; *Nally v. Grace*

25  *Community Church* (1988) 47 Cal.3d 278, 300.

26

27

28

[2] Plaintiff's Opposition to Defendant BUSD'S Demurrer, p. 11, lines 18-19.

**REPLY IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES**

6

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    **As a matter of law, allegations of personnel management decisions are insufficient to**
2    **support a claim of intentional infliction of emotional distress, even where they are alleged**
3    **to be improperly motivated.** (See *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55,
4    80.) That is precisely what Plaintiff attempts to allege here – personnel management decisions
5    relating to people other than Plaintiff, with which he disagreed.

6    Plaintiff also alleges, quite generally, that the individual defendants were rude to him.
7    "Ordinarily mere insulting language, without more, does not constitute outrageous conduct."
8    (*Cole, supra,* 43 Cal.3d at p. 155, n. 7.) Even conduct such as screaming and yelling by a
9    supervisor in the process of criticizing an employee's performance, threatening to throw an
10   employee out of the department, and making threatening gestures toward an employee have been
11   held insufficient to constitute outrageous conduct as a matter of law. (*Schneider v. TRW, Inc.* (9th
12   Cir. 1991) 938 F.2d 986, 992-993.) "While such incidents may show rudeness and insensitivity,
13   they do not amount to outrageous conduct." (*Id.* at p. 992.) Plaintiff attempts to distinguish
14   *Schneider* by arguing that the conduct to which Plaintiff was subjected did not occur in the
15   course of criticizing his job performance and points out that he was not criticized for his job
16   performance. That concession directly contradicts Plaintiff's claim. Plaintiff fails to plead any
17   facts to establish that any of the defendants intended to cause him emotional distress and in fact
18   alleges to the contrary.[3] Such facts are inconsistent with an allegation of intent to cause
19   emotional distress. Plaintiff's complaint also fails to allege that Plaintiff suffered any emotional
20   distress as a result of any act or omission on the part of the District.

21   For similar reasons, Plaintiff cannot overcome worker's compensation preemption, which
22   includes emotional distress injuries allegedly resulting from an employer's conduct in
23   employment actions involving termination, promotions, demotions, criticism of work,
24   grievances, and other such actions. (See *Shoemaker, supra,* 52 Cal.3d at p. 20; *Charles J.*
25   *Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 814-815; *Cole v. Fair Oaks*
26   *Fire Protection Dist.* (1987) 43 Cal.3d 148, 160.) Allegations that an employer's conduct was
27
28
[3] Complaint, p. 16, ¶57.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    intentional, malicious, or outrageous are *insufficient* to permit a civil action outside of the

2    workers' compensation system.  (See *Cole, supra,* 43 Cal.3d at p. 160; *Shoemaker, supra,* 52

3    Cal.3d at p. 25.)

4         Plaintiff argues that, because some of the individual defendants' actions were "outside her

5    legitimate role as employer," his claim is not preempted.  Plaintiff, however, has alleged no facts

6    to support that argument, and has in fact alleged to the contrary.[4]

7

8    **E.    Plaintiff cannot overcome the immunity afforded the District employees for injury arising out of acts or omissions within their discretion.**

9         Plaintiff miscites and mischaracterizes the Court's opinion and holding in *Caldwell v*

10   *Montoya* (1995) 10 Cal.4th 972.  In *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 976, the

11   California Supreme Court unanimously held that Government Code § 820.2 immunized school

12   board members against a terminated school superintendent's claims *for violations of the FEHA.*

13   The Court found that the decision of the board to replace the district's superintendent was a

14   "basic" governmental policy decision and a "quintessential discretionary act" which was

15   entrusted to the board members' judgment and thus was protected under § 820.2.  (*Ibid.*)  The

16   Court also expressly rejected the argument that Plaintiff claims it advances – that FEHA actions

17   prevail over the discretionary immunity code – holding that the immunity "cannot be abrogated

18   by a statute which simply imposes a general duty or liability on persons, including public

19   employees." (*Ibid.* at 986.)  The footnote incorrectly characterized by Plaintiff does not even

20   address immunity for FEHA claims, but rather refers to whistleblower statutes, under which

21   Plaintiff has not attempted to state a claim.

22        All of the acts alleged against the individual defendants constitute discretionary acts

23   under *Caldwell* and cases decided thereafter.  This point was recognized and emphasized in the

24   case of *Tinker v. Des Moines School Dist.* (1969) 393 U.S. 503, 507, where the U.S. Supreme

25   Court reiterated that "the Court has repeatedly emphasized the need for affirming the

26

27

28

----

[4] Complaint, p. 3, ¶11.

1  comprehensive authority of the States and of *school officials*, consistent with fundamental

2  constitutional safeguards, to prescribe and control conduct in the schools."

3      Because the acts that form the basis of Plaintiff's entire complaint were the result of the

4  exercise of discretion vested in District officials, the District is immune from liability and its

5  demurrer must be sustained in its entirety without leave to amend.

## V. Conclusion

7      For the reasons set forth above, the District respectfully requests that the Court sustain her

8  demurrer as to Plaintiff's entire Complaint and each cause of action stated therein without leave

9  to amend.

10  Date:   November 8, 2007                    JOHNSON SCHACHTER & LEWIS
                                                A Professional Law Corporation

11

12                                             KELLIE M. MURPHY

13                                             Attorneys for Defendant BERKELEY UNIFIED
                                               SCHOOL DISTRICT

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1

## PROOF OF SERVICE

2

**CASE NAME:** **Faurie v. Berkeley Unified School District, et al.**
3       **CASE NO.:** **RG 07334590**

4        I am employed in the County of Sacramento.  I am over the age of eighteen years and not
a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5    560, Sacramento, CA 95815.

6        I am familiar with this office's practice whereby the mail is sealed, given the appropriate
postage and placed in a designated mail collection area.  Each day's mail is collected and
7    deposited in a United States mailbox after the close of each day's business.

8        On November 8, 2007, I served the following: **REPLY IN SUPPORT OF
DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S DEMURRER TO
9    PLAINTIFF'S COMPLAINT FOR DAMAGES**

10

 X     United States Mail - on all parties in said action by placing a true copy of the above-
11        described document(s) enclosed in a sealed envelope in the designated area for outgoing
mail addressed as set forth below.

12

___    By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
13        a true copy of the above-described document(s).

14    ___    Federal Express - on all parties in said action by placing a true copy of the above-
described document(s) in an authorized area for pick-up by an authorized express service
15        courier the same day it is collected and processed in the ordinary course of business as set
forth below.

16

___    Personal Service - By personally delivering or causing to be delivered a true copy of the
17        above-described document to the person(s) and at the address(es) set forth as shown
below.

18

Eric Borgerson, Esq.
19   LAW OFFICE OF ERIC BORGERSON
2625 School Street
20   Oakland, CA 94602

21

___    FEDERAL: I declare that I am employed in the office of a member of the bar of this
22        Court at whose direction service was made.

23        I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed on November 8, 2007, at Sacramento, California.

24

25                                            _____
                                              MIKE QUINN
26

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# Exhibit H

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Faurie

Plaintiff/Petitioner(s)

VS.

The Berkeley Unified School District

Defendant/Respondent(s)
(Abbreviated Title)

No. RG07334590

Order

Demurrer to Complaint
Sustained

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The demurrer by Defendant Berkeley Unified School District ("District") is ruled upon as follows:

The demurrer to the First Cause of Action is SUSTAINED WITHOUT LEAVE TO AMEND.  District is not liable for common law tort claims.  District's employees are not liable for constructive discharge, so liability against District cannot be predicated upon vicarious liability under Government Code § 815.2(a).

The demurrer to the Second and Third Causes of Action is SUSTAINED WITH LEAVE TO AMEND to allege a statutory basis for Plaintiff's claims to continued employment and increased pay.  Plaintiff's current claims are not analogous to a claim to vested pension rights.

The demurrer to the Fourth Cause of Action is OVERRULED.  Plaintiff has adequately alleged adverse employment action, including constructive termination.  Plaintiff alleges that the conduct directed at him was based on his male gender.  The face of the complaint does not show that the immunity for discretionary acts is applicable.  Plaintiff does not allege that Lawrence's conduct was the result of a conscious balancing of risks and advantages.  Government Code 820.2;  Johnson v. State (1968) 69 Cal.2d 782, 794, and fn. 8.  Plaintiff's allegations do not show that Defendants were acting within the scope of their authority.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  Plaintiff's claim for wrongful termination in violation of public policy is not actionable against District.  Plaintiff's claim for sex discrimination based on personnel management decisions does not support a claim for intentional infliction of emotional distress as a matter of law.  Janken v. GM Hughes Electronics (1996) 46 Cal.App.4th 55, 80.  Plaintiff's other allegations are not outside the scope of the exclusive remedy provisions of the Workers Compensation scheme.

10 days leave to amend.  10 days thereafter to respond.  The order will be issued by the Court.  District to file and serve a Notice of Entry of Order.  Time to amend runs from the service of Notice of Entry of

Order.

Dated: 11/16/2007

Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Chvo* digital

By _____

Deputy Clerk

# Exhibit I

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Demurrer to Complaint<br>Sustained |

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The demurrer by Defendant Michele Lawrence is ruled upon as follows:

The demurrer to the First Cause of Action for Tortious Wrongful Discharge in Violation of Public Policy is SUSTAINED WITHOUT LEAVE TO AMEND.  Only an employer can be liable for the tort of wrongful discharge in violation of public policy.  Khajavi v. Feather River Anesthesia Medical Group (2000) 84 CA4th 32, 53.

The demurrer to the Second and Third Causes of Action is SUSTAINED WITHOUT LEAVE TO AMEND.  Plaintiff does not allege that he had a contractual relationship with Defendant Lawrence and it is not reasonably likely that he can do so in good faith.

The demurrer to the Fourth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  The Fair Employment and Housing Act does not provide a cause of action against individual supervisors or other coworkers for discriminatory personnel decisions.  Reno v. Baird (1998) 18 Cal.4th 640, 645-647.  Leave to amend is granted to allege some other conduct by Defendant Lawrence in violation of FEHA.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  Plaintiff's claim for emotional distress is based on alleged wrongful discharge from employment and discrimination.  The individual Defendants are not liable for the alleged discharge or discrimination, for reasons stated above, and so cannot be held liable for emotional distress resulting from those events.  Leave to amend is granted to allege a claim based on conduct outside the employment bargain for which Defendants can be held liable.  The Court notes that Government Code § 820(a) provides a statutory basis for liability of public entity employees for common law torts.

The Court does not find that the face of the pleadings shows that Defendant Lawrence's conduct was insulated from liability by the immunity under Government Code § 820.2 for discretionary acts.  Plaintiff does not allege that Lawrence's conduct was the result of a conscious balancing of risks and advantages or that she was acting at all times within the scope of her authority.  Johnson v. State (1968)

69 Cal.2d 782, 794, and fn. 8.

10 days leave to amend. 10 days thereafter to respond. The order will be issued by the Court.
Defendant to file and serve a Notice of Entry of Order within 10 days of receipt of the Court's order.
Plaintiff's time to amend runs from the service of Notice of Entry of Order. See C.C.P. § 472b.

