1  Eric Borgerson, SBN 177943
   Law Office of Eric Borgerson
2  2625 School Street
   Oakland, CA 94602
3  Telephone: 510-866-3738
   Facsimile: 510-535-9898
4
   Attorney for Plaintiff Gene Faurie, Jr.
5

6              IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  GENE FAURIE, JR.,                  )  CASE NO.  CV 08-00060 TEH
                                      )
10              Plaintiff,            )
                                      )
11         vs.                        )
                                      )
12  The BERKELEY UNIFIED SCHOOL       )  **SECOND AMENDED**
    DISTRICT; MICHELLE LAWRENCE,      )  **COMPLAINT FOR DAMAGES**
13  individually and in her official capacity as  )
    BUSD Superintendent; LISA UDELL,  )  (Retaliatory Discharge For Whistleblowing
14  individually and in her official capacity as  )  and Refusing to Comply With Unlawful
    BUSD Assistant Superintendent, Human  )  Directives [California Labor Code §
15  Resources; CRISTINA OBIETA,       )  1102.5]; Violation of Federal Right To
    individually and in her official capacity as  )  Equal Protection of the Laws [42 U.S Code
16  BUSD Director, Classified Personnel;  )  § 1983; U.S. Constitution Amendments V
    RICHARD DODSON, in his official   )  and XIV]; Deprivation Of Benefits and
17  capacity as BUSD Director, Labor  )  Privileges of Public Employment and
    Relations; TINA BRIER, individually and  )  Termination of Public Employment
18  in her official capacity as BUSD Director,  )  Without Due Process Of Law [42 U.S.
    Classified Personnel,             )  Code § 1983; U.S. Constitution
19                                    )  Amendments V and XIV]; Discrimination
                                      )  On the Basis Of Sex [California Fair
20              Defendants.           )  Employment and Housing Act, Gov. Code
                                      )  § 12900(a) et seq.]; Unlawful Harassment
21                                    )  On the Basis Of Sex/Gender [California
                                      )  Gov. Code § 12900(j)]; Unlawful
22                                    )  Retaliation For Opposing Violation of
                                      )  Rights Protected By the FEHA [Gov. Code
23                                    )  § 12900(h)]; Intentional Infliction of
                                      )  Emotional Distress)
24                                    )
                                      )
25  _____

26  ///

27  ///

28  ///

**INTRODUCTION**

1.      This is a Complaint by Gene Faurie, Jr., formerly employed by the Berkeley Unified School District ("BUSD") in the position of Administrative Coordinator – Confidential, against BUSD and several of its current and former managerial employees in their individual and official capacities.

2.      Mr. Faurie sets forth herein claims of unlawful discharge in retaliation for whistleblowing and resisting unlawful directives; violation of his federal Constitutional rights to equal protection and due process of law; harassment and discrimination based on sex; retaliation for opposing unlawful harassment and discrimination based on sex; and intentional infliction of emotional distress, arising from a continuing course of unlawful conduct creating intolerable working conditions that became so severe and pervasive on and after July 11, 2006, that Mr. Faurie was unlawfully constructively discharged on July 17, 2006.

**PARTIES**

3.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 2, above.

4.      Plaintiff Gene Faurie Jr. ("Plaintiff" or "Mr. Faurie") is and at all material times was, a resident of Alameda County.  At all times mentioned in this Complaint until the date of his constructive discharge on July 17, 2007, Plaintiff was employed by the Berkeley Unified School District Human Resources Department in the position of Administrative Coordinator – Confidential.

5.       Defendant Berkeley Unified School District ("BUSD" or "District") is and was at all material times a public school district and a political subdivision of the State of California and County of Alameda, whose principal place of business is and was at all material times located in Alameda County.

6.      Defendant Michele Lawrence ("Lawrence") is and at all material times was a resident of Alameda County.  Lawrence is and at all material times was employed by

1   BUSD in the position of Superintendent.  Lawrence is sued in her individual capacity and

2   in her official capacity as BUSD Superintendent.

3   7.       Defendant Lisa Udell ("Udell") is and at all material times was a resident of

4   Alameda County.  Udell is and at all material times was employed by BUSD in its

5   Human Resources Department in the position of Assistant Superintendent, Human

6   Resources.  Udell is sued in her individual capacity and in her official capacity as BUSD

7   Assistant Superintendent, Human Resources.

8   8.       Defendant Cristina Obieta ("Obieta") is and at all material times was a resident of

9   Alameda County.  Obieta was at all material times employed by BUSD in its Human

10  Resources Department in the position of Director, Classified Personnel.  Obieta is sued in

11  her individual capacity and in her official capacity as Director, Classified Personnel.

12  9.       Defendant Richard Dodson ("Dodson") is and at all material times was a resident

13  of Alameda County.  Dodson is and at all material times was employed by BUSD in its

14  Human Resources Department in the position of Director, Labor Relations.  Dodson is

15  sued in his individual capacity and in his official capacity as Director, Labor Relations.

16  10.      Defendant Tina Brier ("Brier") is and at all material times was a resident of

17  Contra Costa County.  Brier at all material times was employed by BUSD in the position

18  of Director, Classified Personnel.  Brier is sued in her individual capacity and in her

19  official capacity as BUSD Director, Classified Personnel.

20  11.      Unless otherwise alleged in this complaint, Plaintiff is informed and believes and

21  based thereon alleges that at all times mentioned in this Complaint, Defendants were the

22  agents and employees of their codefendants, and in doing the things alleged in this

23  Complaint, were acting with in the course and scope of that agency and employment.

**JURISDICTION**

25  12.      Plaintiff incorporates herein by reference as though fully set forth at length the

26  allegations of paragraphs 1 through and including 11, above.

27

28

13.     At all material times BUSD regularly employed five or more persons, bringing Defendant BUSD within the provisions of Government Code §§12900 et seq. prohibiting employers or their agents from discriminating on the basis of, *inter alia*, sex.

14.     This Court has jurisdiction over the subject matter of this dispute pursuant to Government Code §§ 12900 et seq. as this is a claim of employment discrimination against a public employer that regularly employs 5 or more persons and whose principal place of business is located in the County of Alameda, State of California.

15.     The amount in controversy in this matter exceeds $10,000.  All Defendants are "persons" who acted under color of law, regulation, ordinance, custom and usage of the State of California under actual or apparent authority conferred by the governing board of the Berkeley Unified School District, bringing them within the purview of 42 U.S. Code § 1983.  This Court has concurrent jurisdiction over the federal claims asserted herein under 42 U.S.C. § 1983.

**FACTS**

**Overview**

16.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 15, above.

17.     Mr. Faurie was subjected to a continuing course of unlawful conduct during his tenure at BUSD which reached intolerable proportions on July 11, 2006.  At a Human Resources staff meeting on July 11, 2006, over Mr. Faurie's objections, Udell orally confirmed that she knowingly was ordering Mr. Faurie to engage in unlawful and unethical acts in his capacity as Administrative Coordinator – Confidential, which she explicitly confirmed to constitute implementation of BUSD policy approved by Superintendent Lawrence.  When Mr. Faurie questioned the advisability and legality of the ordered course of action (discussed in detail below), he was subjected to a hostile and offensive environment by Udell, causing him to become ill, thereby forcing him to leave the meeting due to emotional and physical injuries. This treatment by Udell also was part

of a pattern and practice of discrimination against male employees based on sex, which was continuing in nature, occurring through July 17, 2006, as detailed below.

18.    The incident on July 11, 2006, was the culminating event in a continuing course of such unlawful treatment of Mr. Faurie, stretching back in time to the beginning of his employment with BUSD in or about October 2002.  Throughout the course of Mr. Faurie's employment, he was regularly and repeatedly ordered by Lawrence, Brier, and, upon their appointment, Dodson, Udell, and Obieta to engage in unlawful acts and was subjected to a hostile environment when he questioned, objected to, or refused to implement, such unlawful directives.

