United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5

6                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9    GENE FAURIE, JR.,

                          Plaintiff,              NO. C 08-0060 TEH
10

11              v.                                ORDER GRANTING IN
                                                  PART AND DENYING IN
     BERKELEY UNIFIED SCHOOL                      PART DEFENDANTS'
12   DISTRICT, et al.,                            MOTION TO DISMISS

13                        Defendants.

14

15

16          This matter came before the Court on March 24, 2008, on Defendants' Motion to

17   Dismiss the Second Amended Complaint, or, in the Alternative, To Dismiss Each Claim

18   pursuant to Fed. R. Civ. Pro. 12(b)(6), and Motion to Strike Plaintiff's Prayer for Punitive

19   Damages pursuant to Fed. R. Civ. Pro. 12(f).[1]  For the reasons set out below, Defendants'

20   Motion is GRANTED in part and DENIED in part.[2]

21   //

22   //

23   //

24   ─────────────────────

25          [1]    On March 19, 2008, Plaintiff filed a Second Amended Complaint which omitted his
     retaliation claims against individual defendants in the wake of *Jones v. Lodge at Torrey Pines
26   Partnership*, 42 Cal.4th 1158 (2008).  As the parties have no objection, the Court construes
     Defendants' Motion to Dismiss the First Amended Complaint as a Motion to Dismiss the Second
27   Amended Complaint.

          [2]    Plaintiff's request for an award of sanctions will be addressed by separate Order after the
28   Court reviews the parties' additional submissions on that issue.

**United States District Court**
For the Northern District of California

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the Second Amended Complaint in this action, Plaintiff Gene Faurie was employed as an Administrative Coordinator at the Berkeley Unified School District ("BUSD") Human Resources Department from October 2002 until his constructive discharge in July, 2006. SAC ¶¶ 1, 17-18. While he was employed there, he ranked in the highest category in each of his performance evaluations. *Id.* ¶ 58.

Plaintiff alleges that BUSD administration engaged in a pattern and practice of gender-based discrimination against males in the Human Resources Department, applying different standards to men and women with respect to working out of classification, granting differential pay, filing workers' compensation claims, granting requests for vacation leave, and the quantity of work assigned. *Id.* ¶ 19. For example, when Plaintiff's supervisor, Defendant Tina Brier, was absent from the HR office, Plaintiff was required to take on her responsibilities as well as his own. *Id.* ¶ 29. While BUSD merit system rules provide that an employee is entitled to differential pay under such circumstances, *id.* ¶ 30, Brier repeatedly refused to grant Plaintiff differential pay, *id.* ¶¶ 31-35, even though similarly situated female employees were granted such pay *Id.* ¶ 33.

In January, 2005, Plaintiff informed Brier that he was suffering work-related repetitive stress injury to his right hand. *Id.* ¶ 51. He filed a workers' compensation claim in July, 2005, and when Brier learned of it, she became hostile and yelled at Plaintiff. *Id.* She harassed him by interrupting his physician-ordered breaks and refused to accommodate his rest periods, saying his physician was "crazy," as a form of harassment and retaliation. *Id.* ¶ 52. Plaintiff alleges female employees were never treated with hostility for filing workers' compensation claims. *Id.* ¶ 53.

Plaintiff's requests for extensions of time or overtime pay to finish work were denied, while those of females were granted. *Id.* ¶ 55. Plaintiff contends that every one of the four men hired during his tenure at the BUSD HR Department resigned without notice, and alleges on information and belief that they resigned because of the same disparate treatment and a hostile work environment that he suffered. *Id.* ¶¶ 37-41.

Plaintiff also alleges that he complained of multiple violations of state and other laws, and that he suffered retaliatory harassment, hostility, and threats because of his complaints. For example, he complained to his supervisor that Defendant Michelle Lawrence, the Superintendent, had a pattern and practice of hiring employees without statutorily required fingerprint or tuberculosis clearances, or and without obtaining "livescan" digital fingerprint records. *Id.* ¶¶ 42-43, 74.  Beginning in June, 2004, after his complaints were met with hostility, he complained to the California Department of Justice, and then the Alameda County Office of Education. *Id.* ¶¶ 48-49.  He informed his supervisor Brier that he had complained, and was instructed to "drop the issue." *Id.* ¶ 49.  He challenged  Defendant Richard Dodson, the BUSD Labor Relations Director, about his decision to allow an employee to review a personnel file without supervision. *Id.* ¶ 45-46.  He complained to Brier and Dodson that BUSD did not follow proper procedures for enrolling employees in the retirement system CalPERS. *Id.* ¶ 50.  He refused to participate in and complained about improper disciplinary procedures used by the BUSD HR Department. *Id.* ¶¶ 56-57.  He alleges that he suffered increasing hostility from his supervisors Brier and Dodson, and, after June, 2006, from Defendant Cristina Obieta, Brier's replacement. *Id.* ¶¶ 43-50.

Defendant Lisa Udell was hired on July 5, 2006, and had "apparent supervisory authority over employees in the BUSD Human Resources Department" until Obieta was hired to replace Brier on July 10, 2006.  *Id.* ¶ 59.

On July 11, 2006, Udell called a meeting of HR department staff.  At that meeting, she "directed BUSD staff, including [Plaintiff] to ignore the fact that BUSD employees were being unlawfully forced into early retirement because H.R. staff were providing incorrect information regarding No Child Left Behind Act testing requirements."  *Id.* ¶ 60.  Plaintiff alleges that when he confronted her, Udell told him she "knows we are breaking the law," and, when he continued to question her, told him in front of coworkers that he had an "attitude problem."  *Id.*

Plaintiff alleges that this meeting, the culmination of continuing and intolerable hostility toward him, rendered him emotionally distressed and physically ill.  *Id.* ¶ 61.  After

1  an exchange of phone calls and letters over the next week, Plaintiff resigned. *Id.* ¶¶ 61-67.

