1  ERIC BORGERSON, SBN 177943
LAW OFFICE OF ERIC BORGERSON
2  2625 School Street
Oakland, CA 94602
3  Telephone: 510-866-3738
Facsimile: 510-535-9898
4
Attorney for Plaintiff GENE FAURIE, JR.
5

6         IN THE UNITED STATES DISTRICT COURT

7      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  GENE FAURIE, JR.,                 ) CASE NO.  CV 08-00060 TEH
                                     )
10            Plaintiff,             )
                                     )
11        vs.                        )
                                     )
12  The BERKELEY UNIFIED SCHOOL      ) **THIRD AMENDED**
    DISTRICT; MICHELLE LAWRENCE,     ) **COMPLAINT FOR DAMAGES**
13  individually and in her official capacity as  )
    BUSD Superintendent; LISA UDELL, ) (Retaliatory Discharge For Whistleblowing
14  individually and in her official capacity as  ) and Refusing to Comply With Unlawful
    BUSD Assistant Superintendent, Human  ) Directives [California Labor Code §
15  Resources; CRISTINA OBIETA,      ) 1102.5]; Violation of Federal Right To
    individually and in her official capacity as  ) Equal Protection of the Laws [42 U.S Code
16  BUSD Director, Classified Personnel;  ) § 1983; U.S. Constitution Amendments V
    RICHARD DODSON, in his official  ) and XIV]; Deprivation Of Benefits and
17  capacity as BUSD Director, Labor ) Privileges of Public Employment and
    Relations; TINA BRIER, individually and  ) Termination of Public Employment
18  in her official capacity as BUSD Director,  ) Without Due Process Of Law [42 U.S.
    Classified Personnel,            ) Code § 1983; U.S. Constitution
19                                   ) Amendments V and XIV]; Discrimination
                                     ) On the Basis Of Sex [California Fair
20            Defendants.            ) Employment and Housing Act, Gov. Code
                                     ) § 12900(a) et seq.]; Unlawful Harassment
21                                   ) On the Basis Of Sex/Gender [California
                                     ) Gov. Code § 12900(j)]; Unlawful
22                                   ) Retaliation For Opposing Violation of
                                     ) Rights Protected By the FEHA [Gov. Code
23                                   ) § 12900(h)]; Intentional Infliction of
                                     ) Emotional Distress)
24                                   )
                                     )
25

26  ///

27  ///

28  ///

**INTRODUCTION**

1.      This is a Complaint by Gene Faurie, Jr., formerly employed by the Berkeley Unified School District ("BUSD") in the position of Administrative Coordinator – Confidential, against BUSD and several of its current and former managerial employees in their individual and official capacities.

2.      Mr. Faurie sets forth herein claims of unlawful discharge in retaliation for whistleblowing and resisting unlawful directives; violation of his federal Constitutional rights to equal protection and due process of law; harassment and discrimination based on sex; retaliation for opposing unlawful harassment and discrimination based on sex; and intentional infliction of emotional distress, arising from a continuing course of unlawful conduct creating intolerable working conditions that became so severe and pervasive on and after July 11, 2006, that Mr. Faurie was unlawfully constructively discharged on July 17, 2006.

**PARTIES**

3.      Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 2, above.

4.      Plaintiff Gene Faurie Jr. ("Plaintiff" or "Mr. Faurie") is and at all material times was, a resident of Alameda County.  At all times mentioned in this Complaint until the date of his constructive discharge on July 17, 2007, Plaintiff was employed by the Berkeley Unified School District Human Resources Department in the position of Administrative Coordinator – Confidential.

5.       Defendant Berkeley Unified School District ("BUSD" or "District") is and was at all material times a public school district and a political subdivision of the State of California and County of Alameda, whose principal place of business is and was at all material times located in Alameda County.

6.      Defendant Michele Lawrence ("Lawrence") is and at all material times was a resident of Alameda County.  Lawrence is and at all material times was employed by

1    BUSD in the position of Superintendent.  Lawrence is sued in her individual capacity and

2    in her official capacity as BUSD Superintendent.

3    7.    Defendant Lisa Udell ("Udell") is and at all material times was a resident of

4    Alameda County.  Udell is and at all material times was employed by BUSD in its

5    Human Resources Department in the position of Assistant Superintendent, Human

6    Resources.  Udell is sued in her individual capacity and in her official capacity as BUSD

7    Assistant Superintendent, Human Resources.

8    8.    Defendant Cristina Obieta ("Obieta") is and at all material times was a resident of

9    Alameda County.  Obieta was at all material times employed by BUSD in its Human

10    Resources Department in the position of Director, Classified Personnel.  Obieta is sued in

11    her individual capacity and in her official capacity as Director, Classified Personnel.

12    9.    Defendant Richard Dodson ("Dodson") is and at all material times was a resident

13    of Alameda County.  Dodson is and at all material times was employed by BUSD in its

14    Human Resources Department in the position of Director, Labor Relations.  Dodson is

15    sued in his individual capacity and in his official capacity as Director, Labor Relations.

16    10.    Defendant Tina Brier ("Brier") is and at all material times was a resident of

17    Contra Costa County.  Brier at all material times was employed by BUSD in the position

18    of Director, Classified Personnel.  Brier is sued in her individual capacity and in her

19    official capacity as BUSD Director, Classified Personnel.

20    11.    Unless otherwise alleged in this complaint, Plaintiff is informed and believes and

21    based thereon alleges that at all times mentioned in this Complaint, Defendants were the

22    agents and employees of their codefendants, and in doing the things alleged in this

23    Complaint, were acting with in the course and scope of that agency and employment.

## JURISDICTION

25    12.    Plaintiff incorporates herein by reference as though fully set forth at length the

26    allegations of paragraphs 1 through and including 11, above.

27

28

13.     At all material times BUSD regularly employed five or more persons, bringing

Defendant BUSD within the provisions of Government Code §§12900 et seq. prohibiting

employers or their agents from discriminating on the basis of, *inter alia*, sex.

14.     This Court has jurisdiction over the subject matter of this dispute pursuant to

Government Code §§ 12900 et seq. as this is a claim of employment discrimination

against a public employer that regularly employs 5 or more persons and whose principal

place of business is located in the County of Alameda, State of California.

15.     The amount in controversy in this matter exceeds $10,000.  All Defendants are

"persons" who acted under color of law, regulation, ordinance, custom and usage of the

State of California under actual or apparent authority conferred by the governing board of

the Berkeley Unified School District, bringing them within the purview of 42 U.S. Code

§ 1983.  This Court has jurisdiction over the federal claims asserted herein under 42

U.S.C. § 1983.

## FACTS

**Overview**

16.     Plaintiff incorporates herein by reference as though fully set forth at length the

allegations of paragraphs 1 through and including 15, above.

17.     Mr. Faurie was subjected to a continuing course of unlawful conduct during his

tenure at BUSD which reached intolerable proportions on July 11, 2006.  At a Human

Resources staff meeting on July 11, 2006, over Mr. Faurie's objections, Udell orally

confirmed that she knowingly was ordering Mr. Faurie to engage in unlawful and

unethical acts in his capacity as Administrative Coordinator – Confidential, which she

explicitly confirmed to constitute implementation of BUSD policy approved by

Superintendent Lawrence.  When Mr. Faurie questioned the advisability and legality of

the ordered course of action (discussed in detail below), he was subjected to a hostile and

offensive environment by Udell, causing him to become ill, thereby forcing him to leave

the meeting due to emotional and physical injuries. This treatment by Udell also was part

1  of a pattern and practice of discrimination against male employees based on sex, which

2  was continuing in nature, occurring through July 17, 2006, as detailed below.

3  18.    The incident on July 11, 2006, was the culminating event in a continuing course

4  of such unlawful treatment of Mr. Faurie, stretching back in time to the beginning of his

5  employment with BUSD in or about October 2002.  Throughout the course of Mr.

6  Faurie's employment, he was regularly and repeatedly ordered by Lawrence, Brier, and,

7  upon their appointment, Dodson, Udell, and Obieta to engage in unlawful acts and was

8  subjected to a hostile environment when he questioned, objected to, or refused to

9  implement, such unlawful directives.

10  19.    BUSD administration also engaged in a pattern and practice of discrimination

11  within the Human Resources Department on the basis of sex by applying different

12  standards to women than to men with regard to working out of classification, granting of

13  differential pay, responses to filing of workers' compensation claims, granting of requests

14  for vacation leave, and quantity of work assigned.  This pattern and practice of

15  discrimination occurred on a continuing basis through July 17, 2006.   Mr. Faurie also

16  was subjected to a hostile working environment because of his sex, on a continuing basis

17  through July 17, 2006.  Further, Mr. Faurie was subjected to a retaliatory and hostile

18  environment when he attempted to rectify the policy, pattern, and practice of unlawful

19  harassment and discrimination based on sex in the H.R. Department.

20  20.    In addition to his claims of discrimination based on sex, Mr. Faurie also was

21  regularly required to work out of his job classification by performing the duties of the

22  Director of Classified Personnel without appropriate differential pay.  Multiple requests

23  by Mr. Faurie to reclassify his position appropriately to realistically encompass the duties

24  he was required to perform were summarily and unjustifiably denied.

25  21.    Further, Mr. Faurie was subjected to a hostile and offensive work environment in

26  retaliation for exercising his lawful right to file a claim for workers' compensation due to

27  physical injuries that were proximately caused by the performance of his duties as an

28  employee of BUSD.

22.     Mr. Faurie was informed on at least one occasion by California Department of Justice personnel that an employee hired by Lawrence should not be working for the District due to her criminal record of a prohibited offense.  When Mr. Faurie drew this information to the attention of Brier, he was informed that the Superintendent was aware of the situation and that he was ordered to "drop the subject."  Upon raising the subject again, Mr. Faurie was again ordered to be silent and was subjected to a hostile environment in retaliation for his discussion of the unlawful actions of the Superintendent.  Such retaliation was routine in the H.R. Department and was the reaction of administrative personnel throughout Mr. Faurie's tenure when he identified unlawful BUSD policies, practices, and actions.

23.     Mr. Faurie submitted complaints to the California Department of Justice, the Alameda County Superintendent of Schools, and the California Public Employee Retirement System regarding unlawful policies and practices ordered and implemented by BUSD administrative staff over his objections.

24.     Mr. Faurie was subjected to unreasonable retaliatory offensive and hostile conduct in reaction to the above-summarized and other attempts to identify and resist unlawful directives, as detailed below.

25.     A reasonable person in Mr. Faurie's position would have believed he had no choice but to resign his position with BUSD due to the hostile environment and discriminatory conduct to which he was subjected.  Consequently, his resignation of employment on July 16, 2006, constitutes a constructive discharge of employment.  This fact has been confirmed by an agent of the Employment Development Department who approved his claim for unemployment insurance, and has been affirmed on appeal due to the District's failure to controvert it before an EDD administrative law judge.

26.     As a result of his unlawful constructive discharge and the continuing course of unlawful conduct which culminated in it, Mr. Faurie suffered and continues to suffer physical injuries and severe emotional distress, loss of wages, benefits, retirement contributions, proper professional classification, expenses incurred in securing new

1   employment, and reputation, and suffered interruption of his professional and economic

2   advancement.

3   **Chronology of Events**

4   27.    Plaintiff incorporates herein by reference as though fully set forth at length the

5   allegations of paragraphs 1 through and including 26, above.

6   28.    At all material times until the date of his constructive discharge on July 17, 2006,

7   Mr. Faurie was employed by BUSD in the position of Administrative Coordinator –

8   Confidential. He reported directly to Brier from his date of hire until Brier's resignation

9   in or about May 2006.  It was unclear from the date of Brier's resignation to whom Mr.

10  Faurie was to report, other than to the Superintendent.

11  29.    Throughout Mr. Faurie's employment with BUSD, Brier frequently was absent

12  from the H.R. Department offices, during which absences Mr. Faurie was required to

13  perform the duties of her position.  Brier also took vacation leave from her position as

14  Director, Classified Personnel for approximately three business weeks per year while

15  supervising Mr. Faurie.  During those periods of leave, Mr. Faurie was directed to

16  perform the duties of Brier's position and did perform those duties.  It is standard

17  procedure throughout the District to officially appoint another employee to assume

18  responsibility for the duties of an absent manager, but Mr. Faurie was required to perform

19  those duties without official appointment and without appropriate differential

20  compensation.

21  30.    After Mr. Faurie performed the duties of Director of Classified Personnel during

22  the first of Brier's extended vacation leaves and multiple instances of performing her

23  professional responsibilities during her frequent and periodic short-term leaves from the

24  office, Mr. Faurie began requesting differential pay for his performance of Brier's duties.

25  Payment of such differential compensation is mandated by BUSD merit system rules.  On

26  each occasion, Brier refused to grant appropriate differential compensation.  At the end of

27  her second extended vacation leave during the Summer of 2005, Mr. Faurie submitted to

28  Brier a timesheet recording his performance of her duties and requesting differential pay

1   for the documented coverage he provided.  Brier again refused to grant Mr. Faurie

2   appropriate differential pay.

3   31.    Mr. Faurie regularly covered Brier's duties in the H.R. Department to an extent

4   well above his professional classification during Brier's absence from the H.R. offices

5   every week of Faurie's employment.   The demand that Mr. Faurie perform the duties of

6   the position occupied by Brier became even more burdensome upon her resignation,

7   because no one was appointed to replace her and Mr. Faurie was expected to fill in the

8   gap until a successor was hired.

9   32.    Lawrence hired a part-time, temporary consultant to help keep the H.R.

10  Department running when Brier resigned.  However, that individual was untrained, was

11  present at most three days per week, and relied on and consulted with Mr. Faurie to learn

12  the Department's procedures and daily administrative needs, thereby leaving Mr. Faurie

13  in the *de facto* position of decision making, information dissemination, and H.R.

14  Department management after Brier's resignation.

15  33.    Although Brier refused during her tenure to grant Mr. Faurie appropriate

16  differential pay for his performance of her professional duties, when Mr. Faurie was

17  absent due to workers compensation leave, another (female) employee was granted

18  differential pay to perform his responsibilities.  Notwithstanding that payment of

19  differential compensation, the individual so compensated was not properly relieved of her

20  ordinary duties and, consequently, did not perform the preponderance of work properly

21  within Mr. Faurie's job duties, leaving tasks unfinished for him to bring current upon his

22  return.  Mr. Faurie does not dispute the propriety of granting differential pay to an

23  individual called upon to cover his duties in his absence, but contends that the refusal to

24  compensate him for performing the duties of the Director of Classified Personnel was

25  unjustified and violated merit system rules and practices.  Moreover, whether or not Brier

26  was present and regardless of whether he performed all of her duties in her absence or

27  presence, he was required throughout his tenure to perform duties well above his

28  professional classification without appropriate differential compensation.

34.     In or about May 2006, Mr. Faurie complained to Dodson about being forced to work above his professional classification without appropriate differential compensation. Dodson stated to Mr. Faurie, "you should do any job asked of you because you are smart regardless of whether or not it is in your job classification."

35.     The requirement that Mr. Faurie perform duties above his professional classification without appropriate differential pay persisted throughout his entire tenure with BUSD, through the date he was forced to leave his employment due to the unreasonable level of hostility and unlawful treatment he received.

36.     In addition to violating Mr. Faurie's rights under Merit System rules and his Constitutional rights to equal protection of the laws and due process, the refusal to grant him differential pay for work performed was part of a pattern or practice of discrimination based on sex in the BUSD H.R. Department. During all times material to Mr. Faurie's claim, women were treated differently and more favorably to similarly situated men with regard to assignment of work, payment of differential compensation, granting of vacation leave, and subjection to a hostile work environment in retaliation for requesting that their rights be honored or that legal duties applicable to BUSD be fulfilled.

37.     During Mr. Faurie's tenure, four men (including Mr. Faurie) resigned their employment without notice (in one case with a single day of notice) due to intolerable and unlawful working conditions in the BUSD H.R. Department. Mr. Faurie is informed and believes and based thereon alleges that Jason Hunter resigned his position as Supervisor, Risk Management, Workers' Compensation and Benefits on or about September 9, 2005, because he was regularly required to perform duties out of his professional classification without appropriate differential pay and was subjected to an excessive workload while similarly situated female employees were spared such treatment. Mr. Hunter informed Mr. Faurie that, when Mr. Hunter resigned, Lawrence threatened to contact his new employer and inform it that he was "unprofessional", despite the fact that Mr. Hunter had received positive performance evaluations.

38.     Mr. Faurie is informed and believes and based thereon alleges that Robert
Valentine resigned from his position of Senior Personnel Assistant on December 9, 2005,
without any notice because he was denied overtime, differential pay, and vacation and
was unfairly and disproportionately disciplined on an ongoing basis while similarly
situated female employees were not subjected to such denials and discipline.
Specifically, with regards to the CBEDS report, Mr. Valentine presented documentation
in support of his request for differential pay, but was denied it every year. Mr. Faurie is
further informed and believes and based thereon alleges that two individuals were utilized
to perform Mr. Valentine's job duties, both of whom were at a higher classification, one
of whom was in a certificated position (which is in violation of applicable of collectively
bargained terms), and one of which was paid at a rate more than double Mr. Valentine's
pay.  Neither individual was an expert, and in fact were completely uninformed regarding
the relevant procedures and requirements.

39.     Mr. Hunter and Mr. Valentine, along with Mr. Faurie, were made physically ill
due to a retaliatory hostile work environment to which they were subjected because of
their persistence in securing equal treatment as men and because of their requests for
appropriate differential pay for work they were directed to perform out of professional
classification.

40.     Provisional employee Gene Boucher was subjected to such a hostile work
environment based on his sex that he resigned from the District without notice on August
7, 2006. Mr. Faurie is informed and believes and based thereon alleges that this hostile
environment consisted of unduly rude and offensive hostile behavior by Udell against
Boucher due to his sex, as only males and no females were subjected to such treatment by
Udell.

41.     All four males hired during Mr. Faurie's nearly four years of employment with
the District within the Human Resources Department left without notice; no female
employee submitted such abrupt resignations due to hostile and unlawful working
conditions.

42.     In or about May 2004, Mr. Faurie orally complained to Brier about a pattern of the Superintendent hiring employees without statutorily required fingerprint clearances and with criminal records of prohibited offenses. His concern stemmed from his knowledge regarding the improper hiring of two individuals and was voiced upon the improper hiring of the second of those individuals.  Jane Doe 1[1] was hired without DOJ clearance and was later terminated upon the District's receipt of notification of a prohibited offense. Jane Doe 2 was similarly hired in or about May 2004 without DOJ clearance.  When asked to obtain fingerprint clearance, Jane Doe 2 temporarily resigned her position.  During a subsequent discussion with Brier, Jane Doe 2 orally represented that she had only been convicted of minor offenses that did not preclude her employment. Based upon that uncorroborated representation, Brier reappointed Doe 2 to her position upon the understanding the results of her DOJ report must coincide with her statement or that she would be immediately terminated.  The subsequent report was received by the District approximately one year later, chronicling an extensive criminal history replete with prohibited offenses that precluded her employment by the District. Yet, Jane Doe 2 remained and, on information and belief, remains employed by BUSD.

43.     In or about May 2004, Mr. Faurie complained about the impermissible appointment of Jane Doe 2 to Brier, noting that Doe 2 had lied on her job application, orally lied about her criminal history in order to obtain reappointment, and that she had a criminal record of offenses that precluded her lawful employment by BUSD.  Brier told Mr. Faurie that she had notified Lawrence regarding the legal issues related to Jane Doe 2's appointment and told Mr. Faurie that there was nothing Brier could do and that the matter was in the Superintendent's hands.  Subsequent to these events, the Superintendent hired John Doe 1 on September 12, 2005, who also started work without fingerprint or tuberculosis clearance, contrary to law.  Clearance was later received, but the hiring of

---

[1] The individuals who were improperly hired are identified herein as "Jane Doe" or "John Doe" to preserve their privacy until such time as disclosure of their identities becomes necessary to resolve disputed factual issues.

1    employees without such clearance was repeated with John Doe 1's employment.  Brier

2    directed Mr. Faurie to ignore the situation.

3    44.     During the period between May 2004 and October 2005 (when Mr. Faurie went

4    on Workers Compensation leave), and during the period between February 2006 (when

5    he returned from Workers Compensation leave) and May 2006, Mr. Faurie also orally

6    complained to Brier regarding a repeated and ongoing practice by BUSD administrative

7    staff, including Brier, of failing to preserve the privacy of employee personnel files.

8    Confidential file contents were routinely left on copy machines and facsimile machines

9    where they were subject to perusal by unauthorized individuals.  Mr. Faurie also

10   expressed concerns regarding the H.R. Department's failure to notify the Department of

11   Justice upon the termination of employment of various individuals, which failure resulted

12   in the District continuing to receive subsequent arrest reports to which it was not legally

13   authorized access.  Brier dismissed Mr. Faurie's concerns as trivial and undeserving of

14   administrative response or elimination.  Brier also subjected Mr. Faurie to hostility

15   because of his continued efforts to draw her attention to unlawful practices in the

16   Department under her direction.

17   45.     In early July 2006, a BUSD administrator, who Mr. Faurie reasonable believed to

18   be under investigation for illegal and immoral practices, requested to review an employee

19   file.  Mr. Faurie referred the individual to Dodson who, Mr. Faurie was instructed at an

20   H.R. staff meeting, was authorized to accompany employees during such requests.

21   Dodson was visibly irritated by the referral of the employee to him, and he rolled his eyes

22   and looked away from Mr. Faurie as he accompanied the individual to the file room.

23   Dodson then left the individual alone with the confidential files for several minutes, in

24   direct violation of law.  Attempts by Mr. Faurie to address this problem with Dodson

25   were met with hostility and condescension, and Mr. Faurie was treated as though his

26   comments on the subject were detrimental to his employment status.

27   46.     On July 11, 2006, Mr. Faurie referred another personnel file review request by a

28   different individual to Dodson.  Shortly thereafter, Obieta appeared in Mr. Faurie's office

1   with the requested personnel file.  She had been in her position for two days and not

2   spoken to Mr. Faurie despite the fact that she was his newly appointed supervisor.  Obieta

3   confronted Mr. Faurie and informed him that he must accompany the employee during

4   review of the file, although the H.R. staff had been informed that only H.R. management

5   were allowed to do so.  When Mr. Faurie attempted to inform Obieta of this policy and

6   the statutory privacy-based reasons for it, Obieta's tone was hostile and unprofessional

7   towards Mr. Faurie immediately prior to the H.R. Staff meeting on July 11, 2006 that

8   resulted in his constructive discharge.

9   47.     During the period between May 2004 and July 2006, Mr. Faurie also voiced to

10  administrative personnel, including Brier and Dodson a concern regarding failure by the

11  District to obtain "livescan" digital fingerprint records of current employees as required

12  by law.  He was informed that the cost of securing those records was too great and that he

13  was to ignore the situation.

14  48.     Beginning in June 2004, after multiple attempts to address these unlawful

15  practices in the H.R. Department were met with hostility and lack of receptiveness or

16  response, Mr. Faurie submitted telephonic complaints to the State of California

17  Department of Justice regarding employees being hired without fingerprint clearance,

18  employees being hired despite having a criminal record of statutorily prohibited offenses,

19  employees being retained without livescan digital fingerprint records, and of failure by

20  BUSD H.R. officials to submit "no longer interested" forms to the Department of Justice

21  upon termination of individuals' employment (which is statutorily required in order to

22  prevent invasion of those employees' privacy).  Mr. Faurie also regularly inquired

23  regarding the status of the criminal background records of Doe 2 throughout this period.

24  49.     In or about May 2005, a DOJ representative informed Mr. Faurie that Jane Doe 2

25  should not be working for the District due to her record of prohibited criminal offenses.

26  Mr. Faurie was referred by the DOJ official to the Alameda County Office of Education.

27  Mr. Faurie informed Brier; Brier told Mr. Faurie that Lawrence knew of the situation and

28  that Mr. Faurie was directed to "drop the issue."  Mr. Faurie again raised the issue with

1    Brier and again was told to "drop the issue."  During the period between May 2005 and

2    July 2006, all attempts to address this issue and the larger unlawful BUSD practice it

3    represented were rebuffed with hostility and intractable refusal to respond or take action.

4    This precipitated an increasingly hostile response from Brier which Mr. Faurie is

5    informed and believes and based thereon alleges was based on directives from Lawrence

6    to ignore the legal violations, which directives continued to be implemented by the other

7    individual defendants.

8    50.    During the period from May 2004 to July 2006, Mr. Faurie regularly drew to the

9    attention of Brier and Dodson the fact that BUSD routinely failed to follow proper

10   procedures for newly appointed employees for enrollment in the California Public

11   Employee Retirement System (hereinafter "CalPERS").  Mr. Faurie's concerns, as with

12   all of his efforts to assist the District in complying with its legal responsibilities and

13   avoiding liability for legal violations, were rebuffed and met with hostility from

14   administrative staff to whom he reported.  In addition, Brier unlawfully distributed

15   confidential CalPERS passwords to unauthorized individuals to avoid the inconvenience

16   of obtaining proper authorization for individuals to whom she wished to delegate

17   information-retrieval duties.  Mr. Faurie reported this legal violation to CalPERS on or

18   about November 2005, which resulted in the suspension of the passwords until proper

19   authorization was obtained by CalPERS.  Brier knew of this report because she was

20   required to obtain a valid password for the individuals to whom she had unlawfully given

21   confidential passwords.

22   51.    In addition to the foregoing, in or about January 2005, Mr. Faurie notified Brier

23   that he was suffering from a repetitive stress injury to his right hand and arm due to a

24   work-related repetitive stress injury.   Mr. Faurie continued with his assigned duties until

25   he was prevented from performing them due to extreme pain he suffered as a result of his

26   injury.  He subsequently filed a workers' compensation claim in July 2005 in order to

27   seek appropriate medical treatment.  Upon learning of Mr. Faurie's workers

28   compensation claim, Brier immediately became hostile, yelled at Mr. Faurie "if this is

1  what you want to do…fine!" and threw the signed claim form at him.  She then loudly

2  ordered him to stop typing and quickly left his office.

3  52.      Despite orders from the District-appointed physician that Mr. Faurie take ten-

4  minute breaks per hour, Brier repeatedly ignored this directive and issued work for Mr.

5  Faurie to perform, and routinely interrupted his breaks in order to address work issues,

6  which generally involved use of Mr. Faurie's hand, in direct violation of his doctor's

7  orders.  Due to the lack of rest required for improvement of his condition, the doctor

8  increased Mr. Faurie's rest period to twenty minutes per hour, which Brier also ignored

9  as she continued to interrupt his rest periods.  Brier informed Mr. Faurie that his doctor

10  was "crazy" and "didn't know what he was doing."  She also claimed that the directed

11  rest period only inferred that Mr. Faurie should not type, and that his doctor was "crazy"

12  and "incompetent."  Mr. Faurie confirmed with his doctor that he was directed not to

13  perform any work of any type during his rest period, and the doctor was infuriated by

14  Brier's lack of cooperation needed in order for Mr. Faurie to recover in a timely manner.

15  Mr. Faurie attempted to lock his office door to prevent interruptions of his breaks by

16  Brier, but Brier became enraged and informed Mr. Faurie that he "must be available at all

17  times" regardless of the doctor's direction.  In or about October 2005, the worker's

18  compensation physician placed Mr. Faurie on medical leave to stop Brier's refusal to

19  accommodate his medical limitations.