Dated:  11/16/2007

_____

Judge Cecilia P. Castellanos

---

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Chuo* digital

By _____

Deputy Clerk

# Exhibit J

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Demurrer to Complaint<br>Sustained |

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The demurrer by Defendant Lisa Udell is ruled upon as follows:

The demurrer to the First Cause of Action for Tortious Wrongful Discharge in Violation of Public Policy is SUSTAINED WITHOUT LEAVE TO AMEND.  Only an employer can be liable for the tort of wrongful discharge in violation of public policy.  Khajavi v. Feather River Anesthesia Medical Group (2000) 84 CA4th 32, 53.

The demurrer to the Second and Third Causes of Action is SUSTAINED WITHOUT LEAVE TO AMEND.  Plaintiff does not allege that he had a contractual relationship with Defendant Udell and it is not reasonably likely that he can do so in good faith.

The demurrer to the Fourth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  The Fair Employment and Housing Act does not provide a cause of action against individual supervisors or other coworkers for discriminatory personnel decisions.  Reno v. Baird (1998) 18 Cal.4th 640, 645-647. Leave to amend is granted to allege some other conduct by Defendant Udell in violation of FEHA.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  Plaintiff's claim for emotional distress is based on alleged wrongful discharge from employment and discrimination.  The individual Defendants are not liable for the alleged discharge or discrimination, for reasons stated above, and so cannot be held liable for emotional distress resulting from those events. Leave to amend is granted to allege a claim based on conduct outside the employment bargain for which Defendants can be held liable.  The Court notes that Government Code § 820(a) provides a statutory basis for liability of public entity employees for common law torts.

The Court does not find that the face of the pleadings shows that Defendant Udell's conduct was insulated from liability by the immunity under Government Code § 820.2 for discretionary acts. Plaintiff does not allege that Udell's conduct was the result of a conscious balancing of risks and advantages or that she was acting at all times within the scope of her authority.  Johnson v. State (1968)

69 Cal.2d 782, 794, and fn. 8.

10 days leave to amend.  10 days thereafter to respond.  The order will be issued by the Court.
Defendant to file and serve a Notice of Entry of Order within 10 days of receipt of the Court's order.
Plaintiff's time to amend runs from the service of Notice of Entry of Order.  See C.C.P. § 472b.

Dated:  11/16/2007

_____
Judge Cecilia P. Castellanos

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit K

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Faurie

Plaintiff/Petitioner(s)

VS.

The Berkeley Unified School District

Defendant/Respondent(s)
(Abbreviated Title)

No. RG07334590

Order

Demurrer to Complaint
Sustained

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before
the Honorable Cecilia P. Castellanos.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The demurrer by Defendant Cristina Obieta is ruled upon as
follows:

The demurrer to the First Cause of Action for Tortious Wrongful Discharge in Violation of Public
Policy is SUSTAINED WITHOUT LEAVE TO AMEND.  Only an employer can be liable for the tort
of wrongful discharge in violation of public policy.  Khajavi v. Feather River Anesthesia Medical
Group (2000) 84 CA4th 32, 53.

The demurrer to the Second and Third Causes of Action is SUSTAINED WITHOUT LEAVE TO
AMEND.  Plaintiff does not allege that he had a contractual relationship with Defendant Obieta and it
is not reasonably likely that he can do so in good faith.

The demurrer to the Fourth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  The Fair
Employment and Housing Act does not provide a cause of action against individual supervisors or other
coworkers for discriminatory personnel decisions.  Reno v. Baird (1998) 18 Cal.4th 640, 645-647.
Leave to amend is granted to allege some other conduct by Defendant Obieta in violation of FEHA.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND.  Plaintiff's
claim for emotional distress is based on alleged wrongful discharge from employment and
discrimination.  The individual Defendants are not liable for the alleged discharge or discrimination, for
reasons stated above, and so cannot be held liable for emotional distress resulting from those events.
Leave to amend is granted to allege a claim based on conduct outside the employment bargain for which
Defendants can be held liable.  The Court notes that Government Code § 820(a) provides a statutory
basis for liability of public entity employees for common law torts.

The Court does not find that the face of the pleadings shows that Defendant Obieta's conduct was
insulated from liability by the immunity under Government Code § 820.2 for discretionary acts.
Plaintiff does not allege that Obieta's conduct was the result of a conscious balancing of risks and
advantages or that she was acting at all times within the scope of her authority.  Johnson v. State (1968)

Order

69 Cal.2d 782, 794, and fn. 8.

10 days leave to amend.  10 days thereafter to respond.  The order will be issued by the Court.
Defendant to file and serve a Notice of Entry of Order within 10 days of receipt of the Court's order.
Plaintiff's time to amend runs from the service of Notice of Entry of Order.  See C.C.P. § 472b.

Dated:  11/16/2007

_____
Judge Cecilia P. Castellanos

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit L

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Demurrer to Complaint<br>Sustained |

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The demurrer by Defendant Richard Dodson is ruled upon as follows:

The demurrer to the First Cause of Action for Tortious Wrongful Discharge in Violation of Public Policy is SUSTAINED WITHOUT LEAVE TO AMEND. Only an employer can be liable for the tort of wrongful discharge in violation of public policy. Khajavi v. Feather River Anesthesia Medical Group (2000) 84 CA4th 32, 53.

The demurrer to the Second and Third Causes of Action is SUSTAINED WITHOUT LEAVE TO AMEND. Plaintiff does not allege that he had a contractual relationship with Defendant Dodson and it is not reasonably likely that he can do so in good faith.

The demurrer to the Fourth Cause of Action is SUSTAINED WITH LEAVE TO AMEND. The Fair Employment and Housing Act does not provide a cause of action against individual supervisors or other coworkers for discriminatory personnel decisions. Reno v. Baird (1998) 18 Cal.4th 640, 645-647. Leave to amend is granted to allege some other conduct by Defendant Dodson in violation of FEHA.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND. Plaintiff's claim for emotional distress is based on alleged wrongful discharge from employment and discrimination. The individual Defendants are not liable for the alleged discharge or discrimination, for reasons stated above, and so cannot be held liable for emotional distress resulting from those events. Leave to amend is granted to allege a claim based on conduct outside the employment bargain for which Defendants can be held liable. The Court notes that Government Code § 820(a) provides a statutory basis for liability of public entity employees for common law torts.

The Court does not find that the face of the pleadings shows that Defendant Dodson's conduct was insulated from liability by the immunity under Government Code § 820.2 for discretionary acts. Plaintiff does not allege that Dodson's conduct was the result of a conscious balancing of risks and

advantages or that he was acting at all times within the scope of his authority. Johnson v. State (1968) 69 Cal.2d 782, 794, and fn. 8.

10 days leave to amend. 10 days thereafter to respond. The order will be issued by the Court. Defendant to file and serve a Notice of Entry of Order within 10 days of receipt of the Court's order. Plaintiff's time to amend runs from the service of Notice of Entry of Order. See C.C.P. § 472b.

Dated:  11/16/2007

Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Chivo* digital

By _____

Deputy Clerk

# Exhibit M

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie <br> Plaintiff/Petitioner(s) <br><br> VS. <br><br> The Berkeley Unified School District <br> Defendant/Respondent(s) <br> (Abbreviated Title) | No. RG07334590 <br><br> Order <br><br> Demurrer to Complaint <br> Sustained |

The Demurrer to Complaint was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The demurrer by Defendant Tina Brier is ruled upon as follows:

The demurrer to the First Cause of Action for Tortious Wrongful Discharge in Violation of Public Policy is SUSTAINED WITHOUT LEAVE TO AMEND. Only an employer can be liable for the tort of wrongful discharge in violation of public policy. Khajavi v. Feather River Anesthesia Medical Group (2000) 84 CA4th 32, 53.

The demurrer to the Second and Third Causes of Action is SUSTAINED WITHOUT LEAVE TO AMEND. Plaintiff does not allege that he had a contractual relationship with Defendant Brier and it is not reasonably likely that he can do so in good faith.

The demurrer to the Fourth Cause of Action is SUSTAINED WITH LEAVE TO AMEND. The Fair Employment and Housing Act does not provide a cause of action against individual supervisors or other coworkers for discriminatory personnel decisions. Reno v. Baird (1998) 18 Cal.4th 640, 645-647. Leave to amend is granted to allege some other conduct by Defendant Brier in violation of FEHA.

The demurrer to the Fifth Cause of Action is SUSTAINED WITH LEAVE TO AMEND. Plaintiff's claim for emotional distress is based on alleged wrongful discharge from employment and discrimination. The individual Defendants are not liable for the alleged discharge or discrimination, for reasons stated above, and so cannot be held liable for emotional distress resulting from those events. Leave to amend is granted to allege a claim based on conduct outside the employment bargain for which Defendants can be held liable. The Court notes that Government Code § 820(a) provides a statutory basis for liability of public entity employees for common law torts.

The Court does not find that the face of the pleadings shows that Defendant Brier's conduct was insulated from liability by the immunity under Government Code § 820.2 for discretionary acts. Plaintiff does not allege that Brier's conduct was the result of a conscious balancing of risks and advantages or that she was acting at all times within the scope of her authority. Johnson v. State (1968)

69 Cal.2d 782, 794, and fn. 8.

10 days leave to amend.  10 days thereafter to respond.  The order will be issued by the Court.
Defendant to file and serve a Notice of Entry of Order within 10 days of receipt of the Court's order.
Plaintiff's time to amend runs from the service of Notice of Entry of Order.  See C.C.P. § 472b.

Dated:  11/16/2007

_____
Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit N

1 | KELLIE M. MURPHY (SBN 189500)
2 | JOHNSON SCHACHTER & LEWIS
  | A Professional Law Corporation
  | California Plaza
3 | 2180 Harvard Street, Suite 560
  | Sacramento, CA 95815
4 | Telephone: (916) 921-5800
  | Facsimile: (916) 921-0247
5 |
6 | Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
  | UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER
7 |

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## IN AND FOR THE COUNTY OF ALAMEDA

| 10 | GENE FAURIE, JR., | ) | Case No. RG 07334590 |
|----|----|----|----|
| 11 | Plaintiff | ) ) | **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF** |
| 12 | v. | ) ) | **DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO** |
| 13 | The BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE LAWRENCE, | ) ) | **STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR** |
| 14 | individually and in her official capacity as BUSD Superintendent; LISA UDELL, | ) ) | **DAMAGES** |
| 15 | individually and in her official capacity as BUSD Assistant Superintendent, Human | ) ) | [Filing Fee Exempt per Government Code |
| 16 | Resources; CRISTINA OBIETA, individually and in her official capacity as BUSD Director, | ) ) | §6103] |
| 17 | Classified Personnel; RICHARD DODSON, in his official capacity as BUSD Director, Labor | ) ) | |
| 18 | Relations; TINA BRIER, individually and in her official capacity as BUSD Director, | ) ) | **Date:** September 25, 2006 **Time:** 2:00 p.m. |
| 19 | Classified Personnel, | ) ) | **Dept:** 18 |
| 20 | Defendants. | ) ) | |
| 21 | | ) | **RESERVATION NO. R-747057** |

22

## I. Introduction

23  Plaintiff Gene Faurie, Jr. alleges numerous causes of action against his former employer,

24  Berkeley Unified School District ("the District") and several employees of the District, related to

25  his employment and his resignation from such employment. Plaintiff seeks punitive damages

26  against all defendants, including the District. Punitive damages, however, are not recoverable as

27  a matter of law against a public entity.