19.    BUSD administration also engaged in a pattern and practice of discrimination within the Human Resources Department on the basis of sex by applying different standards to women than to men with regard to working out of classification, granting of differential pay, responses to filing of workers' compensation claims, granting of requests for vacation leave, and quantity of work assigned.  This pattern and practice of discrimination occurred on a continuing basis through July 17, 2006.   Mr. Faurie also was subjected to a hostile working environment because of his sex, on a continuing basis through July 17, 2006.  Further, Mr. Faurie was subjected to a retaliatory and hostile environment when he attempted to rectify the policy, pattern, and practice of unlawful harassment and discrimination based on sex in the H.R. Department.

20.    In addition to his claims of discrimination based on sex, Mr. Faurie also was regularly required to work out of his job classification by performing the duties of the Director of Classified Personnel without appropriate differential pay.  Multiple requests by Mr. Faurie to reclassify his position appropriately to realistically encompass the duties he was required to perform were summarily and unjustifiably denied.

21.    Further, Mr. Faurie was subjected to a hostile and offensive work environment in retaliation for exercising his lawful right to file a claim for workers' compensation due to physical injuries that were proximately caused by the performance of his duties as an employee of BUSD.

22.    Mr. Faurie was informed on at least one occasion by California Department of Justice personnel that an employee hired by Lawrence should not be working for the District due to her criminal record of a prohibited offense.  When Mr. Faurie drew this information to the attention of Brier, he was informed that the Superintendent was aware of the situation and that he was ordered to "drop the subject."  Upon raising the subject again, Mr. Faurie was again ordered to be silent and was subjected to a hostile environment in retaliation for his discussion of the unlawful actions of the Superintendent.  Such retaliation was routine in the H.R. Department and was the reaction of administrative personnel throughout Mr. Faurie's tenure when he identified unlawful BUSD policies, practices, and actions.

23.    Mr. Faurie submitted complaints to the California Department of Justice, the Alameda County Superintendent of Schools, and the California Public Employee Retirement System regarding unlawful policies and practices ordered and implemented by BUSD administrative staff over his objections.

24.    Mr. Faurie was subjected to unreasonable retaliatory offensive and hostile conduct in reaction to the above-summarized and other attempts to identify and resist unlawful directives, as detailed below.

25.    A reasonable person in Mr. Faurie's position would have believed he had no choice but to resign his position with BUSD due to the hostile environment and discriminatory conduct to which he was subjected.  Consequently, his resignation of employment on July 16, 2006, constitutes a constructive discharge of employment.  This fact has been confirmed by an agent of the Employment Development Department who approved his claim for unemployment insurance, and has been affirmed on appeal due to the District's failure to controvert it before an EDD administrative law judge.

26.    As a result of his unlawful constructive discharge and the continuing course of unlawful conduct which culminated in it, Mr. Faurie suffered and continues to suffer physical injuries and severe emotional distress, loss of wages, benefits, retirement contributions, proper professional classification, expenses incurred in securing new

1  employment, and reputation, and suffered interruption of his professional and economic

2  advancement.

3  **Chronology of Events**

4  27.    Plaintiff incorporates herein by reference as though fully set forth at length the

5  allegations of paragraphs 1 through and including 26, above.

6  28.    At all material times until the date of his constructive discharge on July 17, 2006,

7  Mr. Faurie was employed by BUSD in the position of Administrative Coordinator –

8  Confidential. He reported directly to Brier from his date of hire until Brier's resignation

9  in or about May 2006.  It was unclear from the date of Brier's resignation to whom Mr.

10  Faurie was to report, other than to the Superintendent.

11  29.    Throughout Mr. Faurie's employment with BUSD, Brier frequently was absent

12  from the H.R. Department offices, during which absences Mr. Faurie was required to

13  perform the duties of her position.  Brier also took vacation leave from her position as

14  Director, Classified Personnel for approximately three business weeks per year while

15  supervising Mr. Faurie.  During those periods of leave, Mr. Faurie was directed to

16  perform the duties of Brier's position and did perform those duties.  It is standard

17  procedure throughout the District to officially appoint another employee to assume

18  responsibility for the duties of an absent manager, but Mr. Faurie was required to perform

19  those duties without official appointment and without appropriate differential

20  compensation.

21  30.    After Mr. Faurie performed the duties of Director of Classified Personnel during

22  the first of Brier's extended vacation leaves and multiple instances of performing her

23  professional responsibilities during her frequent and periodic short-term leaves from the

24  office, Mr. Faurie began requesting differential pay for his performance of Brier's duties.

25  Payment of such differential compensation is mandated by BUSD merit system rules.  On

26  each occasion, Brier refused to grant appropriate differential compensation.  At the end of

27  her second extended vacation leave during the Summer of 2005, Mr. Faurie submitted to

28  Brier a timesheet recording his performance of her duties and requesting differential pay

1    for the documented coverage he provided.  Brier again refused to grant Mr. Faurie

2    appropriate differential pay.

3    31.    Mr. Faurie regularly covered Brier's duties in the H.R. Department to an extent

4    well above his professional classification during Brier's absence from the H.R. offices

5    every week of Faurie's employment.   The demand that Mr. Faurie perform the duties of

6    the position occupied by Brier became even more burdensome upon her resignation,

7    because no one was appointed to replace her and Mr. Faurie was expected to fill in the

8    gap until a successor was hired.

9    32.    Lawrence hired a part-time, temporary consultant to help keep the H.R.

10   Department running when Brier resigned.  However, that individual was untrained, was

11   present at most three days per week, and relied on and consulted with Mr. Faurie to learn

12   the Department's procedures and daily administrative needs, thereby leaving Mr. Faurie

13   in the *de facto* position of decision making, information dissemination, and H.R.

14   Department management after Brier's resignation.

15   33.    Although Brier refused during her tenure to grant Mr. Faurie appropriate

16   differential pay for his performance of her professional duties, when Mr. Faurie was

17   absent due to workers compensation leave, another (female) employee was granted

18   differential pay to perform his responsibilities.  Notwithstanding that payment of

19   differential compensation, the individual so compensated was not properly relieved of her

20   ordinary duties and, consequently, did not perform the preponderance of work properly

21   within Mr. Faurie's job duties, leaving tasks unfinished for him to bring current upon his

22   return.  Mr. Faurie does not dispute the propriety of granting differential pay to an

23   individual called upon to cover his duties in his absence, but contends that the refusal to

24   compensate him for performing the duties of the Director of Classified Personnel was

25   unjustified and violated merit system rules and practices.  Moreover, whether or not Brier

26   was present and regardless of whether he performed all of her duties in her absence or

27   presence, he was required throughout his tenure to perform duties well above his

28   professional classification without appropriate differential compensation.

34.     In or about May 2006, Mr. Faurie complained to Dodson about being forced to work above his professional classification without appropriate differential compensation. Dodson stated to Mr. Faurie, "you should do any job asked of you because you are smart regardless of whether or not it is in your job classification."

35.     The requirement that Mr. Faurie perform duties above his professional classification without appropriate differential pay persisted throughout his entire tenure with BUSD, through the date he was forced to leave his employment due to the unreasonable level of hostility and unlawful treatment he received.

36.      In addition to violating Mr. Faurie's rights under Merit System rules and his Constitutional rights to equal protection of the laws and due process, the refusal to grant him differential pay for work performed was part of a pattern or practice of discrimination based on sex in the BUSD H.R. Department.  During all times material to Mr. Faurie's claim, women were treated differently and more favorably to similarly situated men with regard to assignment of work, payment of differential compensation, granting of vacation leave, and subjection to a hostile work environment in retaliation for requesting that their rights be honored or that legal duties applicable to BUSD be fulfilled.