2  He alleges he was constructively discharged because of gender discrimination and retaliatory

3  harassment and hostility which had become intolerable.

4      Plaintiff mitigated his damages by finding new work in December, 2006, but the

5  position is at a lower rank and pay than his previous work. *Id.* ¶ 70.  He alleges he suffered

6  extreme emotional distress as a result of the Defendants' course of conduct.  *Id.* ¶ 71.

7      Plaintiff filed a Complaint in Alameda County Superior Court on July 9, 2006,

8  alleging causes of action for tortious discharge in violation of public policy, gender-based

9  discrimination in violation of California's Fair Employment and Housing Act ("FEHA"),

10  Cal. Gov. Code §§ 12900 *et seq.*, breach of contract and the implied covenant of good faith

11  and fair dealing, and intentional infliction of emotional distress ("IIED").  Declaration of Eric

12  Borgerson In Opposition to Motion to Dismiss ("Borgerson Decl.") Exh. A.[3]  Defendants

13  filed demurrers on August 27, 2007.  On November 16, 2007, the Superior Court sustained

14  the demurrers as to Plaintiffs' claims for breach of contract and implied covenant and for

15  wrongful discharge in violation of public policy.  *Id.* Exhs. I-M.  It overruled the demurrers

16  with respect to Plaintiff's sex discrimination claim against BUSD, but found that the

---

17

18  [3] Defendants' specious objections to Mr. Borgerson's declaration and the superior court pleadings and orders attached as exhibits thereto are OVERRULED. On a motion to dismiss, the

19  Court may consider "matters properly subject to judicial notice," *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007), which include court filings in other tribunals and other matters of public

20  record. Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003). Although Defendants argue

21  that the Court cannot take judicial notice of the documents without affording the parties notice and an ability to be heard, *Cooperative de Ahorro Y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d

22  269, 273 (1st Cir. 1993), the parties clearly have both in this instance. Plaintiff is not requesting the Court to take judicial notice of factual findings made by other courts, but of the pleadings

23  themselves, so that the Court can see what arguments Defendants advanced in the Superior Court and what that court ruled.

24      Moreover, the documents at issue are properly a part of *this Court's* record. It is well-settled

25  that State court orders in an action issued "prior to its removal *shall remain in full force and effect until dissolved or modified by the district court*." 28 U.S.C. § 1450 (emphasis added); *see also*

26  Wright, Miller, & Cooper, 14C *Federal Practice and Procedure, Jurisdiction 3d* § 3738 p. 405 (well-settled that state court orders remain binding on the parties); *In re Diet Drugs,* 282 F.3d 220,

27  231 -232 (3rd Cir. 2002)("After removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed"). The Court is entitled to require the removing

28  party to file with its clerk "copies of *all* records and proceedings" in the state court. 28 U.S.C. § 1447(b)(emphasis added).

United States District Court  
For the Northern District of California

individual defendants could not be liable under FEHA for disparate treatment, and so dismissed those claims with leave to amend to allege other conduct actionable under FEHA (such as harassment). *Id.* It sustained the demurrers to the IIED claims against individual defendants because it had rejected the other claims on which they were predicated, but gave Plaintiff leave to amend to allege another predicate for IIED.

Plaintiff filed his First Amended Complaint ("FAC") in the Superior Court on December 12, 2007. Defendants filed a Notice of Removal to this Court on January 4, 2008. Plaintiff filed his Second Amended Complaint ("SAC") in this Court on March 19, 2008, which, as noted above, is identical to the FAC but for omission of retaliation claims against individuals. The Second Amended Complaint asserts causes of action for:

1.    "Retaliatory Discharge for Whistleblowing and Refusing to Comply with Unlawful Directives" in violation of Cal. Labor Code § 1102.5, against the BUSD and defendants in their official capacities; SAC ¶¶ 85-93;

2.    Violation of Plaintiff's equal protection rights, under 42 U.S.C. § 1983, against BUSD and Defendants Lawrence, Udell, Obieta, Dodson, and Brier; SAC ¶¶ 94-100;

3.    Violation of Plaintiff's due process rights, under 42 U.S.C. § 1983, against only Defendants Lawrence, Udell, Obieta, Dodson, and Brier; SAC ¶¶ 101-111;

4.    Discrimination on the basis of gender, in violation of FEHA, against BUSD and Defendants in their official capacities; SAC ¶¶ 112-124;

5.    Harassment on the basis of gender, in violation of FEHA, against BUSD and Defendants Lawrence, Udell, Obieta, Dodson, and Brier; SAC ¶¶ 125-135;

6.    Retaliation for opposing rights protected by FEHA, against BUSC; SAC ¶¶ 136-145; and

7.    Intentional infliction of emotional distress, against all Defendants. SAC ¶¶ 146-150.

Defendants now move to Dismiss the Second Amended Complaint, or, in the Alternative, To Dismiss Each Claim pursuant to Fed. R. Civ. Pro. 12(b)(6), and Motion to Strike Plaintiff's Prayer for Punitive Damages pursuant to Fed. R. Civ. Pro. 12(f).

**LEGAL STANDARD**

United States District Court

For the Northern District of California

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In addition, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds by* 275 F.3d 1187 (9th Cir. 2001). A court should not grant dismissal unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

Federal Rule of Civil Procedure 12(f) permits a court to strike from the pleadings "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion under Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (citations omitted). Motions to strike are commonly used to "strike a prayer for relief where the damages sought are not recoverable as a matter of law." *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F.Supp.2d 1088, 1110 (E.D.Cal. 2001). When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party. *California ex rel. State Lands Comm'n. v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981) (cited with approval in *Fantasy, Inc.*, 984 F.2d at 1528). Such motions should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the

United States District Court

For the Northern District of California

1    subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335,

2    1339 (N.D. Cal. 1991).