20  53.      Upon his return from leave, Mr. Faurie requested to Inez Reed, Supervisor of

21  Workers' Compensation, that his new work location be evaluated to prevent a

22  reoccurrence of his injury, but his requests were ignored.  Brier was aware of his requests

23  yet refused to take action to ensure that the evaluation was performed.

24  54.      At the time of Mr. Faurie's departure from BUSD, all female employees within

25  the H.R. Department had filed workers' compensation claims for varying reasons; none

26  were treated with hostility for doing so in the manner in which Brier behaved with Mr.

27  Faurie.

28

55.    On three separate occasions in July 2006, immediately prior to Mr. Faurie's constructive discharge, Mr. Faurie had asserted both orally and in writing the need for extension of a deadline and/or a request for overtime compensation to adequately execute duties for processing classified employee step increases, but he was unjustifiably denied and/or ignored on all three occasions.  However, Udell granted Paula Phillips, a female employee within the H.R. Department, extension of the deadline and authorized overtime to perform step increase determinations.  Claimant does not dispute that extension given to Ms. Phillips by Udell was proper and necessary, but contends that the denial of his request was retaliatory and discriminatory, creating a hostile and unlawful work environment, and preventing him from being able to perform his assigned duties and enjoy the benefits of his employment relationship with BUSD.

56.    In February 2006, Mr. Faurie was threatened by Brier with disciplinary action if he did not comply with a "stacked" discipline process.  The process for following disciplinary procedures is clearly outlined in collective bargaining agreements as well as in the merit system rules.  Brier routinely ignored these rules through creation of a predetermined outcome for disciplined employees.  Brier regularly handled multiple levels of the disciplinary process on behalf of other individuals who were assigned to address employee discipline matters, thereby violating disciplined employees' rights to procedural due process and compliance with established District policies.  The process lacked the neutrality required of Brier's position as both Director, Classified Personnel and liaison to the Merit Commission, and garnered repeated complaints by employees' union representatives.

57.    At least two attorneys employed by or affiliated with the law firm that represented the District in disciplinary matters were directly involved in disregarding procedural due process constraints on the disciplinary process.  Mr. Faurie heard one attorney state to Brier and Payroll Supervisor Lori Lewis that, despite a particular employee's progress, they were "going to get her anyway." Discipline procedures against the employee continued because, as the attorney stated, she "did not care" about improvements in work

1   performance made by the employee. A second attorney, was hired from the same firm by

2   Lawrence as an interim Assistant Superintendent of Human Resources/Consultant, yet

3   the position is required to be neutral in nature due to Constitutional procedural constraints

4   on disciplinary and merit system matters. Mr. Faurie objected to these violations of

5   employees due process rights, but was rebuffed by Brier, who informed him that if he did

6   not participate in implementation of the disciplinary process he would be considered

7   insubordinate.

8   58.     Mr. Faurie was ranked in the highest category of each of his performance

9   evaluations. His evaluations by Brier stated that she was comfortable leaving the office

10  knowing that Mr. Faurie was available to handle issues in her absence. They also

11  demonstrated that he worked above his assigned classification. Mr. Faurie is informed

12  and believes and based thereon alleges that a classification study performed by Reward

13  Strategy Group during and after Mr. Faurie's employment with BUSD confirmed that

14  Mr. Faurie was working at a higher level on a regular basis and concluded that his

15  position should be reclassified as an Analyst.

16  59.     On or about July 5, 2006, Udell was hired by BUSD. Udell possessed apparent

17  supervisory authority over employees in the BUSD Human Resources Department,

18  pending appointment of a replacement for Brier. However, as with the consultant hired

19  on a temporary basis upon Brier's resignation, Udell was untrained and relied on Mr.

20  Faurie to advise her and perform duties of her position while she learned it. He did not

21  receive appropriate differential pay for working out of his classification during this

22  period. On or about July 10, 2006, Obieta was hired into the position of Director,

23  Classified Personnel. Similarly, Obieta lacked appropriate training and experience.

24  60.     Udell called a meeting of the BUSD H.R. Department staff on July 11, 2006. At

25  that meeting, Udell directed BUSD staff, including Mr. Faurie, to ignore the fact that

26  BUSD employees were being unlawfully forced into early retirement because the H.R.

27  staff were providing incorrect information regarding No Child Left Behind Act testing

28  requirements. Mr. Faurie stated to Udell that the course of conduct she was ordering was

contrary to law.  She reacted to Mr. Faurie's questioning of her directive with open

hostility and told him that she "knows we are breaking the law" but that her directive was

consistent with BUSD policy as communicated and authorized by Superintendent

Lawrence.  When Mr. Faurie persisted in voicing his understanding that the directed

course of conduct was unlawful and that it would put the District and potentially its

individual employees in legal jeopardy, he was accused, rudely and openly in front of his

co-workers, of having an "attitude problem" and was admonished to drop the subject.

This incident demonstrated in unavoidable terms that Lawrence had ignored all

complaints regarding unlawful directives by BUSD administrative staff, unlawful

treatment of employees, as well as legally perilous and intractable administrative

incompetence at the Director level.

61.    Mr. Faurie, having diligently endeavored for years to patiently request that some

modicum of integrity and law-abiding behavior be instilled into the policies and practices

of the BUSD administration, and having persistently attempted to secure equal treatment

as a male, was subjected to a threshold of intolerability that no reasonable person would

be able to endure without injury.  He was rendered physically ill and extremely

emotionally distressed by Udell's offensive and hostile rebuke to his final attempt to raise

the issue of BUSD's unlawful policies and practices.  Consequently, he left the meeting

due to emotional and physical injury.  Mr. Faurie left a voice mail message later that

same day for Obieta, his direct supervisor, informing her that he was ill and would be out

on sick leave for the remainder of the week and that he would notify her on Monday, July

17, 2006, whether he intended to tender his resignation.

62.    Later the same day, Obieta left a voice mail message on Mr. Faurie's home

telephone answering machine in which she (1) demanded that Mr. Faurie provide a

doctor's note by June 12, 2006, for his absence due to illness; (2) said "You've also told a

number of people that you are resigning, um, so, you can also go ahead and bring in your

letter of resignation tomorrow"; and (3) told him he could call her if he had any questions

but that she could not remember her  phone number.

63.    Through his attorney, Mr. Faurie sent a letter to Obieta on July 12, 2006 via facsimile and certified U.S. mail, informing her that, given that Mr. Faurie had no history of abusing his sick leave and in light of District policies and practices, she had no lawful basis to demand that he produce a doctor's note on July 12, 2006.  The letter also noted that Mr. Faurie's illness, both physical and emotional, had been caused by ongoing managerial inadequacies in her department and a hostile work environment to which he was subjected because of drawing attention to illegal courses of action directed by BUSD H.R. administrative personnel.  The letter also set forth Mr. Faurie's claims that there was a pattern and practice of discrimination in the department on the basis of sex, that employees are required to work out of job classification without appropriate differential compensation, and that Mr. Faurie had lodged several complaints with CalPERS, the Alameda County Superintendent of Schools, and the State Department of Justice regarding legal violations in the BUSD H.R. Department.   The letter further set forth that Mr. Faurie had not resigned his employment, and that any attempt to terminate his employment would constitute tortious wrongful discharge in violation of fundamental public policy, termination without just cause, a whistleblower violation, and discrimination based on sex.  Obieta was admonished not to contact Mr. Faurie directly and to preserve all documents and electronic records regarding him.

64.    Lawrence responded to Mr. Faurie's counsel's letter via telephone call on July 13, 2006.  During that conversation, Lawrence inaccurately stated that Mr. Faurie had six days of sick leave accrued (he actually had 18, which Lawrence later acknowledged), granted Mr. Faurie's request for sick leave, refused to acknowledge that Mr. Faurie had been subjected to a hostile environment in retaliation for identifying illegal directives from his superiors or had been subjected to disparate treatment based on his sex, and informed Mr. Faurie's counsel that Mr. Faurie had "burned his bridges" with BUSD administrative staff.  That conversation was memorialized in a letter from Mr. Faurie's counsel to Lawrence dated July 14, 2006.

65.     Mr. Faurie's attorney sent another letter to Lawrence via facsimile and U.S. Mail on July 17, 2006.  The letter further memorialized the telephonic conversation with Ms. Lawrence of July 13, 2006, and observed that Lawrence's representations regarding her understanding of the issues presented, the attitude of the BUSD H.R. administrative staff regarding Mr. Faurie, and her statement that he had "burned his bridges" when in fact he had been forced to leave due to illness caused by an unlawful hostile work environment, indicated the toxic work environment could not be considered reasonably likely to improve. Consequently, via his attorney, Mr. Faurie conveyed his intent to resign his position under duress.

66.     Lawrence sent two letters to Mr. Faurie's counsel on July 17, 2006, one erroneously dated July 14, 2006, and one correctly dated July 17, 2006.  With those letters, Lawrence requested that Mr. Faurie tender his resignation using an approved BUSD form and that he provide written authorization for his attorney to speak on his behalf.

67.     Mr. Faurie's attorney replied with a letter dated July 19, 2006, confirming Mr. Faurie's resignation and addressing other matters raised by Lawrence.  Attached to that letter was a signed BUSD resignation form, completed and signed by Mr. Faurie, in which he struck out standard form language indicating that his resignation was voluntary, and on which he stated that he had been constructively discharged due to a hostile and illegal working environment.  Also attached to that letter was a signed authorization for Mr. Faurie's attorney to represent him with the District.

68.     In order to mitigate his damages, on or about July 20, 2006, Mr. Faurie submitted to the Employment Development Department (hereinafter "EDD") an application for unemployment insurance, asserting as the basis for his claim that he was constructively discharged due to an unlawful hostile work environment to which he had been subjected in retaliation for having identified, resisted, or refused to implement unlawful directives by BUSD administrative staff.  An EDD investigator investigated Mr. Faurie's application, heard the position of BUSD staff, and determined that Mr. Faurie was

1   entitled to unemployment insurance compensation because he had been constructively

2   discharged through a hostile work environment in retaliation for resisting and reporting

3   unlawful directives by his supervisors.

4   69.   BUSD did not file a timely appeal of the EDD determination.  On or about August

5   14, 2006, BUSD, through its representative, Talx UCeXpress, submitted to the

6   Unemployment Insurance Appeals Board (hereinafter "UIAB") an untimely appeal of the

7   EDD determination with a frivolous motion to excuse its late filing.  Mr. Faurie and his

8   counsel appeared at the scheduled UIAB hearing, but BUSD did not appear before the

9   administrative law judge to prosecute its appeal.  Consequently, the appeal was denied

10  and BUSD did not seek relief from its default or reopening of the appeal to challenge the

11  determination in Mr. Faurie's favor.  Through its frivolous and unprosecuted appeal,

12  BUSD attempted to thwart Mr. Faurie's efforts to mitigate his damages, and wasted his

13  time and resources expended in preparing and appearing for an appeal the District

14  apparently decided to abandon.

15  70.   Also in order to mitigate his damages, Mr. Faurie engaged in an intensive and

16  persistent job search throughout the greater San Francisco Bay Area from July 17, 2006,

17  through December 2006, when he was offered and accepted a new position.  However,

18  the position to which he was hired is lower in rank than the professional classification for

19  which he is qualified, as evidenced by his placement on the eligibility list for a higher

20  classification equivalent to a Senior Personnel Analyst.  He accepted this lower position

21  to mitigate damages and bring in desperately needed income.  But, his unlawful

22  constructive discharge from BUSD employment continues to result in diminished

23  compensation and delayed professional advancement.

24  71.   Mr. Faurie immediately consulted with a psychiatrist upon his unlawful

25  constructive discharge and has remained under the care of that psychiatrist continually to

26  the present.  He has been treated for severe anxiety, panic attacks, and emotional distress

27  resulting from the unlawful treatment he received from BUSD administrative staff.

28

72.    Plaintiff at all times duly performed all the conditions of his employment until Defendants prevented him from doing so.  At all times relevant to this Complaint, Plaintiff was ready, willing, and able to perform his job until he was constructively discharged by Defendants.

**B. Provisions and Related Facts Establishing Plaintiff's Employment-Related, Constitutionally Protected Property Interests and Due Process Deprivations**

73.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 72, above.

74.    At all material times, Plaintiff was employed in a permanent position within the classified service of the BUSD.  As such, his employment was governed, established, defined, and protected by, *inter alia*, the Merit System Rules and Regulations for Classified Employees adopted by the Personnel Commission of the Berkeley Unified School District (Revised and approved October 4, 1972; reprinted October 1987 and October 1989 ("Merit System Rules"), available online at http://www.berkeley.net/ uploads/File/BUSD%20Personnel%20Commission%20Rules,%201989.pdf.  A true and correct copy of the Merit System Rules is attached hereto as Exhibit A.

75.    The Merit System Rules define "Discharge or Dismissal" to mean "Separation from service for cause" (p. 4).

76.    As a member of the permanent classified service of BUSD, Plaintiff's employment also was established, defined, and protected by, *inter alia*, provisions of the California Education Code applicable to the classified service. California Education Code § 45302 states, in relevant part:

> No person in the permanent classified service shall be demoted or removed except for reasonable cause designated by rule of the [personnel] commission as detrimental to the efficiency of the service.

77.    Thus, as alleged in this Complaint, Plaintiff's employment was terminable only for just cause.  Consequently, as a public employee, he had a property interest in continued employment which could only be divested through procedures consistent with

1    requirements imposed by the Due Process clauses of the Fifth and Fourteenth

2    Amendments to the U.S. Constitution and cases interpreting them.  See *Bostean v. Los*

3    *Angeles Unified School District*, 63 Cal.App.4[th] 95 (1998); *Brown v. City of Los Angeles*,

4    102 Cal.App.4[th] 155 (2002).

5    78.    Section 30.200.6 of the Merit System Rules (p. 20) applies to work by a classified

6    employee out of his or her job classification, such as Plaintiff alleges herein he was

7    required to perform without appropriate differential compensation.  For each period when

8    Defendants required Plaintiff to work above his job classification, Section 30.200.6 of the

9    Merit System Rules gave Plaintiff a property interest in adjustment of his salary either

10   upward 5% or at the salary range of the higher classification, whichever was greater, for

11   the entire period he was required to work out of classification.  Failure to pay Plaintiff the

12   differential pay he was due under the Merit System Rules constituted deprivation of his

13   property interest without Due Process under the Fifth and Fourteenth Amendments to the

14   U.S. Constitution in that no procedure was employed to justify such denial and Plaintiff

15   qualified for the differential pay under the terms of the Merit System Rules.

16   79.    The text of Section 30.200.6 of the Merit System Rules is set forth immediately

17   *infra*:

18        **30.200.6 Working Out of Classification** (EC 45276)

19        A. An employee is not expected to be required to work out of

20        classification, but when he/she is required to do so the fact shall be

21        reported to the Personnel Director, who shall immediately investigate and

22        report to the Personnel Commission. After review, the Commission shall

23        take such action as necessary based upon the facts. This rule shall not be

24        construed as permitting an employee to refuse to perform duties legally

25        assigned by competent authority.

26        B. An employee may be required to perform duties inconsistent with those

27        assigned to the position by the governing board provided that his/her

28        salary is adjusted upward to 5% or at the salary range of the higher'

1    classification, whichever is greater, for the entire period he/she is required

2    to work out of classification. (Revised April 3, 1974)

3    80.    Section 30.300 et seq. of the Merit System Rules (p. 22) applies to reclassification

4    of existing positions in the classified service, including appropriate upward

5    reclassification of positions occupied by individuals who have been performing duties

6    consistently above their job classifications, as Plaintiff alleges Defendants required him

7    to do.  Plaintiff alleges that he consistently performed the duties of either a Senior

8    Personnel Analyst or Assistant Director, Classified Personnel, for more than three years

9    and that Section 30.300 et seq. of the Merit System Rules gave him a property right to

10    appropriate upward reclassification of his position, which was thwarted by Defendants

11    because of their refusal to acknowledge that he was working above his job classification.

12    Plaintiff is informed and believes and based thereon alleges that Defendants, and each of

13    them, although they required him to work above his job classification, later falsely

14    represented his work above his job classification to be *de minimis* during a classification

15    study commissioned by BUSD to consider reclassification of positions within the

16    District.  The result of this failure to appropriately reclassify Plaintiff's position was a

17    substantial underpayment over the course of his employment by BUSD.

18    81.    The text of Section 30.300 et seq. of the Merit System Rules is set forth

19    immediately *infra*:

20        **30.300 Reclassification**

21        30.300.1 Review of Positions

22        The Personnel Director shall review the duties and responsibilities of

23        positions as necessary to determine their proper classification and shall

24        cause all positions to be reviewed once every 3 years.

25        30.300.2 Requests for Study

26        Requests for classification study of existing positions may be presented to

27        the Personnel Director together with a statement of the reasons for

28        requesting study. Requests for study may be initiated by the

administration, with the approval of the Superintendent, or by employees
or employee organizations. Requests initiated by the administration shall
be accompanied by a statement of the current authorized duties of the
position(s).

30.300.3 Effective Date of Reclassification (EC 45285)

Reclassification of a position shall become effective on the same date that
the reclassification of the position is approved by the Commission.

30.300.4 Effects on Incumbents (EC 45285)

A. For an employee to be reclassified upward with his/her position, the
reclassification must have been occasioned by a gradual accretion of
duties and not by a sudden change resulting from reorganization or duty
changes by the Board. The Commission shall decide at the time the
reclassification occurs as to whether the reclassification meets this rule.

B.1. When all of the positions in a class are reclassified upward, those
incumbents with 3 or more years' service in the class shall be
automatically reclassified with the positions.

B.2 When a portion of the positions in a class are reclassified upward,
those incumbents with 3 or more years' service in one or more of the
positions being reclassified shall be reclassified with their position(s).

C. An employee who has been reclassified upward shall be ineligible to
again be reclassified upward until at least 3 years has elapsed from the last
upward reclassification.

82.    Section 60.600 of the Merit System Rules (p. 51) governs performance
evaluations of classified personnel, such as Plaintiff.  The provision clearly indicates that
performance reviews are instrumental in disciplinary matters and, therefore, in a
classified employee's right to continued employment.

83.    The text of Section 60.600 of the Merit System Rules, in relevant part, is set forth
immediately infra:

**60.600 PERFORMANCE EVALUATIONS**

60.600.1 When Evaluations Are To Be Made

All regular classified employees shall be evaluated by their immediate supervisors at least in accordance with the following schedule:

…

B. Permanent employees - once each year, to establish longevity merit eligibility. The employee will be furnished a copy of the completed report for his/her files and the original report filed with his/her personnel records retained in the Personnel Department and shall be made available for review by administrative officials in connection with promotional examinations and disciplinary actions.

84.    Section 60.1000 of the Merit System Rules sets forth the exclusive grounds for, and the procedures governing, discipline up to and including discharge of classified employees, such as Plaintiff.

85.    The text of Section 60.1000 of the Merit System Rules is set forth immediately *infra* (emphasis by underlining added):

**60.1000 DISCIPLINARY ACTION AND APPEAL**

60.1000.1 Causes for Suspension. Demotion. Dismissal (EC 45303)

A. Permanent employees in the classified service may be reprimanded, demoted, or dismissed for any of the following causes provided that specific instances must be set forth as to any causes enumerated in the headings below. This section shall not be construed to prevent layoffs for lack of work or lack of funds.

1. Incompetency and inefficiency in the performance of assigned duties (Cumulative).

2. Insubordination (including but not limited to assigned work) or any willful and persistent violation of the provisions of the Education Code or

of the rules, regulations or procedures adopted by the Board of Education, Superintendent, or the Personnel Commission pursuant to it.

3. Dereliction of or inattention to duty (Cumulative).

4. Failure to maintain the requirements of the classification, e.g. license or certification.

5. Failure of good conduct tending to injure the public service.

6. Dishonesty on matters pertaining to employment and duties.

7. Discourteous, offensive or abusive conduct or language toward other employees, pupils, or the public (Cumulative).

8. Use of alcoholic beverages, non-prescribed narcotics or restricted substances while on duty or reporting to work while under the influence of alcohol, nonprescribed narcotics or restricted substances (Cumulative).

9. Conviction of any criminal act by a court of law involving moral turpitude or other serious crime which indicates the person is a poor employment risk.

10. Political activities engaged in by an employee during his/her assigned hours of employment (Cumulative).

11. Unexcused absence or abuse of sick leave privileges or repeated and unexcused tardiness.

12. The discovery or development during an initial probationary period of any physical, emotional, and/or mental condition which would have precluded acceptance as eligible for assignment.

13. Abandonment of position – that is absences without permission in excess of five working days.

B. This section shall not be construed to prevent layoffs for lack of work or lack of funds. (EC 45302)

C. SUSPENSION OF CLASSIFIED EMPLOYEE DUE TO ACCUSATION OF CRIME:

A regular employee charged with the commission of any offense as specified in Section 45304 of the Education Code by complaint, information, or indictment filed in a court of competent jurisdiction may be suspended as provided for in Section 45304 of the Education Code. Such a suspension will be processed as an involuntary personal leave in accordance with the provisions of the Rule relative to suspensions. The employee may receive compensation as provided for in the Education Code section. Such suspension shall be reviewed by the Personnel Commission every 90 days. (EC 45304)

60.1000.2 Procedure for Disciplinary Action

A. No employee in the classified service shall be suspended, reprimanded, demoted, dismissed, or in any way discriminated against because of his/her political or religious affiliations or race, color, sex, national origin or ancestry, or marital status, or pregnancy, subject to the provisions of Paragraph A.3, Rule 60.1000.1.

B. In handling disciplinary matters, involving suspension, demotion, and dismissal, it is intended that progressive steps be utilized to the greatest extent permitted by individual circumstances, and that discipline shall be commensurate with the offense. Such progressive steps may be as follows, except that steps 1 and 2 are mandatory in dealing with causes of a cumulative nature unless the severity of the offense warrants disciplinary action at a higher appropriate level.

1. Verbal reprimand.

2. Written reprimand with a copy to the employee's personnel file.

3. Suspension without pay.

4. Involuntary demotion.

5. Dismissal.

1    Causes of cumulative nature are those contained in 60.1000.1A – 1, 3, 7,

2    8, and 10.

3    C. Supervisors shall have orally or in writing recommended corrective

4    action whenever an employee fails to meet the required standards or

5    conduct or performance for a cumulative offense.

6    D. If disciplinary action is a written reprimand, the employee shall be

7    given a copy and it shall include notice of the employee's right to respond

8    within ten working days before the reprimand is included in the

9    employee's personnel file.

10    E. When a regular employee is to be suspended, demoted, or dismissed,

11    specific written charges shall be prepared and presented for action of the

12    Governing Board. The charges must be so clear that the employee will

13    know the exact complaints and may be expected to respond to them.

14    F. When formal disciplinary action has been taken by the Governing

15    Board, the action and the charges shall be reported to the Personnel

16    Director, who shall within 10 working days notify the employee and shall

17    report the action to the Commission.

18    G. Notice to the employee shall include a copy of the charges and a

19    statement of his/her right to appeal, if any, together with a copy of Rule

20    60.1000.3. Such notice shall be transmitted by registered or certified mail

21    to the last known address of the employee within 10 working days of the

22    effective date of the disciplinary action.

23    H. Notwithstanding the procedures prescribed above, an employee may be

24    suspended prior to Board approval when in the opinion of the

25    Superintendent or in his/her absence, the Superintendent's designee, such

26    suspension is necessary to protect the interest of the District. Such

27    suspension is subject to later ratification by the Board and approval of

28    charges which must be transmitted to the employee within 10 working

days after the date of suspension. Requirements in regard to charges and
notifications must be met when the Board ratified the administrative
action.

I. A regular employee charged with the commission of any sex offense as
defined in Section 44010 or any narcotics offense as defined in Section
44011 of the Education Code by complaint, information, or indictment
filed in a court of competent jurisdiction may be suspended as provided
for in Section 45304 of the Education Code. Such a suspension will be
processed as an involuntary personal leave in accordance with the
provisions of this rule relative to suspensions. The employee may receive
compensation as provided for in the Code section. Such suspension shall
be reviewed by the Personnel Commission every 90 calendar days.

J. Dismissal shall cause removal of the employee's name from all
employment lists.

K. Failure to appeal, as provided below, shall make the action of the
Governing Board final and conclusive.

L. Suspension, without pay, shall not exceed the time limitations
prescribed in Education Code Section 13742.

86.     Section 80.300 of the Merit System Rules also prohibits discipline or
discrimination against classified personnel based on, *inter alia*, sex.  The text of that
provision is set forth, in relevant part, immediately *infra*:

   **80.300 POLITICAL ACTIVITY**

   80.300.1 Political Activity Freedom

   …

   B. No person in the permanent classified service shall be suspended,
   demoted, dismissed or in any way discriminated against because of his/her
   affiliations, political or religious acts or opinions, race, color, sex or
   marital status. (EC 45293)

87.    BUSD Board Policy 4030, promulgated by the governing board of the school district provides, in relevant part,

> The Board prohibits unlawful discrimination against and/or harassment of district employees …on the basis of actual or perceived … sex, …. The Board also prohibits retaliation against any district employee or job applicant who complains, testifies or in any way participates in the district's complaint procedures instituted pursuant to this policy.

88.    Section 60.1000 of the Merit System Rules, quoted at length *supra*, clearly contemplates a system of progressive discipline within which employees are to be given notice of purported deficiencies and an opportunity to correct them before increasing levels of discipline are imposed if necessary.  The provision also clearly requires findings of specific instances of job deficiencies or misconduct to justify any disciplinary action.  Combined with the just cause provisions in the Merit System Rules and the Education Code, Plaintiff alleges that this provision entitled him to continued employment and to the assurance that such employment would *only be terminated for one of the reasons listed in the Section 60.1000, and only after he was afforded the procedures set forth in that provision.*

89.    Instead, Plaintiff was constructively discharged through a hostile environment to which he was subjected in retaliation for resisting and reporting unlawful directives and because of his sex and his attempts to protect rights under the FEHA.  "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign.  Although the employee may say 'I quit,' the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation."  *Turner v. Anheuser-Busch*, 7 Cal. 4th 1238, 1244-1245 (1994) (emphasis added).  Deprivation of a right to continued employment amounts to a "taking" of a property right, with attendant Due Process protections.  *Bostean*, *supra*, 63 Cal.App.4th at 110.  "At a minimum, an individual entitled to procedural due process should be accorded: written notice of the

1    grounds for the disciplinary measures; disclosure of the evidence supporting the

2    disciplinary grounds; the right to present witnesses and to confront adverse witnesses; the

3    right to be represented by counsel; a fair and impartial decisionmaker; and a written

4    statement from the fact finder listing the evidence relied upon and the reasons for the

5    determination made." *Brown*, *supra*, 102 Cal.App.4[th] at 175 citing *Burrell v. City of Los*

6    *Angeles, supra,* 209 Cal. App. 3d 568, 577 (1989).  "Moreover, while due process does

7    not require the employer to provide the employee with a full trial-type evidentiary

8    hearing prior to the initial taking of punitive action, "a public employee is entitled to a

9    full evidentiary hearing after the disciplinary action is imposed."  *Id*., citations omitted.