28  / / /

1

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S COMPLAINT FOR DAMAGES**

1

## II. Standard of Review

2    California Code of Civil Procedure section 432(b)(1) provides that any party may, within

3  the time allowed to respond to a pleading, file and serve a notice of motion to strike the whole or

4  any part of a pleading.  A motion to strike can be used to attack claims for damages that are not

5  supported by the causes of action pled.  (Weil & Brown, *Civil Procedure Before Trials*, 7:182.)

6  In addition, California Code of Civil Procedure section 436 provides in pertinent part that, "the

7  court may, upon a motion pursuant to section 435, or at any time in its discretion and upon terms

8  it deems proper: (a) strike out any irrelevant, false, or improper matter inserted in any pleading."

9

## III. Statement of Facts

10    The Complaint is replete with conclusory statements and unsupported allegations against

11  all of the defendants.  The allegations against the District (apart from the hyperbole and invective

12  that permeates the Complaint), are the sum total of the allegations against the individual

13  defendants, as follows:

14    Plaintiff began working at the District in about October 2002.[1]  Plaintiff indicated that he

15  was considering resigning on July 11, 2006,[2] and he resigned on July 17, 2006.[3]

16    Plaintiff alleges that defendant Tina Brier, Director of Classified Personnel for the

17  District, failed to accept and implement Plaintiff's complaints about the District's alleged

18  employment of a person (who Plaintiff fails to even name in the Complaint) with a criminal

19  record,[4] failed to respond to his complaints about the privacy of employee personnel files,[5] failed

20  to obtain "'livescan' digital fingerprints" for employees,[6] and failed to follow "proper

21

22

23    [1]  Complaint for Damages (hereinafter "Complaint"), p. 4, ¶17.

24    [2]  Complaint, pp. 17-18, ¶¶59-60.

25    [3]  Complaint, p. 4, ¶16.

26    [4]  Complaint, p. 5, ¶21; pp. 10-11; ¶¶41-42.

27    [5]  Complaint, p. 11, ¶43.

28    [6]  Complaint, pp. 12-14, ¶46.

2

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1   procedures" regarding CalPERS passwords.[7] Plaintiff further alleges that when he told Ms. Brier

2   he planned to claim workers compensation for an alleged repetitive stress injury to his hands, Ms.

3   Brier said "if this is what you want to do … fine", "threw" a signed claim form at him, and told

4   him to stop typing.[8] After he filed his worker's compensation claim, Plaintiff asserts that he was

5   entitled to ten minute breaks every hour, and then twenty minute breaks every hour, and that Ms.

6   Brier allegedly "prevented" him from taking those breaks by giving him work that did not require

7   him to type.[9] According to Plaintiff, the worker's compensation physician placed him on medical

8   leave "to stop Brier's refusal to accommodate his medical limitations."[10]  Plaintiff also alleges

9   that, in February 2006, after he refused to perform assigned tasks, Ms. Brier threatened him with

10  disciplinary action and told him that failure to perform his job responsibilities would constitute

11  insubordination.[11]  Finally, Plaintiff claims he filled in for Ms. Brier and performed duties that

12  were "above his professional classification."[12] He claims that Ms. Brier refused to give Plaintiff

13  "differential pay" for his work,[13] though there is no explanation of how or whether that was Ms.

14  Brier's responsibility.  Plaintiff admits that Ms. Brier consistently ranked his performance high.[14]

15      Plaintiff alleges that defendant Richard Dodson, Director of Labor Relations for the

16  District, stated Mr. Dodson stated "you should do any job asked of you because you are smart

17  regardless of whether or not it is in your job classification," when Plaintiff complained about

18  working outside of his classification.[15]  Plaintiff further alleges that, when Plaintiff referred an

19

20      [7] Complaint, pp. 13-14, ¶49.

21      [8] Complaint, p. 14, ¶50.

22      [9] Complaint, pp. 14-15, ¶51.

23      [10] Id.

24      [11] Complaint, p. 16, ¶¶55-56.

25      [12] Complaint, p. 7, ¶30.

26      [13] Complaint, p. 7, ¶29; p. 8, ¶32.

27      [14] Complaint, pp 16-17, ¶57.

28      [15] Complaint, p. 8, ¶33.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1   administrator to Mr. Dodson regarding a request to review an employee file, he "was visibly

2   irritated," "rolled his eyes and looked away from [Plaintiff] as he accompanied the individual to

3   the file room," left the employee alone with the files for several minutes, and reacted "with

4   hostility and condescension" when Plaintiff attempted to address the problem with Mr. Dodson.[16]

5   Plaintiff also alleges that he "voiced . . . a concern" to Mr. Dodson regarding failure by the

6   District to obtain "livescan" digital fingerprint records of employees.[17]  Finally, Plaintiff alleges

7   that he "regularly drew to the attention of . . . Dodson the fact that [the District] routinely failed

8   to follow proper procedures for newly appointed employees for enrollment in" CalPERS.[18]

9        Plaintiff alleges that defendant Michele Lawrence, Superintendent of the District,

10  "approved" an unspecified "BUSD policy."[19]  Plaintiff further alleges that Ms. Lawrence "hired"

11  an unnamed employee that Plaintiff contends should not have been hired,[20] and "hired" an

12  unnamed individual that was "untrained, was present at most three days per week, and relied on

13  and consulted with [Plaintiff] to learn the Department's procedures and daily administrative

14  needs."[21]  Plaintiff also alleges that another defendant, Tina Brier, told Plaintiff that she had

15  notified Ms. Lawrence regarding Plaintiff's concerns about the hiring of unnamed employees that

16  Plaintiff felt should not have been hired.[22]  Plaintiff alleges that Ms. Lawrence "hired" an

17  attorney Plaintiff does not feel was neutral.[23]  Plaintiff alleges that another defendant, Lisa Udell,

18  told Plaintiff that a directive she gave Plaintiff was "consistent with BUSD policy as

19

20

21        [16]  Complaint, p. 12, ¶44.

22        [17]  Complaint, pp. 12-13, ¶46.

23        [18]  Complaint, pp. 13-14, ¶49.

24        [19]  Complaint, p. 4, ¶17.

25        [20]  Complaint, p. 5, ¶21.

26        [21]  Complaint, pp. 7-8, ¶31.

27        [22]  Complaint, p. 11, ¶42.

28        [23]  Complaint, p. 16, ¶56.

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

4

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  communicated and authorized by Superintendent Lawrence."[24]  Plaintiff further alleges that Ms.

2  Lawrence inaccurately stated that Plaintiff had six days of sick leave accrued and later

3  acknowledged the error.[25]  Finally, Plaintiff alleges that Ms. Lawrence responded to letters

4  written by Plaintiff's counsel regarding his resignation.[26]

5        Plaintiff alleges that defendant Cristina Obieta, Director of Classified Personnel for the

6  District,"appeared" in his office with the requested personnel file, advised Plaintiff that he must

7  accompany the employee during review of the file, and used a "hostile and unprofessional tone"

8  when Plaintiff attempted to discuss the issue after Plaintiff had referred a personnel file review

9  request to defendant Richard Dodson.[27]  Plaintiff further alleges that Ms. Obieta was hired as

10  Director of Classified Personnel, but "lacked appropriate training and experience."[28]  Finally,

11  Plaintiff alleges that he left a voicemail message for Ms. Obieta, informing her that he was ill and

12  would notify her on Monday, July 17, 2007 whether he intended to tender his resignation, after

13  which Ms. Obieta left a voicemail message in response telling Plaintiff he needed a doctor's note

14  and telling him that "You've also told a number of people that you are resigning, um, so, you can

15  also go ahead and bring in your letter of resignation tomorrow."[29]

16        Plaintiff alleges that defendant Lisa Udell, Assistant Superintendent of Human Resources,

17  granted another employee an extension of a deadline and authorized overtime to perform step

18  increase determinations for that employee.[30]  Plaintiff further alleges that Ms. Udell "possessed

19  apparent supervisory authority over employees in the BUSD Human Resources Department" but

20  "was untrained and relied on [Plaintiff] to advise her and perform duties of her position while she

21

22        [24] Complaint, p. 17, ¶59.

23        [25] Complaint, p. 19, ¶63.

24        [26] Complaint, pp. 19-20, ¶¶63-66.

25        [27] Complaint, p. 12, ¶45.

26        [28] Complaint, p. 17, ¶58.

27        [29] Complaint, p. 18, ¶¶60-61.

28        [30] Complaint, p. 15, ¶54.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO STRIKE PORTIONS OF
PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  learned it."[31]  Finally, Plaintiff alleges that Ms. Udell called a meeting, at which she "directed

2  staff . . . to ignore legal violations by the District," and "reacted to [Plaintiff's] questioning of her

3  directive" with hostility, and told him "that she 'knows we are breaking the law' but that her

4  directive was consistent with BUSD policy . . . ."[32]

5                                        **IV.  Argument**

6          Punitive and exemplary damages are not available as a matter of law against public

7  entities.  (See Government Code §818 ["Notwithstanding any other provision of law, a public

8  entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages

9  imposed primarily for the sake of example and by way of punishing the defendant."]; *Gallo v.*

10 *Board of Regents of the University of California*, 916 F.Supp. 1005 (1995) [punitive damages not

11 available against public entity in action alleging disability discrimination under federal and state

12 law].)

13         The punitive and exemplary damage allegations against the District[33] must thus be

14 stricken.

15                                        **V.  Conclusion**

16         For the foregoing reasons, the District respectfully requests that the Court grant its motion

17 to strike all punitive damage allegations against it from the Complaint.

18
   Date:  August 27, 2007                    JOHNSON SCHACHTER & LEWIS
19                                            A Professional Law Corporation

20

21
                                            _____
22                                          KELLIE M. MURPHY
                                            Attorneys for Defendant **BERKELEY**
23                                          **UNIFIED SCHOOL DISTRICT**

24

25
   _____
26    [31] Complaint, p. 17, ¶58.

27    [32] Complaint, p. 17, ¶59.

28    [33] Such allegations are found in Plaintiff's Complaint for Damages as follows:  p. 24, ¶90, lines 21-23; p.
   30, ¶116, lines 18-20; and p. 31, ¶2, line 26.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF**
**DEFENDANT BERKELEY UNIFIED SCHOOL DISTRICT'S MOTION TO STRIKE PORTIONS OF**
**PLAINTIFF'S COMPLAINT FOR DAMAGES**

1

## PROOF OF SERVICE

2

**CASE NAME:**     **Faurie v. Berkeley Unified School District, et al.**
3     **CASE NO.:**       **RG 07334590**

4       I am employed in the County of Sacramento. I am over the age of eighteen years and not
a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5   560, Sacramento, CA 95815.

6       I am familiar with this office's practice whereby the mail is sealed, given the appropriate
postage and placed in a designated mail collection area. Each day's mail is collected and
7   deposited in a United States mailbox after the close of each day's business.