37.     During Mr. Faurie's tenure, four men (including Mr. Faurie) resigned their employment without notice (in one case with a single day of notice) due to intolerable and unlawful working conditions in the BUSD H.R. Department.  Mr. Faurie is informed and believes and based thereon alleges that Jason Hunter resigned his position as Supervisor, Risk Management, Workers' Compensation and Benefits on or about September 9, 2005, because he was regularly required to perform duties out of his professional classification without appropriate differential pay and was subjected to an excessive workload while similarly situated female employees were spared such treatment.  Mr. Hunter informed Mr. Faurie that, when Mr. Hunter resigned, Lawrence threatened to contact his new employer and inform it that he was "unprofessional", despite the fact that Mr. Hunter had received positive performance evaluations.

38.    Mr. Faurie is informed and believes and based thereon alleges that Robert Valentine resigned from his position of Senior Personnel Assistant on December 9, 2005, without any notice because he was denied overtime, differential pay, and vacation and was unfairly and disproportionately disciplined on an ongoing basis while similarly situated female employees were not subjected to such denials and discipline. Specifically, with regards to the CBEDS report, Mr. Valentine presented documentation in support of his request for differential pay, but was denied it every year. Mr. Faurie is further informed and believes and based thereon alleges that two individuals were utilized to perform Mr. Valentine's job duties, both of whom were at a higher classification, one of whom was in a certificated position (which is in violation of applicable of collectively bargained terms), and one of which was paid at a rate more than double Mr. Valentine's pay.  Neither individual was an expert, and in fact were completely uninformed regarding the relevant procedures and requirements.

39.    Mr. Hunter and Mr. Valentine, along with Mr. Faurie, were made physically ill due to a retaliatory hostile work environment to which they were subjected because of their persistence in securing equal treatment as men and because of their requests for appropriate differential pay for work they were directed to perform out of professional classification.

40.    Provisional employee Gene Boucher was subjected to such a hostile work environment based on his sex that he resigned from the District without notice on August 7, 2006. Mr. Faurie is informed and believes and based thereon alleges that this hostile environment consisted of unduly rude and offensive hostile behavior by Udell against Boucher due to his sex, as only males and no females were subjected to such treatment by Udell.

41.    All four males hired during Mr. Faurie's nearly four years of employment with the District within the Human Resources Department left without notice; no female employee submitted such abrupt resignations due to hostile and unlawful working conditions.

42.    In or about May 2004, Mr. Faurie orally complained to Brier about a pattern of the Superintendent hiring employees without statutorily required fingerprint clearances and with criminal records of prohibited offenses. His concern stemmed from his knowledge regarding the improper hiring of two individuals and was voiced upon the improper hiring of the second of those individuals.  Jane Doe 1[1] was hired without DOJ clearance and was later terminated upon the District's receipt of notification of a prohibited offense. Jane Doe 2 was similarly hired in or about May 2004 without DOJ clearance.  When asked to obtain fingerprint clearance, Jane Doe 2 temporarily resigned her position.  During a subsequent discussion with Brier, Jane Doe 2 orally represented that she had only been convicted of minor offenses that did not preclude her employment. Based upon that uncorroborated representation, Brier reappointed Doe 2 to her position upon the understanding the results of her DOJ report must coincide with her statement or that she would be immediately terminated.  The subsequent report was received by the District approximately one year later, chronicling an extensive criminal history replete with prohibited offenses that precluded her employment by the District. Yet, Jane Doe 2 remained and, on information and belief, remains employed by BUSD.

43.    In or about May 2004, Mr. Faurie complained about the impermissible appointment of Jane Doe 2 to Brier, noting that Doe 2 had lied on her job application, orally lied about her criminal history in order to obtain reappointment, and that she had a criminal record of offenses that precluded her lawful employment by BUSD.  Brier told Mr. Faurie that she had notified Lawrence regarding the legal issues related to Jane Doe 2's appointment and told Mr. Faurie that there was nothing Brier could do and that the matter was in the Superintendent's hands.  Subsequent to these events, the Superintendent hired John Doe 1 on September 12, 2005, who also started work without fingerprint or tuberculosis clearance, contrary to law.  Clearance was later received, but the hiring of

---

[1] The individuals who were improperly hired are identified herein as "Jane Doe" or "John Doe" to preserve their privacy until such time as disclosure of their identities becomes necessary to resolve disputed factual issues.

1    employees without such clearance was repeated with John Doe 1's employment.  Brier

2    directed Mr. Faurie to ignore the situation.

3    44.    During the period between May 2004 and October 2005 (when Mr. Faurie went

4    on Workers Compensation leave), and during the period between February 2006 (when

5    he returned from Workers Compensation leave) and May 2006, Mr. Faurie also orally

6    complained to Brier regarding a repeated and ongoing practice by BUSD administrative

7    staff, including Brier, of failing to preserve the privacy of employee personnel files.

8    Confidential file contents were routinely left on copy machines and facsimile machines

9    where they were subject to perusal by unauthorized individuals.  Mr. Faurie also

10   expressed concerns regarding the H.R. Department's failure to notify the Department of

11   Justice upon the termination of employment of various individuals, which failure resulted

12   in the District continuing to receive subsequent arrest reports to which it was not legally

13   authorized access.  Brier dismissed Mr. Faurie's concerns as trivial and undeserving of

14   administrative response or elimination.  Brier also subjected Mr. Faurie to hostility

15   because of his continued efforts to draw her attention to unlawful practices in the

16   Department under her direction.

17   45.    In early July 2006, a BUSD administrator, who Mr. Faurie reasonable believed to

18   be under investigation for illegal and immoral practices, requested to review an employee

19   file.  Mr. Faurie referred the individual to Dodson who, Mr. Faurie was instructed at an

20   H.R. staff meeting, was authorized to accompany employees during such requests.

21   Dodson was visibly irritated by the referral of the employee to him, and he rolled his eyes

22   and looked away from Mr. Faurie as he accompanied the individual to the file room.

23   Dodson then left the individual alone with the confidential files for several minutes, in

24   direct violation of law.  Attempts by Mr. Faurie to address this problem with Dodson

25   were met with hostility and condescension, and Mr. Faurie was treated as though his

26   comments on the subject were detrimental to his employment status.

27   46.    On July 11, 2006, Mr. Faurie referred another personnel file review request by a

28   different individual to Dodson.  Shortly thereafter, Obieta appeared in Mr. Faurie's office

1   with the requested personnel file.  She had been in her position for two days and not

2   spoken to Mr. Faurie despite the fact that she was his newly appointed supervisor.  Obieta

3   confronted Mr. Faurie and informed him that he must accompany the employee during

4   review of the file, although the H.R. staff had been informed that only H.R. management

5   were allowed to do so.  When Mr. Faurie attempted to inform Obieta of this policy and

6   the statutory privacy-based reasons for it, Obieta's tone was hostile and unprofessional

7   towards Mr. Faurie immediately prior to the H.R. Staff meeting on July 11, 2006 that

8   resulted in his constructive discharge.

9   47.    During the period between May 2004 and July 2006, Mr. Faurie also voiced to

10  administrative personnel, including Brier and Dodson a concern regarding failure by the

11  District to obtain "livescan" digital fingerprint records of current employees as required

12  by law.  He was informed that the cost of securing those records was too great and that he

13  was to ignore the situation.

14  48.    Beginning in June 2004, after multiple attempts to address these unlawful

15  practices in the H.R. Department were met with hostility and lack of receptiveness or

16  response, Mr. Faurie submitted telephonic complaints to the State of California

17  Department of Justice regarding employees being hired without fingerprint clearance,

18  employees being hired despite having a criminal record of statutorily prohibited offenses,

19  employees being retained without livescan digital fingerprint records, and of failure by

20  BUSD H.R. officials to submit "no longer interested" forms to the Department of Justice

21  upon termination of individuals' employment (which is statutorily required in order to

22  prevent invasion of those employees' privacy).  Mr. Faurie also regularly inquired

23  regarding the status of the criminal background records of Doe 2 throughout this period.

24  49.    In or about May 2005, a DOJ representative informed Mr. Faurie that Jane Doe 2

25  should not be working for the District due to her record of prohibited criminal offenses.