3

4    **DISCUSSION**

5    **I.    Defendants' Motion To Dismiss Under Fed. R. Civ. Pro. 12(b)(6)**

6         **A.    Plaintiff's First Cause of Action For  Retaliatory Discharge In Violation
              Of California Labor Code § 1102.5 (Whistleblowing)**

7         Defendants move to dismiss Plaintiff's First Cause of Action, which alleges that

8    Defendants retaliated against him for whistleblowing and refusing to comply with unlawful

9    directives in violation of Cal. Labor Code § 1102.5.[4]   To establish a *prima facie* case of

10   retaliation under Labor Code § 1102.5, Plaintiff must show (1) that he engaged in protected

11   activity, (2) that he was thereafter subjected to an adverse employment action by his

12   employer, and (3) that there was a causal link between the protected activity and the adverse

13   employment action." *Love v. Motion Industries, Inc.,* 309 F.Supp.2d 1128, 1134 (N.D.Cal.

14   2004), *citing Morgan v. Regents of University of California*, 88 Cal.App.4th 52, 69 (2000).

15                    **1.    Plaintiff Sufficiently Pled Protected Activity**

16        Protected activity is disclosure of or opposition to "a violation of state or federal

17   statute, or a violation or noncompliance with a state or federal rule or regulation." Labor

18   Code § 1102.5(b).  To state a claim, Plaintiff must be able to identify a specific state or

19   federal statute, rule, or regulation which he believed Defendants were violating.  *Carter v.*

20   *Escondido Union High School Dist.,* 148 Cal.App.4th 922, 933 (2007), *citing Love*, 309

21   F.Supp.2d at 1134.

22        Defendants claim that Plaintiff has failed to identify any specific statute, rule, or

23   regulation allegedly violated.  Plaintiff's Second Amended Complaint does not cite to

24

25   _____

26        [4]  Specifically, Labor Code § 1102.5(b) prohibits an employer from retaliating against an
     employee "for disclosing to a government or law enforcement agency, where the employee has
27   reasonable cause to believe that the information discloses a violation of state or federal statute, or a
     violation or noncompliance with a state or federal rule or regulation." Section 1102.5(c) prohibits
28   retaliation "against an employee for refusing to participate in an activity that would result in a
     violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or
     regulation."

specific statutes, regulations, or constitutional provisions, although it does clearly describe the alleged violations in broad strokes; for example, ¶ 19 of the SAC alleges that BUSD "engaged in a pattern and practice of discrimination ... on the basis of sex" and that Plaintiff was subjected to a retaliatory environment when he attempted to rectify the pattern and practice of discrimination.   Paragraph 48 alleges that Plaintiff complained to the California Department of Justice that employees were being hired "despite having a criminal record of statutorily prohibited offenses."  Paragraph 56 alleges that a supervisor threatened Plaintiff with disciplinary action if he "did not comply with a 'stacked' discipline process" which violated disciplinary procedures "clearly outlined in collective bargaining agreements as well as in the merit system rules."

Even if the Second Amended Complaint does not explicitly set out the positive laws at issue, Plaintiff's Opposition to the motion to dismiss clearly sets out both the allegedly unlawful conduct Plaintiff reported and resisted, and a "non-exhaustive list of authorities that were implicated" by that conduct:

> (1) Discrimination based on employees' sex. FAC ¶¶ 19, 20, 29-41, 55, 59, 63. The prohibition against discrimination based on sex is contained, inter alia, in California Government Code § 12940(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); the Equal Protection Clause set forth at Article I, § 7(a) of the California Constitution; and the Equal Protection Clauses set forth in Amendments V and XIV of the U.S. Constitution.
>
> (2) Lawrence's pattern and practice of hiring employees without statutorily required fingerprint clearances and of hiring and retaining employees with criminal records of prohibited offenses who lied about their records of convictions for fraud-related offenses during and after the hiring process. FAC ¶¶ 42, 43, 48, 49. Lawrence's conduct violated statutory prohibitions set forth, inter alia, at Education Code §§ 45122.1 and 45125, governing employment of classified employees and requiring fingerprint clearances from the Department of Justice prior to hiring and retaining employees in the classified service.
>
> (3) The repeated and ongoing practice by BUSD administrative staff of failing to preserve the (statutorily and Constitutionally protected) privacy of employee personnel files. FAC ¶ 44. Multiple statutory and Constitutional sources are implicated. They include California Constitution Article I, § 1 (setting forth citizens' right to privacy, which extends to personnel records); Civil Code §§ 1799-1799.3 (prohibiting disclosure of book keeping information, broadly defined to include that performed by employers, to third parties without an employee's permission); Labor Code § 1198.5 (specifically authorizing employees, and only employees, subject to certain exceptions that do not apply to the FAC allegations, to inspect personnel files); Civil Code §§ 56-56.37 (prohibiting disclosure of employee medical information).

United States District Court

For the Northern District of California

(4) The H.R. Department's failure to notify the Department of Justice upon the termination of employment of various individuals, which failure resulted in the District continuing to receive and retain subsequent arrest reports it was statutorily prohibited from obtaining or retaining. FAC ¶ 44. These actions violated, *inter alia*, Education Code § 45125(k)(1) (prohibiting disclosure of criminal background information); Labor Code § 432.7(g)(2)-(3) (prohibiting unauthorized receipt and disclosure of criminal history) (violation is a misdemeanor [Labor Code § 433]); California Penal Code § 11102.5(d) and (e) (requiring employer to notify Department of Justice when employment is terminated so District no longer receives subsequent criminal history information and requiring District to return any improperly received information).