10   90.     Plaintiff alleges that his termination in retaliation for reporting and resisting

11   unlawful directives and because of his sex and for attempting to vindicate rights under the

12   FEHA was for reasons other than those identified in the exclusive list set forth in Section

13   60.1000.  Further, the mechanism of his termination, namely, unlawful harassment to a

14   level intolerable to a reasonable person, deprived him of the procedures guaranteed by

15   Section 60.1000.  Thus, <u>Plaintiff was deprived of his property interest in continued</u>

16   <u>employment for an unlawful reason and by an unlawful means</u>.  It was the constructive

17   discharge itself that constituted the Due Process violation because it was the constructive

18   discharge that deprived him of both his property interest in his continued employment

19   and the procedural safeguards guaranteed by the Merit System Rules and required by the

20   Due Process Clauses of the Fifth and Fourteenth Amendments.

21   91.     Moreover, Sections 60.1000.2(A) and 80.300.1(B) of the Merit System Rules,

22   quoted *supra*, specifically prohibit discipline or other discrimination against classified

23   personnel based, *inter alia*, on sex.  Thus, Plaintiff's allegation that he was constructively

24   discharged due to a hostile environment based on sex is a <u>direct violation of the Merit</u>

25   <u>System Rules</u> governing discipline and discharge of classified staff.  Consequently, his

26   discharge in violation of those provisions without any procedural safeguards deprived

27   Plaintiff of his property interest in continued employment without due process of law.

28

**C. Satisfaction of Tort Claims Act Claim Presentation Requirement**

92.     Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 91, above.

93.     On January 10, 2007, Mr. Faurie, by and through his counsel, filed with the duly designated agent and the President of the governing Board of BUSD a detailed Notice of Tort Claims, pursuant to Government Code § 900 et seq., with a 21 – page attachment, in which he set forth in detail the foregoing factual allegations and the claims for relief alleged herein, and in which he requested to be made whole for the losses he suffered as detailed herein.

94.     Plaintiff is informed and believes and based thereon alleges that, on or about February 21, 2007, the BUSD governing Board met in closed session to discuss Mr. Faurie's Tort Claims, consulted with the Board's counsel, and on that date either took no action on his claims or rejected his claims, but in any case took action adverse to his claims in their entirety.

95.     Plaintiff is informed and believes and based thereon alleges that on or between February 21, 2007 and February 23, 2007, the BUSD Board, apparently acting pursuant to advice of counsel, promulgated false and misleading meeting minutes which erroneously represent that, on February 7, 2007, the Board had rejected portions of Mr. Faurie's claim that accrued after July 10, 2006.

96.     Repeated attempts by Plaintiff's counsel to obtain a clarification from counsel for the BUSD Board regarding what action the Board took on Mr. Faurie's claims and when such action was taken were rejected by counsel for the BUSD Board, who confined her answers to referring to the fraudulent meeting minutes, which do not reflect what actually took place or when the Board took action on Mr. Faurie's claim.

97.     Notwithstanding the fraudulent meeting minutes and the refusal of counsel for the Board to accurately and clearly state when her client took action on Mr. Faurie's claims and what action it took, it is clear that the Board ultimately rejected Mr. Faurie's tort

1  claim in its entirety.  Mr. Faurie has, therefore, satisfied his tort claim presentation

2  requirement and is now permitted to file this action against Defendants, and each of them.

3  98.      Subsequent to the BUSD Board's rejection of Mr. Faurie's Tort claims, counsel

4  for BUSD's Board commenced an investigation into the merits of his claims.

5  **C. DFEH Complaints and Right-To-Sue Letters**

6  99.      Plaintiff incorporates herein by reference as though fully set forth at length the

7  allegations of paragraphs 1 through and including 98, above.

8  100.    On March 26, 2007, Plaintiff, by and through his counsel, filed a complaint with

9  the Department of Fair Employment and Housing against Defendants, and each of them,

10  and requested immediate right-to-sue letters.  In his complaints, Plaintiff alleged the facts

11  set forth herein and asserted against each and every Defendant claims under Government

12  Code §12900 et seq.

13  101.    The Department of Fair Employment issued Right-To-Sue Notices dated March

14  28, 2007, regarding each and every Defendant.

15  102.    On May 15, 2007, Plaintiff, by and through his counsel, timely served each and

16  every Defendant with the DFEH complaint filed against him/her/it and with a copy of the

17  corresponding Right-To-Sue Notice for each and every Defendant.

18  103.    Therefore, Plaintiff has exhausted his administrative remedies prerequisite to

19  bringing a civil action pursuant to Government Code §12900 et seq. and is free to pursue

20  the instant action.

21                                **FIRST CAUSE OF ACTION**
22                       **(Retaliatory Discharge For Whistleblowing and**
                    **Refusing to Comply With Unlawful Directives [Labor Code § 1102.5]**
23                                        **[Against BUSD])**

24  104.    Plaintiff incorporates herein by reference as though fully set forth at length the

25  allegations of paragraphs 1 through and including 103, above.

26  105.    Mr. Faurie asserts that he was constructively discharged because a reasonable

27  person in his circumstances, facing the hostile and offensive retaliatory environment to

28  which he was subjected, would feel no choice but to resign.  As noted above, this fact has

1  been confirmed by the Employment Development Department, which finding was

2  uncontroverted by BUSD on its late-filed and abandoned appeal to the Unemployment

3  Insurance Appeals Board.

4  106.    Mr. Faurie engaged in conduct protected by Labor Code § 1102.5 when, as

5  detailed throughout this Complaint, he reported policies, practices, and directives within

6  the BUSD H.R. Department which he reasonably believed violated state and/or federal

7  laws, rules or regulations to supervisors within the BUSD H.R. Department and to other

8  state and local government administrative agencies.

9  107.    Mr. Faurie also engaged in conduct protected by Labor Code § 1102.5 when he

10  resisted implementing directives he reasonably believed violated state and/or federal

11  laws, rules, or regulations.

12  108.    Lawrence, Udell, Obieta, Dodson, and Brier, acting in their official capacities,

13  subjected Plaintiff to a hostile and offensive working environment, culminating in his

14  constructive discharge, in retaliation for such protected activity.

15  109.    Mr. Faurie's constructive discharge violated Labor Code § 1102.5(b) and (c) in

16  that his termination was in retaliation for his complaints regarding unlawful practices and

17  policies of the BUSD knowingly approved and authorized by the Superintendent, his

18  refusal to perform unlawful acts, and his refusal to remain silent regarding ongoing

19  violations of law and public policy, as detailed in the statement of facts above.

20  110.    As a direct, foreseeable, and proximate result of  BUSD's and the individual

21  Defendants' wrongful termination of Mr. Faurie in violation of Labor Code § 1102.5(b)

22  and (c), Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation,

23  and loss of fringe benefits, as well as expenses incurred in securing new employment,

24  including but not limited to loss of appropriate differential pay from April 2003 through

25  July 2006, proper job classification and associated rate of pay from April 2003 through

26  January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007,

27  vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007,

28  CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front

1    pay constituting the difference between his current rate of pay and the pay he would

2    receive as a Senior Administrative Analyst, all to his damage in an amount in excess of

3    $200,000.00, the precise amount of which is subject to proof.

4    111.    As a further direct, foreseeable, and proximate result of  BUSD's and the

5    individual Defendants' wrongful termination of Mr. Faurie in violation of Labor Code §

6    1102.5(b) and (c), Mr. Faurie has suffered gastrointestinal disturbances, headaches,

7    vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the

8    precise amount of which is subject to proof.

9    112.    Also as a direct and proximate result of the unlawful actions described above, Mr.

10    Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

11    including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

12    humiliation, fear, embarrassment, depression and discomfort all to his damage in an

13    amount in excess of $400,000.00, the precise amount of which is subject to proof.

14    WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth

15    in the prayer for relief, *infra*.

16
17
18
**SECOND CAUSE OF ACTION**
**(Violation of Federal Right To Equal Protection of the Laws**
**[42 U.S. Code § 1983; U.S. Constitution Amendments V and XIV] [Against**
**Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual Capacities])**

19    113.    Plaintiff incorporates herein by reference as though fully set forth at length the

20    allegations of paragraphs 1 through and including 112, above.

21    114.    Plaintiff alleges that each and every act alleged herein was performed by

22    Defendants not only as individuals, but under the color and pretenses of the statutes,

23    ordinances, regulations, customs and usages of the State of California, and the rules,

24    policies, and direction of the Berkeley Unified School District, having been clothed with

25    both actual and apparent authority by the BUSD governing board.

26    115.    As alleged in detail herein, the individual Defendants, and each of them, treated

27    Plaintiff, who is male, unequally based on his sex, with respect to requiring him to work

28    out of his job classification, granting of differential pay, responses to filing of workers'

compensation claims, granting of requests for vacation leave, quantity of work assigned, and responses to attempts to have his statutory rights honored.  Defendants' actions thereby impeded and hindered the course of justice with the intent to deny Plaintiff the equal protection of the laws.

116.    As a direct, foreseeable, and proximate result of  the individual Defendants' violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

117.    As a further direct, foreseeable, and proximate result of  the individual Defendants' violations of Plaintiff's right to equal protection of the laws, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

118.    Also as a direct and proximate result of the unlawful actions described above, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort all to his damage in an amount in excess of $400,000.00, the precise amount of which is subject to proof.

119.    Defendants' violations of Plaintiff's right to equal protection of the laws were, as alleged in this Complaint, part of a pattern and practice of sex discrimination in the

BUSD H.R. Department.  Plaintiff and three other male employees repeatedly complained about the pattern and practice of discrimination in the BUSD H.R. Department based on sex and Plaintiff and all three of those individuals were constructively discharged in retaliation for their attempts to vindicate their rights to equal treatment.  Defendants' actions were therefore willful, deliberate, and undertaken in reckless disregard of the rights of Plaintiff and similarly situated males.  Therefore, Defendants' actions, jointly and severally, entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, as set forth in the prayer for relief, *infra*.

### THIRD CAUSE OF ACTION
**(Deprivation Of Benefits and Privileges of Public Employment and Termination of Public Employment Without Due Process Of Law [42 U.S. Code § 1983; U.S. Constitution Amendments V and XIV] [Against Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual Capacities))**

120.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 119, above.

121.    Plaintiff alleges that each and every act alleged herein was performed by Defendants not only as individuals, but under the color and pretenses of the statutes, ordinances, regulations, customs and usages of the State of California, and the rules, policies, and direction of the Berkeley Unified School District, having been clothed with both actual and apparent authority by the BUSD governing board.

122.    Mr. Faurie was employed by BUSD under terms established by the Merit System Rules, California Education Code, Board Policies, oral representations, and consistently stellar performance evaluations, as alleged in this Complaint.  Under those terms, Mr. Faurie's employment was for an indefinite term not to expire as long as he successfully performed the duties of his position, subject to termination only for just cause, and only in conformity with BUSD written disciplinary policies and procedures, consistent with Constitutional Due Process requirements.

123.    Mr. Faurie was also entitled by the Merit System Rules to have his position reclassified to reflect the duties he consistently performed, which he alleges were at the level of a Senior Personnel Analyst or Assistant Director, Classified Personnel. Defendants, and each of them, prevented reclassification of Mr. Faurie's position by refusing to submit his position for reclassification and by falsely representing the time he spent working above his classification as de minimis when a classification study was belatedly undertaken.  As a direct and foreseeable result of Defendants' actions, Mr. Faurie was underpaid throughout the period of his employment with BUSD, according to proof.

124.    For each period when Defendants required Plaintiff to work above his job classification, Section 30.200.6 of the Merit System Rules gave Plaintiff a property interest in adjustment of his salary either upward 5% or at the salary range of the higher classification, whichever was greater, for the entire period he was required to work out of classification.  Defendants, and each of them, failed to pay Plaintiff the differential pay he was due under the Merit System Rules.  Defendants actions constituted deprivation of Plaintiff's property interest in his differential pay without Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution in that no procedure was employed to justify such denial and Plaintiff qualified for the differential pay under the terms of the Merit System Rules.

125.    As a public employee, by operation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, Mr. Faurie was entitled to have the granting of the benefits and privileges of employment, deprivation of such benefits and privileges of employment, and termination of his employment, to be administered consistent with due process of law, including at a minimum, written notice of the grounds for the deprivations; disclosure of the evidence supporting any disciplinary grounds; the right to present witnesses and to confront adverse witnesses; the right to be represented by counsel; a fair and impartial decisionmaker; and a written statement from the fact finder listing the evidence relied upon and the reasons for the determination made.   He

1    also was entitled to a full evidentiary hearing after the disciplinary action was imposed.

2    He was entitled to have his employment terminated only for a lawful reason and through

3    a lawful means, both of which he was denied through Defendants' actions.

4    126.    Mr. Faurie was ready, willing, and able to perform, and did perform, the terms of

5    his employment contract with Defendants competently and in a manner that exceeded the

6    expectations of his supervisors throughout his employment with BUSD through and

7    including the day he was constructively discharged as alleged herein.

8    127.    Defendants, and each of them, violated Mr. Faurie's right to due process by

9    requiring him to perform work above his professional classification without appropriate

10    differential pay despite his entitlement to, and repeated requests for, such fair pay;

11    constructively terminating his employment by subjecting him to a hostile work

12    environment in retaliation for his reporting of, and refusal to implement, violations of law

13    directed by BUSD administrative staff, which constituted an irrational and unlawful basis

14    for discipline or termination; constructively terminating his employment without utilizing

15    any administrative process, much less a fair, rationally based, impartial, and evenly

16    administered process; retaliating against him for attempting to vindicate statutory rights

17    to fair and equal treatment; and by contaminating the Merit System appeals procedures

18    by ignoring Constitutionally required separation of roles as advocate for the District and

19    advisor to the commission.

20    128.    Resort to the Merit System appeal procedure would have been futile because Brier

21    and Lawrence were the gatekeepers to such appeals and routinely engaged in improper

22    ex-parte communications with Merit Commission members.

23    129.    As a direct, foreseeable, and proximate result of the individual Defendants'

24    violation of Mr. Faurie's right to due process, Mr. Faurie has suffered, and continues to

25    suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses

26    incurred in securing new employment, including but not limited to loss of appropriate

27    differential pay from April 2003 through July 2006, proper job classification and

28    associated rate of pay from April 2003 through January 1, 2007, the value of his health

1    benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have

2    accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period

3    from July 17, 2006 to January 1, 2007, and front pay constituting the difference between

4    his current rate of pay and the pay he would receive as a Senior Administrative Analyst,

5    all to his damage in an amount in excess of $200,000.00, the precise amount of which is

6    subject to proof.

7    130.    As a further direct, foreseeable, and proximate result of the individual

8    Defendants' violations of Plaintiff's right to due process, Mr. Faurie has suffered

9    gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an

10    amount in excess of $100,000.00, the precise amount of which is subject to proof.

11    131.    Also as a direct and proximate result of the unlawful actions described above, Mr.

12    Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

13    including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

14    humiliation, fear, embarrassment, depression and discomfort all to his damage in an

15    amount in excess of $400,000.00, the precise amount of which is subject to proof.

16    132.    Defendants' violations of Plaintiff's right to due process were, as alleged in this

17    Complaint, part of a pattern and practice of retaliatory, discriminatory, and arbitrary

18    treatment of employees in the BUSD H.R. Department.  Defendants were repeatedly

19    advised by Plaintiff and other similarly situated employees that Defendants' actions

20    violated constituted violations of law and public policy and violated Plaintiff's and the

21    other individual's rights to fair treatment.  Defendants' actions were therefore willful,

22    deliberate, and undertaken in reckless disregard of the rights of Plaintiff and similarly

23    situated employees.  Therefore, Defendants' actions, jointly and severally, entitle Plaintiff

24    to an award of punitive damages.

25        WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

26    them, as set forth in the prayer for relief, *infra*.

27

28

**FOURTH CAUSE OF ACTION**

**(Unlawful Discrimination On the Basis Of Sex**

**[Gov. Code § 12900 et seq.] [Against BUSD])**

133.    Plaintiff incorporates herein by reference as though fully set forth at length the allegations of paragraphs 1 through and including 132, above.

134.    Mr. Faurie is a male.

135.    This claim is brought pursuant to the California Fair Employment and Housing Act, section 12940(a) of the Government Code, prohibiting termination of an employee from employment on the basis of the sex of any person, and the corresponding regulations of the California Department of Fair Employment and Housing.

136.    At all times mentioned herein, Mr. Faurie was fully qualified for the position of Administrative Coordinator – Confidential.  His performance evaluations were consistently and uninterruptedly very positive, indicating that his performance, in substance and quality, exceeded the duties of his position.

137.    BUSD and the individual Defendants conferred differential pay, granted vacation, and allocated work disparately according to sex, as detailed in the statement of facts, above.

138.    BUSD and the individual defendants also constructively discharged Mr. Faurie based on his sex, as part of a pattern and practice of subjecting male employees to a hostile and offensive work environment and disparately allocating employment benefits and privileges based on their sex, as detailed above.

139.    Mr. Faurie believes and alleges that his sex was a substantial and determining factor in BUSD's constructive termination of his employment.

140.    BUSD's and the individual Defendants' discrimination against Mr. Faurie based on his sex and constructive termination of Mr. Faurie's employment as alleged herein constitute unlawful employment practices in violation of section 12940(a) of the Government Code.

141.    BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie also breached the terms of Mr. Faurie's employment in that their actions were in violation of relevant Merit System rules, oral representations, and reasonable expectations based on positive performance evaluations.

142.    The unlawful discrimination against Mr. Faurie was continuing in nature and commenced when Mr. Faurie was hired in or about October 2002 and continued throughout Mr. Faurie's employment by BUSD.

143.    As a direct, foreseeable, and proximate result of BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

144.    As a further direct, foreseeable, and proximate result of BUSD's and the individual Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

145.    Also as a direct and proximate result of Defendants' unlawful discrimination against Mr. Faurie on the basis of sex, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and

1    discomfort all to his damage in an amount in excess of $400,000.00, the precise amount

2    of which is subject to proof.

3          WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth

4    in the prayer for relief, *infra*.

5    **FIFTH CAUSE OF ACTION**

6    **(Unlawful Harassment On the Basis Of Sex/Gender [Gov. Code § 12900(j)] [Against**

7    **BUSD and against Lawrence, Udell, Obieta, Dodson, and Brier, in their Individual**

8    **Capacities])**

9    146.    Plaintiff incorporates herein by reference as though fully set forth at length the

10   allegations of paragraphs 1 through and including 145, above.

11   147.    The individual Defendants, and each of them, as detailed throughout this

12   Complaint, subjected Plaintiff to a hostile and offensive work environment because of his

13   sex/gender (male) by treating him with open hostility, rebuking him in front of other

14   employees, trivializing his requests for equal treatment, and insulting him, while

15   refraining from subjecting similarly situated female employees to such hostile and

16   offensive working conditions.

17   148.    Defendants imposition of hostile and offensive working conditions on Plaintiff

18   because of his sex/gender (male) fell outside their legitimate official functions, but

19   occurred within the actual or constructive knowledge of Defendant Lawrence.

20   149.    Defendants' imposition of hostile and offensive working conditions on Plaintiff

21   because of his sex/gender (male) was part of a pattern and practice of creating such an

22   unlawful, hostile working environment to which three other, similarly situated men were

23   subjected during Mr. Faurie's tenure, resulting in the constructive discharge of each and

24   all of them.

25   150.    The hostile and offensive environment to which Defendants subjected Plaintiff

26   was so severe and pervasive that any reasonable person in his position would be injured

27   by it and would find it intolerable.

28

151.    Each Defendant was aware of, or should have been aware of, the unlawful actions of the other and should have taken corrective action to remediate the unlawful harassment, but did not.  Lawrence was aware of, or should have been aware of, the unlawful harassment because of sex, and took no action to correct it.

152.    Defendants' unlawful harassment of Mr. Faurie was continuing in nature and commenced when Mr. Faurie was hired in or about October 2002 and continued throughout Mr. Faurie's employment by BUSD.

153.    As a direct, foreseeable, and proximate result of  Defendants' unlawful harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss of fringe benefits, as well as expenses incurred in securing new employment, including but not limited to loss of appropriate differential pay from April 2003 through July 2006, proper job classification and associated rate of pay from April 2003 through January 1, 2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of 13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS contributions for the period from July 17, 2006 to January 1, 2007, and front pay constituting the difference between his current rate of pay and the pay he would receive as a Senior Administrative Analyst, all to his damage in an amount in excess of $200,000.00, the precise amount of which is subject to proof.

154.    As a further direct, foreseeable, and proximate result of Defendants' unlawful harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting, and exhaustion all to his damage in an amount in excess of $100,000.00, the precise amount of which is subject to proof.

155.    Also as a direct and proximate result of Defendants' unlawful harassment of Mr. Faurie on the basis of sex/gender, Mr. Faurie has suffered, and continues to suffer, from severe mental and emotional distress, including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety, humiliation, fear, embarrassment, depression and discomfort

1   all to his damage in an amount in excess of $400,000.00, the precise amount of which is

2   subject to proof.

3   156.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each

4   of them, were part of a pattern and practice of creating a hostile and offensive

5   environment based on sex that disadvantaged men in the BUSD H.R. Department.

6   Defendants were repeatedly advised of the unlawful conditions and rebuked Plaintiff's

7   attempts to secure correction of the unlawful treatment with further hostility, ridicule, and

8   threats of discipline.  Defendants' actions, therefore, were carried out in a deliberate,

9   malicious, willful, and oppressive manner in order to injure and damage Mr. Faurie,

10   entitling him to an award of punitive damages.

11   WHEREFORE, Plaintiff demands judgment against the Defendants, and each of

12   them, as set forth in the prayer for relief, *infra*.

### SIXTH CAUSE OF ACTION

**(Unlawful Retaliation For Opposing Violation of Rights Protected By the FEHA [Gov. Code § 12900(h)] [Against BUSD])**

157.    Plaintiff incorporates herein by reference as though fully set forth at length the

allegations of paragraphs 1 through and including 156, above.

158.    The individual Defendants, as detailed in this Complaint, subjected Plaintiff and

similarly situated males to threats of discipline, admonishments to be silent, hostility, and

ultimately, constructive discharge, in retaliation for Plaintiff's and similarly situated

males' attempts to oppose discrimination on the basis of sex in the BUSD H.R.

Department.

159.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA fell

outside their legitimate official functions, but occurred within the actual or constructive

knowledge of Defendant Lawrence and was therefore foreseeable and constituted

implementation of BUSD policy and practice under her control and direction.

160.    Defendants' retaliation against Plaintiff for opposing violations of the FEHA was

part of a pattern and practice of such an unlawful retaliation to which three other,

1  similarly situated men were subjected during Mr. Faurie's tenure, resulting in the

2  constructive discharge of each and all of them.

3  161.    Each Defendant was aware of, or should have been aware of, the unlawful actions

4  of the other and should have taken corrective action to remediate the unlawful retaliation,

5  but did not.  Lawrence specifically was aware of, or should have been aware of, the

6  unlawful retaliation, but took no action to correct it.

7  162.    Defendants' unlawful retaliation against Mr. Faurie was continuing in nature and

8  commenced when Mr. Faurie was hired in or about October 2002 and continued

9  throughout Mr. Faurie's employment by BUSD.

10  163.    As a direct, foreseeable, and proximate result of  Defendants' unlawful retaliation

11  against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department,

12  Mr. Faurie has suffered, and continues to suffer, lost income, loss of reputation, and loss

13  of fringe benefits, as well as expenses incurred in securing new employment, including

14  but not limited to loss of appropriate differential pay from April 2003 through July 2006,

15  proper job classification and associated rate of pay from April 2003 through January 1,

16  2007, the value of his health benefits from July 17, 2006 to January 1, 2007, vacation of

17  13.5 days he would have accrued from July 16, 2006 to January 1, 2007, CalPERS

18  contributions for the period from July 17, 2006 to January 1, 2007, and front pay

19  constituting the difference between his current rate of pay and the pay he would receive

20  as a Senior Administrative Analyst, all to his damage in an amount in excess of

21  $200,000.00, the precise amount of which is subject to proof.

22  164.    As a further direct, foreseeable, and proximate result of Defendants' unlawful

23  retaliation against Mr. Faurie for opposing violations of the FEHA in the BUSD H.R.

24  Department, Mr. Faurie has suffered gastrointestinal disturbances, headaches, vomiting,

25  and exhaustion all to his damage in an amount in excess of $100,000.00, the precise

26  amount of which is subject to proof.

27  165.    Also as a direct and proximate result of Defendants' unlawful retaliation against

28  Mr. Faurie for opposing violations of the FEHA in the BUSD H.R. Department, Mr.

1    Faurie has suffered, and continues to suffer, from severe mental and emotional distress,

2    including panic attacks, sleep disturbances, anxiety attacks, persistent anxiety,

3    humiliation, fear, embarrassment, depression and discomfort all to his damage in an

4    amount in excess of $400,000.00, the precise amount of which is subject to proof.

5    166.    The actions of Defendants Lawrence, Udell, Obieta, Dodson, and Brier, and each

6    of them, were part of a pattern and practice of retaliating against Mr. Faurie and similarly

7    situated employees for opposing violations of the FEHA in the BUSD H.R. Department.

8    Defendants were repeatedly advised of the unlawful conduct, but they rebuked attempts

9    to secure correction of the unlawful treatment with further hostility, public ridicule, and

10   threats of discipline.

11          WHEREFORE, Plaintiff demands judgment against Defendant BUSD, as set forth

12   in the prayer for relief, *infra*.

### SEVENTH CAUSE OF ACTION

#### (Intentional Infliction of Emotional Distress)

15   167.    Plaintiff incorporates herein by reference as though fully set forth at length the

16   allegations of paragraphs 1 through and including 166, above.

17   168.    The actions of BUSD and the individual defendants alleged herein were extreme

18   and outrageous, and were inflicted with intent to cause, or with reckless disregard of the

19   probability of causing, emotional distress.

20   169.    As a direct, foreseeable, and proximate result of BUSD's and individual

21   defendants' unlawful conduct, Mr. Faurie has suffered extreme and severe anguish,

22   humiliation, emotional distress, nervousness, tension, anxiety and depression.

23   170.    The emotional distress intentionally caused was not a normal risk or incident of

24   employment because it was incident to Mr. Faurie's wrongful termination in violation of

25   Labor Code §1102.5; discrimination against, and harassment of, Mr. Faurie based on his

26   sex/gender, as alleged above; retaliation against Mr. Faurie for opposing violations of the

27   FEHA in the BUSD H.R. Department; and violations of Mr. Faurie's federal

28   Constitutional rights to equal protection of the laws and due process of law.  Thus, Mr.

Faurie's claim for intentional infliction of emotional distress is not preempted by the exclusive remedial scheme for work-related injuries under the Workers Compensation Act.  (See *Cabusuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, as modified.)