8       On August 27, 2007, I served the following: **MEMORANDUM OF POINTS &**
**AUTHORITIES IN SUPPORT OF DEFENDANT BERKELEY UNIFIED SCHOOL**
9   **DISTRICT'S DEMURRER TO PLAINTIFF'S COMPLAINT FOR DAMAGES OR,**
**ALTERNATIVELY, MOTION TO STRIKE PORTIONS OF PLAINTIFF'S**
10   **COMPLAINT FOR DAMAGES**

11

12   <u>X</u>     United States Mail - on all parties in said action by placing a true copy of the above-
described document(s) enclosed in a sealed envelope in the designated area for outgoing
13           mail addressed as set forth below.

14   __     By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
a true copy of the above-described document(s).

15   __     Federal Express - on all parties in said action by placing a true copy of the above-
described document(s) in an authorized area for pick-up by an authorized express service
16           courier the same day it is collected and processed in the ordinary course of business as set
forth below.
17

18   __     Personal Service - By personally delivering or causing to be delivered a true copy of the
above-described document to the person(s) and at the address(es) set forth as shown
below.
19

20   Eric Borgerson, Esq.
LAW OFFICE OF ERIC BORGERSON
2625 School Street
21   Oakland, CA 94602

22

23   __     FEDERAL: I declare that I am employed in the office of a member of the bar of this
Court at whose direction service was made.

24       I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed on August 27, 2007, at Sacramento, California.
25

26

27                   Carolyn A. Apodaca

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# Exhibit O

1  KELLIE M. MURPHY (SBN 189500)
   JOHNSON SCHACHTER & LEWIS
2  A Professional Law Corporation
   California Plaza
3  2180 Harvard Street, Suite 560
   Sacramento, CA 95815
4  Telephone: (916) 921-5800
   Facsimile: (916) 921-0247
5
   Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
6  UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                **IN AND FOR THE COUNTY OF ALAMEDA**

10  GENE FAURIE, JR.,                          )   Case No. RG 07334590
                                               )
11        Plaintiff                            )   **MEMORANDUM OF POINTS &**
                                               )   **AUTHORITIES IN SUPPORT OF**
12  v.                                         )   **DEFENDANT MICHELE**
                                               )   **LAWRENCE'S MOTION TO STRIKE**
13  The BERKELEY UNIFIED SCHOOL                )   **PORTIONS OF PLAINTIFF'S**
    DISTRICT; MICHELLE LAWRENCE,               )   **COMPLAINT FOR DAMAGES**
14  individually and in her official capacity as )
    BUSD Superintendent; LISA UDELL,           )   **[Filing Fee Exempt per Government Code**
15  individually and in her official capacity as )  **§6103]**
    BUSD Assistant Superintendent, Human       )
16  Resources; CRISTINA OBIETA, individually   )
    and in her official capacity as BUSD Director, )
17  Classified Personnel; RICHARD DODSON, in   )
    his official capacity as BUSD Director, Labor )  **Date:**  September 25, 2007
18  Relations; TINA BRIER, individually and in )    **Time:**  2:00 p.m.
    her official capacity as BUSD Director,     )   **Dept:**  18
19  Classified Personnel,                      )
                                               )
20        Defendants.                          )
                                               )
21  _____)   **RESERVATION NO. R-747068**

22                    **I. Introduction**

23        Plaintiff Gene Faurie, Jr. alleges numerous causes of action against his former employer,

24  Berkeley Unified School District ("the District") and several employees of the District, including

25  defendant Michele Lawrence (erroneously sued herein as "Michelle Laurence"), related to his

26  employment and his resignation from such employment. Plaintiff seeks punitive damages

27  against all defendants, including Ms. Lawrence. Punitive damages, however, are not recoverable

28  as a matter of law against a public employee for acts taken in her representative capacity.

                                    1

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1    Further, Plaintiff has not stated sufficient facts to support a claim for punitive damages against

2    Ms. Lawrence.  All punitive damage allegations against Ms. Lawrence must therefore be

3    stricken.

## II.  Standard of Review

5    California Code of Civil Procedure section 432(b)(1) provides that any party may, within

6    the time allowed to respond to a pleading, file and serve a notice of motion to strike the whole or

7    any part of a pleading.  A motion to strike can be used to attack claims for damages that are not

8    supported by the causes of action pled.  (Weil & Brown, *Civil Procedure Before Trials*, 7:182.)

9    In addition, California Code of Civil Procedure section 436 provides in pertinent part that, "the

10   court may, upon a motion pursuant to section 435, or at any time in its discretion and upon terms

11   it deems proper: (a) strike out any irrelevant, false, or improper matter inserted in any pleading."

## III.  Statement of Facts

13   The Complaint is replete with conclusory statements and unsupported allegations against

14   all of the defendants.  The following is alleged against Ms. Lawrence (apart from the hyperbole

15   and invective that permeates the Complaint):

16   Plaintiff began working at the District in about October 2002.[1]  Ms. Lawrence was

17   Superintendent of the District.[2]  Plaintiff indicated that he was considering resigning on July 11,

18   2006,[3] and he resigned on July 17, 2006.[4]

19   Plaintiff's sole allegations against Ms. Lawrence are as follows: (1) Ms. Lawrence

20   "approved" an unspecified "BUSD policy";[5] (2) Ms. Lawrence "hired" an unnamed employee

21   that Plaintiff contends should not have been hired;[6] (3) Ms. Lawrence "hired" an unnamed

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

---

23   [1]  Complaint for Damages (hereinafter "Complaint"), p. 4, ¶17.

24   [2]  Complaint, p. 2, ¶6.

25   [3]  Complaint, pp. 17-18, ¶¶59-60.

26   [4]  Complaint, p. 4, ¶16.

27   [5]  Complaint, p. 4, ¶17.

28   [6]  Complaint, p. 5, ¶21.

2

1    consulted with [Plaintiff] to learn the Department's procedures and daily administrative needs";[7]

2    (4) another defendant, Tina Brier, told Plaintiff that she had notified Ms. Lawrence regarding

3    Plaintiff's concerns about the hiring of unnamed employees that Plaintiff felt should not have

4    been hired;[8] (5) Ms. Lawrence "hired" an attorney Plaintiff does not feel was neutral;[9] (6) another

5    defendant, Lisa Udell, told Plaintiff that a directive she gave Plaintiff was "consistent with

6    BUSD policy as communicated and authorized by Superintendent Lawrence";[10] (7) Ms.

7    Lawrence inaccurately stated that Plaintiff had six days of sick leave accrued and later

8    acknowledged the error;[11] and (8) Ms. Lawrence responded to letters written by Plaintiff's

9    counsel regarding his resignation.[12]

10    ## IV.  Argument

11    **A.    The punitive damage allegations in Plaintiff's Complaint must be stricken
       because they are not recoverable as a matter of law against an individual
12     public employee for acts taken in her representative capacity.**

13    Individual public entity employees sued in their representative capacities cannot be held

14    liable for an award of punitive damages.  (See Government Code §818.)  State officials acting in

15    their official capacity are immune from punitive damages.  (See *Will v. Mich. Dep't of State*

16    *Police* (1989) 491 U.S. 58, 71 [a suit against a state official in his or her official capacity is not a

17    suit against the official but rather is a suit against the official's office and is therefore no different

18    from a suit against the State itself]; see also Government Code §815.2; *Casterson v. Superior*

19    *Court* (2002) 101 Cal.App.4th 177, 187 [a school district is vicariously liable for the negligence

20    of employees in the course and scope of their employment].)

21

22

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

23    [7] Complaint, pp. 7-8, ¶31.

24    [8] Complaint, p. 11, ¶42.

25    [9] Complaint, p. 16, ¶56.

26    [10] Complaint, p. 17, ¶59.

27    [11] Complaint, p. 19, ¶63.

28    [12] Complaint, pp. 19-20, ¶¶63-66.

3

1    Plaintiff's Complaint for Damages expressly alleges that Ms. Lawrence was acting within

2    the course and scope of her employment with the District.  (See Complaint for Damages, p. 3,

3    ¶11.)  There are absolutely no facts pled in the Complaint for Damages to establish *any* acts by

4    Ms. Lawrence that were outside the course and scope of her employment.  Because all of the

5    alleged actions were within the scope of her employment, Ms. Lawrence cannot be liable as a

6    matter of law for punitive damages.

7

**B.    The punitive damage allegations in Plaintiff's Complaint must be stricken
8          because Plaintiff fails to plead any facts supporting such allegations.**

9    Where a Complaint seeks punitive damages, California Civil Code section 3294 requires

10   that the plaintiff establish "oppression, fraud, or malice."  (*Brousseau v. Jarrett* (1977) 73

11   Cal.App.3d 864, 872.)  Punitive damage allegations are improper where there are no *facts* alleged

12   to show that a party acted with malice, oppression, or fraud.  (See *Smith v. Superior Court* (1992)

13   10 Cal.App.4th 1033, 1041-1042.)

14   California Civil Code section 3294 defines "oppression" as "despicable conduct that

15   subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

16   Section 3294 also states that "fraud" means "an intentional misrepresentation, deceit, or

17   concealment of a material fact known to the defendant with the intention on the part of defendant

18   of thereby depriving a person of property or legal rights or otherwise causing injury."  Section

19   3294 provides that "malice" means "conduct which is intended to cause injury to the plaintiff or

20   despicable conduct which is carried on by the defendant with a willful and conscious disregard of

21   the rights and safety of others."  Courts have further indicated that in order to support a claim for

22   punitive damages, a complaint must contain *facts* that would indicate ***evil motive*** and intent to

23   injure on the part of defendant.  (See *Ebaugh v. Rabkin* (1972) 22 Cal.App.3d 891, 894-895;

24   *Cyrus v. Haveson* (1976) 65 Cal.App. 3d 306, 316-317 [holding the facts demonstrating

25   defendant's oppression, fraud or malice must be alleged.].)

26   Moreover, under controlling authority, fairness to defendants require that claims for

27   punitive damages be pled with specificity.  (*G.D. Searlen & Co v. Superior Court* (1975) 49

28   Cal.App.3d 22, 29.)  Civil Code §3294(a) provides as follows:

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

4

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1  In an action for the breach of an obligation not arising from contract, where it is
2  proven by clear and convincing evidence that the defendant has been guilty of
   oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may
3  recover damages for the sake of example and by way of punishing the defendant.

4  **It is not enough to simply plead in conclusory fashion that defendants acted with**

5  **oppression, fraud or malice**. (*Cyrus, supra*, 65 Cal.App. 3d at 316-317.)  Rather, a plaintiff

6  must specifically state facts illustrating such action on the part of defendants.  (*Smithson v.*

7  *Sparber* (1932) 123 Cal.App.225, 232.)

8  Numerous California cases, dealing with this issue at the demurrer stage, provide that a

9  plaintiff must allege *facts describing* specific conduct that is oppressive, fraudulent, or malicious.

10  (*Monge v. Superior Court* (1986) 176 Cal.App.3d 503, 511 [the underlying complaint provided

11  *descriptive factual* allegations showing that the *only* ostensible motive for defendants' injurious

12  conduct was to vex, harass, and annoy plaintiffs by subjecting them to an oppressive job

13  environment]; *Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, 5-7 [the terms "wrongfully

14  and intentionally," and "in retaliation" are not objectionable terms in a pleading when sufficient

15  *facts* are alleged to support the allegation]; *James v. Herbert* (1957) 149 Cal.App.2d 741, 749-

16  750 [plaintiff specifically alleged *details* of fraud and malice in her complaint].)