26  Mr. Faurie was referred by the DOJ official to the Alameda County Office of Education.

27  Mr. Faurie informed Brier; Brier told Mr. Faurie that Lawrence knew of the situation and

28  that Mr. Faurie was directed to "drop the issue."  Mr. Faurie again raised the issue with

1    Brier and again was told to "drop the issue."  During the period between May 2005 and

2    July 2006, all attempts to address this issue and the larger unlawful BUSD practice it

3    represented were rebuffed with hostility and intractable refusal to respond or take action.

4    This precipitated an increasingly hostile response from Brier which Mr. Faurie is

5    informed and believes and based thereon alleges was based on directives from Lawrence

6    to ignore the legal violations, which directives continued to be implemented by the other

7    individual defendants.

8    50.    During the period from May 2004 to July 2006, Mr. Faurie regularly drew to the

9    attention of Brier and Dodson the fact that BUSD routinely failed to follow proper

10    procedures for newly appointed employees for enrollment in the California Public

11    Employee Retirement System (hereinafter "CalPERS").  Mr. Faurie's concerns, as with

12    all of his efforts to assist the District in complying with its legal responsibilities and

13    avoiding liability for legal violations, were rebuffed and met with hostility from

14    administrative staff to whom he reported.  In addition, Brier unlawfully distributed

15    confidential CalPERS passwords to unauthorized individuals to avoid the inconvenience

16    of obtaining proper authorization for individuals to whom she wished to delegate

17    information-retrieval duties.  Mr. Faurie reported this legal violation to CalPERS on or

18    about November 2005, which resulted in the suspension of the passwords until proper

19    authorization was obtained by CalPERS.  Brier knew of this report because she was

20    required to obtain a valid password for the individuals to whom she had unlawfully given

21    confidential passwords.

22    51.    In addition to the foregoing, in or about January 2005, Mr. Faurie notified Brier

23    that he was suffering from a repetitive stress injury to his right hand and arm due to a

24    work-related repetitive stress injury.   Mr. Faurie continued with his assigned duties until

25    he was prevented from performing them due to extreme pain he suffered as a result of his

26    injury.  He subsequently filed a workers' compensation claim in July 2005 in order to

27    seek appropriate medical treatment.  Upon learning of Mr. Faurie's workers

28    compensation claim, Brier immediately became hostile, yelled at Mr. Faurie "if this is

1   what you want to do…fine!" and threw the signed claim form at him.  She then loudly

2   ordered him to stop typing and quickly left his office.

3   52.        Despite orders from the District-appointed physician that Mr. Faurie take ten-

4   minute breaks per hour, Brier repeatedly ignored this directive and issued work for Mr.

5   Faurie to perform, and routinely interrupted his breaks in order to address work issues,

6   which generally involved use of Mr. Faurie's hand, in direct violation of his doctor's

7   orders.  Due to the lack of rest required for improvement of his condition, the doctor

8   increased Mr. Faurie's rest period to twenty minutes per hour, which Brier also ignored

9   as she continued to interrupt his rest periods.  Brier informed Mr. Faurie that his doctor

10  was "crazy" and "didn't know what he was doing."  She also claimed that the directed

11  rest period only inferred that Mr. Faurie should not type, and that his doctor was "crazy"

12  and "incompetent."  Mr. Faurie confirmed with his doctor that he was directed not to

13  perform any work of any type during his rest period, and the doctor was infuriated by

14  Brier's lack of cooperation needed in order for Mr. Faurie to recover in a timely manner.

15  Mr. Faurie attempted to lock his office door to prevent interruptions of his breaks by

16  Brier, but Brier became enraged and informed Mr. Faurie that he "must be available at all

17  times" regardless of the doctor's direction.  In or about October 2005, the worker's

18  compensation physician placed Mr. Faurie on medical leave to stop Brier's refusal to

19  accommodate his medical limitations.

20  53.        Upon his return from leave, Mr. Faurie requested to Inez Reed, Supervisor of

21  Workers' Compensation, that his new work location be evaluated to prevent a

22  reoccurrence of his injury, but his requests were ignored.  Brier was aware of his requests

23  yet refused to take action to ensure that the evaluation was performed.

24  54.        At the time of Mr. Faurie's departure from BUSD, all female employees within

25  the H.R. Department had filed workers' compensation claims for varying reasons; none

26  were treated with hostility for doing so in the manner in which Brier behaved with Mr.

27  Faurie.

28

55.     On three separate occasions in July 2006, immediately prior to Mr. Faurie's constructive discharge, Mr. Faurie had asserted both orally and in writing the need for extension of a deadline and/or a request for overtime compensation to adequately execute duties for processing classified employee step increases, but he was unjustifiably denied and/or ignored on all three occasions.  However, Udell granted Paula Phillips, a female employee within the H.R. Department, extension of the deadline and authorized overtime to perform step increase determinations.  Claimant does not dispute that extension given to Ms. Phillips by Udell was proper and necessary, but contends that the denial of his request was retaliatory and discriminatory, creating a hostile and unlawful work environment, and preventing him from being able to perform his assigned duties and enjoy the benefits of his employment relationship with BUSD.

56.     In February 2006, Mr. Faurie was threatened by Brier with disciplinary action if he did not comply with a "stacked" discipline process.  The process for following disciplinary procedures is clearly outlined in collective bargaining agreements as well as in the merit system rules.  Brier routinely ignored these rules through creation of a predetermined outcome for disciplined employees.  Brier regularly handled multiple levels of the disciplinary process on behalf of other individuals who were assigned to address employee discipline matters, thereby violating disciplined employees' rights to procedural due process and compliance with established District policies.  The process lacked the neutrality required of Brier's position as both Director, Classified Personnel and liaison to the Merit Commission, and garnered repeated complaints by employees' union representatives.

57.     At least two attorneys employed by or affiliated with the law firm that represented the District in disciplinary matters were directly involved in disregarding procedural due process constraints on the disciplinary process.  Mr. Faurie heard one attorney state to Brier and Payroll Supervisor Lori Lewis that, despite a particular employee's progress, they were "going to get her anyway." Discipline procedures against the employee continued because, as the attorney stated, she "did not care" about improvements in work

1    performance made by the employee.  A second attorney, was hired from the same firm by

2    Lawrence as an interim Assistant Superintendent of Human Resources/Consultant, yet

3    the position is required to be neutral in nature due to Constitutional procedural constraints

4    on disciplinary and merit system matters.  Mr. Faurie objected to these violations of

5    employees due process rights, but was rebuffed by Brier, who informed him that if he did

6    not participate in implementation of the disciplinary process he would be considered

7    insubordinate.

8    58.    Mr. Faurie was ranked in the highest category of each of his performance

9    evaluations.  His evaluations by Brier stated that she was comfortable leaving the office

10   knowing that Mr. Faurie was available to handle issues in her absence.  They also

11   demonstrated that he worked above his assigned classification. Mr. Faurie is informed

12   and believes and based thereon alleges that a classification study performed by Reward

13   Strategy Group during and after Mr. Faurie's employment with BUSD confirmed that

14   Mr. Faurie was working at a higher level on a regular basis and concluded that his

15   position should be reclassified as an Analyst.

16   59.    On or about July 5, 2006, Udell was hired by BUSD.  Udell possessed apparent

17   supervisory authority over employees in the BUSD Human Resources Department,

18   pending appointment of a replacement for Brier.  However, as with the consultant hired

19   on a temporary basis upon Brier's resignation, Udell was untrained and relied on Mr.

20   Faurie to advise her and perform duties of her position while she learned it.  He did not

21   receive appropriate differential pay for working out of his classification during this

22   period.  On or about July10, 2006, Obieta was hired into the position of Director,

23   Classified Personnel.  Similarly, Obieta lacked appropriate training and experience.

24   60.    Udell called a meeting of the BUSD H.R. Department staff on July 11, 2006.  At

25   that meeting, Udell directed BUSD staff, including Mr. Faurie, to ignore the fact that

26   BUSD employees were being unlawfully forced into early retirement because the H.R.

27   staff were providing incorrect information regarding No Child Left Behind Act testing

28   requirements.  Mr. Faurie stated to Udell that the course of conduct she was ordering was

1    contrary to law.  She reacted to Mr. Faurie's questioning of her directive with open

2    hostility and told him that she "knows we are breaking the law" but that her directive was

3    consistent with BUSD policy as communicated and authorized by Superintendent

4    Lawrence.  When Mr. Faurie persisted in voicing his understanding that the directed

5    course of conduct was unlawful and that it would put the District and potentially its

6    individual employees in legal jeopardy, he was accused, rudely and openly in front of his

7    co-workers, of having an "attitude problem" and was admonished to drop the subject.