(5) Condescension and hostility by Defendants Dodson and Obieta, under Lawrence's direction, when Plaintiff confronted them regarding an unlawful practice of allowing an individual under criminal investigation to view an employee's personnel file without supervision FAC ¶ 45. See authorities listed under item (3), supra.

(6) Failure by the District to obtain "Livescan" digital fingerprint records of current employees as required by law. FAC ¶ 47. The statutory requirement for such electronic fingerprints is set forth, *inter alia*, at California Penal Code §§ 11077.1 through 11081.

(7) Failure by Defendants to follow procedures mandated by statute and regulation for enrolling newly appointed employees in CalPERS (FAC ¶ 50) and unlawful transfer of user IDs to individuals who were not authorized to access the CalPERS system through the Internet. (FAC ¶ 50) Provisions Plaintiff reasonably believed were violated included, *inter alia*, Government Code § 20283 (requiring employer to enroll eligible employees within 90 days of eligibility or pay $500 fine from employer's CalPERS reserve account); Government Code § 20065 (defining less than full-time employment); and Government Code §§ 20635 and 20635.1 (governing computation of eligibility for enrollment). As alleged in the FAC, Plaintiff was advised by CalPERS staff that CalPERS IDs were not transferable and that allowing use by an unauthorized individual violated the security agreement under which they were granted. The online CalPERS system user security agreement states, in relevant part, "Passwords must be kept confidential." The document also expressly prohibits "sharing or allowing others access to your password for any reason." (See Request for Judicial Notice, Ex. A, filed concurrently herewith.)[5]

(8) The practice in the BUSD H.R. Department of using a "stacked" disciplinary process with predetermined outcomes, and Defendants' improper performance of multiple roles within the disciplinary process, in violation of employees' rights to procedural due process and orderly application of the Merit System Rules. FAC ¶¶ 56, 57. The right to a fair and impartial disciplinary process is guaranteed by the Due Process Clauses of Article I, § 7 of the California Constitution as well as Amendments V and XIV of the U.S. Constitution.

(9) and (10) The District's failure to adhere to the federal No Child Left Behind Act testing requirements and deliberate misrepresentations to affected employees,

---

[5] Plaintiff's request for judicial notice of the "form security agreement" required for users to obtain a user ID, which sets forth the "responsibilities" of the person using CalPERS's "ACER" online system, is GRANTED.   The expression of these state agency rules in an online form is a "fact .. not subject to reasonable dispute .. and capable of accurate and ready determination" by reference to the CalPERS agency website. *See* Fed. R. Evid. 201(b).

9

**United States District Court**
For the Northern District of California

resulting in unlawful, forced early retirement of several employees. FAC ¶ 60. Authorities Plaintiff reasonably believed were violated included, inter alia, 20 U.S.C. § 6301 *et seq.*; 5 California Code of Regulations §§ 6100 to 6126. The right to a fairly administered retirement procedure and lawful application of criteria for continued employment is guaranteed, inter alia, by the Due Process Clauses of Cal. Const. Article I, § 7, and Amendments V and XIV of the U.S. Constitution.

Opposition at 10-12.  This list more than amply identifies specific laws, statutes and rules.

Although Defendants contend that Plaintiff is required to allege these laws in his complaint, nothing in *Love, supra*, states that the pleading itself must list the laws at issue. On the contrary, the court's observations that the plaintiff in that case did not "cite" any statute, rule, or regulation that may have been violated, that he "remain[ed] unable to state any statutory or regulatory basis for his claim even when confronted with a direct challenge on this point by Defendant," and could not point to any specific OSHA standard allegedly violated "at oral argument," 309 F.Supp.2d at 1135 and n.5, all suggest that citing laws in response to a "direct challenge" – such as this motion to dismiss – should suffice.

Defendants also claim Plaintiff has not pled "*facts* sufficient to show that he had a 'reasonable cause to believe'" he was reporting or opposing unlawful activity.  Reply at 2. The Second Amended Complaint contains detailed descriptions of the acts Plaintiff believed were unlawful, *see* SAC ¶¶ 27-57, and is a more than sufficient "short and plain statement" of his claims.  *See* Fed. R. Civ. Pro. 8(a)(2).

### 2.    Plaintiff Sufficiently Pled Adverse Action

Next, Defendants move to dismiss this claim on the ground that the facts alleged in the Second Amended Complaint are insufficient to allege either constructive discharge or any other adverse employment action.   Although Defendants make no mention of the fact, the superior court already ruled, in response to identical arguments in Defendants' demurrer to the Complaint, that "Plaintiff has adequately alleged adverse employment action, including constructive termination."  November 16, 2007 Order, Borgerson Decl. Exh. H.

Any action by an employer that "materially affects the terms, conditions, or privileges of employment" is sufficiently "adverse" to state a claim.  *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1052 (2005); *see also Patten v. Grant Joint Union High School Dist.*, 134 Cal.App.4th 1378, 1387-88 (2005)(standard for "adverse" employment action same for

10

United States District Court

For the Northern District of California

1  retaliation suits under Labor Code § 1102.5 and FEHA).    Plaintiff has alleged that some or

2  all Defendants forced him to perform burdensome duties above his professional classification

3  and without sufficient coverage or support, SAC ¶ 31-33, 59, subjected him to hostile

4  treatment, ¶ 44-46, 49, yelled at him or publicly berated him, ¶¶ 51, 60,  repeatedly

5  interrupted his physician-mandated rest periods, ¶ 52, ignored his requests for an ergonomic

6  evaluation of his work area, ¶ 53, unjustifiably denied his requests for extensions of time or

7  overtime pay to do certain work, ¶ 55, and threatened him with disciplinary action. ¶ 56-57.