171.     The extent of the injuries directly and proximately resulting from BUSD's and the individual defendants' intentional infliction of emotional distress is not fully known at this time, and the amount of damages is not yet fully ascertained but in an amount in excess of $400,000.00, the precise amount of which is subject to proof.  Mr. Faurie claims this amount together with prejudgment interest pursuant to Civil Code section 3287 and pursuant to any other provision of law providing for prejudgment interest.

        WHEREFORE, Plaintiff demands judgment against the Defendants, as follows:

        Against all Defendants:

        1.   For compensatory damages, including lost wages and benefits, loss of reputation, and damages for physical and emotional injuries, in excess of $700,000.00 and according to proof;

        2.   For prejudgment interest on all amounts claimed;

        3.   For attorneys' fees and costs of suit;

        4.   For such other relief as the court deems just and proper.

        Against Defendants Lawrence, Udell, Obieta, Dodson, and Brier:

        5.   For punitive damages.

Dated this 29th day of April, 2008

                                    By:   /S/ ERIC BORGERSON
                                          Eric Borgerson, SBN 177943
                                          Law Office Of Eric Borgerson
                                          2625 School Street
                                          Oakland, CA 94602
                                          (510) 866-3738
                                          Attorney for Plaintiff

# Exhibit A

# MERIT SYSTEM

# RULES AND REGULATIONS

# FOR

# CLASSIFIED EMPLOYEES

## ADOPTED BY THE

## PERSONNEL COMMISSION

## OF THE

## BERKELEY UNIFIED SCHOOL DISTRICT

2134 Martin Luther King Jr. Way
Berkeley, California  94704
(510-644-6150

*Revised and Approved:  October 4, 1972*

*Adopted Pursuant to Section 45261, Education Code*

*State of California*

*Reprinted 10/87; 3/89*

## GENERAL INDEX

**Chapter 10 – Definitions and Preliminary Statement**

**Chapter 20 – The Personnel Commission**

**Chapter 30 – Position Classified Plan**

**Chapter 40 – Application and Examination**

**Chapter 50 – Employment Lists**

**Chapter 60 – Inservice Status and Transactions**

**Chapter 70 – Wage and Salary Provisions**

**Chapter 80 – Miscellaneous Provisions**

## CHAPTER 10:  DEFINITIONS AND PRELIMINARY STATEMENT

10.100        Definitions, General

10.200        Preliminary Statement

10.200.1    Statutory Authority for These Rules
10.200.2    Interpretation and Application of Rules
10.200.3    Judicial Review

## <u>DEFINITIONS AND PRELIMINARY STATEMENTS</u>

## 10.100          <u>DEFINITIONS, GENERAL</u>

Unless otherwise required by context and/or prevailing law, words used in these rules are understood to have the following meanings:

ACT or THE ACT:  The Act shall mean those sections of the Educational Code of the State of California applying the merit system to classified employees in certain school districts.  It shall include all of the provisions of Article 5, Chapter 3, Division 10, and applicable Provisions of Chapter 1 and Articles 1 to 4, Chapter 3, Division 10.

ALLOCATION:  The official placing of a position in a given class.  (Note:  Some districts use this term to describe placement of a class on the salary schedule.)

ANNIVERSARY DATE:  Anniversary date shall be the first day of the pay period following an employee's appointment to a full time or part time regular continuous position in the classified service that has been authorized by the Personnel Commission.

APPLICANT:   A person who has filed an application to take a merit system examination.

APPOINTMENT AUTHORITY or POWER:  The Board of education of the Berkeley Unified School District.

APPOINTMENT:  The official act of the appointment authority in approving the employment of a person.

CANDIDATE:  A person who has competed in one or more portions of the merit system examination.

CERTIFIED SERVICE:  All positions and employees required by law to possess credentials issued by the State Department of Education.

CERTIFICATION:  The submission by the Commission of the names of eligibles from an appropriate eligibility list or from some other source of eligibility to the appointment power or to the department which selects employees prior to approval of the appointing power.

CLASS:  A group of positions sufficiently similar in duties and responsibilities that the same descriptive title may be used to designate each position allocated to the class; substantially the same requirements of education, experience, knowledge, and ability are demanded of incumbents; substantially the same tests of fitness may be used to choosing qualified appointees; and the same salary range may be applied with equity.

CLASS SPECIFICATION:  A formal statement of the duties and responsibilities of the positions in the class, illustration by examples of typical tasks, and of the qualification requirements of the positions in the class.

CLASSIFIED SERVICE:  All positions in the District's service to which The Act applies and which are not excerpted by the Act.  See Rule 30.100.

COMMISSION:  The Personnel Commission established pursuant to the Act for the Berkeley Unified School District.

DEMOTION:  A change in assignment of an employee from a position in one class to a position in another class that is allocated to a salary range with a lower maximum rate.

DISCHARGE or DISMISSAL:  Separation from service for cause.

DISTRICT:  The Berkeley Unified School District.

DUAL CERTIFICATION:  A special procedure which provides for certification, in specified cases, from an open list while a promotional list exists.  See Rule 50.200.2.

ELIGIBLE:  Adjective:  Legally qualified to be appointed.  Noun:  A person whose name appears on an eligibility list.

ELIGIBILITY LIST:  A list of the name of persons who have qualified in a competitive examination.

EMERGENCY APPOINTMENT:    An appointment for a period not to exceed 15 working days to prevent the stoppage of public business when persons on eligibility lists are not immediately available.

EMPLOYEE:  A person who is legally an incumbent of a position or who is on authorized leave of absence.

EMPLOYEE LIST:  A list of names from which certification may be made.  Includes eligibility lists, reemployment lists, and lists of persons who wish to transfer, demote, be reinstated or reemployed after resignation, or be restored after voluntary demotion or reduction to limited-term status.

EXAMINATION:  The process of testing and evaluating the fitness and qualifications of applicants.

GOVERNING BOARD:  The Board of Education of the Berkeley Unified School District. (Synonymous with appointing authority or power.)

GROUP:  A number of classes related in duties and responsibilities, as set forth in the list of classes promulgated by the Personnel Commission.

INCREMENT DATE:  The salary increment date for new employees shall be January 1 or July 1, whichever comes first after the satisfactory completion of six months probationary period and annually thereafter.

LAYOFF:  Separation from a permanent position because of lack of work or lack of funds, or because the position has been abolished or reclassified, or because an employee has exhausted all leave privilege after illness or injury.

LEAVE OF ABSENCE:   A leave of absence is an approved absence of an employee with the right to return to a position in the same classification at the expiration of the authorized leave.

LIMITED TERM:  A term used in the Education Code to designate employment for periods not to exceed six months or employment of a temporary employee during the authorized absence of a permanent employee.  (Synonymous with "temporary.")

LIMITED-TERM EMPLOYEE:  An employee who is serving as a substitute for an absent employee or in a position established for a period of six months or less.  The employee may have been selected from an eligibility list or may be serving under a provisional appointment.

PART-TIME POSITION:  A position for which the assigned time, when computed on an hourly, daily, weekly or monthly basis, is less than 87½ percent of the normally assigned time of the majority of employees in the classified service.  (EC 45256)

PERMANENT EMPLOYEE:  In reference to District employment status, an employee who has completed a probationary period in a class in the classified service.  In reference to employment status in a specific class, an employee who has completed a probationary period for that class, or who entered the class by transfer, demotion, or reinstatement/reemployment without serving a probationary period.

PERMANENT POSITION:  A position established for a continuing and indefinite or unlimited period of time or for a fixed period in excess of six months.

POSITION:  A group of duties and responsibilities assigned by competent authority requiring the full- or part-time employment of one person on a permanent or limited-term basis.  A position can only be established by action of the Board of Education.

PROBATIONARY PERIOD:  The trial period, as established by the Personnel Commission pursuant to Education Code Section 45301, immediately following an original or promotional appointment to a permanent position from an eligibility list.

PROMOTION:  A change in the assignment of an employee from a position in cone class to a position in another class with a higher maximum salary rate.

PROMOTION LIST:  An eligibility list resulting from a promotional examination limited to qualified employees of the District.

PROVISIONAL APPOINTMENT:  A temporary appointment made in the absence of an appropriate eligibility list, not to exceed 90 working days except in specified circumstances.  (See Education Code Sections 45287 and 45289.)

PROVISIONAL EMPLOYEE:  A person employed under a provisional appointment.

REEMPLOYMENT:  Re appointment to duty of an employee who has been laid off.

REEMPLOYMENT LIST:  A list of names of persons who have been laid off from permanent positions by reason of lack of work, lack of funds, or abolishment or reclassification of position, or other reason specified in these rules, and who are eligible to reemployment without examination in their former class, arranged in order of their right to reemployment.

REGULAR EMPLOYEE:  An employee who has probationary or permanent status.

REINSTATEMENT:  A reappointment, after resignation, in regular or limited-term status, without examination, to a position in the employee's former class, or in a lower related class.

RESTORATION:  Includes "reemployment" (see above).  Also, the reassignment to duty of an employee to the same class and status that he held when he resigned.  Also, the reassignment of an employee who had demoted to his former class or to a related class or, after reduction to a limited-term status, to permanent status.

SALARY SCHEDULE:  The complete list of ranges, steps, and rates established for the classified service.

SALARY STEP:  A specific location in a salary range, not the dollar amount.  (Note:  The salary range applicable to a class may change without affecting the step placement rights of employees.)

SALARY RANGE:  A series of consecutive salary steps that comprise the rates of pay for a classification.  A salary range normally consists of five salary steps.

SALARY RATE:  A specific amount of money paid for a specified period of service; i.e., dollars per hour or month.

SEPARATION:  Leaving a position; includes resignation, dismissal, layoff, retirement, etc.

SERIES:  A number of classes closely related in occupational hierarchy and arranged in a list in order to indicate occupational levels in a group.

STATUS:  Tenure which is acquired in a classification by reason of examination, certification from eligibility lists, election or appointment by the appointing power, and the successful completion of the probationary period.

SUBSTITUTE EMPLOYEE:  An employee occupying a permanent position during the absence of the incumbent.

SUSPENSION:  An enforced absence of an employee without pay for disciplinary purposes or pending investigation of charges made against an employee.

TEMPORARY:  Employment on a basis other than permanent or probationary; i.e., in limited-term or provisional status.

TRANSFER:  The reassignment of an employee without examination from one position to another position in the same class or to a position in a similar or related class with the same salary range.

UNCLASSIFIED SERVICE:  All positions and employees not in the classified or certificated service; i.e., those exempted by law.  See Rule 30.100.

WAIVER:  The voluntary relinquishment by an eligible of any right to consideration for appointment from an eligibility list.

**10.200**        **PRELIMINARY STATEMENT**

10.200.1        Statutory Authority for These Rules

The rules contained herein are established pursuant to the authority of Personnel Commission under Education Code Sections 45260, 45261, and other provisions governing the Merit System Act in the Education Code. (Note: It is recognized that certain of these rules venture into substantive matters within the prerogative of the Governing Board.  For that reason, the initially adopted set of rules and regulations were submitted to the Governing Board for its approval.)

It shall be the policy of the Commission to submit all new rules or amendments or deletion of existing rules to the Governing Board when:

A.  The rule obviously requires Board approval, and

B.  It is difficult to define the division of Commission and Board authority re the rule in question.  In such cases, the rule in question shall not become effective until it has been approved by the Governing Board.

C.  The rules shall be binding upon the Governing Board, Administrators and Supervisors.

10.200.2        Interpretation and Application of Rules

The Commission recognizes that no set of rules can contemplate all possible combinations of circumstances affecting particular cases.  These rules are to be allied with consideration of their intent; however, specific, applicable provisions of the rules shall not be waived, ignored, or superseded because of the special circumstances of particular cases.  The Commission is open to responsible suggestions to amend the rules with prospective application; however, no rule amendment or new rule shall have retroactive applicability.

10.200.3        Judicial Review

If judicial review or change in law invalidates any portion of these rules, such finding or amendment shall not affect the validity of other rules or provisions.

## <u>CHAPTER 20:  THE PERSONNEL COMMISSION</u>

**<u>20.100</u>**          **<u>Organization of Commission</u>**

20.100.1     Terms
20.100.2     Officers
20.100.3     Quorum and Majority


**<u>20.200</u>**          **<u>Meetings</u>**

20.200.1     Regular Meetings
20.200.2     Adjourned Regular Meetings
20.200.3     Special Meetings
20.200.4     Public Meetings
20.200.5     Executive Sessions
20.200.6     Minutes
20.200.7     Payment for Meeting Attendance


**<u>20.300</u>**          **<u>Commission Employees</u>**

20.300.1     Status of Commission Employees
20.300.2     General Duties of the Personnel Director


**<u>20.400</u>**          **<u>Miscellaneous Provisions</u>**

20.400.1     Communications
20.400.2     Budget
20.400.3     Annual Report
20.400.4     Counsel for the Commission
20.400.5     Investigation

## 20.100        ORGANIZATION OF COMMISSION  (EC 45243)

20.100.1      Terms

By law, the term of each Commissioner is for three years and expires at noon, December 1.  The term of one Commissioner expires each year.  On or about September 1 of each year, the Personnel Director shall notify the Government Board of the name and home address of the Commissioner whose term will expire and whether or not he/she will accept reappointment.  The notification shall also list the appointing authority and indicate that the Board must follow the provisions of Education Code Section 45248.

20.100.2      Officers

At its first meeting following December 1 of each year, the Commission shall elect one of its members as Chairperson and another member as Vice Chairperson, to serve a term of one year or until their successors are duly elected.

20.100.3      Procedure

Roberts' Rules of Order shall be the guiding authority for business at all Commission meetings, with such exceptions as are specifically stated in these rules.

A. Two (2) members shall constitute a quorum for any regular or special meeting of the Commission, and the affirmative vote of two (2) members shall be required to make any motion of the Commission effective.  The Chairperson may present motions and vote the same as any other member.

B. A motion made by a member at any Commission meeting shall not require a second in order to be placed in consideration before the Commission and enrolled in the minutes.

20.100.4      Qualification for Membership  (EC 45244)

Qualifications for membership on the Commission shall be the same as for members of the Board of Education.  No member of the Board of Education shall be a member of the Commission nor shall any Commissioner during his/her service on the Commission be employed by the Board of Education in any other capacity.  Appointees shall be known adherents to the principle of the Merit System.

**20.200          MEETINGS**

20.200.1          Regular Meetings

Subject to cancellation or proper change, the Commission shall meet on the 3rd Thursday of each month at 7 p.m. in the Ground Floor Lunchroom at 2134 Martin Luther King Jr. Way.  When the regular meeting date falls on a holiday, the Commission shall designate some other day for its meeting.  In cases of emergency, the Commission may meet at some other time and/or place, provided that at least 24 hours' notice is given to all Commissioners and to employee organizations and administration representatives and posted on the Commission's official bulletin board.

20.200.2          Adjourned Regular Meetings

The Commission may adjourn any regular or adjourned meeting to a time and place specified in the order of adjournment.  When so adjourned, the adjourned meeting is a regular meeting for all purposes.

20.200.3          Special Meetings

Special meetings may be called at any time by the Chairperson and shall be called upon the request of any two members.

20.200.4          Public Meetings

All regular and special meetings of the Commission shall be open and public, and all persons shall be permitted to attend any meetings of the Commission, except as provided in Rule 20.200.5.  This rule shall not be construed as permitting employees to be absent from duty to attend Commission meetings.

20.2005          Executive Sessions

A.  The Commission may hold executive sessions to consider the employment or dismissal of any employee or to hear complaints or charges brought against such employee, unless such employee requests a public hearing.  The Commission shall not, where practicable, consider any matter in executive session relating to an employee unless the employee has been notified of his/her right to a public hearing and has declined the public hearing or properly failed to request same.

B.  The Commission may hold executive sessions with its designated representatives prior to and during consultations and discussions with representatives of employee organizations regarding salaries, salary schedules, or compensation paid in the form of fringe benefits in order to review its position and instruct its designated representatives.

20.200.6          Minutes

The Personnel Director shall record in the minutes, the time and place of each meeting, the names of the Commissioners present, all official acts of the Commission, and the votes of the Commissioners.  When requested, a Commissioner's dissent or approval and reasons shall be

recorded.  The minutes shall be written and presented for correction and approval at the next regular meeting.  The minutes or a true copy thereof shall be open to public inspection.  Copies of the official minutes shall be distributed to recognized employee organizations.

20.200.7     <u>Payment for Meeting Attendance</u>  (EC 45250)

Each Commissioner shall receive the sum of $15 for each meeting attended in any one month, including regular, adjourned or special meetings, but not to exceed a total of $75 per month.

**20.300**        **COMMISSION EMPLOYEES**

20.300.1    Status of Commission Employees  (EC 45264)

The Personnel Director and other persons required to carry out responsibilities of the Commission shall be appointed by and responsible to the Personnel Commission.  However, they shall be considered part of the classified service, and the rules, procedures, benefits, and burdens pertinent to the classified service shall apply to Commission employees, except at the Commission may specifically direct.

20.300.2    General Duties of the Personnel Director (EC 45266)

A.  The Personnel Director shall perform all of the duties and carry out all of the functions imposed upon him/her by law and these rules.  Shall act as secretary to the Commission and shall issue and receive all notifications on its behalf.  Shall direct and supervise the employees of the Commission and conduct administrative transactions consistent with the law and rules necessary to the proper functioning of the office and staff of the Commission.

B.  The Personnel Director shall conduct classification salary, and rules studies and shall make such other investigations as directed by the Commission or as deemed necessary to the Personnel Director's responsibilities.  Personnel Director may be designated as a hearing officer in accordance with Education Code Section 45312.

C.  In cases where two or more rules appear to be in conflict, or when no rule provides a clear-cut answer to a problem, the matter shall be decided by the Personnel Director, subject to appeal to the Commission.

**20.400        MISCELLANEOUS PROVISIONS**

20.400.1        Communications

      A.        Communications and requests shall, insofar as practicable, be in writing. Communications and requests shall be acknowledged and replied to, noting official Commission action when appropriate.

      B.        Individuals or groups who wish to present proposals for action by the Commission shall be encouraged to present them to the Personnel Director for placement on the Commission agenda. It is against the policy of the Commission to take up proposals except at opening meetings, although the Commission may designate one of its members to investigate a specific subject.

20.400.2        Budget (EC 45253)

      A.        The Personnel Director shall prepare and submit to the Commission a proposed operating budget for the Commission for the next ensuing fiscal year. The budget shall be submitted not later than the first Commission meeting in April.

      B.        The Commission shall hold a public hearing on its proposed budget not later than May 30. At the time the Commission schedules the public hearing, as required in Education Code Section 45253, it shall direct the Personnel Director to forward a copy of the proposed budget to the Board of Education and notify the Board of the time, date and place of the public hearing. Board and administration representatives shall be invited to attend the public hearing and present their views on the proposed budget.

Prior to adoption of its budget the Commission will hear and fully consider all comments and suggestions that may be offered by district administration, the Board, or other concerned persons or organizations. Efforts shall be made to resolve any differences that may exist between the Commission and Board.

      C.        When approved by the Commission the budget shall then be submitted to the County Superintendent of Schools in accordance with Education Code Section 45253.

      D.        The Commission may include in its budget, with respect to staff of the Commission, funds for their orientation, training, retraining, and development and for any purpose prescribed by Article 4.5, Section 45380 of Education Code (EC 45255).

**20.400.3**       **Annual Report** **(EC 45266)**

    A.    The Personnel Director shall prepare, as required by Education Code Section 45266, an annual report of Commission activities. When approved by the Commission, the annual report shall be submitted to the Board of Education.

    B.    The report shall be prepared for Commission approval as soon after each fiscal year as possible and no later than a meeting in November. The report shall cover Commission activities for the preceding fiscal year. 20.400.4

**20.400.4**       **Counsel for the Commission** **(EC 45313)**

The counsel of the Board of Education shall aid and represent the Commission in all legal matters, and if he/she refuses, the Commission may employ its own attorney, and the reasonable cost thereof shall constitute a legal charge against the general funds of the District.

**20.400.5**       **Investigation** **(EC 45311)**

The Commission may conduct hearings, subpoena witnesses, require the production of records or information pertinent to investigation, and may administer oaths. It may, at will, inspect any records of the Board of Education that may be necessary to satisfy itself that the procedures prescribed by the Commission have been complied with. Hearings may be held by the Commission on any subject to which its authority may extend.

# CHAPTER 30:  POSITION CLASSIFICATION PLAN

**30.100**          **The Classified Service**

30.100.1          **Positions Included**
30.100.2          **Exemption from the Classified Service**
30.100.3          **Effect of Exemption**
30.100.4          **Professional Expert Assignments**
10.100.5          **Restricted Positions and Employees**


**30.200**          **General Classification Rules**

30.200.1          **Assignment of Duties**
30.200.2          **General Nature of the Classification Plan**
30.200.3          **Class Specifications**
30.200.4          **Allocation of Positions to Classes**
30.200.5          **Changes in Duties of Positions**
30.200.6          **Working out of Classification**
30.200.7          **Creation of New Positions**
30.200.8          **Positions Requiring Multiple Languages**
30.200.9          **Mandatory Titles**


**30.300**          **Reclassification**

30.300.1          **Review of Positions**
30.300.2          **Requests for Study**
30.300.3          **Effective Date of Reclassification**
30.300.4          **Effects on Incumbents**
30.300.5          **Reclassification Appeal Procedure**

## 30.100    THE CLASSIFIED SERVICE

### 30.100.1    Positions Included (EC 45100)

A.    All positions established by the Governing Board which are not exempt from the classified service by law shall be a part of the classified service. All employees serving in classified positions shall be classified employees. The employees and positions shall be known as the classified service.

B.    No person whose contribution consists solely in the rendition of individual personal services and whose employment does not come within the scope of the exemptions established in the law shall be employed outside the classified service.

### 30.100.2    Exemption from the Classified Service (EC 45256)

**A.    Generally**

Positions required by law to have certification qualifications, part-time playground positions, full-time day students employed part-time apprentices, and professional experts employed on a temporary basis for a specific project by the Governing Board or by the Commission when so designated by the Commission, shall be exempt from the classified service.

**B.    Special Categories (EC 45112)**

Board assistants: The Governing Board may create positions of staff assistants or field representatives to directly assist the Board or individual Board members. Such positions, if created, are exempted from the provisions of these rules insofar as they relate to position classification, recruitment, employment, and salary setting.

Persons employed in such positions shall be members of the classified service for all purposes except that they may not achieve permanency in the classified service as a result of this service. Staff assistants shall serve at the pleasure of the Board. A field representative shall serve at the pleasure of the individual Board member.

If a permanent classified employee is appointed to serve in such an exempt position, he/she shall retain status as a permanent employee. If he/she is terminated from the exempt position, he/she shall have bumping rights in his/her former class in the same manner as if he/she had been laid off for lack of work or lack of funds.

**30.100.3**   **Effect of Exemption**

Any position or employee lawfully exempted from the classified service shall be excluded from the benefits and burdens imposed by these rules, except as provided by law or the Board of Education.

**30.100.4**   **Professional Expert Assignments**

A.   A professional expert is a a District employee hired on a temporary basis pursuant to Education Code 45256(b)(6) for a specific project in an occupation that is not presently or anticipated will become a part of the District's classified or certificated occupational plans.

B.   When a professional expert assignment is to be made, the administration shall submit to the Personnel Director a description of the project, its duration, and the duties to be performed.

C.   Whenever feasible, professional expert positions shall be advertised so that existing certificated and classified employees and the potential applicant pool in the general public will have opportunities to know about the position and apply if they so desire.

D.   Professional expert assignments shall not be made to avoid payment of overtime to the assignment employee,, nor shall a limited-term position be filled as a professional expert assignment if the duties and responsibilities fit an existing class for which a reemployment or eligibility list exists.

   1)   Professional experts shall not displace existing certificated or classified positions in the same occupation. It is recognized that there may be incidental overlapping duties on a short time, part-time emergency basis.

   2)   Professional experts who work in instructional programs during the regular school day shall work under the immediate supervision of a certificated staff member.

E.   When the person is known who is to be appointed as a professional expert, his/her name and data relative to his/her qualifications must be submitted to the Personnel Director. Evidence of professional qualifications must be presented to the Commission at the time the written request for appointment is made. Authorization for service as a professional expert shall not exceed the specific time approved by the Commission. It is not the intent of the Commission to approve retroactive appointments. (Adopted May 19, 1988)

**30.100.5**    <u>**Restricted Positions and Employees**</u>  **(EC 45108)**

A.    If positions properly a part of the classified service are specially funded and, as a result of the special funding provisions, employment is restricted to persons in low income groups, from designated impoverished areas, or other criteria which precludes employment through the normal competitive process, the positions shall, in addition to the assigned title, be designated as "Restricted."

B.    Persons employed in "Restricted" positions shall be classified for all purposes except: (1) they may not attain permanent status, (2) they shall not be accorded seniority rights, (3) they may not be given provisional appointments concurrent with status in a restricted position, and (4) they are not eligible to compete in promotional examinations in the regular classified service.

C.    Notwithstanding Sub-Rule B above, employees serving in "Restricted"} positions may, after completion of six months of satisfactory service,: take the next competitive examination that is given for the class in which they are serving. If an employee successfully completes the examination and attains placement on the eligibility list, as a result thereof, and regardless of his/her numerical standing on the eligibility list, he/she shall be considered a part of the regular classified service even though he/she may continue to serve in a restricted position, and be accorded full rights, benefits, and burdens of the regular classified employee. Seniority rights shall be counted as of the date of his/her initial appointment to the restricted position.

**30.200**          **General Classification Rules**

30.200.1          Assignment of Duties  (EC 45109)

The Board of Education shall prescribe the duties and responsibilities of all positions in the classified service except those on the Personnel Commission staff. When the duties being performed by an employee are found to be inconsistent with the duties officially assigned to his/her position, the Personnel Director shall report the facts to the responsible administrator in order that appropriate action may be taken (See Rule 30.200.6)

30.200.2          General Nature of the Classification Plan

The Personnel Commission shall establish and maintain a plan of classification for all positions in the classified service. Classes will be placed in groups according to general occupational nature and, within groups, shall be listed in series by specific occupation. The list of classes shall contain designation of the salary rate or range applicable to each class.

30.200.3          Class Specifications

For each class of positions, as initially established or subsequently approved by the Commission, there shall be established and maintained a class specification, which shall include:

A.          The official class title;

B.          A definition of the class, indicating the type of duties and responsibilities and placement within the organizational scheme.

C.          A statement of typical tasks to be performed by persons holding positions allocated to the class;

D.          A statement of the minimum qualifications for service in the class. The minimum qualifications may include education, experience, knowledge, skills, abilities, and personal and physical traits and characteristics;

E.          License or other special requirements for employment or service in the class.

F.          Minimum qualifications may never require a teaching, administrative or other credential, nor may they require work experience which essentially would restrict applicants to credential holders. Titles may not be assigned that would restrict competition to holders of credentials.

30.200.4    Allocation of Positions to Classes

All positions substantially similar as to the duties performed and the responsibilities exercised by the incumbents of such positions and as to their qualification requirements shall be allocated to the same class.

30.200.5    Changes in Duties of Positions

Any substantial changes in the duties of existing positions shall be promptly reported in writing by the appointing authority to the Personnel Director, who shall cause them to be reviewed toward determining whether the positions should be allocated to different classes.