17  Plaintiff's complaint does not allege any facts, as opposed to conclusory statements, to

18  support his allegations of punitive damages.  Plaintiff's very general and conclusory statements

19  about malice and evil motive are insufficient, and none of the *facts* alleged *show* malice or an

20  evil motive.  *All* the punitive damage allegations[13] must therefore be stricken.

21

22  Date:    August 27, 2007                          JOHNSON SCHACHTER & LEWIS
23                                                    A Professional Law Corporation
24
25                                                    KELLIE M. MURPHY
26                                                    Attorneys for Defendant MICHELE LAWRENCE
27

28  [13]  Such allegations are found in Plaintiff's Complaint for Damages as follows:   p. 24, ¶90, lines 21-23; p. 30, ¶116, lines 18-20; and p. 31, ¶2, line 26.

5

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE
LAWRENCE'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES**

1

## PROOF OF SERVICE

2

**CASE NAME:**    **Faurie v. Berkeley Unified School District, et al.**
3       **CASE NO.:**      **RG 07334590**

4        I am employed in the County of Sacramento. I am over the age of eighteen years and not
a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5    560, Sacramento, CA 95815.

6        I am familiar with this office's practice whereby the mail is sealed, given the appropriate
postage and placed in a designated mail collection area. Each day's mail is collected and
7    deposited in a United States mailbox after the close of each day's business.

8        On August 27, 2007, I served the following: **MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF DEFENDANT MICHELE LAWRENCE'S MOTION
9    TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES**

10
__X__    United States Mail - on all parties in said action by placing a true copy of the above-
11            described document(s) enclosed in a sealed envelope in the designated area for outgoing
mail addressed as set forth below.

12
__       By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
13            a true copy of the above-described document(s).

14
__       Federal Express - on all parties in said action by placing a true copy of the above-
described document(s) in an authorized area for pick-up by an authorized express service
15            courier the same day it is collected and processed in the ordinary course of business as set
forth below.

16
__       Personal Service - By personally delivering or causing to be delivered a true copy of the
17            above-described document to the person(s) and at the address(es) set forth as shown
below.

18
Eric Borgerson, Esq.
19   LAW OFFICE OF ERIC BORGERSON
2625 School Street
20   Oakland, CA 94602

21
__       FEDERAL: I declare that I am employed in the office of a member of the bar of this
22            Court at whose direction service was made.

23        I declare under penalty of perjury that the foregoing is true and correct and that this
declaration was executed on August 27, 2007, at Sacramento, California.
24

25                                                                  _____
                                             Carolyn A. Apodaca
26

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# Exhibit P

1   ERIC BORGERSON (State Bar No. 177943)
    LAW OFFICE OF ERIC BORGERSON
2   2625 School Street
    Oakland, CA  94602
3   Telephone:     (510) 866-3738
    Facsimile:     (510) 535-9898
4
    Attorney for Plaintiff
5   GENE FAURIE, JR.

6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                               COUNTY OF ALAMEDA

10

11  GENE FAURIE, JR.,                        CASE NO.  RG 07334590

12              Plaintiff,

13        vs.                                ASSIGNED For All Purposes To
                                             Judge Cecilia P. Castellanos,
14  The BERKELEY UNIFIED SCHOOL              DEPARTMENT 18
    DISTRICT; MICHELLE LAWRENCE,
15  individually and in her official capacity as   **PLAINTIFF'S OPPOSITION TO**
    BUSD Superintendent; LISA UDELL,         **MOTIONS TO STRIKE OF DEFENDANTS**
16  individually and in her official capacity as   **BERKELEY UNIFIED SCHOOL**
    BUSD Assistant Superintendent, Human     **DISTRICT, MICHELE LAWRENCE, LISA**
17  Resources; CRISTINA OBIETA,              **UDELL, CRISTINA OBIETA, RICHARD**
    individually and in her official capacity as   **DODSON, AND TINA BRIER**
18  BUSD Director, Classified Personnel;
    RICHARD DODSON, in his official          Date:   November 16, 2007
19  capacity as BUSD Director, Labor         Time:  1:30 p.m.
    Relations; TINA BRIER, individually and   Dept:   18
20  in her official capacity as BUSD Director,
    Classified Personnel,                    Reservation Nos. R-747057; R-747068;
21                                            R-747074; R-747081; R-747087; R-747092
                Defendants.
22

23

24

25

26

27

28

    _____
                 OPPOSITION TO DEFENDANTS' MOTIONS TO STRIKE - CASE NO. RG 07334590

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Gene Faurie, Jr. ("Plaintiff" or "Mr. Faurie") respectfully submits this memorandum of points and authorities in opposition to the Motions to Strike filed by Defendants Berkeley Unified School District ("BUSD"); Michele Lawrence ("Lawrence"); Lisa Udell ("Udell"); Cristina Obieta ("Obieta"); Richard Dodson ("Dodson") and Tina Brier ("Brier").

## II.    STANDARDS OF REVIEW

A motion to strike, like a demurrer, attacks the face of the Complaint and can only be sustained if grounds for it appear on the face of the challenged pleading.  (Code of Civil Procedure §§ 437(a); 589(b).)   In ruling on a motion to strike, the Complaint is to be liberally construed with a view to substantial justice between the parties.  (*Id*. at § 452.)  All  reasonable doubts are to be construed in the Plaintiff's favor.  (*Katz v. Feldman* (1972) 23 Cal.App3d 500.) If a court grants a motion to strike, the Plaintiff should be allowed to amend the Complaint to cure the defect if reasonably possible.  (*McDonald v. Superior Court* (1986) 180 Cal.App3d 297.)

A public employee may be held liable for punitive damages, since Government Code § 820(a) provides that a public employee is liable for his or her unlawful acts to the same extent as a private person.  (*Runyon v. Superior Court* (1986) 187 Cal.App.3d 878.)  The theoretical availability of immunity under Gov. Code § 820.2 for discretionary acts of a public employee does not justify the granting of a motion to strike a claim for punitive damages apart from a final determination that the immunity exists (which it does not, as argued at length in Plaintiff's oppositions to Defendants' demurrers.)  (*Runyon*, *supra*, 187 Cal.App.3d at p. 882.)

## III.  FACTS[1]

Plaintiff was employed by the BUSD Human Resources ("H.R.") Department in the position of Administrative Coordinator – Confidential until the date of his constructive discharge on or about July 17, 2006.  (Cmplt. ¶¶ 4, 17.)  Lawrence was employed by BUSD in the position of Superintendent. (*Id.* ¶ 6.)[2]  Defendant Tina Brier  was employed as Director, Classified

---

[1] Detailed factual allegations are set forth in Plaintiff's Complaint ("Cmplt"). The following is a brief map to those detailed allegations, which are incorporated herein by reference.

[2] By reasonable (in fact, unavoidable) inference, this means that Lawrence was "the district's foremost appointed official, with primary responsibility for representing, guiding, and administering [the district]" pursuant to policy established by the BUSD Board of Directors.

1    Personnel); Defendant Richard Dodson was employed as Director, Labor Relations; Defendant

2    Lisa Udell was employed as Assistant Superintendent, Human Resources, and Cristina Obieta

3    was employed as Director, Classified Personnel.  (Cmplt. ¶¶ 5-10.)  Each of the Defendants acted

4    as the agents of Lawrence and each other at all material times.  (Cmplt. ¶ 11.)[3]  Plaintiff was

5    subordinate in rank to each and every Defendant and, at all material times, reported to each of

6    them (whether directly or through an intermediate Defendant(s)).  (Cmplt. ¶ 58.)  At all times, as

7    with each of the Defendants, Plaintiff ultimately reported to Lawrence.  (Cmplt. ¶ 27.)

8          Throughout his tenure at BUSD, Mr. Faurie was ranked in the highest category of each of

9    his performance evaluations.  Plaintiff's performance evaluations also demonstrated that he

10   worked above his assigned classification, which Plaintiff is informed and believes has been

11   confirmed by a classification study performed during and after his employment.  (*Id*. ¶ 57.)

12         Throughout the course of Plaintiff's employment, Lawrence, Brier, and, upon their

13   appointments, Dodson, Udell , and Obieta, regularly ordered Plaintiff to engage in or ignore

14   unlawful acts and practices within the H.R. Department, subjected Plaintiff to a retaliatory, hostile

15   environment, with Lawrence's knowledge and approval, when he questioned, objected to, or

16   refused to implement, such unlawful directives and/or policies and practices.  (Cmplt. ¶¶ 16, 17.)

17   The unlawful activities that Mr. Faurie reported and resisted included:

18        (1) Discrimination based on employees' sex.  (Cmplt ¶¶ 18, 19, 28-40, 54, 58, 62.)

19        (2) Lawrence's pattern and practice of hiring employees without statutorily required
             fingerprint clearances and of hiring and retaining employees with criminal records of
20           prohibited offenses who lied about their records of convictions for fraud-related offenses
             during and after the hiring process  (Cmplt ¶¶ 41, 42);

21        (3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the
             (statutorily and Constitutionally protected) privacy of employee personnel files (*Id*. ¶ 43);
22
          (4) The H.R. Department's failure to notify the Department of Justice upon the termination of
23           employment of various individuals, which failure resulted in the District continuing to
             receive subsequent arrest reports it was statutorily prohibited from obtaining (*Id*. ¶ 43);
24
          (5) Condescension and hostility by Defendants Dodson and Obieta, under Lawrence's
25           direction, when Plaintiff confronted him regarding an unlawful practice of allowing an

26   _____

27   (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 983, citing Ed. Code Sec. 35035.)
     [3] By reasonable inference from the plain meaning of their official titles, (Cmplt ¶¶ 5-10.)
28   Defendants Brier , Dodson, Udell, and Obieta reported to Lawrence and were required to
     implement her administrative directives.

                                          - 2 -

individual under criminal investigation to view an employee's personnel file without supervision (*Id.* ¶ 44);

(6) Failure by the District to obtain "livescan" digital fingerprint records of current employees as required by law.  (*Id.* ¶ 46.)

(7) Failure by Defendants to follow procedures mandated by statute and regulation for enrolling newly appointed employees in the California Public Employee Retirement System ("CalPERS") (*Id.* ¶ 49) and unlawful transfer of passwords to individuals who were not authorized to access the CalPERS system through the Internet. (*Ibid.*)¶

(8) The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with predetermined outcomes, and Defendants' improper performance of multiple roles within the disciplinary process, in violation of employees' rights to procedural due process and orderly application of the Merit System Rules.  (*Id.* ¶ 55, 56.)