8    This incident demonstrated in unavoidable terms that Lawrence had ignored all

9    complaints regarding unlawful directives by BUSD administrative staff, unlawful

10   treatment of employees, as well as legally perilous and intractable administrative

11   incompetence at the Director level.

12   61.     Mr. Faurie, having diligently endeavored for years to patiently request that some

13   modicum of integrity and law-abiding behavior be instilled into the policies and practices

14   of the BUSD administration, and having persistently attempted to secure equal treatment

15   as a male, was subjected to a threshold of intolerability that no reasonable person would

16   be able to endure without injury.  He was rendered physically ill and extremely

17   emotionally distressed by Udell's offensive and hostile rebuke to his final attempt to raise

18   the issue of BUSD's unlawful policies and practices.  Consequently, he left the meeting

19   due to emotional and physical injury.  Mr. Faurie left a voice mail message later that

20   same day for Obieta, his direct supervisor, informing her that he was ill and would be out

21   on sick leave for the remainder of the week and that he would notify her on Monday, July

22   17, 2006, whether he intended to tender his resignation.

23   62.     Later the same day, Obieta left a voice mail message on Mr. Faurie's home

24   telephone answering machine in which she (1) demanded that Mr. Faurie provide a

25   doctor's note by June 12, 2006, for his absence due to illness; (2) said "You've also told a

26   number of people that you are resigning, um, so, you can also go ahead and bring in your

27   letter of resignation tomorrow"; and (3) told him he could call her if he had any questions

28   but that she could not remember her  phone number.

63.    Through his attorney, Mr. Faurie sent a letter to Obieta on July 12, 2006 via facsimile and certified U.S. mail, informing her that, given that Mr. Faurie had no history of abusing his sick leave and in light of District policies and practices, she had no lawful basis to demand that he produce a doctor's note on July 12, 2006.  The letter also noted that Mr. Faurie's illness, both physical and emotional, had been caused by ongoing managerial inadequacies in her department and a hostile work environment to which he was subjected because of drawing attention to illegal courses of action directed by BUSD H.R. administrative personnel.  The letter also set forth Mr. Faurie's claims that there was a pattern and practice of discrimination in the department on the basis of sex, that employees are required to work out of job classification without appropriate differential compensation, and that Mr. Faurie had lodged several complaints with CalPERS, the Alameda County Superintendent of Schools, and the State Department of Justice regarding legal violations in the BUSD H.R. Department.   The letter further set forth that Mr. Faurie had not resigned his employment, and that any attempt to terminate his employment would constitute tortious wrongful discharge in violation of fundamental public policy, termination without just cause, a whistleblower violation, and discrimination based on sex.  Obieta was admonished not to contact Mr. Faurie directly and to preserve all documents and electronic records regarding him.

64.    Lawrence responded to Mr. Faurie's counsel's letter via telephone call on July 13, 2006.  During that conversation, Lawrence inaccurately stated that Mr. Faurie had six days of sick leave accrued (he actually had 18, which Lawrence later acknowledged), granted Mr. Faurie's request for sick leave, refused to acknowledge that Mr. Faurie had been subjected to a hostile environment in retaliation for identifying illegal directives from his superiors or had been subjected to disparate treatment based on his sex, and informed Mr. Faurie's counsel that Mr. Faurie had "burned his bridges" with BUSD administrative staff.  That conversation was memorialized in a letter from Mr. Faurie's counsel to Lawrence dated July 14, 2006.

65.     Mr. Faurie's attorney sent another letter to Lawrence via facsimile and U.S. Mail on July 17, 2006.  The letter further memorialized the telephonic conversation with Ms. Lawrence of July 13, 2006, and observed that Lawrence's representations regarding her understanding of the issues presented, the attitude of the BUSD H.R. administrative staff regarding Mr. Faurie, and her statement that he had "burned his bridges" when in fact he had been forced to leave due to illness caused by an unlawful hostile work environment, indicated the toxic work environment could not be considered reasonably likely to improve. Consequently, via his attorney, Mr. Faurie conveyed his intent to resign his position under duress.

66.     Lawrence sent two letters to Mr. Faurie's counsel on July 17, 2006, one erroneously dated July 14, 2006, and one correctly dated July 17, 2006.  With those letters, Lawrence requested that Mr. Faurie tender his resignation using an approved BUSD form and that he provide written authorization for his attorney to speak on his behalf.

67.     Mr. Faurie's attorney replied with a letter dated July 19, 2006, confirming Mr. Faurie's resignation and addressing other matters raised by Lawrence.  Attached to that letter was a signed BUSD resignation form, completed and signed by Mr. Faurie, in which he struck out standard form language indicating that his resignation was voluntary, and on which he stated that he had been constructively discharged due to a hostile and illegal working environment.  Also attached to that letter was a signed authorization for Mr. Faurie's attorney to represent him with the District.

68.     In order to mitigate his damages, on or about July 20, 2006, Mr. Faurie submitted to the Employment Development Department (hereinafter "EDD") an application for unemployment insurance, asserting as the basis for his claim that he was constructively discharged due to an unlawful hostile work environment to which he had been subjected in retaliation for having identified, resisted, or refused to implement unlawful directives by BUSD administrative staff.  An EDD investigator investigated Mr. Faurie's application, heard the position of BUSD staff, and determined that Mr. Faurie was

1   entitled to unemployment insurance compensation because he had been constructively

2   discharged through a hostile work environment in retaliation for resisting and reporting

3   unlawful directives by his supervisors.

4   69.    BUSD did not file a timely appeal of the EDD determination.  On or about August

5   14, 2006, BUSD, through its representative, Talx UCeXpress, submitted to the

6   Unemployment Insurance Appeals Board (hereinafter "UIAB") an untimely appeal of the

7   EDD determination with a frivolous motion to excuse its late filing.  Mr. Faurie and his

8   counsel appeared at the scheduled UIAB hearing, but BUSD did not appear before the

9   administrative law judge to prosecute its appeal.  Consequently, the appeal was denied

10  and BUSD did not seek relief from its default or reopening of the appeal to challenge the

11  determination in Mr. Faurie's favor.  Through its frivolous and unprosecuted appeal,

12  BUSD attempted to thwart Mr. Faurie's efforts to mitigate his damages, and wasted his

13  time and resources expended in preparing and appearing for an appeal the District

14  apparently decided to abandon.

15  70.    Also in order to mitigate his damages, Mr. Faurie engaged in an intensive and

16  persistent job search throughout the greater San Francisco Bay Area from July 17, 2006,

17  through December 2006, when he was offered and accepted a new position.  However,

18  the position to which he was hired is lower in rank than the professional classification for

19  which he is qualified, as evidenced by his placement on the eligibility list for a higher

20  classification equivalent to a Senior Personnel Analyst.  He accepted this lower position

21  to mitigate damages and bring in desperately needed income.  But, his unlawful

22  constructive discharge from BUSD employment continues to result in diminished

23  compensation and delayed professional advancement.

24  71.    Mr. Faurie immediately consulted with a psychiatrist upon his unlawful

25  constructive discharge and has remained under the care of that psychiatrist continually to

26  the present.  He has been treated for severe anxiety, panic attacks, and emotional distress

27  resulting from the unlawful treatment he received from BUSD administrative staff.

28

72.    Plaintiff at all times duly performed all the conditions of his employment until Defendants prevented him from doing so.  At all times relevant to this Complaint, Plaintiff was ready, willing, and able to perform his job until he was constructively discharged by Defendants.