8  He alleged that the above surpassed a "threshold of intolerability" that "no reasonable person

9  would be able to endure," and that he suffered physical illness and extreme emotional

10 distress as a result thereof.  *Id.* ¶ 61.

11        Defendants argue that these allegations are insufficient as a matter of law to constitute

12 constructive discharge or adverse employment action, citing various cases which hold that

13 acts such as ostracism, refusal to promote, negative performance evaluations, or refusal to

14 allow an employee a choice of days off are insufficient.  *See, e.g., Thomas v. Department of

15 Corrections*, 77 Cal.App.4th 507, 510-512 (2000); *Cloud v. Casey,* 76 Cal.App.4th 895, 902

16 -905 (1999);  *Fisher v. San Pedro Hospital*, 214 Cal.App.3d 590, 615 (1989).  But the case is

17 not before the Court on summary judgment or for trial.  Plaintiff's SAC alleges a continuing

18 course of harassment, hostility, and retaliation, and has certainly alleged intolerable working

19 conditions in a manner sufficient to survive a motion to dismiss.  *Cf. Garamendi v. Golden

20 Eagle Ins. Co.,* 128 Cal.App.4th 452, 472-473 (2005)(plaintiff had not shown constructive

21 discharge after he disclosed fraudulent business practices, where he provided no evidence of

22 how his working conditions were affected).  Moreover, a complaint need not list every detail

23 of the factual basis for the claim; it need only "fully [set] forth who is being sued, for what

24 relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84

25 F.3d 1172, 1177 (9th Cir. 1996). The Court cannot conclude, as a matter of law, that Plaintiff

26 will not be able to produce facts showing his "employer ... intentionally created ... working

27 conditions that were so intolerable ... a reasonable employer would realize that a reasonable

28

1  person in the employee's position would be compelled to resign." *Turner v. Anhueser-Busch,*

2  *Inc.*, 7 Cal.4th 1238, 1251 (1994).

3  ### 3.    Claims Against Individual Defendants

4  Defendants argue that the Court should dismiss the claims under Labor Code § 1102.5

5  against the individual defendants because under the terms of the statute, claims can be stated

6  only against an "employer."  Plaintiff points out that the First Cause of Action names the

7  individual defendants "in their Official Capacities," and "it is axiomatic that a suit against

8  public officials in their official capacities is tantamount to a suit against the public entity that

9  employed them." Opp. at 9;   Smolla, *Federal Civil Rights Acts, 3d Ed.* § 16:26, *citing Will v.*

10  *Michigan Depot. of State Police,* 491 U.S. 58, 71 (1989) ("[s]uits aginst officials in their

11  official capacities are, in effect, suits against the government itself" because such a suit is one

12  against the official's office, not the official).

13  Because Defendants are technically correct that the individual defendants were not

14  Plaintiff's employer "in any capacity," so they cannot be liable under Labor Code § 1102.5,

15  the Court will dismiss claims against the individual defendants in their official capacities.

16  But the Court also notes that doing so makes no practical difference whatsoever, as the

17  BUSD is already a defendant.  Moving to dismiss the redundant names was a pointless

18  exercise that has achieved nothing and uselessly consumed the time and resources of the

19  Court and the parties.

20  Accordingly, the Motion to Dismiss the First Cause of Action is DENIED as to the

21  BUSD but GRANTED as to the individual Defendants sued in their official capacities.

22  //

23  //

24  //

25

26  ### B.    Plaintiff's Third Cause of Action under 42 U.S.C. § 1983 For Violation of Due Process Rights

27

28

United States District Court

For the Northern District of California

1    Defendants move to dismiss Plaintiff's Third Cause of Action, for deprivation of

2    public employment without due process, on the ground that Plaintiff has not shown a

3    property interest in continued employment at the BUSD.

4    To state a due process claim, a public employee must establish a "legitimate claim of

5    entitlement" to the job. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). That claim of

6    entitlement must be grounded in state law or some other independent source. *Id*; *Weisbuch*

7    *v. County of Los Angeles,* 119 F.3d 778, 780 (9th Cir. 1997); *see also Skelly v. State*

8    *Personnel Bd.,* 15 Cal.3d 194, 207-208 (1975).

9    Plaintiff's Second  Amended Complaint does not cite any statute or other independent

10   rule that provides he could be terminated only for cause.   Plaintiff argues that he had a

11   "reasonable expectation of continued employment based on ...consistently stellar

12   performance evaluations, oral representations of his supervisors, and internal memoranda."

13   Opp. at 14; SAC ¶ 103.   Thus, Plaintiff argues, because he had a "reasonable expectation of

14   continued employment, he has a property interest in such employment that cannot be

15   divested absent Constitutionally adequate procedural safeguards." Opp. at 15.

16   A "reasonable expectation of continued employment," untethered to specific positive

17   law, is insufficient to create a property interest.  To show he has a property interest in his

18   employment, Plaintiff must show an expectation of employment based on some state law or

19   independent rule, such as a county or municipal ordinance or civil service rule, that states

20   employees can be terminated only for cause.  The "reasonable expectation" Plaintiff

21   describes, based on good performance evaluations and oral assurances, is really an allegation

22   that Plaintiff had an implied contract that he would not be terminated except for just cause.

23   *See, e.g., Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 336-37 (2000).  But, as one California

24   court recently explained,

25       In California public employment is held not by contract, but by statute. *Miller v. State*
         *of California* (1977) 18 Cal.3d 808, 813. Relying on *Miller*, our Supreme Court has
26       made it clear that civil service employees cannot state a cause of action for breach of
         contract or breach of the implied covenant of good faith and fair dealing. *Shoemaker*
27       *v. Myers* (1990) 52 Cal.3d 1, 23-24. This same general principle of law applies to
         civil service and noncivil service public employees alike.  *Hill v. City of Long Beach*
28       (1995) 33 Cal.App.4th 1684, 1690.