30.200.6    Working Out of Classification (EC 45276)

A.    An employee is not expected to be required to work out of classification, but when he/she is required to do so the fact shall be reported to the Personnel Director, who shall immediately investigate and report to the Personnel Commission. After review, the Commission shall take such action as necessary based upon the facts. This rule shall not be construed as permitting an employee to refuse to perform duties legally assigned by competent authority.

B.    An employee may be required to perform duties inconsistent with those assigned to the position by the governing board provided that his/her salary is adjusted upward to 5% or at the salary range of the higher' classification, whichever is greater, for the entire period he/she is required to work out of classification. (Revised April 3, 1974)

30.200.7    Creation of New Positions  (EC 45276)

When the Board creates a new position, it shall submit to the Personnel Director, in writing, the duties officially assigned to the position. The Board may recommend minimum educational and work experience requirements for the position. The Personnel Director shall present recommendations to the Commission which shall:

A.    Classify the position to an existing class or to a new class.

B.    If a new class is recommended the Personnel Director shall set forth the minimum qualifications he/she recommends and those recommended by the Board, if any. The minimum qualifications approved by the Commission must reasonably relate to the duties assigned the position by the Board.

C.    Designate the proper salary placement, if a new class is established.

**30.200.8**    <u>Positions Requiring Multiple Languages</u>

    A.    The Board of Education may, with the approval of the Commission, designate positions within a class which require the holder of the position to speak, read and write a language in addition to English.

    B.    The Board must clearly set forth valid reasons for placing language requirements on a position.

    C.    An announcement calling for an examination for a class with position(s) containing language requirements will contain appropriate information and will indicate that successful candidates possessing the language requirements will be given preference over the other successful candidates, as authorized in Rule 50.200.10, but only as to those specific positions.

    D.    When a vacancy occurs in a position which has approved language requirements, the Board will notify the Commission that the need for language requirements continues to be a part of the position.

**30.200.9**    <u>Mandatory Titles</u> (EC 45340)

As required by Article 1.6, Chapter 3, Division 10 (commencing with Section 45340) all teacher aide classes of positions shall be assigned a basic title of "Instructional Aide." The Commission, in classifying all such positions, shall determine sub-classes thereof, if any, and additions to the basic title as well as completing other classification requirements.

**30.300    Reclassification**

30.300.1    Review of Positions

The Personnel Director shall review the duties and responsibilities of positions as necessary to determine their proper classification and shall cause all positions to be reviewed once every 3 years.

30.300.2    Requests for Study

Requests for classification study of existing positions may be presented to the Personnel Director together with a statement of the reasons for requesting study. Requests for study may be initiated by the administration, with the approval of the Superintendent, or by employees or employee organizations. Requests initiated by the administration shall be accompanied by a statement of the current authorized duties of the position(s).

30.300.3    Effective Date of Reclassification (EC 45285)

Reclassification of a position shall become effective on the same date that the reclassification of the position is approved by the Commission.

30.300.4    Effects on Incumbents (EC 45285)

A.    For an employee to be reclassified upward with his/her position, the reclassification must have been occasioned by a gradual accretion of duties and not by a sudden change resulting from reorganization or duty changes by the Board. The Commission shall decide at the time the reclassification occurs as to whether the reclassification meets this rule.

B.1.    When all of the positions in a class are reclassified upward, those incumbents with 3 or more years' service in the class shall be automatically reclassified with the positions.

B.2    When a portion of the positions in a class are reclassified upward, those incumbents with 3 or more years' service in one or more of the positions being reclassified shall be reclassified with their position(s).

C.    An employee who has been reclassified upward shall be ineligible to again be reclassified upward until at least 3 years has elapsed from the last upward reclassification.

30.300.5    <u>Reclassification Appeal Procedure</u>

    A.    A permanent classified employee who disagrees with the Personnel Commission's action re the reclassification of his/her position must do so in writing within ten (10) working days from the date he/she receives notice of such action. His/her written appeal shall be directed to the Director of Classified Personnel and must contain his/her reasons for disagreement and supporting data.

    B.    The Director of Classified Personnel will, within five (5) working days, give a written reply to the employee or have arranged a personal appeal meeting with the employee and other appropriate individuals and confirm such arrangements in writing within five (5) working days.

    C.    If the Director of Classified Personnel sustains the original reclassification, the employee shall have the right, within five (5) working days, to appeal to the Personnel Commission through the Director of Classified Personnel.

    D.    The Director of Classified Personnel must arrange appeal meeting with the Commission for employee, give him/her the date, time and place of such meeting. After listening to the appeal of employee or his/her official organizational representative, the Personnel Commission will then take such action as it considers appropriate.

        At steps A and D above, the employee may have his/her organizational representative present if the employee desires.

# CHAPTER 40:  APPLICATION AND EXAMINATION

## 40.100          Applicants for Employment

40.100.1     Filing of Application
40.100.2     General Qualifications of Applicants
40.100.3     Elimination of Unfit Applicants, Candidates, and Eligibles
40.100.4     Rejection and Appeal from Rejection
40.100.5     Action When Rejected Is Not Sustained
40.100.6     Applications Not To Be Returned
40.100.7     Applicants' Names Not Made Public
40.100.8     Veterans' Preference

## 40.200          Examinations

40.200.1     Examination Barred
40.200.2     Promotional Examinations
40.200.3     Examinations for Certain Positions or Classes
40.200.4     Notice of Examination
40.200.5     Who May Compete
40.200.6     Admission to Examination
40.200.7     Examination Procedures
40.200.8     Examination Weighting
40.200.9     Rating Required
40.200.10    Retention and Review of Written Test
40.200.11    Examination Papers
40.200.12    Qualifications Appraisal Interview (Oral Examination)
40.200.13    Ties in Examination Scores
40.200.14    Notice of Final Score

**40.100**          <u>**APPLICATION FOR EMPLOYMENT**</u>

40.100.1      <u>Filing of Application</u>

All applications for employment shall be made upon official forms furnished by the Commission, filled out as therein directed, and filed on or before the date specified and in the office specified in the examination announcement.

Applicants taking more than one examination must file a separate and complete application for each such examination.

40.100.2      <u>General Qualifications of Applicants</u>

A.      Applicants must possess all requirements that may be specified in the minimum qualifications established for the class. Every applicant must be in all respects mentally and physically competent to perform the duties of the position for which he/she applies.

B.      There shall be no discrimination in the acceptance of applications with regard to race, religion, national origin, ancestry or sex.

40.100.3      <u>Elimination of Unfit Applicants. Candidates, and Eligibles</u>

An applicant or candidate may be refused examination, and an eligible may be refused certification or appointment, for any of the following reasons:

A.      Failure to meet the general qualifications of Rule 40.100.2.

B.      Membership in the Communist Party and/or failure to execute the oath of allegiance required by the State of California. (EC 7003)

C.      Advocacy of overthrow of the Government of the United States or the State of California by force, violence, or other unlawful means.

D.      Conviction of or pleading guilty in court to a narcotics offense, or a charge of moral turpitude, or any sex offense, or mistreatment of children. (EC 44010-44011)

E.      Criminal, infamous, dishonest, immoral, or disgraceful conduct according to standards approved by the Personnel Commission.

F.      Making a false statement or omitting a statement as to any material fact on the application form.

G.      Practicing any deception or fraud in connection with an examination or to secure employment.

H.      Narcotics offense, drug addiction, and/or use of intoxicating beverages to excess.

I.      Dismissal from a previous employment for cause if the cause would have subjected the applicant to dismissal by the District.

J.  Previous dismissal from this District unless the District waives this subsection.

K.  A record of unsatisfactory service with this District even though separation has not occurred.

L.  Unsatisfactory health conditions.

M.  Discharge other than honorable from the armed forces of the United States.

N.  Failure to report for duty after an assignment has been offered and accepted.

O.  Failure, after due notice, to report promptly for review of any of the above bases for rejection.

P.  Refusal to furnish testimony at a hearing or investigation before the Personnel Commission or Board of Education.

40.100.4  <u>Rejection and Appeal from Rejection</u>

A.  Applicants, candidates, and eligibles who are rejected for any of the reasons enumerated in Rule 40.100.3 shall be notified in writing by the Personnel Director. The notification shall state:

1.  The reason(s) for rejection.

2.  That, within 5 working days, the individual may appeal to the Personnel Director for administrative review, and that failure to appeal for administrative review makes the rejection final and conclusive.

B.  If there has been an administrative review, as provided above, and the rejection is sustained, the individual shall be:

1.  Given a written notice outlining the reason(s) for sustaining the rejection, and

2.  Informed of his/her right to make a written appeal of the rejection within 5 working days, to the Personnel Commission. The appeal may be based on any of the following reasons:

a.  Discrimination because of political or religious acts or affiliations or opinions, race, color, sex, marital status, national origin or ancestry

    b.    Abuse of discretion

    c.    Inconsistency of the reasons given for the rejection with the facts.

C.    The Commission shall set a date for hearing, hear all of the evidence, and render a decision. Its decision shall be transmitted in writing to all concerned and shall be final.

40.100.5    Action When Rejection is Not Sustained

If a rejection is not sustained by the Personnel Director or the Personnel Commission, the Personnel Director shall institute immediate action to insure the rights of the applicant, candidate, or eligible as if the rejection had not been made. However, appointments made in the interim shall not be disturbed unless they were fraudulently made.

40.100.6    Applications Not to be Returned

All applications and examination papers are confidential records of the District and shall not be returned to the applicants.

40.100.7    Applicants' Names Not Made Public

The names of the applicants or unsuccessful candidates in any examination shall not be made public.

40.100.8    Veterans' Preference (EC 45296)

A.    Veterans' preference points shall be added to passing scores in open examination in the amount prescribed by Education Code Section 45296. At least 30 days of active service in the Army, Navy, Marines, Air Force, or Merchant Marine, or as a nurse on active duty with the Red Cross, between the dates listed, are required:

| | |
|---|---|
| World War I | April 6, 1917 to November 11, 1918 |
| World War II | December 7, 1941 to December 31, 1946 |
| Korea | June 27, 1950 to January 31, 1955 |
| Vietnam | August 4, 1964 to (?) |

Service in the Coast Guard between December 7, 1941 and January 1, 1946 is also credited.

B.    In order to obtain credit, the applicant shall furnish satisfactory proof of qualifying military service prior to establishment of the eligibility list. No adjustment of rank on the list shall be made when such proof is presented thereafter.

**40.200**        **EXAMINATIONS**  (EC 45261)

40.200.1      Examination Barred

No examination announcement may be made and no part of any examination may be held until the Board of Education has properly approved, if a reclassification, or designated, if a new class, the position duties, and the Commission has completed the position classification including the establishment of minimum education and work experience requirements.

40.200.2      Promotional Examinations  (EC 45272)

Examinations shall, where practicable, as determined by the Commission, be limited to promotional applicants. When no promotional field of competition exists or when there is doubt of its adequacy, the Personnel Director of the Commission may order an open examination or simultaneous open and promotional examinations. Promotional examinations shall be restricted to permanent employees of the District who meet the prescribed qualifications of the class.

40.200.3      Examinations for Certain Positions or Classes (EC 45280)

A.      Examinations for the position of business manager or any other single position class at or above the level of business manager, and all positions that would have been included under the provisions of sub-paragraphs (m), (n), and (o), Education Code Section 44065 prior to legislative repeal, shall be held on an open and promotional basis.

B.      When such examinations are held, all permanent employees of the District (classified and certificated), who meet the minimum qualifications, shall be allowed to compete in the promotional examination.

C.      A single eligibility list will be developed from among the passing open and promotional candidates. Rating will be in accordance with the final score plus authorized credits.

D.      These examinations are not, by law, considered "entrance examinations," and military preference credits are, therefore, not to be included.

40.200.4      Notice of Examination

Whenever it is necessary to fill existing or anticipated vacancies in the classified service and an appropriate eligibility list does not exist as determined by the Commission, the Commission shall direct the holding of an examination to provide eligibles. At least 10 working days' advance public notice of such examinations shall be given. The notice shall contain the following facts:

A.      Description of the scope of duties and responsibilities of the position and the class;

B.      Minimum qualifications required;

C.      The salary and other forms of compensation;

D.      The last date for filing an application;

E.      Such other information as will assist the employees and the public in fully understanding the nature of the employment and procedures necessary to participate in the examination.

40.200.5    <u>Who May Compete</u>

A.      Competitive examinations for positions in the classified service shall be open to all applicants who meet the minimum qualifications and who are not rejected as provided in Rule 40.100.4, provided that examinations may be restricted to promotional candidates at the discretion of the Commission.

B.      Age shall not be a factor in admitting applicants to examinations, except that a person who is over the mandatory retirement age shall be refused admittance.

40.200.6    <u>Admission to Examination</u>

Each applicant whose application has been approved shall be notified a reasonable time in advance of the time, date, and place of the examination. No candidate may be admitted to any examination without authorization.

40.200.7    <u>Examination Procedures</u> (EC 45273)

A.      Examinations shall be administered objectively and shall consist of at least two independent parts.

B.      Oral examinations boards shall consist of at least two members.

C.      When two oral examinations are ordered by the Commission, one shall be a technical oral and the other a general fitness evaluation oral. At least two members of a technical oral board must be technically qualified in the occupational area being examined.

D.      School Board members or Personnel Commissioners in the District where the examination is given may not serve on the oral board. District employees at the first or second level of supervision in the class being examined may not serve as oral examiners. Other District employees may serve.

E.      Confidential references on District employees competing in a promotional examination shall not be given to oral examiners. Scores achieved by candidates in other parts of the examination whether entry, open or promotional, shall not be given to oral board members.

F.     Oral examinations shall be electronically recorded.

G.     Copies of the questions in a test shall not be made by competitors or other unauthorized persons.

H.     Where written tests are required, they shall be so managed that none of the test papers will disclose the name of any competitor until all papers of all competitors in a given examination shall have been marked and rated.

I.     Any competitor in any examination who places any identifying mark upon his/her test papers (other than the identifying mark prescribed at the time of examination) or makes any attempt to disclose to others the identity of his/her papers prior to the completion of the examination shall be disqualified.

40.200.8     Examination Weighting

The relative weights of the different parts of the examination shall be set forth in the announcement of the examination. All examination papers shall be prepared and rated under the direction of the Personnel Director.

40.200.9     Rating Required

Competitors may be required to attain a designated minimum rating in each part or in combined parts of the examination to qualify for participation in the next succeeding part.

40.200.10     Retention and Review of Examination  (EC 45274)

A.     Examination records, including any recordings and rating sheets of oral board members shall be retained by the Commission for not less than 15 months after eligibility list is established.

B.     When written test papers of all competitors have been rated, each candidate will be notified of his/her grade. Candidates may review and protest any questions that were a part of the test by filing a written request with the Director of Classified Personnel within 7 days after notification of grade.

C.     The Personnel Director shall arrange the date, place and time at which a candidate or candidates may review test papers and submit written protest.

D.     The Personnel Director shall review and act on all protests. He/she may allow more than one answer or disqualify a question if he/she finds protest valid. If protests result in any change, the test papers of all applicants will be reviewed and re-rated accordingly.

E.     If the Personnel Director rules against the protest the applicant may appeal to the Commission, but the delay shall not delay the establishment of and the hiring from eligibility list.

F.    Review and protest in promotional examination, except when the examination is continuous, shall be conducted by the same procedure as outlined in B, C, D, and E above. Except the review and protests shall be held prior to regular appointment from eligibility list.

G.    Review and protest of technical oral test shall follow the same procedure as outlined in B, C, and E above.

40.200.11    Examination Papers (EC 45274)

Examination papers submitted by competitors are the property of the District and are confidential records.

40.200.12    Qualifications Appraisal Interview (Oral Examination) (EC 45274)

A competitor may appeal a QAI rating to the Personnel Director and, if rejected, he/she may appeal to the Commission at any time after notification of his/her final score, but within 10 days after establishment of the eligibility list. The Commission may alter the QAI rating if it finds justification for the protest and order the competitor's examination score adjusted accordingly. No charge in an eligibility list shall invalidate any appointment which was made prior to the ordered adjustment unless the appointment was fraudulent.

40.200.13    Ties in Examination Scores

When two or more competitors in an examination have the same final examination score, preference in placement on the eligibility list shall be based on the following provisions applied in the following order:

A.    Higher rank shall be given to the competitor with the higher score in the performance test, if any.

B.    Higher rank shall be given to the competitor with the higher score in the written or oral technical test.

C.    Higher rank shall be given to the competitor who filed his/her application earlier.

40.200.14    Notice of Final Score

Each competitor shall be notified of his/her score for each portion of the examination, additional veterans credits, the total thereof, and his/her standing on the eligibility list, if qualified.

## CHAPTER 50:  EMPLOYMENT LISTS

### 50.100          Eligibility Lists

50.100.1      Establishment and Life of Eligibility Lists
50.100.2      Reemployment Lists
50.100.3      Termination of Eligibility Lists
50.100.4      Consolidation of Eligibility Lists
50.100.5      Eligibility After Appointment
50.100.6      Removal of Names from Eligibility Lists

### 50.200          Certification from Employment Lists

50.200.1      Order of Precedence
50.200.2      Other Sources of Eligibility
50.200.3      Waivers of Certification
50.200.4      Procedure of Certification and Appointment from Eligibility Lists
50.200.5      Certification from List for Another Class
50.200.6      Withholding Names from Certification
50.200.7      Restoration to Certification
50.200.8      Duties of Eligible
50.200.9      Subjects Regarding Which No Questions Shall Be Asked
50.200.10     Certification of Eligibles for Position with Language Requirements
50.200.11     Reduction of Eligibility

### 50.300          Provisional Appointments

50.300.1      Restrictions
50.300.2      Termination Provisional Appointments
50.300.3      Emergency Appointments

**50.100**        **ELIGIBILITY LISTS** (EC 45272, 45286, 45291, 45292, 45300)

50.100.1     Establishment and Life of Eligibility Lists

      A.      After an examination, the names of successful competitors shall be arranged on a list in the order of examination score, plus additional points where applicable (Rule 40.100.8). The list shall be presented for approval of the Personnel Commission.

      B.      After approval, an eligibility list shall be in effect for one year, unless exhausted, and may be extended for not to exceed one additional year at the discretion of the Commission. Names of successful competitors may be added to eligibility lists resulting from continuous examinations without approval by the Commission.

50.100.2     Reemployment Lists (EC 45308)

There shall be established for each class, as necessary, a reemployment list which shall take precedence over all other employment lists in appointment. This list shall contain the names of all regular classified service employees who have been laid off or demoted from any position because of lack of work or lack of funds. Employees who acquire leaves of absence for military reasons and those who are ordered, pursuant to the laws of the United States, to serve in any civilian war effort or war industry, shall take precedence by having their names placed over other names on the reemployment list in any given class. (See also Rule 60.700.1 et seq.)

50.100.3     Termination of Eligibility Lists

      A.      An eligibility list is automatically terminated one year from the date of its approval unless previously extended by the Commission.

      B.      An eligibility list is automatically terminated two years after its approval unless previously terminated.

      C.      An eligibility list is automatically terminated when no eligibles remain on the list.

      D.      An eligibility list may be terminated by the Commission when no eligible is available for appointment to a specific permanent position in a class or when there are fewer than two eligibles remaining on the list.

      E.      An eligibility list is automatically terminated when in the second year of its existence, a new list for the class is established.

50.100.4    Consolidation of Eligibility Lists  (EC 45291)

A.    If a new examination for a class is given during the first year of the life of an existing list, the examination shall be sufficiently similar to the previous examination to ensure the comparability of the scores of eligibles. The new list shall then be merged with the existing list with eligibles ranked in the order of examination score, plus additional points where applicable. Promotional lists shall be merged only with promotional lists.

B.    When lists are consolidated under this rule, the earlier list shall be terminated one year after its establishment, and those eligibles' names shall be removed from the consolidated list.

50.100.5    Eligibility After Appointment

An eligibility list shall be used for full-time, part-time, regular, and, where possible, limited-term assignments in the class. An eligible who accepts part-time employment shall continue to be eligible for full-time employment, and an eligible who accepts limited-term employment shall continue to be eligible for regular appointment.

50.100.6    Removal of Names from Eligibility Lists

A.    The name of an eligible may be removed from an eligibility list by action of the Commission for any of the following reasons:

1.    A written request by the eligible for removal.

2.    Failure to respond within three working days to an inquiry regarding availability for employment.

3.    Any of the causes listed in Rule 40.100.3 above.

4.    (Promotional Eligibility List) - Termination of employment.

5.    Failure to respond for an interview after certification.

B.    The name of an eligible may be removed from an eligibility list by the Personnel Director, subject to ratification of and appeal to the Commission for restoration under Rule 40.100.4, for any of the following reasons:

1.    Three waivers of certification during the life of the eligibility list except that waivers relating to part-time or limited term appointments shall not be counted for the purpose of this sub-rule.

2.    Refusing an employment offer after having been properly certified as eligible for appointment.

## 50.200          CERTIFICATION FROM EMPLOYMENT LISTS

50.200.1          Order of Precedence

Names shall be certified for appointment from employment lists in the following sequence:

      A.      Reemployment list (one name) (EC 45308-45309)

      B.      Promotional eligibility list (three names) (EC 45272)

      C.      Open eligibility list (three names)

50.200.2          Other Sources of Eligibility

In the absence of a reemployment list for a class, a vacancy may be filled by transfer, demotion, reinstatement or reemployment (after resignation), restoration to former class after voluntary demotion, or other means provided in the rules, without regard for existence of eligibility lists.

50.200.3          Waivers of Certification

      A.      An available eligible may waive certification twice without penalty. At the time a third waiver is to be signed by an eligible he/she will be informed that, upon signing the third waiver, his/her name will be removed from the eligibility list per Rule 50.100.6.

      B.      At the time an eligibility list is established each eligible shall be sent a copy of Rule 50.100.6 and Rule 50.200.3.

50.200.4          Procedure of Certification and Appointment from Eligibility lists (EC 45272)

      A.      When a position is to be filled, the appointing power shall notify the Personnel Director of that fact and of the date of the anticipated need. The request for certification shall state the class title, hours and location of employment, and other pertinent information as required by the Director.

      B.      The Personnel Director shall ascertain the availability of eligibles and shall certify three names to the appointing power in accordance with these rules.

      C.      The appointing power shall make its selection from the persons certified and shall notify the Director, who shall see that the necessary employment procedures are carried out.

D.      If a candidate who has been certified as eligible for appointment to a position fails to keep his/her interview appointment or at the interview declines the position, the appointing authority may fill the vacancy from the remaining certified eligibles or may request additional certification in accordance with Rule 50.200.7.

E.      The appointing power (Board of Education) has adopted the following policy with regard to employment:

*"It is the policy of this Board of Education to implement integration of the District's staff so that the benefits of integration will be readily apparent to all students throughout all categories of employment.*

*"Further, we believe that implementation should move toward a more proportionate staff representation of the racial composition of the student body and community.*

*"Therefore, appropriate and immediate efforts shall be made by the administration to accomplish this goal by the employment of qualified staff for position vacancies."*

## 50.200.5    Certification from List for Another Class

If there is no eligibility list for the class in which the vacancy occurs, certification may be made from a list for another class at the same or a higher salary level if the duties and qualifications of the class for which the examination was given include substantially all of the duties of the position to be filled, provided that the Personnel Commission finds that the use of the list is in the best interest of the District and that the necessary skills and knowledges were adequately tested in the examination.

## 50.200.6    Withholding Names from Certification

The name of an eligible may be withheld from certification when:

A.      He/she expresses unwillingness or inability to accept appointment.

B.      He/she fails to respond within three work days next following the mailing of written inquiry regarding availability for permanent employment or request to appear from interview regarding such employment.

C.      He/she fails to present himself/herself for duty at the time agreed upon after having accepted an appointment.

D.      He/she fails to present the license, registration, certificate, or any other credential required. (The name of any such eligible shall be restored by the Personnel Director for certification when the particular requirement has been met.)

E.      For any reason listed in Rule 40.100.3.

F.      A person on a reemployment or an eligibility list may decline two offers of permanent appointment without injuring his/her status, provided he/she submits an acceptable explanation for not wishing to accept appointment. A third refusal will result in dropping the candidate from the eligibility list.

When an eligible candidate fails to respond within three days to a communication involving a possible permanent appointment, he/she shall be passed over until an explanation acceptable to the Commission has been submitted.

## 50.200.7        Restoration to Certification

When the name of a person has been withheld from a eligibility list or from certification or has been removed from the list, it may be placed on such list or restored thereto by the Personnel Director, subject to ratification by the Personnel Commission at its next meeting under the following circumstances:

1.      When the withholding or removal was because of the waiver or inability of the eligible to accept employment, or failure to respond to inquiry as to his/her availability, to appear for interview, or to present himself/herself for duty, and the applicant presents a good and valid reason and certifies to the Personnel Commission that he/she is now willing and able to accept appointment.

2.      When the withholding or removal was for a reason stated in Rule 40.100.3 and such action was improper or the defect has since been corrected.

## 50.200.8        Duties of Eligible

It shall be the duty of every eligible to respond promptly after receiving the notice of certification. When the eligible resides in the District, he/she shall respond within three days after the date the notice is mailed. If the eligible resides outside the District, he/she shall respond within three days plus the normal time required for the communication to be transmitted by mail to the eligible's place of residence and for his/her answer to be returned by mail.

1.      In the event an eligible is notified by telegram of the certification, he/she shall represent himself/herself before the appointing power for interview or reach the appointing power with some form of communication within 24 hours after the sending of the telegram.

2.      Failure of an eligible to respond within the above-stated times will be deemed an automatic waiver of certification, and the Personnel Director may certify an additional name in lieu of the name of such eligible.

50.200.9    <u>Subjects Regarding Which No Questions Shall Be Asked</u>

No questions relating to political or religious opinions or affiliations, race, color, national origin or ancestry, marital status or dependents shall be asked of any applicant or any eligible whose name has been certified for appointment, nor shall any discrimination be exercised therefor.

50.200.10    <u>Certification of Eligibles for Position with Language Requirements</u>  (EC 45277)

A.    If a position requires a valid driver's license or multiple language as provided for in Rule 30.200.8, the appointing authority shall so indicate to the Personnel Director when calling for certification of eligibles to fill the vacancy.

B.    In such an instance the Rule of 3 is suspended. The Personnel Director shall determine which eligibles possess the required language skill and shall certify the names of three qualified eligibles, in the order of their relative standing on the list, who are ready and willing to accept the position.

C.    If there is an insufficient number of eligibles who meet the language requirements and who are ready and willing to accept the position, the Personnel Director shall certify for appointment the top eligible plus those possessing the language requirements who are ready and willing to accept the position, provided that the total number certified shall not exceed three. (EC 45277)

50.200.11    <u>Reduction in Eligibility</u>

A reduction in eligibility from a higher class to a lower class may be granted only when the two classes are in the same line of promotion. A person granted a reduction in eligibility shall be placed at the bottom of the eligibility list for the lower class. When no eligibility list exists for the lower class, reduction in eligibility may be granted only in accordance with Rule 50.200.5.