(9) The District's failure to adhere to the federal No Child Left Behind Act testing requirements (*Id.* ¶ 59);

(10)  Unlawful forced early retirement of several employees based on improper District actions. (*Ibid.*)

Plaintiff repeatedly attempted to address these unlawful practices in the H.R. Department but Defendants, with Lawrence's knowledge and approval, reacted with hostility and admonishments to be silent.  Plaintiff therefore submitted telephonic complaints and inquiries to the State of California Department of Justice ("DOJ"), County Office of Education, and CalPERS regarding the ignored and uncorrected violations.  (Cmplt. ¶¶ 21, 47)  A DOJ representative informed Mr. Faurie that an individual hired by Lawrence should not be working for the District due to her record of prohibited criminal offenses.  Twice when Plaintiff informed Brier of this legal violation he was told the Superintendent was aware of it and to "drop the issue."  During the period between May 2005 and July 2006, pursuant to directives by Lawrence to ignore the legal violations, Defendants rebuffed with increasing hostility all Plaintiff's attempts to address this issue and the larger unlawful BUSD practice it represented.  (Cmplt. ¶¶ 21, 22, 48, 55, 56.)

Defendants, and each of them, engaged in a pattern and practice of discrimination within the H.R. Department on the basis of sex by applying different standards to women than to men, including Plaintiff, with regard to working out of classification, granting of differential pay, responses to filing of workers' compensation claims, granting of requests for vacation leave, and quantity of work assigned.  This pattern and practice of discrimination occurred on a continuing basis through July 17, 2006.  Mr. Faurie also was subjected to a hostile working environment because of his sex, on a continuing basis through July 17, 2006, and to retaliation for his

- 3 -

1    identification of unlawful discrimination based on sex in the H.R. Department.  (Cmplt. ¶¶ 18, 19,

2    28-40, 53, 54, 58, 62)  Each and every of four males hired during Mr. Faurie's nearly four years

3    of employment with BUSD left the H.R. Department due to a hostile environment based on sex,

4    without notice; no female employee submitted such abrupt resignations due to hostile and

5    unlawful working conditions.  (Cmplt. ¶¶ 36-40.)

6        As part of that pattern and practice, Brier, Dodson, Udell, and Obieta, with Lawrence's

7    knowledge and approval, regularly required Plaintiff to work out of his job classification by

8    performing the duties of the Director of Classified Personnel without appropriate differential pay.

9    Defendants summarily and unjustifiably denied multiple requests by Mr. Faurie to reclassify his

10   position appropriately to realistically encompass the duties he was required to perform and

11   admonished him to refrain from asserting his rights and remain silent.  (Cmplt. ¶¶ 19, 28-34, 58.)

12       At a BUSD H.R. staff meeting on July 11, 2006, Udell, stated she knowingly was ordering

13   Mr. Faurie and other staff to engage in violations of the No Child Left Behind Act testing

14   requirements and to implement unlawful forced retirement of BUSD employees, pursuant to

15   Lawrence's directives.  Udell retaliated against Plaintiff for objecting to the unlawful directives

16   by openly insulting and humiliating him in the staff meeting and accusing him of having attitude

17   problems because he objected to the unlawful directives and silencing him. (Cmplt. ¶ 59.)

18       Plaintiff was rendered physically ill and severely emotionally distressed by Udell's

19   offensive and hostile rebuke to his final attempt to raise the issue of BUSD's unlawful policies

20   and practices.  (Cmplt. ¶¶ 24, 69-70.)  Consequently, he left the meeting due to emotional and

21   physical injury. (Cmplt. ¶ 60.)  A reasonable person in Mr. Faurie's position would have believed

22   he had no choice left but to resign his position with BUSD due to the hostile environment and

23   continuing course of discriminatory and retaliatory conduct to which he was subjected. (*Id*. ¶¶ 63,

24   64) Consequently, his resignation of employment on July 17, 2006, constituted a constructive

25   discharge.[4]

26

27   _____

     [4] This fact has been confirmed by an agent of the Employment Development Department who
28   approved his claim for unemployment insurance, and has been affirmed on appeal due to the
     District's failure to controvert it before an EDD administrative law judge. (Cmplt. ¶¶ 24, 68.)

- 4 -

1

## III.  ARGUMENT

2

**A.    Each of the Individual Defendants Has Been Sued In His/Her Individual Capacity and Can Be Held Liable For Punitive Damages.**

3

4        Each and every of the individual Defendants rests his/her argument against liability for

5   punitive damages on the erroneous assertion that he/she has only been sued in his/her official

6   capacity.  To the contrary, as is plain from the face of the Complaint, and as discussed at length in

7   Plaintiff's memoranda in opposition to Defendants Demurrers, Plaintiff has sued the individual

8   Defendants, and each of them, in their individual capacities under each of the causes of action set

9   forth in the Complaint.

10        As argued at length in opposition to Defendants' Demurrers, Defendants can be held

11   individually liable for wrongful discharge in violation of fundamental public policy, harassment

12   and retaliation under the FEHA, breach of contract and the implied covenant of good faith and

13   fair dealing; and intentional infliction of emotional distress.  (Gov. Code § 820, subd. (a); *Hoff v.*

14   *Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932, citing *Societa per Azioni de*

15   *Navigazione Italia v. City of Lost Angeles* (1982) 31 Cal.3d 446, 463; *Foley* v. *Interactive Data*

16   *Corp.* (1988) 47 Cal.3d 654; *Gannt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1097; *Rojo v.*

17   *Kliger* (1990) 52 Cal.3d 65, 90-91; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170;

18   *Miller v. State of California* (1977) 18 Cal.3d 808, 815; *Mouchette v. Board of Education* (1990)

19   217 Cal.App.3d 303; *Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317; *Slatkin v. University of*

20   *Redlands* (2001) 88 Cal.App.4th 1147; *McDonnel Douglas Corp. v. Green* (1973) 411 U.S. 792;

21   *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 253-254; *Caldwell v.*

22   *Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 202; *Cole v. Fair Oaks Fire*

23   *Protection Dist.* (1987) 43 Cal.3d 148, 155 fn. 7; *Alcorn v. Anbro Engineering, Inc.*(1970) 2

24   Cal.3d 493, 496; *Gibbs v. American Airlines, Inc.* (1999) 74 Cal.App.4th 1, 10; *Livitsanos v.*

25   *Superior Court* (1992) 2 Cal.4th 744, 752; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th

26   1143; *Calero v. Unisys Corp.* (2003) 271 F.Supp.2d 1172, 1181, and cases cited therein; *Reno v.*

27   *Baird* (1998) 18 Cal.4th 640, 646; *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986-987, fn. 7;

28   *Taylor v. City of Los Angeles* (2006) 144 Cal.App4th 1216, 1238-1239.)

- 5 -

1        It is settled law that neither violations of public policy nor retaliation or harassment under

2    the FEHA fall within a public employee's immunity for discretionary acts.  (*Caldwell v. Montoya*

3    (1995) 10 Cal.4th 972, 986-987, fn. 7 (Statutory prohibitions against a government employee

4    using official power against the efforts of another employee to resist and report job-related

5    violations of law evince a legislative intent to withhold immunity for such actions); *Taylor v. City*

6    *of Los Angeles* (2006) 144 Cal.App4th 1216, 1238-1239 (imposition of individual supervisor

7    liability for harassment and retaliation under the FEHA similarly reflects a legislative withholding

8    of immunity for such *ultra vires* actions); (*Tietz v. Los Angeles Unified School District* (1965)

9    238 Cal.App.2d 905, 909 (public employees vested with policy making authority are immune

10   from suit only for "discretionary acts *within the scope of their authority*.")  Part of the rationale

11   for that lack of immunity is that such acts are not undertaken pursuant to any legitimate

12   managerial function.  (*Reno, supra*, 18 Cal.4th at p. 646, favorably quoting *Janken v. GM Hughes*

13   *Electronics* (1996) 46 Cal.App.4th 55.)  Acts constituting tortious wrongful discharge in violation

14   of (1) the fundamental public policy, embodied in the state's penal statutes, against punishing

15   employees for reporting, resisting, or refusing to implement unlawful directives (see *Gannt*,

16   *supra*, 1 Cal.4th 1083, 1097; *Tameny*), and (2) the fundamental public policy, set forth in

17   California Article I, § 8, against discrimination based on sex (*Rojo, supra*, 52 Cal.3d at pp. 90-

18   91), as well as harassment and retaliation under the FEHA, do not, as a matter of law, fall within

19   any of the individual Defendants' legitimate official responsibilities or duties.  (*Livitsanos, supra*,

20   2 Cal.4th at p. 817; *Moorpark supra* 18 Cal.4th 1143.)

21       Consequently, the arguments proffered by all of the individual Defendants that they

22   cannot be held liable for punitive damages on grounds that they are only alleged to have

23   committed unlawful acts in their official capacities lack merit.

24   **B.    The Complaint Adequately Alleges Facts Supporting an Award of Punitive Damages**
         **Against the Individual Defendants.**

25       Defendants' assertion that Plaintiff has failed to allege facts sufficient to support a

26   punitive damages claim simply ignores the allegations set forth in the Complaint.

27       Plaintiff has alleged that Brier, Obieta, Dodson, and Udell, with Lawrence's knowledge

28

- 6 -

1  and prior and/or subsequent approval and ratification, subjected plaintiff to unlawful harassment

2  because of his sex, retaliation for his attempts to protect rights conferred by the FEHA, retaliation

3  for his reporting and refusal to implement unlawful directives, and a hostile and retaliatory

4  environment so severe and pervasive as to result in his constructive discharge.

5       Punitive damages are available under Civil Code section 3294 "where it is proven by clear

6  and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, . . ."

7  Malice is defined in section 3294 as "conduct which is intended by the defendant to cause injury

8  to the plaintiff or despicable conduct which is carried on by the defendant with a willful and

9  conscious disregard of the rights or safety of others." (Subd. (c)(1).) Oppression is defined as

10  "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of

11  that person's rights." (Subd. (c)(2).)

12       Intentional violation of an employee's rights coupled with an attempt to cover up the

13  violation supports a punitive damages claim.  (*Cloud v. Casey* (1999) 76 Cal.App.4th 895, 911-

14  912.)  Plaintiff's rights were violated and he was repeatedly ordered to be silent when he

15  attempted to protest such violations.  Allegations of retaliation for whistleblowing activity are

16  sufficient to infer an intent to injure the Plaintiff and are sufficient to support a punitive damages

17  claim.  (*Neveu v. City of Fresno* (E.D. Cal. 2005) 392 F.Supp.2d 1159, 1183.)  Repeated

18  violations of law constitutes reprehensible conduct supporting a punitive damages claim.  (*Boeken*

19  *v. Philip Morris Inc.* (2005) 127 Cal.App.4th 1640, rehearing denied, review denied, cert. denied,

20  126 S.Ct 1567.)  Entitlement to punitive damages is generally a matter for the finder of fact. (*The*

21  *Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486, review denied.)

22       The cases Defendants cite are inapposite because none of them involve the egregious facts

23  set forth in Plaintiff's Complaint alleging intentional harassment, retaliation against Plaintiff for

24  reporting and resisting illegal directives and practices, and violations of fundamental public

25  policies.  Thus, in *Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1041-1042, the sole

26  allegation supporting the punitive damage claim was that "petitioners failed to adequately

27  represent her and her property interests in the dissolution proceeding thereby resulting in

28  economic injury."  *Ebaugh v. Rabkin* (1972) 22 Cal.App.3d 891, 894-895, did not involve

- 7 -

1  sufficiency of pleading, but was an appeal from summary judgment and addressed sufficiency of

2  the proof.  The record evidence contained no facts supporting a finding of malice, express or

3  implied.  Rather, the evidence indicated the defendant had displayed mere "inadvertence."