**B. Satisfaction of Tort Claims Act Claim Presentation Requirement**

73.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 72, above.

74.    On January 10, 2007, Mr. Faurie, by and through his counsel, filed with the duly designated agent and the President of the governing Board of BUSD a detailed Notice of Tort Claims, pursuant to Government Code § 900 et seq., with a 21 – page attachment, in which he set forth in detail the foregoing factual allegations and the claims for relief alleged herein, and in which he requested to be made whole for the losses he suffered as detailed herein.

75.    Plaintiff is informed and believes and based thereon alleges that, on or about February 21, 2007, the BUSD governing Board met in closed session to discuss Mr. Faurie's Tort Claims, consulted with the Board's counsel, and on that date either took no action on his claims or rejected his claims, but in any case took action adverse to his claims in their entirety.

76.    Plaintiff is informed and believes and based thereon alleges that on or between February 21, 2007 and February 23, 2007, the BUSD Board, apparently acting pursuant to advice of counsel, promulgated false and misleading meeting minutes which erroneously represent that, on February 7, 2007, the Board had rejected portions of Mr. Faurie's claim that accrued after July 10, 2006.

77.    Repeated attempts by Plaintiff's counsel to obtain a clarification from counsel for the BUSD Board regarding what action the Board took on Mr. Faurie's claims and when such action was taken were rejected by counsel for the BUSD Board, who confined her answers to referring to the fraudulent meeting minutes, which do not reflect what actually took place or when the Board took action on Mr. Faurie's claim.

78.     Notwithstanding the fraudulent meeting minutes and the refusal of counsel for the Board to accurately and clearly state when her client took action on Mr. Faurie's claims and what action it took, it is clear that the Board ultimately rejected Mr. Faurie's tort claim in its entirety.  Mr. Faurie has, therefore, satisfied his tort claim presentation requirement and is now permitted to file this action against Defendants, and each of them.

79.     Subsequent to the BUSD Board's rejection of Mr. Faurie's Tort claims, counsel for BUSD's Board commenced an investigation into the merits of his claims.

**C.  DFEH Complaints and Right-To-Sue Letters**

80.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 79, above.

81.     On March 26, 2007, Plaintiff, by and through his counsel, filed a complaint with the Department of Fair Employment and Housing against Defendants, and each of them, and requested immediate right-to-sue letters.  In his complaints, Plaintiff alleged the facts set forth herein and asserted against each and every Defendant claims under Government Code §12900 et seq.

82.     The Department of Fair Employment issued Right-To-Sue Notices dated March 28, 2007, regarding each and every Defendant.

83.     On May 15, 2007, Plaintiff, by and through his counsel, timely served each and every Defendant with the DFEH complaint filed against him/her/it and with a copy of the corresponding Right-To-Sue Notice for each and every Defendant.

84.     Therefore, Plaintiff has exhausted his administrative remedies prerequisite to bringing a civil action pursuant to Government Code §12900 et seq. and is free to pursue the instant action.

**FIRST CAUSE OF ACTION**
**(Retaliatory Discharge For Whistleblowing and**
**Refusing to Comply With Unlawful Directives [Labor Code § 1102.5]**
**[Against BUSD and Defendants in their Official Capacities])**

85.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 84, above.

86.     Mr. Faurie asserts that he was constructively discharged because a reasonable person in his circumstances, facing the hostile and offensive retaliatory environment to which he was subjected, would feel no choice but to resign.  As noted above, this fact has been confirmed by the Employment Development Department, which finding was uncontroverted by BUSD on its late-filed and abandoned appeal to the Unemployment Insurance Appeals Board.

87.     Mr. Faurie engaged in conduct protected by Labor Code § 1102.5 when, as detailed throughout this Complaint, he reported policies, practices, and directives within the BUSD H.R. Department which he reasonably believed violated state and/or federal laws, rules or regulations to supervisors within the BUSD H.R. Department and to other state and local government administrative agencies.

88.     Mr. Faurie also engaged in conduct protected by Labor Code § 1102.5 when he resisted implementing directives he reasonably believed violated state and/or federal laws, rules, or regulations.

89.     Lawrence, Udell, Obieta, Dodson, and Brier, acting in their official capacities, subjected Plaintiff to a hostile and offensive working environment, culminating in his constructive discharge, in retaliation for such protected activity.

90.     Mr. Faurie's constructive discharge violated Labor Code § 1102.5(b) and (c) in that his termination was in retaliation for his complaints regarding unlawful practices and policies of the BUSD knowingly approved and authorized by the Superintendent, his refusal to perform unlawful acts, and his refusal to remain silent regarding ongoing violations of law and public policy, as detailed in the statement of facts above.

91.     As a direct, foreseeable, and proximate result of  BUSD's and the individual Defendants' wrongful termination of Mr. Faurie in violation of Labor Code § 1102.5(b) and (c), Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through

1  January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007,

2  vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007,

3  CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front

4  pay constituting the difference between his current rate of pay and the pay he would

5  receive as a Senior Administrative Analyst, all to his damage in an amount in excess of

6  $200,000.00, the precise amount of which is subject to proof.

7  92.      As a further direct, foreseeable, and proximate result of BUSD's and the

8  individual Defendants' wrongful termination of Mr. Faurie in violation of Labor Code §

9  1102.5(b) and (c), Mr. Faurie has suffered gastrointestinal disturbances, headaches,

10  vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the

11  precise amount of which is subject to proof.

12  93.      Also as a direct and proximate result of the unlawful actions described above, Mr.

13  Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

14  including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

15  humiliation, fear, embarrassment, depression and discomfort all to his damage in an

16  amount in excess of $400,000.00, the precise amount of which is subject to proof.

17        WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

18  them, as set forth in the prayer for relief, *infra*.

19                     **SECOND CAUSE OF ACTION**

20  **(Violation of Federal Right To Equal Protection of the Laws**
    **[42 U.S. Code § 1983; U.S. Constitution Amendments V and XIV] [Against**

21  **Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual Capacities])**

22  94.      Plaintiff incorporates herein by reference as though fully set forth at length the

23  allegations of paragraphs 1 through and including 93, above.

24  95.      Plaintiff alleges that each and every act alleged herein was performed by

25  Defendants not only as individuals, but under the color and pretenses of the statutes,

26  ordinances, regulations, customs and usages of the State of California, and the rules,

27  policies, and direction of the Berkeley Unified School District, having been clothed with

28  both actual and apparent authority by the BUSD governing board.

96.    As alleged in detail herein, the individual Defendants, and each of them, treated Plaintiff, who is male, unequally based on his sex, with respect to requiring him to work out of his job classification, granting of differential pay, responses to filing of workers' compensation claims, granting of requests for vacation leave, quantity of work assigned, and responses to attempts to have his statutory rights honored.  Defendants' actions thereby impeded and hindered the course of justice with the intent to deny Plaintiff the equal protection of the laws.

97.    As a direct, foreseeable, and proximate result of  the individual Defendants' violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

98.    As a further direct, foreseeable, and proximate result of  the individual Defendants' violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

99.    Also as a direct and proximate result of the unlawful actions described above, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

humiliation, fear, embarrassment, depression and discomfort all to his damage in an

amount in excess of $400,000.00, the precise amount of which is subject to proof.

100.    Defendants' violations of Plaintiff's right to equal protection of the laws were, as

alleged in this Complaint, part of a pattern and practice of sex discrimination in the

BUSD H.R. Department.  Plaintiff and three other male employees repeatedly

complained about the pattern and practice of discrimination in the BUSD H.R.

Department based on sex and Plaintiff and all three of those individuals were

constructively discharged in retaliation for their attempts to vindicate their rights to equal

treatment.  Defendants' actions were therefore willful, deliberate, and undertaken in

reckless disregard of the rights of Plaintiff and similarly situated males.  Therefore,

Defendants' actions, jointly and severally, entitle Plaintiff to an award of punitive

damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

them, as set forth in the prayer for relief, *infra*.