United States District Court

For the Northern District of California

1  *Kim v. Regents of University of California,* 80 Cal.App.4th 160, 164 (2000).  In other words,

2  expectations based on oral representations, employment history, or positive evaluations are

3  not sufficient to give the Plaintiff a property interest in his public employment.   Plaintiff

4  cannot  recharacterize the implied contract and covenant of good faith and fair dealing that he

5  pled in his initial Complaint, Borgeson Exh. A, ¶¶ 91-102,  as property rights for due process

6  purposes.[6]

7         Plaintiff also argues that he has an expectation of continued employment under  "the

8  Merit System Rules," SAC ¶ 103, but states that they "are not publicly posted and must be

9  obtained through discovery."  Opp. at 14.  That bare reference is insufficient to establish

10  what type of a property right they give Plaintiff in his job, if any.  Moreover, at this point,

11  Plaintiff has not adequately explained what process he alleges he is due.  Even if Merit

12  System Rules provide for some sort of graduated discipline or hearing before termination, it

13  is far from clear how such procedures would apply in a *constructive* termination situation – a

14  legal construct that does not involve the employer explicitly disciplining or terminating the

15  employee.

16         Accordingly, Defendants' Motion to Dismiss the Third Cause of Action is

17  GRANTED, with leave to amend  to allege a statutory or some other independent basis that

18  gives Plaintiff a property right in his continued employment with the BUSD, and/or clarify

19  the nature of the claim.

20         **C.    Fourth Case of Action For Unlawful Discrimination On the Basis of Sex,
           Fifth Cause of Action for Harassment, and Sixth Cause of Action for**
21         **Retaliation  Violation of Cal. Gov. Code §§ 12900 *et seq.***

22         Plaintiff alleges three causes of action under California's Fair Employment and

23  Housing Act, Gov. Code §§ 12900 *et seq.*: that he suffered unlawful discrimination on the

24  basis of his gender, in violation of Gov. Code § 12940(a); that he was harassed because of his

25

26

27  _____

28       [6]    Plaintiff's Complaint in state court alleged causes of action for breach of contract and
     breach of the implied covenant of good faith and fair dealing, Complaint, Borgeson Exh. A, ¶¶ 91-
     102, but the superior court rejected these claims.  *Id.* Exh. H.

                                                    14

gender, in violation of Gov. Code § 12940(j), and that he was retaliated against for opposing the foregoing, in violation of Gov. Code § 12940(h).[7]  SAC ¶¶ 112-145.

### 1.    Adverse Employment Action

Defendants argue that "adverse employment action" is an element of each FEHA claim, and that Plaintiff cannot state a cause of action because he did not suffer adverse employment action.  Defendants are incorrect in two respects.  First, "adverse employment action" is an element only of discrimination and retaliation claims under FEHA; *see, e.g., Hammond v. County of Los Angeles,* 159 Cal.App.4th 1430, __ , 72 Cal.Rptr.3d 311, 320 -321 (2008) (12940(a) and (h));  the standard for showing harassment is different.  *See Bradley v. California Dept. of Corrections and Rehabilitation,* 158 Cal.App.4th 1612, 1629 (2008), *quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(plaintiff must show "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment....' ").  Second, as set out above, Plaintiff has adequately pled he suffered adverse employment action and constructive termination for the purposes of this motion to dismiss.

### 2.    No Facts Showing Discrimination

Next, Defendants argue that Plaintiff has not alleged facts that show he suffered discrimination on the basis of his gender, again failing to mention that the Superior Court overruled an earlier demurrer on this ground.  *See* Borgerson Decl. Exh. C at 8-9 (same argument, verbatim, in demurrer); Exh. H (Order overruling demurrer to sex discrimination cause of action and finding "Plaintiff alleges that the conduct directed at him was based on his male gender").   To state a claim for disparate treatment, Plaintiff must allege that

> (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 355 (2000).   Plaintiff has done so here.  He has alleged that he is male, was qualified for his position, SAC ¶ 58, and suffered disparate

---

[7]  The SAC miscites to Gov. Code § 12900(j) and (h).

1  treatment including differential pay, vacation, and work allocation, that culminated in

2  constructive discharge. *See, e.g.,* SAC ¶¶ 33, 36, 54. He also alleged that all four other men

3  hired into Plaintiff's department during the four years he worked there resigned suddenly and

4  without notice, and alleged on information and belief that they resigned because of similar

5  disparate treatment and harassment. SAC ¶¶ 37-41. This is certainly "some other

6  circumstance" that suggests discriminatory motive. Plaintiff is not required to prove his case

7  in his Complaint, and the cases cited by Defendants – which all address Plaintiff's ultimate

8  burden of persuasion at summary judgment or at trial – are completely inapposite.

9          **3.      Claims Against Individual Defendants For Discrimination**

10         Defendants again argue that Plaintiff cannot state claims against individual

11  supervisory employees, who cannot be liable for discrimination under FEHA as a matter of

12  law, *Reno v. Baird*, 18 Cal.4th 640, 645-46 (1998), but the individual supervisors are named

13  in the discrimination cause of action in their official capacities. As set out above, Defendants

14  are technically correct, and the Court will grant the motion on that ground.

15     **D.      Seventh Cause of Action for Intentional Infliction of Emotional Distress**

16         Plaintiff alleges a cause of action for intentional infliction of emotional distress

17  against all defendants.