**50.300**          **PROVISIONAL APPOINTMENTS (EC 45287) 50.300.1**

50.300.1    Restrictions

    A.    The appointing authority may make a provisional appointment when the Personnel Director certifies that:

        1.    No eligibility list exists for the class or

        2.    An eligibility list exists, but there is an insufficient number of available eligibles (i.e., less than 3) and the appointing authority refused to appoint an available eligible.

    B.    An employee may receive a provisional appointment or appointments which may accumulate to a total of 90 working days, after which a 90-calendar-day interval shall elapse during which he/she shall be ineligible to serve in any full-time provisional capacity.

    C.    No person shall be employed in provisional capacities under a given Governing Board for a total of more than 126 working days in any one fiscal year, except that when no one is available on an appropriate eligibility list for a part-time position as defined in Section 45256, successive 90-working-day provisional appointments may be made to the part-time position for a total of more than 126 working days in a fiscal year.

    D.    Insofar as possible, provisional appointees shall be required to meet the minimum qualifications for the class of the appointment as stated in the class specifications.

    E.    Notwithstanding Rules A and B above, the Commission may extend the 90-working-day provisional appointment for a period not to exceed 36 additional working days provided: (EC 45288)

        A.    An examination for the class was completed during the initial 90 work days of the employee's provisional assignment.

        B.    Satisfactory evidence is presented indicating:

            a.    Adequate recruitment effort has been and is being made.

            b.    Extension of this provisional assignment is necessary to carry on vital functions of the District.

            c.    The position cannot be satisfactorily filled by use of the eligibility list or other employment lists or procedures such as reinstatement, transfer, or other appropriate eligibility lists.

F.     Provisional employees are entitled to all fringe benefits accorded other classified employees.

50.300.2    <u>Terminating Provisional Appointments</u>

A.     The services of a provisional appointee shall be terminated within 15 working days after the date on which an eligibility list has been established, provided that this 15-day period does not extend beyond the 90-working-day provisional assignment or the additional 36 working days if authorized by Rule 50.300. IE.

B.     A provisional appointment may be terminated at any time, at the discretion of the appointing power.

50.300.3    <u>Emergency Appointments</u> (EC 45290)

A.     If it should become necessary in time of emergency to fill positions in the classified service to prevent the stoppage of public business, the Board of Education, through its authorized Department Heads, may make emergency appointments, without reference to eligibility lists, for a period not to exceed 15 working days.

B.     When such emergency appointments are made, it shall be the duty of the Board of Education to notify the Personnel Director in writing, naming the appointee or appointees, date of appointment, and nature of duties performed, and giving a statement justifying the emergency nature of such appointments.

## CHAPTER 60:        INSERVICE STATUS AND TRANSACTIONS

**60.100**            **Probationary Period**

60.100.1      Duration of Probation
60.100.2      Rights of Probationary Employees

**60.200**            **Changes in Position and Class**

60.200.1      Transfer
60.200.2      Demotions
60.200.3      Restorations
60.200.4      Changes in Assigned Time

**60.300**            **Limited-term Employment**

60.300.1      Types of Limited-term Appointments
60.300.2      Rights and Benefits
60.300.3      Terminations

**60.400**            **Assignments of Handicapped Employees**

60.400.1      General Policy
60.400.2      Reassignments
60.400.3      Effect of Refusal by Employee

**60.500**            **Employment of PERS Retirees**

60.500.1      General Policy
60.500.2      Compensation
60.500.3      Assignment

**60.600**            **Performance Evaluations**

60.600.1      When Evaluations Are to be Made
60.600.2      Procedure to be Followed
60.600.3      Special Evaluations
60.600.4      Appeals

**60.700**          **Leaves of Absence**

60.700.1     Vacation
60.700.2     Paid Sick Leave
60.700.3     Additional Sick Leave
60.700.4     Termination of Sick Leave
60.700.5     Industrial Accident and Industrial Illness Leave
60.700.6     Bereavement Leave
60.700.7     Personal Necessity and Personal Leave
60.700.8     Jury Duty and Witness Leave
60.700.9     Absence for Examination
60.700.10    Military Leave
60.700.11    Leave of Absence Without Pay
60.700.12    Maternity Leave
60.700.13    Leave to Serve in an Exempt, Temporary, or Limited-term Position
60.700.14    Leave of Absence for Study
60.700.15    Leave of Absence for Retraining
60.700.16    Transfer of Sick Leave from Another District
60.700.17    Election Leave


**60.800**          **Layoff**

60.800.1     Procedure Regarding Layoff
60.800.2     Rights of Employees Laid Off for Lack of Work or Funds
60.800.3     Limited-term Positions


**60.900**          **Resignation**

**60.1000**         **Disciplinary Action and Appeal**

60.1000.1    Cause for Suspension
60.1000.2    Procedure for Disciplinary Action
60.1000.3    Appeal
60.1000.4    Hearing Procedure
60.1000.5    Reinstatement

**60.100          PROBATIONARY PERIOD (EC 45301)**

60.100.1          Duration of Probation

    A.     A new employee appointed from an eligibility list shall serve a probationary period of six months in the classified service. An employee who has been promoted shall serve a probationary period of six months in the higher class before attaining permanency in that class. Credit toward completion of probation shall be granted only for service in regular positions in the class after appointment from the eligibility list.

    B.     For those classes designed by the Commission as executive or administrative, the probationary period shall be one year. (Rule 70 200.4)

    C.     Employees losing service time equal to 22 paid or unpaid work days or more shall be determined to be in leave status and such leave shall be excluded from the probationary period.

    D.     For each 22 work days of lost time (paid or unpaid) during the probationary period, the employee will be required to serve one additional month of probationary service in the classification.

    E.     A new or permanent employee holding a probationary appointment in a classification may not be transferred or promoted to another position or classification until the probationary period has been completed, except as provided in Rule 60.100.2.


60.100.2          Rights of Probationary Employees

    A.     A new employee who resigns in good standing during his/her initial probationary period shall, upon request, have his/her name restored in proper rank to the eligibility list. Such action shall not extend the life of the eligibility list or the period of eligibility of the employee.

    B.     A new employee who is suspended or dismissed during his/her initial probationary period shall be notified in writing of the action taken and the reasons therefor. He/she shall not have the right to appeal.

    C.     An employee who has permanent status in the classified service, and who has been promoted to a higher class, may be demoted involuntarily during the probationary period to his/her former class. He/she shall be notified in writing of the action and the charges against him/her, and shall have the right to appeal provided in Rule 60.100.3B.

    D.     A permanent employee who is suspended or dismissed or demoted to other than his/her former class during a probationary period retains full rights of appeal.

E.     Should the work for which a probationary employee has been appointed prove temporary instead of permanent as certified, and should he/she be laid off without fault or delinquency on his/her part before his/her probationary period is completed, his/her name shall be restored to the eligibility list and the time he/she has served shall be credited to him on his probationary period.

F.     At least two weeks before the date upon which the probationary period ends the appointing power shall inform the employee of his/her retention or dismissal and such notice shall not act in any way to limit the right of the appointing power to dismiss a probationer at any time during the six months period.

**60.200**        **CHANGES IN POSITION AND CLASS**

60.200.1    Transfer

A.    An employee may be transferred at his/her request or for the good of the service from one position to another in the same class at the discretion of the department head(s) involved, provided that such action shall not be taken for punitive or preferential reasons.

B.    A permanent employee may be transferred to a position in a related class on the same salary schedule. Such transfers shall be made only with the approval of the Commission.

C.    Transfers shall not change the employee's salary rate, anniversary date, accumulated illness leave, and accumulated vacation credit, or in any other manner reflect adversely upon his/her rights, as provided in law and these

D.    The Personnel Commission shall determine whether classes are sufficiently related to permit transfer between them.

E.    A permanent employee who transfers to a position in a class in which he/she has not previously completed a probationary period shall be considered probationary in that class for a period of six months. At any time during the probationary period he/she may be returned (transferred) to his/her former class without right of appeal, unless such action results in layoff, demotion or reduction in assigned time. In the latter cases, the employee will have the same appeal rights as a permanent employee who is demoted or dismissed.

F.    Transfers shall have the following effects on seniority:
1.    Within the same class - none.

2.    From one class to another - the employee shall not receive seniority credit in the new class for service in other classes; however, he/she shall retain such credit as seniority in the classified service.

G.    Transfer shall not be used as a device to alter the sequence of impending layoff, although employees whose positions are to be eliminated may transfer to other classes as this rule contemplates.

H.    Reasons for any transfer which is not voluntary shall be discussed with the employee by his/her immediate supervisor.

60.200.2    <u>Demotions</u>

    A.    A permanent employee may request voluntary demotion to a class with a lower maximum salary rate. Such requests require the approval of the Personnel Commission and that of the Governing Board.

    B.    Voluntary demotion is a privilege available to a probationary employee only in cases when he/she would otherwise be laid off for lack of work or lack of funds.

    C.    Involuntary demotion is a disciplinary action for cause and is subject to the pertinent rules and procedures.

60.200.3    <u>Restorations</u> (45309)

    A.    A former permanent employee who resigned in good standing may be reinstated in a vacant position in his/her former class and status within 39 months of the last date of paid service. Also, he/she may be reinstated in a vacant position in a lower related class, if qualified or in limited-term status in the same or lower class. Such actions are discretionary with the appointing authority.

    B.    Reinstatement or reemployment of a former employee shall have the following effects:

        1.    Restoration to the former step in the current salary range for the class, or, if restored in a lower class, to the rate closest to that of the step to which he/she would be assigned if he/she were restored in his former class.

        2.    If restored to permanent status, restoration of accumulated sick leave and seniority as of the date of the separation.

        3.    Restoration of former anniversary date, but without step-advancement credit for the off-duty period.

        4.    Restoration of all rights, benefits and burdens of a permanent employee in the class to which restored.

60.200.4    <u>Changes in Assigned Time</u>

    A.    <u>Increases in Time of 1 Hour or Less Per Day</u>

        1.    When an existing permanent position is assigned an increase of 1 hour <u>or less per day,</u> the employee in the same class working less than 7-1/2 hours per day with the most seniority in the particular school where the adjustment is being made shall be entitled to the increase.

2.      If the employee with the most seniority in the school where the adjustment is being made wishes to remain at the same hours per day worked and wishes no increase in time, the adjustment will then be offered to the next employee in line with seniority within that particular school.

B.    <u>Decreases in Assigned Time</u>

1.      When the regular hours of employment of a position or positions are to be reduced the administration shall:

   a.      Determine the class(es) and location(s) affected by the reduction:

   b.      Notify the Personnel Director at least one month in advance of the effective date of the reduction:

   c.      Work with the Personnel Director to alleviate the effect of reduction on employees.

2.      When a permanent position is to be reduced in assigned time per day, week, month, or year, the incumbent shall have the right to transfer into any vacant position in the class where is not greater in assigned time than his/her former position. If a vacant permanent position of equal time is not available, the incumbent may bump the incumbent of a position with equal time who has the least seniority in the class, provided that he/she has greater seniority. If no such option is available, he/she may bump the employee with the least seniority among those occupying positions of less time than the original position and greater time than the reduced position, provided that he/she has greater seniority. An employee so bumped shall have similar bumping rights.

3.      Reduction in assigned time shall not be applied for punitive or preferential reasons. Nothing in this rule shall preclude an employee from volunteering for a reduction in assigned time or from waiving preferential rights to increases in assigned time.

**60.300          LIMITED-TERM EMPLOYMENT**

60.300.1          Types of Limited-term Appointments

      A.      A substitute assignment may be made not to exceed in duration the authorized absence of the regular employee, but it need not coincide with the dates of that absence. Also a substitute assignment may be made in a lower class related to that of the absent employee if the assigned duties are reduced in level accordingly.

      B.      The appointing authority may establish positions the duration of which is six months or less; such positions shall be designed "limited-term." Such positions are subject to classification by the Personnel Commission, except that the Personnel Director may classify them subject to later ratification if the good of the service demands expeditious action.

60.300.2          Rights and Benefits

      A.      Regular employees who are serving in limited-term appointments while retaining regular status in another class shall continue to earn and be granted all rights and benefits of a regular employee.

      B.      All other limited-term employees shall be granted only those benefits provided by law, such as paid holidays and bereavement leave. No seniority or credit toward completion of probation or any other benefit shall accrue from service in a limited-term appointment, except as provided under Paragraph A of this rule.

60.300.3          Terminations

      A.      Limited-term appointments shall be subject to termination at any time except during an assigned shift.

      B.      Limited-term employees may be dismissed for cause, which cause shall be made known to them and to the Personnel Director in writing. The Personnel Director may remove the employee's name from the special list for limited-term appointments, if his/her investigation supports such an action.

**60.400        ASSIGNMENTS OF HANDICAPPED EMPLOYEES** (EC 45279)

60.400.1    General Policy

When a permanent employee becomes unable to perform the duties of his/her classification because of illness or injury as determined by medical authority designated by the Commission, effort shall be made to place him/her in a position the duties of which are within his/her capabilities. Reassignment, if any, shall be at the discretion of the appointing authority, with the approval of the Commission in the cases noted above.

60.400.2    Reassignments

A.    A handicapped employee's duties in his/her regular position may be altered in accordance with his/her handicap. Such charges in duties shall be informally reported to the Personnel Director, who shall determine whether the position requires classification study.

B.    A handicapped employee may accept demotion or transfer to a less demanding class, with the approval of the Commission.

C.    A handicapped employee may be assigned to a position in a higher class, with the approval of the Commission, but shall receive no salary benefit from such assignment until he/she can be appointed to the higher class in accordance with the rules and procedures on eligibility and appointments.

60.400.3    Effect of Refusal by Employee

A handicapped employee may refuse assignments to other classes without effect on his/her rights under sick-leave provisions of the laws and these rules. However, there is no obligation for the appointing authority to renew offers of reassignment which have been refused or to make alternative offers.

**60.500**        **EMPLOYMENT OF PERS RETIREES**

60.500.1        General Policy

    A.      Any person receiving a retirement allowance from the Public Employee's Retirement System may be employed for up to 60 working days in a calendar year whenever other eligibles are not available and the retiree's skills or knowledge is needed, or during an actual emergency to prevent the stoppage of public business.

    B.      The retired person must certify that he/she understands he/she is restricted to 60 working days in any calendar year with the District and other employers subject to PERS and that his/her employment and continuance in employment is discretionary with the Governing Board.

    C.      For the purposes of this rule, "working day" shall mean any day for which pay is received regardless of the number of hours worked.

60.500.2        Compensation

    A.      A retiree employed under authority of this rule shall be entitled only the appropriate salary earned to include overtime compensation as provided for in Rule 70.200.3. He/she shall be entitled to all fringe benefits applicable to employees with limited-term status only, except retirement contributions.

    B.      Retired personnel shall normally be paid on the first step of the hiring step of the salary schedule of the class to which assigned, but may be paid on a higher step upon the recommendation of the appointing authority and the approval of the Commission, but in no case will the compensation be at a rate other than one payable to a regular employee in that class.

60.500.3        Assignment

    A.      A retired employee employed under this rule is not subject to reinstatement to PERS nor does the compensation paid provide retirement allowance adjustment.

    B.      The appointing authority will certify to the Personnel Director that a retiree employed under this rule meets the provisions thereof and his/her combined calendar-year employment by all employers subject to PERS does not exceed 60 working days.

## 60.600       PERFORMANCE EVALUATIONS

60.600.1      When Evaluations Are To Be Made

All regular classified employees shall be evaluated by their immediate supervisors at least in accordance with the following schedule:

A.      Probationary employees - at the end of the 3rd and 5th months of service. In administrative and executive classes, at the end of the fourth, eighth, and tenth months of service.

B.      Permanent employees - once each year, to establish longevity merit eligibility. The employee will be furnished a copy of the completed report for his/her files and the original report filed with his/her personnel records retained in the Personnel Department and shall be made available for review by administrative officials in connection with promotional examinations and disciplinary actions.

C.      If an employee is not satisfied with his/her performance evaluation, he/she may appeal through the grievance procedure. (Rule 80.100)

60.600.2      Procedure To Be Followed

A.      Performance evaluation reports shall be made on forms prescribed by the Commission, and shall be prepared by the employee's immediate supervisor if possible. The form shall be reviewed by the next higher supervisor and, if the need for improvement is noted, by the Department Head.

B.      The immediate supervisor shall present the performance evaluation report to the employee and shall discuss it with him/her. The evaluation form shall be signed by the employee to indicate that he/she has seen the report.

C.      Performance evaluation reports shall be filed in the employee's personnel records and shall be available for review in connection with promotional examinations and disciplinary actions.

60.600.3      Special Evaluations

A.      At any time, a supervisor may, with the approval of his/her department head, issue to an employee a Notice of Commendation or a Notice of Unsatisfactory Service. Such Notices shall be made on prescribed forms and shall set forth specific reasons for recognition of outstanding or unsatisfactory service by the employee. They shall be delivered to the employee personally by his/her immediate supervisor whenever practicable. A copy of such Notice shall be placed in the employee's personnel record and shall not be available for review in connection with promotional examinations.

B.    Prescribed forms shall be made available to administrators and supervisors.  A copy of the evaluation shall be issued to employee.

60.600.4    <u>Appeals</u>

If the employee is not satisfied with his/her performance evaluation, he/she may appeal through grievance procedure  (Rule 80.100).

<u>**60.700**</u>        <u>**LEAVES OF ABSENCE**</u>

60.700.        <u>Vacation</u> (EC 45197)

    A.        Regular full-time employee (permanent, probationary, restricted) shall accrue vacation leave with full pay as provided herein. No employee shall accrue any paid vacation leave for any period of leave without pay, absence without leave, or suspension.

        1.        Each employee shall accrue vacation leave at the rate of ten (10) working days per year until he/she has completed four (4) years of service.

        2.        Each employee who has completed five (5) years of service shall accrue vacation leave at the rate of fifteen (15) working days per year until he/she has completed ten (10) years of service.

        3.        Each employee who has completed eleven (11) or more years of service shall accrue vacation leave at the rate of twenty (20) working days per year.

        4.        Each employee who has completed fifteen (15) or more years of service shall accrue vacation leave at the rate of twenty-five (25) working days-per year.

        5.        The following classified positions shall be considered administrative (Rule 70.200.4):

            Director of Business Services
            Director of Classified Personnel

        Employees in these positions shall receive the regular rate of pay in accordance with the classification and salary allocation chart as approved by the Board of Education and Personnel Commission and which shall be considered full compensation for all time that is required of the employee to perform the required duties of his/her position without reference to overtime.

        In recognition of the requirements and limitations thus imposed on these specific employees, their annual vacation leave shall accumulate at the rate of twenty-five (25) working days per year without regard to total number of years of continuous service with the Berkeley Unified School District.

B.    Vacation may, with the approval of the employer, be taken at any time during the school year. If the employee is not permitted to take his/her full annual vacation, the amount not taken shall accumulate for use in the next year or be paid for in cash at the option of the Governing Board.

C.    Earned vacation shall not become a vested right until completion of the initial six months of employment.

D.    Upon separation from service, the employee shall be entitled to lump-sum compensation for all earned and unused vacation, except that employees who have not completed six months of employment in regular status shall not be entitled to such compensation.

E.    <u>Illness While on Vacation</u>

    1.    If an employee, with five or more years of service, commencing authorized paid vacation, subsequently becomes ill or is injured and such illness or injury requires hospitalization and/or house confinement under doctor's orders for a minimum of three days, the employee may request the time spent in the hospital or house confinement be charged against sick leave. The employee's request must be submitted in writing through his/her principal or department head within three working days after his/her return to duty. A verification from the hospital or private physician (whichever applies) must accompany employee's request.

    2.    When all or part of an employee's vacation is to be converted to sick leave, the appropriate vacation credit shall be restored to the employee's earned vacation balance. The credited vacation may be rescheduled later as department needs permit.

60.700.2    <u>Paid Sick Leave</u> (EC 45191)

A.    Sick leave is the authorized absence of an employee because of illness or injury or exposure to contagious disease.

B.    A regular classified employee shall earn paid sick leave in accordance with the provisions of Education Code Section 45191. Unused sick leave may be accumulated without limit.

C.    At the beginning of each fiscal year, the sick leave "bank" of the employee shall be increased by the number of days of paid sick leave which he would normally earn in the ensuing fiscal year. An employee's sick leave "bank" shall be adjusted if a change of assignment alters the amount of sick leave earnable.

D.    Sick leave may be taken at any time, provided that new employees with probationary status only may use only six days of paid sick leave during their initial probationary periods.

E.      In order to receive compensation while absent on sick leave, the employee must notify his/her supervisor of his/her absence within the first working hour of the first day absent, unless conditions make notification impossible. The burden of proof of impossible conditions shall be upon the employee.

F.      At least one day prior to his/her expected return to work, the employee shall notify his/her supervisor in order that any substitute employee may be terminated. If the employee fails to notify his/her supervisor and both the employee and the substitute report, the substitute is entitled to the assignment, and the employee shall not receive pay for that day.

G.      An employee absent for five working days or more shall be required to present a doctor's statement stating the nature of the illness or injury and the date the employee is able to return to work.

60.700.3    Additional Sick Leave (EC 45196)

A.      A regular classified employee shall once a year be credited with a total of 100 working days of paid sick leave including days to which he/she is entitled under the accumulated sick leave provision. Such days of paid sick leave, in addition to those required by the accumulated sick leave provision (EC 45191) shall be compensated at 66-2/3% of the employee's regular salary. The paid sick leave authorized under this rule shall be exclusive of any other paid leave, holidays, vacation, or compensating time to which the employee is entitled and shall be used only after exhaustion of all other paid leave.

B.      The allowable total paid additional sick leave days in a fiscal year shall be computed by subtracting the total number of sick leave days accumulated by the employee under EC 45191 from 100.

C.      Additional paid sick leave shall not be accumulated from year to year.

60.700.4    Termination of Sick Leave

A.      An employee who has been placed on paid or unpaid sick leave may return to duty at any time during the leave, provided that he/she is able to resume the assigned duties and, if the leave has been for more than 20 working days, provided that he/she has notified the District of his/her return at least three working days in advance.

B.      If, at the conclusion of all sick leave and additional leave, paid or unpaid, granted under these rules, the employee is still unable to assume the duties of his/her position, he/she will be placed on a reemployment list for a period of 39 months in the same manner as if he/she were laid off for lack of work or lack of funds.

60.700.5    <u>Industrial Accident and Industrial Illness Leave</u>

    A.    Leaves resulting from an industrial accident or industrial illness shall be granted in accordance with the provisions of Education Code Section 44043 and 45192 and this rule.

    B.    An employee in the classified service who is absent from duty because of an illness or injury defined as an industrial accident or industrial illness under provisions of the Workers' Compensation Insurance law, shall be granted paid industrial accident leave for each such accident or illness while receiving temporary disability benefits from Workers' Compensation provided that:

        1.    He/she has probationary or permanent status.

        2.    In the opinion of the Superintendent or his/her designated representative the illness or injury constitutes an industrial accident or illness, or, if contested by the District, it is ultimately determined to be work connected.

    C.    Paid industrial accident leave shall be for not more than 60 working days in any one fiscal year.

    D.    Paid industrial accident leave shall be reduced by one day for each day of authorized absence regardless of the temporary disability allowance made under Workers' Compensation. Days absent while on paid industrial accident leave shall not be deducted from the number of days of paid illness leave to which an employee may be entitled.

    E.    If the employee is still unable to return to duty after exhausting paid industrial accident leave, the employee shall be placed on paid illness leave if he/she is eligible therefor. Accumulated illness leave will be reduced only in the amount necessary to provide a full day's wages or salary, as indicated in the employee's assignment, when added to compensation without penalties from the State Compensation Insurance Fund.

    F.    After all paid illness leave has been exhausted following a paid industrial accident leave, an employee may choose to receive pay from accrued vacation, earned compensatory time, or other earned leave to the extent necessary to make up the employee's regular salary when receiving a temporary disability allowance without penalties from the State Compensation Insurance Fund.

        After the expiration of all paid leave privileges, the appointing authority may place the employee on an industrial accident leave without pay. The total time of all leave benefits provided under this rule, including unpaid industrial accident leave, shall not exceed 36 months for any one industrial accident or industrial illness.

G.  Upon return to service from any paid or unpaid leave resulting from an industrial accident or industrial illness, an employee shall be assigned to a position in his/her former class ahead of any employee with a lesser amount of seniority. If no vacancy exists in his/her former class, he/she may displace the most recently appointed employee in the class with less seniority. If an employee's former class has ceased to exist, the employee may be reassigned or placed on a suitable reemployment list.

H.  An employee returning from such paid or unpaid leave of absence shall not have any loss or gain in status or benefits other than that which is specifically provided in applicable provisions of the Education Code and Personnel Commission rules. An employee shall continue to receive seniority credit for all purposes while on such a paid or unpaid leave of absence.

I.  When all paid or unpaid leaves of absence have been exhausted following an industrial accident or industrial illness, the employee's name shall be placed on the reemployment list for the class from which he/she was on leave for a period not to exceed 39 months.

J.  While an employee is on any paid leave resulting from an industrial accident or industrial illness, the employee's salary paid by the District shall not, when added to a normal temporary disability allowance award without penalties granted the employee under the State Workers' Compensation Insurance laws, exceed the employee's regular salary. A permanent employee's salary is computed on the basis of the number of hours and days in his/her basic daily assignment. An employee who is not permanent shall have his/her regular salary computed on the basis of the average number of hours worked each month in which the employee was in paid status during the preceding year.

During all paid leaves resulting from an industrial accident or industrial illness, the employee shall endorse to the District all wage-loss benefit checks received under State Workers' Compensation Insurance laws. The District shall issue to the employee appropriate warrants for payment of wages, loss of benefits, salary, and/or leave benefits and shall deduct normal retirement and other authorized contributions.

Final allowance for permanent industrial disability settlements shall not be subject to remittance to the District under this rule.

60.700.6  <u>Bereavement Leave</u>

A.  Regular employees in the classified service shall be allowed regular pay for not more than three working days when absent on account of the death of any member of his/her immediate family. Bereavement leave with pay shall be extended to a maximum of five days when out-of-state travel is necessary in connection with the bereavement.

B.    Member of the immediate family means: mother, father, stepfather, stepmother, foster parent, guardian, father-in-law, mother-in-law, or a grandparent or grandchild of the employee or the spouse of the employee, and the spouse, son, son-in-law, daughter, daughter-in-law, brother, brother-in-law, sister, sister-in-law, half brother, half sister of the employee, or any relative living in the immediate household of the employee.

C.    Regular classified employees may specify in the Classified Personnel Office one person other than that provided in Education Code and rules of the Personnel Commission with whom they have a unique relationship and, upon the death of that person, be granted bereavement leave. No extension of that list will be permitted.

60.700.7    Personal Necessity and Personal Leave (EC 45207)

A.    A classified employee may elect to use, not to exceed six days in any one fiscal year, sick leave which has been earned pursuant to Education Code Section 45191 for personal necessities which fall in the following categories:

1.    Bereavement leave which may be necessary beyond that authorized in these rules and law.

2.    Accident, involving his/her person or property, or the person or property of a member of his/her immediate family.

3.    Appearance in any court or before any administrative tribunal as a litigant party, or witness under subpoena or any order made with jurisdiction, and for which no other leave is provided for in these rules.

B.    Immediate family as used in this section shall have the same meaning as provided in Section 45194 of the Education Code.