4       To the detriment of Defendants' arguments herein, the court in *Cyrus v. Haverson* (1976)

5  65 Cal.App.3d 306, 316-317, held that "Malice is properly pleaded by alleging the wrongful

6  motive, intent or purpose." (*Id*., citing 3 Witkin Cal. Procedure (2d ed. Pleading § 766.)  The

7  *Cyrus* court further held "A general allegation of that intent is sufficient."  (*Id*., citing *Unruh v.*

8  *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 632, internal brackets and ellipses omitted.)  The

9  Plaintiff in Cyrus failed to allege a wrongful motive, intent, or purpose.  (*Id*. at p. 317.)

10      In *G.D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 29, the court said,

11  "When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be

12  supported by pleading that the wrong was committed willfully or with a design to injure."

13  Plaintiff has adequately set forth such allegations.  In the Depression-era relic *Smithson v.*

14  *Sparber* (1932) 123 Cal.App. 225, 232, upon which Defendants rely, the court said, "A reading of

15  the complaint from beginning to end indicates…a claimed case of negligence and nothing more."

16  Here, Plaintiff has amply pled multiple intentional, willful violations of his rights and willful

17  retaliatory conduct that violated fundamental public policy.

18      In *Monge v. Superior Court* (1986) 176 Cal.App.3d 503, the court explained that "Malice"

19  means "a wrongful intent to vex or annoy"; "Oppression" means "subjecting a person to cruel and

20  unjust hardship in conscious disregard of his rights" and both "may be inferred from the

21  circumstances of a defendant's conduct."  (*Id*. at p. 511.)  Here, Plaintiff has alleged that his

22  repeated attempts to resist and oppose violations of fundamental public policies set forth in the

23  state Penal statutes, the state Constitution, and the FEHA, were met with repeated acts of

24  retaliation, harassment, and actions by Defendants designed to silence Plaintiff.  Plaintiff has also

25  alleged that the disparate treatment he received due to his sex was part of a *pattern and practice*

26  *of such misconduct* affecting at least three other men during his tenure.  Such conduct is surely

27  reflective of malice and oppression within the meanings the courts have ascribed those terms.

28      The courts words in Monge apply equally to the instant case and Defendants' frivolous

- 8 -

1  motions to strike:

> Other than a more detailed description of the manner by which defendants
> transformed plaintiffs' working environment into an oppressive and hostile
> situation or of the precise job demotions and privilege changes effected by
> defendants in their retaliatory effort, it is difficult to conceive how the complaint
> could more graphically plead the requisite element of an evil and mischievous
> motive on the defendats' part both to vex and annoy plaintiffs and to subject them
> to cruel and unjust hardship in conscious disregard of their rights..

(176 Cal.App.3d at p. 511.)

Defendants' argument is equally undermined by their citation to *Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, where the court said, "Taken in context, the words 'wrongfully and intentionally … describe a knowing and deliberate state of mind from which a conscious, disregard of petitioners rights might be inferred—a state of mind which would sustain an award of punitive damages. (*Id*. at p. 6, citing *Taylor v. Superior Court* (1979) 24 Cal.3d 890, and *G.D. Searle*, *supra*.) The *Perkins* court also found that a finding of retaliatory motive "would sustain a finding of malice." (*Ibid*.)

*James v. Herbert* (1957) 149 Cal.App.2d 741, similarly, conclusively holds that allegations such as those pled by Plaintiff herein are sufficient to support a punitive damages claim. The Court in *James* said, "A general allegation that a defendant acted willfully and knowingly in defiance of plaintiff's repeated protests and that the defendant's conduct was oppressive and malicious and for the purpose of damaging the plaintiff's lawful business has been held sufficient for the recovery of exemplary damages." (*Id*. at p. 750, citations omitted.)

Plaintiff has more than adequately set forth facts in his Complaint supporting his prayers for punitive damages. The individual Defendants' motions to strike are without merit and should be summarily denied.

**C.     Defendant BUSD Can, In the Interests Of Justice, Pay Punitive Damages Incurred By Its Employees, Depending On Evidence Developed.**

BUSD is correct that a public entity is not generally *directly* liable for punitive damages. (Gov. Code §§ 818, 825(a); *Runyon*, *supra*, 187 Cal.App.3d 878, 880.) However, public entities are permitted to indemnify a public employee for a judgment of exemplary or punitive damages if the governing board of the entity determines it would be appropriate to do so. (Gov. Code §

- 9 -

825(b).)  Section 825(b) provides:

> (b) Notwithstanding subdivision (a) or any other provision of law, a public entity is authorized to pay that part of a judgment that is for punitive or exemplary damages if the governing body of that public entity, acting in its sole discretion except in cases involving an entity of the state government, finds all of the following:
>
> (1) The judgment is based on an act or omission of an employee or former employee acting within the course and scope of his or her employment as an employee of the public entity.
> (2) At the time of the act giving rise to the liability, the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent best interests of the public entity.
> (3) Payment of the claim or judgment would be in the best interests of the public entity.

Granting a motion to strike the punitive damages claim against BUSD would be premature at this stage of the proceedings because no evidence has yet been developed, and the ultimate determinations of liability, including which portions of the individual Defendants' unlawful conduct occurred in the course and scope of their employment and which did not, have yet to be made.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that the court should dismiss each and every Defendant's motion to strike Plaintiff's punitive damage claims.

Dated this 2nd day of November, 2007         By: _____

                                             Eric Borgerson, SBN 177943
                                             Law Office Of Eric Borgerson
                                             2625 School Street
                                             Oakland, CA 94602

- 10 -

1

**PROOF OF SERVICE**

2

3          I, Eric Borgerson, declare that I am over the age of 18 years, and am not a party to this

4    matter, that my business address is 2625 School Street, Oakland, CA 94602, located within the

5    County of Alameda. On November 2, 2007, I served the attached: **PLAINTIFF'S**

6    **OPPOSITION TO MOTIONS TO STRIKE OF DEFENDANTS BERKELEY UNIFIED**

7    **SCHOOL DISTRICT, MICHELE LAWRENCE, LISA UDELL, CRISTINA OBIETA,**

8    **RICHARD DODSON, AND TINA BRIER**, by placing it in an addressed envelope, with

9    postage duly prepaid, and depositing it into a United States Post Office mail receptacle, via

10   Express U.S. mail, addressed as follows:

11

12   Kellie M. Murphy, Esq.
     JOHNSON SCHACHTER & LEWIS
13   2180 Harvard Street, Suite 560
     Sacramento, CA 95815
14

15          I declare the foregoing to be true and correct based on personal knowledge under penalty

16   of perjury under the laws of the State of California.  Executed in Oakland California on

17   November 2, 2007.

18

19   _____

20   Eric Borgerson

21

22

23

24

25

26

27

28

# Exhibit Q

1  KELLIE M. MURPHY (SBN 189500)
   JASON M. SHERMAN (SBN 245190)
2  JOHNSON SCHACHTER & LEWIS
   A Professional Law Corporation
3  California Plaza
   2180 Harvard Street, Suite 560
4  Sacramento, CA 95815
   Telephone: (916) 921-5800
5  Facsimile: (916) 921-0247

6  Attorneys for BERKELEY UNIFIED SCHOOL DISTRICT, MICHELE LAWRENCE, LISA
   UDELL, CRISTINA OBIETA, RICHARD DODSON, and TINA BRIER
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF ALAMEDA

10

11  GENE FAURIE, JR.,                              )  Case No. RG 07334590
                                                   )
12           Plaintiff                             )  **REPLY IN SUPPORT OF**
                                                   )  **DEFENDANTS BERKELEY UNIFIED**
13  v.                                             )  **SCHOOL DISTRICT, MICHELLE**
                                                   )  **LAWRENCE, LISA UDELL,**
14  The BERKELEY UNIFIED SCHOOL                    )  **CRISTINA OBIETA,  RICHARD**
    DISTRICT; MICHELLE LAWRENCE,                   )  **DODSON, AND TINA BRIER'S**
    individually and in her official capacity as   )  **MOTIONS TO STRIKE PORTIONS**
15  BUSD Superintendent; LISA UDELL,               )  **OF PLAINTIFF'S COMPLAINT FOR**
    individually and in her official capacity as   )  **DAMAGES**
16  BUSD Assistant Superintendent, Human           )
    Resources; CRISTINA OBIETA, individually       )  **[Filing Fee Exempt per Government Code**
17  and in her official capacity as BUSD Director,  )  **§6103]**
    Classified Personnel; RICHARD DODSON, in       )
18  his official capacity as BUSD Director, Labor   )  **Date:**  November 16, 2007
    Relations; TINA BRIER, individually and in     )  **Time:**  1:30 p.m.
19  her official capacity as BUSD Director,         )  **Dept:**  18
    Classified Personnel,                          )
20                                                 )  **RESERVATION NOS.  R-747092**
             Defendants.                           )                    **R-747057**
21  _____        )                    **R-747087**
                                                                        **R-747068**
22                                                                      **R-747081**
                                                                        **R-747074**
23

24          Defendants Berkeley Unified School District, Michelle Lawrence, Lisa Udell, Christina

25  Obieta, Richard Dodson and Tina Brier respectfully submit the following combined reply to

26  Plaintiff Gene Faurie, Jr.'s (hereinafter "Plaintiff") combined opposition to Defendants' motions

27  to strike.

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

                                          1
**REPLY IN SUPPORT OF DEFENDANTS BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE
LAWRENCE, LISA UDELL, CRISTINA OBIETA,  RICHARD DODSON, AND TINA BRIER'S
MOTIONS TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES**

# I. Introduction

As set forth in the moving papers filed separately on behalf of Defendant, punitive damages are not available as a matter of law against the District or against the individuals sued in their representative capacities, and Plaintiff has not stated sufficient facts to support a claim for punitive damages against any individual defendant. His "creative" arguments notwithstanding, Plaintiff has not pointed to any controlling authority to defeat Defendants' motions.

# II. Legal Argument

**A.    Punitive damages are not recoverable against a public entity as a matter of law and Plaintiff has cited no authority to the contrary**

In his opposition, Plaintiff presents a uniquely creative argument as to why his request for punitive damages against the District should not be stricken. However, no amount of creativity can change that fact that courts cannot order, and no jury can award, punitive damages against a public entity. (See Government Code §818 ["Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."].)

Plaintiff is correct that a public entity can *choose* to pay punitive damages based on an act or omission of an employee if certain conditions are met. However, Plaintiff's Complaint for Damages does **not** ask that the District's governing board exercise a *choice*. Plaintiff is asking this court, and ultimately a jury, to *force* the District to pay punitive damages. This he cannot do.

**B.    Similarly, punitive damages are not recoverable as a matter of law against individual public employees for acts taken in their representative capacities.**

> *Unless otherwise alleged* in this complaint, Plaintiff is informed and believes and based thereon alleged that at all times mentioned in this Complaint, Defendants were the agents and employees of their codefendants, and in doing the things alleged in this Complaint, *were acting with in the course and scope of that agency and employment.* (Plaintiff's Complaint for Damage, p. 3, ¶11, emphasis added.)