### THIRD CAUSE OF ACTION
**(Deprivation Of Benefits and Privileges of Public Employment and Termination of
Public Employment Without Due Process Of Law [42 U.S. Code § 1983; U.S.
Constitution Amendments V and XIV] [Against Lawrence, Udell, Obieta, Dodson,
and Brier, in their Individual Capacities))**

101.    Plaintiff incorporates herein by reference as though fully set forth at length the

allegations of paragraphs 1 through and including 100, above.

102.    Plaintiff alleges that each and every act alleged herein was performed by

Defendants not only as individuals, but under the color and pretenses of the statutes,

ordinances, regulations, customs and usages of the State of California, and the rules,

policies, and direction of the Berkeley Unified School District, having been clothed with

both actual and apparent authority by the BUSD governing board.

103.    Mr. Faurie was employed by BUSD under terms established by the Merit System

Rules, Board Policies, oral representations, and consistently stellar performance

evaluations.  Under those terms, Mr. Faurie's was required to be treated fairly and in

1    conformity with the laws of the State of California, and his employment was for an

2    indefinite term not to expire as long as he successfully performed the duties of his

3    position, subject to termination only for just cause, and only in conformity with BUSD

4    written disciplinary policies and procedures.

5    104.    As a public employee, by operation of the Due Process Clauses of the Fifth and

6    Fourteenth Amendments to the U.S. Constitution, Mr. Faurie was entitled to have the

7    granting of the benefits and privileges of employment, deprivation of such benefits and

8    privileges of employment, and termination of his employment, to be administered

9    consistent with due process of law, including a fair, impartial, evenly administered,

10   rationally based, and orderly administrative and adjudicatory process prior to termination

11   of his employment.

12   105.    Mr. Faurie was ready, willing, and able to perform, and did perform, the terms of

13   his employment contract with Defendants competently and in a manner that exceeded the

14   expectations of his supervisors throughout his employment with BUSD through and

15   including the day he was constructively discharged as alleged herein.

16   106.    Defendants, and each of them, violated Mr. Faurie's right to due process by

17   requiring him to perform work above his professional classification without appropriate

18   differential pay despite his entitlement to, and repeated requests for, such fair pay;

19   constructively terminating his employment by subjecting him to a hostile work

20   environment in retaliation for his reporting of, and refusal to implement, violations of law

21   directed by BUSD administrative staff, which constituted an irrational and unlawful basis

22   for discipline or termination; constructively terminating his employment without utilizing

23   any administrative process, much less a fair, rationally based, impartial, and evenly

24   administered process; retaliating against him for attempting to vindicate statutory rights

25   to fair and equal treatment; and by contaminating the Merit System appeals procedures

26   by ignoring Constitutionally required separation of roles as advocate for the District and

27   advisor to the commission.

28

107.    Resort to the Merit System appeal procedure would have been futile because Brier and Lawrence were the gatekeepers to such appeals and routinely engaged in improper ex-parte communications with Merit Commission members.

108.    As a direct, foreseeable, and proximate result of the individual Defendants' violation of Mr. Faurie's right to due process, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

109.    As a further direct, foreseeable, and proximate result of the individual Defendants' violations of Plaintiff's right to due process, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

110.    Also as a direct and proximate result of the unlawful actions described above, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort all to his damage in an amount in excess of $400,000.00, the precise amount of which is subject to proof.

111.    Defendants' violations of Plaintiff's right to due process were, as alleged in this Complaint, part of a pattern and practice of retaliatory, discriminatory, and arbitrary treatment of employees in the BUSD H.R. Department.  Defendants were repeatedly advised by Plaintiff and other similarly situated employees that Defendants' actions

1   violated constituted violations of law and public policy and violated Plaintiff's and the

2   other individual's rights to fair treatment.  Defendants' actions were therefore willful,

3   deliberate, and undertaken in reckless disregard of the rights of Plaintiff and similarly

4   situated employees.  Therefore, Defendants' actions, jointly and severally, entitle Plaintiff

5   to an award of punitive damages.

6         WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

7   them, as set forth in the prayer for relief, *infra*.

8                      **FOURTH CAUSE OF ACTION**

9   **(Unlawful Discrimination On the Basis Of Sex [Gov. Code § 12900 et seq.] [Against**

10                **BUSD and Defendants in their Official Capacities])**

11  112.   Plaintiff incorporates herein by reference as though fully set forth at length the

12  allegations of paragraphs 1 through and including 111, above.

13  113.   Mr. Faurie is a male.

14  114.   This claim is brought pursuant to the California Fair Employment and Housing

15  Act, section 12940(a) of the Government Code, prohibiting termination of an employee

16  from employment on the basis of the sex of any person, and the corresponding

17  regulations of the California Department of Fair Employment and Housing.

18  115.   At all times mentioned herein, Mr. Faurie was fully qualified for the position of

19  Administrative Coordinator – Confidential.  His performance evaluations were

20  consistently and uninterruptedly very positive, indicating that his performance, in

21  substance and quality, exceeded the duties of his position.

22  116.   BUSD and the individual Defendants conferred differential pay, granted vacation,

23  and allocated work disparately according to sex, as detailed in the statement of facts,

24  above.

25  117.   BUSD and the individual defendants also constructively discharged Mr. Faurie

26  based on his sex, as part of a pattern and practice of subjecting male employees to a

27  hostile and offensive work environment and disparately allocating employment benefits

28  and privileges based on their sex, as detailed above.

118.    Mr. Faurie believes and alleges that his sex was a substantial and determining factor in BUSD's constructive termination of his employment.

119.    BUSD's and the individual Defendants' discrimination against Mr. Faurie based on his sex and constructive termination of Mr. Faurie's employment as alleged herein constitute unlawful employment practices in violation of section 12940(a) of the Government Code.

120.    BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie also breached the terms of Mr. Faurie's employment in that their actions were in violation of relevant Merit System rules, oral representations, and reasonable expectations based on positive performance evaluations.

121.    The unlawful discrimination against Mr. Faurie was continuing in nature and commenced when Mr. Faurie was hired in or about October 2002 and continued throughout Mr. Faurie's employment by BUSD.

122.    As a direct, foreseeable, and proximate result of BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

123.    As a further direct, foreseeable, and proximate result of BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and

1    exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount

2    of which is subject to proof.

3    124.    Also as a direct and proximate result of Defendants' unlawful discrimination

4    against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer,

5    from severe mental and emotional distress, including panic attacks, sleep disturbances,

6    anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and

7    discomfort all to his damage in an amount in excess of $400,000.00, the precise amount

8    of which is subject to proof.

9        WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth

10    in the prayer for relief, *infra*.

## FIFTH CAUSE OF ACTION

**(Unlawful Harassment On the Basis Of Sex/Gender [Gov. Code § 12900(j)] [Against**

**BUSD and against Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual**

**Capacities])**

15    125.    Plaintiff incorporates herein by reference as though fully set forth at length the

16    allegations of paragraphs 1 through and including 125, above.

17    126.    The individual Defendants, and each of them, as detailed throughout this

18    Complaint, subjected Plaintiff to a hostile and offensive work environment because of his

19    sex/gender (male) by treating him with open hostility, rebuking him in front of other

20    employees, trivializing his requests for equal treatment, and insulting him, while

21    refraining from subjecting similarly situated female employees to such hostile and

22    offensive working conditions.

23    127.    Defendants imposition of hostile and offensive working conditions on Plaintiff

24    because of his sex/gender (male) fell outside their legitimate official functions, but

25    occurred within the actual or constructive knowledge of Defendant Lawrence.

26    128.    Defendants' imposition of hostile and offensive working conditions on Plaintiff

27    because of his sex/gender (male) was part of a pattern and practice of creating such an

28    unlawful, hostile working environment to which three other, similarly situated men were

1   subjected during Mr. Faurie's tenure, resulting in the constructive discharge of each and

2   all of them.