18         **1.      Failure to State Facts Sufficient To Make Out An IIED Claim**

19         The essential elements of a cause of action for intentional infliction of emotional

20  distress are (1) extreme and outrageous conduct by the defendant with the intention of

21  causing, or reckless disregard of the probability of causing, emotional distress, (2) severe

22  emotional distress, and (3) the plaintiff's injuries were actually and proximately caused by the

23  defendant's outrageous conduct. *Berkley v. Dowds,* 152 Cal.App.4th 518, 533 (2007); *Cole

24  v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n.7 (1987). Outrageous conduct is

25  conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized

26  community." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001 (1993).

27

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Defendants argue that Plaintiff alleges only ordinary personnel management activity,

2  which does not rise to the level of "extreme and outrageous" conduct as a matter of law.  As

3  the California Court of Appeal explained in *Janken v. GM Hughes Elecs.*,

> Managing personnel is not outrageous conduct beyond the
> bounds of human decency, but rather conduct essential to the
> welfare and prosperity of society.  A simple pleading of
> personnel management activity is insufficient to support a claim
> of intentional infliction of emotional distress, even if improper
> motivation is alleged.  If personnel management decisions are
> improperly motivated, the remedy is a suit against the employer
> for discrimination.

46 Cal.App.4th 55, 80 (1996).   While some of the acts Plaintiff complains of are part of

personnel management activity (such as failing to give him differential pay), Plaintiff has

also alleged an ongoing course of humiliation and harassment.  *See, e.g.,*  SAC ¶¶ 17, 18, 19,

21 (hostile and offensive environment), 44 , 45, 46 (hostility and condescension), 49

(hostility), 51 (hostility, yelling, throwing claim form), 52 (becoming enraged, interrupting

medical rest periods), 57 (threats), 60 (told had an "attitude problem" in front of coworkers).

This is conduct that is "avoidable and unnecessary to job performance," *Janken*, 46 Cal. App.

4th at 64, that "is not a type of conduct necessary to personnel management." *Reno*, 18

Cal.4th at 646 (citation omitted).  Moreover, Plaintiff has alleged that the conduct was an

abuse of a relationship in which the Defendants had authority over him. *Agarwal v. Johnson,*

25 Cal.3d 932, 946 (1979), *disapproved on another ground in White v. Ultramar, Inc.,* 21

Cal.4th 563, 575, fn. 4 (1999) (behavior can be considered outrageous if defendant "abuses a

relation or position which gives him power to damage the plaintiff's interest"). Again, at the

pleading stage, Plaintiff need only make a short, plain statement of his claims. Fed. R. Civ.

P. 8(a)(2).

    Finally, Plaintiff's allegation that he received high performance ratings is not, as

Defendants argue, logically inconsistent with his claim that Defendants intended to cause

him emotional distress.  Defendants could have intended to cause him emotional distress, but

chosen to inflict it in ways other than false poor performance evaluations.

//

17

United States District Court

For the Northern District of California

## 2.    Preemption by Workers' Compensation Act

Plaintiff's IIED claim is not barred by the workers' compensation system.  The exclusivity of workers' compensation extends to intentional infliction of emotional distress only "so long as the conduct does not contravene public policy."  *See Gibbs v. American Airlines*, 74 Cal.App.4th 1, 10 (1999); *Gantt v. Sentry Insurance*, 1 Cal.App.4th 1083, 1085 (1992).  As the Court of Appeal explained in *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 (1993),

> emotional distress caused by misconduct in employment relations (e.g., promotions, demotions, criticism of work practices, or grievance negotiations) may, regrettably, be considered to be a normal part of the employment environment. Thus, "a cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law. [Citations.] *The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices.* [Citations.] [¶] Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." (*Id.* at p. 352,  italics added; *also see Leibert* [*v. Transworld Systems, Inc.,*32 Cal.App.4th 1693, 1706-1707 (1995)]

*Murray v. Oceanside Unified School Dist.,* 79 Cal.App.4th 1338, 1362 (2000).  Thus, a cause of action for intentional infliction of emotional distress caused by a pattern of discriminatory harassment is not barred by the exclusivity of workers' compensation laws.  *Id.* at 1363.  Here, Plaintiff alleges he was harassed and subjected to abuse and humiliation because of his gender and repeated resistance to unlawful directives.  This conduct clearly contravenes public policy, such that Plaintiff's IIED claim is not preempted.

## 3.    Immunity Under Gov. Code § 815

Defendants argue that under Cal. Gov. Code § 815, a public entity is not liable for an injury caused by the public entity or its employees "[e]xcept as otherwise provided by statute....".  Again, Defendants make no mention of the fact this was an argument the Superior Court considered and rejected.  Borgerson Decl. Exh B at 5 (demurrer) and I (Order, noting that "Government Code § 820(a) provides a statutory basis for liability of public entity employees for common law torts.")

The Superior Court properly noted that California's Tort Claims Act makes public employees liable for their torts to the same extent as private persons.  Cal. Gov. Code

§ 820(a). Moreover, BUSD is vicariously liable for the injuries caused by its employees within the scope of their employment to the same extent as a private employer. Gov. Code § 815.2(a).

**E.    Immunity of Individual Defendants Under Gov. Code § 820.2**

Plaintiff names individual Defendants Lawrene, Udell, Obieta, Dodson and Brier in his surviving equal protection, harassment and intentional infliction of emotional distress claims. The individual defendants argue that they cannot be liable for these claims under Gov. Code § 820.2, which makes public employees immune for their discretionary acts.[8]

State law cannot immunize persons acting under color of state law from claims that they violated federal constitutional or statutory rights brought under 42 U.S.C. § 1983. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). Thus, the individual defendants are not immune from Plaintiff's equal protection claim.