C.    A classified employee may use two days of sick leave during the fiscal year for personal reasons.

60.700.8    Jury Duty and Witness Leave

A.    Leave of absence for jury service shall be granted to any classified employees who have been officially summoned to jury duty in local, State, or Federal Court. Leave shall be granted for the period of the jury service. The employee shall receive full pay while on leave provided that the jury service fee for such leave is assigned to and the subpoena or court certification is filed with the District. Request for jury service leave should be made by presenting the official court summons to jury service to the Personnel Director.

B.    Leave of absence to serve as a witness in a court case shall be granted an employee when he/she has been served a subpoena to appear as a witness, not as the litigant in the case. The length of the leave granted shall be for the number of days in attendance in court as certified by the clerk or other authorized officer of the court. The employee shall receive full pay during the leave period, provided that the witness fee for such leave is assigned to and the subpoena or court certification is filed with the District. Request for leave of absence to serve as a witness should be made by presenting the official court summons to the Personnel Director.

C.    The jury service fee and witness fee referred to in A and B, respectively, do not include reimbursement for transportation expenses.

D.    Payment by the District to classified employees of the Berkeley Unified School District is authorized for time devoted to jury duty which would normally be spent in their regular assigned work, less the income received from services rendered as a juror. (EC 44036)

E.    If an employee's jury duty does not interrupt his/her work day he/she shall fulfill his/her assignment. Further, when an employee is released from jury duty in time to return to work even part of his/her assigned time he/she shall do so, with the provision that ample traveling time shall be allowed between location of jury duty and his/her work station.

## 60.700.9   Absence for Examination

Every employee in the classified service shall be permitted to be absent from his/her duties during working hours in order to take any examination for promotion in the District without deduction of pay or other penalty, provided that he/she gives two days' notice to his/her immediate supervisor.

## 60.700.10   Military Leave

Military leave of absence shall be granted and compensated in accordance with the Military and Veterans Code Sections 389 and 395 and that which follows.

## 60.700.11   Leave of Absence Without Pay

A.    Leave of absence without pay may be granted to a permanent classified employee, upon the written request of the employee and the approval of the Superintendent or his/her designated representative, subject to the following restrictions:

1.    Leave of absence without pay may be granted for any period not exceeding one year, except that leave of absence for military service shall be granted as provided by the Education Code and the Military and Veterans Code, and leave of absence for service in the Peace Corps, or the Red Cross or Merchant Marine during time of national emergency, may be granted for a period not to exceed 24 months.

2.     The granting of a leave of absence without pay gives to the employee the right to return to his/her position at the expiration of his/her leave of absence, provided that he/she is physically and legally capable of performing the duties. The position may be filled only for the duration of the leave.

B.     The Governing Board may, for good cause, cancel any leave of absence by giving the absent employee due notification. The employee may appeal the cancellation to the Personnel Commission which shall investigate and hear the appeal. The appeal by the employee will stay the cancellation directive of the Governing Board until action by the Personnel Commission, which shall be final and binding.

C.     An employee may make a written request to the Governing Board to return to work prior to the expiration date of the leave. The Governing Board may approve or reject the request.

D.     Failure to report for duty within five working days after a leave has been cancelled or expires shall be considered abandonment of the position and the employee may be terminated by the Board of Education. The termination may be appealed to the Personnel Commission in the same manner as any other dismissal for cause. This provision is not applicable to military leave.

E.     If an employee cannot be placed in a vacant position in his/her class upon return from leave of absence, he/she shall have bumping and reemployment rights, in accordance with his/her seniority, in the same manner as if he/she had been laid off for lack of work or lack of funds on the date his/her leave expires.

60.700.12     <u>Maternity Leave</u>

A.     Maternity leave is the absence from the District by a parent in connection with the arrival of a new child by natural birth or adoption.

B.     For the first 89 days of maternity leave, the employee shall receive 66-2/3% of the employee's regular salary and shall continue to receive benefits. Thereafter, the employee shall be on extended leave of absence until his/her return. The employee shall have the right to pay any or all fringe benefit premiums during this period.

C.     If a woman desires to return to work during the time she is nursing, reasonable efforts will be made to arrange for her schedule in such manner as to give her time to nurse her child.

D.   After consulting with the Director of Classified Personnel, a woman or man may begin his or her maternity leave at such time as she and/or her doctor deem proper.

E.   Maternity leave may be up to 5 years in duration with the provision that if it extends beyond the first year in which it is taken it must be in annual increments.

F.   In the event of personal or medical necessity, a prospective or new father may take personal or maternity leave.

60.700.13   <u>Leave to Serve in an Exempt. Temporary, or Limited-Term Position</u>

A.   Any permanent classified employee who accepts an assignment within the District to an exempt, temporary, or limited-term position shall, during such assignment, be considered for status purposes as serving in his/her regular position, and such assignment shall not be considered separation from service.

B.   The employee may, with the approval of the appointing authority, voluntarily return to his/her position or a position in the class of his/her permanent status prior to the completion of service in an exempt, temporary, or limited-term position.

60.700.14   <u>Leave of Absence for Study</u>

A.   Every regular classified employee who has completed seven consecutive years of service in regular status with the District shall be eligible to apply for a leave of absence for study purposes. The granting of such leave shall be entirely discretionary with the appointing authority. When a study leave has been authorized and taken, an additional seven years of service, after return to duty from the last leave, must be completed before another study leave may be granted.

B.   Study leave can be for any period of time not to exceed one year and may be taken in any time increments as approved by the Governing Board, but must be completed within three years after the initial part of the leave was commenced. If the leave is not continuous, the service performed between the leave intervals shall be credited toward future-study-leave eligibility.

C.   Any leave granted and taken under this rule shall not constitute a break in service for any purpose, but the leave time shall not count toward eligibility for a future study leave.

D.   The employee must file an application with the Governing Board for a leave of absence under this rule and must outline:

1. His/her work history with the District (e.g., positions held and length of service in each).

2. Length of leave requested and time period in which the leave will be completed if granted.

3. The purpose for which the leave is requested. The application must include the complete course of study to be pursued, institution giving the course, costs involved, degree or credits to be granted, and other pertinent data.

4. Amount of compensation requested while on leave, if desired.

5. Service, if any, to be performed by the employee for the District during the leave.

6. The benefits to be derived by the District by the granting of the leave.

60.700.15    <u>Leave of Absence for Retraining</u>

In the event that the Governing Board contemplates the abolition of positions in the classified service and creation of new positions because of automation, technological improvements, or for any other reason, it may provide for retraining of displaced employees in accordance with this rule.

A. To be eligible for retraining leave, an employee must:

1. Have served at least three years in the District.

2. Be serving in a position which the District contemplates abolishing, or show that the retraining will clearly benefit the District.

3. Indicate a willingness to undergo the prescribed training program.

60.700.16    <u>Transfer of Sick Leave from Another District</u> (EC 45202)

Any classified employee of any school district who has been an employee of that district for a period of one calendar year or more and who terminates employment with that district for the sole purpose of accepting a classified position with this District and who subsequently, within 30 days of termination of his/her former employment, accepts a classified position shall be credited with all of the earned but unused sick leave which was credited to him/her in his/her former school district.

60.700.17   <u>Election Leave</u>

Under Electronics Code Section 5699, all employees on the day of every general, direct primary, or presidential primary election at which they may vote, are entitled to take two hours off during their working day between the time of opening and the time of closing the polls without indicating any need or necessity for the two-hour period.  No penalty shall be imposed on such employees, and no deduction shall be made from their usual salary or wages on account of such absence.

## 60.800        LAYOFF

60.800.1        Procedure Regarding Layoff

    A.    When classified employees are laid off for lack of work or lack of funds, layoff shall be made in inverse order of seniority in the class in which the layoff occurs.  The employee who has been employed the shortest time in the class, plus higher classes, shall be considered to have the least seniority and, therefore, shall be laid off first.

    B.    In determining seniority for purposes of order of layoff and reemployment of classified employees, "length of service" means hire date.  Hours in paid status does not mean any service performed prior to entering into a probationary or permanent status in the classified service of the District except service in restricted positions.

    C.    The names of permanent and probationary employees thus laid off shall be placed upon the reemployment list for the class from which they were laid off.  Names on the reemployment list shall be in the relative order of seniority, and such eligibility shall continue for 39 months from date of layoff.

    D.    All permanent employees compensated on a monthly basis who are to be laid off under the provisions of this chapter, shall be given written notice of such layoff at least fifteen days prior to the effective date thereof.

60.800.2        Rights of Employees Laid Off for Lack of Work or Funds

In addition to the procedure and rights prescribed in Rule 60.800.1, permanent employees in the classified service shall have the following rights:

    A.    Bumping — A permanent employee in the classified service who is laid off from a class and who has previous service in an equal or lower class shall have the right to bump an employee with less seniority in that class.  Seniority shall include the total of the previous service in the equal or lower class plus service in the class from which layoff occurs and in higher classes.

    B.    Voluntary Demotion or Transfer — A permanent classified employee who will suffer a layoff for lack of work or funds, despite the exercising of bumping rights in order to avoid layoff may accept a voluntary demotion to a vacant position in a lower class or transfer to an equal class, provided that he/she is qualified to perform the duties thereof and provided further that the appointing authority approves the voluntary demotion.

    C.    Any person who was subject to being, or was in fact, laid off for lack of work or lack of funds and who elected service retirement from the Public Employees' Retirement System shall be placed on an appropriate reemployment list.  The District shall notify the Board of Administration of the Public Employee' Retirement System of the fact that the retirement was due to layoff for lack of work or of funds.  If he/she is subsequently subject to reemployment and accepts, in writing, the appropriate vacant position, the

District shall maintain the vacancy until the Board of Administration of the Public Employees' Retirement System has properly processed his request for reinstatement from retirement.

60.800.3    Limited-Term Positions

A.    No regular employee shall be laid off from any position while employees serving under limited-term appointment are retained in positions of the same class in the same organizational unit unless the regular employee declines the limited-term position.

B.    A limited-term employee may be laid off at the completion of his/her assignment without regard to the procedure set forth in this rule.

C.    Temporary employees whose services have been discontinued because of lack of work, lack of funds, or both, shall hold no reemployment rights as such.

**60.900**          **RESIGNATION**

When an employee desires to resign from his/her position, he/she shall present his/her resignation, in writing, to the appointing power, and a copy of such resignation shall immediately be filed by the appointing power with the Personnel Director.

A resignation relates only to the specific position from which the employee resigns and does not impair his/her rights to other positions which he/she may hold on eligibility lists except that an employee who resigns shall have his/her name removed from promotional eligibility lists.

An employee resigning from the service of the District shall give the governing power at least 15 calendar days' notice in advance.  Failure to do so may result in forfeiture of all accumulated rights or the right to any future employment with the District.

## 60.1000          DISCIPLINARY ACTION AND APPEAL

60.1000.1     Causes for Suspension. Demotion. Dismissal (EC 45303)

    A.    Permanent employees in the classified service may be reprimanded, demoted, or dismissed for any of the following causes provided that specific instances must be set forth as to any causes enumerated in the headings below. This section shall not be construed to prevent layoffs for lack of work or lack of funds.

        1.    Incompetency and inefficiency in the performance of assigned duties (Cumulative).

        2.    Insubordination (including but not limited to assigned work) or any willful and persistent violation of the provisions of the Education Code or of the rules, regulations or procedures adopted by the Board of Education, Superintendent, or the Personnel Commission pursuant to it.

        3.    Dereliction of or inattention to duty (Cumulative).

        4.    Failure to maintain the requirements of the classification, e.g. license or certification.

        5.    Failure of good conduct tending to injure the public service.

        6.    Dishonesty on matters pertaining to employment and duties.

        7.    Discourteous, offensive or abusive conduct or language toward other employees, pupils, or the public (Cumulative).

        8.    Use of alcoholic beverages, non-prescribed narcotics or restricted substances while on duty or reporting to work while under the influence of alcohol, non-prescribed narcotics or restricted substances (Cumulative).

        9.    Conviction of any criminal act by a court of law involving moral turpitude or other serious crime which indicates the person is a poor employment risk.

      10.    Political activities engaged in by an employee during his/her assigned hours of employment (Cumulative).

      11.    Unexcused absence or abuse of sick leave privileges or repeated and unexcused tardiness.

      12.    The discovery or development during an initial probationary period of any physical, emotional, and/or mental condition which would have precluded acceptance as eligible for assignment.

13.    Abandonment of position – that is absences without permission in excess of five working days.

B.    This section shall not be construed to prevent layoffs for lack of work or lack of funds. (EC 45302)

C.    SUSPENSION OF CLASSIFIED EMPLOYEE DUE TO ACCUSATION OF CRIME:

A regular employee charged with the commission of any offense as specified in Section 45304 of the Education Code by complaint, information, or indictment filed in a court of competent jurisdiction may be suspended as provided for in Section 45304 of the Education Code. Such a suspension will be processed as an involuntary personal leave in accordance with the provisions of the Rule relative to suspensions. The employee may receive compensation as provided for in the Education Code section. Such suspension shall be reviewed by the Personnel Commission every 90 days. (EC 45304)

60.1000.2    <u>Procedure for Disciplinary Action</u>

A.    No employee in the classified service shall be suspended, reprimanded, demoted, dismissed, or in any way discriminated against because of his/her political or religious affiliations or race, color, sex, national origin or ancestry, or marital status, or pregnancy, subject to the provisions of Paragraph A.3, Rule 60.1000.1.

B.    In handling disciplinary matters, involving suspension, demotion, and dismissal, it is intended that progressive steps be utilized to the greatest extent permitted be individual circumstances, and that discipline shall be commensurate with the offense. Such progressive steps may be as follows, except that steps 1 and 2 are mandatory in dealing with causes of a cumulative nature unless the severity of the offense warrants disciplinary action at a higher appropriate level.

1.    Verbal reprimand.

2.    Written reprimand with a copy to the employee's personnel file.

3.    Suspension without pay.

4.    Involuntary demotion.

5.    Dismissal.

Causes of cumulative nature are those contained in 60.1000.1A – 1, 3, 7, 8, and 10.

C.     Supervisors shall have orally or in writing recommended corrective action whenever an employee fails to meet the required standards or conduct or performance for a cumulative offense.

D.     If disciplinary action is a written reprimand, the employee shall be given a copy and it shall include notice of the employee's right to respond within ten working days before the reprimand is included in the employee's personnel file.

E.     When a regular employee is to be suspended, demoted, or dismissed, specific written charges shall be prepared and presented for action of the Governing Board. The charges must be so clear that the employee will know the exact complaints and may be expected to respond to them.

F.     When formal disciplinary action has been taken by the Governing Board, the action and the charges shall be reported to the Personnel Director, who shall within 10 working days notify the employee and shall report the action to the Commission.

G.     Notice to the employee shall include a copy of the charges and a statement of his/her right to appeal, if any, together with a copy of Rule 60.1000.3. Such notice shall be transmitted by registered or certified mail to the last known address of the employee within 10 working days of the effective date of the disciplinary action.

H.     Notwithstanding the procedures prescribed above, an employee may be suspended prior to Board approval when in the opinion of the Superintendent or in his/her absence, the Superintendent's designee, such suspension is necessary to protect the interest of the District. Such suspension is subject to later ratification by the Board and approval of charges which must be transmitted to the employee within 10 working days after the date of suspension. Requirements in regard to charges and notifications must be met when the Board ratified the administrative action.

I.     A regular employee charged with the commission of any sex offense as defined in Section 44010 or any narcotics offense as defined in Section 44011 of the Education Code by complaint, information, or indictment filed in a court of competent jurisdiction may be suspended as provided for in Section 45304 of the Education Code. Such a suspension will be processed as an involuntary personal leave in accordance with the provisions of this rule relative to suspensions. The employee may receive compensation as provided for in the Code section. Such suspension shall be reviewed by the Personnel Commission every 90 calendar days.

J.     Dismissal shall cause removal of the employee's name from all employment lists.

K.      Failure to appeal, as provided below, shall make he action of the Governing Board final and conclusive.

L.      Suspension, without pay, shall not exceed the time limitations prescribed in Education Code Section 13742.

60.1000.3    <u>Appeal</u> (EC 45305)

A.      A permanent employee who has been suspended, demoted, or dismissed may appeal to the Personnel Commission with 14 working days after having been furnished with a copy of the written charges by filing a written answer to such charges. Appeal can be made only on the following grounds:

    1.      That the procedures set forth in these rules have not been followed.

    2.      That the action was taken because of political or religious acts or opinions or affiliations, or race, color, national origin or ancestry, sex, or marital status or pregnancy.

    3.      That there has been abuse of discretion.

    4.      That the action taken was not in accord with the facts.

    5.      Penalty invoked is excessive.

B.      A permanent employee who has not served the full probationary period for the class and who is demoted to the class from which promoted may request an investigation by the Commission within 14 days after the receipt of the copy of written charges. The request for the investigation shall be based only on one or more of the five grounds provided above for appeals. The Commission shall conduct an investigation confined to the grounds set forth in the charges and in the request for the investigation but shall not be required to follow the procedures for appeals and hearings set forth in these rules. The Commission shall notify the Governing Board and the employee in writing of its findings. If the Commission's investigation and findings, however, indicate any discriminatory action, the Commission may order a formal hearing. The decision of the Commission shall be binding on the Governing Board.

60.100.4    <u>Hearing Procedure</u> (EC 45312)

A.      When the Commission has determined that it has jurisdiction over an appeal, a hearing shall be held. The Commission shall appoint a hearing officer, who may be the Commission, a Committee of the Commission, a Commissioner or hearing officer employed by contract or as a professional expert to hear and determine the charges.

1.     The Commission, Committee of the Commission or hearing officer shall determine the time and place when the charges will be heard and notify the Director of Classified Personnel who shall inform the employee concerned and the employee's representative.

2.     Notification shall be by letter normally three weeks preceding date of hearing. Letter shall request names of witnesses to be subpoenaed and date by which witnesses' names must be given to the Director.

B.     Duties of the Commission, Committee of the Commission or hearing officer, at hearing:

1.     When a Committee of the Commission is assigned to hear the appeal it shall elect one of its members to be Chairperson. The Commission, Committee or Hearing Officer shall have full authority and responsibility for the proper and orderly conduct of the hearing.

2.     Proceed with the hearing at the time, place and date previously set, regardless of the presence or absence of the parties concerned, unless good cause exists for postponement.

3.     Have full recourse to the resources of the District in the orderly conduct of the hearing.

4.     Adjourn, postpone, continue or reopen a hearing as deemed advisable.

5.     Have a stenographic report made of the proceedings. A court reporter shall be hired at the discretion of the Commission, Committee, or Hearing Officer in those cases in which the nature of the charges is serious or when appellant is represented by counsel or for other reasons when deemed appropriate.

C.     Conduct of the hearing:

1.     Establish the issue by reading the charges forming the basis for its action.

2.     Administer oaths to all parties testifying.

3.     Assure proper identification of parties and their representatives.

4.     District shall present its case first, as appropriate.

5.     Appellant shall be responsible for the conduct of his/her case.

6.     Both the District and the appellant shall have the right of rebuttal and cross examination.

7.      Participating Commissioners, or the Hearing Officer, shall have the prerogative to question witnesses at any time.

8.      Closing argument shall be given by the appellant or his/her representative followed by the District's closing arguments.

9.      Assigned Commission, Committee, or Hearing Officer shall adjourn the hearing when satisfied that testimony taken is adequate to serve as basis for decision.

10.     After completion of testimony by parties, the Commission or Committee, or Hearing Officer, shall notify parties that a written decision will be mailed to the appellant and the District within a reasonable time of the hearing.

D.    Recommendation:

1.      The decision should be written.

2.      The decision should touch on all pertinent allegations made in the Statement of Charges.

3.      The decision should clearly state the result.

E.    Hearing Officer's Recommendation to Full Commission:

1.      Recommendations concerning the findings should be made to the Commission within thirty (30) days after conclusion of the hearing. The Commission may accept, reject or call for additional evidence deemed material, and the Commission's order or decision, with or without such additional evidence, shall be final. Any rejection or amendment shall be based on a review of the transcript of the hearing or upon results of such supplementary hearing or investigation as the Commission may order.

2.      The Commission shall render its judgment as soon as possible after receipt of recommendation of the Hearing Officer and in no event later than 15 days unless unusual conditions prevent a decision within the allotted time.

3.      The decision of the Commission is final.

60.1000.5    Reinstatement (EC 45307)

If the Commission sustains the employee, it may order paid all or in part of his/her full compensation from the time of suspension, demotion, or dismissal, and it shall order his/her reinstatement. Upon notification of the Commission's decision, the Board of Education shall reinstate the employee and authorize such compensation as the Commission directs.

60.1000.6    Cost of Hearing

All costs for the services of a Hearing Officer employed by contract or as a professional expert and the court reporter including but not limited to, per diem expenses, the Hearing Officer and court reporter's travel and assistance expenses and cost of any hearing room will be borne equally by the District and the employee's participating representative. All other costs will be borne by the party incurring them. Costs of transcripts shall be equally borne by the District and participating parties, if the transcript is requested by the hearing officer or both parties. If a copy of the transcript is requested by only one party that party shall incur the expense.

## **CHAPTER 70:  WAGE AND SALARY PROVISIONS**

**70.100**          **Application of Salary Schedules**

70.100.1    Initial Placement
70.100.2    Salary Surveys
70.100.3    Promotions
70.100.4    Step Advancement
70.100.5    Placement After Leave of Absence
70.100.6    Placement When Demoted
70.100.7    Differential Pay


**70.200**          **Work Periods and Overtime**

70.200.1    Workday and Workweek
70.200.2    Overtime Defined
70.200.3    Compensation for Overtime
70.200.4    Classifications Exempt from Overtime
70.200.5    Rest Periods


**70.300**          **Holiday Pay**

70.300.1    Eligibility (Holidays)
70.300.2    School Holidays


**70.400**          **Payrolls**

70.400.1    Official Roster
70.400.2    Payroll Audit


**70.500**          **Benefits for Part-Time Employees**

**70.600**          **Longevity Merit Program**

70.100        APPLICATION OF SALARY SCHEDULES

70.100.1      Initial Placement

All new employees shall be appointed at the hiring rate for the class as approved by the Commission. The hiring rate shall be the first step of the schedule except for classes where recruitment efforts have indicated difficulty in recruiting at that step. An accelerated hiring rate may be set, with the approval of the Board and the Commission, at any step of the schedule of the class.

70.100.2      Salary Surveys

A.    A salary survey shall be made:

1.    Whenever a new class is created.

2.    Annually, of all benchmark classes in the classified service.

3.    When directed by the Commission.

B.    Employees, employee organizations or the administration may request a salary survey of a class or classes by directing a written communication to the Commission and setting forth the reasons for study.

C.    Data obtained, in a salary survey shall be made available to interested parties including the administration, employee organizations and representatives.

70.100.3      Promotions

When an employee is promoted from a position in one classification to a position in a higher classification, the employee shall be placed on the step in the salary range of the higher class next above the rate he/she had received in the lower classification. That employee, upon successful completion of seventy-five (75) percent of the total number of working days in the fiscal year, shall be entitled to salary increment on the next increment date, July 1 or January 1. However, if the assigned step in the salary scale of the higher class results in less than a five (5) percent increase, the employee upon satisfactory completion of six months' probationary service in the higher class shall receive an additional step advance in the higher class. The employee shall not be eligible for another step advance until one year shall have elapsed. The advance shall become due on the next regular increment date, July 1 or January 1.

70.100.4    Increments to Probationary Employees

The manner in which starting salaries of new employees are to be increased to Step B on salary schedules at the end of the probationary period shall be accomplished as herein stated:

A.    The first salary increment shall be granted newly employed members of the classified staff upon completion of six (6) months' employment in probationary status.

B.    This advance in salary shall become effective January 1 when the period of Probationary Employment is completed between July 2 of the prior year and January 1 of the current year, inclusive; it shall become effective on July 1 when the period of Probationary Employment is completed between January 2 and July 1, inclusive of the current year.

C.    Each succeeding annual increment shall become effective on the increment date, July 1 or January 1.

70.100.5    Placement After Leave of Absence

Upon return from leave of absence, an employee shall be placed on the same step of the range for the class which he/she had achieved prior to the leave, regardless of changes in rate or range applicable to the class.

70.100.6    Placement When Demoted

A.    An employee who accepts voluntary demotion shall be placed on the step of the range of the lower class which is closest to the rate he/she earned in the higher class, provided that he/she shall not receive a salary increases thereby.

B.    The order in an involuntary demotion shall specify the step of the schedule at which the employee shall be placed. Step advancement shall be in accordance with Rule 70.100.3.

70.100.7    Differential Pay

A.    Shift Differential

All positions, the regularly assigned time of which requires the incumbents to work half time or more between the hours of 7 p.m. and 7 a.m., shall be paid at a rate that is 5% higher than the rate they would receive as a daytime employee in that class for that period between 7 p.m. and 7 a.m.

Employees assigned to night work on a continuous basis who are ordered to temporary daytime work for periods not to exceed 10 working days each shall suffer no reduction in compensation by reason of the change. On the eleventh working day, the employee shall revert to the daytime rate.

B.    Language Differentials

Regular, full-time employees using bilingual skills shall be paid a differential of $15 per pay period if required to exercise the ability to translate to and from English by speaking, reading, and writing a foreign language or $10 per pay period if required to converse in the foreign language.

In order to qualify for one of the above differentials, the employee must be an incumbent of a position approved by the Board of Education and Commission as requiring multiple languages in accordance with Section 30.200.8.

C.    Management and Confidential Differentials

All employees in positions designated by the Governing Board as Management or Confidential shall receive a 5 % differential per pay period. The differential shall be applied to the base salary.

The differentials authorized under paragraphs B and C are available to regular part-time employees but will be prorated in the same ratio as the number of hours in their basic regular assignment bears to full-time employment of 7-1/2 hours per day, 37-1/2 hours per week, or 163 hours per pay period.

## 70.200          WORK PERIODS AND OVERTIME

70.200.1     Workday and Workweek

   A.     The maximum number of hours of regular employment of an employee is 7-1/2 hours a day and 37-1/2 hours a week. However, the Governing Board may employ persons for lesser periods of time and may, through authorized administrators, order and authorize employees to work in excess of 7-1/2 hours in one day or 37-1/2 hours in one week.

   B.     Under the Fair Labor Standards Act, single workweek is the standard and does not permit averaging of hours over two or more weeks.  For example, if an employee works 27-1/2 hours one week and 47-1/2 hours the next, he/she must receive overtime pay for the hours worked beyond 37-1/2 in the second week even though the average number of hours worked in the two weeks is 37-1/2. This is true regardless of whether the employee works on a standard or swing shift schedule and regardless of whether he/she is paid on a daily, weekly, biweekly, monthly or other basis.

          A workweek need not coincide with the calendar week but may begin on any day and at any hour of the day. For the purpose of computing overtime pay under the FLSA, a single workweek may be established for a district as a whole or different workweeks may be established for different employees or groups of employees. Once the beginning time of an employee's workweek is established, it remains fixed but may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act (FLSA).

70.200.2     Overtime Defined (EC 45128)

   A.     Overtime is ordered and authorized working time in excess of 7-1/2 hours in one day or 37-1/2 hours in one week. No one shall order or authorize overtime unless it is compensable as provided below.