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

REPLY IN SUPPORT OF DEFENDANTS BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE LAWRENCE, LISA UDELL, CRISTINA OBIETA, RICHARD DODSON, AND TINA BRIER'S MOTIONS TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES

1    Plaintiff failed to "otherwise allege." In fact, Plaintiff completely failed to cite *any*

2   specific action taken by *any* of the named individual defendants as having been done outside the

3   course and scope of their employment.

4    Plaintiff argues that since he *named* individuals in his Complaint, they are being sued in

5   their individual capacities. (See Plaintiff's Opposition, p. 5.) He clearly alleges in his Complaint

6   that all individual defendants were acting in the course and scope of their employment, but now

7   argues the exact opposite. Plaintiff cannot have it both ways.

8    Further, Plaintiff's opposition focuses entirely on the issue of whether the individual

9   defendants can be held liable under various causes of action. The issue of liability is the subject

10   of Defendants' demurrers, *not* the motions to strike punitive damages. Even if the law were to

11   allow for individual liability, which it does not, that issue is unrelated to whether those

12   individuals can be liable for punitive damages for acts within the course and scope of

13   employment.

14    When employees of a public entity perform work within the course and scope of their

15   employment, they in essence become the public entity. Punitive damages are not available

16   against a public entity. (Gov. Code §818.) Allowing punitive damages to be awarded against

17   individuals acting with the course and scope of their employment would permit a Plaintiff to

18   bypass the statutory prohibition against public entity punitive damages. Accordingly, Plaintiff's

19   request for punitive damages against all individual defendants must be stricken.

20
21   **C.    Plaintiff fails to plead any *facts* supporting recovery of punitive damages against the individuals even if they are sued in their individual capacities.**

22    Plaintiff argues that he has pled sufficient facts to allege punitive damages because his

23   Complaint for Damages alleges unlawful harassment, retaliation and disparate treatment. (See

24   Plaintiff's Opposition pp. 6-9.) However, it is not enough to simply allege in a conclusory

25   fashion that a plaintiff has been subject to harassment, retaliation, etc. If that were the case,

26   punitive damages would be properly alleged by merely asserting those causes of action against an

27
28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

3

1  individual. In essence, any and every case under the FEHA would automatically support

2  allegations of punitive damages. As it is, this is not the state of the law.

3        What Plaintiff has failed to do here is allege *facts* that evidence "oppression, fraud or

4  malice." Plaintiff merely alleges a laundry list of alleged actions taken during the course and

5  scope of the individual defendants' employment, most of which had *nothing* to do with Plaintiff

6  at all.

7        In his opposition, Plaintiff cites cases that are either inapplicable or do not even deal with

8  pleading requirements to allege punitive damages. In *Neveu v. City of Fresno* (E.D. Cal 2005)

9  392 F.Supp.2d 1159, the federal court, sitting in diversity, characterized pleading requirements as

10  procedural and/or refused to apply California's pleading requirements of specificity for malice.

11  Instead, the Court applied the Federal Rules of Civil Procedure which allows for malice to be

12  averred generally. (*Ibid* at pp. 1183-1184.) The present lawsuit is in state court and is governed

13  by state law. *Neveu* is inapposite.

14        The remainder of cases cited by Plaintiff all relate to whether substantial evidence was

15  presented *at trial* to support jury verdicts. (See *Cloud v. Casey* (1999) 76 Cal.App.4th 895;

16  *Boeken v. Phillip Morris Inc.* (2005) 127 Cal.App.4th 1640; *The Nippon Credit Bank v. 1333*

17  *North Cal. Blvd.* (2001) 86 Cal.App.4th 486.) These cases have nothing to do with the

18  sufficiency of *pleadings* in a complaint that requests punitive damages.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

4

1

## V. Conclusion

2    Plaintiff's complaint alleges only conclusory statements to support his allegations of

3  punitive damages. Plaintiff's very general and conclusory statements about malice and evil

4  motive are insufficient, and none of the *facts* alleged *show* malice or an evil motive. *All* the

5  punitive damage allegations[1] must therefore be stricken.

6

7    Date:   November 8, 2007                    JOHNSON SCHACHTER & LEWIS
                                              A Professional Law Corporation

8

9

10                                           KELLIE M. MURPHY
                                              Attorney for BERKELEY UNIFIED SCHOOL
11                                            DISTRICT, MICHELE LAWRENCE, LISA
                                              UDELL, CRISTINA OBIETA, RICHARD
12                                            DODSON, and TINA BRIER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    [1] Such allegations are found in Plaintiff's Complaint for Damages as follows: p. 24, ¶90, lines 21-23; p. 30,
28  ¶116, lines 18-20; and p. 31, ¶2, line 26.

5

**REPLY IN SUPPORT OF DEFENDANTS BERKELEY UNIFIED SCHOOL DISTRICT; MICHELLE
LAWRENCE, LISA UDELL, CRISTINA OBIETA, RICHARD DODSON, AND TINA BRIER'S
MOTIONS TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT FOR DAMAGES**

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

1

## PROOF OF SERVICE

2

**CASE NAME:**     **Faurie v. Berkeley Unified School District, et al.**
3      **CASE NO.:**     **RG 07334590**

4          I am employed in the County of Sacramento.  I am over the age of eighteen years and not
a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite
5    560, Sacramento, CA 95815.

6          I am familiar with this office's practice whereby the mail is sealed, given the appropriate
postage and placed in a designated mail collection area.  Each day's mail is collected and
7    deposited in a United States mailbox after the close of each day's business.

8          On November 8, 2007, I served the following:
**REPLY IN SUPPORT OF DEFENDANTS BERKELEY UNIFIED SCHOOL DISTRICT,**
9    **MICHELLE LAWRENCE, LISA UDELL, CRISTINA OBIETA,  RICHARD DODSON,**
**AND TINA BRIER'S MOTIONS TO STRIKE PORTIONS OF PLAINTIFF'S**
10   **COMPLAINT FOR DAMAGES**

11   X    United States Mail - on all parties in said action by placing a true copy of the above-
described document(s) enclosed in a sealed envelope in the designated area for outgoing
12        mail addressed as set forth below.

13   _    By FACSIMILE (telecopier) - by personally sending to the addressee's facsimile number
a true copy of the above-described document(s).
14

_    Federal Express - on all parties in said action by placing a true copy of the above-
15        described document(s) in an authorized area for pick-up by an authorized express service
courier the same day it is collected and processed in the ordinary course of business as set
16        forth below.

17   _    Personal Service - By personally delivering or causing to be delivered a true copy of the
above-described document to the person(s) and at the address(es) set forth as shown
18        below.

19   Eric Borgerson, Esq.
LAW OFFICE OF ERIC BORGERSON
20   2625 School Street
Oakland, CA 94602
21

22   _    FEDERAL: I declare that I am employed in the office of a member of the bar of this
Court at whose direction service was made.
23

I declare under penalty of perjury that the foregoing is true and correct and that this
24   declaration was executed on November 8, 2007, at Sacramento, California.

25

26                                          MIKE QUINN

27

28

JOHNSON SCHACHTER & LEWIS
A PROFESSIONAL LAW CORPORATION
2180 HARVARD STREET, SUITE 560
SACRAMENTO, CA 95815
TELEPHONE: (916) 921-5800 / FACSIMILE: (916) 921-0247

# Exhibit R

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>                     Plaintiff/Petitioner(s)<br><br>     VS.<br><br>The Berkeley Unified School District<br>                  Defendant/Respondent(s)<br>      (Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Motion to Strike<br>Granted |

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The motion by Defendant Berkeley Unified School District to strike the claims of Plaintiff Gene Faurie, Jr. for punitive damages is GRANTED WITHOUT LEAVE TO AMEND. A public entity cannot be held liable for punitive damages. Government Code § 818.

Dated:  11/16/2007

Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit S

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Motion to Strike<br>Granted |

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the
Honorable Cecilia P. Castellanos.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The motion by Defendant Michele Lawrence to strike the
claims of Plaintiff Gene Faurie, Jr. for punitive damages is GRANTED WITH LEAVE TO AMEND to
allege a viable cause of action based on intentional misconduct against Defendant Lawrence.

Dated:  11/16/2007

Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit T

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA    94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA    95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Motion to Strike<br>Granted |

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The motion by Defendant Lisa Udell to strike the claims of Plaintiff Gene Faurie, Jr. for punitive damages is GRANTED WITH LEAVE TO AMEND to allege a viable cause of action based on intentional misconduct against Defendant Udell.

Dated:  11/16/2007

_Cecilia Castellanos (facsimile)_
Judge Cecilia P. Castellanos

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number: RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addressed as shown on the foregoing document or on the attached, and that the mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Chaos* digital

By _____

Deputy Clerk

# Exhibit U

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br><br>                              Plaintiff/Petitioner(s)<br><br>                    VS.<br><br><br>The Berkeley Unified School District<br>                    Defendant/Respondent(s)<br>          (Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Motion to Strike<br>Granted |

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The motion by Defendant Cristina Obieta to strike the claims of Plaintiff Gene Faurie, Jr. for punitive damages is GRANTED WITH LEAVE TO AMEND to allege a viable cause of action based on intentional misconduct against Defendant Obieta.

Dated:  11/16/2007

_____
                    facsimile
Judge Cecilia P. Castellanos

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit V

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Faurie<br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Berkeley Unified School District<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG07334590<br><br>Order<br><br>Motion to Strike<br>Granted |

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The motion by Defendant Tina Brier to strike the claims of Plaintiff Gene Faurie, Jr., for punitive damages is GRANTED WITH LEAVE TO AMEND to allege a viable cause of action based on intentional misconduct against Defendant Brier.

Dated:  11/16/2007

_facsimile_

Judge Cecilia P. Castellanos

Order

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

*May Choo* digital

By _____

Deputy Clerk

# Exhibit W

Law Offices Of Eric Borgerson
Attn: Borgerson, Eric
2625 School Street
Oakland, CA   94602

Johnson Schachter & Collins
Attn: Murphy Esq, Kellie M.
California Plaza
2180 Harvard Street, Suite 560
Sacramento, CA   95815

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Faurie

Plaintiff/Petitioner(s)

VS.

The Berkeley Unified School District

Defendant/Respondent(s)
(Abbreviated Title)

No. RG07334590

Order

Motion to Strike
Granted

The Motion to Strike was set for hearing on 11/16/2007 at 01:30 PM in Department 18 before the Honorable Cecilia P. Castellanos. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: The motion by Defendant Richard Dodson to strike the claims of Plaintiff Gene Faurie, Jr. for punitive damages is GRANTED WITH LEAVE TO AMEND to allege a viable cause of action based on intentional misconduct against Defendant Dodson.

Dated:  11/16/2007

Judge Cecilia P. Castellanos

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

Case Number:  RG07334590
Order After Hearing Re: of 11/16/2007

## DECLARATION OF SERVICE BY MAIL

I certify that I am not a party to this cause and that a true and correct copy of the
foregoing document was mailed first class, postage prepaid, in a sealed envelope,
addressed as shown on the foregoing document or on the attached, and that the
mailing of the foregoing and execution of this certificate occurred at
1225 Fallon Street, Oakland, California.

   Executed on 11/19/2007.

Executive Officer / Clerk of the Superior Court

   *May Choo* digital

By _____

Deputy Clerk