3   129.    The hostile and offensive environment to which Defendants subjected Plaintiff

4   was so severe and pervasive that any reasonable person in his position would be injured

5   by it and would find it intolerable.

6   130.    Each Defendant was aware of, or should have been aware of, the unlawful actions

7   of the other and should have taken corrective action to remediate the unlawful

8   harassment, but did not.  Lawrence was aware of, or should have been aware of, the

9   unlawful harassment because of sex, and took no action to correct it.

10  131.    Defendants' unlawful harassment of Mr. Faurie was continuing in nature and

11  commenced when Mr. Faurie was hired in or about October 2002 and continued

12  throughout Mr. Faurie's employment by BUSD.

13  132.    As a direct, foreseeable, and proximate result of  Defendants' unlawful

14  harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered, and

15  continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as

16  expenses incurred in securing new employment, including but not limited to loss of

17  appropriate differential pay from April 2003 through July 2006, proper job classification

18  and associated rate of pay from April 2003 through January 1, 2007, the value of his

19  health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would

20  have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the

21  period from July 17, 2006 to January 1, 2007, and front pay constituting the difference

22  between his current rate of pay and the pay he would receive as a Senior Administrative

23  Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of

24  which is subject to proof.

25  133.    As a further direct, foreseeable, and proximate result of Defendants' unlawful

26  harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered

27  gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an

28  amount in excess of $100,000.00, the precise amount of which is subject to proof.

134.    Also as a direct and proximate result of Defendants' unlawful harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort all to his damage in an amount in excess of $400,000.00, the precise amount of which is subject to proof.

135.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each of them, were part of a pattern and practice of creating a hostile and offensive environment based on sex that disadvantaged men in the BUSD H.R. Department. Defendants were repeatedly advised of the unlawful conditions and rebuked Plaintiff's attempts to secure correction of the unlawful treatment with further hostility, ridicule, and threats of discipline.  Defendants' actions, therefore, were carried out in a deliberate, malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie, entitling him to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, as set forth in the prayer for relief, *infra*.

## SIXTH CAUSE OF ACTION

### (Unlawful Retaliation For Opposing Violation of Rights Protected By the FEHA [Gov. Code § 12900(h)] [Against BUSD])

136.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 135, above.

137.    The individual Defendants, as detailed in this Complaint, subjected Plaintiff and similarly situated males to threats of discipline, admonishments to be silent, hostility, and ultimately, constructive discharge, in retaliation for Plaintiff's and similarly situated males' attempts to oppose discrimination on the basis of sex in the BUSD H.R. Department.

138.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA fell outside their legitimate official functions, but occurred within the actual or constructive

1    knowledge of Defendant Lawrence and was therefore foreseeable and constituted

2    implementation of BUSD policy and practice under her control and direction.

3    139.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA was

4    part of a pattern and practice of such an unlawful retaliation to which three other,

5    similarly situated men were subjected during Mr. Faurie's tenure, resulting in the

6    constructive discharge of each and all of them.

7    140.    Each Defendant was aware of, or should have been aware of, the unlawful actions

8    of the other and should have taken corrective action to remediate the unlawful retaliation,

9    but did not.  Lawrence specifically was aware of, or should have been aware of, the

10   unlawful retaliation, but took no action to correct it.

11   141.    Defendants' unlawful retaliation against Mr. Faurie was continuing in nature and

12   commenced when Mr. Faurie was hired in or about October 2002 and continued

13   throughout Mr. Faurie's employment by BUSD.

14   142.    As a direct, foreseeable, and proximate result of  Defendants' unlawful retaliation

15   against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department,

16   Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss

17   of fringe benefits, as well as expenses incurred in securing new employment, including

18   but not limited to loss of appropriate differential pay from April 2003 through July 2006,

19   proper job classification and associated rate of pay from April 2003 through January 1,

20   2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of

21   13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS

22   contributions for the period from July 17, 2006 to January 1, 2007, and front pay

23   constituting the difference between his current rate of pay and the pay he would receive

24   as a Senior Administrative Analyst, all to his damage in an amount in excess of

25   $200,000.00, the precise amount of which is subject to proof.

26   143.    As a further direct, foreseeable, and proximate result of Defendants' unlawful

27   retaliation against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R.

28   Department, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting,

1    and exhaustion all to his damage in an amount in excess of $100,000.00, the precise

2    amount of which is subject to proof.

3    144.    Also as a direct and proximate result of Defendants' unlawful retaliation against

4    Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department, Mr.

5    Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

6    including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

7    humiliation, fear, embarrassment, depression and discomfort all to his damage in an

8    amount in excess of $400,000.00, the precise amount of which is subject to proof.

9    145.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each

10    of them, were part of a pattern and practice of retaliating against Mr. Faurie and similarly

11    situated employees for opposing violations of the FEHA in the BUSD H.R. Department.

12    Defendants were repeatedly advised of the unlawful conduct, but they rebuked attempts

13    to secure correction of the unlawful treatment with further hostility, public ridicule, and

14    threats of discipline.

15        WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth

16    in the prayer for relief, *infra*.

17                        **SEVENTH CAUSE OF ACTION**

18                    **(Intentional Infliction of Emotional Distress)**

19    146.    Plaintiff incorporates herein by reference as though fully set forth at length the

20    allegations of paragraphs 1 through and including 145, above.

21    147.    The actions of BUSD and the individual defendants alleged herein were extreme

22    and outrageous, and were inflicted with intent to cause, or with reckless disregard of the

23    probability of causing, emotional distress.

24    148.    As a direct, foreseeable, and proximate result of BUSD's and individual

25    defendants' unlawful conduct, Mr. Faurie has suffered extreme and severe anguish,

26    humiliation, emotional distress, nervousness, tension, anxiety and depression.

27    149.    The emotional distress intentionally caused was not a normal risk or incident of

28    employment because it was incident to Mr. Faurie's wrongful termination in violation of

1   Labor Code §1102.5; discrimination against, and harassment of, Mr. Faurie based on his

2   sex/gender, as alleged above; retaliation against Mr. Faurie for opposing violations of the

3   FEHA in the BUSD H.R. Department; and violations of Mr. Faurie's federal

4   Constitutional rights to equal protection of the laws and due process of law.  Thus, Mr.

5   Faurie's claim for intentional infliction of emotional distress is not preempted by the

6   exclusive remedial scheme for work-related injuries under the Workers Compensation

7   Act.  (See *Cabusuela v. Browning-Ferris Industries of California, Inc.* (1998) 68

8   Cal.App.4th 101; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, as

9   modified.)

10   150.    The extent of the injuries directly and proximately resulting from BUSD's and the

11   individual defendants' intentional infliction of emotional distress is not fully known at

12   this time, and the amount of damages is not yet fully ascertained but in an amount in

13   excess of $400,000.00, the precise amount of which is subject to proof.  Mr. Faurie

14   claims this amount together with prejudgment interest pursuant to Civil Code section

15   3287 and pursuant to any other provision of law providing for prejudgment interest.

16        ///

17        ///

18        ///

19        ///

20        ///

21        ///

22        ///

23        ///

24        ///

25        ///

26        ///

27        ///

28        ///

1    WHEREFORE, Plaintiff demands judgment against the Defendants, as follows:

2        Against all Defendants:

3        1.  For compensatory damages, including lost wages and benefits, loss of

4            reputation, and damages for physical and emotional injuries, in excess of

5            $700,000.00 and according to proof;

6        2.  For prejudgment interest on all amounts claimed;

7        3.  For attorneys' fees and costs of suit;

8        4.  For such other relief as the court deems just and proper.

9        Against Defendants Lawrence, Udell, Obieta, Dodson, and Brier:

10       5.  For punitive damages.

11   Dated this 19th day of March, 2008

12                          By:   /s/ERIC BORGERSON
                                  Eric Borgerson, SBN 177943
13                                Law Office Of Eric Borgerson
                                  2625 School Street
14                                Oakland, CA 94602
                                  (510) 866-3738
15                                Attorney for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28