Nor are defendants immune from the harassment and emotional distress claims alleged here. Defendants argue that they are immune under § 820.2 from FEHA liability under the California Supreme Court's decision in *Caldwell v. Montoya*, 10 Cal.4th 972 (1995). In *Caldwell,* the Supreme Court considered whether three school board members were immune under § 820.2 for the vote not to renew the contract of the plaintiff, the superintendent of the school district. The Supreme Court concluded that "the [school] board's collective determination whether to hire or fire a person as the district's superintendent must be considered a basic policy decision, immune from civil damage actions that seek to hold individual board members liable for the motive behind their votes." *Id.* at 983.

But "[i]mmunity is reserved for those *basic policy decisions* [which have] ... been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly." *Id.* at 981 (internal quotations and citation omitted; emphasis in original). Subsequent cases have made clear that for immunity to apply, "the

---

[8] Government Code § 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion was abused."

United States District Court

For the Northern District of California

defendants must show that the decisions in question are properly considered as basic policy decisions made at the planning stage of [the entity's] operations, rather than routine duties incident to the normal operations of the employee's office or position." *Taylor v. City of Los Angeles Dept. of Water and Power,* 144 Cal.App.4th 1216, 1238-1239 (2006), *disapproved on other grounds in Jones, supra* (internal quotations and citation omitted).

Harassment and intentional infliction of emotional distress through harassment are not "basic policy decisions" which fall within the scope of § 820.2.  If harassment is not an "exercise of personnel management authority properly delegated by an employer to a supervisory employee," *Reno,* 18 Cal.4th at 646, it *a fortiori* cannot be part of a discretionary policy decision that entitles Defendants to immunity.

## II.      Defendants' Motion to Strike Under Fed. R. Civ. Pro. 12(f)

Plaintiff seeks punitive damages against the individual defendants in his surviving § 1983 equal protection claim, SAC ¶ 100, his FEHA claim for harassment on the basis of gender, SAC ¶ 134, and for intentional infliction of emotional distress.  SAC ¶ 147; Prayer for Relief ¶ 5.   The individual defendants move to strike Plaintiff's punitive damage allegations.

Defendants correctly argue that punitive damages are not recoverable from  individual defendants in their official capacities.  *See City of Newport Beach v. Fact Concerts*, 453 U.S. 247, 271 (1981) (punitive damages are not available in § 1983 actions against government entities); Cal. Gov. Code § 818 (no exemplary damages against public entity).  But Plaintiff has not sought punitive damages from the Defendants sued in their official capacities or against the BUSD itself.

Defendants next argue that Plaintiff has not stated facts sufficient to recover punitive damages.  Punitive damages are available under state law "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal.

United States District Court

For the Northern District of California

Civ. Code § 3294(a).[9]  "When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure." *G. D. Searle & Co. v. Superior Court,* 49 Cal.App.3d 22, 29 (1975). Under § 1983, punitive damages are proper either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others. *Smith v. Wade*, 461 U.S. 30, 56, (1983); *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir.1991).

The Court can deny a motion to strike where Plaintiff has pled that Defendants acted with the requisite intent that would permit an award of punitive damages. *Flanagan v. Benicia Unified School Dist.,* 2008 WL 435355, *8 (E.D.Cal. February 14, 2008). Under Fed. R. Civ. Pro. 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Ninth Circuit has explained that Rule 9(b) does not "require any particularity in connection with an averment of intent, knowledge or condition of the mind." *Walling v. Beverly Enters*., 476 F.2d 393, 397 (9th Cir.1973); *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1019 (S.D.Cal. 2000) ("In federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent."); *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1184 (E.D.Cal. 2005) and cases cited therein (same).

Here, Plaintiff alleges that the individual Defendants engaged in a pattern and practice of discriminatory harassment against males, treated him with hostility, threats, and ridicule when he complained of gender discrimination and opposed other violations of the law, and carried out their actions "in a deliberate, malicious, willful, and oppressive manner in order to injure and damage" the Plaintiff and "with intent to cause, or reckless disregard for the probability of causing, emotional distress."   SAC ¶¶ 100, 134, 145, 147.   These allegations

---

[9]  "Malice" is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," and "oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Civ. Code § 3294(c)(1), (2).

1    are sufficient to state a claim of entitlement to punitive damages at this stage of the litigation.

2

3    **IV.    Plaintiff's Request to Amend Complaint**

4    In a footnote, Plaintiff argues that the Superior Court erroneously dismissed his cause

5    of action for wrongful discharge in violation of public policy under *Foley v. Interactive Data*

6    *Corp.*, 47 Cal.3d 654 (1988) and *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172

7    (1980), and requests that the Court reinstate that claim.  If Plaintiff wishes to argue this Court

8    should reinstate his claim, he should do so by motion to amend his Complaint under Fed. R.

9    Civ. Pro. 15(a)(2).

10

11   **CONCLUSION**

12   Defendants' motion is GRANTED in part and DENIED in part.  Specifically, the

13   Motion to Dismiss Plaintiff's First Cause of Action under Labor Code § 1102.5 is DENIED

14   as to Defendant BUSD but GRANTED as to individual defendants sued in their official

15   capacities.   The motion is GRANTED as to Plaintiff's Third Cause of Action for denial of

16   due process, WITH LEAVE TO AMEND to assert specific laws, rules or agreements that

17   give him a property right in his employment.   The Motion is DENIED as to Plaintiff's

18   Fourth, Fifth, and Sixth Causes of Action alleging FEHA claims against BUSD, but

19   GRANTED as to Plaintiff's discrimination claims against individual defendants sued in their

20   official capacity.  The Motion is DENIED as to Plaintiff's Seventh Cause of Action.  The

21   Motion to Strike the punitive damage claims is DENIED.

22

23

24   **IT IS SO ORDERED.**

25
     Dated: March 25, 2008

26                                              _____
                                                THELTON E. HENDERSON, JUDGE
27                                              UNITED STATES DISTRICT COURT

28

United States District Court
For the Northern District of California