   B.     No extension of the 7-1/2 hour daily or 37-1/2 hour weekly periods shall be made without prior approval of the Personnel Director.

70.200.3     Compensation for Overtime

   A.     Compensation in cash shall be paid at a rate equal to one and one-half times of regular rate of pay for the overtime worked. Differentials regularly received by the employee shall be included in determining his/her regular rate of pay.

   B.     Utilization of compensatory time as a method of compensating employees for overtime work is eliminated by the provision which requires that an employee receive compensation for overtime employment at a rate not less than one and one-half times the regular rate at which he/she is employed.

C.    Overtime is defined to include any time required to be worked in excess of 7-1/2 hours in any one day and in excess of 37-1/2 hours in any calendar week. If a Governing Board establishes a workday of less than 8 hours but more than 35 hours for all of its classified positions or for certain classes of classified positions, all time worked in excess of the established workday and workweek shall be deemed to be overtime. The foregoing provisions are not intended to apply to properly designated part-time positions with an assigned workday of less than 8 hours and a workweek of less than 40 hours even though all such positions constitute all of the positions within a class.

D.    Overtime is to be paid for on the hourly payroll following the month in which time is served. Overtime will be credited for service of one-half hour's duration or more. Any overtime served for less than one-half hour in a regular workday shall not be cumulative.

70.200.4    <u>Classifications Exempt From Overtime</u> (EC 45130)

Positions in the following classifications shall be considered administrative, executive or professional and the regular rate of pay shall be considered full compensation for all the time that is required of the employees to perform the duties of the position:

       Building Coordinator
       Business Manager
       Controller
       Coordinator of Plant Operations
       Director of Classified Personnel
       Field Custodian
       Purchasing Agent
       Senior Classified Personnel Assistant
       Supervisor of Communication Center
       Supervisor of Custodians
       Supervisor of Data Processing Services
       Supervisor of Food Services
       Supervisor of Maintenance
       Supervisor of Public Information
       Supervisor of Transportation
       Supervisor of Senior High School Records Center
       Supervisor of Warehouse
       Systems/Financial Analyst

However, if an employee in this group of positions is required to work on Saturday or Sunday, if these days are not part of his/her normal assignment, or if required to work on an official holiday, he/she shall be granted compensatory time off equal to the actual number of hours worked.

70.200.5    <u>Rest Periods</u>

Employees shall be authorized rest periods of fifteen (15) minutes which insofar as practicable shall be in the middle of each work period. The authorized rest periods shall be based on the total hours worked daily at the rate of fifteen (15) minutes per four (4) hours. Rest periods are not authorized for part-time employees holding positions of less than four (4) hours duration. Authorized rest period time shall be counted as hours of work for which there shall be no deduction in pay.

**70.300**        **HOLIDAY PAY** (EC 45203)

70.300.1        Eligibility (Holidays)

    A.    Regular employees will be entitled to payment for authorized holidays, provided they were in a paid status during any portion of the working day immediately preceding or succeeding the holiday.

    B.    Holidays shall include January 1; January 15, Martin Luther King Day; February 12, Lincoln Day; the third Monday in February, Washington Day; Good Friday; May 19, Malcolm X Day; the last Monday in May, Memorial Day; July 4; the first Monday in September, Labor Day; September 9, Admission Day; the fourth Monday in October, Veterans Day; that Thursday in November proclaimed by the President as Thanksgiving Day and the Friday following; December 25 and a "shopping day" designated by the Superintendent; December 31; and other days that may be approved by the Board. If a holiday herein listed falls on Saturday, the preceding Friday shall be deemed to be the holiday; if a holiday herein listed falls on Sunday, the following Monday shall be deemed to be the holiday.

    C.    The holidays listed in B are guaranteed holidays for all members of the classified service who establish eligibility for same under A, above, except that employees serving in limited term positions are not eligible.

    D.    Classified employees required to work authorized holidays shall receive either a three-day weekend or double time and one-half (2-1/2) times their regular rate of pay in lieu of the holiday.

    E.    Any classified employee required to work a workweek other than Monday through Friday and as a result thereof loses a holiday to which the employee would have been entitled shall receive a substitute holiday or receive compensation in the amount the employee would have received had the holiday fallen within his/her normal work schedule. (EC 45206)

70.300.2        School Holidays

Regular employees who are not normally assigned to duty during the school holidays which include December 25 and January 1 shall be paid for those two holidays, provided that they were in a paid status during any portion of the working day of their normal assignment immediately preceding or succeeding the holiday period.

**70.400**          **PAYROLLS**

70.400.1          Official Roster

The Personnel Director shall maintain in his/her office an official roster containing the names and complete employment records of all employees holding positions under the provisions of the Act.

70.400.2          Payroll Audit

A.       The Personnel Director shall audit all initial assignments and changes of assignment for all classified personnel and, if found to be in accordance with existing laws and rules, shall certify the assignment for payment.  All changes of assignment, including transfer, change of hours, etc., shall be reported for certification by the Personnel Director.  Each payroll following the initial assignment and certification by the Personnel Director shall bear the certification of the department authorized to submit the payroll that all payments thereon are in accordance with the original certification by the Personnel Director.

The Personnel Director shall make period audits of all payrolls, and if he/she finds assignments not in accordance with the law and rules, he/she shall withdraw his/her certification and order payment stopped in accordance with the procedure described in Rule 70.400.2B.

B.       If, upon examination of a payroll or service report, it is found that any person named thereon has been employed in violation of any provision of the act or the rules and regulations, notice of such violation shall be made upon such payroll or service report, and such notice shall serve as official notification to the Governing Board and the County offices that the drawing, signing, or issuing of any warrant on the Treasurer or other disbursing officer of the County for the payment of salary or compensation to such person is lawful.

**70.500          BENEFITS FOR PART-TIME REGULAR EMPLOYEES**

A.    Benefits for persons employed less than full time are to be provided as authorized in Education Code Sections 45136, 45137 and 45197.

B.    Sick leave and all other benefits accorded part-time members of the classified service are to be prorated on the basis of assigned hours worked per day as it bears to 8 hours, 40 hours per week, weeks per month, or months to a calendar year.

C.    If an employee works 30 minutes or more for 20 consecutive workdays in excess of the assigned time, the assigned time will be adjusted to reflect actual work time and become "assigned time." (See Rule 60.200.4)

D.    If Rule C does not apply but an employee works, on an average, 50 minutes or more above the assigned time in any one quarter, he/she shall receive fringe benefits in the following quarter based on the average actual time worked in the preceding quarter.

E.    Vacation – unless vacation pay is provided on the basis of actual hours of paid regular service, rather than on an assigned time basis, vacation pay shall be granted on the basis of the average number of hours worked in a school year by the part-time employee.

<u>70.600</u>          **LONGEVITY MERIT PROGRAM**

Regular full-time and part-time classified employees shall be entitled to participate in the longevity merit program as outlined herein. Positions not included in the regular classified services are playground positions, noon directors, student workers, restricted positions for specific projects, limited-term assignments, and professional experts.

Employees who have performed at a satisfactory or better level as evaluated by their department head or supervisor and who have attained the specified number of years of service shall receive longevity merit salary payments. The following conditions will govern:

A.     The Classified Personnel Department shall be responsible for establishing anniversary dates of classified personnel and for maintaining annual evaluation records of work performance.

    1.     Anniversary date shall be the first day of the pay period following an employee's appointment to a full-time or part-time regular continuous position in the classified service that has been authorized by the Personnel Commission.

    2.     Anniversary date shall be established according to "1" for reemployed permanent classified employees with no credit allowed for the period that the employee was not on employed status with this District.

    3.     A permanent classified employee whose service is interrupted by Military Leave of Absence will be granted prior service credit.

    4.     A Leave of Absence for personal reasons (other than health) in excess of 6 months will constitute a break in service and a new anniversary date will be established at the time of reinstatement with no credit allowed for the period that the employee was not on employed status with the District.

    5.     Department Heads and Supervisors shall be responsible for an employee's evaluation report to be submitted annually to the Director of Classified Personnel not less than six months prior to an employee's anniversary date.

    6.     An employee who does not receive a satisfactory or better work rating must be given a copy of his/her documented performance appraisal in order to be aware of the resulting denial of longevity payment.

    7.     An employee denied a longevity merit payment will not be considered again for a period of one year and at such time, the employee will be considered on the same basis as outlined above. The employee's anniversary date for all longevity merit purposes shall always prevail.

8.      The Personnel Department will initiate payroll notifications for entitled longevity and merit salary increases.

9.      The one year service shall be credited on established anniversary date to incumbents who have worked in continuous positions not less than 75% of the total working days in the preceding year with satisfactory work ratings.

10.     Notifications of pertinent action regarding service which has been interrupted by Leave of Absence will be provided by the Personnel Department.

B.      The Classified Personnel Department shall be responsible for keeping salaried time reports and for issuing notices of Personnel Action for salary payments to eligible employees according to the following salary schedule.

| CLASSIFIED SALARY SCHEDULE | LONGEVITY MERIT PAY STEP |
|---|---|
| 10 years of service = $30 per month | 1 |
| 15 years of service = $35 per month | 2 |
| 20 years of service = $40 per month | 3 |
| 25 years of service = $50 per month | 4 |
| 30 years of service = $75 per month | 5 |

C.      Amounts of awards shall be the same for all regular employees regardless of length of current working assignments.

D.      Verification by the Accounting Department shall be accomplished by checking data on payroll notices and by the internal auditor through occasional review of employee records.

## CHAPTER 80:  MISCELLANEOUS PROVISIONS

### 80.100        Procedure for the Adjustment of Grievances of Classified Personnel

80.100.1    Purpose of the Adjustment Procedure
80.100.2    Steps in the Adjustment Procedure

### 80.200        Employer-Employee Relations

80.200.1    Meet and Confer
80.200.2    Unlawful to Strike or Engage in Other Concerted Activities

### 80.300  Political Activity

80.300.1    Political Activity Freedom
80.300.2    Cause for Disciplinary Action
80.300.3    Personal Candidacy
80.300.4    Leave of Absence
80.300.5    Intent

### 80.400  New Employee Clearances

80.400.1    Physical Examinations
80.400.2    Criminal Records Check
80.400.3    Availability of Personnel File

### 80.500    Violations

**80.100**          **PROCEDURE FOR ADJUSTMENT OF GRIEVANCES OF CLASSIFIED PERSONNEL**

80.100.1     Purpose of the Adjustment Procedure

The adjustment procedure is the medium through which permanent classified employees may seek adjustment of complaints arising out of alleged violations of established Board rules or policies or administrative procedures, working conditions, or job relations, including the complaint of one employee against another employee. There is an obligation on the part of an aggrieved employee to make known the existence of his/her complaint and the facts pertaining to his/her complaint within 30 working days of any specific or documented incident.

Matters excluded from the adjustment procedure shall be:

1.     Accusatory charges relating to the moral or professional fitness of an employee. Such charges shall be processed by the Board of Education.

2.     Matters specifically reserved for action or review by the Personnel Commission under Personnel Commission rules in effect at the time the events leading to the grievance occurred. Such matters shall be processed through normal channels by the Personnel Commission.

In cases where the Personnel Commission rule regulates less than the total procedure, the Commission may waive that rule and thereby provide that the dispute be settled through the adjustment procedure.

3.     Complaints about the subject matter of a Board rule or policy or administrative procedure, rather than the administration of the Board rule or policy or procedure. An employee with such a complaint should direct his/her suggestions for change through administrative channels to the Board or to the administrator who established it.

80.100.2     Steps in the Adjustment Procedure

A.     Informal Discussion

Informal discussion between an employee (or group of employees) and the immediate supervisor shall take place to attempt to resolve the problem. The conference shall be confined to the parties immediately concerned. A prompt and courteous examination of the facts to reach a satisfactory adjustment shall be attempted within one working day. The supervisor shall promptly communicate his/her decision and supporting reasons to the employee(s).

B.    Informal Review

1.    If the problem has not been resolved by the immediate supervisor, the employee may request, either orally or in writing, that an informal review by made by the next higher-level supervisor in whom authority exists to take corrective action. In the case of school-assigned personnel, this supervisor would be the site administrator unless the informal discussion was between the site administrator and the employee.

2.    The supervisor shall attempt to hold a conference within one working day after he/she has received the employee's request for an informal review.

3.    The employee must be in attendance; he/she may present his/her own case or may present the problem through a representative of his/her own choosing at the informal review and at any subsequent stage of the adjustment procedure. The supervisor and the respondent may each have a representative at the informal review and at any subsequent stage of the adjustment procedure. Any employee of the District may serve as a representative without prejudice or loss of salary, provided that he/she notifies his/her supervisor in advance.

4.    Following the oral presentation of the complaint to the supervisor, if the complaint has not been resolved to the satisfaction of all concerned, the employee or his/her representative shall prepare and present the complaint in writing to the supervisor and respondent, if other than the supervisor, within five working days. The respondent, if other than the supervisor, shall prepare a similar statement of his/her position and submit it to the supervisor, with a copy to the appellant.

5.    The supervisor shall communicate in writing his/her decision and supporting reasons to the appellant, the respondent, if other than the supervisor, the appellant's immediate supervisor, and the concerned division heads within five working days.

C.    Administrative Review

1.    If the appellant remains dissatisfied following the informal review, he/she may submit a written complaint within five working days after receipt of the decision, requesting a formal administrative review.

2.    The written request shall include: a clear, concise statement of the complaint; the act or condition on which it is based; the remedy desired; the persons involved; and the course of action that has been followed, including the decision rendered in the informal review, the reasons why the decision is being appealed, and the name of the appellant's representative, if any. The appellant may obtain assistance

from the District's employee relations department, or such other office as may be designated, throughout the course of the adjustment procedure.

3.    The appellant shall submit the complaint directly to his/her branch head (or equivalent level if the term branch head is not used) and route one copy of the complaint through the appellant's administrative chain of command, one to his/her division head for information purposes only, and one to the respondent.

4.    The branch head or the branch head's designated representative shall hold a conference with all interested parties on the complaint within five working days of receipt, unless there is mutual agreement that more time shall be allowed. Time limits in all subsequent stages of the adjustment procedure may be modified by agreement of the parties involved.

5.    The branch head of his/her designated representative shall submit written notice to the appellant and the appellant's supervisors of the decision in the matter within five working days after the conclusion of the conference. One copy shall be forwarded through the administrative chain of command, one to the division head for information, and one to the respondent, if other than the supervisor. The branch head shall implement the decision.

D.   <u>Formal Hearing</u>

1.    If the appellant is dissatisfied with the decision of the administrative review, he/she may send to the Superintendent, within five working days after receipt of the decision, a written request for a hearing before a hearing officer. A copy shall be sent to the respondent.

2.    The Superintendent or his/her designated representative shall make arrangements for the selection of a hearing officer. The hearing officer may be selected jointly by the appellant or his/her representative and the respondent. He/she may be a District's employee or a hearing officer not employed by the District. If a hearing officer is not selected jointly within five working days after the request for a hearing officer was filed with the Superintendent, the services of a hearing officer shall be requested by the Superintendent or his/her designated representative from the American Arbitration Association, the State of California's Office of Administrative Procedure, or other agency approved by the Board of Education.

3.    All fees for the services of an outside hearing officer shall be paid from the appropriate funds of the District.

4.      The District shall provide the hearing officer with all necessary technical and clerical staff assistance in preparing for and conducting the hearing and in preparing the findings.

5.      The hearing officer shall convene a hearing at the earliest practicable date after his/her selection. He/she shall establish his/her own procedures. He/she shall review the written statements submitted by the parties to the grievance. The appellant and the respondent may request the presence of witnesses. The hearing officer shall be empowered to direct the attendance of any District's employee at the hearing without loss of salary to the employee.

6.      The hearing shall be conducted in an informal manner with only those having legitimate interest in the problems at issue, as determined by the hearing officer, admitted. The appellant and the respondent shall each be limited to two days to present their respective positions. The hearing officer may admit evidence and testimony regarding incidents and occurrences that antedate the event giving rise to the grievance if he/she concludes that they have sufficient relevance as background information. He/she may also take such additional time as necessary to take such further testimony as he/she deems necessary. The hearing shall be conducted in accordance with fundamental rules of fairness and due process.

7.      The hearing officer shall render written findings, conclusions, and the recommendations within 10 working days of the termination of the hearing. The findings, conclusions, and recommendations shall be sent to the parties concerned and to the Superintendent for implementation.

E.    Board of Education Review

1.      If the appellant, the respondent, or the concerned division heads are not satisfied with the recommendations submitted by the hearing officer, a written appeal may be made to the Board of Education within five working days after receipt of the findings, conclusions and recommendations. A copy of the appeal shall be submitted to the Superintendent.

2.      A copy of the appeal shall be provided to the responding party, and he/she shall be required to submit his/her written reply to the points made in the appeal within five working days of receipt thereof.

3.      The Board of Education may review the records of the hearing, including the findings, conclusions, and recommendations, or conduct its own hearing or investigation of the appeal.

4.    When the Board of Education has reached a decision, the Clerk of the Board of Education shall notify the Superintendent and the individuals involved as soon as possible after the completion of the review of the appeal.  The superintendent shall implement the decision.

5.    The decision of the Board of Education on an appeal shall be final and conclusive.

**80.200          EMPLOYER-EMPLOYEE RELATIONS**

80.200.1     Procedures in Meeting and Conferring with Employee Organizations

The Board of Education, agents and the Personnel Commission, its officers and agents, are governed, as are employees and employee organizations, by the provisions of Article 5, Chapter 1, Division 10 (commencing with Section 44060) of the Education Code.

A.     The provisions of this rule relate to the activities of the Personnel Commission and its staff in their relationships with employee organizations. These provisions are based upon the Winton Act, Sections 44060 et seq. of the Education Code. The terms defined therein are used with identical meaning in this rule.

B.     Each organization which represents classified employees of the District and which desires the privileges and rights conferred by this rule shall submit to the Personnel Director a written statement, certified by the president or secretary of the organization, which includes the following items:

   1.     A statement of the form and affiliation of the organization and that it represents classified employees in their employment relationship with the District as one of its primary purposes.

   2.     The names and mailing addresses of the organization, its officers, and its designated representative to the Commission.

Any changes in the information required above shall be reported in writing to the Personnel Director at the earliest opportunity.

C.     The Personnel Director shall maintain a mailing list of registered employee organizations and shall, to the extent practicable, provide their designated representatives advance copies of agendas and reports to be considered by the Commission. Such courtesies shall be extended equally to all registered organizations.

D.     The Personnel Director, or such person as he/she may designate, shall meet and confer on behalf of the Personnel Commission with employee organizations. This provision shall not be construed as preventing the Commission from designating some other representative in a specific case, not from meeting and conferring on its own behalf.

E.     An employee organization may make a written request to the Commission to meet and confer. The request shall be signed by the organization's president or designated representative and shall set forth the subject or problem and the course of action desired. The subjects of meetings and conferences shall not include the adjustment of complaints for which procedures have been established by the Commission or Board of Education. Nothing in this paragraph shall be construed as inhibiting informal discussion between employee representatives and the Personnel Commission staff on any topic of mutual concern.

F.   If the subject of the request to meet and confer is within the scope of authority of the Board of Education, rather than the Personnel Commission, the Personnel Director shall refer the request to the Superintendent and shall so notify the employee organization. If the subject involves responsibilities of both the Board and Commission, the Personnel Director may invite the participation of the Board's representative in a joint meeting and conference with the employee organization's representative.

G.   The Commission's representative may permit Commission staff members to attend meetings and conferences as observers or resource personnel. The attendance of other persons who do not represent the Commission or employee organizations, or, in the case of joint meetings, the Board of Education, shall be subject to the mutual consent of the Commission's representative and the employee organization's representative.

H.   If the Commission has received requests from more than one employee organization to meet and confer on the same or closely related subjects, the Commission's representative may hold a joint meeting. Joint meetings shall be for information purposes only.

I.   The Commission's representative shall serve as chairperson of the meeting and conference. Meetings shall be conducted in an informal manner designed to enhance communication. A summary of each meeting shall be transmitted to the attending organizations by the chairperson.

J.   In the event of a persistent disagreement, the Commission's representative shall report the matter to the Commission. The Commission may, and, at the request of the employee organization, initiate the procedure for resolution of persistent disagreements. This procedure shall be followed until such time as the Commission adopts a rule establishing a different procedure for resolving persistent disagreements.

80.200.2   Unlawful to Strike or Engage in Other Concerted Labor Activities

A.   Education Code Section 13088 (SECTION ELIMINATED) specifically provides: The enactment of this Article shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public school employees." This section means that public school employees may not strike against the District, nor may they engage in other related types of activities in order to attempt to resolve grievances or differences, real or fancied.

B.   Any employee or groups of employees, either by their own initiative or through an employee organization, leaving their duty assignment or refusing to perform or failing to report to duty as a result of a strike or other concerted labor activities may be considered as having abandoned their positions and, if dismissed, shall not be eligible for reinstatement or subsequent employment with the District.  The Board may bring charges against any employee or employees for abandonment of position under this rule.

C.     Any classified employee who absents himself/herself from duty, for any reason, during the period of an unlawful strike, sitdown, slowdown, or other concerted activities shall be required to provide proper evidence that his/her absence was lawful and in no way an effort on the employee's part to further the strike or concerted activity.

D.     Any rule prescribed in this Act which permits personal or illness absences without evidence of necessity is suspended and void during any attempted strike or other concerted labor activity against the District.

## 80.300          POLITICAL ACTIVITY

80.300.1          Political Activity Freedom

     A.    Every classified employee may, during off-duty hours, participate in political activities not specifically prohibited by the Education Code. (EC Section 13004) SECTION ELIMINATED

     B.    No person in the permanent classified service shall be suspended, demoted, dismissed or in any way discriminated against because of his/her affiliations, political or religious acts or opinions, race, color, sex or marital status. (EC 45293)

     C.    No political activities shall be engaged in on school premises or property owned or controlled by the Board of Education during working hours by employees of the Board; provided, however, that at other times and places, such employees, as American citizens, have the right to advocate or support such measures *and* candidates as they may choose. (EC 13004 and 13752) THESE SECTIONS ELIMINATED

80.300.2          Cause for Disciplinary Action

Any employee may be disciplined for improper political activity, improper political activity includes:

     A.    The use of any District property, equipment, or facility for any political purpose unless the use thereof is authorized, by law, for such purposes and the employee has obtained prior required approval.

     B.    The use of any District property, equipment, or facility for any political purpose or the performance of any political act during regular hours of duty.

     C.    Engaging in active campaigning in behalf of any candidate, including himself/herself, for public office, whether by speaking, soliciting funds or support, distributing handbills, or otherwise, during his/her assigned hours of employment.

     D.    Attempting to gain any advancement or privilege under the Act or these rules through political activity.

80.300.3          Personal Candidacy

Any employee may be a candidate for any political office for which he/she may file without suffering any loss of employment status in the District unless he/she violates the provisions of Rule 80.300.2, and except as provided for in Rule 80.300.4B.

80.300.4    <u>Leave of Absence</u>

    A.    An employee who files for a political office may request, and shall be granted, an unpaid leave of absence which shall commence not earlier than one month prior to the concerned election and continue until the election processes have been completed insofar as his/her candidacy is concerned.

    B.    Such leave is required if the employee is a candidate for election to the Governing Board.

80.300.5    <u>Intent</u>

It is the Commission's intent and purpose in enacting these rules to allow employees their lawful privilege of political freedom and activity, but to insure that political activities are not engaged in during normal duty hours and normal duty assignments. The District has a reasonable obligation to make certain that personnel are aware of their political rights and can exercise those rights but, at the same time, to insure that its employees do not wrongfully use their duty hours or District facilities for political purposes.

**80.400**         **NEW EMPLOYEE CLEARANCES**

80.400.1         Physical Examinations (EC  49406)

    A.    Initial Employment

        1.    Every person being initially employed by the District, whether in a regular position as a substitute, relief, limited-term, or provisional employee shall be required to comply with the provisions of Education Code Section 49406.

        2.    Prior to employment, each person is required to submit adequate proof that he/she has undergone a test for tuberculosis and has been found to be free of active tuberculosis. This examination must have been conducted within a 60-day period preceding the date of employment.

        3.    Free x-ray or skin test examinations are provided by the Berkeley Public Health Department. Authority to receive examinations is issued by the Classified Personnel Department.

    B.    After Employment

        1.    Every employee is required to undergo an examination to determine that he is free from active tuberculosis at least once every four (4) years after employment.

        2.    The District shall maintain adequate records on each employee which indicate compliance with these rules and the law.

    C.    School Bus Drivers

        1.    In additional to any other examination that may be required by these rules, school bus drivers must have a valid school bus driver's certificate which requires a separate medical examination to meet the minimum medical requirements set forth by the Department of Motor Vehicles in Chapter 29b of the Driver's License Examiner's Manual of Procedure.

800.400.2         Criminal Records Check (EC 45106; 45125) A.

    Fingerprinting

    Every new employee shall submit to a criminal records check in accordance with prescribed procedures, or shall forfeit eligibility for employment. The Classified Personnel Department will notify each such employee where and when to report for fingerprinting, which shall take place no later than the tenth day of employment.

B.    Review of Criminal Records

    1.    All criminal record reports are to be treated as confidential. Any employee charged with receiving and/or reviewing them who divulges information contained therein to an unauthorized person is subject to disciplinary action.

    2.    The criminal records report from the California Bureau of Criminal Identification and Investigation and/or the Federal Bureau of Investigation will be reviewed together with the person's application form. If there is a criminal record, the appointing authority shall decide whether or not the person should be employed or retained in employment.

If the record discloses no information beyond that supplied by the person on his/her application form, and he/she was accepted for examination and/or appointment, he/she shall be considered employable.

80.400.3    Availability of Personnel File

A.    Any member of the classified service may, by his/her request, inspect his/her personnel file whether maintained by the Commission, in the District office, or at a school or other District location.

B.    The employee's request for inspection shall be during a time when he/she is not required to render service to the District unless it is impossible to arrange for such service during his/her off-duty hours and he/she has the written permission of his/her immediate supervisor to be absent from work for a specified period of time and proper arrangements have been made for him/her to inspect his/her file.

C.    Prior to his/her examination of his/her file, all of the following data shall be removed: Ratings, reports, or records which (a) were obtained prior to his/her employment with the District, (b) were prepared by identifiable examination committee members, or (c) were obtained in connection with a promotional examination.

**80.500**          **VIOLATIONS (EC 45317)**

Any person who willfully or through culpable negligence violates any of the provisions of this article (commencing at Section 45240) is guilty of a misdemeanor. It is also unlawful for any person:

A.    Willfully, by himself/herself or in cooperation with another person, to defeat, deceive, or obstruct any person with respect to his/her right of examination, application, or employment under this article... or Commission rule.

B.    Willfully and falsely to mark, grade, estimate, or report upon the examination or proper standing of any person examined or certified under this article—or Commission rule, or to aid in so doing, or make any false representation concerning the same or the person examined.

C.    Willfully to furnish to any person special or secret information regarding contents of an examination for the purpose of either improving or injuring the prospects or chances of any person examined or to be examined under this article...or Commission rule.